# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> HP INC. <br><br> Defendant. | Civil Case No. 2:24-cv-00752-JRG [Lead Case] <br><br> **JURY TRIAL DEMANDED** |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. <br><br> Defendants. | Civil Case No. 2:24-cv-00746-JRG [Member Case] |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> HP INC. <br><br> Defendant. | Civil Case No. 2:24-cv-00764-JRG [Member Case] <br><br> **JURY TRIAL DEMANDED** |

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. <br><br> Defendants. | Civil Case No. 2:24-cv-00765-JRG [Member Case] |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> ASKEY COMPUTER CORP., ASKEY INTERNATIONAL CORP. <br><br> Defendants. | Civil Case No. 2:24-cv-00766-JRG [Member Case] |

## HP'S ANSWER, DEFENSES, AND COUNTERCLAIMS TO THE COMPLAINT IN CIVIL CASE NO. 2:24-CV-00764-JRG

Defendant HP Inc. ("HP") respectfully submits this Answer, Defenses and Counterclaims to the Complaint for Patent Infringement ("Complaint") filed by Plaintiff Wilus Institute of Standards and Technology Inc. ("Wilus"). HP denies the allegations in Wilus's Complaint unless expressly admitted in the following numbered Paragraphs, which correspond to the numbered Paragraphs in the Complaint. For ease of reference, HP refers to Wilus's headings and titles, but to the extent those headings and titles could be construed to contain factual allegations, those allegations are denied.

## BACKGROUND

1.      This complaint arises from Defendant's infringement of the following United States patents owned by Wilus, each of which relate to the "MAC" or "medium access control layer" of wireless communications technology: United States Patent Nos. 11,129,163 ("'163 patent"), 11,700,597 ("'597 patent"), 11,116,035 ("'035 patent"), and 11,516,879 ("'879 patent") (collectively, "Asserted Patents").

**ANSWER:**    HP admits that Wilus purports to bring a patent infringement action for alleged infringement of United States Patent Nos. 11,129,163 ("'163 Patent"), 11,700,597 ("'597 Patent"), 11,116,035 ("'035 Patent"), and 11,516,879 ("'879 Patent") (collectively, "Asserted Patents").  HP denies that it infringes any valid claim of any of the Asserted Patents.  HP denies any remaining allegations contained in Paragraph 1 of the Complaint.

## NOTICE OF THE ASSERTED PATENTS

2.      The patented technologies which are the subject of this lawsuit are well known to Defendant.

**ANSWER:** Denied.

3.      As another example, on August 2, 2022, HP was sent a letter by Sisvel International S.A. ("Sisvel"), acting in its role as a licensing manager of certain patents related to the IEEE Wi-Fi 6 (802.11ax) standard. This letter conveyed Wilus's and Sisvel's belief that HP products practiced Wilus patents and required a license to these Wilus patents. The letter contained a list of "patents essential to the 802.11ax standard," which included the '163 and '035 patents. The patent application that resulted in the '597 and '879 patents was still pending before the U.S. Patent Office at the time this letter was sent. The letter identified specific HP products as examples of products that comply with the Wi-Fi 6 standard. It also contained a link to a brochure that included a table identifying specific sections and figures of the Wi-Fi 6 standard as

illustrations of what the essential patents covered in the standard. The letter included an offer to grant a patent license for Wilus patents including the '163 and '035 patents to HP in exchange for royalty payments.

**ANSWER:**    HP admits that it was sent a letter dated August 2, 2022 by Sisvel International, S.A.  HP admits that in the letter, Sisvel International S.A. held itself out as a licensing manager of patents co-owned by Wilus and SK Telecom.  HP admits that the letter stated that Sisvel believed that HP required a license.  HP admits that the letter identified HP products alleged to implement "essential features" of the Wi-Fi 6 standard.  HP admits that the letter contained a link to a table listing patents.  HP admits that the letter included an offer to grant a patent license for certain Wilus patents in exchange for royalty payments.  HP admits that the '163 and '035 Patents were listed in an attachment to the letter, along with other patents.  HP denies any remaining allegations in Paragraph 3 of the Complaint.

4.    As another example, on January 19, 2023, HP was sent another letter by Sisvel that included a "list of Pool Wi-Fi 6 SEPs evaluated by independent third-party patent evaluators as being essential to the Wi-Fi 6 Standard." This list included the '163 and '035 patents.

**ANSWER:**    HP admits that it was sent a letter dated January 19, 2023 that purported to include such a list.  The list contained seven pages of patent numbers and no other information. HP admits that the list included the '163 and '035 Patents.  HP denies the remaining allegations in Paragraph 4 of the Complaint.

## PLAINTIFF WILUS AND THE ASSERTED PATENTS

5.    Plaintiff Wilus is a research and development company specializing in the development of new technologies related to wireless communications and multimedia, including Wi-Fi and other wireless protocols. Founded in 2012, Wilus has been at the forefront of research

and development in wireless communications for more than a decade. The company is employee-owned, and its team currently consists of 20 engineers and inventors.

**ANSWER:**    HP is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 5 of the Complaint and therefore denies them.

6.    Since its formation Wilus has made over 700 technical contributions to leading standards bodies that define international standards for technologies including cellular wireless, wireless LAN, and multimedia compression. In particular, Wilus has played a crucial role in the development and standardization of Wi-Fi 6 technologies, contributing significantly to the enhanced speed, efficiency, capabilities, and performance of Wi-Fi 6 networks. Its work is significant in the context of the standards pertaining to Wi-Fi 6, both in terms of the number of technical contributions and in terms of the importance of those technical contributions to the standards.

**ANSWER:**    HP is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 6 of the Complaint and therefore denies them.

7.    Wilus is a corporation organized under the laws of South Korea, with its principal place of business at 5F 216 Hwangsaeul-ro, Bundang-gu, Seongnam-si, Gyeonggi do, 13595 Republic of Korea.

**ANSWER:**    HP is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 7 of the Complaint and therefore denies them.

8.    Wilus is the owner of all right, title, and interest in U.S. Patent No. 11,129,163, titled "Wireless communication method and wireless communication terminal in basic service set overlapping with another basic service set," and issued September 21, 2021. A copy of the '163 Patent is attached as Exhibit 1.

**ANSWER:**    HP admits that Wilus purports to be the owner of U.S. Patent No. 11,129,163.  HP admits that a purported copy of the '163 Patent is attached to the Complaint as Exhibit 1.  HP admits that Exhibit 1 bears the title "Wireless communication method and wireless communication terminal in basic service set overlapping with another basic service set" and a "Date of Patent" of September 21, 2021.  HP denies any remaining allegations in Paragraph 8 of the Complaint.

9.     Wilus is the owner of all right, title, and interest in U.S. Patent No. 11,700,597, titled "Wireless communication method and wireless communication terminal in basic service set overlapping with another basic service set," and issued July 11, 2023. A copy of the '597 patent is attached as Exhibit 2.

**ANSWER:**    HP admits that Wilus purports to be the owner of U.S. Patent No. 11,700,597.  HP admits that a purported copy of the '597 Patent is attached to the Complaint as Exhibit 2.  HP admits that Exhibit 2 bears the title "Wireless communication method and wireless communication terminal, which use discontinuous channel" and a "Date of Patent" of July 11, 2023.  HP denies any remaining allegations in Paragraph 9 of the Complaint.

10.     Wilus is the owner of all right, title, and interest in U.S. Patent No. 11,116,035, titled "Wireless communication method using enhanced distributed channel access, and wireless communication terminal using same," and issued September 7, 2021. A copy of the '035 patent is attached as Exhibit 3.

**ANSWER:**    HP admits that Wilus purports to be the owner of U.S. Patent No. 11,116,035.  HP admits that a purported copy of the '035 Patent is attached to the Complaint as Exhibit 3.  HP admits that Exhibit 3 bears the title "Wireless communication method using enhanced distributed channel access, and wireless communication terminal using same" and a

"Date of Patent" of September 7, 2021.  HP denies any remaining allegations in Paragraph 10 of the Complaint.

11.     Wilus is the owner of all right, title, and interest in U.S. Patent No. 11,516,879, titled "Wireless communication method using enhanced distributed channel access, and wireless communication terminal using same," and issued November 9, 2022. A copy of the '879 patent is attached as Exhibit 4.

**ANSWER:**    HP admits that Wilus purports to be the owner of U.S. Patent No. 11,516,879.  HP admits that a purported copy of the '879 Patent is attached to the Complaint as Exhibit 4.  HP admits that Exhibit 4 bears the title "Wireless communication method using enhanced distributed channel access, and wireless communication terminal using same" and a "Date of Patent" of November 9, 2022.  HP denies any remaining allegations in Paragraph 11 of the Complaint.

## DEFENDANT AND THE ACCUSED PRODUCTS

12.     On information and belief, Defendant HP Inc. is a corporation organized under the laws of the State of Delaware, with a principal place of business at 1501 Page Mill Road, Palo Alto, California 94304, and may be served with process through its registered agent CT Corporation System, 1999 Bryant Street, Suite 900, Dallas, Texas 75201.

**ANSWER:**     HP admits that HP Inc. is a corporation organized under the laws of the State of Delaware, with a principal place of business at 1501 Page Mill Road, Palo Alto, California 94304.  HP admits that it may be served with process through its registered agent CT Corporation System, 1999 Bryant Street, Suite 900, Dallas, Texas 75201.

13.     The Accused Products are all of HP's Wi-Fi 6 (802.11ax) enabled devices, including laptops and desktops, used, offered for sale, sold, and/or imported by Defendant in the United States.

**ANSWER:**    HP admits that Wilus, through its Complaint, accuses various HP laptops and desktops of allegedly infringing the Asserted Patents.  HP denies any alleged infringement. HP denies the remaining allegations in Paragraph 13 of the Complaint.

