UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> HP INC., <br><br> Defendant. | Case No. 2:24-cv-00752-JRG <br> Lead Case |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> HP INC., <br><br> Defendant. | Case No. 2:24-cv-00764-JRG |

**CORRECTED COUNTERCLAIM DEFENDANTS' MOTION TO
DISMISS HP INC.'S AMENDED COUNTERCLAIMS 1–6, 15–16**

TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................1

II. BACKGROUND ....................................................................................................................2

III. LEGAL STANDARD.............................................................................................................2

    A. Motion to Dismiss Under Rule 12(b)(6).....................................................................2

    B. The Declaratory Judgment Act ...................................................................................3

IV. ARGUMENT..........................................................................................................................3

    A. Counterclaims 1 and 2 (Breach of Contract re IEEE Policy) Fail as a Matter of Law and Should Be Dismissed ...............................................................................3

        1. This Court Lacks Subject Matter Jurisdiction Over Counterclaims 1 and 2 Because They Involve Foreign Patents ...............................................4

        2. Counterclaims 1 and 2 Fail to State a Claim for Breach of Contract with Respect to Non-party Patents .........................................................................5

        3. Counterclaims 1 and 2 Fail to State a Claim for Breach of Contract with Respect to Patents Not Asserted Against HP in This Case ...........................5

        4. Counterclaim 2 Fails to State a Claim Because Sisvel Is Not a Party to the Alleged IEEE Contract ................................................................................5

    B. Counterclaims 3 and 4 (Breach of Duty of Good Faith) Fail as a Matter of Law and Should Be Dismissed ............................................................................................7

    C. Counterclaims 15 and 16 (Promissory Estoppel) Fail as a Matter of Law and Should Be Dismissed...................................................................................................7

    D. Counterclaims 5 and 6 (Declaratory Judgment for a Global FRAND Licensing Rate) Fail as a Matter of Law and Should Be Dismissed ...........................................9

        1. The Court Lacks Jurisdiction Over Foreign Patents......................................9

        2. There Is No Justiciable Case or Controversy with Respect to Non-party Patents and Patents Not Asserted in This Action............................................10

        3. Sisvel Is Not a Party to the Alleged Contract with the IEEE and Thus the Court Cannot Impose FRAND Obligations on Sisvel .............................11

        4. Alternatively, the Court Should Exercise Its Discretion to Decline Declaratory Judgment Jurisdiction Over HP's Claims.................................11

V. CONCLUSION.....................................................................................................................14

TABLE OF AUTHORITIES

**Cases**

*Abuelhawa v. Santa Clara Univ.*,
  529 F. Supp. 3d 1059 (N.D. Cal. 2021) ............................................................................. 10

*Addicks Servs., Inc. v. GGP-Bridgeland, LP*,
  596 F.3d 286 (5th Cir. 2010) ............................................................................................... 9

*Apple Inc. v. Motorola Mobility, Inc.*,
  No. 11-CV-178-BBC, 2012 WL 7989412 (W.D. Wis. Nov. 8, 2012) ............................... 15

*Apple Inc. v. Qualcomm Inc.*,
  No. 3:17-cv-00108-GPC-MDD, 2017 WL 3966944 (S.D. Cal. Sept. 7, 2017) ........... 11, 13

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................................ 3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................ 3

*Cat Tech LLC v. TubeMaster, Inc.*,
  528 F.3d 871 (Fed. Cir. 2008) ........................................................................................... 11

*Chartis Specialty Ins. Co. v. Tesoro Corp.*,
  930 F. Supp. 2d 653 (W.D. Tex. 2013) ............................................................................... 8

*City of Reno v. Netflix, Inc.*,
  52 F.4th 874 (9th Cir. 2022) .............................................................................................. 10

*Collins v. Morgan Stanley Dean Witter*,
  224 F.3d 496 (5th Cir. 2000) ............................................................................................... 4

*Commc'ns Test Design, Inc. v. Contec, LLC*,
  952 F.3d 1356 (Fed. Cir. 2020) ........................................................................................... 3

*Core Wireless Licensing S.a.r.l. v. Apple Inc.*,
  No. 6:12-CV-100-JRG, 2015 WL 4775973 (E.D. Tex. Aug. 11, 2015) .............................. 7

*DK Joint Venture 1 v. Weyand*,
  649 F.3d 310 (5th Cir. 2011) ............................................................................................... 8

*Ericsson Inc. v. Apple Inc.*,
  No. 2:21-cv-00376-JRG, Dkt. 89 (E.D. Tex. May 2, 2022) .............................................. 15

*Ericsson Inc. v. D-Link Sys., Inc.*,
  No. 6:10-CV-473, 2013 WL 4046225, (E.D. Tex. Aug. 6, 2013), *rev'd in part*, 773 F.3d 1201 (Fed.
  Cir. 2014) .......................................................................................................................... 15

*Funai Elec. Co. v. LSI Corp.*,
  No. 16-CV-01210-BLF, 2017 WL 1133513 (N.D. Cal. Mar. 27, 2017) ............................. 9

*Haier Am. Trading, LLC v. Samsung Elecs., Co.*,
  No. 1:17-cv-921 (TJM/CFH), 2018 WL 4288617 (N.D.N.Y. Sept. 7, 2018) ...................... 9

