# EXHIBIT 14

# UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/015,488 | 08/29/2025 | 10931396 | 4910-0116(WIL396) | 5977 |

| | |
|---|---|
| 158747          7590          10/14/2025 | **EXAMINER** |
| LADAS & PARRY | ENGLAND, DAVID E |
| E-MAIL | |
| 4525 WILSHIRE BOULEVARD | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

SUITE 240
LOS ANGELES, CA 90010

| MAIL DATE | DELIVERY MODE |
|---|---|
| 10/14/2025 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

ROTHWELL, FIGG, ERNST & MANBECK, P.C.
901 New York Avenue, N.W.
SUITE 900 East
WASHINGTON DC 20001

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/015,488* .

PATENT UNDER REEXAMINATION *10931396* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Order Granting Request For Ex Parte Reexamination* | Control No. | Patent Under Reexamination |
|---|---|---|
| | 90/015,488 | 10931396 |
| | **Examiner** | **Art Unit** | **AIA (FITF) Status** |
| | DAVID E ENGLAND | 3992 | Yes |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed 08/29/2025 has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:  a)☐  PTO-892,  b)☑  PTO/SB/08,  c)☐  Other: _____

1. ☑  The request for *ex parte* reexamination is GRANTED.

   RESPONSE TIMES ARE SET AS FOLLOWS:

   For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

   For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

| /DAVID E ENGLAND/ Primary Examiner, Art Unit 3992 | | |
|---|---|---|

cc:Requester ( if third party requester )

Application/Control Number: 90/015,488                                              Page 2
Art Unit: 3992

## DECISION GRANTING EX PARTE REEXAMINATION

A substantial new question of patentability affecting claims 1 – 16 of United States Patent Number 10,931,396 to Ahn et al., (hereafter "the '396 Patent") is being requested in an *ex parte* reexamination submitted on 08/29/2025.

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA.

### Notification of Concurrent Proceedings

The patent owner is reminded of the continuing responsibility under 37 CFR 1.985 to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the '396 Patent throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

Application/Control Number: 90/015,488                                    Page 3
Art Unit: 3992

## Concurrent or previous IPRs, ReExams, and Litigations

The '396 Patent has been asserted in the following litigation(s):

| Case Name | Filing Date | Status |
|---|---|---|
| *Wilus Institute of Standards and Technology, Inc. v. Askey Computer Corp.*, 2-24-cv-00766 (EDTX) | September 20, 2024 | Active |

## Prosecution History

The '396 Patent issued from U.S. Application 16/449,132 (" the '132 Application"), filed

on 06/21/2019. The last rejection before the notice of allowance stated that claims 3, 4, 11, and

12 are objected and would be allowable if rewritten in independent form, See '132 Application,

Final Rejection dated 05/01/2020. Applicant filed an RCE with amendments to the claims,

08/03/2020. The amendment did not place claims 3, 4, 11, or 12 in independent form. Applicant

then argued that the prior art of Ghosh did not teach the claims, See RCE filed 08/03/2020.

"Ghosh fails to disclose that "*the specific format of the response frame for the A-MPDU*

*is determined based on* the number of TIDs soliciting an immediate response in the one

or more MPDUs successfully received in the A-MPDU, and **combination of the EOF**

**field and the length field** included in the MPDU delimiter information of the A-MPDU"

as recited in claim 1 (emphasis added)."

The Notice of Allowance was subsequently filed, 10/20/2020. The Notice of Allowance did not

specifically state what the reasons for allowance are.

Therefore, since the previous Examiner did not specifically state the reasons for

allowance, it can only be interpreted that the Applicant' arguments to the specific claim

limitation are the reasons for allowance.

