IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br>         Plaintiff, <br><br> v. <br><br> HP INC. <br><br>         Defendant. | Civil Case No. 2:24-cv-00752-JRG [Lead Case] |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br>         Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. <br>         Defendants. | Civil Case No. 2:24-cv-00746-JRG [Member Case] |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br>         Plaintiff, <br><br> v. <br><br> HP INC. <br>         Defendant. | Civil Case No. 2:24-cv-00764-JRG [Member Case] |

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br>         Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. <br>         Defendants. | Civil Case No. 2:24-cv-00765-JRG [Member Case] |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br>         Plaintiff, <br><br> v. <br><br> ASKEY COMPUTER CORP., ASKEY INTERNATIONAL CORP. <br><br>         Defendants. | Civil Case No. 2:24-cv-00766-JRG [Member Case] |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br>         Plaintiff, <br><br> v. <br><br> ASKEY COMPUTER CORP., ASKEY INTERNATIONAL CORP. <br><br>         Defendants. | Civil Case No. 2:24-cv-00753-JRG-RSP [Member Case] |

### DEFENDANTS' RESPONSIVE CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    NARROWING OF ISSUES .............................................................................. 1

III.   DISPUTED CLAIM TERMS ............................................................................ 4

       A.     CLAIM TERMS DISPUTED BETWEEN WILUS AND SAMSUNG ................. 4

              1.     U.S. Patent Nos. 11,116,035 and 11,516,879 ................................ 4

       B.     CLAIM TERMS DISPUTED BETWEEN WILUS AND ASKEY .................... 10

              1.     "A wireless communication terminal" ('077, '992, '421, '233, '396, and '926, patents)......................................................................... 10

IV.    CONCLUSION................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*,
521 F.3d 1351 (Fed. Cir. 2008)................................................................5, 8

*Ortho-McNeil Pharm, Inc. v. Mylan Lab'ys, Inc.*,
520 F.3d 1358 (Fed. Cir. 2008)................................................................7

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)................................................................7

*Ruckus Wireless, Inc. v. Innovative Wireless Sols., LLC*,
824 F.3d 999 (Fed. Cir. 2016)................................................................10

*Symantec Corp. v. Comput. Assoc. Int'l, Inc.*,
522 F.3d 1279 (Fed. Cir. 2008)................................................................8

*In re Varma*,
816 F.3d 1352 (Fed. Cir. 2016)................................................................7

## TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| A. | Deposition of Mark Lanning taken on October 24, 2025 |

## I.    INTRODUCTION

Defendants Samsung Electronics Co., LTD. and Samsung Electronics America, Inc. (hereafter, "Samsung Defendants" or "Samsung"), as well as Askey Computer Corp. and Askey International Corp. (hereafter, "Askey Defendants" or "Askey") (collectively, "Defendants"), respectfully submit this Responsive Claim Construction Brief and ask the Court to adopt their constructions for the reasons set forth below.

## II.    NARROWING OF ISSUES

In the interest of narrowing the issues in this case, Askey and Samsung hereby withdraw positions stated in the Joint Claim Construction and Prehearing Statement (Dkt. 166) ("JCCS") for the following terms from the one patent commonly asserted against both defendants (U.S. Patent No. 10,313,077) and propose these terms be given their plain and ordinary meaning.

| Claim Term | Agreed Proposed Construction |
|---|---|
| "obtain[\ing] length information indicating information on a duration of the non-legacy physical layer frame [after a legacy signaling field], from the legacy signaling field"<br><br>('077 patent, cls. 1, 8) (Dkt. 179-3) | Plain and ordinary meaning; not indefinite |
| "obtain[\ing] information other than [the] information on the duration of the non-legacy physical layer frame through a remaining value obtained by dividing the length information by a data size transmittable by a symbol of a legacy physical layer frame"<br><br>('077 patent, cls. 1, 8) (*Id.*) | Plain and ordinary meaning; not indefinite |
| "the duration of the non-legacy physical layer frame after the legacy signaling field"<br><br>('077 patent, cl. 3) (*Id.*) | Plain and ordinary meaning; not indefinite |

Samsung further withdraws positions stated in the JCCS for the following terms in the remaining patents in the consolidated matters asserted against it and proposes these terms be given their plain and ordinary meaning.

