**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>HP INC. | Case No. 2:24-cv-00752-JRG-RSP<br>(Lead Case)<br><br>██████████████████ |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. | Case No. 2:24-cv-00746-JRG-RSP<br>(Member Case) |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>ASKEY COMPUTER CORP., ASKEY INTERNATIONAL CORP. | Case No. 2:24-cv-00753-JRG-RSP<br>(Member Case) |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>HP INC. | Case No. 2:24-cv-00764-JRG-RSP<br>(Member Case) |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. | Case No. 2:24-cv-00765-JRG-RSP<br>(Member Case) |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>ASKEY COMPUTER CORP., ASKEY INTERNATIONAL CORP. | Case No. 2:24-cv-00766-JRG-RSP<br>(Member Case) |

**PLAINTIFF WILUS' MOTION FOR ENTRY OF A PERMANENT INJUNCTION**

# TABLE OF CONTENTS

I.      INTRODUCTION..................................................................................................... 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ............................................. 2

III.    LEGAL STANDARD ............................................................................................... 4

IV.     ARGUMENT ............................................................................................................ 5

        A.      Irreparable Injury ........................................................................................ 5
        1.      Wilus is a Recognized Contributor to Global Standards ........................... 6
        2.      Harm to Wilus' Research & Development Efforts ..................................... 7
        3.      Harm to Wilus' Licensing Program ............................................................ 9
        4.      Askey Remains an Unwilling Licensee ..................................................... 12
        B.      Inadequacy of Monetary Damages ........................................................... 13
        C.      Balance of Hardships ................................................................................ 14
        D.      Public Interest ........................................................................................... 16

V.      CONCLUSION ...................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Andrx Pharms., Inc.*,
    452 F.3d 1331 (Fed. Cir. 2006) ......................................................................... 16

*Apple Inc. v. Motorola, Inc.*,
    757 F.3d 1286 (Fed. Cir. 2014) ............................................................... 12, 17, 18

*CSIRO v. Buffalo Technology, Inc.*,
    492 F. Supp. 2d 600 (E.D. Tex. 2007) .................................................... passim

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
    717 F.3d 1336 (Fed. Cir. 2013) ...................................................................... 5, 17

eBay Inc. v. MercExchange, L.L.C.,
    547 U.S. 388 (2006) ........................................................................................ 5, 16

*Hybritech Inc. v. Abbott Labs.*,
    849 F.2d 1446 (Fed. Cir. 1985) ........................................................................ 10

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
    702 F.3d 1351 (Fed. Cir. 2012) ........................................................................ 10

*Radian Memory Systems v. Samsung Electronics Co. Ltd.*,
    No. 2:24-cv-1073 (E.D. Tex. Jun. 24, 2025) ..................................................... 1

*Richardson v. Suzuki Motor Co.*,
    868 F.2d 1226 (Fed. Cir. 1989) ........................................................................ 17

*Roper Corp. v. Litton Sys., Inc.*,
    757 F.2d 1266 (Fed. Cir. 1985) .......................................................................... 9

*Windurfing Int'l, Inc. v. AMF, Inc.*,
    782 F.2d 995 (Fed. Cir. 1986) .......................................................................... 15

**Statutes**

35 U.S.C. § 283 ..................................................................................................... 1, 4
35 U.S.C. § 284 ....................................................................................................... 13

**Rules**

Federal Rule of Civil Procedure 65 ......................................................................... 1

████████████████

**TABLE OF EXHIBITS**

| # | Description |
|---|---|
| A | Email Exchange between J. Smith and A. Easley dated January 21, 2026- February 2, 2026 |
| B | Deposition of Jimmy Chen taken December 16, 2025 [Excerpted] |
| C | Declaration Jin Sam Kwak dated February 10, 2026 |
| D | Deposition of Jin Sam Kwak taken December 10, 2025 [Excerpted] |
| E | Letter from Sisvel to Askey dated April 8, 2022 (WILUS_0030047) |
| F | Email Exchange between Sisvel and Askey dated August 23, 2022-April 15, 2024 (SISVEL-ASKEY-0000053) |
| G | Certified Final Judgment in *Wilus v. ASUS, et al.* issued by the Munich I Regional Court |

