Exhibit Jong - 2

# Certain Issues of Discussion Concerning the Governing Law
# of International Contracts

- With a Focus on the Theory of Interpretation in the Act on Private International Law -

Kwang Hyun Suk[*]

[Table of Contents]

I.    Introduction
II.   The International Nature of Contracts - The Concept of International Contracts -
III.  Conflictual Designation (koHisionsrechtliche Verweisung) and Substantive Incorporation (materiellrechtliche Verweisung)
IV.   Key Relevance to Governing Law
V.    Which country's law should be the governing law chosen by the parties?
VI.   Depecage (or Splitting) of the Governing Law
VII.  Determination of Governing Law for International Contracts in International Commercial Arbitration
VIII. Related Issues
IX.   Conclusion

*12*   Journal of Legal Studies Vol. 16

* Associate Professor, College of Law, Hanyang University, Seoul

[omitted]

## VI. Depecage (or Splitting) of the Governing Law

According to Article 9 of the *Act on Private International Law*, the governing law of a contract regulates 'the formation and effect of the contract.' Furthermore, although the *Act on Private International Law* does not explicitly provides this, it is understood that the 'effect' and interpretation of a contract are also governed by the contract's governing law. Conversely, the 'capacity of the parties' (Article 6 of the *Act on Private International Law*) and 'the form of the contract' (Article 10)[39] are governed by separate connecting factors explicitly prescribed by the Act on Private International Law. Furthermore, although the Act on Private International Law does not establish a separate connecting factor for 'agency', it is understood in theory to follow a separate connecting factor.[40]

---

39) According to him, the method form of the contract is selectively linked to either the contract's governing law or lex loci actus (the law of the place of the act).

40) The Supreme Court ruled in its decisions of March 24, 1987 (86DaKa715) and February 9, 1988 (84DaKa1003), among others, that the agency lex loci actus (law of the place where the agency act was performed) must be applied to determine the existence of agency authority and the formation of apparent agency. This is intended to protect the counterparty to the agency act and is unrelated to Article 9 of the *Act on Private International Law*, which establishes lex loci actus as the objective governing law.

In Germany, such issues governed by separate connecting factors are sometimes referred to as 'subquestions (Teilfrage)'. However, the so-called 'substance of the contract'—such as its formation and effect—has traditionally been understood as governed by a single governing law. This principle is known as the 'principle of unity of governing law'. There are also views within Korea that adhere to this principle.[41]

Allowing the depecage (dépeçage) of governing law may result in outcomes inconsistent with the substantive legal systems of any relevant country. This has been criticized for causing conflicts of norms and undermining the unity of the legal order and the consistency of internal determinations. However, the current international trend is to recognize the depecage of governing law, allowing parties to designate different governing laws for the formation and effect of a contract,[43] or to designate different governing laws for each party's respective duties (obligations).[43] For example, the Rome Convention (Article 3(1)) and the Hague Sales Convention (Article 7(3)) explicitly permit this.

Contemplating the interests of the parties involved in the *Act on Private International Law*, it is reasonable to permit the splitting of the governing law as an interpretive approach. Furthermore, it would be desirable to explicitly permit the splitting of the governing law as a legislative approach.

Strong evidence that the current trend permits the splitting of governing law can also be found in the United Nations Convention on Contracts for the International Sale of Goods (CISG). Specifically, the Convention governs only the formation of the sales contract and the rights and obligations of the seller and buyer arising from the sales contract, i.e., its effect, but does not govern the validity of the contract (Article 4). Furthermore, contracting states may make reservations excluding the application of either Part II, which governs the formation of the contract, or Part III, which governs the rights and obligations of the parties under the contract (i.e., its effect) (Article 92). This is because these provisions logically presuppose that the formation, effect, and validity of a contract may be governed by separate legal rules.

Of course, even if splitting of the governing law is permitted, it must be logically consistent; therefore, such a choice must relate to elements that can be governed by different laws without contradiction.

---

41) Sang Jo Park/Jong Jin Yoon, *Private International* Law (1998), p. 346.

42) In Germany, determining different governing laws for specific issues, such as formation and effect, is termed "horizontal or major division (horizontale oder große Aufspaltung)", while determining different governing laws for different parties is called "vertical or minor division (vertikale oder kleinere Aufspaltung)". MnchKomm/Spellenberg Vor Art. 11 Rn. 23. In Korea, some scholars also distinguish these terms, referring to the former as a "depecage" of the governing law and the latter as "cut-up." Sang Jo Park/Jong Jin Yoon, *Private International Law* (1998) p. 345 ff.

43) Sang Jo Park/Jong Jin Yoon, *Private International Law* (1998) p. 346, seems to argue that the principle of a single governing law is the view adopted by European Community and U.S. private international law and doctrine, but this is incorrect. In the case of the European Union, as seen in the Rome Convention, and in the case of the United States, as seen in *Restatement of the Law* (Second), American Law Institute §187(2), the governing law is determined on a per-issue basis. Therefore, compared to the European Union, the United States can be said to be more open regarding the splitting of the governing law.

Therefore, it has an inherent limitation in that splitting, such as designating different governing laws for the seller's rights and the buyer's obligations is not permitted.

In conventional practice, the issue of splitting of governing law arose in the following two cases: (i) the English law governing clause in a marine cargo insurance contract and (ii) the clause paramount of the bill of lading. While the Supreme Court did not address the permissibility of splitting of governing law in these two cases, it took as a given premise that splitting of governing law is permitted under the *Act on Private International Law*. That is, regarding the English law clause, the Supreme Court had previously taken the position that the governing law of the insurance contract was English law[44], in its July 14, 1998 ruling (96Da39707), it explicitly permitted the splitting of governing law. Specifically, it held that while English law should apply to claims and settlements under the insurance contract based on its literal terms, Korean law should apply to matters concerning whether the subject matter of the insurance contract constitutes the insured property, i.e., matters pertaining to the formation of the insurance contract.[45] Furthermore, the recent Supreme Court decision 98Da9038, rendered on December 10, 1999, appears to permit the splitting of governing law concerning the governing law of a bill of lading containing a so-called clause paramount and a Mexican liability clause.

For reference, Korean legal doctrine recognizes the concept of a so-called supplementary governing law (Nebenstatut), but such a law is not a governing law; it is merely a substantive incorporation (materiellrechtliche Verweisung) by reference. If supplementary governing law were granted the status of governing law, this would constitute a so-called depecage of the governing law. If the concepts of 'depecage of the governing law' and 'substantive incorporation (materiellrechtliche Verweisung)' are recognized, there is no room to separately recognize the concept of a supplementary governing law.[46]

## VII. Determination of Governing Law for International Contracts in International Commercial Arbitration

In international commercial arbitration, arbitrators must determine the governing law applicable to the substance of the case in order to render an award on international matters involving foreign elements. This is no different from how a court resolve disputes. For a court, as seen above, this involves a two-step process: first applying the conflict-of-laws rules of the forum, then determining the governing law of the substance based on the connecting factors established by those rules. The question is whether this process of determining the governing law is equally valid for arbitrators in international commercial arbitration.

---

44) Supreme Court Decision 90DaKa25314, rendered May 14, 1991, etc. For a commentary on this decision, see my article, "Legal Issues Concerning the English Law Clause in Marine Cargo Insurance Contracts," in *Property & Casualty Insurance*, December 1993.

45) Regarding the legal nature of the English law governing clause, see my article, "Legal Issues Concerning the English Law Governing Clause in Marine Cargo Insurance Contracts," *Property & Casualty Insurance*, December 1993. I took the view that this should be regarded as a substantive incorporation (materiellrechtliche Verweisung); according to this view, the issue of splitting of the governing law does not arise. The latter judgment likely reached a different conclusion from past rulings due to differences in the wording of the English law clause actually used. The latter judgment treated the question of what constituted the subject matter of insurance as an issue of formation of the insurance contract; however, this is considered an issue of interpretation of the insurance contract, not formation.

46) For details, see my article, "The Governing Law of Contractual Creditor-Debtor Relationships under the European Community Convention," Private International Law Research Journal No. 3 (1998), p. 615, note 229.

First, we consider cases where the parties have designated a governing law. Unlike court proceedings, in international commercial arbitration, it is now generally accepted that parties may agree to use not only the law of a specific country but also the so-called '*lex mercatoria* (merchant law)' as the governing rules for dispute resolution. Article 28(1)[47] of the UNCITRAL Model Law on International Commercial Arbitration explicitly provides for this by referring to the 'rules of law' that the parties may choose, rather than simply 'law'. However, although our Arbitration Act adopted the UNCITRAL Model Law, Article 29(1) states: 'The arbitral tribunal shall render its award in accordance with the <u>law</u> designated by the parties. (underline added)......''. Paragraph 2 then states: "In the absence of any designation under paragraph 1, the arbitral tribunal shall apply the <u>law</u> of the State. (underline added)" By translating both 'rules of law' and 'law' as 'law', the Act fails to distinguish between the two terms. This ambiguity raises questions in the interpretation of the Arbitration Act regarding whether parties can agree to adopt UNIDROIT Principles of International Commercial Contracts or *lex mercatoria* as the governing law. [48]

On the other hand, in cases where the governing law applicable to the substance of the dispute between the parties has not been designated, the following issues have traditionally been discussed regarding the designation of the governing law.[49]

First, must arbitrators necessarily apply conflict-of-laws rules first and determine the substantive governing law accordingly, or can they directly determine the substantive law without the mediation of conflict-of-laws rules? Second, if arbitrators must determine the substantive governing law through the mediation of conflict-of-laws rules, must those rules be the conflict-of-laws rules of the arbitration seat? Third, whether the arbitrator should apply the substantive law of a particular country's legal system (national system of law) when applying substantive law either directly without the intermediary of conflict-of-laws rules or through such rules, or whether they may instead apply appropriate norms or *ex aequo et bono* (equity and goodness) or as amiable compositeur to resolve the dispute.

