# Exhibit Jong - 6

Source: lbox.kr/case/SupremeCourt/2019Da201662

# Supreme Court Decision 2019Da201662 dated July 28, 2022 [Return of Shares, etc.]

## Holdings

[1] Whether "assumption of obligation" under the former *Act on Private International Law* Article 34 includes not only a release-type assumption of obligation but also a cumulative assumption of obligation (affirmative) / In a case where a cumulative assumption of obligation is made by agreement among the creditor, debtor, and assuming party, the governing law applicable to the obligation borne by the assuming party toward the creditor (= the governing law applicable to the legal relationship between the creditor and the debtor)

[2] The governing law applicable to a contractual obligation under Article 25, Paragraph 1 of the *Act on Private International Law* (= the law expressly or impliedly chosen by the debtor when entering into the contract with the creditor) / Matters to be considered when recognizing an implied choice of governing law.

[3] After Party A, a citizen of the Republic of Korea, entered into an agreement to lend shares of Foreign Company C, a foreign company established under Swiss law, to Company B, an incorporated entity, Party A entered into a tripartite share redemption agreement with Company B and Foreign Company C, and when Foreign Company D merged Foreign Company C by adsorption, Party A sought performance of the stock return obligation against Foreign Company D, claiming that Company C had cumulatively assumed Company B's obligation to return the shares to Party A. In this case, it was held that the law applicable to the legal relationship where Party A sought return of the shares from Company D, which had merged with Company C, was Korean law, as it was deemed consistent with the implied intent of Party A and Company B that Korean law shall govern the share lending agreement

## Summary of Decision

[1] Article 34 of the former *Act on Private International Law* (before being wholly amended by Act No. 18670 dated January 4, 2022) provides that the legal relationship between the assignor and the assignee of a claim shall be governed by the governing law of the contract between them (main sentence of Paragraph 1), and that the effect of the assignment of a claim against the debtor and a third party shall be governed by the governing law of the assigned claim (proviso of Paragraph 1), and applies these provisions mutatis mutandis to an assumption of obligation (Paragraph 2). It is reasonable to regard that assumption of obligation here includes not only a release-type assumption of obligation but also a cumulative assumption of obligation. In the case of a cumulative assumption of obligation, the legal relationship between the debtor and the assuming party is governed by the governing law of the contract between them, and the effect

Source: lbox.kr/case/SupremeCourt/2019Da201662

of the assumption of obligation against the creditor is governed by the governing law of the assumed obligation, that is, the governing law applicable to the legal relationship between the creditor and the debtor, and this is the same even where the creditor, debtor, and assuming party jointly agree on the assumption of obligation. Therefore, where a cumulative assumption of obligation is made by agreement among the creditor, debtor, and assuming party, the governing law applicable to the obligation borne by the assuming party toward the creditor is identical to the governing law applicable to the legal relationship between the creditor and the debtor.

[2] Article 25 of the former *Act on Private International Law* (before being wholly amended by Act No. 18670 dated January 4, 2022), in accordance with the principle of party autonomy, provides that the parties to a contract may expressly or impliedly choose the governing law applicable to the contract (main sentence of Paragraph 1). Accordingly, the governing law applicable to a contractual obligation is the law expressly or impliedly chosen by the debtor when entering into the contract with the creditor. However, an implied choice is limited to cases where it can be reasonably recognized from the content (terms and conditions) of the contract and all other circumstances (proviso of Paragraph 1 of the Article), which is intended to prevent an undue expansion of the governing law of the contract. Therefore, when recognizing an implied choice of governing law, careful judgment must be exercised by comprehensively considering objective circumstances such as the nationality of the contracting parties, their incorporation governing law, domicile or location of head office as their habitual residence or principal place of business, and the background and process of formation of the contract, based on the content of the contract.

