# Exhibit Jong-12

Source: lbox.kr/case/SupremeCourt/2010Da87474

## Supreme Court Decision 2010Da87474 dated May 10, 2012

### [Injunction against Infringement, etc.]

---

### Holdings

[1] Whether voluntary assignment of lawsuit for litigation purposes is permitted (limited affirmative)

[2] In a matter where Company A, an incorporated entity as Korean branch of a foreign coffee shop chain, purchased CDs containing background music including musical works from Foreign Company B, which had entered into a music service contract with the head office of the foreign coffee shop chain and was providing background music services, and performed them as background music at coffee shop stores located throughout Korea, a case holding that the Korea Music Copyright Association does not have party qualification to file a lawsuit for injunctive relief with respect to some musical works for which it was only granted the right to permit public performance in Korea from the copyright holders but not assigned the right of public performance

[3] The meaning of 'phonogram for sale' provided in Article 29, Paragraph 2 of the *Copyright Act* (= phonogram produced for the purpose of sale to the public)

[4] In a matter where Company A, an incorporated entity as Korean branch of a foreign coffee shop chain, purchased CDs containing background music including musical works from Foreign Company B, which had entered into a music service contract with the head office of the foreign coffee shop chain and was providing background music services, and performed them as background music at coffee shop stores located throughout Korea, a case holding that the CDs cannot be regarded as 'phonograms for sale' provided in Article 29, Paragraph 2 of the *Copyright Act* because they were not produced for the purpose of sale to the public

### Summary of Decision

[1] Regarding claims for property rights, as a matter of principle, party qualification exists in the rights holder who has the authority to manage and disposition the right or legal relationship that is the subject matter of the lawsuit. However, even if a third party, party qualification may be granted to a certain right or legal relationship in accordance with the provisions of law, or party qualification may be recognized by receiving the right to conduct litigation according to the intention of the original rights holder, but such voluntary assignment of lawsuit for litigation purposes is permitted only in a limited manner in cases where it is recognized that there is a reasonable need to permit it as something not by an illegal method such as evading the principle of attorney representation provided in Article 87 of the *Civil Procedure Act* or the prohibition of assignment of lawsuit provided in Article 7 of the *Trust Act*.

- 1 -

Source: lbox.kr/case/SupremeCourt/2010Da87474

[2] In a matter where Company A, an incorporated entity as Korean branch of a foreign coffee shop chain, purchased CDs containing background music including musical works from Foreign Company B, which had entered into a music service contract with the head office of the foreign coffee shop chain and was providing background music services, and performed them as background music at coffee shop stores located throughout Korea, a case holding that since the Korea Music Copyright Association was only granted the right to permit public performance in Korea from the copyright holders of the right of public performance, etc., with respect to some of the musical works but not assigned the right of public performance, and there are no special circumstances to view that there is a reasonable need for the Association, which is not the rights holder, to receive a voluntary assignment of lawsuit for litigation purposes regarding litigation concerning some of the musical works and conduct litigation in its own name, the Association does not have party qualification to file a lawsuit for injunctive relief with respect to some of the musical works.

[3] Article 29, Paragraph 2 of the *Copyright Act* provides that when no benefit in return is received from the audience or spectators for the public performance in question, the act of reproducing a 'phonogram for sale' or 'cinematographic work for sale' and performing it to the public does not constitute infringement of the right of public performance unless it falls under the exceptional circumstances provided in the *Enforcement Decree of the Copyright Act*. However, unlike Article 29, Paragraph 1 of the *Copyright Act* regarding limitation of the right of public performance, which provides that a published work may be performed or broadcast only when it is not for profit purposes, no benefit in return is received from the audience or spectators or third parties under any name, and ordinary remuneration is not paid to the performers, the provision does not require a non-profit purpose as long as no benefit in return is received for the public performance in question, so even if there is a public need to allow the public to enjoy cultural benefits through the use of works, there is a risk of unreasonably harming the legitimate interests of copyright holders, so it is necessary to strictly interpret the conditions under which free use of works is permitted pursuant to Paragraph 2. Meanwhile, since Article 29, Paragraph 2 of the *Copyright Act* limits the right of public performance of copyright holders without any compensation regarding the act of reproducing a 'phonogram for sale' and performing it to the public as mentioned above, the underlying basis of this purport would have also considered the point that the phonogram becomes widely known to consumers in the market through public performance by reproduction of the phonogram, thereby increasing the sales volume of the phonogram in question, and accordingly not only the phonogram producer but also the copyright holder who has the authority to permit the use of the work recorded on the phonogram, which is inevitably accompanied by the reproduction and distribution of the phonogram, also obtains indirect benefits, so in light of the content and purport of such provisions, it is appropriate to interpret the 'phonogram for sale' referred to in the provision as limited to meaning a phonogram produced for the purpose of sale to the public as such.