## JURISDICTION AND VENUE

14.    This action arises under the patent laws of the United States, Title 35 of the United States Code.

**ANSWER:**    HP admits that the Complaint purports to be an action that arises under the Patent Laws of the United States, 35 U.S.C. §§ 1, *et seq.*  HP does not contest, for purposes of this case only, that this Court has federal jurisdiction over the case.  HP denies any allegations of infringement.

15.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:**    Paragraph 15 sets forth conclusions of law to which no response is required.  To the extent a response is deemed required, HP admits that, for purposes of this case only, that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), provided that standing and other requirements are met.  HP denies that Wilus is entitled to any relief for its allegations of patent infringement, whether by award of damages, injunction, or otherwise.  HP further denies any allegations of infringement.

16.    This Court has personal jurisdiction over HP in this action because HP has committed acts of infringement within this District giving rise to this action, has a regular and established place of business in this District, and has established minimum contacts with this forum such that the exercise of jurisdiction over HP would not offend traditional notions of fair play and substantial justice. HP, directly and/or through subsidiaries or intermediaries, conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling,

and advertising its products and/or services in Texas and the Eastern District of Texas, regularly does business or solicit business, engage in other persistent courses of conduct, and/or derives substantial revenue from products and/or services provided to individuals in Texas, and commits acts of infringement of Wilus's patents in this District by, among other things, making, using, importing, offering to sell, and selling products that infringe the asserted patents, including without limitation the HP Wi-Fi 6 enabled devices accused of infringement in this case.

**ANSWER:**    HP does not contest, solely for the purpose of the present litigation, whether personal jurisdiction properly lies in this District.  HP admits that it engages in offering and selling certain products to customers in Texas.  However, HP denies that it has committed acts of infringement in the Eastern District of Texas or elsewhere, or that it has committed any act, directly or indirectly, that would give rise to any cause of action under the Complaint.  To the extent the remaining allegations in Paragraph 16 of the Complaint set forth legal conclusions, no response is required.  To the extent a response is deemed required, such legal conclusions and any remaining allegations in Paragraph 16 of the Complaint are denied.

17.    HP, directly and/or through subsidiaries or intermediaries, has purposefully and voluntarily placed one or more products and/or services in the stream of commerce that practice the Asserted Patents with the intention and expectation that they will be purchased and used by consumers in the Eastern District of Texas. These products and/or services have been and continue to be purchased and used in the Eastern District of Texas.

**ANSWER:**    Denied.

18.    Venue as to HP is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). HP has transacted business in this District and has committed acts of direct and indirect

infringement in this District by, among other things, making, using, importing, offering to sell, and selling products that infringe the Asserted Patents.

**ANSWER:**     HP does not contest, solely for the purposes of the present action, whether venue properly lies in this District.  However, HP denies that venue in this District is convenient. HP admits that it has transacted business in this District but denies that HP has committed acts of infringement in this District or elsewhere in the State of Texas, or that it has committed any act, directly or indirectly, that would give rise to any cause of action under the Complaint in Paragraph 18.

19.     Defendant HP maintains a regular and established place of business in this District. Despite HP's initial assertion in *AX Wireless LLC v. HP Inc.*, No. 2:22-cv-00279-RWS-RSP ("AX Wireless"), that it "does not have 'a regular and established place of business' in this District," *id.*, Dkt. 13, HP's Mot. to Dismiss for Improper Venue at 1 (E.D. Tex. Oct. 3, 2022), HP later withdrew that assertion and "its motion to dismiss after discovery [in AX Wireless] revealed that HP does maintain a regular and established place of business in this district," id., Dkt. 100, Order Denying HP's Mot. to Transfer to N.D. Cal. at 1 (Dec. 11, 2023).

**ANSWER:**     HP admits that in certain prior cases, based on the specific and unique facts of those cases, HP has either admitted or not contested proper venue in this District.  HP denies any suggestion that this is a convenient forum to resolve this dispute.  HP denies any remaining allegations in Paragraph 19 of the Complaint.

20.     On information and belief, HP operates out of or makes use of leased, work-share, co-op or other arrangements for space, offices or facilities in this District, including through its partners and/or agents. According to the Collin County Assessor's website (https://www.collincountytx.gov/Tax-Assessor/property-taxes), on January 31, 2024, Defendant

HP paid $171,832.70 in business personal property taxes for property within Collin County, Texas that had a 2023 assessed value of $9,955,470.00. As shown in the chart below from the Collin County Assessor's website, HP has had between $9.6 million and $15.2 million worth of property located in Collin County between 2020 and 2024.

**ANSWER:**    HP is without knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 20 of the Complaint and therefore denies them.  HP is unable to access the URL provided in Paragraph 20 of the Complaint.

## COUNT 1 – CLAIM FOR INFRINGEMENT OF THE '163 PATENT

21.    Wilus incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

**ANSWER:**    HP incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

22.    On September 21, 2021, the United States Patent and Trademark Office issued U.S. Patent No. 11,129,163, titled "Wireless communication method and wireless communication terminal in basic service set overlapping with another basic service set." Exhibit 1.

**ANSWER:**    HP admits that Exhibit 1 bears the title "Wireless communication method and wireless communication terminal in basic service set overlapping with another basic service set" and a "Date of Patent" of September 21, 2021.  HP denies any remaining allegations in Paragraph 22 of the Complaint.

23.    The '163 patent claims devices and methods used to implement the MAC layer of Wi-Fi 6 wireless LANs.

**ANSWER:**    To the extent Paragraph 23 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 23 of the Complaint.

24.     Wilus is the owner of the '163 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

**ANSWER:**    HP admits that Wilus purports to be the owner of the '163 Patent.  HP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 of the Complaint and, on that basis, denies such allegations.

25.     The claims of the '163 patent were issued by the United States Patent and Trademark Office and are presumed by statute to be valid. They are not directed to abstract ideas and moreover contain inventive concepts sufficient to ensure that the patent amounts to significantly more than a patent on a patent ineligible concept itself. The written description of the '163 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

**ANSWER:**    To the extent Paragraph 25 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 25 of the Complaint.

26.     Wilus and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '163 patent, and Wilus is entitled to damages for Defendant's past infringement. For example, Sisvel's letters conveying Wilus's and Sisvel's belief that HP products practiced Wilus's '163 patent and offering to license Wilus's patents to HP provided HP with actual notice of infringement.

**ANSWER:**    To the extent Paragraph 26 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 26 of the Complaint.

27.     Defendant has directly infringed (literally and equivalently) and induced and

contributed to infringement by others of the '163 patent by, without a license or permission from Wilus: making, using, selling, offering for sale, or importing products that infringe the claims of the '163 patent; and inducing and contributing to infringement by others of the claims of the '163 patent.

> **ANSWER:**    Denied.

28.    On information and belief, Defendant uses, imports, offers for sale, and sells certain infringing products in the United States. The Accused Products are, for example, Wi-Fi 6 (802.11ax) enabled devices, including laptops and desktops, used, offered for sale, sold, and/or imported by Defendant in the United States.

> **ANSWER:**    HP admits that it sells certain devices that are compatible with Wi-Fi 6 (802.11ax) including laptops and desktops.  HP denies any remaining allegations in Paragraph 28 of the Complaint.

29.    The Accused Products satisfy all claim limitations of one or more claims of the '163 Patent. On information and belief, the Accused Products employ, implement, or utilize materially the same Wi-Fi 6 technology, such that facts material to infringement by one Accused Product will be material to all Accused Products. For example, the Accused Products include "A wireless communication terminal that communicates wirelessly, the terminal":

> **ANSWER:**    To the extent Paragraph 29 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 29 of the Complaint.

30.    The Accused Products include "a transceiver" and "a processor":

> **ANSWER:**    To the extent Paragraph 30 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 30 of the Complaint.

31.    In the Accused Products, the processor is configured to "receive a physical layer convergence procedure (PLCP) Processing Data Unit (PPDU) by using the transceiver":

**ANSWER:**    To the extent Paragraph 31 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 31 of the Complaint.

32.    In the Accused Products, the processor is configured to "not to use a Basic Service Set (BSS) color when signaling information indicates that an operation based on the BSS color is not allowed":

**ANSWER:**    To the extent Paragraph 32 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 32 of the Complaint.

33.    In the Accused Products, "the BSS color is an identifier of a BSS":

**ANSWER:**    To the extent Paragraph 33 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 33 of the Complaint.

34.    In the Accused Products, "the signaling information is transmitted from a base wireless communication terminal to which the wireless communication terminal is associated":

**ANSWER:**    To the extent Paragraph 34 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 34 of the Complaint.

35.    Defendant has also knowingly and intentionally induced and contributed to infringement of the '163 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendant has had knowledge or were willfully blind of the '163 patent and the infringing nature of the Accused Products at least because HP had received the August 2, 2022, letter from Sisvel identifying the '163 patent as "essential to the 802.11ax standard" and identifying examples of HP products that implement essential features of the standard.

**ANSWER:**    Denied.

36.     Despite this knowledge of the '163 patent, Defendant has continued to actively encourage and instruct its customers to use and integrate the Accused Products in ways that directly infringe the '163 patent. Defendant has done so knowing and intending that their customers would commit these infringing acts. Defendant has also continued to make, use, offer for sale, sell, and/or import the Accused Products, despite their knowledge of the '163 patent, thereby specifically intending for and inducing their customers to infringe the '163 patent through the customers' normal and customary use of the Accused Products.

**ANSWER:**    Denied.

37.     On information and belief, the Accused Products contain components that constitute a material part of the '163 patent invention and that are not a staple article or commodity suitable for substantial noninfringing use. On information and belief, Defendant has sold, offered for sale, and imported into the United States such components knowing they are especially made or especially adapted for use in infringement of the '163 patent.

**ANSWER:**    Denied.

38.     On information and belief, Defendant's infringement has and continues to be willful. Defendant, without a good faith belief of invalidity or non-infringement, have known or have been willfully blind to the fact that making, using, offering to sell, or selling the Accused Products to their customers, infringes the '163 patent.