*InterDigital Commc'ns, Inc. v. ZTE Corp.*,
  No. 1:13-CV-00009-RGA, 2014 WL 2206218 (D. Del. May 28, 2014) .......................... 14

*Long v. Koninklijke Luchtvaart Maatschappij, N.V.*,
  No. 3:23CV435 (RCY), 2024 WL 3938825 (E.D. Va. Aug. 26, 2024) ............................ 10

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
  No. C 11-01036 JSW, 2011 WL 13152817 (N.D. Cal. July 14, 2011) ...................................... 11

*Mayers v. Addison Brown, LLC*,
  No. 3:19-CV-3043-S, 2020 WL 7646973 (N.D. Tex. Dec. 22, 2020) ....................................... 7

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ................................................................................................................. 3

*Mission Ins. Co. v. Puritan Fashions Corp.*,
  706 F.2d 599 (5th Cir. 1983) ................................................................................................... 3

*Okpalobi v. Foster*,
  244 F.3d 405 (5th Cir. 2001) ................................................................................................. 10

*Optis Wireless Tech., LLC v. Apple Inc.*,
  No. 2:19-CV-00066-JRG, 2020 WL 999463 (E.D. Tex. Mar. 2, 2020) ......................... 3, 4, 11

*Optis Wireless Tech., LLC v. Huawei Techs. Co.*,
  No. 2:17-cv-00123-JRG-RSP, 2018 WL 3375192 (E.D. Tex. July 11, 2018) ......................... 5

*Randall's Island Aquatic Leisure, LLC v. City of New York*,
  92 A.D.3d 463 (N.Y. App. Div. 2012) .................................................................................... 7

*Reifer v. Westport Ins. Corp.*,
  751 F.3d 129 (3d Cir. 2014) .................................................................................................... 3

*Tesla, Inc. v. Interdigital Patent Holdings, Inc.*,
  [2025] EWCA (Civ) 193 (Eng.) ....................................................................................... 12, 15

*Thompson v. City of Waco*,
  764 F.3d 500 (5th Cir. 2014) ................................................................................................... 3

*Travelers Indem. Co. v. Holman*,
  330 F.2d 142 (5th Cir. 1964) ................................................................................................... 9

*Voda v. Cordis Corp.*,
  476 F.3d 887 (Fed. Cir. 2007) ........................................................................................... 4, 11

*Wilton v. Seven Falls Co.*,
  515 U.S. 277 (1995) ............................................................................................................... 13

*Zenith Elecs., LLC, v. Sceptre, Inc.*,
  No. LA CV14–05150 JAK (AJWx), 2015 WL 12830689 (C.D. Cal. Feb. 5, 2015) ............. 14

**Statutes**

28 U.S.C. § 2201(a) ......................................................................................................................... 3

35 U.S.C. § 261 ............................................................................................................................... 5

## I. INTRODUCTION

HP's counterclaims seek unprecedented relief that is beyond the jurisdiction of any U.S. court to provide. Under the guise of a contract claim (or quasi-contract claim) against Sisvel—neither a plaintiff nor a party to the alleged contract—HP asks this Court to set a "global FRAND licensing rate" that would be applicable to hundreds of U.S. patents not asserted in this action, over a thousand non-U.S. patents, and even patents owned by third parties who simply belong to the patent pool administered by Sisvel. No U.S. court has entered into such an expansive exercise without the explicit consent of all parties (patent owner(s) and licensee), and it is unclear whether a "global FRAND licensing rate" determined by this Court would even be enforceable against HP (licensee) let alone Wilus (patent owner), Sisvel (patent pool operator), and other non-party patent owners. Worse, HP cannot articulate a particular promise made by *anybody* on which it relied, thus eliminating its promissory estoppel claims.

HP claims that Wilus breached its FRAND commitments by initiating litigation regarding patents directed to the IEEE Wi-Fi 6 (802.11ax) standard, while claiming Sisvel is liable (and properly a party) as Wilus's "licensing manager." HP seeks remedies well beyond those pertaining to the eight patents asserted by Wilus against HP in these cases. HP's definition of "Alleged Wi-Fi 6 SEPs" impermissibly encompasses (1) foreign patents, (2) patents owned by third parties, and (3) Wilus U.S. patents not asserted in this action. Federal Circuit precedent makes clear that U.S. district courts lack jurisdiction over claims relating to foreign patents, and there is no justiciable case or controversy with respect to non-party patents and patents not asserted here. In addition, Sisvel is not a party to any alleged IEEE contract and cannot be liable for any alleged breach of Wilus's purported FRAND commitments or those of non-party patent owners.

Beyond the failings on the merits, the Court should exercise its broad discretion to decline jurisdiction over the declaratory judgment claims. District courts have set global FRAND rates only when all parties have expressly consented to such an intensive determination—a key element that is missing here. Additionally, any global rate set by the Court would be unenforceable at least as to foreign Wilus-owned patents and all patents (U.S. or foreign) owned by non-party members of Sisvel's patent pool. Finally, while HP has agreed to be bound by a Court-determined FRAND rate, HP has not expressly agreed to take the

1

necessary license to the "Alleged Wi-Fi 6 SEPs." A rate is but one small piece of a patent license agreement. HP is requesting the Court to engage in the complex (advisory) task of determining a FRAND rate, with no guarantee that it will actually resolve any actual dispute between the parties.