Application/Control Number: 90/015,488                                    Page 4
Art Unit: 3992

**Analysis of Substantial New Question of Patentability**

A SNQ of patentability is raised by a cited patent or printed publication when there is a

substantial likelihood that a reasonable examiner would consider the prior art patent or printed

publication important in deciding whether the claim is patentable.  A SNQ of patentability is not

raised by prior art presented in a reexamination request if the Office has previously considered

(in an earlier examination of the patent) the same question of patentability as to a patent claim

favorable to the patent owner based on the same prior art patents or printed publications. In re

Recreative Technologies, 83 F.3d 1394, 38 USPQ2d 1776 (Fed. Cir. 1996). The substantial new

question of patentability may be based on art previously considered by the Office if the reference

is presented in a new light or a different way that escaped review during earlier examination.

MPEP §2216.

It is not sufficient that a request for reexamination merely proposes one or more

rejections of a patent claim or claims as a basis for reexamination. It must first be demonstrated

that a patent or printed publication that is relied upon in a proposed rejection presents a new,

non-cumulative technological teaching that was not previously considered and discussed on the

record during the prosecution of the application that resulted in the patent for which

reexamination is requested, and during the prosecution of any other prior proceeding involving

the patent for which reexamination is requested. MPEP §2216.

The examiner can also consider any patents and printed publications of record in the

patent file from submissions under **37 CFR 1.501,** which is in compliance with **37 CFR 1.98,** in

making the determination. If the examiner believes that additional prior art patents and

publications can be readily obtained by searching to supply any deficiencies in the prior art cited

in the request, the examiner can perform such an additional search. Such a search should be

Application/Control Number: 90/015,488                                       Page 5
Art Unit: 3992

limited to that area most likely to contain the deficiency of the prior art previously considered

and should be made only where there is a reasonable likelihood that prior art can be found to

supply any deficiency necessary to "a substantial new question of patentability." MPEP §2244

    The Director of the USPTO may conduct a search for new art to determine whether a

substantial new question of patentability exists prior to terminating the prosecution of any

ongoing reexamination proceeding. See **35 U.S.C. 303**. See also **35 U.S.C. 305** (indicating that

"reexamination will be conducted according to the procedures established for initial

examination," thereby suggesting that the Director of the USPTO may conduct a search during

an ongoing reexamination proceeding). MPEP 2258.01


**Basis of SNQ**

    Third Party Requester, hereinafter "3PR", proposes a SNQ concerning claims 1 – 16 of

the '396 Patent. In the history of the '396 Patent, it would appear that the Applicant's last

arguments are the reasons for allowance and are therefore the basis for the SNQ. The limitation

in question reads as follows:

> "*wherein the specific format of the response frame for the A-MPDU is determined based on the number of TIDs soliciting an immediate response in the one or more MPDUs successfully received in the A-MPDU, and combination of the EOF field and the length field included in the MPDU delimiter information of the A-MPDU.*"


**Proposed Substantial New Question of Patentability**

    3PR identifies the following prior art as forming the basis for the SNQ in the Request in

proposed rejections, see the Request pp. 5 – 33.

- U.S. Patent No. 10,278,224 to Chu et al., ("Chu").

Application/Control Number: 90/015,488                                                Page 6
Art Unit: 3992

- • U.S. Patent No. 10,728,799 to Chun et al., ("Chun").

- • U.S. Patent No. 9,232,436 to Stacey et al., ("Stacey").

   **Declaration** of James T. Geier Under 37 C.F.R. § 1.132.


   3PR has alleged a SNQ of patentability with regards to claims 1 – 16 of the '396 Patent in

light of the prior art utilized in this proposed rejection which is stated below and in the

corresponding Request for Reexamination:

| Proposed Rejection 1 | Claims 1-16 would have been obvious under 35 U.S.C. § 103 in view of Chu, Chun, and Stacey |
| --- | --- |


**Alleged SNQ based upon Chu, Chun, and Stacey**

   Chu, Chun, and Stacey are presented to determine if a SNQ of patentability is raised

regarding at least independent claim 1 of the '396 Patent. Chu, Chun, and Stacey were not used

or discussed as prior art used in a rejection or reasons for allowance in prior prosecutions of the

application which became the '396 Patent. Chu, Chun, and Stacey teach technological features

that a reasonable Examiner would consider important in deciding whether the subject claims are

patentable.