| Claim Term | Agreed Proposed Construction |
|---|---|
| "a format of user field(s) included in a user specific field of the HE-SIG-B is identified based on a number of MU-MIMO users indicated by a subfield of the HE-SIG-A"<br><br>('210 patent, cls. 1, 6) (Dkt. 179-2) | Plain and ordinary meaning; not indefinite |
| "obtain[\ing] information of an unassigned resource unit via at least one of the bandwidth field of the HE-SIG-A and a subfield of HE-SIG-B of the received packet"<br><br>('281 patent, cls. 1, 8) (Dkt. 179-4) | Plain and ordinary meaning; not indefinite |
| "the total bandwidth information"<br><br>('595 patent, cl. 7) (Dkt. 179-5) | Plain and ordinary meaning; not indefinite, wherein "the total bandwidth information" refers to the total bandwidth information indicated by the bandwidth field |
| "intra-BSS"<br><br>('163 patent, cls. 2-3, 6, 10-11, 14; '597 patent, cls. 2-3, 6, 10-11, 14) (Dkts. 179-6, 179-7) | Plain and ordinary meaning; no further construction necessary |
| "inter-BSS"<br><br>('163 patent, cls. 2, 10; '597 patent, cls. 2, 10) (*Id.*) | Plain and ordinary meaning; no further construction necessary |
| "intra-BSS PPDU"<br><br>('163 patent, cls. 2, 6, 10, 14; '597 patent, cls. 2, 6, 10, 14) (*Id.*) | Plain and ordinary meaning; no further construction necessary |
| "inter-BSS PPDU"<br><br>('163 patent, cls. 2, 10; '597 patents, cls. 2, 10) (*Id.*) | Plain and ordinary meaning; no further construction necessary |

| Claim Term | Agreed Proposed Construction |
|---|---|
| "BSS color collision" <br><br> ('163 patent, cls. 4, 5, 12, 13; '597 patent, cls. 4, 5, 12, 13) (*Id.*) | Plain and ordinary meaning; no further construction necessary |
| "valid signaling field of the MAC frame" <br><br> ('163 patent, cls. 3, 11; '597 patent, cls. 3, 11) (*Id.*) | Plain and ordinary meaning; not indefinite |
| "when" <br><br> ('035 patent, cls. 1,8; '879 patents, cls. 1, 8) (Dkts. 179-8, 179-9) | Plain and ordinary meaning; not indefinite |

In taking these positions, Defendants in no way adopt or acquiesce to arguments made by Plaintiff in its Opening Claim Construction Brief as somehow being exemplary of or included within the plain meaning of the terms listed above.[1]

By way of example, with respect to the term ***"obtain[\ing] information other than [the] information on the duration of the non-legacy physical layer frame through a remaining value obtained by dividing the length information by a data size transmittable by a symbol of a legacy physical layer frame"*** of the ***'077 patent*** (cl. 1 and 8), Wilus contends that "the claim does not recite, as a step, a requirement that the claimed terminal obtain the 'remaining value.'" Wilus Br. at 13. This assertion is nonsense. The plain language of the claims is clear and unequivocal. The claim as written requires (A) a processor configured to (for apparatus claim 1) and (B) performing

_____

[1] That being said, Samsung agrees with Wilus with respect to the "when" term of the '035 and '879 patents, that the "the first and third instances of 'when'. . . describe[] a condition" (i.e., "'if,' 'in the event that' or 'provided that.'"). Wilus Br. 27 (quoting Dkt. 179-16 at ¶185). Samsung also agrees with Wilus that "the second and [fourth] instances of 'when' . . . invoke[] 'when' in a temporal sense," which means "mean 'at the same time as.' (or 'at substantially the same time as)." Wilus Br. 26–27 (quoting *Id.* at ¶185).

a step of (for method claim 8) "obtain[\ing] … through remaining value obtained…" due to the express recitation of the verb "obtained" in the claim language. '077 patent at cl. 1, 8.

With respect to the term *"a format of user field(s) included in a user specific field of the HE-SIG-B is identified based on a number of MU-MIMO users indicated by a subfield of the HE-SIG-A"* of the *'210 patent* (claims 1 and 6), Wilus contends that "the language is a limitation constraining the format of the user-specific field in the HE MU PPDU—it is not a step to be performed." Wilus Br. at 8. However, the plain meaning of the term requires (A) a processor configured to (for apparatus claim 1) and (B) performing a step of (for method claim 6) "identif[y/ing]" a "format" as claimed due to the express recitation of the verb "identified" in the claim language. '210 patent at cl. 1, 6. Indeed, Wilus agrees that it is a claim limitation. *See* Wilus Br. at 9 ("The last three 'wherein' limitations of claim 1 are limitations constraining the functionality of the processor and, specifically, the decoding of the HE MU PPDU.").