## I.    INTRODUCTION

Plaintiff Wilus Institute of Standards and Technology Inc. ("Wilus") respectfully moves for entry of a permanent injunction pursuant to 35 U.S.C. § 283 and Federal Rule of Civil Procedure 65. On December 12, 2025, Defendants Askey Computer Corp. and Askey International Corp. (collectively, "Askey") stipulated that they infringe the asserted claims of the Asserted Patents (which are standard essential patent claims) and that those claims are valid. Dkt. 202. The stipulation expressly states that "Plaintiff Wilus will have no burden to present—and will not be presenting—an infringement case at trial." *Id.* As a result, neither Wilus nor Askey served expert reports addressing Askey's liability for infringement. Since liability has now been conclusively resolved and no material facts remain in dispute as to either infringement or validity, the Court should proceed to consideration of permanent injunctive relief without awaiting a jury trial. No aspect of the parties' agreed-upon stipulation addresses remedies or prevents the relief requested in this Motion.[1]

Wilus satisfies each of the four factors that courts consider when evaluating entry of a permanent injunction. ***First***, Wilus has suffered and continues to suffer irreparable injury since both its research and development efforts and licensing program are irreparably harmed due to Askey's ongoing infringement and coincident failure to take a license. ***Second***, monetary damages are inadequate to compensate Wilus for its injuries, which include reputational harm, decreased research funding, and loss of opportunities to contribute to global standards development. *See, e.g.*, Statement of Interest of the United States, *Radian Memory Systems v. Samsung Electronics Co. Ltd.*, No. 2:24-cv-1073, Dkt. 52 (E.D. Tex. Jun. 24, 2025). ***Third***, the balance of hardships

---

[1] Absent Askey agreeing to a Fair, Reasonable, and Non-Discriminatory ("FRAND") license, a jury trial will still be necessary with regard to past damages.

████████████████████████████████████████

favors Wilus, as the harm being subjected to the small, employee-owned research laboratory exceeds any harm that Askey will face from being enjoined from selling a subset of its products (or taking a FRAND license). **Fourth**, the public interest supports entry of the requested injunction since enforcing valid patent rights and encouraging investment in future technologies, ████

████████████████████████████████████████████

██████████████████████████████

## II.    FACTUAL AND PROCEDURAL BACKGROUND

1. Wilus is an independent, employee-owned research and development laboratory that is focused on creating and enhancing technologies related to wireless communications and multimedia. Ex. C at ¶ 4. The Wilus team consists of 20 engineers and inventors, most of whom hold M.S. or Ph.D. degrees, and the company has an annual operating revenue of approximately ████████. *Id.*

2. As a result of Wilus' groundbreaking innovations, it has generated a global patent portfolio that includes more than 3,500 patents. *Id.* at ¶ 11. Wilus' sole source of revenue is the revenue it receives from licensing its patent portfolios to third parties. *Id.* at ¶ 10. Thus, Wilus' licensing activities are critical for funding the company's ongoing R&D and standards development work. *Id.*

3. Wilus is the owner of a number of patents that relate to the IEEE Wi-Fi 6 (802.11ax) standard ("Wi-Fi 6"), including United States Patent Nos. 10,313,077; 10,651,992; 11,128,421; 10,305,638; 10,820,233; 10,931,396; and 11,664,926 (collectively, the "Asserted Patents"), each of which has been asserted against Askey in the above-referenced matters. *Id.* at ¶ 11. The Asserted Patents cover core functionality related to the Wi-Fi 6 standard. *Id.*

4. Wilus filed these actions against Askey on September 13, 2024 and September 20, 2024, and alleged that Askey infringes the Asserted Patents by making, using, selling, offering for sale, and/or importing its Wi-Fi 6-enabled accused products ("Accused Products"). The Accused Products include routers and other access point devices that rely on Wi-Fi 6 and practice the associated standards. *See* Dkt. 1.

5. Askey filed its Answers to Wilus' Complaints on January 16, 2025 and asserted the following defenses: (i) non-infringement, (ii) patent invalidity, (iii) equitable doctrines, (iv) no willful infringement, and (v) limitation on damages and recovery. Dkts. 59, 60.

6. On December 12, 2025, the parties entered a written stipulation, which has been filed with the Court, in which Askey stipulated to infringement and validity of the asserted claims of the Asserted Patents.[2] *See* Dkt. 202. In the filing, the parties expressly stipulated to the following:

   a. Askey is no longer pursuing its non-infringement defense or its invalidity defense;

   b. Wilus is no longer seeking any finding of willfulness against Askey;

   c. Neither party will be proffering expert reports on the issues of infringement or validity; and,

   d. Wilus will have no burden to present—and will not be presenting—an infringement case at trial.