Where the parties have not designated the governing law, Article 28(2) of UNCITRAL Model Law[50] provides that the arbitrators shall determine the applicable law through the mediation of private international law. In such cases, unlike paragraph 1, it appears to require that the governing law be the law of a specific country, using the term 'law' rather than 'rules of law.' Conversely, the International Chamber of Commerce (ICC) Arbitration Rules (Article 17(1)),[51] as amended effective January 1, 1998, differ from the UNCITRAL Model Law in that they do not require the intervention of conflict-of-laws rules and explicitly permit the application of "rules of law" rather than necessarily a specific law.

---

47) The provision reads as follows (underlining added). "The arbitral tribunal shall decide the dispute in accordance with such as <u>rules of law</u> as are chosen by the parties as applicable to the substance of the dispute."

48) Of course, even so, incorporation into the contract's content by reference through a substantive incorporation (materiellrechtliche Verweisung) remains possible.

49) For details, see my article, "Determining the Governing Law Applicable to the Substance in International Commercial Arbitration," in *Various Issues in Legal Practice*, Dongcheon Law Firm Attorney In Seop Kim's 60th Birthday Anniversary Commemorative Collection (1996), pp. 522-535. However, the portion concerning Korean law is based on the amended *Arbitration Act* effective January 2000.

50) The provision reads as follows (underline added): "Failing any designation by the parties, the arbitral tribunal shall apply the law <u>determined by the conflict of laws rules which it considers applicable.</u>"

51) The provision reads as follows (emphasis added): "The parties shall be free to agree upon the rules of law to be applied by the Arbitral Tribunal to the merits of the dispute. In the absence of any such agreement, the Arbitral Tribunal shall apply <u>the rules of law which it determines to be appropriate.</u>"

However, Article 29(2) of the *Arbitration Act* states: "In the absence of a designation under paragraph (1), the arbitral tribunal shall apply the law of the country having the closest connection with the subject matter of the dispute. (Underlining added)" This provision, concerning the first point of contention, takes an advanced position identical to the ICC Rules by excluding the mediation of Private International Law, unlike the UNCITRA Model Law. However, concerning the third point of contention, it excludes the possibility of arbitrators applying norms other than the law of a specific country, such as *lex mercatoria*, by mandating the application of the law of a specific country.[52] This is identical to the German Code of Civil Procedure (Section 1051(2)), but differs from Swiss the Act on Private International Law (Article 187(1)), which requires application of the law with the closest connection, and the International Chamber of Commerce (ICC) Arbitration Rules (Article 17(1)), which allows arbitrators to apply 'rules of law' they deem appropriate.

---

52) However, Article 29(3) states that "The arbitral tribunal shall decide *ex aequo et bono* (equity and goodness) or as amiable compositeur only if the parties have expressly authorized it to do so."

# 國際契約의 準據法에 관한 몇 가지 논점
## － 涉外私法의 解釋論을 중심으로 －

石　光　現*

〈目　次〉

Ⅰ. 머 리 말
Ⅱ. 契約의 國際性 － 國際契約의 개념 －
Ⅲ. 抵觸法的 指定과 實質法的 指定
Ⅳ. 準據法과의 관련성 요부
Ⅴ. 당사자가 선택한 準據法은 어느 국가의 법이어야 하나
Ⅵ. 準據法의 分裂 (또는 分割)
Ⅶ. 國際商事仲裁에서의 國際契約의 準據法의 결정
Ⅷ. 관련문제
Ⅸ. 맺 음 말

# Ⅰ. 머 리 말

오늘날 대부분의 국제적인 거래가 계약에 의해 이루어지고 있으므로 '國際契約(international contract)'의 準據法의 결정은 이론적으로나 실무적으로 매우 중요하다. 涉外私法 제9조는 法律行爲의 準據法에 관하여 이른바 '當事者自治의 原則(principle of party autonomy)'을 선언하고, 당사자가 準據法을 정하지 아니한 경우 行爲地法이 準據法이 된다고 규정한다.[1] 전자와 같이 당사자가 선택한 準據法을 '主觀的 準據法'이라고 하고, 후자의 準據法을 '客觀的 準據法'이라고도 한다. 涉外私法이 客觀的 準據法의 결정에 관하여 行爲地法原則을 취하는 것은 입법론적으로 부당하나,[2] 當事者自治의 原則은 국제적으로 널리 인정되는 연결원칙으로서 별문제가 없다. 그런데, 국제거래를 취급하는 실무가들은 물론이고 법률가들조차도, 當事者自治의 原則을 아는 것만으로 國際契約의 準據法에 관한 논점을 모두 이

---

* 한양대학교 법과대학 부교수
1) 제9조는 다음과 같다. "법률행위의 성립 및 효력에 관하여는 당사자의 의사에 의하여 적용할 법을 정한다. 그러나 당사자의 의사가 분명하지 아니한 때에는 행위지법에 의한다."
2) 입법론적 비판은 拙稿, "국제화 시대의 涉外私法 개정방향", 법무부 법무자료 제226집 (1999), 제4장 國際契約法 참조. 國際私法硏究 제4호(1999) 297－345면에 원래의 발표문이 수록되어 있다.

*2  法學論叢 第16輯*

해한 것으로 믿는 경향이 있으나, 이는 그렇게 단순한 문제가 아니다.

여기에서는 현행 涉外私法의 해석론을 중심으로, 國際契約의 準據法과 관련하여 실무상 제기되는 諸論點³⁾ 중 기본적인 것들, 즉 契約의 國際性 또는 涉外性(international character) 내지는 國際契約의 개념(Ⅱ.1, 2), 국내계약에 외국법을 準據法으로 지정할 수 있는지 (Ⅱ.3), 抵觸法的 지정과 實質法的 지정의 구별(Ⅲ), 準據法은 당해 거래 또는 당사자와 관련을 가진 법이어야 하는지(Ⅳ), 準據法은 반드시 어느 국가의 법(national system of law)이어야 하는지(Ⅴ), 準據法의 分裂 또는 分割(depeçage, splitting)의 문제점(Ⅵ)과 국제상사중재에서의 國際契約의 準據法 결정의 특수성(Ⅶ)에 관하여 논의하고자 한다. 이 중 Ⅲ과 Ⅶ을 제외한 나머지 논점은 當事者自治에 대한 제한으로서의 의미를 가지는 것이기도 하다.

## Ⅱ. 契約의 國際性 — 國際契約의 개념 —

계약이 어느 경우에 '國際性' 또는 '涉外性'(international character. 이하 양자를 호환적으로 사용한다)을 가짐으로써 이른바 國際契約이 되는가를 논의함에 있어서는, 첫째, 國際契約의 개념을 논의하는 목적을 분명히 하고, 둘째, 그러한 목적하에 계약의 國際性을 결정하는 기준을 정립하여야 한다.

### 1. 國際契約의 概念 정립의 목적

일반적으로 國際契約은 아무런 섭외적 요소가 없는 순수한 국내계약(이하 '국내계약'이라 한다)과 대비되는 개념으로 이해되고 있다. 따라서 國際契約과 국내계약을 구별하는 기준을 알아야 하는데, 이는 國際契約의 개념의 문제이기도 하다.

國際契約의 개념을 정의함에 있어 국내에서의 종래의 논의는 일반적으로 타당한 國際契約의 개념을 정립하려는 경향이 있다. 예컨대, 이재홍부장판사는, 국내문헌에 나타난 다양한 國際契約의 개념을 검토한 뒤 "國際契約이란 서로 다른 나라에 영업소를 가지고 있고 서로 다른 국적의 당사자간의 계약으로서 그 계약에 따라 물품, 자본, 기술, 역무 등이 국제적으로 이동하는 계약"이라고 한다.⁴⁾ 이러한 國際契約의 개념을 전제로, 國際契約은 涉外事件인

---

3) 國際契約의 準據法과 관련된 諸論點은 拙稿, "契約上 債權關係의 準據法에 관한 유럽共同體協約", 法曹 1994. 3, 4, 5. 및 國際私法研究 제3호 (1998) 577−629면 참조. 최근의 포괄적인 문헌으로는 Nygh, Peter, Autonomy in International Contracts (1999)를 참조.

4) 이재홍, "國際契約에 관한 일반적인 문제", 涉外事件의 제문제(상) (1986) 35면.

가를 결정하는데 가장 중요한 기준이 될 뿐이고, 國際契約이 반드시 涉外事件이 되는 것은 아니라고 설명한다.