[3] In a case where Party A, a Korean national, entered into an agreement with Company B to lend shares of Foreign Company C, a foreign company incorporated under Swiss law, and thereafter entered into a tripartite share redemption agreement with Company B and Foreign Company C, and when Foreign Company C was subsequently merged into Foreign Company D, Party A sought performance of the obligation to return shares from Foreign Company D on the assertion that Foreign Company C had coexistent-assumed Company B's obligation to return the shares to Party A, a case holding that, since the subject tripartite share redemption agreement is an agreement that Foreign Company C cumulatively assumes the obligation of Company B to return the shares to Party A, the governing law applicable to the legal relationship between Foreign Company C as assuming party and Party A as creditor is identical to the governing law applicable to the legal relationship between Party A and Company B, and although there was no express agreement between Party A and Company B on the choice of governing law under the subject share-lending agreement, in view of the objective circumstances such as that Party A, when lending the shares, was to receive interest calculated based on Korean legal tender KRW as consideration, that the subject share-lending agreement was drafted in Korean and there appears to be no contract drafted in any language other than Korean, and that Party A's nationality and domicile are in Korea and Company B's incorporation governing law and head office location are in Korea, it accords with the implied intent of Party A and Company B to regard that they chose Korean law as the governing law applicable to the subject share-lending agreement, and therefore, the law applicable to the legal relationship under which Party A seeks return of the shares from Foreign Company D, which acquired Foreign Company C, is Korean law.

Source: lbox.kr/case/SupremeCourt/2019Da201662

# Supreme Court

# Division 3

# Decision

| | |
|---|---|
| Case | 2019Da201662 Return of Shares, etc. |
| Plaintiff, Appellee | Plaintiff |
| | Legal Representative: Law Firm Jinsol LLC |
| | Attorneys handling the case: Min Gu Kang and one other |
| Defendant, Appellant | iQ Power Licensing AG |
| | Legal Representative: Law Firm Oracle |
| | Attorneys handling the case: Su Gyo Kim |
| Original Appellate Court Decision | Seoul High Court Decision 2018Na2015824 dated November 11, 2018 |
| Date of Decision | July 28, 2022 |

# Order

The appeal is dismissed.

The costs of appeal shall be borne by the defendant.

# Reasoning

The grounds of appeal (with reference materials submitted after expiry of the submission period for the appeal brief considered only to the extent that they supplement the grounds) are examined.

1. Legal nature of the subject tripartite share redemption agreement, etc.

The appellate court adjudicated the matter as described below. It is reasonable to regard that the subject tripartite share redemption agreement entered into among the plaintiff, former co-defendants in the

- 3 -

Source: lbox.kr/case/SupremeCourt/2019Da201662

appellate court trial KG Power Co., Ltd. (hereinafter "KG Power") and iQ Power AG (hereinafter "iQ Power") is an agreement under which iQ Power cumulatively assumes the obligation of KG Power to return the subject 8.5 million shares to the plaintiff. The defendant, which merged iQ Power and succeeded to its rights and obligations, has the status of a cumulatively assuming obligor, and the defendant cannot assert against the plaintiff, based on the legal relationship between iQ Power and KG Power.

In light of the reasoning of the appellate court, the record, and the relevant legal principles, there is no error such as misapprehension of law as alleged in the grounds of appeal in the judgment of the appellate court.

2. Governing law

A. Article 34 of the former *Act on Private International Law* (before being wholly amended by Act No. 18670 dated January 4, 2022; the same hereafter) provides that the legal relationship between the assignor and the assignee of a claim shall be governed by the governing law of the contract between them (main sentence of Paragraph 1), and that the effect of the assignment of a claim against the debtor and a third party shall be governed by the governing law of the assigned claim (proviso of Paragraph 1), and applies these provisions mutatis mutandis to an assumption of obligation (Paragraph 2). It is reasonable to regard that assumption of obligation here includes not only a release-type assumption of obligation but also a cumulative assumption of obligation. In the case of a cumulative assumption of obligation, the legal relationship between the debtor and the assuming party is governed by the governing law of the contract between them, and the effect of the assumption of obligation against the creditor is governed by the governing law of the assumed obligation, that is, the governing law applicable to the legal relationship between the creditor and the debtor, and this is the same even where the creditor, debtor, and assuming party jointly agree on the assumption of obligation. Therefore, where a cumulative assumption of obligation is made by agreement among the creditor, debtor, and assuming party, the governing law applicable to the obligation borne by the assuming party toward the creditor is identical to the governing law applicable to the legal relationship between the creditor and the debtor.