Source: lbox.kr/case/SupremeCourt/2010Da87474

[4] In a matter where Company A, an incorporated entity as Korean branch of a foreign coffee shop chain, purchased CDs containing background music including musical works from Foreign Company B, which had entered into a music service contract with the head office of the foreign coffee shop chain and was providing background music services, and performed them as background music at coffee shop stores located throughout Korea, a case holding that in light of the facts that the CDs are encrypted and can only be played on the player provided by Company B, are no longer played when the period specified in the contract expires, and Company A bears the obligation to dispose of or return them, the CDs are merely non-fungibles produced to supply only to Company A and branches of Starbucks in countries around the world according to the order of the Starbucks head office as part of Company B's provision of background music services, and were not produced for the purpose of sale to the public, so they cannot be regarded as 'phonograms for sale' provided in Article 29, Paragraph 2 of the Copyright Act.

# Supreme Court

## Decision

| | |
|---|---|
| Case | 2010Da87474 Injunction against Infringement, etc. |
| Plaintiff, Appellee and Appellant | Korea Music Copyright Association (Legal Representative: Law Firm Lee & Ko; Attorneys handling the case: Woon Ho Kim and two others) |
| Defendant, Appellant and Appellee | Starbucks Coffee Korea Co., Ltd. (Legal Representative: Law Firm Shin & Kim; Attorneys handling the case: Yong Dam Kim and four others) |
| Original appellate court decision | Seoul High Court Decision 2009Na53224 dated September 9, 2010 |

## Order

All appeals are dismissed. The costs of appeal shall be borne by each party.

## Reasoning

1. Determination on the grounds of appeal by the plaintiff

Regarding claims for property rights, as a matter of principle, party qualification exists in the rights holder who has the authority to manage and disposition the right or legal relationship that is the subject matter of

Source: lbox.kr/case/SupremeCourt/2010Da87474

the lawsuit. However, even if a third party, party qualification may be granted to a certain right or legal relationship in accordance with the provisions of law, or party qualification may be recognized by receiving the right to conduct litigation according to the intention of the original rights holder, but such voluntary assignment of lawsuit for litigation purposes shall be permitted only in a limited manner in cases where it is recognized that there is a reasonable need to permit it as something not by way of an illegal method such as evading the principle of attorney representation provided in Article 87 of the *Civil Procedure Act* or the prohibition of assignment of lawsuitprovided in Article 7 of the *Trust Act* (see Supreme Court Decision 83DaKa1815 dated February 14, 1984, etc.).

In light of the above legal principles and the records, the plaintiff was only granted the right to permit public performance in Korea from the copyright holders of the right of public performance, etc., with respect to Musical Works Nos. 3 through 6 of this case as held by the original appellate court decision, but not assigned the right of public performance, and since there are no special circumstances to view that there is a reasonable need for the plaintiff, who is not the rights holder, to receive a voluntary assignment of lawsuit for litigation purposes regarding litigation concerning the musical works and conduct litigation in its own name, the plaintiff cannot be viewed as having party qualification to file a lawsuit for injunctive relief with respect to the musical works. The original appellate court's determination to the same effect is justified, and there is no illegality of misunderstanding legal principles regarding voluntary assignment of lawsuit for litigation purposes as alleged in the grounds of appeal.