**ANSWER:**    Denied.

39.     Defendant has induced, and continues to induce, infringement of the '163 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Products. On information and belief, these acts include providing information and instructions on the use of the Accused Products; providing information, education, and

15

instructions to its customers; providing the Accused Products to customers; and indemnifying patent infringement within the United States.

**ANSWER:**    Denied.

40.    HP and its customers benefit from the use of the inventions claimed in the '163 patent. On information and belief, these benefits include higher capacity, improved coexistence, and longer battery life when using Wi-Fi 6 communications.

**ANSWER:**    Denied.

41.    Wilus has been damaged by Defendant's willful infringement of the '163 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

**ANSWER:**    Denied.

## COUNT 2 – CLAIM FOR INFRINGEMENT OF THE '597 PATENT

42.    Wilus incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

**ANSWER:**    HP incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

43.    On July 11, 2023, the United States Patent and Trademark Office issued U.S. Patent No. 11,700,597, titled "Wireless communication method and wireless communication terminal in basic service set overlapping with another basic service set." Exhibit 2.

**ANSWER:**    HP admits that Exhibit 2 bears the title "Wireless communication method and wireless communication terminal in basic service set overlapping with another basic service set" and a "Date of Patent" of July 11, 2023.  HP denies any remaining allegations in Paragraph 43 of the Complaint.

44.    The '597 patent claims devices and methods used to implement the MAC layer of Wi-Fi 6 wireless LANs.

**ANSWER:**    To the extent Paragraph 44 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 44 of the Complaint.

45.    Wilus is the owner of the '597 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

**ANSWER:**    HP admits that Wilus purports to be the owner of the '597 Patent.  HP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 45 of the Complaint and, on that basis, denies such allegations.

46.    The claims of the '597 patent were issued by the United States Patent and Trademark Office and are presumed by statute to be valid. They are not directed to abstract ideas and moreover contain inventive concepts sufficient to ensure that the patent amounts to significantly more than a patent on a patent ineligible concept itself. The written description of the '597 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

**ANSWER:**    To the extent Paragraph 46 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 46 of the Complaint.

47.    Wilus and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '597 patent, and Wilus is entitled to damages for Defendant's past infringement. For example, Sisvel's letters conveying Wilus's and Sisvel's belief that HP products

practiced Wilus's '597 patent and offering to license Wilus's patents to HP provided HP with actual notice of infringement.

**ANSWER:**     To the extent Paragraph 47 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 49 of the Complaint.

48.     Defendant has directly infringed (literally and equivalently) and induced and contributed to infringement by others of the '597 patent by, without a license or permission from Wilus: making, using, selling, offering for sale, or importing products that infringe the claims of the '597 patent; and inducing and contributing to infringement by others of the claims of the '597 patent.

**ANSWER:**     Denied.

49.     On information and belief, Defendant uses, imports, offers for sale, and sells certain infringing products in the United States. The Accused Products are, for example, Wi-Fi 6 (802.11ax) enabled devices, including laptops and desktops, used, offered for sale, sold, and/or imported by Defendant in the United States.

**ANSWER:**     HP admits that it sells certain devices that are compatible with Wi-Fi 6 (802.11ax) including laptops and desktops.  HP denies any remaining allegations in Paragraph 49 of the Complaint.

50.     The Accused Products satisfy all claim limitations of one or more claims of the '597 Patent. On information and belief, the Accused Products employ, implement, or utilize materially the same Wi-Fi 6 technology, such that facts material to infringement by one Accused Product will be material to all Accused Products. For example, the Accused Products include "A wireless communication terminal communicating wirelessly, the wireless communication terminal":

**ANSWER:**    To the extent Paragraph 50 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 50 of the Complaint.

51.    The Accused Products include "a transceiver" and "a processor":

**ANSWER:**    To the extent Paragraph 51 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 51 of the Complaint.

52.    In the Accused Products, the processor is configured to "receive a physical layer convergence procedure (PLCP) Protocol Data Unit (PPDU) by using the transceiver":

**ANSWER:**    To the extent Paragraph 52 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 52 of the Complaint.

53.    In the Accused Products, the processor is configured to "not to use a Basic Service Set (BSS) color indicated by the PPDU when signaling information indicates that an operation based on the BSS color is not allowed":

**ANSWER:**    To the extent Paragraph 53 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 53 of the Complaint.

54.    In the Accused Products, "the BSS color is an identifier of a BSS":

**ANSWER:**    To the extent Paragraph 54 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 54 of the Complaint.

55.    In the Accused Products, "the signaling information is transmitted from a base wireless communication terminal to which the wireless communication terminal is associated":

**ANSWER:**    To the extent Paragraph 55 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 55 of the Complaint.

56.    Defendant has also knowingly and intentionally induced and contributed to infringement of the '597 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example,

19

Defendant has had knowledge or were willfully blind of the '597 patent and the infringing nature of the Accused Products at least because HP had received the August 2, 2022, letter from Sisvel identifying the Wilus patents as an "SEP" and identifying examples of HP products that implement essential features of the standard.

**ANSWER:**    Denied.

57.    Despite this knowledge of the '597 patent, Defendant has continued to actively encourage and instruct its customers to use and integrate the Accused Products in ways that directly infringe the '597 patent. Defendant has done so knowing and intending that their customers would commit these infringing acts. Defendant has also continued to make, use, offer for sale, sell, and/or import the Accused Products, despite their knowledge of the '597 patent, thereby specifically intending for and inducing their customers to infringe the '597 patent through the customers' normal and customary use of the Accused Products.

**ANSWER:**    Denied.

58.    On information and belief, the Accused Products contain components that constitute a material part of the '597 patent invention and that are not a staple article or commodity suitable for substantial noninfringing use. On information and belief, Defendant has sold, offered for sale, and imported into the United States such components knowing they are especially made or especially adapted for use in infringement of the '597 patent.

**ANSWER:**    Denied.

59.    On information and belief, Defendant's infringement has and continues to be willful. Defendant, without a good faith belief of invalidity or non-infringement, have known or have been willfully blind to the fact that making, using, offering to sell, or selling the Accused Products to their customers, infringes the '597 patent.

**ANSWER:**    Denied.

60.    Defendant has induced, and continues to induce, infringement of the '597 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Products. On information and belief, these acts include providing information and instructions on the use of the Accused Products; providing information, education, and instructions to its customers; providing the Accused Products to customers; and indemnifying patent infringement within the United States.

**ANSWER:**    Denied.

61.    HP and its customers benefit from the use of the inventions claimed in the '597 patent. On information and belief, these benefits include higher capacity, improved coexistence, and longer battery life when using Wi-Fi 6 communications.

**ANSWER:**    Denied.

62.    Wilus has been damaged by Defendant's willful infringement of the '597 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

**ANSWER:**    Denied.

## COUNT 3 – CLAIM FOR INFRINGEMENT OF THE '035 PATENT

63.    Wilus incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

**ANSWER:**    HP incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

64.    On September 7, 2021, the United States Patent and Trademark Office issued U.S. Patent No. 11,116,035, titled "Wireless communication method using enhanced distributed channel access, and wireless communication terminal using same." Exhibit 3.

21

**ANSWER:**    HP admits that Exhibit 3 bears the title "Wireless communication method using enhanced distributed channel access, and wireless communication terminal using same" and a "Date of Patent" of September 7, 2021.  HP denies any remaining allegations in Paragraph 64 of the Complaint.

65.    The '035 patent claims devices and methods used to implement the MAC layer of Wi-Fi 6 wireless LANs.

**ANSWER:**    To the extent Paragraph 65 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 65 of the Complaint.

66.    Wilus is the owner of the '035 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages.

**ANSWER:**    HP admits that Wilus purports to be the owner of the '035 Patent.  HP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 66 of the Complaint and, on that basis, denies such allegations.

67.    The claims of the '035 patent were issued by the United States Patent and Trademark Office and are presumed by statute to be valid. They are not directed to abstract ideas and moreover contain inventive concepts sufficient to ensure that the patent amounts to significantly more than a patent on a patent ineligible concept itself. The written description of the '035 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

**ANSWER:**    To the extent Paragraph 67 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 67 of the Complaint.

68.    Wilus and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '035 patent, and Wilus is entitled to damages for Defendant's past infringement. For example, Sisvel's letters conveying Wilus's and Sisvel's belief that HP products practiced Wilus's '035 patent and offering to license Wilus's patents to HP provided HP with actual notice of infringement.

**ANSWER:**    To the extent Paragraph 68 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 68 of the Complaint.

69.    Defendant has directly infringed (literally and equivalently) and induced and contributed to infringement by others of the '035 patent by, without a license or permission from Wilus: making, using, selling, offering for sale, or importing products that infringe the claims of the '035 patent; and inducing and contributing to infringement by others of the claims of the '035 patent.

**ANSWER:**    Denied.

70.    On information and belief, Defendant uses, imports, offers for sale, and sells certain infringing products in the United States. The Accused Products are, for example, Wi-Fi 6 (802.11ax) enabled devices, including laptops and desktops, used, offered for sale, sold, and/or imported by Defendant in the United States.

**ANSWER:**    HP admits that it sells certain devices that are compatible with Wi-Fi 6 (802.11ax) including laptops and desktops.  HP denies any remaining allegations in Paragraph 70 of the Complaint.

71.    The Accused Products satisfy all claim limitations of one or more claims of the '035 Patent. On information and belief, the Accused Products employ, implement, or utilize materially the same Wi-Fi 6 technology, such that facts material to infringement by one Accused

Product will be material to all Accused Products. For example, the Accused Products include "A wireless communication terminal that wirelessly communicates with a base wireless communication terminal, the wireless communication terminal":

**ANSWER:**    To the extent Paragraph 71 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 71 of the Complaint.

72.    The Accused Products include "a transceiver" and "a processor":

**ANSWER:**    To the extent Paragraph 72 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 72 of the Complaint.

73.    In the Accused Products, the processor is configured to "transmit, to the base wireless communication terminal, a trigger-based physical layer protocol data unit (PPDU) using the transceiver."