## II.    BACKGROUND

Wilus Institute of Standards and Technology Inc. ("Wilus") filed patent infringement complaints against HP Inc. ("HP") and various other defendants in this Court on September 2024. *See* Dkt. 13. The two cases against HP are Lead Case No. 2:24-cv-00752 and Case No. 2:24-cv-00764. Wilus's eight asserted patents generally relate to wireless communications, and the accused products are HP Wi-Fi 6 (802.11ax) enabled devices.

On December 13, 2024, HP answered and filed counterclaims against Wilus and non-party Sisvel International S.A. ("Sisvel"). Dkt. 33, 39. Counterclaim Defendants Wilus and Sisvel moved to dismiss Counterclaims 1–6 for breach of contract, breach of the duty of good faith, and declaratory judgment for a global RAND licensing rate (Dkt. 93). In response, HP filed amended counterclaims (Dkt. 104, 105) adding new counts for promissory estoppel (Counterclaims 15–16). Dkt. 104 at 62–64.[1] Each of these counterclaims (1–6, 15–16) should be dismissed.

## III.   LEGAL STANDARD

### A.    Motion to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss, a complaint must state facts sufficient to render a claim plausible on its face. *Thompson v. City of Waco*, 764 F.3d 500, 502 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requires more than a "sheer possibility" the claims are true. *Id.* While the court must accept well-pleaded facts as true, it is not required to accept legal conclusions as true. *Id.*

---

[1] HP's amended counterclaims are substantially identical in both the -752 and -764 cases.

2

B.     **The Declaratory Judgment Act**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-CV-00066-JRG, 2020 WL 999463, at *2 (E.D. Tex. Mar. 2, 2020) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126 (2007); 28 U.S.C. § 2201(a)). It is a matter for the district court's "unique and substantial discretion" whether to decide a declaratory judgment action. *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 139 (3d Cir. 2014); *see also Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1361–62 (Fed. Cir. 2020). In other words, "the Declaratory Judgment Act gives the court a choice, not a command." *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir. 1983).

Determining whether to entertain a declaratory judgment action involves a three-step inquiry: (1) "whether an 'actual controversy' exists between the parties" in the case; (2) whether the court has authority to grant declaratory relief; and (3) whether "to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Optis*, 2020 WL 999463, at *2.

**IV.     ARGUMENT**

A.     **Counterclaims 1 and 2 (Breach of Contract re IEEE Policy) Fail as a Matter of Law and Should Be Dismissed**

Counterclaims 1 and 2 allege that Wilus and Sisvel have "breached [their] obligations to the IEEE, to HP, and to companies like HP by refusing to offer HP a license to the Alleged Wi-Fi 6 SEPs on FRAND terms and conditions." Dkt. 104 ¶¶ 53, 65. HP defines the "Alleged Wi-Fi 6 SEPs" as "all allegedly standard essential patents in Sisvel's Wi-Fi 6 patent pool." Dkt. 104 ¶ 19.[2] Critically, HP's counterclaims go well beyond the eight patents asserted by *Wilus* against *HP*, as the "Alleged Wi-Fi 6 SEPs," by definition, include

---

[2] HP's counterclaims further allege that the "'Alleged Wi-Fi 6 SEPs' refers to at least all patents listed in the brochure" published on Sisvel's website, which is available [here](). Dkt. 104 ¶ 19. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000) (courts may properly consider documents referenced in but not attached to a complaint).

3

(1) foreign patents not assertable in U.S. courts, (2) patents owned by third parties, and (3) and Wilus's U.S. patents not asserted in this action.

### 1. This Court Lacks Subject Matter Jurisdiction Over Counterclaims 1 and 2 Because They Involve Foreign Patents

This Court, relying on Federal Circuit precedent, has recognized on multiple occasions that it lacks subject matter jurisdiction over foreign patents. In *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-CV-00066-JRG, 2020 WL 999463 (E.D. Tex. Mar. 2, 2020), plaintiffs sought a declaratory judgment regarding their FRAND obligations with respect to standards essential patents. *Id.* at *1. The Court granted Apple's motion to dismiss because the claim implicated plaintiffs' obligations with respect to foreign patents, explaining "'it is almost always an abuse of discretion' to assume jurisdiction 'over a foreign patent infringement claim' and that this reasoning should apply equally to the hypothetical breach of a FRAND contract." *Id.* at *3 (citing *Voda v. Cordis Corp.*, 476 F.3d 887, 902 (Fed. Cir. 2007); *Optis Wireless Tech., LLC v. Huawei Techs. Co.*, No. 2:17-cv-00123-JRG-RSP, 2018 WL 3375192 (E.D. Tex. July 11, 2018)). "[C]laims asking the Court to pass upon foreign obligations under foreign laws related to foreign patents are best left to the courts of those foreign countries." *Id.* The same reasoning applies here. The "Alleged Wi-Fi 6 SEPs" include foreign patents, and HP's breach of contract claims improperly seek adjudication of Wilus's FRAND obligations with respect to such foreign patents either through Wilus or Sisvel.