Application/Control Number: 90/015,488                                      Page 7
Art Unit: 3992

**Chu** discloses a wireless communication with an access point and client stations as seen in Figure 1 below.



The access point and client stations 25 are configured to acknowledge data unit(s), e.g., MPDUs or A-MPDUs corresponding to one or more traffic classes, from either single or multiple devices, (e.g., Chu, 3:22-63, 8:19-38, "*In various embodiments and/or scenarios, one or both of the AP 14 and the client station 25 are configured to receive multiple uplink data units simultaneously transmitted by multiple second communication devices. The AP 14 or client station 25 generates an acknowledgment data unit to acknowledge receipt of the multiple data units.*"). As shown above in FIG. 1, the terminals of Chu (e.g., access points and client stations) have various processing and transmit/receive components. For instance, the access point and client stations each include transceivers that are coupled to antennas (24, 34), and configured to transmit and receive data units(e.g., Chu, FIG. 1, (transceivers 21-1, 21-2, and 21-3 of the access

point; transceiver 30-1, 30-2, and 30-3 of the client), 7:45-47, 8:9-18). Likewise, each terminal

includes a host processor ("host" 15, 26), a medium access control (MAC) processor ("MAC"

18, 28), and a physical processor ("PHY" 20, 29) (e.g., Chu, FIG. 1, 5:66-6:19, 6:47-65). In

embodiments, the MAC processor and PHY processor are configured to generate and receive

data units:

> "[T]he MAC processor 18 and the PHY processor 20 of the AP 14 are configured to
> generate data units conforming to the first communication protocol and having
> formats described herein...For example, in an embodiment, the MAC processor 18 is
> configured to generate MAC layer data units such as MPDUs, MAC control frames, etc.,
> and provide the MAC layer data units to the PHY processor 20. In an embodiment, the
> PHY processor 20 is configured to receive MAC layer data units from the MAC
> processor 18 and encapsulate the MAC layer data units to generate PHY data units such
> as PHY protocol data units (PPDUs) for transmission via the antennas 24. Similarly, in
> an embodiment, the PHY processor 20 is configured to receive PHY data units that were
> received via the antennas 24, and extract MAC layer data units encapsulated within the
> PHY data units. In an embodiment, the PHY processor 20 provides the extracted MAC
> layer data units to the MAC processor 18, which processes the MAC layer data units."

, (e.g., Chu, 7:20-43; see also id. at 7:53-8:8, describing functions of the MAC and PHY

processors at the client stations 25). Though depicted with separate functional boxes in the

example of FIG. 1, Chu explains that the MAC and PHY processors may be integrated into a

single device, such as a single integrated circuit (IC), (e.g., Chu, 5:66-6:19, 6:47-65). With

respect to receiving data units, Chu discloses a received A-MPDU 500, which includes A-MPDU

subframes 502, 504, 506 (subframes 1-*n*):



FIG. 5A

Application/Control Number: 90/015,488                                                Page 9
Art Unit: 3992

, (e.g., Chu, 14:66-15:23, 11:40-12:20, describing MPDU 300). An example of the form and

content of an A-MPDU subframe 520 is provided below:



FIG. 5B

more of the A-MPDU subframes 502, 504, or 506, in an embodiment. The A-MPDU subframe

520 includes an MPDU delimiter field 522 (4 bytes), an MPDU 524 having a variable length,

and optionally a padding field 526 (0 to 3 bytes).") Chu further describes the contents of the

MPDU delimiter filed 522 with reference to MPDU delimiter 530 and FIG. 5C (annotated):



FIG. 5C

, (e.g., Chu, 15:18-23, "The MPDU delimiter 530 corresponds to the MPDU delimiter 522, in an

embodiment. The MPDU delimiter 530 includes an end of frame (EOF) subfield 532 (1 bit), a

reserved subfield 534 (1 bit), an MPDU length subfield 536 (14 bits), a cyclic redundancy check

(CRC) subfield 538 (8 bits), and a delimiter signature subfield 540 (8 bits).").