Lastly, Samsung proposes the term *"[a] wireless communication terminal"* (*'077 patent*, cls. 1, 8) should also be given its plain and ordinary meaning and does not require construction. This term continues to be disputed between Wilus and Askey, as explained below.

## III.    DISPUTED CLAIM TERMS

### A.    CLAIM TERMS DISPUTED BETWEEN WILUS AND SAMSUNG[2]

#### 1.    U.S. Patent Nos. 11,116,035 and 11,516,879

##### a)    "set a . . . timer" (Cls. 1, 4, 5, and 8)

| Defendants' Proposed Construction | Wilus's Proposed Construction |
|---|---|
| "assign a duration to a timer." | Plain and ordinary meaning; no further construction necessary |

---

[2] Samsung takes no positions with respect to disputed claim terms of patents that are not asserted against it in the consolidated cases.

A timer is a commonly used software technique in the field of computer science or engineering. Dkt. 179-16 at ¶172. Operating a time typically involves three separate, distinct steps, including: (1) assigning a value (representing a time duration) to a timer, (2) starting the timer, and (3) having the timer to run out to its expiration, which typically prompts other programmed actions to occur. *Id.* Indeed, such a three-step operation reflects how a timer is used in everyday life, not just in the field of telecommunications. Continuing with the cooking oven example in Wilus's opening brief, Wilus Br. 28, one typically enters a cooking time (e.g., entering 5 and 0 for 50 minutes); but to start the countdown, one must necessarily push a dedicated button, typically labeled as "start."

The term "set" refers to only **one** of these steps in operating a timer, specifically assigning a durational value to it. This reflects the "ordinary and customary meaning, which is the meaning a term would have to a person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention," *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008), and it is **not** a construction based on disclaimer or lexicography.

Although Wilus's opening brief disagrees with Samsung's proposed construction, Wilus appears to agree that "setting" a timer must include "assigning a duration to that timer." *See* Wilus Br. 28 ("If a cooking recipe calls for **setting** the oven timer for 30 mins., that reasonably includes **adjusting the timer** and starting it.). Wilus disagrees with Samsung on a different issue—whether "setting" a timer includes not just assigning a duration to the timer, but also **requires** "starting" that timer.

The intrinsic evidence suggests to a skilled artisan that "setting" a timer requires assigning a value to the timer, but not starting it. The full text of relevant claims the '035 patent is reproduced for reference below.

1. A wireless communication terminal that wirelessly communicates with a base wireless communication terminal, the wireless communication terminal comprising:

a transceiver; and

a processor,

wherein the processor is configured to:

transmit, to the base wireless communication terminal, a trigger-based physical layer protocol data unit (PPDU) using the transceiver,

switch a parameter set, which is a set of parameters used for the channel access, from a first parameter set to a second parameter set based on whether the base wireless communication terminal triggers a multi-user uplink transmission participation of the wireless communication terminal,

when a MAC protocol data unit (MPDU) included in the trigger-based PPDU does not request an immediate response, ***set a second parameter set timer*** for an access category of the MPDU when the transmission of the trigger-based PPDU ends,

when the MPDU included in the trigger-based PPDU requests the immediate response, ***set the second parameter set timer*** for the access category of the MPDU for which immediate response is received,

when the second parameter ***set timer expires***, terminate an application of the second parameter set, and

access a channel according to a priority of data to be transmitted to the base communication terminal by the wireless communication terminal and the parameter set.

'035 patent at cl. 1 (emphasis added).

5. The wireless communication terminal of claim 1, wherein the processor is configured to calculate a random integer value in a contention window (CW),

set a backoff timer based on the random integer value,

access the channel based on the back off timer and a predetermined slot time, and

if a value of the CW is greater than the maximum value (CWmax) of the CW according to a priority of the data to be transmitted, ***sets the value of the CW to the CWmax.***

*Id.* at cl. 5 (emphasis added).

6. The wireless communication terminal of claim 1, wherein the processor is configured to operate a plurality of queues that are classified according to an access category of data stored in a queue and performs backoff procedure of accessing a channel based on a time corresponding to a backoff timer in each of the plurality of queues, and

when there is no data stored in the queue and the backoff timer corresponding to the queue is 0, perform no operation at a slot boundary of

the backoff timer,
        wherein the backoff timer is ***set based on a random integer value*** calculated in a contention window (CW), ***and is reduced when*** the channel is idle for a predetermined slot time.

*Id.* at cl. 6 (emphasis added).