---

[2] Askey's stipulation to infringement and validity is unsurprising, as each of the Asserted Patents has been independently evaluated and determined to contain claims that are essential to the Wi-Fi 6 standard. *See* Ex. C at ¶ 12. Infringement was therefore undeniable given Askey's admitted use of the Wi-Fi 6 standard in its products.

3

███████████████████████████████████

7.  As a result of the December 12, 2025 stipulation, all issues relating to Askey's liability for infringement of the Asserted Patents have been fully resolved.[3] Since entry of the stipulation, Askey has repeatedly confirmed its understanding of the effect of the parties' stipulation. *See* Ex. A at 5. For example, on January 27, 2026, Askey's counsel stated that it did not believe it was necessary for the parties to submit a proposed judgment on liability since the parties were already bound by the terms of the December 12, 2025 stipulation. *Id.* Askey's corporate representative, █████████████████

███████████████████████████████████

███████████████████████ Ex. B at 37:1-23.

8.  The only issues between Wilus and Askey that have not yet been resolved relate to remedies for Askey's ongoing infringement. The jury trials in the above-referenced matters are currently scheduled for June 1, 2026 and August 17, 2026, and during these trials, Wilus will seek damages for Askey's past infringement of the Asserted Patents. *See* Dkts. 218, 45. The jury will not, however, decide Askey's liability. *See* Dkt. 202.

## III.   LEGAL STANDARD

The Patent Act authorizes courts to grant injunctions to "prevent the violation of any right secured by patent." 35 U.S.C. § 283. To obtain a permanent injunction, a plaintiff must show:

1)  that it has suffered an irreparable injury;

2)  that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

---

[3] Simultaneously with this Motion, Wilus is filing a Motion for Expedited Entry of Partial Final Judgment as to Infringement and Validity.

4

3)  that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

4)  that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

The Supreme Court has held that "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity, in patent disputes no less than in other cases governed by such standards." *Id.* Where infringement and validity have been conclusively established—whether by verdict, judgment, or stipulation—district courts routinely proceed to this equitable analysis without requiring a trial on liability. *See, e.g.*, *CSIRO v. Buffalo Technology, Inc.*, 492 F. Supp. 2d 600, 602-07 (E.D. Tex. 2007).

## IV.    ARGUMENT

As described below, each of the four factors weigh in favor of entry of the requested injunction, and thus Wilus respectfully asks the Court to permanently enjoin Askey from making, using, selling, offering for sale, or importing any product that infringes the Asserted Patents.

### A.  <u>Irreparable Injury</u>

"Irreparable injury encompasses different types of losses that are often difficult to quantify, including lost sales and erosion in reputation[.]" *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344 (Fed. Cir. 2013). Despite admitting that the Asserted Patents are both valid and infringed, Askey continues to delay in taking a license to Wilus' patented technology. *See* Ex. C at ¶¶ 13-18. Askey's refusal to license the Asserted Patents has caused and will continue to cause irreparable injury to Wilus in the form of harm to Wilus' work as a research and development

laboratory, erosion to Wilus' reputation as a leader and innovator in the standards development space, and injury to Wilus' Wi-Fi 6 licensing activities. *See id.* at ¶¶ 15-18.

### 1.    Wilus is a Recognized Contributor to Global Standards

Wilus was founded in 2012 as an independent, employee-owned research laboratory that is focused on developing and enhancing telecommunications, Wi-Fi, and multimedia technologies. *Id.* at ¶ 4. The individuals that formed Wilus united under the belief that a group of highly trained engineers could utilize their shared technical expertise and passion for innovation to expand upon and improve the core technologies that consumers use every day. *Id.* at ¶ 5. Although Wilus is a small company consisting of only 20 engineers and inventors, Wilus' impact in the standardization space has been profound. *See id.* at ¶¶ 6-9. Over the last 12 years, Wilus has submitted more than 700 technical contributions to major global standards bodies and many of its contributions have been selected for inclusion in standards such as LTE, 5G, IEEE 802.11, and MPEG-H 3D. *Id.* at ¶ 6. As a result of these efforts, Wilus has been consistently recognized as a success story for Korean innovation in a field that has historically been dominated by multinational technology companies and state-funded research institutions. *Id.* at ¶ 8.