그러나, 사견으로는 보편적으로 타당한 國際契約의 개념이 존재하는 것은 아니고, 가사 존재하더라도 이를 정확히 정의하기는 어려우며, 결국 國際契約의 개념은 그것을 논의하는 목적과 맥락에 따라 정립하는 것이 적절할 것으로 생각된다. 예컨대, 국제물품매매계약에 관한 1980년 유엔협약(CISG)는 그 명칭으로부터 알 수 있듯이 국제매매에 적용되는데, 동 협약상 '국제매매'라 함은 상이한 국가에 영업소를 가지는 당사자간에 체결된 매매계약을 말하고,[5] 국제물품매매계약의 準據法에 관한 1986년 헤이그협약에 따르면 국제매매는 상이한 국가에 영업소를 가지는 당사자간의 매매계약 기타 상이한 국가의 법률간의 선택의 문제를 수반하는 경우를 말한다. 이러한 개념은 서로 다른 국적의 당사자일 것을 요하지 않는 점에서 위 이재홍부장판사의 정의와는 차이가 있다.

國際契約의 개념을 논의하는 실익은, 國際契約의 경우 당연히 涉外私法이 적용되고, 따라서 당사자들은 涉外私法에 따라 자유로이 외국법을 準據法으로 지정할 수 있음에 반하여, 국내계약의 경우 涉外私法이 적용되지 않으며, 당사자들이 외국법을 準據法으로 지정할 수 있는가에 관하여 논란이 있기 때문이다. 여기에서는 이러한 맥락에서 國際性 또는 涉外性을 가지는 계약, 즉 '國際契約'의 개념을 정의한다. 논자에 따라서는, 이러한 國際契約을 '俠義의 國際契約'이라고 하고, 위에서 본 바와 같이 보편적으로 타당한 國際契約을 '廣義의 國際契約'이라고 하기도 한다.[6]

물론, "國際契約의 경우 당연히 涉外私法이 적용되고, 국내계약의 경우 涉外私法이 적용되지 않는다"는 명제에 관하여는, 그 전제로서 ① 涉外私法의 적용범위와 ② 國際契約과 涉外事件의 관계가 문제된다. ①은 涉外私法이 涉外事件 내지는 涉外的 法律關係에만 적용되는지, 아니면 국내사건에도 적용되는지의 문제인데, 현재로서는 涉外私法 제1조의 문언[7]을 근거로 涉外私法은 涉外事件 내지는 涉外的 法律關係에만 적용된다는 견해가 다수설이므로 일단 그렇게 말할 수 있을 것이다.[8] 한편, ②의 점에 관하여는, 보편적으로 타당한 國際契

---

5) 동 협약은 그 두 국가가 협약의 체약국이거나, 두 국가 또는 어느 한 국가가 체약국이 아니더라도 법정지의 국제사법규칙에 따라 체약국의 법이 準據法이 되는 경우에 적용된다(동 협약 제1조). 이와 같이 개별조약에서 국제매매의 개념을 정의할 수 있는 것이다.

6) 최공웅, "국제계약상의 법률문제", 사법연구자료 제12집 (1985), 128–131면; 정해덕, "국제계약분쟁에 관한 법률문제", 법조 1999. 5., 59면.

7) "본법은 ……섭외적 생활관계에 관하여 준거법을 정합을 목적으로 한다."

8) 다수설에 의하면, 涉外私法은 涉外事件에만 적용되고 국내사건에는 민법 또는 상법이 당연히 적용되는데, 이는 涉外私法의 매개를 통하여 한국법이 準據法으로 지정된 결과가 아니라, 민법 또는 상법 본래의 효력에 기한 것이라고 한다. 한편, 섭외적 요소를 가지지 않는 법률관계에도 涉外私法이 적용된다는 소수설은, 섭외적 요소가 없는 국내사건의 경우 涉外私法의 적용이 의식되지 않을 뿐이지 그의 적용이 배제되는 것은 아니라고 한다. 소수설에 따라 국내사건에 涉外私法을 적용하더라도 결국 국내법이 準據法으로 되므로 어느 견해를 취하는가에 따라 결과에 차이가 있는 것은 아니다. 다수설에 의하면, 사건의 涉外性 유무를 우선 판단해야 비로소 적용할 법을 결정할 수 있게 되는데 그 판단은 매우

4  法學論叢 第 16 輯

約의 개념을 정의한다면 國際契約이 반드시 涉外事件이 되는 것은 아닐 수도 있으나,[9] 여기에서는 涉外事件이 되는가의 여부와 관련하여 國際契約의 개념을 정의하는 것, 바꾸어 말하자면, 廣義의 國際契約이 아니라 俠義의 國際契約의 개념을 정의하는 것이므로, 國際契約은 涉外事件이라고 할 수 있을 것이다.[10]

## 2. 契約의 國際性 또는 涉外性의 決定

涉外性을 가지는 계약으로서의 國際契約이라 함은 일응 외국관련 또는 섭외적 요소(foreign element)가 있는 계약이라고 할 것이나, 과연 무엇이 외국관련 또는 섭외적 요소인가는 문제이다.

전통적으로는 계약의 國際性을 결정하는 기준으로, 당사자의 영업소, 국적, 주소 또는 상거소가 상이한 국가에 있거나, 계약체결지, 계약이행지 또는 계약목적물의 소재지가 외국이거나, 지급통화가 외국통화일 것과 같이, 계약이 둘 이상의 국가와의 관련을 가지고 있어야 한다는 의미에서 '事實的 客觀的 基準(factual objective test)'[11]을 요구하거나, 또는 경제적 기준[12], 법적 기준[13], 경제적 기준과 법적 기준을 결합하는 견해 등 다양한 견해가 주장되었다.[14] 최근에는 더 나아가 당사자가 외국법을 準據法으로 선택함으로써 國際契約이 된다는 이른바 '主觀的 基準(subjective test)'을 제시하는 견해도 있다. 契約債務의 準據法에 관한 1980년 유럽共同體協約(일명 로마협약)(제3조 제3항)은 이러한 주관적 기준을 따르고 있다.[15]

─────────

어려운 경우가 있고, 나아가, 涉外性이 없다고 판단되는 경우, 涉外私法에 의하지 아니하고 어떻게 민법 또는 상법 본래의 효력의 적용범위를 확정할 수 있는가라는 어려운 문제가 제기된다. 다수설에 의하면, 민법 또는 상법의 이러한 본래적 효력은 결국 속인주의와 속지주의를 근거로 하는 것으로 보인다. 속인주의와 속지주의의 어느 기준에 의하여도 명백히 민법 또는 상법이 적용되는 사안의 경우는 그렇게 설명할 여지가 있으므로 그에 반대할 생각은 없다. 양자가 충돌되는 경우(섭외적 요소가 있는 사안은 대부분 이에 해당할 것이다) 민법과 상법의 적용범위를 정하는 준칙은 결국 涉外私法이어야 할 것이다. 예컨대, 불법행위의 準據法 결정에 관한 이른바 '공통의 속인법'의 예에서 보는 바와 같이, 결과적으로 속인주의(국적을 기초로 한다면)가 적용되는 경우도 있으나, 이는 涉外性을 인정한 뒤에, 정치한 연결원칙이 적용된 결과이지, 민법의 본래적 효력에 근거한 것이 아님을 주의해야 한다.

9) 이재홍, "國際契約에 관한 일반적인 문제", 涉外事件의 제문제(상) (1986), 33∼34면.
10) 사법통일을 위한 국제연구소(UNIDROIT)가 1994년 채택한 국제상사계약원칙(Principles of International Commercial Contracts)의 예에서 보는 바와 같이 국제계약에 적용되는 규칙을 정립하기 위한 것이라면 국제계약의 정의는 여기에서의 그것과는 달라질 수도 있다.
11) Nygh, Peter, Autonomy in International Contracts (1999) p. 48 이하 참조. 그러나 그러한 사실적 객관적 기준을 망라하여 제시하는 것은 불가능하다.
12) 이는 둘 이상의 법역(jurisdiction)에 경제적 영향을 미치는 계약을 말한다.
13) 이는 상이한 국가의 법간의 선택을 수반하는 계약을 國際契約이라고 본다.
14) Holleaux/Foyer/de La Pradelle, Droit international priv (1987) Nos. 1368∼1374. UNIDROIT Principles 전문 Comment 1도 참조. 견해의 소개는 拙稿, "海上積荷保險契約에 있어 英國法準據約款과 관련한 法的인 問題點", 손해보험 1993. 12., 23면 참조.
15) 그러나, 국제물품매매계약의 準據法에 관한 1986년 헤이그협약은 이를 명시적으로 배척한다(제1조).

생각건대, 위의 다양한 견해중 어느 하나를 따르는 것은 다소 주저되며, 國際契約은 일응 외국관련 또는 섭외적 요소(foreign element)가 있는 계약이라고 보되, 그러한 외국관련 또는 섭외적 요소는 비교적 넓게 이해하는 것이 적절할 것으로 생각된다.[16] 왜냐하면, 그렇지 않을 경우 자의적인 涉外性의 판단에 의하여 涉外私法의 적용이 부당하게 배제될 가능성이 있다.[17] 더 나아가, 당사자가 外國法을 準據法으로 합의한 것만으로도 당해 계약의 涉外性을 인정할 수 있다고 본다. 다만, 그 경우, 로마협약에서 보는 바와 같이, 그러한 합의에도 불구하고 국내의 강행법규의 적용을 관철해야 할 것이다.

이와 관련하여 입법론으로서 涉外私法에서 섭외관계의 개념을 명확히 하자는 견해[18]도 있으나, 위에서 본 바와 같이 涉外性의 기준을 제시하는 것은 매우 어렵고, 또한 이는 판례와 학설에 맡기면 충분하므로 굳이 그렇게 할 이유도 없다고 생각된다.