Article 25 of the former *Act on Private International Law*, in accordance with the principle of party autonomy, provides that the parties to a contract may expressly or impliedly choose the governing law applicable to the contract (main sentence of Paragraph 1). Accordingly, the governing law applicable to a contractual obligation is the law expressly or impliedly chosen by the debtor when entering into the contract with the creditor. However, an implied choice is limited to cases where it can be reasonably recognized from the content of the contract and all other circumstances (proviso of Paragraph 1 of the Article), which is intended to prevent an undue expansion of the governing law of the contract (see Supreme Court Decision 2021Da269388 dated January 13, 2022, etc.). Therefore, when recognizing an implied choice of governing law, careful judgment must be exercised by comprehensively considering objective circumstances such as the nationality of the contracting parties, their incorporation governing law, domicile or location of head office as their habitual residence or principal place of business, and the background and process of formation of the contract, based on the content of the contract.

Source: lbox.kr/case/SupremeCourt/2019Da201662

B. The present case is examined in light of the above legal principles.

Since the subject tripartite share redemption agreement is an agreement that iQ Power cumulatively assumes the obligation of KG Power to return the subject 8.5 million shares to the plaintiff, the governing law applicable to the legal relationship between iQ Power as assuming party and the plaintiff as creditor is identical to the governing law applicable to the legal relationship between KG Power and the plaintiff. The obligation of KG Power to return the shares to the plaintiff is a contractual obligation under the share-lending agreement entered into between KG Power and the plaintiff, and therefore its governing law is the governing law expressly or impliedly agreed upon when KG Power entered into the subject share-lending agreement with the plaintiff.

There is no express agreement between the plaintiff and KG Power on the choice of governing law under the subject share-lending agreement, but in view of the following contract terms and objective circumstances such as the nationality, incorporation governing law, domicile, and head office location of the contracting parties, it accords with the implied intent of the plaintiff and KG Power to regard that they chose Korean law as the governing law applicable to the subject share-lending agreement. The plaintiff, when lending the shares, was to receive interest calculated based on Korean legal tender KRW as consideration. the share-lending agreement was drafted in Korean, and there appears to be no contract drafted in any language other than Korean. In addition, the plaintiff's nationality and domicile are in Korea. The incorporation governing law of KG Power is Korean law and its head office is also located in Korea.

Therefore, in this case where the plaintiff seeks return of the shares from the defendant, which merged iQ Power, the law applicable to the legal relationship between the plaintiff and the defendant is Korean law.

The appellate court trial did not explicitly determine what the governing law is, but its application of Korean law to the obligation of the defendant to return the shares to the plaintiff is ultimately justifiable. There is no error such as omission in adjudication or inadequate examination in the decision of the appellate court as alleged in the grounds of appeal.

3. Conclusion

The defendant's appeal is dismissed as without merit, and the costs of appeal are to be borne by the losing party, and the decision is hereby rendered as set out in the Order with the unanimous opinion of the participating justices.

    Supreme Court Justice Jung Hee Noh (Presiding Justice); Jae Hyung Kim (Handling Justice); Cheol Sang Ahn; Heung Gu Lee

**대법원 2022. 7. 28. 선고 2019다201662 판결 [주식반환등]**

---

**판시사항**

[1] 구 국제사법 제34조에서 정한 채무인수에는 면책적 채무인수뿐만 아니라 병존적 채무인수도 포함되는지 여부(적극) / 채권자, 채무자, 인수인 사이의 합의를 통해 병존적 채무인수가 이루어진 경우, 인수인이 채권자에 대하여 부담하는 채무에 관한 준거법(=채권자와 채무자 사이의 법률관계에 적용되는 준거법)

[2] 구 국제사법 제25조 제1항에 따른 계약상 채무의 준거법(=채무자가 채권자와 계약을 체결하면서 명시적 또는 묵시적으로 선택한 법) / 준거법에 관한 묵시적 선택을 인정할 때 고려하여야 할 사항