2. Determination on the grounds of appeal by the defendant

A. Regarding Points 1 and 4

The original appellate court, by comprehensively considering the evidence it adopted, recognized the facts that EMI Music Publishing Co. trustily transferred its share of copyright in Korea such as the right of public performance with respect to Musical Work No. 1 of this case as held by it to Korea EMI Music Publishing Co., Ltd., Warner/Chappell Music Inc. trustily transferred its share of copyright in Korea such as the right of public performance with respect to Musical Work No. 2 of this case as held by it to Warner Chappell Music Korea Co., Ltd., and that the plaintiff is a corporation whose main business is copyright trust management after receiving permission for copyright trust management business pursuant to Article 105 of the *Copyright Act* and received the shares of copyright with respect to the musical works trustily transferred again from the trustees a considerable period before filing this case lawsuit, and then determined to the effect that considering all circumstances such as the process, method, and timing of transfer of the shares of copyright with respect to Musical Works Nos. 1 and 2 of this case and the relationship between the copyright holders and the plaintiff, the trust of the shares of copyright with respect to the musical works by the trustors to the plaintiff cannot be viewed as having litigation acts as its main purpose.

Source: lbox.kr/case/SupremeCourt/2010Da87474

In light of the records, the above determination by the original appellate court is justified, and there is no illegality of misunderstanding legal principles regarding assignment of lawsuit as alleged in the grounds of appeal. In addition, the remaining assertions in this part of the grounds of appeal are merely criticizing the selection and rejection of evidence and fact-finding, which belong to the exclusive authority of the original appellate court as the fact-finding court, and are difficult to view as legitimate grounds of appeal, and it cannot be said that there is illegality in the original appellate court's determination that violates the rules of logic and empirical rules or exceeds the limits of the principle of free evaluation of evidence.

B. Regarding Points 2 and 3

Article 29, Paragraph 2 of the *Copyright Act* provides that when no benefit in return is received from the audience or spectators for the public performance in question, the act of reproducing a 'phonogram for sale' or 'cinematographic work for sale' and performing it to the public does not constitute infringement of the right of public performance unless it falls under the exceptional circumstances provided in the *Enforcement Decree of the Copyright Act*. However, unlike Article 29, Paragraph 1 of the *Copyright Act* regarding limitation of the right of public performance, which provides that a published work may be performed or broadcast only when it is not for profit purposes, no benefit in return is received from the audience or spectators or third parties under any name, and ordinary remuneration is not paid to the performers, the provision does not require a non-profit purpose as long as no benefit in return is received for the public performance in question, so even if there is a public need to allow the public to enjoy cultural benefits through the use of works, there is a risk of unreasonably harming the legitimate interests of copyright holders, so it is necessary to strictly interpret the conditions under which free use of works is permitted pursuant to Paragraph 2. Meanwhile, since Article 29, Paragraph 2 of the *Copyright Act* limits the right of public performance of copyright holders without any compensation regarding the act of reproducing a 'phonogram for sale' and performing it to the public as mentioned above, the underlying basis of this purport would have also considered the point that the phonogram becomes widely known to consumers in the market through public performance by reproduction of the phonogram, thereby increasing the sales volume of the phonogram in question, and accordingly not only the phonogram producer but also the copyright holder who has the authority to permit the use of the work recorded on the phonogram, which is inevitably accompanied by the reproduction and distribution of the phonogram, also obtains indirect benefits, so in light of the content and purport of such provisions, it is appropriate to interpret the 'phonogram for sale' referred to in the provision as limited to meaning a phonogram produced for the purpose of sale to the public as such.

According to the reasoning of the original appellate court decision, it can be recognized that PlayNetwork, Inc. ("PN Company") entered into a Music Service Agreement with Starbucks Coffee International, Inc. (the Starbucks head office) and is providing background music services to Starbucks coffee shop stores in countries around the world, that the defendant, the domestic branch of Starbucks, purchased CDs containing background music including Musical Works Nos. 1 and 2 of this case ("Subject CDs") from PN Company at USD 30.79 per CD (including USD 3.79 for shipping) in accordance with the contract with the Starbucks head office,

and performed them by playing them as background music at Starbucks coffee shop stores located throughout Korea using the player provided by PN Company, but that the Subject CDs are encrypted and can only be played on the player provided by PN Company, are no longer played when the period specified in the contract expires, and that the defendant bears the obligation to dispose of or return them.