**ANSWER:**    To the extent Paragraph 73 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 73 of the Complaint.

74.    In the Accused Products, the processor is configured to "switch a parameter set, which is a set of parameters used for the channel access, from a first parameter set to a second parameter set based on whether the base wireless communication terminal triggers a multi-user uplink transmission participation of the wireless communication terminal."

**ANSWER:**    To the extent Paragraph 74 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 74 of the Complaint.

75.    In the Accused Products, the processor is configured to "when a MAC protocol data unit (MPDU) included in the trigger-based PPDU does not request an immediate response, set a second parameter set timer for an access category of the MPDU when the transmission of the trigger-based PPDU ends."

**ANSWER:**     To the extent Paragraph 75 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 75 of the Complaint.

76.      In the Accused Products, "the processor is configured to "when the MPDU included in the trigger-based PPDU requests the immediate response, set the second parameter set timer for the access category of the MPDU for which immediate response is received":

**ANSWER:**     To the extent Paragraph 76 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 76 of the Complaint.

77.      In the Accused Products, the processor is configured to "when the second parameter set timer expires, terminate an application of the second parameter set":

**ANSWER:**     To the extent Paragraph 77 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 77 of the Complaint.

78.      In the Accused Products, the processor is configured to "access a channel according to a priority of data to be transmitted to the base communication terminal by the wireless communication terminal and the parameter set":

**ANSWER:**     To the extent Paragraph 78 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 78 of the Complaint.

79.      Defendant has also knowingly and intentionally induced and contributed to infringement of the '035 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example, Defendant has had knowledge or were willfully blind of the '035 patent and the infringing nature of the Accused Products at least because HP had received the August 2, 2022, letter from Sisvel identifying the '035 patent as "essential to the 802.11ax standard" and because HP was aware that it sold products that implement essential features of the standard.

**ANSWER:**     Denied.

80.     Despite this knowledge of the '035 patent, Defendant has continued to actively encourage and instruct its customers to use and integrate the Accused Products in ways that directly infringe the '035 patent. Defendant has done so knowing and intending that their customers would commit these infringing acts. Defendant has also continued to make, use, offer for sale, sell, and/or import the Accused Products, despite their knowledge of the '035 patent, thereby specifically intending for and inducing their customers to infringe the '035 patent through the customers' normal and customary use of the Accused Products.

**ANSWER:**    Denied.

81.     On information and belief, the Accused Products contain components that constitute a material part of the '035 patent invention and that are not a staple article or commodity suitable for substantial noninfringing use. On information and belief, Defendant has sold, offered for sale, and imported into the United States such components knowing they are especially made or especially adapted for use in infringement of the '035 patent.

**ANSWER:**    Denied.

82.     On information and belief, Defendant's infringement has and continues to be willful. Defendant, without a good faith belief of invalidity or non-infringement, have known or have been willfully blind to the fact that making, using, offering to sell, or selling the Accused Products to their customers, infringes the '035 patent.

**ANSWER:**    Denied.

83.     Defendant has induced, and continues to induce, infringement of the '035 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Products. On information and belief, these acts include providing information and instructions on the use of the Accused Products; providing information, education, and instructions

26

to its customers; providing the Accused Products to customers; and indemnifying patent infringement within the United States.

**ANSWER:**    Denied.

84.    HP and its customers benefit from the use of the inventions claimed in the '035 patent. On information and belief, these benefits include higher capacity and improved coexistence when using Wi-Fi 6 communications.

**ANSWER:**    Denied.

85.    Wilus has been damaged by Defendant's willful infringement of the '035 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

**ANSWER:**    Denied.

## COUNT 4 – CLAIM FOR INFRINGEMENT OF THE '879 PATENT

86.    Wilus incorporates by reference each of the allegations in the foregoing paragraphs as if fully set forth herein and further alleges as follows:

**ANSWER:**    HP incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

87.    On November 9, 2022, the United States Patent and Trademark Office issued U.S. Patent No. 11,516,879, titled "Wireless communication method using enhanced distributed channel access, and wireless communication terminal using same." Exhibit 4.

**ANSWER:**    HP admits that Exhibit 4 bears the title "Wireless communication method using enhanced distributed channel access, and wireless communication terminal using same" and a "Date of Patent" of November 9, 2022.  HP denies any remaining allegations in Paragraph 87 of the Complaint.

88.    The '879 patent claims devices and methods used to implement the MAC layer of Wi-Fi 6 wireless LANs.

**ANSWER:**    To the extent Paragraph 88 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 88 of the Complaint.

89.    Wilus is the owner of the '879 patent with full rights to pursue recovery of royalties for damages for infringement, including full rights to recover past and future damages

**ANSWER:**    HP admits that Wilus purports to be the owner of the '879 Patent.  HP is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 89 of the Complaint and, on that basis, denies such allegations.

90.    The claims of the '879 patent were issued by the United States Patent and Trademark Office and are presumed by statute to be valid. They are not directed to abstract ideas and moreover contain inventive concepts sufficient to ensure that the patent amounts to significantly more than a patent on a patent ineligible concept itself. The written description of the '879 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the nonconventional and non-generic combination of claim limitations is patentably distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

**ANSWER:**    To the extent Paragraph 90 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 90 of the Complaint.

91.    Wilus and its predecessors in interest have satisfied the requirements of 35 U.S.C. § 287(a) with respect to the '879 patent, and Wilus is entitled to damages for Defendant's past infringement. For example, Sisvel's letters conveying Wilus's and Sisvel's belief that HP products

practiced Wilus's '879 patent and offering to license Wilus's patents to HP provided HP with actual notice of infringement.

**ANSWER:**    To the extent Paragraph 91 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 91 of the Complaint.

92.    Defendant has directly infringed (literally and equivalently) and induced and contributed to infringement by others of the '879 patent by, without a license or permission from Wilus: making, using, selling, offering for sale, or importing products that infringe the claims of the '879 patent; and inducing and contributing to infringement by others of the claims of the '879 patent.

**ANSWER:**    Denied.

93.    On information and belief, Defendant uses, imports, offers for sale, and sells certain infringing products in the United States. The Accused Products are, for example, Wi-Fi 6 (802.11ax) enabled devices, including laptops and desktops, used, offered for sale, sold, and/or imported by Defendant in the United States.

**ANSWER:**    HP admits that it sells certain devices that are compatible with Wi-Fi 6 (802.11ax) including laptops and desktops.  HP denies any remaining allegations in Paragraph 93 of the Complaint.

94.    The Accused Products satisfy all claim limitations of one or more claims of the '879 Patent. On information and belief, the Accused Products employ, implement, or utilize materially the same Wi-Fi 6 technology, such that facts material to infringement by one Accused Product will be material to all Accused Products. For example, the Accused Products include "A wireless communication terminal that wirelessly communicates with a base wireless communication terminal, the wireless communication terminal":

29

**ANSWER:**    To the extent Paragraph 94 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 94 of the Complaint.

95.    The Accused Products include "a transceiver" and "a processor":

**ANSWER:**    To the extent Paragraph 95 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 95 of the Complaint.

96.    In the Accused Products, the processor is configured to "receive, from the base wireless communication terminal, a trigger frame using the transceiver, wherein the trigger frame triggers a orthogonal frequency division multiple access (OFDMA) uplink transmission of the wireless communication terminal":

**ANSWER:**    To the extent Paragraph 96 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 96 of the Complaint.

97.    In the Accused Products, the processor is configured to "transmit, to the base wireless communication terminal, a trigger-based physical layer protocol data unit (PPDU) in response to the trigger frame using the transceiver":

**ANSWER:**    To the extent Paragraph 97 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 97 of the Complaint.

98.    In the Accused Products, the processor is configured to "switch a parameter set, which is a set of parameters used for the channel access, from a first parameter set to a second parameter set based on whether the base wireless communication terminal triggers a multi-user uplink transmission participation of the wireless communication terminal":

**ANSWER:**    To the extent Paragraph 98 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 98 of the Complaint.

99.    In the Accused Products, the processor is configured to "when a MAC protocol data unit (MPDU) included in the trigger-based PPDU does not request an immediate response, set a second parameter set timer for an access category of the MPDU when the transmission of the trigger-based PPDU ends":

**ANSWER:**    To the extent Paragraph 99 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 99 of the Complaint.

100.    In the Accused Products, the processor is configured to "when the MPDU included in the trigger-based PPDU requests the immediate response, set the second parameter set timer for the access category of the MPDU for which immediate response is received":

**ANSWER:**    To the extent Paragraph 100 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 100 of the Complaint.

101.    In the Accused Products, the processor is configured to "when the second parameter set timer expires, terminate an application of the second parameter set":

**ANSWER:**    To the extent Paragraph 101 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 101 of the Complaint.

102.    In the Accused Products, the processor is configured to "access a channel according to a priority of data to be transmitted to the base communication terminal by the wireless communication terminal and the parameter set":

103.    **ANSWER:**    To the extent Paragraph 102 recites and implicates legal conclusions, no response is required.  HP denies all remaining allegations in Paragraph 102 of the Complaint.

104.    Defendant has also knowingly and intentionally induced and contributed to infringement of the '879 patent in violation of 35 U.S.C. §§ 271(b) and 271(c). For example,

Defendant has had knowledge or were willfully blind of the '879 patent and the infringing nature of the Accused Products at least because HP had received the August 2, 2022, letter from Sisvel identifying the '879 patent as an "SEP" and identifying examples of HP products that implement essential features of the standard.

**ANSWER:**    Denied.

105.    Despite this knowledge of the '879 patent, Defendant has continued to actively encourage and instruct its customers to use and integrate the Accused Products in ways that directly infringe the '879 patent. Defendant has done so knowing and intending that their customers would commit these infringing acts. Defendant has also continued to make, use, offer for sale, sell, and/or import the Accused Products, despite their knowledge of the '879 patent, thereby specifically intending for and inducing their customers to infringe the '879 patent through the customers' normal and customary use of the Accused Products.