These claims would not be salvaged even if limited to U.S. patents owned by Wilus. In *Optis*, after a bench trial to evaluate any evidence of negotiations over U.S.-only patents (there was none), the Court found that Optis had failed to offer a license to only its U.S. patents and dismissed the remainder of the claim. *Optis*, 2021 WL 2349343, at *2. Here, HP has not alleged—because it cannot—that there was either an offer or negotiations concerning a license limited to only U.S. patents owned by Wilus that also included patents not asserted in this action. Accordingly, HP has failed to allege a breach of FRAND obligations that includes patents not asserted in these actions but does not also require an adjudication of non-U.S. patent rights. Counterclaims 1 and 2 should thus be dismissed for lack of subject matter jurisdiction for this reason alone.

      **2.**      **Counterclaims 1 and 2 Fail to State a Claim for Breach of Contract with Respect to Non-party Patents**

HP acknowledges that the "Sisvel Wi-Fi 6 patent pool" includes patents owned by numerous non-parties, such as "Huawei Technologies Co., Ltd., MediaTek Inc., Mitsubishi Electric Corporation, Orange S.A., Panasonic Holdings Corporation, Koninklijke Philips N.V., and SK Telecom Co., Ltd." Dkt. 104 ¶ 27. HP's breach of contract claims improperly seek adjudication of rights and obligations pertaining to patents that are owned by these other non-party members of the Sisvel Wi-Fi 6 patent pool. Wilus has no ability, much less a contractual duty, to grant a license to patents it does not own, on FRAND terms or otherwise. *See* 35 U.S.C. § 261. HP's breach of contract claim against Sisvel is based solely on its status as Wilus's "licensing manager" and Wilus's purported "contractual commitments," and thus fails for the same reasons. *See* Dkt. 104 ¶ 60. Counterclaims 1 and 2 should be dismissed for failure to state a claim for breach of contract with respect to non-party patents.

      **3.**      **Counterclaims 1 and 2 Fail to State a Claim for Breach of Contract with Respect to Patents Not Asserted Against HP in This Case**

Counterclaims 1 and 2 fail for another reason: they encompass patents not asserted against HP in these actions. HP claims Wilus and Sisvel allege that "the patents asserted in this action" are essential to the Wi-Fi 6 standard, and that they breached their FRAND obligations in bringing this lawsuit as "leverage to gain higher than FRAND rates for the Sisvel Wi-Fi 6 patent pool." Dkt. 104 ¶¶ 47, 53, 57, 65. However, the "Alleged Wi-Fi 6 SEPs"—the foundation of HP's breach of contract claims—include patents that are not asserted against HP in litigation. *See id.* ¶¶ 19, 27. Indeed, aside from the patents-in-suit, HP has not specifically identified any patents that are part of the "Alleged Wi-Fi 6 SEPs" and for which HP was allegedly denied a license on FRAND terms, let alone the basis for such a breach. Counterclaims 1 and 2 should thus be dismissed, as HP has failed to plead any duty or breach thereof with respect to patents not asserted by Wilus against HP.

      **4.**      **Counterclaim 2 Fails to State a Claim Because Sisvel Is Not a Party to the Alleged IEEE Contract**

Counterclaim 2 is especially deficient because it does not plead that Sisvel owns any of the "Alleged

5

Wi-Fi 6 SEPs," and also does not plead that Sisvel is a party to the alleged contract between Wilus and the IEEE. Nor has HP pled any facts to support binding Sisvel as non-party to the alleged contract. Indeed, HP's counterclaims make clear that Wilus, and only Wilus, agreed to license SEPs under FRAND terms. *See, e.g.*, Dkt. 104 ¶¶ 21–25 (referring to the Letters of Licensing Assurance submitted by Wilus, and alleging that "*Wilus* committed to 'grant a license under reasonable rates,'" that "*Wilus* participated in the standard-setting process," and that "[t]he IEEE relied on *Wilus's* FRAND commitments when it allegedly incorporated *Wilus's* proprietary technology into the Wi-Fi 6 standard"); ¶¶ 29–30 (referring to "*Wilus's*, and the other members of its patent pool's, FRAND commitments" and "the contractual obligations *agreed to by Wilus* … as members of the relevant SSOs"); ¶ 48 ("*Wilus* entered into express and/or implied contracts with the IEEE's members … in which *Wilus* agreed, among other things, to abide by the IEEE's policies and rules"); ¶ 49 ("*Wilus* made this commitment by submitting Letters of Assurance to the IEEE"); ¶ 52 (referring to "*Wilus's* FRAND licensing promises) (all emphases added).