        As indicated with the annotations above, the MPDU delimiter of Chu includes an EOF

subfield 532 and an MPDU length subfield 536, (e.g., Chu, 15:19-22). The A-MPDUs, and in

particular the MPDUs of the subframes, each correspond to a traffic identification (TID), (e.g.,

Chu, 11:55-58, "the plurality of data units correspond to one, two, three, or more traffic classes

(TC) or traffic specification identified by different traffic identifications (TIDs).", 11:64- 12:2,

12:63-67, "receives an A-MPDU that includes a first MPDU with a first TID from a first client

Application/Control Number: 90/015,488                                            Page 10
Art Unit: 3992

station, a second MPDU with a second TID from the first client station..."). Chu further describes

how its terminals respond to A-MPDUs, for instance, using an acknowledgement response frame

MPDU 350 as shown in FIG. 3B:



FIG. 3B

, (e.g., Chu, 12:28-50, "the MPDU 350 is included in an acknowledgment data unit in response

to a received A-MPDU").

The response frame may take different forms, including a normal ACK, BlockACK, or

multi-TID BlockACK for multiple stations, (e.g., Chu, 12:28-50, 12:51-13:2, 13:15-23, 14:30-

39, 18:37-51, FIG. 4A-4C). For example, depending on which specific response frame format is

requested (e.g., based on the contents of the A-MPDU), the BA information field of the response

frame (shown as BA information 354 in FIG. 3B, above) will change. For example, for a

BlockACK, the BA information field will have the format shown below in FIG. 4B.



FIG. 4B

However, and as indicated by FIG. 3B, the BA information field 354 of MPDU 350 is "variable"

such that, for a multi-TID block ack for instance, the BA information field is repeated for each

TID, (e.g., Chu, 13:15-23, 14:30-39). As another response format example, for a single/normal

type acknowledgement, the fields corresponding to block acknowledgements (e.g., the block ack

starting sequence control field and block ack bitmap field) are omitted, (e.g., Chu, FIGs. 9A-9C,

Application/Control Number: 90/015,488                                    Page 11
Art Unit: 3992

20:21-36). One way in which the response format is signaled is by using the EOF subfield and

the MPDU length subfield:

> "*In an embodiment and/or scenario, the AP 14 sets the acknowledgment policy bits and the EOF field 532 so that an MPDU having an acknowledgment policy corresponding to a normal acknowledgment request (e.g., Normal Ack Request) can be sent within an OFDMA A-MPDU. In other words, the AP 14 utilizes the EOF field 532 and the MPDU Length field 534 to differentiate between a normal acknowledgment request and a block acknowledgment request.*"

, (e.g., Chu, 15:32-54).

In Chu, the response frames (e.g., MPDU 350) can include TID information. For

instance, the response may indicate acknowledgement on a per-TID basis:

> "*In various embodiments and/or scenarios, the AP 14 generates the MPDU 350 to indicate an acknowledgment (or negative acknowledgment) of a plurality of data units within a previously received A-MPDU. In some embodiments and/or scenarios, the plurality of data units correspond to one, two, three, or more traffic classes identified by different TIDs. In some embodiments, the plurality of data units is transmitted from a plurality of client stations. In at least some embodiments, the plurality of data units is transmitted from a plurality of client stations and corresponds to one or more different TIDs for each of the plurality of client stations. In an embodiment, for example, the AP 14 receives an A-MPDU that includes a first MPDU with a first TID from a first client station, a second MPDU with a second TID from the first client station, and a third MPDU with the first TID from a second client station. In some embodiments, the plurality of data frames of the previously received A-MPDU includes a management frame and a request for Ack acknowledgement of the management frame.*"

, (e.g., Chu, 12:51-13:2). The TID information may be signaled, for instance, via the BA

information or control field. See, e.g.:



FIG. 4A

, (e.g., Chu, 13:45-46, "The BA control field 400 correspond to the BA control field 352, in an embodiment.", 13:59-14:2, "The per TID information subfield 422 indicates a particular traffic class ID (TID) for the instance of the BA information field 420. In various embodiments, for example, the per TID information subfield 422 indicates a TID of 0, 1, 2,... 6, or 7", 14:24-39).