***First***, the claims use the verb "set" in a way that precludes it from being construed to include "start." The '035 patent uses the verb "set" not only in connection with timers (e.g., backoff timers and parameter set timers), but also to describe assigning a certain value to a variable, which cannot be "started." For example, claim 5 recites "***set[ting]*** the value of the CW to the CW$_{max}$." A "CW" (or "contention window") is merely a variable that stores the contention window value and it makes no sense to start it. To the extent Wilus argues the verb "set" has a different meaning within the scope of claim 5 from what it means as recited in claim 1, nothing in the claim language or the specification suggests, let alone makes it "clear," that such a different meaning would be warranted. *See In re Varma*, 816 F.3d 1352, 1363 (Fed. Cir. 2016) ("[T]he principle that the same phrase in different claims of the same patent should have the same meaning is a strong one, overcome ***only if 'it is clear'*** that the same phrase has different meanings in different claims." (citation omitted) (emphasis added)); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims."). Tellingly, Wilus fails to reckon with this claim limitation, let alone provide any intrinsic evidence that would support assigning a different meaning to the term "set."

***Second***, the claims recite not only "setting" a timer, but also "reducing" such a timer, which would be rendered superfluous if the timer were "started" as part of being "set." *See Ortho-McNeil Pharm, Inc. v. Mylan Lab'ys, Inc.*, 520 F.3d 1358, 1362 (Fed. Cir. 2008) ("[T]his court strives to reach a claim construction that does not render claim language in dependent claims meaningless.").

For example, claim 6 recites that a "backoff timer is *set* based on a random integer value." Separately, the same claim recites that the backoff timer "is *reduced* when the channel is idle for a predetermined slot time." If "setting" a backoff timer included starting it, then "reducing" the timer is unnecessary at best and disruptive to a timer's function at worst, because the backoff timer is counting down regardless of whether the channel is idle or not. *See* Dkt 179-16 at ¶¶179-80; *see also* '035 Patent at 11:39-45 ("[T]he wireless communication terminal obtains a random integer value within a contention window (CW) and *sets* the random integer value as a backoff timer. When the corresponding channel is idle during a predetermined slot time, the wireless communication terminal *decreases* the backoff timer.").

*Third*, the specification uses both "set" and "start" in the context of a timer. *Compare* '035 patent at 25:5–10 (disclosing embodiment where "the wireless communication terminal may *apply the MU EDCA parameter set* at the time point at which transmission of the trigger-based PPDU ends," at which "time[] the wireless communication terminal may *set the MU EDCA timer*"), *with Id.* at 25:28-31 (disclosing a *different* embodiment where "[t]he wireless communication terminal *applies the MU EDCA parameter set* at the time point at which transmission of the trigger-based PPDU HE TRIG PPDU ends and *starts the MU EDCA timer*."). "[T]he general assumption is that different terms have different meanings." *See Symantec Corp. v. Comput. Assoc. Int'l, Inc.*, 522 F.3d 1279, 1289 (Fed. Cir. 2008). Nothing in the claim language or the specification—and Wilus points to none—overcomes this assumption.

*Fourth*, Dr. Lanning's unrebutted testimony confirms Samsung's proposed construction is the ordinary meaning of "setting . . . a timer"—that is the "meaning a term would have to a person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention." *See O2 Micro Int'l*, 521 F.3d at 1360. Dr. Lanning testified, for example, that he "worked in

communications for over 40 years, written software, and designed hardware, and when one person of ordinary skill discusses setting a timer with another person of ordinary skill, it's providing or assigning a value to a timer." Ex. A at 111:10-15. "It could be setting a hardware register to a value. In software, it could simply be assigning a timer in software a value, but it's setting or assigning an initial value to a timer." *Id.* at 111:16-19. Further, Dr. Lanning also confirmed that "setting a timer is a distinct and separate operation from starting the timer" because "they're two distinct operations." *Id.* at 112:11-14. He explained that:

> [F]irst you provide an initial value for a timer. Again, it's different ways it's done in hardware and software, but once that operation is done of setting a value for a timer or setting a timer, then the next operation that – that can happen in the next instruction or the next cycle time in hardware would be a distinct operation separate but then starting the timer or starting the timer could happen at days later after a timer is set.

*Id*. at 112:11-22.