Wilus' groundbreaking innovations have allowed it to amass a large, worldwide patent portfolio, which includes more than 3,500 patents spanning across nine standard essential portfolios. *Id.* at ¶ 11. The applicability and value of Wilus' patent portfolios can be readily seen by the dozens of licensees who have taken licenses to Wilus' patents. *See id.* at ¶ 12 (noting that more than 30 companies are currently licensed to Wilus' Wi-Fi 6 patents). The continued success of Wilus' research and development efforts depend on Wilus' licensing of its intellectual property because that licensing revenue is used to fund Wilus' R&D projects and its participation in standards development work. *Id.* at ¶ 10. Over the last decade, Wilus has developed a reputation

as a leader in the standardization space, and the Korean Intellectual Property Office recently named Wilus Korea's most innovative small/medium-size enterprise. *Id.* at ¶ 9.

As a research institute, Wilus is founded on the principle that people who utilize its innovations will pay for those rights, and this principle continues to underlie Wilus' operations today since it only generates revenue from the licensing of its intellectual property. *Id.* at ¶ 10.

### 2. Harm to Wilus' Research & Development Efforts

Askey's infringement of the Asserted Patents harms Wilus' research and development efforts. More specifically, Askey's delay in licensing the very patents that it has already admitted to infringing negatively impacts Wilus' ability to fund and participate in R&D projects, including participation in standards development working group meetings, which in turn threatens Wilus' reputation as a key contributor in the standards development space. *Id.* at ¶¶ 15-16. Askey's delay in taking a license also casts into doubt the value of Wilus' research efforts. *See id.* at ¶¶ at 17-18. For instance, the fact that Askey publicly resists taking a license, yet at the same time has entered into a confidential stipulation that resolves all issues related to infringement and validity, gives the (wrong) impression that Wilus' patents are not valuable or do not cover key functionality in the Wi-Fi 6 standard. *See id.* at ¶ 18.

In sum, Askey's continued delay in taking a license to the Asserted Patents interferes with Wilus' pursuit of its research and development projects, which in turn translates to forgone opportunities for Wilus to invent and contribute to enhancing the consumer welfare.[4] *Id.* at ¶¶ 15-18. This harm to Wilus' operations cannot be redressed by monetary damages, thereby confirming the appropriateness of a permanent injunction.

---

[4] The harm caused by Askey's continued delay in taking a license is further compounded by the fact that an appeal (after bonding) can take two years or more in the Federal Circuit.

Similar facts were presented in *CSIRO v. Buffalo Technology*, where an Eastern District of Texas court held that CSIRO, a scientific research organization of the Australian Federal Government, was entitled to entry of a permanent injunction based on the defendants' ongoing infringement of WLAN patents. 492 F. Supp. 2d 600, 603-05 (E.D. Tex. 2007), aff'd in part and vacated in part on other grounds, 542 F.3d 1363 (Fed. Cir. 2008). In its analysis of the irreparable harm factor, the *CSIRO* court stated the following:

> CSIRO has shown that its harm is not merely financial. While CSIRO does not compete with Buffalo for marketshare, CSIRO does compete internationally with other research groups--such as universities--for resources, ideas, and the best scientific minds to transform those ideas into realities….*Having its patents challenged via the courts not only impugns CSIRO's reputation as a leading scientific research entity but forces it to divert millions of dollars away from research and into litigation costs. Delays in funding result in lost research capabilities, lost opportunities to develop additional research capabilities, lost opportunities to accelerate existing projects or begin new projects.* Once those opportunities have passed, they are often lost for good, as another entity takes advantage of the opportunity….*Thus, the harm of lost opportunities is irreparable.* They cannot be regained with future money because the opportunity that was lost already belongs to someone else.

*Id*. at 604 (emphasis added).

Similar to CSIRO, Askey's unwillingness to compensate Wilus for its infringement impugns Wilus' reputation as a leading research laboratory and forces it to divert significant resources away from its R&D efforts and into this ongoing litigation. *See id.* at 604-05 ("Its reputation as a research institution has been impugned just as another company's brand recognition or good will may be damaged."); Ex. C at ¶¶ 15-16. Askey's delay in taking a license therefore translates into delayed research funding for Wilus. *See* Ex. C at ¶ 15. As the court recognized in *CSIRO*, such delays in funding for a research entity are not merely a financial injury; rather, they represent a significant, non-monetary injury that takes the form of "lost research capabilities, lost

opportunities to develop additional research capabilities, [and] lost opportunities to accelerate existing projects or begin new projects[.]"*CSIRO*, 492 F. Supp. 2d at 604; *see also* Ex. C at ¶ 16.