## 3. 國內契約에 대한 外國法 準據法의 지정의 가부와 그 효력

순수한 국내계약의 경우 당사자들이 아무런 제한없이 외국법을 準據法으로 지정할 수 있다면 당사자들은 외국법을 準據法으로 지정함으로써 국내의 강행법규의 적용을 회피할 수 있게 된다. 이러한 결론은 부당하므로 순수한 국내계약의 경우 어떠한 형태로든 외국법을 準據法으로 선택하는 것을 제한하려는 견해가 유력하다. 이러한 견해에 의하면, 만일 국내계약의 경우 당사자가 외국법을 準據法으로 지정하는데 제한이 있다면, 국내계약의 準據法을 외국법으로 지정한 경우의 효력이 문제되는데, 이에 관하여는 다음과 같은 견해 등이 주

---

16) 법률관계의 涉外性의 판단에 관하여는, 섭외적 생활관계를 섭외적 요소(foreign element)가 포함된 모든 사법적 생활관계 또는 외국관련이 있는 사법관계로 넓게 이해하는 견해와, 단순한 외국적 요소의 존재만으로는 부족하고 외국적 성격이 상당한 정도에 이르러 그 관계에 막연히 국내법을 적용함은 부당하고 涉外私法을 적용하는 것이 합리적이고 타당한 경우에 한하여 섭외적 생활관계를 인정하는 견해가 있다. 후자는, '상당한 정도'의 기준은 일률적으로 정하기 어렵고 그 구체적인 범위는 판례의 집적에 의하여 정립될 수 있을 것이라고 한다. 사견으로는, 위 두 견해에 모두 문제가 있다고 생각되며, 涉外事件인가를 판단함에 있어서는 비교적 넓게 이를 인정할 것이나, 涉外私法의 각 조문에 규정된 연결원칙을 적용함에 있어서는 동조의 해석의 문제로서 그의 목적과 관련 이익을 고려하여 그러한 涉外性이 의미있는가의 여부를 판단해야 할 것이다. 상세는 拙稿, 涉外不法行爲의 準據法決定에 관한 소고 — 공통의 속인법에 관한 대법원판결을 계기로 본 涉外私法의 적용범위와 관련하여 —", 법조 1994. 9. 참조. 최공웅, "國際私法의 적용대상과 涉外性의 판단", 법조 1999. 8., 14면 이하는 전자를 '形式說', 후자를 '實質說'이라 하고 일본 학설을 소개한다.

17) 涉外性의 판단에 관하여 외국적 성격이 상당한 정도에 이르러 涉外私法을 적용하는 것이 합리적이고 타당한 경우에 한하여 섭외적 생활관계를 인정하려는 견해에 의하면, 涉外私法에 따른 정치한 연결원칙의 정립과 적용 대신에, 섭외적 생활관계인가의 여부의 판단이 매우 중요한 문제가 된다. 이러한 입장은, 涉外私法의 적용범위를 넓게 이해하여 국내사건에도 적용된다는 입장에서는 물론이고, 그렇지 않더라도 부당하다고 하지 않을 수 없다.

18) 장문철, "국제화 시대의 涉外私法 개정방향", 법무부 법무자료 제226집 (1999), 제1장 涉外私法總則, 27면. 최공웅, "國際私法의 적용대상과 涉外性의 판단", 법조 1999. 8., 27면도 涉外性 판단의 기준을 명확히 설정하는 작업이 선행되어야 한다고 하나 입법론으로서 涉外私法에서 이를 명확히 규정하자는 취지인지는 분명하지 않다.

장될 수 있다.

첫째, 準據法의 선택은 무효이고, 내국법이 客觀的 準據法으로 된다는 견해 ─ 우리의 유력설[19]은, 당사자들은 선택된 법의 적용에 대하여 '承認할 만한 利益(anerkennenswertes Interesse)'을 가지고 있어야 하는데, 섭외적 요소가 없는 국내적 생활관계의 경우 그러한 이익이 없으므로 순수한 국내사건에 관하여 외국법을 準據法으로 선택한다면 이는 무효가 될 수 있다고 본다. 그러나, 이 경우에도 외국법의 선택을 아래(Ⅲ)에서 논의하는 實質法的 指定으로 볼 여지는 있을 것이다.

둘째, 準據法의 선택은 유효하고, 다만, 客觀的 準據法인 한국법의 강행법규는 여전히 적용된다고 보는 견해 ─ 當事者自治의 原則에 대한 제한은 당사자들에 의한 법의 회피를 막는 것으로 족하므로, 해석론으로서도 그러한 準據法 선택의 효력을 전면적으로 부정하는 대신 로마협약(제3조 제3항)과 같이 이를 허용하되, 準據法에도 불구하고 客觀的 準據法인 한국법의 强行規定 또는 强行法規(이하 '强行法規'라 한다)는 여전히 적용된다고 본다. 이 견해에 따르면, 그 범위내에서만 국내법이 적용될 뿐이고 여전히 準據法은 외국법이므로 외국법이 實質法的 指定으로 격하되는 것은 아니다.

사견으로는 국제사법에 있어서의 당사자이익(Parteiinteresse)을 존중하여 당사자들에게 광범위한 當事者自治를 허용하자는 취지에서 둘째의 견해를 지지하고자 한다. 다만, 어느 견해이든, 客觀的 準據法인 한국법의 强行法規가 적용되는 점은 마찬가지이다.

종래 실무상 국내해상화물운송과 관련된 적하보험계약의 경우에도, 별다른 문제의식 없이, 영국법준거약관을 사용하고 있는 것으로 보이나, 영국법을 準據法으로 지정함으로써 적하보험계약이 涉外性을 가지게 된다는 주관적 기준을 취하지 않는 입장에서는, 만일 위 첫째의 견해에 따르면 영국법을 準據法으로 선택한 것은 무효가 된다. 그 경우 영국법준거약관은 實質法的 指定으로 이해할 수 있을 것이다. 다만, 사견에 따르면, 그 경우에도 영국법을 準據法으로 하는 선택은 유효하고, 한국법의 강행법규는 여전히 적용된다고 본다. 따라서, 해상적하보험계약에 관하여 영국법과 배치되는 한국법의 강행법규가 문제로 되는데, 과거 실제로 불이익변경금지를 규정한 상법 제663조가 문제되었으나, 1991년 12월 31일자로 상법이 개정되어 해상보험에 관하여는 동조의 적용이 배제된 결과 이러한 문제는 해소되었다.

---

19) 이호정, 國際私法 (1983) 281면; 이태희, 國際契約法 理論과 實務, 증보판 (1989) 109면. 독일약관법 제10조 제8호는 약관에 대한 내용통제의 하나로서 "승인할 만한 이익이 없는 외국법의 선택은 무효"라고 규정했었으나 이 조항은 1986년 國際私法 개정법률에 의하여 삭제되었다.

## III. 抵觸法的 指定과 實質法的 指定

### 1. 개념의 정리

國際契約의 당사자가 계약의 準據法을 선택하는 것을 '抵觸法的 指定(kollisionsrechtliche Verweisung)'이라고 한다. 우리가 통상적으로 '準據法의 指定' 또는 '選擇'이라고 하는 것은 바로 이를 가리킨다. 반면에, 당사자가 선택한 準據法, 또는 당사자가 準據法을 선택하지 않은 경우 법정지의 연결원칙에 따라 결정된 客觀的 準據法의 적용을 받으면서, 그 準據法이 허용하는 범위내에서 당사자들로 準據法 소속국이 아닌 다른 국가의 법규를 적용하기로 약정하는 것을 '實質法的 指定(materiellrechtliche Verweisung)'이라고 한다. 후자는, 당사자들이 계약의 내용을 구체적으로 규정하는 대신 특정 외국법규를 지정 내지는 언급함으로써 동 법규를 계약의 내용으로 편입하는 것(즉, incorporation by reference)을 말하며, 이는 마치 약관이 계약의 내용에 편입되는 것과 유사하다. 양자는 다음과 같은 점에서 차이가 있다.

첫째, 抵觸法的 指定의 경우, 당사자가 準據法을 선택하지 않았더라면 準據法으로 되었을 客觀的 準據法의 강행법규의 적용이 배제되는데 반하여, 實質法的 指定의 경우 準據法의 강행법규의 적용이 배제되지 않는다.[20] 둘째, 抵觸法的 指定의 경우 準據法으로 지정된 외국법은 원칙적으로 계약체결시의 외국법으로 고정되지 않으므로, 準據法 지정 후 외국법이 개정된 때에는 개정된 법이 적용된다.[21] 반면에, 實質法的 指定에 의하여 외국법이 계약의 내용을 이루는 경우에는, 계약체결 후에 당해 외국법이 개정되거나 폐지되더라도 일단 계약의 내용으로 편입된 외국법의 내용은 영향을 받지 않는다. 셋째, 抵觸法的 指定의 경우, 準據法으로 지정된 외국법도 법으로 취급되므로 법원은 직권으로 외국법을 조사하여야 하나, 實質法的 指定의 경우 외국법은 계약의 내용이 될 뿐이므로 당사자가 외국법의 내용을 입증해야 한다고 볼 여지가 있다.[22]

---

20) Kegel, Internationales Privatrecht, 6. Auflage (1987) S. 422, 이호정, 國際私法 (1983) 281 −282면.