[3] 대한민국 국적인 갑이 을 주식회사에 스위스법에 따라 설립된 병 외국회사의 주식을 대여하기로 하는 약정을 체결한 후, 을 회사 및 병 회사와 3자간 주식상환약정을 체결하였는데, 병 회사가 정 외국회사에 흡수합병되자, 갑이 정 회사를 상대로 병 회사가 을 회사의 갑에 대한 위 주식반환채무를 병존적으로 인수하였다고 주장하며 주식반환의무의 이행을 구한 사안에서, 위 주식대여계약에 관하여 적용할 준거법을 대한민국 법으로 정했다고 보는 것이 갑과 을 회사의 묵시적 의사에 부합하므로, 갑이 병 회사를 합병한 정 회사를 상대로 주식의 반환을 구하는 법률관계에 적용되는 법은 대한민국 법이라고 한 사례

**판결요지**

[1] 구 국제사법(2022. 1. 4. 법률 제18670호로 전부 개정되기 전의 것) 제34조는 채권의 양도인과 양수인 간의 법률관계는 이들 간의 계약의 준거법에 의하도록 정하고(제1항 본문), 채무자 및 제3자에 대한 채권양도의 효력은 양도되는 채권의 준거법에 의하도록 정하면서(제1항 단서), 채무인수에 대해서도 이를 준용하고 있다(제2항). 이때 채무인수에는 면책적 채무인수뿐만 아니라 병존적 채무인수도 포함된다고 봄이 타당하다. 병존적 채무인수의 경우 채무자와 인수인 사이의 법률관계는 이들 사이의 계약의 준거법에 의하고, 채권자에 대한 채무인수의 효력은 인수되는 채무의 준거

- 1 -

법, 즉 채권자와 채무자 사이의 법률관계에 적용되는 준거법에 의하게 되며, 이는 채권자, 채무자, 인수인이 함께 채무인수에 관한 합의를 한 경우에도 마찬가지이다. 따라서 채권자, 채무자, 인수인 사이의 합의를 통해 병존적 채무인수가 이루어진 경우, 인수인이 채권자에 대하여 부담하는 채무에 관한 준거법은 채권자와 채무자 사이의 법률관계에 적용되는 준거법과 동일하다.

[2] 구 국제사법(2022. 1. 4. 법률 제18670호로 전부 개정되기 전의 것) 제25조는 당사자자치의 원칙에 따라 계약당사자가 명시적 또는 묵시적으로 계약에 적용할 준거법을 선택하도록 정하고 있다(제1항 본문). 따라서 계약상 채무의 준거법은 채무자가 채권자와 계약을 체결하면서 명시적 또는 묵시적으로 선택한 법이 된다. 다만 묵시적 선택은 계약내용 그 밖에 모든 사정으로부터 합리적으로 인정할 수 있는 경우로 제한되는데(같은 조 제1항 단서), 이는 계약의 준거법이 부당하게 확대되는 것을 방지하기 위한 것이다. 따라서 준거법에 관한 묵시적 선택을 인정할 때에는 계약내용을 기초로 하여 계약당사자의 국적이나 설립준거법, 주소나 본점소재지 등 생활본거지나 주된 영업활동지, 계약의 성립 배경과 그 경위 등 객관적 사정을 종합적으로 고려하여 신중하게 판단해야 한다.