In light of these facts in accordance with the legal principles seen above, the Subject CDs are merely non-fungibles produced to supply only to the defendant and Starbucks branches in countries around the world according to the order of the Starbucks head office as part of PN Company's provision of background music services to the Starbucks head office, and were not produced for the purpose of sale to the public, so they cannot be said to fall under 'phonograms for sale' provided in Article 29, Paragraph 2 of the *Copyright Act*.

The original appellate court's determination to the same effect is justified, and there is no illegality of misunderstanding legal principles regarding 'phonograms for sale' under Article 29, Paragraph 2 of the *Copyright Act* as alleged in the grounds of appeal.

3. Conclusion

Therefore, all appeals are dismissed, the costs of appeal are to be borne by each party, and the decision is hereby rendered as set out in the Order with the unanimous opinion of the participating Supreme Court Justices.

Supreme Court Justice Sang Hoon Lee (Presiding Justice); Su An Jeonn (Handling Justice); Chang Su Yang; Yong Deok Kim

출처: lbox.kr/case/대법원/2010다87474

## 대법원 2012. 5. 10. 선고 2010다87474 판결 [침해금지등]

---

### 판시사항

[1] 임의적 소송신탁이 허용되는지 여부(한정 적극)

[2] 외국계 커피 전문점의 국내 지사인 갑 주식회사가, 본사와 음악 서비스 계약을 체결하고 배경음악 서비스를 제공하고 있는 을 외국회사로부터 음악저작물을 포함한 배경음악이 담긴 CD를 구매하여 국내 각지에 있는 커피숍 매장에서 배경음악으로 공연한 사안에서, 한국음악저작권협회가 저작재산권자로부터 국내에서 공연을 허락할 권리를 부여받았을 뿐 공연권까지 신탁받지 않은 일부 음악저작물에 대하여는 침해금지청구의 소를 제기할 당사자적격이 없다고 한 사례

[3] 저작권법 제29조 제2항에서 정한 '판매용 음반'의 의미(=시중에 판매할 목적으로 제작된 음반)

[4] 외국계 커피 전문점의 국내 지사인 갑 주식회사가, 본사와 음악 서비스 계약을 체결하고 배경음악 서비스를 제공하고 있는 을 외국회사로부터 음악저작물을 포함한 배경음악이 담긴 CD를 구매하여 국내 각지에 있는 커피숍 매장에서 배경음악으로 공연한 사안에서, 위 CD는 시중에 판매할 목적으로 제작된 것이 아니므로 저작권법 제29조 제2항에서 정한 '판매용 음반'으로 볼 수 없다고 한 사례


### 판결요지

[1] 재산권상의 청구에 관하여는 소송물인 권리 또는 법률관계에 관하여 관리처분권을 갖는 권리주체에게 당사자적격이 있음이 원칙이다. 다만 제3자라고 하더라도 법률이 정하는 바에 따라 일정한 권리나 법률관계에 관하여 당사자적격이 부여되거나 본래의 권리주체로부터 그의 의사에 따라 소송수행권을 수여받음으로써 당사자적격이 인정되는 경우가 있으나, 이러한 임의적 소송신탁은 민사소송법 제87조가 정한 변호사대리의 원칙이나 신탁법 제7조가 정한 소송신탁의 금지를 잠탈하는 등의 탈법적 방법에 의하지 않은 것으로서 이를 인정할 합리적 필요가 있다고 인정되는 경우에 한하여 제한적으로만 허용된다.

[2] 외국계 커피 전문점의 국내 지사인 갑 주식회사가, 본사와 음악 서비스 계약을 체결하고 배경음

출처: lbox.kr/case/대법원/2010다87474

악 서비스를 제공하고 있는 을 외국회사로부터 음악저작물을 포함한 배경음악이 담긴 CD를 구매하여 국내 각지에 있는 커피숍 매장에서 배경음악으로 공연한 사안에서, 한국음악저작권협회가 위 음악저작물 일부에 관하여는 공연권 등의 저작재산권자로부터 국내에서 공연을 허락할 권리를 부여받았을 뿐 공연권까지 신탁받지는 않았고, 권리주체가 아닌 협회에 위 음악저작물 일부에 대한 소송에 관하여 임의적 소송신탁을 받아 자기의 이름으로 소송을 수행할 합리적 필요가 있다고 볼 만한 특별한 사정이 없으므로, 협회는 위 음악저작물 일부에 대한 침해금지청구의 소를 제기할 당사자적격이 없다고 한 사례.