**ANSWER:**    Denied.

106.    On information and belief, the Accused Products contain components that constitute a material part of the '879 patent invention and that are not a staple article or commodity suitable for substantial noninfringing use. On information and belief, Defendant has sold, offered for sale, and imported into the United States such components knowing they are especially made or especially adapted for use in infringement of the '879 patent.

**ANSWER:**    Denied.

107.    On information and belief, Defendant's infringement has and continues to be willful. Defendant, without a good faith belief of invalidity or non-infringement, have known or have been willfully blind to the fact that making, using, offering to sell, or selling the Accused Products to their customers, infringes the '879 patent.

**ANSWER:**    Denied.

108.    Defendant has induced, and continues to induce, infringement of the '879 patent by actively encouraging others (including its customers) to use, offer to sell, sell, and import the Accused Products. On information and belief, these acts include providing information and instructions on the use of the Accused Products; providing information, education, and instructions to its customers; providing the Accused Products to customers; and indemnifying patent infringement within the United States.

**ANSWER:**    Denied.

109.    HP and its customers benefit from the use of the inventions claimed in the '879 patent. On information and belief, these benefits include higher capacity and improved coexistence when using Wi-Fi 6 communications.

**ANSWER:**    Denied.

110.    Wilus has been damaged by Defendant's willful infringement of the '879 patent and is entitled to damages as provided for in 35 U.S.C. § 284, including reasonable royalty damages.

**ANSWER:**    Denied.

### [WILUS'S] JURY DEMAND

111.    HP is not required to provide a response to Wilus's request for a trial by jury.

### [WILUS'S] RELIEF REQUESTED

112.    HP denies that Wilus is entitled to any relief it seeks in its Complaint.

### GENERAL DENIAL

113.    To the extent that any allegations of the Complaint have not been previously specifically admitted or denied, HP denies them.

****

## HP'S AFFIRMATIVE DEFENSES

114.    Pursuant to Federal Rule of Civil Procedure 8(c), HP, without waiver, limitation, or prejudice, hereby asserts the affirmative defenses listed below.  HP reserves the right to amend this Answer to add additional defenses, including allegations of inequitable conduct, and/or any other defenses currently unknown to HP, as they become known throughout the course of discovery in this action.  Assertion of a defense is not a concession that HP has the burden of proving the matter asserted.

### FIRST AFFIRMATIVE DEFENSE
#### (Failure to State a Claim)

115.    Wilus fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
#### (Non-Infringement)

116.    HP does not infringe and has not infringed, under any theory of infringement, including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement), any valid, enforceable claim of the Asserted Patents, either literally or under the Doctrine of Equivalents, and has not committed any acts in violation of 35 U.S.C. § 271.

### THIRD AFFIRMATIVE DEFENSE
#### (Invalidity)

117.    Each asserted claim of the Asserted Patents is invalid for failure to comply with one or more of the requirements of United States Code, Title 35, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112, and the rules, regulations, and laws pertaining thereto.

### FOURTH AFFIRMATIVE DEFENSE
#### (Prosecution History Estoppel and/or Disclaimer)

118.    Wilus is estopped from construing certain of the asserted claims of the Asserted Patents to cover or include, either literally or by application of the doctrine of equivalents,

34

methods used, or devices manufactured, used, imported, sold, or offered for sale by HP because of admissions, amendments, and statements to the USPTO during prosecution of the applications leading to the issuance of the Asserted Patents or related family members.

### FIFTH AFFIRMATIVE DEFENSE
#### (Limitation on Damages)

119.    Wilus's claims for damages are statutorily limited or barred by 35 U.S.C. §§ 286, 288, and/or 28 U.S.C. § 1498.

### SIXTH AFFIRMATIVE DEFENSE
#### (Marking)

120.    Any claim for damages by Wilus is limited by failure to mark, including without limitation, to the extent Wilus contends that any products made by it or any licensees to the Asserted Patents are covered by the Asserted Patents, to the extent that any such entity fails to mark its products with the numbers of the Asserted Patents and/or its failure to require and/or police marking.

### SEVENTH AFFIRMATIVE DEFENSE
#### (Not an Exceptional Case)

121.    Wilus cannot prove that this is an exceptional case justifying an award of attorneys' fees against HP under 35 U.S.C. § 285, under the Court's inherent power, or otherwise.

### EIGHTH AFFIRMATIVE DEFENSE
#### (No Willful Infringement)

122.    Wilus is not entitled to enhanced damages under 35 U.S.C. § 284 because HP has not intentionally, willfully, or deliberately infringed any claim of the asserted patents, or acted with egregious conduct.

## NINTH AFFIRMATIVE DEFENSE
### (Lack of Standing)

123.    To the extent that Wilus does not own all substantial rights in the Asserted

Patents, Wilus lacks standing to pursue some or all of its claims against HP.

## TENTH AFFIRMATIVE DEFENSE
### (Estoppel and/or Waiver)

124.    Wilus's attempted enforcement of the Asserted Patents against HP is barred by

estoppel and/or waiver.  For example, to the extent the Asserted Patents are essential to the Wi-Fi

6 standard, Wilus is estopped from enforcing the Asserted Patents against HP because of its

failure to comply with its FRAND (Fair, Reasonable, And Non-Discriminatory terms)

obligations.  As another example, to the extent the Asserted Patents are essential to one or more

of the above-referenced standards, Wilus is estopped from seeking an injunction or lost profits

by its FRAND obligations.

## ELEVENTH AFFIRMATIVE DEFENSE
### (License Express or Implied and/or Patent Exhaustion)

125.    Wilus's claims are barred in whole or in part by express or implied license and/or

patent exhaustion.

## TWELFTH AFFIRMATIVE DEFENSE
### (No Injunctive Relief)

126.    Wilus's claim for injunctive relief is barred because there exists an adequate

remedy at law, and Wilus's claims otherwise fail to meet the requirements for such relief,

including because Wilus failed to comply with its FRAND obligations.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Failure to Negotiate in Good Faith)

127.    Wilus has failed to negotiate with HP in good faith and failed to comply with its

FRAND obligations.

## HP INC'S COUNTERCLAIMS

For its counterclaims against Counterclaim Defendants Wilus Institute of Standards and Technology Inc. ("Wilus") and Sisvel International S.A. ("Sisvel"), Counterclaim Plaintiff HP Inc. ("HP") alleges as follows:

### THE PARTIES

1.      HP Inc. is a corporation organized under the laws of the State of Delaware, with a principal place of business at 1501 Page Mill Road, Palo Alto, California 94304.

2.      Upon information and belief and based on Paragraph 7 of the Complaint as pled by Wilus, Wilus is a corporation organized under the laws of South Korea, with its principal place of business at 5F 216 Hwangsaeul-ro, Bundang-gu, Seongnam-si, Gyeonggi-do, 13595 Republic of Korea.

3.      Upon information and belief, Sisvel is organized under the laws of Luxembourg, with its principal place of business at 6, Avenue Marie-Thérèse, L-2132, Luxembourg, Grand Duchy of Luxembourg.

### JURISDICTION AND VENUE

4.      HP incorporates by reference the preceding paragraphs as if fully stated herein.

5.      These counterclaims arise under the patent laws of the United States.  The jurisdiction of this Court is proper under at least 35 U.S.C. § 100 *et seq.* and 28 U.S.C. §§ 1331, 1332, 1338, 2201 and 2202.  This Court has supplemental jurisdiction over other claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy as the federal law claims.

6.      Wilus has consented to the personal jurisdiction of this Court at least by commencing its action for patent infringement in this District, as set forth in its Complaint.

7.      Personal jurisdiction is proper to as to Sisvel at least because Sisvel asserts that it has the right to grant licenses to all Wi-Fi 6 standard essential patents owned or controlled by the members of the patent pool, including Wilus and the patents asserted against HP in this case.

8.      Sisvel also holds itself out as the "licensing manager" of the Asserted Patents. Before Wilus proceeded with this lawsuit, Sisvel not only contacted HP about needing a license to these same Asserted Patents but alleged that HP infringes the patents.

9.      On information and belief, Sisvel and Wilus have acted in concert to pursue this patent infringement action against HP.  Indeed, as Wilus admits, its initial notice letter "conveyed Wilus's **_and Sisvel's_** belief that HP products practiced Wilus patents and required a license to these Wilus patents."  Dkt. No. 1 ¶ 3.  Wilus repeatedly asserts that Sisvel's letters conveyed "Wilus's and Sisvel's belief" that HP's products practiced the Asserted Patents.  Dkt. No. 1 ¶¶ 26, 49, 71, 94.

10.     On information and belief, Sisvel has purposefully availed itself in the Eastern District of Texas by conducting licensing activities in this District, including by its actions with Wilus against HP in attempting to use this lawsuit to force HP into taking a Sisvel Wi-Fi 6 patent pool license.

11.     Venue is proper in this District as to Wilus based at least on Wilus's filing of this action, pursuant to at least §§ 1391 and 1400.

12.     Venue is proper in this District as to Sisvel under at least 28 U.S.C. §1391(c)(3).

## BACKGROUND

13.     The Institute of Electrical and Electronics Engineers ("IEEE") is a technical professional organization.  The IEEE Standards Association ("IEEE-SA") is an organization that facilitates standards development and standards related collaboration.  This standards-based work includes the IEEE 802 LAN/MAN group of standards used for computer networking,

including the 802.11 set of standards that govern Wi-Fi networks and wireless local area networks.

14.    The IEEE allows individuals and organizations to submit a "Letter of Assurance" that states the submitter's position regarding ownership, enforcement, or licensing of its patents it alleges are essential to practicing the standard.  In the Letter of Assurance, a submitter can declare that it will "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis with reasonable terms and conditions that are demonstrably free of unfair discrimination."  Such a declaration gives rise to an obligation to license the alleged essential patents under fair, reasonable, and nondiscriminatory terms and conditions.