Rather than plead that Sisvel is a party to the alleged contract, HP pleads that "[b]ecause Sisvel contends that Alleged Wi-Fi 6 SEPs are essential to the Wi-Fi 6 standard, Sisvel is subject to the contractual obligations agreed to by Wilus … as members of the relevant SSOs." *Id.* ¶ 37. This fails as a matter of law. Sisvel baldly stating that certain patents are SEPs does not bind Sisvel to a contract to which it is not a party. There is no cognizable legal theory to support such a claim. *See Mayers v. Addison Brown, LLC*, No. 3:19-CV-3043-S, 2020 WL 7646973, at *2 (N.D. Tex. Dec. 22, 2020) ("a non-party to a contract typically cannot be sued for breach of that contract"); *Core Wireless Licensing S.a.r.l. v. Apple Inc.*, No. 6:12-CV-100-JRG, 2015 WL 4775973, at *3 (E.D. Tex. Aug. 11, 2015) (dismissing claim that Apple was obligated to "negotiate a FRAND royalty in good faith" because there was no *prima facie* case of the existence of a contract); *Randall's Island Aquatic Leisure, LLC v. City of New York*, 92 A.D.3d 463, 463 (N.Y. App. Div. 2012) ("There can be no breach of contract claim against a non-signatory to the contract.").

HP also alleges that Sisvel "publicly agreed to, reaffirmed, and acknowledged its FRAND commitments related to the Alleged Wi-Fi 6 SEPs" in a press release, and in a statement on its website that "[a]ll participating patent owners have submitted a negative LoA with respect to the IEEE 2015 updated

6

IPR Policy and/or are committed to license on FRAND terms." *Id.* ¶¶ 38–39. This also fails. Neither of these unilateral public marketing statements created a binding contract. To the contrary, Sisvel's alleged statements make clear that it is the "participating patent owners," and not Sisvel, who are committed to license on FRAND terms. Indeed, it is the patent owners—not Sisvel—that participated in the IEEE standard setting process. *Id.* ¶ 24.

Finally, HP's allegation that Sisvel is bound by Wilus's contractual commitments "[a]s the 'licensing manager' of Wilus's Wi-Fi 6 Patents and a transferee of the right to license those patents" (*id.* ¶ 60) also fails. Even assuming Sisvel is Wilus's agent (Sisvel and Wilus do not concede this), an agent is not bound to a contract "unless the agent agrees to be personally bound" or the agent "is made a party to the contract by her principal acting on her behalf with actual, implied, or apparent authority." *DK Joint Venture 1 v. Weyand*, 649 F.3d 310, 319 (5th Cir. 2011). There are no factual allegations establishing that Sisvel is Wilus's agent or that Sisvel either agreed to be bound by the alleged IEEE contract or granted Wilus authority to bind it to the contract. HP also does not allege that Sisvel is a transferee or assignee of any "Essential Patent Claim," therefore the quoted IEEE Bylaws in paragraph 36 of the counterclaims are inapplicable. HP alleges only that Wilus granted Sisvel authority to license Wilus's patents. *See* Dkt. 104 ¶ 70 (alleging that Sisvel is a "transferee of the *right to license* [Wilus's Wi-Fi 6] patents" (emphasis added)). Even if true, negotiating and granting licenses that include Wilus's patents does not make Sisvel a party to Wilus's letters of assurance to the IEEE or otherwise impose contractual liability on Sisvel. Counterclaim 2 should be dismissed because it pertains to a non-party to the alleged contract.

### B. Counterclaims 3 and 4 (Breach of Duty of Good Faith) Fail as a Matter of Law and Should Be Dismissed

Counterclaims 3 and 4 for breach of the duty of good faith fail for the reasons discussed above, as "a claim for breach of the implied covenant of good faith and fair dealing cannot exist absent a breach of contract." *Chartis Specialty Ins. Co. v. Tesoro Corp.*, 930 F. Supp. 2d 653, 665 (W.D. Tex. 2013); *see also Randall's Island*, 92 A.D.3d at 463.

### C. Counterclaims 15 and 16 (Promissory Estoppel) Fail as a Matter of Law and Should Be Dismissed

7

Perhaps recognizing that its contract claims are deficient, HP adds two new (presumably alternative) counterclaims against Wilus and Sisvel for promissory estoppel. "Promissory estoppel is a doctrine that operates as a substitute for consideration where a contract fails." *Funai Elec. Co. v. LSI Corp.*, No. 16-CV-01210-BLF, 2017 WL 1133513, at *10 (N.D. Cal. Mar. 27, 2017); *see Travelers Indem. Co. v. Holman*, 330 F.2d 142, 151 (5th Cir. 1964) ("promissory estoppel fills the gap" for lack of consideration). But the deficiencies in HP's contract claims are not limited to lack of consideration and must be dismissed for the many reasons discussed above that cannot be saved by the doctrine of promissory estoppel. Further, courts have held, as a matter of law, that an alleged obligation to offer licenses on FRAND terms cannot serve as the basis for a promissory estoppel claim because such promises to SSOs are "at best *promises to negotiate* the terms of such patent licenses." *Haier Am. Trading, LLC v. Samsung Elecs., Co.*, No. 1:17-cv-921 (TJM/CFH), 2018 WL 4288617, at *17 (N.D.N.Y. Sept. 7, 2018) (dismissing with prejudice promissory estoppel claim based on alleged failure to offer license on FRAND terms) (emphasis added). Such a generalized "promise to negotiate further is hardly an enforceable agreement." *Id.*; *see also Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 300 (5th Cir. 2010) (promissory estoppel requires a promise that is not "vague and indefinite").