**Chun** is directed to signaling for next- generation 802.11 WLAN technologies, including support for higher throughput and high- efficiency (HE) systems, (e.g., Chun, 1:26-2:27, 19:11-19, 52:61-53:11, FIG. 5). Chun describes implementation in an 802.11-based system with one or more stations (STAs):



, (e.g., Chun, FIG. 1; 7:30-44, 9:15-24, "In a WLAN system, an STA is an apparatus operating in accordance with the medium access control (MAC)/PHY regulations of IEEE 802.11. An STA may include an AP STA and a non-AP STA...."). Aspects of Chun are directed to the communication of TID information, (e.g., Chun, 34:7- 35:43, Tables 10-11). For instance, a

Application/Control Number: 90/015,488                                            Page 13
Art Unit: 3992

block ACK request (BAR) frame can include a "TID_ INFO" field, which includes: (1) the TID

that requests a BA frame in the case of a basic BA frame or a compressed BA frame, or (ii) the

number of TIDs in the case of a multi-TID BA frame, (e.g., Chun, FIGs. 17-18). An example of

the BAR control field of the BAR frame is illustrated below:

TABLE 10

| subfield | bit | description |
|---|---|---|
| BAR ACK policy | 1 | Set to "0" when a sender requests an immediate ACK for data transmission. Set to "1" when a sender does not request an immediate ACK for data transmission. |
| Multi-TID Compressed bitmap | 1 1 | Indicate the type of BAR frame depending on the values of a multi-TID subfield and a compressed bitmap subfield. 00: Basic BAR 01: Compressed BAR 10: Reserved value 11: Multi-TID BAR |
| Reserved | 9 | |
| TID_Info | 4 | The meaning of a TID_Info field is determined by the type of BAR frame. Include TID that requests a BA frame in the case of a basic BAR frame, a compressed BAR frame. Include the number of TIDs in the case of a multi-TID BAR frame |

, (e.g., Chun, 33:61-34:12). The meaning of the "TID_ Info" field varies depending on the type

of BAR frame: it identifies the TID of the request in the case of a BAR frame or compressed

BAR frame; it is the number of TIDs in the case of a multi-TID BAR frame. Likewise, the BAR

information field can include "Per TID Info," such as a "TID Value," that is repeated for each

TID in the case of a multi-TID BAR frame, (e.g., Chun, 34:60-67, FIG. 18). Chun also describes

the use of TID information in the block ACK frame, (e.g., Chun, FIGs. 19-20, Table 11, 35:7-23,

"The BA control field includes a BA ACK policy subfield, a multi-TID subfield, a compressed

bitmap subfield, a reserved subfield, and a TID information (TID Info) subfield."). For instance,

Chun illustrates the block acknowledgement (BA) information field of a block ACK frame,

including in the case of a multi-TID BA frame in FIG. 20(c):

Application/Control Number: 90/015,488                                    Page 14
Art Unit: 3992



, (e.g., Chun, 36:30-52). With these fields, a station can provide acknowledgements (e.g., a "1"

or "0") on a per-TID basis. See *Id.*


**Stacey** directed to "wireless systems and, more particularly, to systems and methods for

media access control (MAC) protocol data unit (MPDU) signaling in a wireless environment.",

(e.g., Stacey, 1:14-17). Stacey describes techniques for "reducing signaling requirements and

decreasing an amount of overhead used for the transmission and reception of data in the wireless

communication network," and thus, increasing throughput, (e.g., Stacey, 1:33-35).

As with the '396 Patent, this is accomplished in Stacey through the use of A-MPDU

frames, which comprise "a sequence of a number of A-MPDU subframes including A-MPDU

subframe 1 302, A-MPDU subframe 2 304, through and including A-MPDU subframe n 306.",

(e.g., Stacey, 5:36-6:39). Figure 3 illustrates the A-MPDU subframes:



Application/Control Number: 90/015,488                                                      Page 15
Art Unit: 3992

*Id.* at FIG. 3. The number of subframes used in a particular communication is variable and can

include one or more subframes per A-MPDU 300 frame, (e.g., Stacey, 5:41-42). Each subframe

includes an MPDU delimiter 310 with the MPDU 312 and pad 314, (e.g., Stacey, FIG. 3).