Wilus cites certain disclosures from the specification as support, but they do not suggest that "setting" a timer includes "starting" it. Wilus Br. 29 (citing '035 patent at 3:28-34, 19:52-56). Certainly, these disclosures are not "clear" enough to overcome the presumption that the verb "set" should have the same meaning throughout the claims or the assumption that different terms—i.e., "set" and "start"—have different meanings. At best, these disclosures merely suggest that a timer ***can*** be set and started at the same time or started shortly after the timer is set.[3]

Wilus also argues that "setting" a timer contemplates "starting" it based on extrinsic evidence including certain dictionary definitions. Wilus Br. 28. Because "setting" a timer to a certain value is prerequisite to starting the timer, "setting" a timer merely contemplates that the

---

[3] Under Samsung's construction, a system that otherwise meets the claim limitations is not taken out of the scope of the claims merely because the timer is configured to start. Rather, Samsung's position is that the claim—more specifically, the limitation "set[ting] . . . a timer"—imposes no requirement as to starting the timer.

timer will be started *at a later time*.  It does not contemplate that a timer is started *as part* of the timer being "set."  *See* Ex. A at 112:22-25 (Dr. Lanning explaining "[t]he starting could happen close to very soon after the setting of the timer, but it doesn't necessarily need to"— "[i]t can happen at some later time.").

Moreover, construing "setting" of a timer to include "starting" it, as Wilus proposes, introduces unnecessary ambiguity that cannot be resolved with reasonable certainty.  *See Ruckus Wireless, Inc. v. Innovative Wireless Sols., LLC*, 824 F.3d 999, 1004 (Fed. Cir. 2016) ("If, after applying all other available tools of claim construction, a claim is ambiguous, it should be construed to preserve its validity.").  For example, the claims require that "*set* a second parameter set timer . . . *when* the transmission of the trigger-based PPDU ends." '035 patent, cl. 1. Pursuant to Wilus's proposal of construing the verb "set" as including the "start" operation, claims become ambiguous as to whether (1) the timer must be assigned a value when the transmission of the trigger-based PPDU ends, (2) the timer must be started when the transmission of the trigger-based PPDU ends, or (3) the timer must be both assigned a value and started when the transmission of the trigger-based PPDU ends.  And Wilus points to no evidence—and there is none—that would permit a skilled artisan to determine which of the three is required by the claims.

Accordingly, ordinary and customary meaning of "set[ting] . . . a timer," is "assigning a value to a timer" and does not require starting that timer.

### B.    CLAIM TERMS DISPUTED BETWEEN WILUS AND ASKEY[4]

####    1.    "A wireless communication terminal" ('077, '992, '421, '233, '396, and '926, patents)

---

[4] Askey takes no positions with respect to disputed claim terms of patents that are not asserted against it in the consolidated cases.

| Askey's Proposed Construction | Wilus's Proposed Construction |
|---|---|
| Plain and ordinary meaning, wherein "wireless communication terminal" means "user equipment for wireless communication." | Plain and ordinary meaning, wherein "terminal" includes a non-access point station, an access point, or both. |

The term "wireless communication terminal" should be given its plain and ordinary meaning, which is "user equipment for wireless communication."

Wilus argues that one non-definitional sentence from the patent specification is somehow dispositive, because it states that a "terminal" "*may be* used to refer to a wireless LAN communication device such as non-AP STA, or an AP, or both terms." *See* ECF No. 179 at 29-30; '396 patent at 6:62-63 (emphasis added). But that specification also states—in the same paragraph—"[a]ccording to the present invention, *a terminal may be used as a term which includes user equipment (UE).*" *See* '396 patent at 7:6-8 (emphasis added).

User Equipment is a wireless device that an end-user uses to access network services (such as a smartphone, tablet, or laptop) and that communicates with a base station to send and receive data. In the context of the claims at issue, the plain and ordinary meaning of "wireless communication terminal" refers to "user equipment for wireless communication."

Importantly, when considering the entirety of the patent disclosure—not just one single sentence Wilus relies on—the inventors distinguished the terms "station" (i.e., terminal) and "access point" (i.e., base terminal). An access point is described as "an entity that provides access to the distribution system (DS) via wireless medium for the station associated therewith." '396 patent at 7:9-11. Figure 1 illustrates a typical wireless network, with an access point at the center, interacting with non-access-point stations (e.g., STA1-STA5) at *terminal* positions:



## *FIG. 1*

*See FIG. 1*; *see also id.* at FIG. 5 (STA 100 at a *terminal* position).