At this point, it is inexcusable that Askey continues to operate without a license given that it has stipulated to both infringement and validity of the seven Asserted Patents. Dkt. 202. In *CSIRO*, the court made the determination that the defendant was infringing pre-trial; here, Askey has admitted to infringement pre-trial. *See id.*; *CSIRO*, 492 F. Supp. 2d at 602; Ex. B at 37:1-23. Wilus continues to be subjected to irreparable injuries as a result of Askey's unauthorized infringement, which weighs in favor of entry of a permanent injunction. As *CSIRO* confirmed, it is appropriate for the Court to now consider this Motion given the adjudicated (here, by agreement) issue of liability for Askey's infringement of the Asserted Patents. 492 F. Supp. 2d at 602.

### 3.     Harm to Wilus' Licensing Program

Wilus' injuries are not limited to its research and development efforts or reputational harm; rather, Askey's ongoing infringement also results in irreparable harm to Wilus' licensing activities. *See* Ex. C at ¶¶ 17-18. Although ██████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████. Dkt. 202; Ex. B at 37:1-23. In the meantime, and so long as this litigation continues, there is little chance that any new licensees will take a license to Wilus' Wi-Fi 6 portfolio because of Askey's public hold-out tactic. Ex. C at ¶ 17.

As Wilus' corporate representative explained at his deposition, once Wilus initiates litigation against an infringer, that pending litigation negatively impacts Wilus' licensing efforts because other potential licensees typically refuse to take a license until the litigation is resolved. Ex. D at 105:6-23; *see also Roper Corp. v. Litton Sys., Inc.*, 757 F.2d 1266, 1273 (Fed. Cir. 1985) ("A patentee that does not practice, and may never have practiced, his invention may establish irreparable harm, e.g., by showing that an existing infringement precludes his ability to license his

patent or to enter the market."). Askey's refusal to compensate Wilus for its infringement also sends a message to the market that others can infringe Wilus' patents without consequence or, worst-case scenario, infringe and delay paying royalties for years as Askey has. Ex. C at ¶ 18; *see, e.g.*, Stmt. of Interest at 14 ("The possibility of an injunction also helps prevent potential licensees from viewing infringement as economically efficient, which would further erode the patent's value and the patentee's control over it."); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1362-1363 (Fed. Cir. 2012) ("This historical practice of protecting the right to exclude through injunctive relief is not surprising given the difficulties of protecting this right solely with monetary relief. Indeed, a calculating infringer may thus decide to risk a delayed payment to obtain use of valuable property without prior negotiation or the owner's permission."); *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1456 (Fed. Cir. 1985) (stating "in the absence of the injunction, other potential infringers will be encouraged to infringe").[5]

The United States Patent and Trademark Office ("USPTO") and the Department of Justice ("DOJ") recently joined forces to issue an unequivocal statement reinforcing the importance of injunctive relief as a remedy for infringement of standard essential patents. Stmt. of Interest at 14-15. The Statement of Interest submitted in *Radian* emphasizes that standard essential patent holders should be entitled to an injunction if there is significant uncertainty when it comes to

---

[5] The ongoing harm to Wilus' licensing activities seems especially unjustified given the terms of the parties' stipulation. *See* Dkt. 202. Yet Askey maintains that the terms of the stipulation are confidential, which in turn prevents Wilus from being able to share it with other potential licensees in an attempt to try and mitigate the ongoing harm to Wilus' Wi-Fi 6 licensing activities. *See* Ex. A.at 2; Stmt. of Interest at 15 (recognizing that "once the litigation begins, the chances any company will take a license are significantly reduced until a court renders a final verdict, thereby reducing incentives to settle and increasing the number and durations of cases, while also inflicting additional cost on the patent owner simply to get to that result."); *CSIRO*, 492 F. Supp. 2d at 603 (noting that "there was little chance any company would take a license *until Buffalo's defenses had been shown to be without merit.*" (emphasis added)),

assessing monetary damages, which is the case here. *Id.* at 14-15 (stating that "Radian alleges that it faces losses that 'cannot be quantified or reduced to calculable damages.' …. And Samsung does not counter that there is an established license or royalty for Radian's patents that would make damages straightforward to calculate."). As the USPTO and DOJ explained in their joint statement, injuries to a patent owner's "market opportunities and position may support a likelihood of irreparable harm because these claims . . . support a conclusion that monetary damage—an ongoing reasonable royalty—would be difficult and expensive to calculate." *Id.* at 5.