21) 이 경우에도 당사자가 합의로써 準據法인 외국법을 특정시점의 그것으로 고정시킬 수 있는데 그 대표적인 예가 準據法의 'Versteinerung(동결)'이다. 이와 유사하지만 구별되는 개념으로서, 국가와 체결하는 계약에서 사용되는 이른바 'Stablisation Clause(안정화조항)'가 있다. 이는 일방 계약당사자인 국가가 계약체결후 법을 개정하거나 기타 상대방에게 불리한 조치를 취하지 않겠다고 확약하는 취지의 조항을 말한다. 상세는 安春洙, 凍結條項과 安定化條項, 國際私法研究 第3號 (1998) 687−701면 참조.

22) Kegel은 實質法的 指定의 경우에도 법원이 외국법을 조사할 의무가 있다고 한다.

8  法學論叢 第16輯

종래 실무상 抵觸法的 지정과 實質法的 지정의 구별이 문제되었던 것은 ① 해상적하보험계약상의 영국법준거약관과 ② 선하증권의 至上約款(clause paramount)을 들 수 있다. 필자로서는 해상적하보험계약상의 영국법준거약관의 법적 성질을 實質法的 지정으로 이해하였고,[23] 선하증권의 지상약관(clause paramount)의 법적 성질은 그것이 예컨대 헤이그규칙을 직접 적용하거나, 헤이그규칙을 국내법화한 입법을 적용하는 경우로서 당해 국내법의 적용요건을 구비하지 못하는 경우에는 實質法的 지정으로 볼 것이라는 견해를 피력하였다.[24] 그러나, 대법원은 영국법준거약관에 관하여 과거에는 보험계약의 準據法이 영국법이라는 입장을 취하였으나, 대법원 1998. 7. 14. 선고96다39707 판결은 영국법준거약관을 보험계약에 따른 전보청구 및 결제에 관하여만 영국법을 準據法으로 지정한 것, 즉 部分指定으로 보았다. 한편, 최근 대법원 1999. 12. 10. 선고 98다9038 판결은, 명시적으로 밝히지는 않았으나, 이른바 至上約款 및 멕시코책임조항이 포함된 선하증권의 準據法에 관하여 이를 實質法的 지정이 아니라 準據法을 부분지정한 것으로 본 것으로 생각된다.

## 2. 準據法의 指定과 國際的 強行法規의 적용

위에서 본 바와 같이, 抵觸法的 지정의 경우, 實質法的 지정의 경우와는 달리, 당사자가 準據法을 선택하지 않았더라면 準據法으로 되었을 客觀的 準據法의 '強行法規'의 적용이 배제된다. 여기에서 '強行法規'라 함은, 이른바 '單純한 強行法規' 또는 '國內的 強行法規'를 말하는바, 이는 당사자가 계약에 의하여 그 적용을 배제할 수 없는 법규를 말한다. 예컨대, 대리상계약의 準據法이 한국법이라면 대리상은 상법 제92조의2가 정한 바에 따라 보상청구권을 가지는데, 당사자들이 한국에서 대리상계약을 체결하면서 이러한 보상청구권을 알지 못하는 외국법을 準據法으로 지정하였다면 상법의 위 조항은 적용되지 않고 그 準據法에 따른다.[25]

그러나, 單純한 強行法規와 구별되는 것으로서, '國際的 強行法規(internationale zwingende Bestimmungen)'는, 당사자가 그 적용을 배제할 수 없음은 물론이고, 準據法을 외국법으로 지정하더라도 적용이 배제되지 않는 법규를 말하는데,[26] 법정지의 '國際的 強行

---

23) 영국법준거약관의 법적 성질에 관하여는 拙稿, "海上積荷保險契約에 있어 英國法準據約款과 관련한 法的인 問題點", 손해보험 1993. 12., 19−33면 참조.

24) 지상약관의 법적 성질에 관하여는 拙稿, "船荷證券의 準據法에 관한 몇 가지 문제점", 법조 1999. 4. 참조. 다만, 우리나라 선사들이 사용하는 지상약관의 경우 헤이그규칙을 입법화한 국내법을 지정하는 경우로서 동법의 적용요건이 구비된 경우는 抵觸法的 指定이라는 견해를 취하였다.

25) 이러한 결론은 상법의 위 조항이 본문 아래에서 설명하는 이른바 '단순한 강행법규'임을 전제로 하는 것이다.

26) 국제적 강행법규에는, 사인간의 이익의 조정보다는 국가의 이익에 봉사하는 사회, 경제적 의미를 가지는 干涉規範(Eingriffsnorm. 이는 프랑스의 직접적용법(lois d'application immédiate)에 상응한다)과 소비자, 근로자 및 주택임차인과 같은 사회, 경제적 약자의 保護를 목적으로 하는 특별사법(Sonerprivate)의 양자가 포함된다. Firsching/von Hoffmann, IPR, 5. Auflage (1997) S. 413ff.

國際契約의 準據法에 관한 몇 가지 논점  *9*

法規'[27]는, 외국법이 準據法임에도 불구하고 여전히 적용됨을 주의하여야 한다. 따라서, 만일 한국이 법정지이고 客觀的 準據法이 한국법이라면, 抵觸法的 지정과 實質法的 지정의 차이는, 한국법의 國內的 强行法規의 적용이 배제되는가의 여부로 귀착된다.

私的 自治가 널리 인정되는 분야에서는 單純한 强行法規의 예는 많지 않다. 위에서 언급한 대리상의 보상청구권을 정한 상법 제92조의2, 해상운송인의 책임경감금지를 규정한 상법 제790조 등을 들 수 있을 것이다.[28] 한편, 國際的 强行法規의 예로는 외국환거래법, 대외무역법과 독점금지 및 공정거래에 관한 법률(이하 '독점금지법')[29] 등을 들 수 있다. 예컨대, 한국기업과 외국기업이 국제거래를 하는 경우 準據法이 외국법이 되더라도, 한국이 법정지가 된다면, 외국환거래법, 대외무역법과 독점금지법은 당해법이 정한 요건을 구비한다면 準據法에 관계없이 적용된다. 즉, 우리의 입법자가 한국에의 수출입 등 한국과 일정한 관련을 가지는 거래에 적용하고자 위 법률등을 제정하였으므로 위 법률등은 당해 거래에 당연히 적용되며, 이는 당사자가 위 법률등을 準據法으로 지정했기 때문이 아니다.[30] 이러한 의미에서 위와 같은 國際的 强行法規의 경우, Savigny의 패러다임, 즉 법률관계로부터 출발하여 그 본거(Sitz)를 결정하는 방법론이 적용되는 것이 아니라, 반대로, 즉 법규로부터 그 법의 적용범위를 결정하는 패러다임이 타당하다. 여기에서 공법적 성질을 가지는 위 법규들이 적용된다는 것은 행정적, 형사적인 여러 가지 규제 내지 제재조치를 그 자체로서 法廷地에서 민사사건의 처리를 위하여 직접 적용하고 집행하는 문제(예컨대 외환거래의 인가)가 아니라, 公法에 근거한 私法의 規定의 적용 내지 私人들간의 법률관계에 관련된 反射效(Reflexwirkung)에 관한 문제이다. 예컨대, 외국환거래법의 적용범위에 해당하는 사안에서 당해 거래가 외국환거래법에 위반하여 행해진 경우 그 효력에 관하여 적용되는 것이다.

나아가, 입법례에 따라서는 제3국의 國際的 强行法規이더라도 사안과 밀접한 관련을 가지

---

27) 국제적 강행법규에 관하여는 拙稿, "外換許可를 받지 아니한 국제보증과 관련한 國際私法上의 문제점 ― 서울고등법원 1994. 3. 4. 선고 92나61623 판결에 대한 평석을 겸하여 ―", 法曹 1994. 12. 참조.

28) 후자를 그와 같이 이해할 것인가에 관하여는 拙稿, "船荷證券의 準據法에 관한 몇 가지 문제점", 법조 1999. 4. 참조. 이와 관련하여 약관의 규제에 관한 법률이 단순한 강행법규인지, 국제적 강행법규인지 하는 점이 문제된다. 약관규제법이 당사자의 합의에 의하여 그 적용이 배제되지 않는 국내적인 강행법규임은 의문이 없으나, 일정한 요건이 구비되는 경우 準據法에도 불구하고 적용된다는 취지의 규정을 두지 않고 있으므로 이를 전면적으로 국제적 강행법규로 볼 수는 없을 것으로 생각된다. 다만, 國際私法이론상 국제거래에서 소비자보호의 필요성이 인정되므로 일정한 요건에서 準據法에도 불구하고 약관규제법이 적용되거나 고려된다고 볼 여지는 있을 것으로 생각되고, 입법론적으로는 이 점에 관하여 명시적인 규정을 두는 것이 바람직할 것이다. 이에 관한 논의는 拙稿, "국제화 시대의 涉外私法 개정방향", 법무부 법무자료 제226집 (1999), 제4장 國際契約法 105면 이하 참조.

29) 특히 국제계약의 체결제한에 관한 독점금지 및 공정거래에 관한 법률 제8장이 준거법에 관계없이 적용됨은 의문이 없다.