[3] 대한민국 국적인 갑이 을 주식회사에 스위스법에 따라 설립된 병 외국회사의 주식을 대여하기로 하는 약정을 체결한 후, 을 회사 및 병 회사와 3자간 주식상환약정을 체결하였는데, 병 회사가 정 외국회사에 흡수합병되자, 갑이 정 회사를 상대로 병 회사가 을 회사의 갑에 대한 위 주식반환채무를 병존적으로 인수하였다고 주장하며 주식반환의무의 이행을 구한 사안에서, 위 3자간 주식상환약정은 을 회사가 갑에게 부담하는 주식반환채무를 병 회사가 병존적으로 인수하는 약정이므로, 인수인인 병 회사와 채권자인 갑 사이의 법률관계에는 갑과 을 회사 사이의 법률관계에 적용되는 준거법이 동일하게 적용되는데, 위 주식대여계약에서 갑과 을 회사 사이에 준거법 선택에 관한 명시적 합의는 없지만, 갑이 주식을 대여하면서 그 대가로 대한민국 법정통화인 원화를 기준으로 산정한 이자를 지급받기로 한 점, 위 주식대여계약서는 한국어로 작성되어 있고 국문계약서 이외에 다른 언어로 작성된 계약서는 존재하지 않는 것으로 보이는 점, 그 밖에 갑의 국적이 대한민국이고 그 주소도 대한민국에 있으며 을 회사의 설립 준거법이 대한민국 법이고 본점소재지 또한 대한민국에 있는 점 등 객관적 사정을 종합하면, 위 주식대여계약에 관하여 적용할 준거법을 대한민국 법으로 정했다고 보는 것이 갑과 을 회사의 묵시적 의사에 부합하므로, 갑이 병 회사를 합병한 정 회사를 상대로 주식의 반환을 구하는 법률관계에 적용되는 법은 대한민국 법이라고 한 사례.

# 대 법 원

## 제 3 부

## 판 결

| | |
|---|---|
| 사건 | 2019다201662 주식반환 등 |
| 원고,피상고인 | 원고 |
| | 소송대리인 법무법인(유한) 진솔 |
| | 담당변호사 강민구 외 1인 |
| 피고,상고인 | 아이큐 파워 라이센싱 아게 (iQ Power Licensing AG) |
| | 소송대리인 법무법인 오라클 |
| | 담당변호사 김수교 |
| 원심판결 | 서울고등법원 2018. 11. 22. 선고 2018나2015824 판결 |
| 판결선고 | 2022. 7. 28. |

## 주 문

상고를 기각한다.

상고비용은 피고가 부담한다.

## 이 유

상고이유(상고이유서 제출기간이 지난 다음 제출된 참고자료는 이를 보충하는 범위에서)를 판단한다.

1. 이 사건 3자간 주식상환약정의 법적 성질 등

원심은 다음과 같이 판단하였다. 원고와 원심 공동피고 케이지파워 주식회사(이하 '케이지파워'라

출처: lbox.kr/case/대법원/2019다201662

한다), 아이큐파워아게(iQ Power AG, 이하 '아이큐파워'라 한다) 사이에 체결된 이 사건 3자간 주식상환약정은 케이지파워가 원고에게 부담하는 이 사건 주식 850만 주 반환채무를 아이큐파워가 병존적으로 인수하기로 약정한 것으로 봄이 타당하다. 아이큐파워를 합병하여 그 권리 의무를 승계한 피고는 병존적 채무인수자로서의 지위를 가지고, 피고는 아이큐파워와 케이지파워 사이의 법률관계를 원인으로 하여 원고에게 대항할 수 없다.

원심판결 이유를 기록과 관련 법리에 비추어 살펴보면, 원심판결에 상고이유 주장과 같은 법리오해 등의 잘못이 없다.

2. 준거법

가. 구 국제사법(2022. 1. 4. 법률 제18670호로 전부개정되기 전의 것, 이하 같다) 제34조는 채권의 양도인과 양수인 간의 법률관계는 이들 간의 계약의 준거법에 의하도록 정하고(제1항 본문), 채무자 및 제3자에 대한 채권양도의 효력은 양도되는 채권의 준거법에 의하도록 정하면서(제1항 단서), 채무인수에 대해서도 이를 준용하고 있다(제2항). 이때 채무인수에는 면책적 채무인수뿐만 아니라 병존적 채무인수도 포함된다고 봄이 타당하다. 병존적 채무인수의 경우 채무자와 인수인 사이의 법률관계는 이들 사이의 계약의 준거법에 의하고, 채권자에 대한 채무인수의 효력은 인수되는 채무의 준거법, 즉 채권자와 채무자 사이의 법률관계에 적용되는 준거법에 의하게 되며, 이는 채권자, 채무자, 인수인이 함께 채무인수에 관한 합의를 한 경우에도 마찬가지이다. 따라서 채권자, 채무자, 인수인 사이의 합의를 통해 병존적 채무인수가 이루어진 경우, 인수인이 채권자에 대하여 부담하는 채무에 관한 준거법은 채권자와 채무자 사이의 법률관계에 적용되는 준거법과 동일하다.