[3] 저작권법 제29조 제2항은, 청중이나 관중으로부터 당해 공연에 대한 반대급부를 받지 않는 경우 '판매용 음반' 또는 '판매용 영상저작물'을 재생하여 공중에게 공연하는 행위가 저작권법 시행령에서 정한 예외사유에 해당하지 않는 한 공연권 침해를 구성하지 않는다고 규정하고 있다. 그런데 위 규정은, 공연권의 제한에 관한 저작권법 제29조 제1항이 영리를 목적으로 하지 않고 청중이나 관중 또는 제3자로부터 어떤 명목으로든지 반대급부를 받지 않으며 또 실연자에게 통상의 보수를 지급하지 않는 경우에 한하여 공표된 저작물을 공연 또는 방송할 수 있도록 규정하고 있는 것과는 달리, 당해 공연에 대한 반대급부를 받지 않는 경우라면 비영리 목적을 요건으로 하지 않고 있어, 비록 공중이 저작물의 이용을 통해 문화적 혜택을 향수하도록 할 공공의 필요가 있는 경우라도 자칫 저작권자의 정당한 이익을 부당하게 해할 염려가 있으므로, 위 제2항의 규정에 따라 저작물의 자유이용이 허용되는 조건은 엄격하게 해석할 필요가 있다. 한편 저작권법 제29조 제2항이 위와 같이 '판매용 음반'을 재생하여 공중에게 공연하는 행위에 관하여 아무런 보상 없이 저작권자의 공연권을 제한하는 취지의 근저에는 음반의 재생에 의한 공연으로 음반이 시중의 소비자들에게 널리 알려짐으로써 당해 음반의 판매량이 증가하게 되고 그에 따라 음반제작자는 물론 음반의 복제·배포에 필연적으로 수반되는 당해 음반에 수록된 저작물의 이용을 허락할 권능을 가지는 저작권자 또한 간접적인 이익을 얻게 된다는 점도 고려되었을 것이므로, 이러한 규정의 내용과 취지 등에 비추어 보면 위 규정에서 말하는 '판매용 음반'이란 그와 같이 시중에 판매할 목적으로 제작된 음반을 의미하는 것으로 제한하여 해석하여야 한다.

[4] 외국계 커피 전문점의 국내 지사인 갑 주식회사가, 본사와 음악 서비스 계약을 체결하고 배경음악 서비스를 제공하고 있는 을 외국회사로부터 음악저작물을 포함한 배경음악이 담긴 CD를 구매하

출처: lbox.kr/case/대법원/2010다87474

여 국내 각지에 있는 커피숍 매장에서 배경음악으로 공연한 사안에서, 위 CD는 암호화되어 있어 을 회사가 제공한 플레이어에서만 재생되고 계약에서 정해진 기간이 만료되면 더 이상 재생되지 않으며 갑 회사는 이를 폐기하거나 반환할 의무를 부담하는 사실 등에 비추어, 위 CD는 을 회사가 배경음악 서비스 제공의 일환으로 본사의 주문에 따라 갑 회사 등 세계 각국의 지사에만 공급하기 위하여 제작된 부대체물일 뿐 시중에 판매할 목적으로 제작된 것이 아니므로, 저작권법 제29조 제2항에서 정한 '판매용 음반'으로 볼 수 없다고 한 사례.

# 대    법    원
## 판        결

| | |
|---|---|
| 사건 | 2010다87474 침해금지등 |
| 원고,피상고인겸상고인 | 사단법인 한국음악저작권협회 (소송대리인 법무법인 광장 담당변호사 김운호 외 2인) |
| 피고,상고인겸피상고인 | 주식회사 스타벅스커피코리아 (소송대리인 법무법인 세종 담당변호사 김용담 외 4인) |
| 원심판결 | 서울고법 2010. 9. 9. 선고 2009나53224 판결 |

## 주        문

상고를 모두 기각한다. 상고비용은 각자가 부담한다.