15.    This lawsuit involves patents that Wilus has asserted are essential to practicing the IEEE's 802.11ax standard (the "Wi-Fi 6 standard").

16.    In its Complaint, Wilus alleges that HP has infringed and continues to infringe the Asserted Patents and that the Asserted Patents are essential to the Wi-Fi 6 standard.

17.    Wilus alleges that it owns the Asserted Patents.  Wilus has granted its licensing agent Sisvel at least a license to grant rights to patents alleged to be essential to the Wi-Fi 6 standard including Wilus's Wi-Fi 6 alleged standard essential patents.

18.    Sisvel operates a Wi-Fi 6 "patent pool"—a collection of patents for which Sisvel holds itself out as licensing agent.  Sisvel alleges the patents are essential to the Wi-Fi 6 standard.  Sisvel asserts that it has the right to grant licenses to all Wi-Fi 6 standard essential patents owned and/or controlled by the patent owners that are part of its Wi-Fi 6 patent pool.

19.    The Asserted Patents and other patents that Sisvel and Wilus has claimed are essential to the Wi-Fi 6 standard, including all Wi-Fi 6 patents that are part of the Sisvel Wi-Fi 6 patent pool (the "Alleged Wi-Fi 6 SEPs"), and that Sisvel has demanded HP license, are

encumbered by express and voluntary written covenants, declarations, and/or promises made by Wilus and other members of the Sisvel Wi-Fi 6 patent pool to the IEEE, pursuant to the IEEE-SA Standards Board Bylaws, to license alleged SEPS to any third-party beneficiary and/or user of the standard on fair, reasonable, and non-discriminatory terms.

### Wilus's FRAND Commitment

20.    HP incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

21.    On January 15, 2021, pursuant to the IEEE-SA Standards Board Bylaws, Rule 6, Wilus submitted a Letter of Licensing Assurance for Essential Patent Claims with the IEEE. Wilus's letter stated that it "may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims." In the letter, Wilus committed to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis ***with reasonable terms and conditions*** that are demonstrably ***free of unfair discrimination***." Wilus's letter identified "802.11ax" as the IEEE Standard to which its commitment applied.

22.    On December 27, 2022, Wilus submitted a second Letter of Licensing Assurance for Essential Patent Claims with the IEEE. Wilus's letter again stated that it "may own, control, or have the ability to license Patent Claims that might be or become Essential Patent Claims." Wilus's second letter made the same commitment to "grant a license under reasonable rates to an unrestricted number of applicants on a worldwide basis ***with reasonable terms and conditions*** that are demonstrably ***free of unfair discrimination***." Wilus's second letter identified "802.11" in general as the IEEE Standard to which its commitment applied.

23.    On information and belief, Wilus's letters are "Accepted Letters of Assurance" under the IEEE-SA Standards Board Bylaws at least because they have been posted to the IEEE SA website.

24.     On information and belief, Wilus participated in the standard-setting process through membership in relevant Standard-Setting Organizations ("SSOs"), including the IEEE.

25.     The IEEE relied on Wilus's FRAND commitments when it allegedly incorporated Wilus's proprietary technology into the Wi-Fi 6 standard.

**Sisvel's FRAND Commitment**

26.     Sisvel is the administrator of a "patent pool" containing patents it claims are essential to the IEEE's 802.11ax, or "Wi-Fi 6," standard. According to Sisvel, the pool provides a "one-stop shop solution to license all standard essential patents owned or controlled by the participating patent owners."

27.     Wilus is a member of Sisvel's Wi-Fi 6 patent pool, as are Huawei Technologies Co., Ltd., MediaTek Inc., Mitsubishi Electric Corporation, Orange S.A., Panasonic Holdings Corporation, Koninklijke Philips N.V., and SK Telecom Co., Ltd.

28.     Sisvel asserts that it has the right to grant licenses to all Wi-Fi 6 standard essential patents owned or controlled by the members of the patent pool. Wilus's patent infringement suit alleges that HP infringes patents that are part of this patent pool.

29.     Sisvel is bound by Wilus's, and the other members of its patent pool's, FRAND commitments to the Alleged Wi-Fi 6 SEPs. The IEEE-SA Standards Board Bylaws prohibit a Submitter from, "with the intent of circumventing or negating any of the representations and commitments made in the Accepted Letter of Assurance, assign[ing] or otherwise transfer[ring] any rights in any Essential Patent Claims that they hold, control, or have the ability to license and for which licensing assurance was provided on the Accepted Letter of Assurance." IEEE-SA Standards Board Bylaws, Rule 6. Further, "An Accepted Letter of Assurance is intended to be binding upon any and all assignees and transferees of any Essential Patent Claim covered by

41

such LOA." IEEE-SA Standards Board Bylaws, Rule 6.2. This provision means that Wilus's LOAs (Letters of Assurances) were intended to be binding upon Sisvel.

30.    Because Sisvel contends that Alleged Wi-Fi 6 SEPs are essential to the Wi-Fi 6 standard, Sisvel is subject to the contractual obligations agreed to by Wilus and its predecessors-in-interest as members of the relevant SSOs, as well as the commitments of the other members of the Sisvel Wi-Fi 6 patent pool.

31.    Sisvel also publicly reaffirmed and acknowledged its FRAND commitments related to the Alleged Wi-Fi 6 SEPs in a July 19, 2022 Press Release related to the Wi-Fi 6 patent pool. In the press release, Sisvel stated that it was "making the valuable portfolios included in the pool accessible on fair, reasonable, and non-discriminatory terms and conditions[.]"

32.    Today, Sisvel's website repeats this obligation. For example, its Wi-Fi 6 "Licensing programmes" page states notes that "All participating patent owners have submitted a negative LoA with respect to the IEEE 2015 updated IPR Policy and/or are committed to license on FRAND terms, in adherence with the IEEE IPR Policy in effect prior to March 15, 2015."

33.    Sisvel sent a letter to HP on August 2, 2022, offering a license to the Wi-Fi 6 SEPs in its pool. The August 2 letter referenced only patents "co-owned by Wilus Inc. and SK Telecom Co., Ltd." Sisvel sent another letter on August 24, 2022. The second letter referenced Huawei, MediaTek, Philips, SK Telecom, and Wilus, and again offered to provide HP with a license to the Wi-Fi 6 patent pool "under fair, reasonable, and non-discriminatory ('FRAND') terms."

34.    Sisvel represented to HP that it had an obligation to license on FRAND terms, stating in its first letter to HP that "In our role as a licensing manager of these assets, it is our

42

responsibility to the patent owners to ensure their R&D efforts and the resulting patents are fairly and adequately rewarded, to actively engage in detecting and resolving the unlicensed use of their patents, and to provide a service to the marketplace as a source of licensing this valuable portfolio on fair, reasonable and non-discriminatory terms."

35.    HP and Sisvel corresponded over nine months.  During the correspondence, HP attempted to understand Sisvel's licensing model, including how the rates were determined, what patents were covered, and what the implications may be if HP were to receive a license directly from one of the pool members.  However, Wilus never independently corresponded with HP, and for unknown reasons and without warning, on September 13, 2024, Wilus, a member of Sisvel's Wi-Fi 6 patent pool, filed this suit against HP, alleging infringement of several of the patents Sisvel had previously offered to license to HP.

### FIRST COUNT
**(Breach of Contract re IEEE Policy against Wilus)**

36.    HP incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

37.    As explained above, Sisvel has alleged that the patents asserted in this action are essential to the Wi-Fi 6 standard, and Wilus has cited these allegations in its Complaint.  *E.g.*, Dkt. No. 1 ¶ 4.

38.    As set forth above, for consideration, including IEEE membership and participation, Wilus entered into express and/or implied contracts with the IEEE's members, or alternatively, with the IEEE to which IEEE members and others are intended third-party beneficiaries, in which Wilus agreed, among other things, to abide by the IEEE's policies and rules.

39.     Wilus made this commitment by submitting Letters of Assurance to the IEEE pursuant to Rule 6 of the IEEE-SA Standards Board Bylaws.

40.     Each person (including a company) who distributes products compliant with the Wi-Fi standards promulgated by the relevant SSOs is an intended third-party beneficiary of the contractual FRAND commitments encumbering Wilus's alleged SEPs, including HP.

41.     As a third-party beneficiary, HP relied on Wilus's FRAND licensing promises when it incorporated compliance with wireless local area network connectivity into its products.

42.     Wilus had a contractual obligation to offer to license the Alleged Wi-Fi 6 SEPs on FRAND terms.

43.     Yet Wilus has breached its obligations to the IEEE, to HP, and to companies like HP by refusing to offer HP a license to the Alleged Wi-Fi 6 SEPs on FRAND terms and conditions, failing to negotiate and act in good faith, and by using injunctive relief to obtain leverage in licensing discussions for SEPs.

44.     As a result of Wilus's breach of contract, HP has been injured in its business or property, and is threatened by imminent loss of profits, customers, potential customers, goodwill, and product image.

45.     HP has suffered and will continue to suffer irreparable injury caused by Wilus's conduct alleged above, unless and until the Court enjoins such acts, practices, and conduct.

**SECOND COUNT**
**(Breach of Contract re IEEE Policy against Sisvel)**

46.     HP incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

47.     As explained above, Sisvel has alleged that the patents asserted in this action are essential to the Wi-Fi 6 standard, and Wilus has cited these allegations in its Complaint. *E.g.*, Dkt. No. 1 ¶ 4.

48.     As set forth above, for consideration, including IEEE membership and participation, Wilus entered into express and/or implied contracts with the IEEE's members, or alternatively, with the IEEE to which IEEE members and others are intended third-party beneficiaries, in which Wilus agreed, among other things, to abide by the IEEE's policies and rules.

49.     Wilus made this commitment by submitting Letters of Assurance to the IEEE pursuant to Rule 6 of the IEEE-SA Standards Board Bylaws.