HP's promissory estoppel claim is especially deficient as to Sisvel because Sisvel did not make *any* promise to the IEEE. HP all but concedes this point, alleging that "*Wilus and the other members* of Sisvel's Wi-Fi 6 patent pool [but not Sisvel itself] made a clear and definite promise to offer and grant a license to its IEEE 802.11 essential patents to HP and others on FRAND terms and conditions." Dkt. 104 ¶ 151 (emphasis added); *see also id.* ¶¶ 152, 154.

HP's conclusory assertion that Sisvel "adopted the promises of the pool members" by "continuing to tout the patent pool as being essential to Wi-Fi 6, and by advertising the fact that the pool members have either submitted a negative LOA and/or are committed to license on FRAND terms" (*id.* ¶ 155) fails as a matter of law. Public marketing statements are not actionable promises and do not create contractual obligations, and HP's use of the verb "tout" dooms its claims. *See Long v. Koninklijke Luchtvaart Maatschappij, N.V.*, No. 3:23CV435 (RCY), 2024 WL 3938825, at *7 (E.D. Va. Aug. 26, 2024) (citing 27

8

Williston on Contracts § 70:121 (4th ed.) for the proposition that advertisements "are not offers, but merely invitations to bargain"); *Abuelhawa v. Santa Clara Univ.*, 529 F. Supp. 3d 1059, 1065 (N.D. Cal. 2021) (plaintiff inadequately pled specific promise based on statements made on university website). Further, HP acknowledges that any reliance on any alleged promise was a promise made by the pool members, and not Sisvel.

Counterclaims 15 and 16 fails as a matter of law and should be dismissed.

### D. Counterclaims 5 and 6 (Declaratory Judgment for a Global FRAND Licensing Rate) Fail as a Matter of Law and Should Be Dismissed

Counterclaims 5 and 6 represent HP's greatest overreach and most legally erroneous theories where it seeks: "(1) a determination that Wilus [and Sisvel have] not offered a license to the Alleged Wi-Fi 6 SEPs on FRAND terms and conditions; and (2) a determination of what constitutes FRAND terms and conditions for a license to the Alleged Wi-Fi 6 SEPs, with those terms and conditions ***being ordered and imposed on the parties***." Dkt. 104 ¶¶ 100, 113 (emphasis added). They fail for the reasons discussed above: (1) the Court lacks jurisdiction to adjudicate foreign patents; (2) there is no justiciable case or controversy with respect to non-party patents and patents not asserted in this action; and (3) Sisvel is not bound to any alleged contract with the IEEE. *See Okpalobi v. Foster*, 244 F.3d 405, 424 n.31 (5th Cir. 2001) (the Declaratory Judgment Act "does not provide an additional cause of action with respect to the underlying claim"); *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 878 (9th Cir. 2022) ("the Declaratory Judgment Act does not provide an affirmative cause of action where none otherwise exists").

Even if HP's declaratory judgment claims are not deficient as a matter of law, the Court should exercise its wide discretion to decline jurisdiction over these claims, as all parties do not consent and adjudicating these claims would force the Court to engage in a complex rate determination with questionable enforceability.

#### 1. The Court Lacks Jurisdiction Over Foreign Patents

U.S. courts do not have authority to adjudicate patents of other sovereign nations. *Voda*, 476 F.3d at 902. In *Optis*, this Court granted the defendant's motion to dismiss declaratory judgment claims and

9

dismissed "any request to declare the parties' rights with respect to any foreign patents or under any foreign law." *Optis*, 2020 WL 999463, at *3, *5 (applying *Voda*); *see also Apple Inc. v. Qualcomm Inc.*, No. 3:17-cv-00108-GPC-MDD, 2017 WL 3966944, at *12 (S.D. Cal. Sept. 7, 2017) (explaining that the court's adjudication of Qualcomm's global contractual FRAND commitment to ETSI would not apply to foreign patent claims); *Lotes Co. v. Hon Hai Precision Indus. Co.*, No. C 11-01036 JSW, 2011 WL 13152817, at *4 (N.D. Cal. July 14, 2011) (declining jurisdiction over DJ claims relating to foreign patents).

Here, as in *Optis*, HP requests that this Court determine rights and obligations regarding the "Alleged Wi-Fi 6 SEPs," which is defined to include "all allegedly standard essential patents in Sisvel's Wi-Fi 6 patent pool." Dkt. 104 ¶ 19. This includes over a thousand foreign patents. Indeed, HP's DJ claims expressly ask the Court to determine a *global* FRAND licensing rate. Dkt. 104 at pp. 53, 56, 65. The Court thus lacks subject matter jurisdiction over Counterclaims 5 and 6.

### 2. There Is No Justiciable Case or Controversy with Respect to Non-party Patents and Patents Not Asserted in This Action

"When there is no actual controversy, the court has no discretion to decide the case." *Cat Tech LLC v. TubeMaster, Inc.*, 528 F.3d 871, 883 (Fed. Cir. 2008). Here, there is no controversy as to Wi-Fi 6 patents that are owned by non-parties such as Huawei, Mitsubishi Electric, and Panasonic. *See* Dkt. 104 ¶ 27. HP does not allege that it has sought a license to any non-party Wi-Fi 6 patents, nor that any of the non-party patentees have breached their FRAND obligations. Nonetheless, HP asks the Court to set a licensing rate for these non-party patentees' domestic and foreign patents. This fails as a matter of law.