  Stacey further describes in detail the contents of the MPDU delimiter 310, including an

EOF field and MPDU length field:

> "*The EOF field 316 is an indication field that may contain a number of bits, wherein in*
> *an embodiment a bit is set to 1 (one) in all zero length A-MPDU subframes following a*
> *last non-zero length A-MPDU subframe in a VHT PPDU. The EOF field 316 may be set*
> *to 1 (one) in a single A-MPDU subframe such as A-MPDU subframe 1 320 in an*
> *embodiment having a non-zero length. The EOF field 316 is set to 0 (zero) otherwise. The*
> *reserved field 318 is left available for a number of bits to indicate a status or for*
> *signaling purposes.* **The MPDU length 320 indicates a length of the MPDU 312**,
> *wherein the length may be expressed in octets and may be 14 bits in length, wherein a*
> *number of the 14 bits may be high order bits and a number of the 14 bits are low order*
> *bits in an embodiment*."

, *Id.* at 6:1-20 (emphasis added).

  The EOF field may be set to "0" or "1," and the length maybe "0" or "greater than zero.",

(e.g., Stacey, 6:21-65, FIGs. 4-6). As explained in Stacey, these values may be used to define the

desired format of an acknowledgement response, (e.g., Stacey, 6:52-60, "[T]he EOF field 316 is

used in combination with the MPDU length 320 to signal characteristics of the A- MPDU 300,

which may be used to solicit a desired acknowledgement behavior.").

  For instance, Stacey provides several examples of acknowledgement behavior (e.g., a

normal ACK or block ACK) based on the combination of EOF field and MPDU length field:

> "*In an embodiment, when the EOF field 316 is set to 1 (one) and the MPDU length is*
> *greater than 0 (zero) in an MPDU delimiter 310 of delimiter 502, this configuration is*
> *used to indicate that the A-MPDU 300 has only one MPDU 312 and that no other*
> *MPDUs 312 are present in the A-MPDU 300. Further,* **where the EOF field 316 is set to**

> *1 (one) and the MPDU length is greater than 0 (zero) in an MPDU delimiter 310,*
> *wherein an Ack policy is set to "normal ack," then an ACK response is expected from a*
> *receiving device such as the wireless communication device 206. The MPDU 312 in this*
> *embodiment may be a quality of service (QoS) Data MPDU, however the embodiment is*
> *not so limited. **In an alternate embodiment where the EOF field 316 is set to 0 (zero)***
> ***and the MPDU length is greater than 0 (zero) in an MPDU delimiter 310, wherein an***
> ***Ack policy is set to "normal ack," then a block Ack (BA) response is expected from the***
> ***receiving device**."*

*Id.* at 6:61-7:10 (emphasis added).

> *"In embodiments, the EOF field 316 can be established based on a number of criteria.*
> *For example, a padding delimiter is a delimiter with a length=0 (zero) and an EOF field*
> *316 in a padding delimiter that occurs between MPDUs 312 can be set to 0 (zero). The*
> *EOF field 316 in a padding delimiter at the end of the A-MPDU 300, following all*
> *MPDUs 312 in the A-MPDU 300, can be set to 1 (one). Further an MPDU delimiter 310*
> *that delimits, or immediately precedes an MPDU 312 has a length greater than 0 (zero) if*
> *the MPDU 312 is greater than 0 (zero). Also, for an A-MPDU 300 that has more than*
> *one MPDU 312, delimiters that precede an MPDU 312 can have the EOF field 316 set to*
> *0 (zero). For an A-MPDU 300 that carries a single MPDU 312, an MPDU delimiter 310*
> *in the A-MPDU 300 may have the EOF field 316 set to one. **A transmitter such as the***
> ***VHT AP 104 or the VHT communication station 102 of FIG. 1 may set the EOF field***
> ***316 to 1 (one) to solicit an Ack response to a QoS data frame with an Ack policy equal***
> ***to "normal ack." The EOF field 316 may be set to 0 (zero) if a block acknowledgement***
> ***(BA) response is expected**."*

, *Id.* at 7:20-39 (emphasis added).