Describing the components, the specification illustrates that the non-access-point stations have a user interface unit and a display unit to interact with users. *See* '077 patent at 9:4-21; '992 patent at 9:5-21; '421 patent at 9:16-32; '396 patent at 8:10-26; '926 patent at 8:23-39, and '233 patent at 6:60-7:9. Figure 3 depicts the configuration of a station and includes a "user interface unit" and a "display unit":



## *FIG. 3*

Reading the patents with these descriptions and drawings, a person of ordinary skill in the art would have understood that AP and non-AP STAs are different components of a wireless

12

network and that the same term in the patent claims—"wireless communication terminal"—would not apply simultaneously to both AP and non-AP STAs.

Importantly, Wilus's argument focuses only on the meaning of the word "terminal" itself in a broad sense, not the full claim term to be construed: "wireless communication terminal." In the specification, when referring to an access point, the patent frequently uses the term "base wireless communication terminal." *See* '396 patent at 7:19-24 ("In the present invention, an AP may also be referred to as a *base wireless communication terminal* . . . [,] which includes an AP, a base station . . . .") (emphasis added); '926 patent at 7:31-37. In doing so, the patents consistently draw a distinction between "base terminals" (access points) and other "terminals" (access-point stations or user equipment). *See* '077 patent at 2:49-50 ("simultaneously transmitting data between a plurality of terminals and base terminals"); *see also* '992 patent at 2:54-55; '421 patent at 2:56-59. Therefore, the plain and ordinary meaning of the term "[a] wireless communication terminal" (used alone and without the "base" qualifier) would be understood to cover non-access-point stations, i.e., user equipment, in the wireless network.

Accordingly, the Court should reject Wilus's proposed construction and adopt Askey's construction, clarifying that the plain and ordinary meaning of a "wireless communication terminal" is "user equipment for wireless communication."

## IV.    CONCLUSION

For the reasons recited above, Samsung and Askey request that the Court adopt their proposed claim constructions.

Date: November 18, 2025                    Respectfully submitted,

                                           */s/ Ralph A. Phillips*
                                           Ruffin B. Cordell
                                           TX Bar No. 04820550
                                           cordell@fr.com
                                           Michael J. McKeon

DC Bar No. 459780
mckeon@fr.com
Ralph A. Phillips
DC Bar No. 475571
rphillips@fr.com
Bryan J. Cannon
DC Bar No. 1723657
cannon@fr.com
Payal Patel
DC Bar No. 90019320
ppatel@fr.com
Damien Thomas
DC Bar No. 90018451
dthomas@fr.com
James Young
DC Bar No. 90005769
jyoung@fr.com
FISH & RICHARDSON, P.C.
1000 Maine Ave., S.W., Ste. 1000
Washington, DC 20024
Telephone: 202-783-5070
Facsimile:  202-783-2331

Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
Rodeen Talebi
TX Bar No. 24103958
talebi@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 78766
Telephone: 214-747-5070
Facsimile:  214-747-2091

Aleksandr Gelberg
CA Bar No. 279989
gelberg@fr.com
John-Paul Fryckman
CA Bar No. 317591
fryckman@fr.com
FISH & RICHARDSON, P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: 858-678-5070
Facsimile:  858-678-5099

14

Bailey K. Benedict
TX Bar No. 24083139
benedict@fr.com
FISH & RICHARDSON, P.C.
909 Fannin Street, Ste. 2100
Houston, TX 77010
Telephone: 713-654-5300
Facsimile: 713-652-0109

Melissa R. Smith
Texas Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257
Email: melissa@gillamsmithlaw.com

*Attorneys for Defendants*
*Samsung Electronics Co., Ltd., and*
*Samsung Electronics America, Inc.*

Date: November 18, 2025

*/s/ Jeffrey D. Smyth (with permission)*
Ming-Tao Yang (*pro hac vice*)
Jeffrey D. Smyth (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
3300 Hillview Avenue, 2nd Floor
Palo Alto, CA 94304
Tel: (650) 849-6600
Fax: (650) 849-6666
Email: ming.yang@finnegan.com
Email: jeffrey.smyth@finnegan.com

Trey Yarbrough
Bar No. 22133500
YARBROUGH WILCOX, PLLC
100 E. Ferguson Street, Suite 1015
Tyler, TX 75702
Telephone: (903) 595-3111
Facsimile: (903) 595-0191
Email: trey@yw-lawfirm.com

*Attorneys for Defendants Askey Computer*
*Corp. and Askey International Corp.*

## **CERTIFICATE OF SERVICE**

This is to certify that on November 18, 2025, a true and correct copy of the foregoing instrument was delivered to all counsel of record through the court electronic system.

*/s/ Ralph A. Phillips*