The parties' negotiation history makes clear that there is a disagreement as to what constitutes a reasonable royalty rate for Wilus' Wi-Fi 6 patent portfolio, which includes the Asserted Patents. *See, e.g.*, Ex. F. Askey has been in possession of a FRAND running royalty offer for more than three years, yet it continues to maintain that the proposed royalty rate is excessive, even though it has been accepted by a number of other licensees in the market and was recently determined to be FRAND-compliant by a court in another jurisdiction. *Id.*; Ex. G at ¶¶ 174-75; Ex. C at ¶¶ 13-14. The parties' negotiation history and Askey's continued delay in taking a license illustrates one of the difficulties when it comes to calculating monetary damages in these cases.

As noted above, Askey's continued delay in taking a license subject Wilus to irreparable injury in the form of harm to its research and development activities, reputational harm, and the loss of an ability to successfully compete with others in the standardization space. *See* Ex. C at ¶¶ 15-18. These harms further illustrate the difficulty of calculating monetary damages in these cases and confirm the appropriateness of an injunction. *See id.* As acknowledged by the USPTO and the DOJ, injunctive relief is recognized as a critical form of relief because "[t]he prospect of an injunction [] provides patentees with important protections to control how or to whom to license its patented technology, as well as the terms of its licenses." Stmt. of Interest at 14.

11

Finally, the *Radian* Statement of Interest emphasizes that injunctions are critical for ensuring the protection of a patent holder's property interest since injunctive relief "helps prevent potential licensees from viewing infringement as economically efficient." *Id.* This rationale strongly favors granting Wilus' requested injunction, as Askey has already admitted that it needs a license to the Asserted Patents and is merely delaying in paying Wilus because doing so can be viewed as "economically efficient." *See id.* at 9-13; Dkt. 202. Holdouts like Askey should not be permitted to benefit from their use of dilatory tactics when it comes to taking a license to patented technology, especially when the entity has already admitted to both validity and infringement of the patents at issue. *See* Stmt. of Interest at 14-15.

Considering the unequivocal guidance and instruction set forth in *Radian*, it is important for this Court to enter a permanent injunction and signal to both the marketplace and the public that holdout behavior will not be tolerated. *See id*.

### 4.    Askey Remains an Unwilling Licensee

Courts have noted that irreparable harm can also be shown if the infringer is an unwilling licensee, which is the case here. *See, e.g.*, *Apple Inc. v. Motorola, Inc.,* 757 F.3d 1286, 1331-32 (Fed. Cir. 2014) (stating that "an injunction may be justified where an infringer unilaterally refuses a FRAND royalty or unreasonably delays negotiations to the same effect."); Ex. C at ¶¶ 13-14; Ex. F.

The negotiation history between Askey, Wilus, and Wilus' licensing manager, Sisvel, confirms that Askey is an unwilling licensee. *See* Ex. C at ¶¶ 13-14; Ex. F.

████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

Askey's delay tactics and its refusal to negotiate in good faith continue today, which further weighs in favor of entry of a permanent injunction. *See* Stmt. of Interest at 12-15. Wilus submits that Askey's litigation approach, where it has never meaningfully engaged in these cases, confirms that it is an unwilling licensee. *See* Ex. B at 37:1-23. Askey has no way to win these lawsuits on the question of liability, so the only issue is what remedies should apply (not whether remedies should apply; *see* 35 U.S.C. § 284), yet Askey continues to force Wilus to expend substantial resources to prove damages years after it recognized that it needed a license to the Asserted Patents. Because Askey has admitted infringement yet will not agree to stop its infringing conduct or take a FRAND license, the threat of continued and future irreparable harm remains. *See id.* Wilus' irreparable harm therefore weighs heavily in favor of entry of the requested injunction.

**B.**  **Inadequacy of Monetary Damages**

Wilus has been and will continue to be harmed by Askey's ongoing infringement. Wilus' injury cannot be adequately compensated by monetary damages because, as explained above, the harm resulting from Askey's delay in taking a license implicates (i) Wilus' reputation as a leading contributor to standards development, (ii) its funding of and participation in future research and development work, and (iii) its ability to successfully license its Wi-Fi 6 portfolio to other licensees. Courts in this district have held that these facts are sufficient to establish both irreparable harm and the inadequacy of remedies available at law. *CSIRO*, 492 F. Supp. 2d at 604 ("Thus, the

harm of lost opportunities is irreparable. They cannot be regained with future money because the opportunity that was lost already belongs to someone else.").