30) 최공웅, "國際私法의 적용대상과 涉外性의 판단", 법조 1999. 8., 23면은 외국관환리법이 공법이더라도 계약의 사법상 효과에 관한 한 채권계약의 準據法으로서 그 지정이 가능하다고 한다. 물론 準據法이 외국법인 경우에는 準據法의 일부로서 적용된다고 할 수 있으나, 準據法이 외국법인 경우에는, 본문에 적은 바와 같이 현재의 외국환거래법은 법정지의 강행법규로서 외국 準據法에도 불구하고 적용되는 것이다.

는 경우에는, 일정한 효력을 부여하거나 고려하기도 한다.[31] 그러나, IMF 협정 제8조 2(b)와 같이 국제조약이 있는 경우 그에 따라야 함은 물론이다. 즉 동항은 국제통화제도의 협력을 위하여 회원국에 대하여 다른 회원국의 외환에 관한 법규를 적용할 의무를 부과하고 있으므로, 회원국은 IMF 협정에 따라 제3국의 외환관리법을 적용해야 한다.[32] IMF 협정을 고려한다면, 準據法國 이외 국가의 외환관리규제는 원칙적으로 고려할 필요가 없다는 견해[33]는 적절하지 않다.

## Ⅳ. 準據法과의 관련성 要否

準據法으로 선택된 법이 당사자 또는 당해 國際契約 등과 어떤 관련을 가져야 하는지가 문제된다. 만일 그러한 관련이 필요하다면, 그것이 결여된 때에는 準據法의 합의는 무효로 되고 客觀的 準據法이 적용될 것이다.

어떤 관련의 존재를 요구하는 견해는 두 가지 형태로 주장된다.

첫째는 선택된 準據法과 당사자 또는 당해 계약간에 실질적인 관련의 존재를 요구하는 견해이다. 미국의 통일상법전(UCC) §1−105에 따르면 당사자는 당해 거래와 합리적인 관련(resonable relation)을 가지는 주 또는 국가의 법을 선택할 수 있을 뿐이고, 아무런 관련이 없는 중립적인 準據法의 선택은 허용되지 않는다. 이 문제는 우리나라에서는 이른바 '當事者自治의 양적 제한'의 문제로 논의되었으나 그러한 관련의 존재를 요구하지 않는 견해가 종래의 통설이다.[34]

둘째는 선택된 準據法과 당사자 또는 당해 계약간에 실질적인 관련의 존재를 요구하지는 않으나, 당사자의 準據法 선택에 합리적인 근거가 있거나 승인할 만한 이익이 있어야 한다는 것이다. 오늘날에는, 아무런 관련이 없는 중립적인 準據法의 선택 자체가 합리적인 근거가 된다고 보는 더욱 완화된 견해가 유력하다.[35] 예컨대, 로마협약상으로는 당사자가 선택할 수 있는 準據法은 당해 계약과 실질적인 關聯이 있는 법에 한정되지 않으며 중립적인 법의 선택도 가능하다. 나아가, American Law Institute, Restatement of the Law (Second): Conflict of Laws (1971) (이하 "Restatement (Second)") 제187조 제2항도, 선

---

31) 로마협약 제7조 제1항.
32) 이에 관하여는 拙稿, "外換許可를 받지 아니한 국제보증과 관련한 國際私法上의 문제점", 법조 1994. 12. 참조.
33) 최공웅, "國際私法의 적용대상과 涉外性의 판단", 법조 1999. 8., 23면.
34) 徐希源, 新稿版 國際私法講義 (1990), 211−212면. 반면에 李泰熙, 國際契約法 理論과 實務, 증보판 (1989) 109면은 어떠한 관련이 있는 법이어야 하고 아무 관련이 없는 법은 허용되지 않는다고 한다.
35) Nygh, Peter, Autonomy in International Contracts (1999) p. 57.

택된 법은 문제가 된 쟁점(issue)과 실질적인 관련(substantial relationship)이 있거나, 당사자의 선택에 다른 합리적인 근거(other reasonable basis for the parties' choice)가 있어야 한다고 규정한다.

국제사법에 있어서의 당사자이익을 고려한다면 현행법의 해석론으로서 선택된 準據法과 당해계약간에 실질적인 관련의 존재는 필요하지 않으며, 당사자의 準據法 선택에 합리적인 근거가 있으면 족하다고 본다. 따라서, 당사자와 아무런 관련이 없는 중립적인 법의 선택도 가능하다고 볼 것이다.[36] 따라서, 우리법의 해석론으로서도, 예컨대, 영국과 아무런 관련이 없는 해상적하보험계약 또는 해상물건운송계약의 準據法을 영국법으로 지정하는 것은, 해상보험계약이나 운송계약에서의 영국법의 지배적인 역할(predominant)에 비추어 효력을 인정할 것이다. 물론 실질적인 관련의 존재를 요구하는 견해에서는 그 효력을 부정할 수도 있을 것이다.

참고로, 國際裁判管轄 合意에 관한 것이기는 하나, 대법원 1997. 9. 9. 선고 96다20093 판결은, 한국법원의 관할을 배제하고 외국 법원을 관할법원으로 하는 專屬的인 國際裁判管轄의 合意가 유효하기 위한 요건의 하나로, 당해 사건이 그 외국법원에 대하여 合理的인 關聯性을 가질 것을 요구하였음을 주목할 필요가 있다. 만일 대법원이 準據法의 합의에 관하여도 그와 유사한 원칙, 즉 합리적인 관련성의 존재를 요구한다면 해상적하보험계약이나 해상물건운송계약의 準據法을 영국법으로 합의할 수 있는지에 관하여 의문이 제기될 여지도 있다. 準據法에 관한 위 논의를 고려한다면, 대법원판결이 '合理的인 關聯性'보다는 '合理的인 根據'를 요구하는 것이 적절하지 않았을까 생각된다.

## V. 당사자가 선택한 準據法은 어느 국가의 법이어야 하나

전통적인 國際私法理論에 따르면 계약의 準據法은 어느 국가의 法(national system of law)이 되는 것이 당연하였고, 어느 국가의 법이 아닌 법규범의 선택은 準據法의 지정으로서 효력이 없으며 따라서 客觀的 準據法이 계약을 규율한다. 이는 어느 국가의 법만이 당사자들의 권리, 의무와 그의 집행을 위한 구제수단을 망라적으로 규율할 수 있다는 점을 근거로 한다.[37]

종래 이러한 논점은 별로 의식되고 있지는 않으나, 실무상 문제가 될 수 있는 사례를 들어 보자.

---

36) 물론 그 경우에도 위에서 논의한 바와 같이 당해 계약이 순수한 국내계약이라면 한국법의 강행법규는 여전히 적용될 것이다.

37) Nygh, Peter, Autonomy in International Contracts (1999) p. 61.

*12* 法學論叢 第16輯

첫째, 필자는, 위에서 언급한 해상적하보험계약에서의 영국법준거약관의 법적 성질을 實質法的 指定으로 보았던바, 그 근거는 여러 가지가 있으나, 영국법준거약관에 따르면 영국의 법뿐만이 아니라 "관습"도 準據法이 된다는 취지로 규정하고 있으므로 관습을 準據法으로 볼 수 없다는 점도 고려한 것이다. 이러한 논점을 이해한다면, 대법원 판례와 같이 영국법준거약관을 抵觸法的 指定으로 보더라도, 적어도 "영국의 관습"에 관한 한 實質法的 指定이라는 견해를 취해야 하지 않을까.

둘째, 필자는 선하증권의 지상약관의 법적 성질에 관하여, 경우를 나누어 보되, 헤이그규칙(또는 헤이그-비스비규칙)을 입법화한 국내법이 아니라 헤이그규칙 자체를 적용하기로 한 경우, 이는 實質法的 指定으로 볼 것이라는 견해를 피력하였는데, 이는 적어도 현재로서는 국제법을 準據法으로 할 수 있는가에 관하여 의문이 있음을 고려한 것이다.

그러나, 오늘날 이러한 엄격한 원칙에 대하여 의문이 제기되고 있고, 구체적으로 商人法(lex mercatoria, law merchant) 또는 法의 一般原則(general principles of law), 衡平과 善 등이 계약의 實質을 규율하는 규범이 될 수 있는가가 활발히 논의되고 있으며, 아래에서 보는 바와 같이 국제상사중재의 경우는 어느 국가의 '법(law)'이 아닌 '법규(rules of law)'가 준거규범이 될 수 있음이 널리 승인되고 있다.

어느 국가의 法만이 계약의 準據法이 될 수 있는가의 여부에 따라, 당사자들이 예컨대, 매매계약에 국제물품매매계약에 관한 UN 협약(CISG) 또는 UNIDROIT의 국제상사계약원칙을 적용하기로 합의한 경우 이것이 抵觸法的 指定인지, 實質法的 指定인지의 여부가 달라지게 될 것이다.[38] 만일 후자라면, 당해 계약은 당사자들의 합의가 없었더라면 적용될 客觀的 準據法의 强行法規에 의한 제한을 받게 될 것이다. 물론, 매매계약에 관한 한 강행법규가 많지 않으므로 그 범위내에서는 이러한 차이는 별 실익은 없을 것이다.