구 국제사법 제25조는 당사자자치의 원칙에 따라 계약당사자가 명시적 또는 묵시적으로 계약에 적용할 준거법을 선택하도록 정하고 있다(제1항 본문). 따라서 계약상 채무의 준거법은 채무자가 채권자와 계약을 체결하면서 명시적 또는 묵시적으로 선택한 법이 된다. 다만 묵시적 선택은 계약내용 그 밖에 모든 사정으로부터 합리적으로 인정할 수 있는 경우로 제한되는데(같은 조 제1항 단서), 이는 계약의 준거법이 부당하게 확대되는 것을 방지하기 위한 것이다(대법원 2022. 1. 13. 선고 2021다269388 판결 등 참조). 따라서 준거법에 관한 묵시적 선택을 인정할 때에는 계약내용을 기초로 하여 계약당사자의 국적이나 설립준거법, 주소나 본점소재지 등 생활본거지나 주된 영업활동지, 계약의 성립 배경과 그 경위 등 객관적 사정을 종합적으로 고려하여 신중하게 판단해야 한다.

나. 이러한 법리에 비추어 이 사건을 본다.

이 사건 3자간 주식상환약정은 케이지파워가 원고에게 부담하는 이 사건 주식 850만 주 반환채무를 아이큐파워가 병존적으로 인수하는 약정이므로, 인수인인 아이큐파워와 채권자인 원고 사이의 법률관계에는 케이지파워와 원고 사이의 법률관계에 적용되는 준거법이 동일하게 적용된다.

케이지파워가 원고에게 부담하는 위 주식반환채무는 케이지파워와 원고 사이에 체결된 주식대여계약에 따른 계약상 채무이므로, 그 준거법은 케이지파워가 원고와 위 주식대여계약을 체결하면서 명시적 또는 묵시적으로 합의한 준거법이다.

위 주식대여계약에서 원고와 케이지파워 사이에 준거법 선택에 관한 명시적 합의는 없지만, 다음과 같은 계약내용, 계약당사자의 국적, 설립 준거법, 주소, 본점소재지를 비롯한 객관적 사정을 종합하면 위 주식대여계약에 관하여 적용할 준거법을 대한민국법으로 정했다고 보는 것이 원고와 케이지파워의 묵시적 의사에 부합한다. 원고는 주식을 대여하면서 그 대가로 대한민국 법정통화인 원화를 기준으로 산정한 이자를 지급받기로 하였다. 위 주식대여계약서는 한국어로 작성되어 있고 국문계약서 이외에 다른 언어로 작성된 계약서는 존재하지 않는 것으로 보인다. 그 밖에 원고의 국적이 대한민국이고 그 주소도 대한민국에 있다. 케이지파워의 설립 준거법이 대한민국 법이고 그 본점소재지 또한 대한민국에 있다.

따라서 원고가 아이큐파워를 합병한 피고를 상대로 위 주식의 반환을 구하는 이 사건에서 원고와 피고 사이의 법률관계에 적용되는 법은 대한민국 법이 된다.

원심은 준거법이 무엇인지에 관하여 명시적으로 판단하지 않았으나, 피고가 원고에게 부담하는 주식반환채무에 대한민국 법을 적용하여 판단한 것은 결과적으로 정당하다. 원심판결에 상고이유 주장과 같이 판단누락이나 심리미진의 잘못이 없다.

3. 결론

피고의 상고는 이유 없어 이를 기각하고 상고비용은 패소자가 부담하도록 하여, 대법관의 일치된 의견으로 주문과 같이 판결한다.

대법관 노정희(재판장) 김재형(주심) 안철상 이흥구