## 이        유

1. 원고의 상고이유에 대한 판단

재산권상의 청구에 관하여는 소송물인 권리 또는 법률관계에 관하여 관리처분권을 갖는 권리주체에게 당사자적격이 있음이 원칙이다. 다만 제3자라고 하더라도 법률이 정하는 바에 따라 일정한 권리

출처: lbox.kr/case/대법원/2010다87474

나 법률관계에 관하여 당사자적격이 부여되거나 본래의 권리주체로부터 그의 의사에 따라 소송수행권을 수여받음으로써 당사자적격이 인정되는 경우가 있으나, 이러한 임의적 소송신탁은 민사소송법 제87조가 정한 변호사대리의 원칙이나 신탁법 제7조가 정한 소송신탁의 금지를 잠탈하는 등의 탈법적 방법에 의하지 않은 것으로서 이를 인정할 합리적 필요가 있다고 인정되는 경우에 한하여 제한적으로만 허용된다고 할 것이다 ( 대법원 1984. 2. 14. 선고 83다카1815 판결 등 참조).

위 법리와 기록에 비추어 살펴보면, 원고는 원심판시 이 사건 제3 내지 제6 음악저작물에 관하여 그 공연권 등의 저작재산권자로부터 국내에서 공연을 허락할 권리를 부여받았을 뿐 공연권까지 신탁받은 바는 없는데, 권리주체가 아닌 원고에게 위 음악저작물에 대한 소송에 관하여 임의적 소송신탁을 받아 자기의 이름으로 소송을 수행할 합리적 필요가 있다고 볼 만한 특별한 사정이 보이지 않으므로, 원고는 위 음악저작물에 대한 침해금지청구의 소를 제기할 당사자적격이 있다고 볼 수 없다. 같은 취지의 원심판단은 정당하고, 거기에 상고이유의 주장과 같은 임의적 소송신탁에 관한 법리오해 등의 위법이 없다.

2. 피고의 상고이유에 대한 판단

가. 제1점 및 제4점에 대하여

원심은 그 채택 증거들을 종합하여, 이엠아이 뮤직 퍼블리싱 컴퍼니(EMI Music Publishing Co.)는 한국이엠아이음악출판 주식회사에게 그 판시의 이 사건 제1 음악저작물에 관한 국내 공연권 등 저작재산권의 지분을, 워너채플 뮤직 인코퍼레이티드(Warner/Chappell music Inc.)는 워너채플뮤직코리아 주식회사에게 그 판시의 이 사건 제2 음악저작물에 관한 국내 공연권 등 저작재산권의 지분을 각 신탁적으로 양도하였는데, 원고는 저작권법 제105조에 따라 저작권위탁관리업의 허가를 받아 저작권신탁관리를 주된 업무로 하는 법인으로서 이 사건 소를 제기하기 상당기간 전에 위 수탁자들로부터 위 음악저작물에 관한 저작재산권의 지분을 다시 신탁적으로 양도받은 사실을 인정한 다음, 이 사건 제1, 제2 음악저작물에 관한 저작재산권 지분의 양도 경위·방식·시기 및 위 저작재산권자들과 원고의 관계 등 제반 사정을 종합하여 보면, 신탁자들의 원고에 대한 위 음악저작물에 관한 저작재산권 지분의 신탁이 소송행위를 주목적으로 한 것이라고 볼 수 없다는 취지로 판단하였다.

기록에 비추어 살펴보면 원심의 위와 같은 판단은 정당하고, 거기에 상고이유의 주장과 같은 소송

출처: lbox.kr/case/대법원/2010다87474

신탁에 관한 법리오해의 위법이 없다. 그 밖에 이 부분 나머지 상고이유의 주장은 사실심인 원심의 전권에 속하는 증거의 취사선택과 사실인정을 탓하는 것으로서 적법한 상고이유로 보기 어려울 뿐 아니라 원심의 판단에 논리와 경험칙에 어긋나거나 자유심증주의의 한계를 벗어난 위법이 있다고 볼 수도 없다.