50.     As the "licensing manager" of Wilus's Wi-Fi 6 Patents and a transferee of the right to license those patents, Sisvel is bound by these contractual commitments that Wilus made to the IEEE relating to the 802.11 standard, including Wi-Fi 6.

51.     Each person (including a company) who distributes products compliant with the Wi-Fi standards promulgated by the relevant SSOs is an intended third-party beneficiary of the contractual FRAND commitments encumbering Sisvel's alleged SEPs, including HP.

52.     As a third-party beneficiary, HP was entitled to rely on Wilus's FRAND licensing promises when it incorporated compliance with wireless local area network connectivity into its products.

53.     As a third-party beneficiary, HP also was entitled to rely on Sisvel's commitment reaffirming its FRAND obligations related to the Alleged Wi-Fi 6 SEPs, including the July 19, 2022 press release following the launch of Sisvel's Wi-Fi 6 patent pool.

54.     Sisvel had a contractual obligation to offer to license the Alleged Wi-Fi 6 SEPs on FRAND terms.

55.     Yet Sisvel has breached its obligations to the IEEE, to HP, and to companies like HP by refusing to offer HP a license to the Alleged Wi-Fi 6 SEPs on FRAND terms and conditions, including, on information and belief, by acting with Wilus in bringing this lawsuit as leverage to gain higher than FRAND rates for the Sisvel Wi-Fi 6 patent pool and failing to negotiate and act in good faith.

56.     As a result of Sisvel's breach of contract, HP has been injured in its business or property, and is threatened by imminent loss of profits, customers, potential customers, goodwill, and product image.

57.     HP has suffered and will continue to suffer irreparable injury caused by Sisvel's conduct alleged above, unless and until the Court enjoins such acts, practices, and conduct.

## THIRD COUNT
### (Breach of Duty of Good Faith against Wilus)

58.     HP incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

59.     As explained above, Sisvel has alleged that the patents asserted in this action are essential to the Wi-Fi 6 standard, and Wilus has cited these allegations in its Complaint.  *E.g.*, Dkt. No. 1 ¶ 4.

60.     As set forth above, for consideration, including IEEE membership and participation, Wilus entered into express and/or implied contracts with the IEEE's members, or alternatively, with the IEEE to which IEEE members and others are intended third-party beneficiaries, in which Wilus agreed, among other things, to abide by the IEEE's policies and rules.

61.     Wilus made this commitment by submitting Letters of Assurance to the IEEE pursuant to Rule 6 of the IEEE-SA Standards Board Bylaws.

62.     Each person (including a company) who distributes products compliant with the Wi-Fi standards promulgated by the relevant SSOs is an intended third-party beneficiary of the contractual FRAND commitments encumbering Wilus's alleged SEPs, including HP.

63.     As a third-party beneficiary, HP relied on Wilus's FRAND licensing promises when it incorporated compliance with wireless local area network connectivity into its products.

64.     Wilus has breached its obligation to negotiate in good faith, as set forth above. Wilus has not offered to license its allegedly essential Wi-Fi 6 SEPs on FRAND terms.  To the extent that Sisvel's August 2, 2022 and August 24, 2022 communication of its public rates can be considered an offer, it was not made in good faith.  Wilus has further breached its good faith obligation by refusing to negotiate in good faith and using injunctive relief to improperly obtain leverage, including by seeking injunctive relief based on non-essential patents to obtain leverage in licensing discussions for SEPs.

65.     As a result of Wilus's breach, HP has been injured in its business or property, and is threatened by imminent loss of profits, customers, potential customers, goodwill, and product image.  HP has also been forced to defend groundless litigation and has incurred substantial expense in doing so.

66.     HP has suffered and will continue to suffer irreparable injury caused by Wilus's conduct alleged above, unless and until the Court enjoins such acts, practices, and conduct.

**FOURTH COUNT**
**(Breach of Duty of Good Faith against Sisvel)**

67.     HP incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

47

68.     As explained above, Sisvel has alleged that the patents asserted in this action are essential to the Wi-Fi 6 standard, and Wilus has cited these allegations in its Complaint.  *E.g.*, Dkt. No. 1 ¶ 4.

69.     As set forth above, for consideration, including IEEE membership and participation, Wilus entered into express and/or implied contracts with the IEEE's members, or alternatively, with the IEEE to which IEEE members and others are intended third-party beneficiaries, in which Wilus agreed, among other things, to abide by the IEEE's policies and rules.

70.     Wilus made this commitment by submitting Letters of Assurance to the IEEE pursuant to Rule 6 of the IEEE-SA Standards Board Bylaws.

71.     Each person (including a company) who distributes products compliant with the Wi-Fi standards promulgated by the relevant SSOs is an intended third-party beneficiary of the contractual FRAND commitments encumbering Wilus's alleged SEPs, including HP.

72.     As a third-party beneficiary, HP relied on Wilus's FRAND licensing promises when it incorporated compliance with wireless local area network connectivity into its products.

73.     Sisvel has breached its obligation to negotiate in good faith, as set forth above. Sisvel has repeatedly refused to offer to license its allegedly essential Wi-Fi 6 SEPs on FRAND terms.  To the extent that Sisvel's August 2, 2022 and August 24, 2022 communication of its public rates can be considered an offer, it was not made in good faith.  Further, in concert with Wilus, Sisvel has attempted to use injunctive relief to improperly obtain leverage, including by seeking injunctive relief based on non-essential patents to obtain leverage in licensing discussions for SEPs.  Moreover, Sisvel has refused to continue engaging in good faith negotiations by continuing to refuse to offer FRAND terms.

74.     As a result of Sisvel's breach, HP has been injured in its business or property, and is threatened by imminent loss of profits, customers, potential customers, goodwill, and product image  HP has also been forced to defend groundless litigation and has incurred substantial expense in doing so.

75.     HP has suffered and will continue to suffer irreparable injury caused by Sisvel's conduct alleged above, unless and until the Court enjoins such acts, practices, and conduct.

## FIFTH COUNT
### (Declaratory Judgment for a Global RAND Licensing Rate against Wilus)

76.     HP incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

77.     HP, as a supplier of products compliant with certain aspects of the Wi-Fi 6 standard, relied on Wilus's FRAND licensing promises when HP incorporated Wi-Fi compliance into its products.

78.     Each person (including a company) who distributes products compliant with the Wi-Fi standards promulgated by the relevant SSOs is an intended third-party beneficiary of the contractual FRAND commitments encumbering Wilus's Alleged Wi-Fi 6 SEPs, including HP.

79.     As a third-party beneficiary, HP relied on Wilus's FRAND licensing promises when it incorporated compliance with wireless local area network connectivity into its products.

80.     Despite being obligated to license the Alleged Wi-Fi 6 SEPs on FRAND terms, rather than negotiate with HP for a FRAND rate, Wilus chose to file this suit for patent infringement against HP without any prior attempt to negotiate in good faith or discuss a FRAND rate.

81.     Sisvel has failed to provide a sufficient justification for the royalty rates it has demanded from HP.  To the contrary, Sisvel's licensing correspondence lists "Standard" and "Compliant" rates, but does not tether them to the specific patents actually practiced by HP.

82.     Wilus, for its part, has made no effort to propose a FRAND royalty rate, and has provided no separate justification for Sisvel's proposed rate.

83.     Accordingly, Sisvel and Wilus's demanded rates for the Alleged Wi-Fi 6 SEPs do not accurately reflect the incremental value of the Alleged Wi-Fi 6 SEPs, if any, to the relevant HP products, as the law requires.

84.     Despite acknowledging its obligation to license on FRAND terms, Sisvel's correspondence to HP, including its correspondence dated August 24, 2022, has set out offered license rates without any reference to, or limitation by, any manner of assessing that the rates are fair, reasonable, and non-discriminatory as to HP.

85.     On information and belief, Sisvel offered these rates on behalf of Wilus, who has a financial interest in Sisvel's licensing activities.

86.     On information and belief, Sisvel has based its demanded rates on its ambitions to receive payments comparable to the value of other, much different, non-Sisvel SEPs and/or the value of alleged Sisvel SEPs to other, much different products—instead of the incremental value of the Alleged Wi-Fi 6 SEPs, if any, to the relevant HP products.

87.     On information and belief, Sisvel has based its licensing offers on end-user device prices.  With this take-it-or-leave-it end-product pricing policy, Sisvel forces end-product manufacturers like HP to pay higher royalties than component manufacturers would pay to implement the same patents for the same functionality.

88.     Sisvel and Wilus have chosen to engage in litigation rather than good faith negotiation to reach agreement on FRAND terms and conditions for HP to license Wilus's Alleged Wi-Fi 6 SEPs.  HP brings this counterclaim to obtain a license on FRAND terms and conditions to any confirmed Wi-Fi 6 SEPs that HP practices.

89.     This controversy between HP, Wilus, and Sisvel regarding what constitutes FRAND terms and conditions for a license to the Alleged Wi-Fi 6 SEPs is of sufficient immediacy to warrant the issuance of a declaratory judgment.

90.     HP is entitled to a declaratory judgment as follows: (1) a determination that Wilus has not offered a license to the Alleged Wi-Fi 6 SEPs on FRAND terms and conditions; and (2) a determination of what constitutes FRAND terms and conditions for a license to the Alleged Wi-Fi 6 SEPs, with those terms and conditions being ordered and imposed on the parties.

## SIXTH COUNT
### (Declaratory Judgment for a Global RAND Licensing Rate)

91.     HP incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

92.     HP, as a supplier of products compliant with certain aspects of the Wi-Fi 6 standard, relied on Sisvel and Wilus's FRAND licensing promises when HP incorporated Wi-Fi compliance into its products.

93.     As a third-party beneficiary, HP relied on Wilus's FRAND licensing promises when it incorporated compliance with wireless local area network connectivity into its products, and on Sisvel's reaffirmation of those promises, HP also relied on the FRAND commitments of the other members of the Sisvel Wi-Fi 6 patent pool.