There is also no actual controversy regarding patents not asserted in these actions. Indeed, HP does not actually identify any other essential Wi-Fi 6 patents owned by Wilus, violating Rule 8's requirement to provide fair notice of what the claims are. This Court lacks DJ jurisdiction over the non-party and unasserted patents, and Counterclaims 5 and 6 should be dismissed.[3]

---

[3] Even in the United Kingdom, where courts are willing to entertain efforts to set FRAND licensing rates that cover foreign patents, courts have declined to set rates for non-party patents simply because they were owned by members of the same patent pool. *See Tesla, Inc. v. Interdigital Patent Holdings, Inc.*, [2025] EWCA (Civ) 193, [222], [228], [231], [245] (Eng.). In *Tesla*, the UK Court of Appeal affirmed the lower

### 3. Sisvel Is Not a Party to the Alleged Contract with the IEEE and Thus the Court Cannot Impose FRAND Obligations on Sisvel

As set forth in detail above, Sisvel does not own any of the "Alleged Wi-Fi 6 SEPs" and is not a party to or otherwise bound by the alleged IEEE contract between Wilus and the relevant SSOs. Accordingly, the Court cannot enter the requested determination that Sisvel has "not offered a license to the Alleged Wi-Fi 6 SEPs on FRAND terms and conditions." Sisvel was never obligated to do so in the first place. Nor can the Court impose any FRAND obligations on Sisvel, for very much the same reasons articulated in the recent UK *Tesla* decision (*supra* n.4, available [here](#)). Counterclaim 6 thus fails to state a claim against Sisvel and should be dismissed.

### 4. Alternatively, the Court Should Exercise Its Discretion to Decline Declaratory Judgment Jurisdiction Over HP's Claims

Even assuming that the requirements for declaratory judgment relief are met, the Court should exercise its broad discretion to decline jurisdiction over HP's DJ claims. If the district court determines that "a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995); *see also Cat Tech*, 528 F.3d at 883.

The relief requested by HP would defeat the purpose of the Declaratory Judgment Act, as it would not resolve any actual dispute and would only create *more* uncertainty. If the Court (or jury) were to determine a FRAND rate for the Alleged Wi-Fi 6 SEPs, it would raise questions—and likely invite litigation—regarding applicability to foreign patents and non-party patents. *See Apple*, 2017 WL 3966944, at *12 ("[E]ven if this Court ultimately sets a worldwide FRAND rate for Qualcomm's global portfolio,

---

court's decision to dismiss a case filed by Tesla seeking a global FRAND rate determination of the patents in Avanci's pool by also suing Interdigital (one of the patent owners) as a representative. The appellate court held that members of the "Avanci 5G Platform" patent pool had no contractual agreement with the SSO "to license their SEPs on a collective basis with other SEP owners." *Id.* Further, the pool administrator itself had "no authority to negotiate let alone agree [to] 'FRAND terms' on behalf of the owners for the collective licensing of their SEPs." *Id.* [231]. Thus, there was "no contractual obligation that would give the English court jurisdiction to determine the 'FRAND terms' of a licence of the SEPs on the Avanci 5G platform, even if all of the SEP owners were joined or represented in the proceedings." *Id.* Similarly here, HP has not pled the existence of any contractual obligation with a SSO for Wilus or Sisvel to license the Wi-Fi 6 patents to HP on a collective basis with other members of a patent pool.

11

Apple's patent claims for invalidity and exhaustion under foreign law as to foreign patents will remain unaddressed."). And even if the Court were to limit the judgment to only Wilus's U.S. patents, HP has not agreed to accept a license based on the Court-determined FRAND terms and waive claims regarding validity and infringement for any Wilus patents. Nor has HP conceded that any of the relevant patents are, in fact, essential to the Wi-Fi 6 standard. *See* Dkt. 104 ¶¶ 15–19 (alleging only that Wilus claims the patents are essential). Disputes would thus remain as to whether Wilus's patents (particularly those not asserted in this case) are valid, whether HP's products utilize/infringe such patents, and whether they are essential.

HP attempted to cure this deficiency in its original counterclaims by adding the following allegation: "Should the Court declare a FRAND rate for Sisvel's Wi-Fi 6 patent portfolio, HP agrees to be bound by the FRAND rate declared by the Court." Dkt. 104 ¶¶ 101, 114. This is insufficient, as HP did *not* agree: (1) that the patents are valid and enforceable, (2) that the patents are essential, (3) that HP practices the patents, and (4) that HP will actually enter in a license agreement. Rather, HP only agrees that it is "bound" to the Court's rate in the event HP ultimately decides it wants to license the patents, presumably after exhausting all other options and defenses. HP's limited stipulation also does not cure the deficiencies related to the foreign, non-party, and unasserted patents. As aptly explained by one court in dismissing similar FRAND counterclaims:

> The Court is far from convinced that the trial that would be necessitated by the declaratory judgment would serve any useful purpose. First, even if the Court were to determine a FRAND rate, I am unclear as to how I could actually enforce such a ruling. While both Nokia, and to a greater extent ZTE, have indicated their "willingness" to accept a license, there has been no sworn affidavit by either company that they would sign a license. … Second, the determination of a FRAND rate would not lead directly to a patent license as multiple other license issues would still need to be negotiated between the parties, any one of which could become a sticking point. … Therefore, it is evident to the Court that even if the Court were able to determine the FRAND rate in an efficient manner, which the Court finds highly dubious considering that there are 500 or so possibly relevant patents, the Court's FRAND finding would have little utility and serve little to no useful purpose.
>
> The Court also finds that the Defendants' declaratory judgment actions seeking the Court to determine whether InterDigital has offered a FRAND rate, would also serve little to no useful purpose. First, the Court would have to determine an appropriate FRAND rate in order to determine whether a FRAND offer had been made, which as discussed above, would not serve any useful purpose. Second, the Court would need to determine whether such offer was actually made. Similar to the determination of the FRAND rate itself, the only purpose of this would be to alter the current negotiating power between the parties. Third, any impact that this determination would have on the

12

patents-in-suit is encompassed within the multitude of affirmative defenses that both Nokia and ZTE assert.

*InterDigital Commc'ns, Inc. v. ZTE Corp.*, No. 1:13-CV-00009-RGA, 2014 WL 2206218, at *3 (D. Del. May 28, 2014); *see also Zenith Elecs., LLC, v. Sceptre, Inc.*, No. LA CV14–05150 JAK (AJWx), 2015 WL 12830689, at *2 (C.D. Cal. Feb. 5, 2015) ("any determination of a FRAND rate, even as to only the four patents-in-suit, could be entirely academic" where defendant did not admit that it practices the patents-in-suit or that they are in fact essential to the ATSC Standard).

U.S. courts agree that the task of setting a FRAND rate should not be undertaken unless *all* relevant parties consent to the rate setting and also agree to actually *enter a license* at the rate set by the court. *See, e.g.*, *Interdigital*, 2014 WL 2206218, at *3; *Ericsson Inc. v. D-Link Sys., Inc.*, No. 6:10-CV-473, 2013 WL 4046225, at *21 (E.D. Tex. Aug. 6, 2013), *rev'd in part*, 773 F.3d 1201 (Fed. Cir. 2014) (absent agreement to "actually pay the RAND rate determined by the Court," determining an appropriate RAND royalty would "amount[] to nothing more than an advisory opinion as to Ericsson's initial RAND license offer"); *Apple Inc. v. Motorola Mobility, Inc.*, No. 11-CV-178-BBC, 2012 WL 7989412, at *3 (W.D. Wis. Nov. 8, 2012) (denying declaratory judgment claim due to "uncertainty over the propriety of engaging in the complex task of determining a FRAND rate if the end result would not resolve the parties' disputes"); *Ericsson Inc. v. Apple Inc.*, No. 2:21-cv-00376-JRG, Dkt. 89 at 4–5 (E.D. Tex. May 2, 2022) (explaining that "as in any contractual negotiation, the offeror's offer only becomes binding on the offeree when it is accepted," and that even if found to be FRAND, Apple was free to accept it or reject it).[4] Here, counterclaim defendants Wilus and Sisvel do not currently consent to a U.S. court setting an advisory global FRAND rate either for the hundreds of Wilus-owned patents or the more than a thousand patents in Sisvel's Wi-Fi 6 pool.[5] Furthermore, solely determining a FRAND rate would not only consume extraordinary judicial resources, but would ultimately yield an inconclusive, non-binding advisory opinion for one term of an undefined

---

[4] *See also Tesla*, [2025] EWCA (Civ) 193, [133], [139] (finding on the basis of testimony from a U.S. legal scholar that "so far, no US court has ever determined what terms for a global license under a portfolio of SEPs are FRAND without the consent of both parties").
[5] A license to the Wi-Fi 6 SEPs compliant with the Patent Owners' FRAND obligations remains available to HP either bilaterally or through the Sisvel pool.

license that HP has not agreed to sign let alone pay for. The requested declaratory judgment would thus serve "no useful purpose," and the Court should decline jurisdiction over these counterclaims rather than provide an advisory opinion.

## V. CONCLUSION

For the foregoing reasons, HP's Counterclaims 1–6 and 15–16 should be dismissed.

Dated: April 30, 2025

Respectfully submitted,

*/s/ Reza Mirzaie*
Marc Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Dale Chang
CA State Bar No. 248657
Email: dchang@raklaw.com
Neil A. Rubin
CA State Bar No. 250761
Email: nrubin@raklaw.com
Jacob Buczko
CA State Bar No. 269408
Email: jbuczko@raklaw.com
Jonathan Ma
CA State Bar No. 312773
Email: jma@raklaw.com
Mackenzie Paladino/
NY State Bar No. 6039366
Email: mpaladino@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Phone: (310) 826-7474

Andrea L. Fair
Email: andrea@millerfairhenry.com
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Phone: (903) 757-6400

*Attorneys for Plaintiff and Counterclaim Defendant Wilus Institute of Standards and Technology, Inc. and for Counterclaim Defendant Sisvel International S.A.*