    In this way, Stacey discloses that the format of the response frame is determined (i.e., via

the acknowledgement policy set to "normal ack" or "block ack") by the combination of the EOF

field and the length field. For instance, the MPDU delimiter 310 includes an EOF field 316 and

MPDU length field 320, (e.g., Stacey, FIG. 3; 5:62-67). The combination of the EOF field 316

being set to "1" or "0" and the MPDU length being greater than 0 corresponds to information

regarding A-MPDU 300, e.g., whether the A-MPDU 300 has a single or multiple MPDU 312s,

(e.g., Stacey, 6:61-7:10), shown above. This configuration indicates whether the

acknowledgement policy is set to "normal ack" or "block ack," and subsequently the type of

response the receiving device expects. Moreover, there are other instances in Stacey where the

EOF field and MPDU length determine the format of the response, (e.g., Stacey, 6:61- 7:39,

7:40-56).


**Accordingly**, the teachings of Chu, Chun, and Stacey would be important to a reasonable

examiner in deciding patentability as to at least independent claim 1 of the '396 Patent.

Therefore, Chu in combination with Chun and/or Stacey would raise a SNQ. Chu, Chun, and

Stacey teachings are new and non-cumulative.  Accordingly, Chu, Chun, and Stacey raises a

substantial new question of patentability as to at least independent claim 1 of the '396 Patent that

have not been decided in a previous examination.


## 35 U.S.C. 325(d)

A review of the post grant history for the '396 Patent indicates that there have been no

other Office post grant challenges involving the patent (Reexamination Proceedings or Inter

Partes Review, Post Grant Review, Covered Business Method trials). Accordingly, a

determination of whether to exercise discretion to reject the request pursuant to 35 USC 325(d) is

not applicable.

Application/Control Number: 90/015,488                                    Page 18
Art Unit: 3992

### Conclusion

Accordingly, as seen above, the prior art of Chu in combination with Chun and/or Stacey cited areas supplied by the 3PR raises a SNQ on at least the independent claims 1 and 9 of the '396 Patent.

Therefore, *ex parte* Reexamination is ordered in view of the determination above that the prior art presented in the Request raises an SNQ as to claims 1 – 16 of the '396 patent.

## CORRESPONDENCE

**All** correspondence relating to this ex parte reexamination proceeding should be directed:

Electronically: Registered users may submit via Patent Center at https://patentcenter.uspto.gov/.

By Mail to:          Mail Stop *Ex Parte* Reexam
                     Central Reexamination Unit
                     Commissioner for Patents
                     United States Patent & Trademark Office
                     P.O. Box 1450
                     Alexandria, VA 22313-1450

By FAX to:           (571) 273-9900
                     Central Reexamination Unit

By hand:             Customer Service Window
                     Knox Building
                     501 Dulany Street
                     Alexandria, VA 22314

For electronic transmissions, 37 CFR 1.8(a)(1)(i)(C) and (ii) states that correspondence (except for a request for reexamination and a corrected or replacement request for reexamination) will be considered timely filed if (a) it is transmitted via the USPTO patent electronic filing system in accordance with 37 CFR 1.6(a)(4), and (b) includes a certificate of transmission for each piece of correspondence stating the date of transmission, which is prior to the expiration of the set period of time in the Office action.

Application/Control Number: 90/015,488                                                    Page 19
Art Unit: 3992

Any inquiry concerning this communication or earlier communications from the

Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination

Unit at telephone number (571) 272-7705.

Signed:
/DAVID E ENGLAND/
Primary Examiner, Art Unit 3992


/M.F/
Supervisory Patent Examiner, Art Unit 3992