It is also worth noting that Wilus' Asserted Patents cover foundational technology included in the Wi-Fi 6 standard, and the Accused Products, which include certain routers manufactured by Askey, were specifically designed to provide Wi-Fi 6 functionality. *See* Ex. C at ¶ 11; Ex. E. It is therefore unsurprising that Askey acknowledges the standard essentiality and validity of the Asserted Patents. Since Askey's infringement relates to the essence of the technology, rather than to merely a small component in the Accused Products, "monetary damages are less adequate in compensating [Wilus] for [Askey's] future infringement." *CSIRO*, 492 F. Supp. 2d at 606.

Thus, the nature of Wilus' harm, and the nature of both the Accused Products and the patented technology, support finding that Wilus' injury is difficult to quantify and that monetary damages are less adequate to compensate for Askey's continued infringement. *See id.* ("Monetary damages are not adequate to compensate CSIRO for its damages, which are not merely financial."); Stmt. of Interest at 5-8.

## C. Balance of Hardships

The balance of hardships also decidedly favors Wilus. Absent an injunction, Wilus will continue to endure significant injury in the form of irreparable harm to its research and development activities and the loss of its ability to successfully compete with others in the standardization space. Wilus' licensing activities will also continue to be harmed by Askey's delay in taking a license to the Asserted Patents at FRAND rates. Ex. C at ¶¶ 15-18; *see also id.* at ¶ 12 (identifying several entities that are licensed to Wilus' patented technologies and that manufacture products that could be available substitutes if an injunction is granted). As mentioned above, Wilus receives no revenue except through its licensing activities. *Id.* at ¶¶ 10, 15-16.

14

The ongoing harms Wilus is being subjected to, when taken together, jeopardize its operation as a small, research-driven laboratory that is dedicated to developing innovative solutions in rapidly developing, technical fields. Such delays in funding are not merely a delay in receiving a monetary award; rather, these delays represent forgone opportunities for Wilus to contribute to the development of future global standards and to enhance the next iteration of wireless and multimedia technologies. *Id.* at ¶¶ 15-16. The public has an interest in encouraging Wilus' continued innovations in these spaces, especially given the company's history of impressive inventions, which include advanced multi-user communication techniques; ultra-low-power and massive IoT deployment technologies; and advancements in the next-generation of immersive multimedia related to spatial audio processing, advanced video compression, and the enablement of high-quality UHD. *See id.* at ¶ 7.

Askey, on the other hand, is a large corporation with numerous business and product lines, and it will not go out of business or lose its Wi-Fi 6 product lines even if the requested injunction is entered. The Accused Products make up only a subset of Askey's product offerings and thus Askey will retain its ability to sell its other products that have not been accused of infringement in these matters.[6] *See* Askey, Products, https://www.askey.com/products/ (last visited Feb. 4, 2026) (showing Askey's various product offerings). Indeed, Wilus' proposed injunction is reasonably and specifically tailored to Askey's infringement. *See* Stmt. of Interest at 16 ("An appropriately scoped injunction leaves it to the parties, rather than courts, to determine the value of the technology.").

---

[6] During this litigation, Askey has also maintained that its sales of the Accused Products sharply decreased during the 2024-2025 timeframe.

██████████████████████████████████████████

Critically, Askey cannot claim hardship for being required to comply with the patent laws and for being prohibited from selling products that it has already admitted infringe the Asserted Patents. *See, e.g.*, *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected."); ███████████

████████████████████████████████████████████████

██████████████████ Moreover, and perhaps most importantly, Askey can choose to simply accept Wilus' licensing proposal, which other courts have already recognized as FRAND-compliant, and continue selling the Accused Products while also acknowledging and compensating Wilus for its contributions. Ex. G at ¶¶ 174-75 (finding that both Sisvel's Wi-Fi 6 pool rates and Wilus' bilateral rates comply with FRAND).

In sum, any harm that Askey may face because of the injunction will be purely financial, whereas the harm that Wilus will continue to be subjected to if no injunction is entered will have far-reaching effects not limited to financial injury. *See* Ex. C at ¶¶ 15-18. The balance of hardships thus favors entry of a permanent injunction because the harm to Wilus' R&D endeavors and licensing activities far outweigh any financial harm that Askey may face as a result of the requested injunction. *See, e.g.*, *CSIRO*, 492 F. Supp. 2d at 606-07.