## VI. 準據法의 分裂(또는 分割)

涉外私法 제9조에 따르면 계약의 準據法은 '契約의 成立과 效力'을 규율한다. 또한, 涉外私法이 명시적으로 규정하지는 않으나, 계약의 '有效性(validity)'과 해석도 계약의 準據法에 의하여 규율되는 것으로 이해되고 있다. 반면에, 涉外私法이 명시적으로 별도의 연결원칙을 규정하고 있는 '당사자의 능력'(涉外私法 제6조) 및 '契約의 方式'(제10조)[39]과, 涉外

---

38) 실무상으로는 우리나라가 IBRD와 차관계약을 체결함에 있어서 국제법(international law)을 準據法으로 한 예도 있는 것으로 보인다.
39) 그에 의하면 계약의 방식은 계약의 準據法 또는 행위지법에 선택적으로 연결된다.

私法이 별도의 연결원칙을 두고 있지는 않으나 '代理'는 이론상 별도의 연결원칙에 따르는 것으로 이해되고 있다.[40] 독일에서는 이와 같이 별도의 연결원칙에 따르는 문제를 '부분문제(Teilfrage)'라고 부르기도 한다. 그러나, 종래 契約의 成立 및 效力과 같은 이른바 '契約의 實質(substance)'은 단일한 準據法에 의하여 규율되는 것으로 이해되었는데, 이러한 원칙을 '準據法單一의 原則(principle of unity of governing law)'이라고 한다. 국내에서도 이러한 원칙을 신봉하는 견해도 있다.[41]

準據法의 분열을 허용할 경우, 관련된 어느 국가의 실질법체계와도 일치하지 않는 결과로 될 수 있는데, 이는 규범의 충돌을 초래하고 법질서의 통일성과 내적인 판단의 일치를 해한다는 비판이 있으나, 요즈음에는 契約의 成立과 效力에 관하여 상이한 準據法을 지정하거나, 당사자별로 각자의 의무에 관하여 상이한 準據法을 지정하는 것,[42] 즉 準據法의 분열을 인정하는 것이 국제적인 경향이라고 할 수 있다.[43] 예컨대, 로마협약(제3조 제1항)과 헤이그매매협약(제7조 제3항)은 이를 명시적으로 허용한다.

생각컨대, 국제사법에 있어서의 當事者利益을 고려하여 해석론으로서도 準據法의 분열을 허용하는 것이 타당하고, 입법론으로서도 準據法의 분열을 명시적으로 허용하는 것이 바람직할 것이다.

요즈음의 경향이 準據法의 분열을 허용하는 것이라는 유력한 증거는 국제물품매매계약에 관한 유엔협약(CISG)으로부터도 찾을 수 있다. 즉, 동 협약은 매매계약의 성립(formation)과 매매계약에서 발생하는 매도인과 매수인의 권리와 의무, 즉, 효력만을 규율하며, 계약의 유효성(validity)은 규율하지 않는다(제4조). 또한, 체약국은 계약의 성립을 규정한 제2편과 계약에 따른 당사자들의 권리, 의무 즉 효력을 규정한 제3편 중 어느 것의 적용을 배제하는 유보를 할 수 있는바(제92조), 이러한 규정들은 계약의 성립, 효력, 유효성이 별개의 법규에 의하여 규율될 수 있음을 당연한 논리적 전제로 하는 것이기 때문이다.

물론, 準據法의 분열을 허용하더라도, 이는 논리적으로 일관성이 있어야 하므로 그러한 선택이 서로 모순됨이 없이 상이한 법률에 의하여 규율될 수 있는 요소들에 관련되어야 한

40) 대법원 1987. 3. 24.선고86다카 715판결과 1988. 2. 9. 선고84다카1003 판결 등은 대리권의 유무와 표현대리의 성립여부에 관하여 대리행위지법을 적용하여야 한다고 판시하였다. 이는 대리행위의 상대방을 보호하기 위한 것이고, 행위지법을 客觀的 準據法으로 정한 涉外私法 제9조와는 무관하다.

41) 박상조/윤종진, 國際私法 (1998), 346면.

42) 독일에서는 논점별로, 예컨대 성립과 효력에 관하여 상이한 準據法을 정하는 것을 "수평적 또는 대분할(horizontale oder große Aufspaltung)"이라 하고, 당사자별로 準據法을 달리 정하는 것을 "수직적 또는 소분할(vertikale oder kleinere Aufspaltung)"이라고 부르기도 한다. M nchKomm/ Spellenberg Vor Art. 11 Rn. 23. 우리나라에서도 전자를 準據法의 "분할", 후자를 "절단"이라 하여 용어상 구분하는 견해도 있다. 박상조/윤종진, 國際私法 (1998) 345면 이하.

43) 박상조/윤종진, 國際私法 (1998) 346면은 마치 準據法單一의 原則이 유럽공동체 및 미국의 國際私法과 학설이 취하는 견해라고 주장하나 이는 옳지 않다. 유럽연합의 경우 로마협약에서 보는 바와 같고, 미국의 경우 Restatement (Second) 제187조 제2항에서 보는 바와 같이 쟁점별로 準據法을 판단하고 있으므로 準據法의 분열에 대해 유럽연합과 비교하여 더욱 개방적이라고 할 수 있다.

*14  法學論叢 第16輯*

다. 따라서, 예컨대, 매도인의 권리와 매수인의 의무에 대해 상이한 準據法을 지정하는 것과 같은 분열은 허용되지 않는다는 점에서 내재적인 한계가 있다.

종래 실무상 準據法의 분열이 문제가 되었던 것은, 위에서 언급한 ① 해상적하보험계약상의 영국법준거약관과 ② 선하증권의 至上約款의 경우이다. 대법원은 위 두 가지 사안에서 準據法의 분열의 허용여부를 다루지는 않았으나, 涉外私法상 準據法의 분열이 허용됨을 당연한 전제로 하였다. 즉, 대법원은 영국법준거약관에 관하여 과거에는 보험계약의 準據法이 영국법이라는 입장을 취하였으나,[44] 대법원 1998. 7. 14. 선고96다39707 판결에서는, 문언에 충실하게 보험계약에 따른 전보청구 및 결제에 관해서는 영국법을 적용하되, 보험계약의 보험목적물이 무엇인지 여부에 관한 사항, 즉 보험계약의 성립여부에 관한 사항에 대하여는 우리나라의 법률이 적용되어야 한다고 판시함으로써 準據法의 분열을 명시적으로 허용하였다.[45] 나아가 최근 대법원 1999. 12. 10. 선고 98다9038 판결은, 이른바 至上約款 및 멕시코책임조항이 포함된 선하증권의 準據法에 관하여 準據法의 분열을 허용한 것으로 보인다.

참고로, 우리 학설은 이른바 補助準據法(Nebenstatut)이라는 개념을 인정하나, 그러한 법은 準據法이 아니라 단순한 實質法의 指定에 불과하다. 만일, 補助準據法에 準據法으로서의 지위를 부여한다면, 이는 이른바 準據法의 分裂이 된다. '準據法의 분열'과 '實質法의 指定'이라는 개념을 인정한다면, 그와 별도로 補助準據法이라는 개념을 인정할 여지는 없다.[46]

# Ⅶ. 國際商事仲裁에서의 國際契約의 準據法의 결정

국제상사중재에 있어 중재인은 涉外的인 要素가 있는 국제적인 사안에 대한 중재판정을 내리기 위해서는 實體에 적용할 準據法을 결정하여야 하는데 이는 법원이 분쟁을 해결하는 경우와 다를 바가 없다. 법원이라면, 위에서 본 바와 같이, 우선 法廷地(forum)의 抵觸規範을 적용하고, 그 抵觸規範이 정한 연결원칙에 따라 실체에 적용되는 準據法인 實質法을 결정하는 2 단계를 거치게 된다. 문제는, 이러한 準據法決定의 과정이 국제상사중재에서 중재인에게도 타당한가 하는 점이다.

---

44) 대법원 1991. 5. 14. 선고 90다카25314 판결 등. 동 판결에 대한 평석은 拙稿, "海上積荷保險契約에 있어 英國法準據約款과 관련한 법의인 問題點", 손해보험 1993. 12. 참조.

45) 영국법준거약관의 법적 성질에 관하여는 拙稿, "海上積荷保險契約에 있어 英國法準據約款과 관련한 법의인 問題點", 손해보험 1993. 12. 참조. 필자는 이를 實質法的 指定으로 볼 것이라는 견해를 취하였던바 그에 의하면 準據法의 분열의 문제는 발생하지 않는다. 후자의 판결은 아마도 실제로 사용된 영국법준거약관의 문언에 차이가 있음을 이유로 과거의 판결과 상이한 결론에 이른 것으로 생각된다. 후자의 판결은 보험목적물이 무엇인가를 보험계약의 성립의 문제로 파악하였으나, 이는 보험계약의 해석의 문제이지 보험계약의 성립의 문제는 아니라고 생각된다.

46) 상세는 拙稿, "契約上 債權關係의 準據法에 관한 유럽共同體協約", 國際私法研究 제3호 (1998) 615면, 주229 참조.