나. 제2점 및 제3점에 대하여

저작권법 제29조 제2항은, 청중이나 관중으로부터 당해 공연에 대한 반대급부를 받지 않는 경우 '판매용 음반' 또는 '판매용 영상저작물'을 재생하여 공중에게 공연하는 행위가 저작권법 시행령에서 정한 예외사유에 해당하지 않는 한 공연권 침해를 구성하지 않는다고 규정하고 있다. 그런데 위 규정은, 공연권의 제한에 관한 저작권법 제29조 제1항이 영리를 목적으로 하지 않고 청중이나 관중 또는 제3자로부터 어떤 명목으로든지 반대급부를 받지 않으며 또 실연자에게 통상의 보수를 지급하지 않는 경우에 한하여 공표된 저작물을 공연 또는 방송할 수 있도록 규정하고 있는 것과는 달리, 당해 공연에 대한 반대급부를 받지 않는 경우라면 비영리 목적을 요건으로 하지 않고 있어, 비록 공중이 저작물의 이용을 통해 문화적 혜택을 향수하도록 할 공공의 필요가 있는 경우라도 자칫 저작권자의 정당한 이익을 부당하게 해할 염려가 있으므로, 위 제2항의 규정에 따라 저작물의 자유이용이 허용되는 조건은 엄격하게 해석할 필요가 있다. 한편 저작권법 제29조 제2항이 위와 같이 '판매용 음반'을 재생하여 공중에게 공연하는 행위에 관하여 아무런 보상 없이 저작재산권자의 공연권을 제한하는 취지의 근저에는 음반의 재생에 의한 공연으로 그 음반이 시중의 소비자들에게 널리 알려짐으로써 당해 음반의 판매량이 증가하게 되고 그에 따라 음반제작자는 물론 음반의 복제·배포에 필연적으로 수반되는 당해 음반에 수록된 저작물의 이용을 허락할 권능을 가지는 저작권자 또한 간접적인 이익을 얻게 된다는 점도 고려되었을 것이므로, 이러한 규정의 내용과 취지 등에 비추어 보면 위 규정에서 말하는 '판매용 음반'이라 함은 그와 같이 시중에 판매할 목적으로 제작된 음반을 의미하는 것으로 제한하여 해석함이 상당하다.

원심판결 이유에 의하면, 플레이네트워크사(Playnetwork, Inc. 이하 'PN사'라 한다)는 스타벅스 본사(Starbucks Coffee International, Inc.)와 음악 서비스 계약(Music Service Agreement)을 체결하고 세계 각국에 있는 스타벅스 커피숍 매장에 대한 배경음악 서비스를 제공하고 있는 사실, 스타벅스의 국내 지사인 피고는 스타벅스 본사와의 계약에 따라 PN사로부터 이

출처: lbox.kr/case/대법원/2010다87474

사건 제1, 제2 음악저작물을 포함한 배경음악이 담긴 CD(이하 '이 사건 CD'라 한다)를 장당 미화 30.79달러(운송료 3.79달러 포함)에 구매하여, 국내 각지에 있는 스타벅스 커피숍 매장에서 그 배경음악으로 PN사가 제공한 플레이어를 이용하여 재생시켜 공연한 사실, 그런데 이 사건 CD는 암호화되어 있어 PN사가 제공한 플레이어에서만 재생되고, 계약에서 정해진 기간이 만료되면 더 이상 재생되지 않으며, 피고는 이를 폐기하거나 반환할 의무를 부담하는 사실 등을 알 수 있다.

이러한 사실관계를 앞서 본 법리에 비추어 살펴보면, 이 사건 CD는 PN사의 스타벅스 본사에 대한 배경음악 서비스 제공의 일환으로 스타벅스 본사의 주문에 따라 피고 등 세계 각국의 스타벅스 지사에게만 공급하기 위하여 제작된 부대체물일 뿐 시중에 판매할 목적으로 제작된 것이 아니므로, 저작권법 제29조 제2항에서 정한 '판매용 음반'에 해당하지 않는다고 할 것이다.

같은 취지의 원심판단은 정당하고, 거기에 상고이유의 주장과 같은 저작권법 제29조 제2항의 '판매용 음반'에 관한 법리오해 등의 위법이 없다.

3. 결론

그러므로 상고를 모두 기각하고, 상고비용은 각자가 부담하도록 하여 관여 대법관의 일치된 의견으로 주문과 같이 판결한다.

대법관 이상훈(재판장) 전수안(주심) 양창수 김용덕