94.     Despite being obligated to license the Alleged Wi-Fi 6 SEPs on FRAND terms, Sisvel has demanded excessive rates that are not FRAND for a license to the Alleged Wi-Fi 6 SEPs.

95.     Sisvel has failed to provide a sufficient justification for the royalty rates it offered. To the contrary, Sisvel's licensing correspondence lists "Standard" and "Compliant" rates, but does not tether them to the specific patents actually practiced by HP.

96.     Accordingly, Sisvel's and Wilus's demanded rates for the Alleged Wi-Fi 6 SEPs do not accurately reflect the incremental value of the Alleged Wi-Fi 6 SEPs, if any, to the relevant HP products, as the law requires.

97.     Despite acknowledging its obligation to license on FRAND terms, Sisvel's correspondence to HP, including its correspondence dated August 24, 2022, has set out offered license rates without any reference to, or limitation by, any manner of assessing that the rates are fair, reasonable, and non-discriminatory as to HP.

98.     On information and belief, Sisvel and Wilus have based their demanded rates on their ambitions to receive payments comparable to the value of other, much different, non-Sisvel SEPs and/or the value of Alleged Wi-Fi 6 SEPs to other, much different products—instead of the incremental value of the Alleged Wi-Fi 6 SEPs, if any, to the relevant HP products.

99.     On information and belief, Sisvel has improperly based its licensing offers on end-user device prices.  With its take-it-or-leave-it end-product pricing policy, Sisvel forces end-product manufacturers like HP to pay higher royalties than component manufacturers would pay to implement the same patents for the same functionality.

100.    Sisvel and Wilus have chosen to engage in litigation rather than good faith negotiation to reach agreement on FRAND terms and conditions for HP to license the Alleged

Wi-Fi 6 SEPs. HP brings this counterclaim to obtain a license on FRAND terms and conditions to the Alleged Wi-Fi 6 SEPs.

101. This controversy between HP, Sisvel, and Wilus regarding what constitutes FRAND terms and conditions for a license to the Alleged Wi-Fi 6 SEPs is of sufficient immediacy to warrant the issuance of a declaratory judgment.

102. HP is entitled to a declaratory judgment as follows: (1) a determination that Sisvel has not offered a license to the Alleged Wi-Fi 6 SEPs on FRAND terms and conditions; and (2) a determination of what constitutes FRAND terms and conditions for a license to the Alleged Wi-Fi 6 SEPs, with those terms and conditions being ordered and imposed on the parties.

## SEVENTH COUNT
### (Non-Infringement of the '163 Patent)

103. HP incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

104. Based on Wilus's filing of this action and at least HP's First Affirmative Defense, an actual controversy has arisen and now exists between the parties as to whether HP infringes U.S. Patent No. 11,129,163 (the "'163 Patent").

105. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, HP requests a judicial determination and declaration that HP does not infringe and has not infringed, either directly or indirectly, any claim of the '163 Patent.

## EIGHTH COUNT
### (Non-Infringement of the '597 Patent)

106. HP incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

107.    Based on Wilus's filing of this action and at least HP's First Affirmative Defense, an actual controversy has arisen and now exists between the parties as to whether HP infringes U.S. Patent No. 11,700,597 ("'597 Patent").

108.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, HP requests a judicial determination and declaration that HP does not infringe and has not infringed, either directly or indirectly, any claim of the '597 Patent.

## NINTH COUNT
### (Non-Infringement of the '035 Patent)

109.    HP incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

110.    Based on Wilus's filing of this action and at least HP's First Affirmative Defense, an actual controversy has arisen and now exists between the parties as to whether HP infringes U.S. Patent No. 11,116,035 ("'035 Patent").

111.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, HP requests a judicial determination and declaration that HP does not infringe and has not infringed, either directly or indirectly, any claim of the '035 Patent.

## TENTH COUNT
### (Non-Infringement of the '879 Patent)

112.    HP incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

113.    Based on Wilus's filing of this action and at least HP's First Affirmative Defense, an actual controversy has arisen and now exists between the parties as to whether HP infringes U.S. Patent No. 11,516,879 ("'879 Patent").

114.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, HP requests a judicial determination and declaration that HP does not infringe and has not infringed, either directly or indirectly, any claim of the '879 Patent.

### ELEVENTH COUNT
**(Invalidity of the '163 Patent)**

115.    HP incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

116.    Based on Wilus's filing of this action and at least HP's Second Affirmative Defense, an actual controversy has arisen and now exists between the parties as to the validity of the claims of the '163 Patent.  Absent a declaration of invalidity, Wilus will continue to wrongfully assert the '163 Patent against HP, and thereby cause HP irreparable injury and damage.

117.    Each and every claim of the '163 Patent is invalid under the provisions of Title 35, United States Code, including, but not limited to Sections 101, 102, 103, and/or 112, and HP is entitled to a declaration to that effect.

118.    This is an exceptional case entitling HP to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

### TWELFTH COUNT
**(Invalidity of the '597 Patent)**

119.    HP incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

120.    Based on Wilus's filing of this action and at least HP's Second Affirmative Defense, an actual controversy has arisen and now exists between the parties as to the validity of the claims of the '597 Patent.  Absent a declaration of invalidity, Wilus will continue to

wrongfully assert the '597 Patent against HP, and thereby cause HP irreparable injury and damage.

121.    Each and every claim of the '597 Patent is invalid under the provisions of Title 35, United States Code, including, but not limited to Sections 101, 102, 103, and/or 112, and HP is entitled to a declaration to that effect.

122.    This is an exceptional case entitling HP to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

### THIRTEENTH COUNT
**(Invalidity of the '035 Patent)**

123.    HP incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

124.    Based on Wilus's filing of this action and at least HP's Second Affirmative Defense, an actual controversy has arisen and now exists between the parties as to the validity of the claims of the '035 Patent.  Absent a declaration of invalidity, Wilus will continue to wrongfully assert the '035 Patent against HP, and thereby cause HP irreparable injury and damage.

125.    Each and every claim of the '035 Patent is invalid under the provisions of Title 35, United States Code, including, but not limited to Sections 101, 102, 103, and/or 112, and HP is entitled to a declaration to that effect.

126.    This is an exceptional case entitling HP to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

### FOURTEENTH COUNT
**(Invalidity of the '879 Patent)**

127.    HP incorporates by reference its responses in the preceding paragraphs as if fully stated herein.

128.    Based on Wilus's filing of this action and at least HP's Second Affirmative Defense, an actual controversy has arisen and now exists between the parties as to the validity of the claims of the '879 Patent.  Absent a declaration of invalidity, Wilus will continue to wrongfully assert the '879 Patent against HP, and thereby cause HP irreparable injury and damage.

129.    Each and every claim of the '879 Patent is invalid under the provisions of Title 35, United States Code, including, but not limited to Sections 101, 102, 103, and/or 112, and HP is entitled to a declaration to that effect.

130.    This is an exceptional case entitling HP to an award of its attorneys' fees incurred in connection with this action pursuant to 35 U.S.C. § 285.

## **PRAYER FOR RELIEF**

WHEREFORE, HP respectfully prays that this Court enter judgment in HP's favor against Wilus and Sisvel and requests the following relief:

(i).    A complete denial of Wilus's requests for damages, costs, expenses, and any other form of relief;

(ii).    Dismissal with prejudice of all claims in Wilus's Complaint against HP;

(iii).    A permanent injunction restraining Wilus and its respective officers, partners, employees, agents, parents, subsidiaries, and affiliates, and any other persons acting on its behalf or in concert with it, from charging, suing or threatening, orally or in writing, that the Asserted Patents have been infringed by HP under any subsection of 35 U.S.C. §§ 271 or 281;

(iv).    A declaration that this is an exceptional case under 35 U.S.C. § 285 and awarding to HP its reasonable costs and expenses of litigation, including but not limited to attorneys' fees and expert witness fees;

(v).      An award to HP of its costs and disbursements in defending in this action brought by Wilus;

(vi).     Adjudge and decree that Wilus and Sisvel are liable for breach of contract;

(vii).    Adjudge and decree that Wilus and Sisvel have breached their duty of good faith;

(viii).   Declare FRAND terms and conditions for a global license to Wilus and/or Sisvel's Alleged Wi-Fi 6 SEPs;

(ix).     Determine that HP has not infringed any asserted claim of any Asserted Patents;

(x).      Determine that the asserted claims of the Asserted Patents are invalid and/or unenforceable;

(xi).     Award HP damages for Sisvel's breach of contract and breach of duty of good faith;

(xii).    Enjoin Sisvel and Wilus from conduct inconsistent with their FRAND obligations; and

(xiii).   An award to HP of any and all further relief, in law or in equity, as this Court may deem just and proper.

## RESERVATION OF ADDITIONAL DEFENSES

HP reserves the right to assert additional defenses that may surface through discovery in this action.

## JURY DEMAND

HP requests a trial by jury on all issues so triable.

Date:  December 13, 2024                    Respectfully submitted,

*/s/ Benjamin C. Elacqua*
Benjamin C. Elacqua (Lead Counsel)
Texas Bar Number 24055443
elacqua@fr.com
**Fish & Richardson P.C.**
909 Fannin Street, Suite 2100
Houston, TX 77010
Telephone: (713) 654-5300
Facsimile: (713-652-0109

Lawrence R. Jarvis
GA Bar No. 102116
jarvis@fr.com
**Fish & Richardson P.C.**
1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: (404) 892-5005
Facsimile: (404) 892-5002

Melissa R. Smith
Texas Bar No. 24001351
**Gillam & Smith, LLP**
303 South Washington Avenue Marshall,
Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Email: melissa@gillamsmithlaw.com

*Attorneys for Defendant HP Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on December 13, 2024.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

*/s/ Benjamin C. Elacqua*
Benjamin C. Elacqua