D. **Public Interest**

The final factor considered by courts is whether entry of the requested injunction will disserve the public interest. *eBay*, 547 U.S. at 391. It is well-established that the public interest favors both the enforcement of patent rights and the granting of adequate remedies for infringement of valid patents. *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006) ("Although the public interest inquiry is not necessarily or always bound to the likelihood of

success of the merits, in this case absent any other relevant concerns, we agree with the district court that the public is best served by enforcing patents that are likely valid and infringed."). Here, the public has no "critical" interest in allowing Askey to continue to sell the Accused Products, which consist of routers and access point devices with Wi-Fi 6 functionality. *See id.* These products are not essential to the public health or welfare, and thus the public interest would in no way be disserved by entry of the requested injunction. *See CSIRO*, 492 F. Supp. 2d at 607.

Conversely, the public has a strong interest in enjoining unauthorized infringers, "which have the effect of inhibiting innovation and incentive." *Douglas Dynamics*, 717 F.3d at 1346. In order to enforce a patentee's fundamental property right, courts have consistently allowed injunctive relief to patent owners whose patents have been infringed." *CSIRO*, 492 F. Supp. 2d at 607 (internal citations omitted). This interest in enjoining unauthorized infringers is especially strong where the defendant is an *admitted* infringer who is merely prolonging litigation because the cost to try damages to a jury will likely exceed the damages at issue at trial. The public interest also weighs in favor of an injunction because Askey's unlicensed sales can decrease the market share for those entities that have already agreed to abide by their intellectual property obligations and have taken a license to Wilus' patent portfolio.

Refusing to grant the requested injunction will deter innovation and deprive Wilus of its right to exclude others from using its property. *See, e.g.*, *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1246-47 (Fed. Cir. 1989) ("Infringement having been established, it is contrary to the laws of property, of which the patent law partakes, to deny the patentee's right to exclude others from use of his property."). Courts have specifically recognized that "the public has an interest in encouraging participation in standard-setting organizations" and have also emphasized that "the public interest is advanced by encouraging investment by research organizations into future

technologies[.]" *Apple,* 757 F.3d at 1331; *see also CSIRO*, 492 F. Supp. 2d at 607. Wilus has developed a reputation for meaningfully contributing to the development of standardized technologies, which is one of the very interests that courts recognize as being worthy of encouraging and protecting. *See Apple,* 757 F.3d at 1331; Ex. C at ¶¶ 6-10.

Enjoining adjudicated infringement promotes innovation and confidence in the patent system, and there is no countervailing public interest that would justify allowing Askey to continue infringing Wilus' patents and, in turn, causing irreparable injury to Wilus' research and licensing endeavors. Requiring a trial under these circumstances would needlessly delay Wilus relief for Askey's intentional infringement and would continue to subject it to harm that cannot be remedied adequately through monetary damages. Where, as here, liability has been conclusively resolved by stipulation and no factual disputes remain as to infringement or validity, the Court should proceed directly to entry of equitable relief. *See, e.g.*, *CSIRO*, 492 F. Supp. 2d at 602 (granting a motion for a permanent injunction even though "the issue of CSIRO's damages has not been determined[.]").

## V.    CONCLUSION

For the foregoing reasons, Wilus requests that the Court grant this Motion and permanently enjoin Askey from infringing the Asserted Patents.

Dated:  February 11, 2026

Respectfully submitted,

*/s/ Marc A. Fenster*

Marc A. Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Dale Chang
CA State Bar No. 248657
Email: dchang@raklaw.com
Neil A. Rubin
CA State Bar No. 250761
Email: nrubin@raklaw.com
Jacob Buczko
CA State Bar No. 269408
Email: jbuczko@raklaw.com
Jonathan Ma
CA State Bar No. 312773
Email: jma@raklaw.com
Mackenzie Paladino
NY State Bar No. 6039366
Email:  mpaladino@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474


Of Counsel:
Andrea L. Fair
State Bar No. 24078488
MILLER FAIR HENRY, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)
E-mail: andrea@millerfairhenry.com

**ATTORNEYS FOR PLAINTIFF,
Wilus Institute of Standards and
Technology Inc.**

1

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and served via email on all counsel of record on this 11th day of February, 2026.

/s/ Neil A. Rubin_____

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that pursuant to Local Rule CV-7(h) counsel for Wilus has conferred with counsel for Defendants and the relief requested in this motion is opposed.

/s/ Neil A. Rubin_____

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the following document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

/s/ Neil A. Rubin_____