우선 當事者들의 準據法 指定이 있는 경우를 본다. 법원이 재판하는 경우와 달리, 國際商事仲裁의 경우 당사자들은 특정국가의 법뿐만 아니라 이른바 'lex mercatoria(商人法)'를 분쟁해결의 준거규범으로 합의할 수 있다고 보는 것이 요즈음의 경향이다. 국제상사중재에 관한 UNCITRAL의 모델법 제28조 제1항⁴⁷⁾도 당사자들이 선택할 수 있는 규범을 'law'라고 하는 대신 'rules of law'라고 하여 이를 명시적으로 규정한다. 그러나, 우리 중재법은 UNCITRAL의 모델법을 채택하였으면서도, 제29조 제1항에서 "仲裁判定部는 당사자들이 지정한 法에 따라 판정을 내려야 한다.(밑줄은 추가함)……"고 하고, 제2항에서는 "제1항의 지정이 없는 경우에 仲裁判定部는 ……국가의 法을 적용하여야 한다.(밑줄은 추가함)"고 하여 'rules of law'와 'law'를 모두 '法'이라고 번역함으로써 용어상 양자를 구별하지 않는 결과, 중재법의 해석론으로서는 당사자들이 UNIDROIT의 국제상사계약원칙 또는 lex mercatoria 등을 準據規範으로 합의할 수 있는지에 대해 의문이 제기될 여지가 있다.⁴⁸⁾

한편, 當事者들의 분쟁의 실체에 적용할 準據法을 지정하지 않은 경우를 보면, 그 경우 準據法의 지정에 관하여는 종래 다음과 같은 논점들이 논의되었다.⁴⁹⁾

첫째, 중재인은 반드시 抵觸規範을 우선 적용하고 그에 따라 실체의 準據法을 결정해야 하는지, 아니면 抵觸規範의 중개없이 실체의 實質法을 막바로 결정할 수 있나. 둘째, 만일 중재인이 抵觸規範의 중개를 거쳐 實體의 準據法을 결정해야 한다면, 그 때의 抵觸規範은 반드시 중재지의 抵觸規範이어야 하나. 셋째, 중재인이 抵觸規範의 중개없이 막바로 實質法을 적용하거나, 또는 抵觸規範의 중개를 거쳐 實質法을 적용하는 경우, 仲裁人은 어느 국가의 實質法(체계)(national system of law)를 적용해야 하나, 아니면 그 대신 분쟁해결에 적절한 규범 또는 衡平과 善(ex aequo et bono)을 적용할 수도 있는가.

당사자들이 準據法을 지정하지 않은 경우에 관하여 모델법 제28조 제2항⁵⁰⁾은 仲裁人들이 國際私法의 중개를 통하여 적용할 법을 결정하도록 하고, 그 경우, 제1항과는 달리 'rules of law'가 아니라 'law'라고 하여 어느 국가의 법이 準據法이 될 것을 요구하는 것으로 보인다. 반면에, 1998년 1월 1일자로 개정된 국제상업회의소(ICC) 仲裁規則(제17조 제1항)⁵¹⁾은

---

47) 조문은 다음과 같다(밑줄은 추가함). "The arbitral tribunal shall decide the dispute in accordance with such <u>rules of law</u> as are chosen by the parties as applicable to the substance of the dispute."

48) 물론, 그렇더라도 實質法的 指定에 의하여 계약의 내용으로 편입하는 것은 가능하다.

49) 상세는 拙稿, "國際商事仲裁에 있어서 實體에 적용할 準據法의 결정", 法實踐의 諸問題, 東泉金仁燮 변호사 화갑기념논문집 (1996) 522─535면 참조. 다만, 우리법에 관한 부분은 2000년 1월부터는 개정된 중재법에 의한다.

50) 조문은 다음과 같다(밑줄은 추가함). "Failing any designation by the parties, the arbitral tribunal shall apply the law <u>determined by the conflict of laws rules which it considers applicable.</u>"

51) 조문은 다음과 같다(밑줄은 추가함). "The parties shall be free to agree upon the rules of law to be applied by the Arbitral Tribunal to the merits of the dispute. In the absence of any such agreement, the Arbitral Tribunal shall apply <u>the rules of law which it determines to be appropriate.</u>"

*16  法學論叢 第16輯*

저촉규범의 중개를 거치지 않도록 하고, 반드시 법이 아니라 rules of law를 적용할 수 있도록 규정하는 점에서 모델법과는 다르다.

그런데, 중재법 제29조 제2항은 "제1항의 지정이 없는 경우에 仲裁判定部는 분쟁의 대상과 가장 밀접한 관련이 있는 국가의 법을 적용하여야 한다.(밑줄은 추가함)"고 함으로써, 첫째의 논점에 관하여는 모델법과 달리 國際私法의 중개를 배제하는 점에서 국제상업회의소 규칙과 동일한 선진적인 입장을 취하고 있으나, 셋째의 논점에 관하여는 특정 국가의 법을 적용하도록 함으로써 仲裁人이 lex mercatoria와 같이 특정 국가의 법이 아닌 규범을 적용할 가능성을 배제하고 있다.[52] 이는 독일 民事訴訟法(제1051조 제2항)과는 동일하나, 가장 밀접한 관련이 있는 법규를 적용하도록 하는 스위스 國際私法(제187조 제1항)이나, 仲裁人들이 적절하다고 판단하는 'rules of law'를 적용하도록 하는 국제상업회의소(ICC) 仲裁規則(제17조 제1항)과는 상이하다.

# VIII. 관련문제

여기에서는 논의를 생략하나, 실무상 종종 오해되는 것에는 다음과 같은 것들이 있다.

즉, 국제적인 물품매매계약에서 물품의 소유권 변동은 매매계약의 準據法이 아니라 소유권 자체의 準據法에 따라 결정된다는 점이다. 이와 유사한 것으로, 매매의 목적물이 주식이나 債權인 경우, 주식양도 또는 債權讓渡와 같은 準物權行爲에 대하여는 매매계약의 準據法이 아니라, 주식 또는 債權 자체의 準據法이 적용된다.[53]

물품매매와 관련하여 또 한가지 주의할 것은, '무역조건의 해석에 관한 국제규칙(Incoterms)'은 물품의 위험이전과는 관련되나, 소유권이전과는 직접 관련이 없다는 점이다. 결국 물품의 소유권 이전은 Incoterms나 매매계약의 準據法이 아니라 소유권의 準據法에 따라 결정된다.

---

52) 다만, 제29조 제3항은 "중재판정부는 당사자들이 명시적으로 권한을 부여하는 경우에 한하여 형평과 선에 따라 판정을 내릴 수 있다"고 한다.

53) 대법원 1996. 10. 11. 선고94다60332 판결의 사안은 국내회사인 선사와 보험회사간에 모래채취선에 관하여 船舶保險契約을 체결한 것인데 보험계약의 준거법은 영국법이었다. 사실관계를 정확히 확인하지는 못하였으나 모래채취선이라는 점에서 아마도 국내에서 사용되는 선박이었던 것으로 짐작된다. 그밖에도 국내해상운송의 대상인 적하에 대해 영국법준거약관에 의해 보험계약을 체결하는 예가 많은 것으로 보인다.

## IX. 맺음말

지금까지 현행 涉外私法의 해석론을 중심으로, 國際契約의 準據法과 관련하여 실무상 제기되는 제논점 중 기본적인 것들을 간단히 살펴보았다. 이러한 해석론상의 문제점에 대한 인식을 기초로 섭외사법의 개정에 관한 입법론이 논의되고 정립되어야 할 것이다.

우리 법원은, 섭외적인 요소가 없는 순수한 국내계약에 관하여도 外國準據法의 지정을 허용함으로써 외국법 적용에 관대한 입장을 취하는가 하면, 명백한 涉外事件을 순수한 국내사건인 것처럼 취급하여 외국법 적용에 소극적인 입장을 취하기도 하는 상반된 태도를 보이고 있다. 예컨대, 대법원은 1979. 11. 13. 선고 78다1343 판결에서 한국회사에 의하여 고용되어 카타르국 소재 동 회사의 사업장에서 근무하던 한국인 근로자가 업무 도중의 과실로 다른 한국인 동료근로자에게 손해를 가한 사안에서, 이는 명백히 涉外事件임에도 불구하고, 不法行爲地가 단순히 우연적이고 형식적인 의미를 가지는 것을 이유로 涉外私法의 적용을 배제하였다.[54] 또한, 대법원 1991. 4. 26. 선고 90다카8098 판결은 보증도에 의하여 운송물이 멸실된 경우 채무불이행은 물론이고 불법행위로 인한 손해배상청구권도 선하증권에 화체되어 선하증권의 양도에 따라 소지인에게 이전된다고 판시하였으나, 선하증권의 準據法이 외국법인 경우 불법행위로 인한 손해배상청구권이 선하증권에 화체되는지의 여부는 선하증권의 準據法인 외국법이 결정할 사항이지, 불법행위의 準據法인 우리법이 규율할 사항이 아니다. 또한, 청구권경합에 관한 대법원 1983. 3. 22. 선고 82다카1533 전원합의체판결도 마찬가지의 비판을 면할 수 없다.[55]

외국법의 적용여부에 관한 법원의 이러한 자의적인 판단은 국제거래에 참가하는 당사자들에게 상당한 혼란을 초래하는바, 이는 조속히 시정되어야 할 것이다.

---

54) 이에 대한 평석은 拙稿, "涉外不法行爲의 準據法決定에 관한 소고 — 공통의 속인법에 관한 대법원판결을 제기로 본 涉外私法의 적용범위와 관련하여 —", 법조 1994. 9. 참조.

55) 위 판결에 대한 비판은 拙稿, "船荷證券의 準據法에 관한 몇 가지 문제점", 법조 1999. 4., 45－52면.