Exhibit Jong-14

Source: lbox.kr/case/SeoulCentralDistrictCourt/2019GaHap548861

## Holdings

Foreign Entity A is a British music copyright trust management organization entrusted with all performance rights to the musical works inserted in the film "Bohemian Rhapsody" with worldwide territorial scope of regions from the authors, and Foreign Company B is a company that received delegation of authority from the authors to grant permission for use of the musical works by inserting them into films within the United States or to perform films with such insertions, and entered into a license agreement with Foreign Company C, the worldwide distributor of the film. When Company D, a domestic cinema operator, received distribution of the film from Foreign Company C's domestic direct distributor and screened it, Entity E, a domestic music copyright trust management organization that entered into a reciprocal management contract with Foreign Entity A and received trust assignment of the performance rights to the musical works, sought damages from Company D on the grounds that Company D infringed the performance rights to the musical copyrights held by Entity E by performing the musical works by screening the film in cinema theaters without receiving performance permission. In this case, it was held that, in light of all circumstances, Foreign Company C appears not to have received permission from Foreign Company B for domestic performance of the musical works, and therefore Company D's act of performing the musical works inserted in the film by screening the film in cinema theaters without receiving performance permission from Entity E constitutes a tort infringing the performance rights to the musical works held by Entity E, and negligence regarding the infringement is also recognized, and accordingly Company D is liable to compensate Entity E for damages arising from performance right infringement.

## Summary of Decision

Foreign Entity A is a British music copyright trust management organization entrusted with all performance rights to the musical works inserted in the film "Bohemian Rhapsody" with worldwide territorial scope from the authors, and Foreign Company B is a company that received delegation of authority from the authors to grant permission for use of the musical works by inserting them into films within the United States or to perform films with such insertions, and entered into a license agreement with Foreign Company C, the worldwide distributor of the film. When Company D, a domestic cinema operator, received distribution of the film from Foreign Company C's domestic direct distributor and screened it, Entity E, a domestic music copyright trust management organization that entered into a reciprocal management contract with Foreign Entity A and received trust assignment of the performance rights to the musical works, sought damages from Company D on the grounds that Company D infringed the performance rights to the musical copyrights held by Entity E by performing the musical works by screening the film in cinema theaters without receiving performance permission.

Entity E, which received trust of the performance rights to the musical works from Foreign Entity A, may

Source: lbox.kr/case/SeoulCentralDistrictCourt/2019GaHap548861

file a lawsuit for damages arising from infringement of the performance rights to the musical works in its own name as part of exercising management and disposition rights over performance rights, and the performance of such litigation acts cannot be regarded as evading the principle of representation by attorney-at-law provided in Article 87 of the *Civil Procedure Act* or the prohibition of assignment of claims for the purpose of litigation provided in Article 7 of the *Trust Act*. On these grounds, the court rejected Company D's pre-trial defense that Entity E lacks party standing. The court then held that, according to the license agreement between Foreign Company B and Foreign Company C, the territorial scope in which Foreign Company C was granted authority by Foreign Company B to perform the musical works or have them performed by third parties is limited to the United States and U.S. territories, and regarding performance in other regions, it is to follow the practice of that region; in a reply sent by Foreign Company B to Entity E, it expressed the opinion that it permitted performance of the musical works only in the United States and did not permit performance in regions other than the United States; and there is no practice that cinema operators are permitted to perform music inserted in film works or need not pay performance fees regarding foreign films screened domestically. In light of all these circumstances, Foreign Company C appears not to have received permission from Foreign Company B for domestic Korean performance of the musical works, and therefore Company D's act of performing the musical works inserted in the film by screening the film in cinema theaters without receiving performance permission from Entity E constitutes a tort infringing the performance rights to the musical works held by Entity E, and negligence regarding the infringement is also recognized. Accordingly, the court held that Company D is liable to compensate Entity E for damages arising from performance right infringement.

# Seoul Central District Court

## Civil Division 63-3

## Decision

| | |
|---|---|
| Case | 2019GaHap548861 Damages (Intellectual Property Rights) |
| Plaintiff | Korea Music Copyright Association (Legal Representative: Law Firm Barun LLC; Attorneys handing the case: Min Seon Shim and two others) |
| Defendant | CJ CGV Co., Ltd. (Legal Representative: Law Firm Shin & Kim LLC; Attorneys handing the case: Jin Gu Moon and four others) |

Source: lbox.kr/case/SeoulCentralDistrictCourt/2019GaHap548861

Closing Argument                April 14, 2022

# Order

1. The defendant shall pay to the plaintiff KRW 112,158,000 and money calculated at the rate of 12% per annum from July 31, 2019 until full payment is made.

2. Litigation costs shall be borne by the defendant.

3. Paragraph 1 may be provisionally executed.

# Purport of Claim

It is as set out in the Order.

# Reasoning

1. Facts recognized

A. The film Bohemian Rhapsody is a work depicting the history of British rock band Queen and the life of its vocalist Freddie Mercury ("Subject Film"). In the Subject Film, 31 musical works listed in the attached table ("Subject Musical Works") are inserted and visualized as musical works, and the authors of the Subject Musical Works are as stated in the corresponding author section of the table ("Subject Musical Work Authors").

B. 1) The Performing Rights Society for Music (abbreviated as "PRS") is a copyright trust management organization that manages music copyrighted works entrusted by copyright holders within the United Kingdom, grants performance licenses to third parties, collects royalties from them, and distributes these royalties to the authors. The Plaintiff is a non-profit incorporated association that obtained a license for music copyright trust management from the Korean Minister of Culture, Sports and Tourism pursuant to Article 105 of the *Copyright Act*. It enters into trust agreements with domestic and international music copyright holders and manages the property rights of the entrusted music works, including the rights of performance,

- 3 -

Source: lbox.kr/case/SeoulCentralDistrictCourt/2019GaHap548861

reproduction, and distribution. The Plaintiff and PRS are members of the International Confederation of Societies of Authors and Composers (ICSAC), an international federation of societies of authors and composers.

2) The plaintiff and PRS entered into a reciprocal management contract on March 22, 1995, and according to this contract, each of the two parties grants to the other party the authority to permit third parties to perform in the other party's management region <Footnote 1> regarding the performance rights of musical works entrusted to and managed by that party, and the other party that receives such authority may permit performance to third parties within its management region and collect usage fees for such performance. The plaintiff and PRS entered into a supplementary contract to the reciprocal management contract on May 23, 2011 and an amended contract to the reciprocal management contract around August 2012. According to the amended contract, to prevent confusion, content was newly added whereby PRS (1) entrusts to the plaintiff the performance rights under the reciprocal management contract, and (2) grants the right to file lawsuits for copyright infringement acts occurring in the Republic of Korea in relation to musical works managed by PRS.

C. PRS is entrusted with and holds, for worldwide territorial scope, (1) all performance rights and (2) all film synchronization rights <Footnote 2> to the Subject Musical Works.<Footnote 3> Meanwhile, within the United States, EMI Entertainment World, Inc. ("EMI") received delegation of authority as publisher <Footnote 4> from the Subject Musical Work Authors, separately from PRS, regarding use of the Subject Musical Works by inserting them into films or performing films with such insertions.

D. Twentieth Century Fox, which has worldwide distribution rights to the Subject Film, <Footnote 5> entered into an agreement with EMI on January 14, 2016 ("Subject License Agreement") regarding performance of the Subject Musical Works inserted in the Subject Film, containing the following content:


<Table 0>


E. The defendant intended to screen the Subject Film after receiving distribution from Twentieth Century Fox Korea Co., Ltd. (referred to only as "Twentieth Century Fox Korea"), the domestic direct distributor of Twentieth Century Fox. Accordingly, the plaintiff requested consultation with the defendant regarding performance fees for the Subject Musical Works, but when consultation did not come together, the plaintiff gave notice to the defendant on October 4, 2018, stating that it had been requested to collect copyright fees by

Source: lbox.kr/case/SeoulCentralDistrictCourt/2019GaHap548861

ASCAP, BMI, and PRS, and that if the defendant did not obtain permission for performance of the Subject Musical Works, it would take legal action if the defendant had no intention of consultation ("Subject Notice").

F. Despite receiving the Subject Notice, the defendant screened the Subject Film to audiences in cinema theaters from around October 31, 2018 without consultation with the plaintiff (the number of screens on the opening day was 268), and settled and paid to Twentieth Century Fox Korea money calculated at a certain percentage of revenue from screening.

G. Meanwhile, the plaintiff established regulations setting forth rates or amounts of fees to be received from users of musical works ("Subject Collection Regulations") with approval from the Minister of Culture, Sports and Tourism <Footnote 6> on February 23, 1988,<Footnote 7>. The Subject Collection Regulations have been amended several times thereafter, and the current regulations regarding performance fees for musical works inserted in films are indicated below, and those who wish to use musical works managed by the plaintiff in films must prepare and submit to the plaintiff an application form according to the film use application form prescribed by the plaintiff, and then follow the procedure of paying to the plaintiff the usage fee calculated according to the Subject Collection Regulations.

<Table 1>

[Grounds recognized] Descriptions in Plaintiff's Exhibits 1 through 4, 6 through 10, 19, 20, 21, and 24 (including branch numbers, if branch numbers exist; the same hereinafter), whole purport of arguments

2. Cause for claim in this case

The plaintiff received a trust assignment of the performance rights to the Subject Musical Works from PRS, the trustee of the Subject Musical Works. However, the defendant performed the Subject Musical Works inserted in the Subject Film by screening the Subject Film in cinema theaters without receiving performance permission from the plaintiff, and the defendant's performance is an act infringing the performance rights to the Subject Musical Works held by the plaintiff. Therefore, the defendant is liable to compensate damages suffered by the plaintiff due to the infringement, and the plaintiff seeks payment of KRW 112,158,000, which is an amount equivalent to the amount normally receivable for exercise of the Subject Musical Copyrights pursuant to Article 125, Paragraph 2 of the *Copyright Act*, and delay damages thereon as damages compensation.

3. Decision on defendant's preliminary defense prior to the 'hearing on the merits'

A. Defendant's argument

Source: lbox.kr/case/SeoulCentralDistrictCourt/2019GaHap548861

PRS, which is merely in the position of trustee entrusted with the performance rights to the Subject Musical Works, does not have authority under the purpose of the trust to assign the performance rights themselves in trust again to a trust management organization in another country such as the plaintiff. Even if the reciprocal management contract between the plaintiff and PRS includes a provision that can serve as a basis for entrusting performance rights, PRS cannot assign performance rights to the plaintiff based on this, and thus it cannot be deemed that the plaintiff received assignment of the performance rights to the Subject Musical Works from PRS. In that case, this lawsuit filed by the plaintiff in its own name, which is merely an indirect/economic interested party without management and disposition rights over the performance rights, constitutes an assignment of claims for the purpose of litigation even if the plaintiff received delegation of litigation performance authority from PRS, and there is no reasonable necessity to recognize this, and thus the plaintiff lacks party standing.

B. Determination

Regarding claims on property rights, party standing exists in principle for the right holder who has management and disposition rights over the right or legal relationship that is the subject matter of lawsuit. However, even a third party may be granted party standing regarding certain rights or legal relationships pursuant to law, or may be recognized as having party standing by receiving delegation of litigation performance authority according to the will of the original right holder. However, such assignment of claims for the purpose of litigation is permitted only restrictively in cases where there is recognized reasonable necessity to recognize it, as something not by unlawful methods such as evading the principle of representation by attorney-at-law as provided in Article 87 of the *Civil Procedure Act* or the prohibition of assignment of claims for the purpose of litigation provided in Article 7 of the *Trust Act* (see Supreme Court Decision 2010Da87474 dated May 10, 2012).

In light of the above legal principles, (1) both the plaintiff and PRS are organizations entrusted with copyrights from authors of musical works and manage them, and they possess authority to perform lawsuits in their own names in relation to legal disputes over musical works they manage; (2) however, members of CISAC including the plaintiff and PRS need continuous mutual cooperation for smooth exercise of performance rights in regions other than their management regions in relation to musical works they manage, and as part of such cooperation, the plaintiff and PRS granted authority to permit use of performance rights to the other party when entering into the reciprocal management contract as seen in the facts recognized above, and PRS went further to entrust the performance rights themselves to the plaintiff. Such entrustment of performance rights was made for efficient protection of musical works it manages, and consequently it appears to have contributed to protection of the legal interests of the Subject Musical Work Authors and there is no indication that the legal interests of the Subject Musical Work Authors were infringed, and thus there is reasonable necessity to recognize the trust; (3) accordingly, pursuant to the trust, the plaintiff lawfully received

Source: lbox.kr/case/SeoulCentralDistrictCourt/2019GaHap548861

trust of the performance rights to the Subject Musical Works from PRS and came to possess lawful authority to externally exercise them; (4) the defendant argues to the effect that the holder of performance rights to the Subject Musical Works must be deemed to be EMI rather than PRS, but as will be seen below, the scope of EMI's performance rights is limited to the United States and U.S. territories, and the performance rights do not extend to other regions, and performance rights for regions of the world other than the United States and U.S. territories appear to be held by PRS, and there is no indication that any organization other than PRS holds performance rights for the regions. In light of these circumstances, the plaintiff, which received trust of the performance rights to the Subject Musical Works from PRS, may file a lawsuit for damages arising from infringement of the performance rights to the Subject Musical Works in its own name as part of exercising management and disposition rights over performance rights, and the performance of such litigation acts cannot be deemed to have evaded the principle of representation by attorney-at-law as provided in Article 87 of the *Civil Procedure Act* or the prohibition of assignment of claims for the purpose of litigation provided in Article 7 of the *Trust Act*, and thus the defendant's above argument is without merit.

4. Determination on whether claim for damages is established in the determination on the merits

A. Establishment of claim for damages arising from infringement of performance rights

As seen above, the plaintiff is the performance right holder who lawfully received trust of the performance rights to the Subject Musical Works from PRS, and the defendant's act of screening the Subject Film in cinemas constitutes an act of performing the Subject Musical Works. Therefore, unless there are special circumstances indicating that the defendant received permission for the performance from PRS or the plaintiff, the performance act constitutes a tort infringing performance rights to the Subject Musical Works, and the defendant is liable to compensate damages arising from infringement of performance rights.

B. Determination on whether the defendant received permission to perform the Subject Musical Works

1) Defendant's argument

EMI, separately from PRS, possesses authority to permit performance of the Subject Musical Works not only in the United States and U.S. territories but also in all other regions worldwide, and thus Twentieth Century Fox, which entered into the Subject License Agreement with EMI, should be deemed to have received permission from EMI to perform the Subject Musical Works in the Republic of Korea pursuant to the agreement. The defendant, which received distribution of the Subject Film from Twentieth Century Fox Korea, a subsidiary of Twentieth Century Fox, also has authority to perform the Subject Musical Works based on the performance permission (the consideration paid by the defendant to Twentieth Century Fox Korea in relation to screening of the Subject Film includes consideration for performance of the Subject Musical Works).

Source: lbox.kr/case/SeoulCentralDistrictCourt/2019GaHap548861

Therefore, the defendant, which has authority to perform the Subject Musical Works in relation to screening of the Subject Film, does not bear liability for damages to the plaintiff.

2) Determination

Upon examination, according to the descriptions in Defendant's Exhibits 4 and 5, the fact that the defendant received permission from Twentieth Century Fox Korea to screen the Subject Film in domestic cinemas is recognized and there is no counter-evidence. However, there is no evidence whatsoever to recognize that Twentieth Century Fox received permission from EMI to perform the Subject Musical Works domestically separately from film screening, or that the defendant has lawful authority to perform the performance. Rather, when considering the following circumstances recognized by comprehensively considering the facts recognized above plus the descriptions in Plaintiff's Exhibits 5, 11, 14 through 18, and 22 and the whole purport of arguments, it is determined that Twentieth Century Fox did not receive permission from EMI to perform the Subject Musical Works domestically.

A) According to the Subject License Agreement, the territorial scope in which Twentieth Century Fox was granted authority by EMI to perform the Subject Musical Works or have them performed by third parties is limited to the United States and U.S. territories as seen below, and other regions are not included. <Footnote 8>

<Table 2>

B) Rather, according to the Subject License Agreement, regarding performance in regions other than the United States and U.S. territories and approval by foreign societies, <Footnote 9> it is provided that customary practices or payment of customary fees of that region shall be followed as seen below. This can be deemed to explicitly state that the Subject License Agreement does not apply to performance in other regions on the premise that the territorial scope of EMI's authority is limited to the United States and U.S. territories, and thus it is determined that EMI does not have authority to permit performance of the Subject Musical Works in relation to performance in the Republic of Korea.

<Table 3>

C) According to a reply sent by EMI to the plaintiff on January 21, 2021 (Plaintiff's Exhibit 22), EMI expressed the opinion that it permitted performance of the Subject Musical Works inserted in the Subject Film only in the U.S. region and does not permit performance in regions other than the United States.

Source: lbox.kr/case/SeoulCentralDistrictCourt/2019GaHap548861

D) In light of the circumstances seen below, it cannot be deemed that there exists a practice whereby cinema operators are permitted to perform music inserted in film works or need not pay performance fees regarding foreign films screened domestically.

(1) When films with musical works managed by PRS inserted are screened in various countries such as Australia, Portugal, Spain and Mexico as regions outside the United States, copyright trust management organizations in the respective countries separately collect performance fees and distribute them to PRS. When films with musical works managed by the plaintiff inserted are screened in foreign countries, copyright trust management organizations in the respective countries collect performance fees and distribute them to the plaintiff. Foreign copyright trust management organizations such as ASCAP request that the plaintiff collect performance fees for musical works from screening of foreign films domestically.

(2) Twentieth Century Fox expressed the opinion that there exists no practice or precedent of approving permission to perform musical works inserted in films in relation to screening of films it distributes in the Asia-Pacific region including the Republic of Korea, and permission for the performance and payment of performance fees accordingly is a matter to be consulted between the business operator screening the relevant film and the performance right management organization in the relevant region.

(3) The defendant argues that a practice of not paying performance fees was formed because there is no procedure established domestically for collecting performance fees for musical works inserted in imported films, and it is virtually impossible in reality for domestic cinema operators to obtain performance permission at the film screening stage. However, as seen above, Article 34, Paragraph 2 of the Subject Collection Regulations is established as a basis provision for collecting performance fees for musical works inserted in films. There is no reasonable reason to deem that the provision applies only to domestic films and does not apply to imported films, and thus it can be said that collection of performance fees for the Subject Film is possible pursuant to the provision, and thus the defendant's above argument cannot be accepted.

(4) According to the description in Defendant's Exhibit 12, on March 30, 2016, PRS sent an official letter to the Ministry of Culture, Sports and Tourism with content urging improvement on the ground that, unlike domestic films, performance rights of musical works inserted in imported films are not properly protected. Among the content of the official letter, it is recognized that the expression "However, we understand that the plaintiff (KOMCA) is licensed to clear music rights for Korean films only, and is still prohibited from licensing the use of music in foreign films when shown in Korean cinemas" <Footnote 10> was included.

Source: lbox.kr/case/SeoulCentralDistrictCourt/2019GaHap548861

Based on this, the defendant argues that collection of performance fees for imported films was prohibited domestically, and PRS, which was well aware of such circumstances, also did not claim payment of performance fees from the plaintiff before filing this lawsuit, and thus a practice exists domestically whereby performance fees for musical works related to foreign films need not be paid. Upon examination, although the above official letter includes the expression (… is still prohibited from licensing the use of music in foreign films when shown in Korean cinemas,) this is merely an expression that came about in the process of pointing out the domestic reality that, unlike domestic films, performance rights of musical works inserted in imported films are not properly protected, and it cannot be deemed based on this that collection of performance fees for imported films has been prohibited domestically, and thus the defendant's above argument is without merit.

(5) The defendant argues to the effect that, considering the amendment process of the Subject Collection Regulations, a practice was established whereby, in the case of domestic films, film producers receive collective permission for reproduction and performance of musical works at the film production stage, and in the case of imported films, all rights processing including performance is completed before the screening stage and separate performance permission is not made at the screening stage. Upon examination, according to the descriptions in Plaintiff's Exhibits 26 and 27, and Defendant's Exhibits 6, 7, 13 through 17, 21, and 22, (1) the fact that around 2011 there was discussion to newly establish provisions for collecting performance fees for musical works used in films in the Subject Collection Regulations then in force, and conflict occurred between the plaintiff and the film industry in that process; (2) the fact that the Subject Collection Regulations were amended on March 15, 2012 reflecting the discussion, and according to the amended regulations, if reproduction, distribution, and performance are collectively permitted without separate special agreement, performance fees for musical works are determined by consultation between the plaintiff and the user, but if there is a special agreement to separately permit performance, a separate calculation standard <Footnote 11> was established; and the film industry including the defendant opposed the amended regulations and formed the Film Music Copyright Response Committee ("FMCRC") around April 2012; (3) the fact that accordingly the plaintiff and FMCRC, together with the Ministry of Culture, Sports and Tourism, went through several negotiations and reached an agreement on September 4, 2012 regarding the calculation standard for usage fees <Footnote 12> when the plaintiff collectively permits reproduction, distribution, and performance of musical works, and the Subject Collection Regulations were amended on November 17, 2014 reflecting the agreement <Footnote 13>; (4) the following fact is recognized: around October 2014, under the leadership of the Ministry of Culture, Sports and Tourism, a standard contract form was prepared with the content of regulating contracts between film distributors and film exhibitors in the film screening field for the purpose of establishing standard contract standards in transaction relationships for film screening and forming a fair trade order, and according to the standard contract form, regarding musical works included in or used in films, the distributor guarantees that it holds reproduction rights and performance rights to the relevant musical works

Source: lbox.kr/case/SeoulCentralDistrictCourt/2019GaHap548861

and has the right to permit their use to the exhibitor, and when the exhibitor requests proof thereof, related documents are to be provided. However, (1) during the period when the Subject Collection Regulations were amended as above and continue to the present, regulations on methods of calculating performance fees when separately permitting only performance of musical works have continued to exist; (2) the defendant cites as basis for the practice that in the March 15, 2012 amendment among the regulations, when separately permitting only performance, the party obligated to pay performance fees is stipulated as the film producer rather than the film exhibitor. While the fact that the amended regulations included the content of the defendant's argument is recognized, the content was removed in the Subject Collection Regulations subsequently amended; (3) considering that the plaintiff is not in the position of a contracting party to the standard contract form, even with the facts recognized above and the descriptions in Defendant's Exhibits 8, 18, 19, 20, 23, and 24, it is difficult to say that the customary practice argued by the defendant was established.

C. Determination on whether it is presumed that EMI permitted Twentieth Century Fox to screen the Subject Film

1) Basis provision

*Copyright Act*

Article 99 (Cinematization of Works)

(1) If the holder of author's economic right authorizes another person to exploit his/her work by means of cinematization, such authorization shall be presumed to include the following rights, unless otherwise expressly stipulated:

2. To screen a cinematographic work aiming at a public screening;

2) Parties' arguments

A) Defendant's argument

(1) EMI, which received delegation of the right to permit performance of the Subject Musical Works from the Subject Musical Work Authors, permitted Twentieth Century Fox to convert the Subject Musical Works into the Subject Film through the Subject License Agreement, and pursuant to Article 99, Paragraph 1, Subparagraph 2 of the *Copyright Act*, it is presumed that EMI granted permission including the right to perform the Subject Film into which the Subject Musical Works were converted. In that case, the defendant's act of screening the Subject Film based on EMI's permission cannot be deemed infringement of performance rights.

(2) Considering that protection of intellectual property rights is governed by the law of the place of infringement (Article 24 of the *Act on Private International Law*),

- 11 -

Source: lbox.kr/case/SeoulCentralDistrictCourt/2019GaHap548861

and Article 3 of the WIPO <Footnote 14> Treaty and Article 5, Paragraph 2 of the Berne Convention provide that the scope of protection and remedies given to protect the rights of copyright holders are governed solely by the laws of the country where protection is claimed, Article 99, Paragraph 1 of the *Copyright Act*, which is Korean law, applies as the governing law for the plaintiff's claim in this case.

B) Plaintiff's argument

(1) Regarding application of governing law, Korean law applies to the defendant's copyright infringement, but regarding the Subject License Agreement, pursuant to Article 26, Paragraph 1 and Paragraph 2, Subparagraph 2 of the *Act on Private International Law*, U.S. law, which is the law of the country most closely connected with the agreement, applies, and Article 99, Paragraph 1 of the *Copyright Act* does not apply.

(2) Even if, as the defendant argues, Article 99, Paragraph 1 of the *Copyright Act* applies as governing law in this case and it is presumed that EMI permitted Twentieth Century Fox to perform the Subject Film, since there exists a special agreement between EMI and Twentieth Century Fox limiting the scope of authority to perform the Subject Musical Works to the United States and U.S. territories, it should be said that EMI did not permit film screening domestically.

3) Determination

Upon examination, even if, as the defendant argues, Article 99, Paragraph 1 of the *Copyright Act* applies as governing law in this case and it is presumed that EMI permitted Twentieth Century Fox to perform the Subject Film, as seen above, the Subject License Agreement clearly limits the territorial scope of Twentieth Century Fox's right to perform the Subject Musical Works and grant performance permission to third parties to the United States and U.S. territories, and provides that performance in regions other than the United States shall follow their customary practices and payment of customary fees, thereby making clear that such permission does not extend to regions outside the United States such as the Republic of Korea. Considering this, it is determined that the Subject License Agreement contains a special agreement excluding film screening in regions other than the United States and U.S. territories such as the Republic of Korea from the scope of permission, and consequently the presumption is rebutted, and thus the plaintiff's above argument has merit, and consequently the defendant's above argument is without merit.

D. Determination on the argument that no obligation to pay performance fees arises due to lack of basis provision for collecting performance fees

1) Defendant's argument

Article 34 of the Subject Collection Regulations applies only to domestic films and does not apply to imported films such as the Subject Film, and thus there exist no regulations for collecting fees for imported films.

In such a situation where regulations for collecting fees do not exist, likewise no specific obligation for the defendant to pay performance fees arises.

2) Determination

The main sentence of Article 105, Paragraph 9 of the *Copyright Act* provides that "rates or amounts of fees that a copyright trust service provider receives from users shall be determined by the copyright trust service provider with approval from the Minister of Culture, Sports and Tourism" in order to control collection of fees by copyright trust service providers. In light of the legislative purpose and literal content of the provision, the provision is merely a provision that applies when a copyright trust service provider enters into a use contract with users of works and receives payment of fees pursuant to the contract, and is not interpreted as a provision restricting acts by a copyright trust service provider to file a civil lawsuit with a court on the ground of copyright infringement and claim damages therefor. Accordingly, even if there are no rates or amounts of fees approved pursuant to the provision, there is no impediment whatsoever to exercising a claim for damages on the ground of copyright infringement (see Supreme Court Decision 2016Da204653 dated August 24, 2016). As seen above, Article 34 of the Subject Collection Regulations applies not only to domestic films but also to films imported from abroad. Even if, as the defendant argues, the provision does not apply to imported films, considering the above legal principles, in a case such as this case where the plaintiff files a civil lawsuit on the ground of copyright infringement and claims damages therefor, it cannot be deemed that a claim for damages cannot be made on the grounds that specific collection regulations are not established, and thus the defendant's above argument is without merit.

E. Sub-conclusion

In that case, the defendant performed the Subject Musical Works inserted in the Subject Film by screening the Subject Film in cinema theaters without receiving performance permission from the plaintiff, and the defendant's performance is an act infringing the performance rights to the Subject Musical Works held by the plaintiff. In light of the fact that even after receiving the Subject Notice from the plaintiff stating that the act infringes the plaintiff's performance rights and requesting payment of fees, the defendant made no particular effort to pay fees, it is determined that negligence regarding the infringement is also recognized.

5. Determination on portion regarding calculation of damages amount in the determination on the merits

A. Plaintiff's argument

Where the defendant performed the Subject Musical Works by screening the Subject Film, the performance fees calculated pursuant to the Subject Collection Regulations amount to KRW 112,158,000, and thus the plaintiff seeks payment of the amount and delay damages thereon as damages compensation.

Source: lbox.kr/case/SeoulCentralDistrictCourt/2019GaHap548861

B. Determination

1) Where a holder of author's economic right, etc., claims from a person who intentionally or negligently infringed the right compensation for damages suffered thereby, the holder of author's economic right, etc., may claim damages compensation with an amount equivalent to the amount normally receivable for exercise of the right as the amount of damages suffered by the holder of author's economic right, etc., [Article 125, Paragraph 2 of the former *Copyright Act* (before being amended by Act No. 18162 dated May 18, 2021, hereinafter referred to only as "former *Copyright Act*")]. Here, amount equivalent to the amount normally receivable for exercise of the right should be deemed to mean an objectively reasonable amount that the infringer would have paid as consideration for use if he or she had received permission to use the work. Since works differ in artistic quality and popularity with the public, a copyright holder may determine his or her own usage fee when entering into a work use contract with a person who wishes to use a work. Therefore, if a copyright holder has never entered into a use contract or received usage fees for the work in question, usage fees generally prevalent in the industry may be used as a standard in calculating damages arising from copyright infringement. However, if there exist cases where a copyright holder entered into work use contracts and received usage fees in relation to use of works in a form similar to the infringement, then unless there are special circumstances such that the usage fee was exceptionally set at an unusually high level due to exceptional circumstances, or was set abnormally high through collusion with the other party in order to influence a lawsuit claiming damages for copyright infringement, it is reasonable to calculate damages based on the usage fee determined in the use contract as the amount that the copyright holder can normally obtain for exercise of the right (see Supreme Court Decision 99Da69631 dated November 30, 2001, Supreme Court Decision 2012Da104137 dated June 27, 2013).

2) Considering the above legal principles plus the following circumstances recognized by comprehensively considering the facts recognized above and the evidence adopted above and the whole purport of arguments, it is recognized that the amount the plaintiff could normally have received from the defendant if the plaintiff had permitted the defendant to perform the Subject Musical Works by screening the Subject Film is KRW 112,158,000, and the plaintiff may claim the amount as damages compensation pursuant to Article 125, Paragraph 2 of the former *Copyright Act*.

A) Article 34, Paragraph 2 of the Subject Collection Regulations is a provision regulating cases where, among cases of using musical works in films, there is a special agreement to separately permit performance, etc., rather than collectively permitting reproduction, distribution, performance, etc., and it is determined that it applies not only to domestic films produced domestically but also to imported films.

- 14 -

Source: lbox.kr/case/SeoulCentralDistrictCourt/2019GaHap548861

B) However, as seen above, at the time of the Subject License Agreement, there existed a special agreement excluding the right of Twentieth Century Fox to perform the Subject Musical Works or grant to third parties the right to perform them in regions other than the United States and U.S. territories. Therefore, Article 34, Paragraph 2 applies to performance of the Subject Musical Works, and performance fees for the Subject Musical Works may be calculated pursuant to the paragraph. <Footnote 15> The formula for calculating performance fees pursuant to (Note 1) of the paragraph is KRW 13,500 <Footnote 16> × number of screens on opening day × share ratio, and substituting into the formula the number of screens on the opening day of the Subject Film, 268, and share ratio 1, <Footnote 17> the result is KRW 3,618,000 per song of the Subject Musical Works. Since the Subject Musical Works total 31 songs, the usage fees for all of the Subject Musical Works are KRW 112,158,000 (= KRW 3,618,000 × 31).

## 6. Conclusion

In that case, the defendant is obligated to pay to the plaintiff KRW 112,158,000 as damages and delay damages, as sought by the plaintiff, calculated at the rate of 12% per annum prescribed by the *Act on Special Cases Concerning Expedition of Legal Proceedings* from July 31, 2019, the day following the date of service of a duplicate of the complaint in this case until full payment is made, as it is after the date of infringement of rights. Therefore, the claim in this case has merit and is granted. The decision is hereby rendered as set out in the Order.

[Attachment] Table: Omitted

Judge Min Soo Lee (Presiding Judge); Tae Woong Lee; Chan Seok Park

---

Footnote 1: The plaintiff's management region is the Republic of Korea, and PRS's management region is 52 regions including the United Kingdom.

Footnote 2: Film Synchronization Rights, the right to insert and use specific music as background music in a portion of film images

Footnote 3: Meanwhile, among the Subject Musical Work Authors, Frederick Mercury died around 1991, and his executors handled trust business.

Footnote 4: Refers to a person who performs performance or synchronization business for musical works inserted in films on behalf of copyright holders of sound sources. In the United States, publishers rather than copyright trust management organizations such as ASCAP (American Society of Composers, Authors and Publishers) and BMI (Broadcast Music, Inc.) perform the business.

Footnote 5: Twentieth Century Fox Film Corporation

Source: lbox.kr/case/SeoulCentralDistrictCourt/2019GaHap548861

Footnote 6: Originally it was the Ministry of Culture and Public Information, which was separated into the Ministry of Culture and the Office of Public Information, then combined with the Ministry of Sports and Youth to become the Ministry of Culture and Sports, went through the Ministry of Culture and Tourism, and became the current Ministry of Culture, Sports and Tourism.

Footnote 7: A provider of copyright trust services, such as the plaintiff, may determine rates or amounts of fees to be received from users of works with approval from the Minister of Culture, Sports and Tourism (main sentence of Article 105, Paragraph 9 of the *Copyright Act*).

Footnote 8: The defendant argues that the territorial scope pursuant to the Subject License Agreement extends beyond the United States and U.S. territories to all regions worldwide, but fails to present reasonable grounds for recognizing this.

Footnote 9: Foreign societies appear to mean organizations that provide copyright trust service in the relevant country.

Footnote 10: However, we understand that KOMCA has been granted the right to license only domestic films and is still prohibited from licensing the use of music in foreign films when shown in Korean cinemas.

Footnote 11: Number of moviegoers for the relevant film × average admission fee × 0.97 (deduction of admission ticket surcharge for cinema theaters) × music usage fee rate

Footnote 12: After setting reproduction fees at KRW 3 million and performance fees at (per-screen per-song price × number of screens on opening day), when collectively permitting reproduction, distribution, performance, etc., it is calculated using the formula [KRW 3 million + (per-screen per-song price × number of screens on opening day)] combining the two amounts.

Footnote 13: When there is a special agreement to separately permit performance, performance fees are calculated as (per-screen per-song price × number of screens on opening day) × share ratio.

Footnote 14: World Intellectual Property Organization

Footnote 15: the paragraph provides for reproduction fees and performance fees. Reproduction fees are provided in table form in relation to works submitted to film festivals, and performance fees are provided in Note 1). The defendant argues that Note 1) applies only to films submitted to film festivals, but the defendant's argument is difficult to accept based on literal interpretation of the Subject Collection Regulations.

Footnote 16: Per-screen per-song price

Footnote 17: The plaintiff received trust of the entire share from PRS for each individual musical work in relation to the Subject Musical Works

출처: lbox.kr/case/서울중앙지방법원/2019가합548861

**판시사항**

갑 외국법인은 지역적 범위를 전 세계로 하여 영화 "보헤미안 랩소디"에 삽입된 음악저작물들의 모든 공연권을 저작자들로부터 신탁받은 영국의 음악저작권 신탁관리단체이고, 을 외국법인은 미국 내에서 위 음악저작물들을 영화에 삽입하여 사용하거나 이를 삽입한 영화를 공연하는 것에 관한 이용허락 권한을 저작자들로부터 위임받아 위 영화의 전 세계 배급사인 병 외국회사와 이용허락 약정을 체결한 회사인데, 국내 영화관 사업자인 정 주식회사가 병 회사의 국내 직배사로부터 위 영화를 배급받아 상영하자, 갑 법인과 상호관리계약을 체결하여 위 음악저작물들의 공연권을 신탁적으로 양수한 국내 음악저작권 신탁관리단체인 무 법인이 정 회사를 상대로 정 회사가 공연 허락을 받지 않은 채 영화상영관에서 영화를 상영하는 방법으로 위 음악저작물들을 공연하여 무 법인이 보유한 위 음악저작권들의 공연권을 침해하였다며 손해배상을 구한 사안에서, 제반 사정에 비추어 병 회사는 을 법인으로부터 위 음악저작물들의 국내 공연을 허락받지 않은 것으로 보이므로, 정 회사가 무 법인으로부터 공연 허락을 받지 아니한 채 영화상영관에서 영화를 상영하는 방법으로 위 영화에 삽입된 음악저작물들을 공연한 행위는 무 법인이 보유한 위 음악저작물들의 공연권을 침해하는 불법행위에 해당하고 그 침해행위에 대한 과실도 인정된다는 이유로, 정 회사는 무 법인에 공연권 침해에 따른 손해를 배상할 책임이 있다고 한 사례

**판결요지**

갑 외국법인은 지역적 범위를 전 세계로 하여 영화 "보헤미안 랩소디"에 삽입된 음악저작물들의 모든 공연권을 저작자들로부터 신탁받은 영국의 음악저작권 신탁관리단체이고, 을 외국법인은 미국 내에서 위 음악저작물들을 영화에 삽입하여 사용하거나 이를 삽입한 영화를 공연하는 것에 관한 이용허락 권한을 저작자들로부터 위임받아 위 영화의 전 세계 배급사인 병 외국회사와 이용허락 약정을 체결한 회사인데, 국내 영화관 사업자인 정 주식회사가 병 회사의 국내 직배사로부터 위 영화를 배급받아 상영하자, 갑 법인과 상호관리계약을 체결하여 위 음악저작물들의 공연권을 신탁적으로 양수한 국내 음악저작권 신탁관리단체인 무 법인이 정 회사를 상대로 정 회사가 공연 허락을 받지 않은 채 영화상영관에서 영화를 상영하는 방법으로 위 음악저작물들을 공연하여 무 법인이 보유한 위 음악저작권들의 공연권을 침해하였다며 손해배상을 구한 사안이다.

출처: lbox.kr/case/서울중앙지방법원/2019가합548861

갑 법인으로부터 위 음악저작물들의 공연권을 신탁받은 무 법인은 공연권의 관리처분권 행사의 일환으로 자신의 이름으로 위 음악저작물들의 공연권 침해에 따른 손해배상의 소를 제기할 수 있고, 이러한 소송행위의 수행이 민사소송법 제87조에서 정한 변호사대리의 원칙이나 신탁법 제7조에서 정한 소송신탁의 금지를 잠탈하였다고 볼 수 없다는 이유로 무 법인에게 당사자적격이 없다는 정 회사의 본안전항변을 배척한 다음, 을 법인과 병 회사가 체결한 이용허락 약정에 따르면 병 회사가 을 법인으로부터 위 음악저작물들을 공연하거나 제3자에게 공연하게 할 수 있는 권한을 부여받은 지역적 범위가 미국과 미국령 내로 제한되어 있고, 그 외의 다른 지역에서의 공연 등에 관하여는 그 지역의 관행에 따르도록 되어 있는 점, 을 법인이 무 법인에 보낸 회신에서 미국 지역에 한하여 위 음악저작물들의 공연을 허락하였고 미국 이외 지역에서의 공연을 허락하지 않는다는 의견을 표명한 점, 국내에서 상영되는 해외 영화와 관련하여 영화관 사업자들에게 영화 작품에 삽입된 음악의 공연이 허락되었다거나 공연 사용료를 지급하지 않아도 되는 관행이 존재한다고 볼 수 없는 점 등 제반 사정에 비추어, 병 회사는 을 법인으로부터 위 음악저작물들의 국내 공연을 허락받지 않은 것으로 보이므로, 정 회사가 무 법인으로부터 공연 허락을 받지 아니한 채 영화상영관에서 영화를 상영하는 방법으로 위 영화에 삽입된 음악저작물들을 공연한 행위는 무 법인이 보유한 위 음악저작물들의 공연권을 침해하는 불법행위에 해당하고 그 침해행위에 대한 과실도 인정된다는 이유로, 정 회사는 무 법인에 공연권 침해에 따른 손해를 배상할 책임이 있다고 한 사례이다.

# 서울중앙지방법원

## 제 6 3 - 3 민 사 부

### 판        결

| | |
|---|---|
| 사건 | 2019가합548861 손해배상(지) |
| 원고 | 사단법인 한국음악저작권협회 (소송대리인 법무법인(유한) 바른 담당변호사 심민선 외 2인) |
| 피고 | 씨제이씨지브이 주식회사 (소송대리인 법무법인(유한) 세종 담당 |

출처: lbox.kr/case/서울중앙지방법원/2019가합548861

변호사 문진구 외 4인)

변론종결          2022. 4. 14.


주          문

1. 피고는 원고에게 112,158,000원 및 이에 대한 2019. 7. 31.부터 다 갚는 날까지 연 12%의 비율로 계산한 금원을 지급하라.

2. 소송비용은 피고가 부담한다.

3. 제1항은 가집행할 수 있다.


청  구  취  지

주문과 같다.


이          유

1. 인정 사실

가. 영화 보헤미안 랩소디(Bohemian Rhapsody)는 영국의 록 밴드 퀸(Queen)의 역사와 그 보컬리스트 프레디 머큐리(Freddie Mercury)의 인생을 영화한 작품(이하 '이 사건 영화'라 한다)이다. 이 사건 영화에는 음악저작물로서 별지 표 기재 31곡의 음악(이하 '이 사건 음악저작물'이라 한다)이 삽입되어 영상화되어 있고, 이 사건 음악저작물의 저작자들은 같은 표의 저작자 부분의 해당 기재와 같다(이하 위 저작자를 '이 사건 음악저작자'라 한다).

나. 1) 영국의 음악저작물 저작권 협회인 Performing Right Society for Music(이하 'PRS'라 약칭한다)은 영국 내에서 음악저작물을 저작권자들로부터 신탁받아 관리하면서 그 공연을 제3자에게 허락하고 그로부터 사용료를 징수하여 저작자들에게 분배하는 업무를 수행하는 저작권 신탁관리단체이고, 원고는 저작권법 제105조에 따라 문화체육관광부장관으로부터 음악저작권 신탁관리업 허가를 받아 국내외 음악저작권자들과 신탁계약을 체결하고, 신탁된 음악저작물의 공연

- 3 -

출처: lbox.kr/case/서울중앙지방법원/2019가합548861

권, 복제권, 배포권 등 저작재산권을 신탁관리하는 비영리 사단법인이다. 원고와 PRS는 국제 작가 및 작곡가 협회 연합인 ICSAC(International Confederation of Societies of Authors and Composers)에 가입한 회원이다.

2) 원고와 PRS는 1995. 3. 22. 상호관리계약을 체결하였는데, 이에 따르면 양 당사자는 자신이 신탁받아 관리하는 음악저작물의 공연권과 관련하여 상대방의 관리지역<각주1> 에서 공연을 제3자에게 허락할 수 있는 권한을 상대방에게 부여하고, 그 권한을 부여받은 상대방은 자신의 관리지역 내의 제3자에게 공연을 허락하고, 그 공연에 따른 사용료를 징수할 수 있도록 되어 있다. 원고와 PRS는 2011. 5. 23. 위 상호관리계약의 부속계약을, 2012. 8.경 위 상호관리계약의 개정계약을 체결하였는데, 위 개정계약에 따르면 혼란을 방지하기 위하여 PRS가 원고에게 ① 위 상호관리계약에 따른 공연권을 신탁하고, ② PRS가 관리하는 음악저작물과 관련하여 대한민국에서 발생하는 저작권 침해행위에 따른 법적 소송을 제기할 수 있는 권리를 부여하는 내용이 새로이 추가되었다.

다. PRS는 지역적 범위를 전 세계로 하여 이 사건 음악저작물의 ① 모든 공연권과 ② 모든 영화 싱크로나이제이션권<각주2> 을 신탁받아<각주3> 보유하고 있다. 한편 미국 내에서는 EMI Entertainment World, Inc.(이하 'EMI'라 한다)가 PRS와 별도로 이 사건 음악저작자들로부터 이 사건 음악저작물을 영화에 삽입하여 사용하거나 이를 삽입한 영화를 공연하는 것과 관련하여 퍼블리셔(Publisher)<각주4> 로서 그 이용허락 권한을 위임받았다.

라. 이 사건 영화의 전 세계 배급권을 가지고 있는 이십세기폭스사<각주5> 는 2016. 1. 14. EMI 와 사이에 이 사건 영화에 삽입된 이 사건 음악저작물의 공연과 관련하여 다음과 같은 내용이 포함된 약정(이하 '이 사건 이용허락 약정'이라 한다)을 하였다.

<표0>

마. 피고는 이십세기폭스사의 국내 직배사인 이십세기폭스코리아 주식회사(이하 '이십세기폭스코리아'라고만 한다)로부터 이 사건 영화를 배급받은 뒤 이를 상영하고자 하였고, 이에 원고는 이 사건 음악저작물의 공연 사용료와 관련한 협의를 피고에게 요청하였다가 협의가 이루어지지 아니하자 2018. 10. 4. ASCAP, BMI, PRS로부터 저작권 사용료 징수를 요청받았고, 피고가 이 사건 음악

출처: lbox.kr/case/서울중앙지방법원/2019가합548861

저작물의 공연 관련 이용허락을 받지 않았다는 이유로 피고에게 협의 의사가 없을 경우 법적 조치를 취하겠다는 내용의 통지(이하 '이 사건 통지'라 한다)를 하였다.

바. 피고는 이 사건 통지를 받고도 원고와의 협의 없이 2018. 10. 31.경부터 영화상영관에서 관객들에게 이 사건 영화를 상영하였고(개봉 첫날 상영된 스크린 수는 268개이다), 상영에 따른 수익금 중 일정 비율로 계산한 금원을 정산하여 이십세기폭스코리아에 지급하였다.

사. 한편 원고는 음악저작물의 이용자로부터 받는 사용료의 요율 또는 금액을 정한 규정(이하 '이 사건 징수규정'이라 한다)을 문화체육관광부<각주6> 장관의 승인을 받아 1988. 2. 23. 제정하였는데,<각주7> 이 사건 징수규정은 그 후 여러 차례 변경되었고, 영화에 삽입되는 음악저작물의 공연 사용료와 관련한 현행 규정은 아래와 같으며, 원고가 관리하는 음악저작물을 영화에 사용하고자 하는 자는 원고가 정한 영화 사용신청서 양식에 따른 신청서를 작성하여 원고에게 제출한 뒤 이 사건 징수규정에 따라 산정된 이용료를 원고에게 지급하는 절차를 따르게 되어 있다.

<표1>

[인정 근거] 갑 제1 내지 4, 6 내지 10, 19, 20, 21, 24호증(가지번호 있는 것은 가지번호 포함, 이하 같다)의 각 기재, 변론 전체의 취지

2. 이 사건 청구원인

원고는 이 사건 음악저작물의 수탁자인 PRS로부터 이 사건 음악저작물의 공연권을 신탁적으로 양수하였다. 그런데 피고는 원고로부터 공연 허락을 받지 아니한 채 영화상영관에서 이 사건 영화를 상영하는 방법으로 이 사건 영화에 삽입된 이 사건 음악저작물을 공연하였는바, 피고의 이러한 공연행위는 원고가 보유한 이 사건 음악저작물의 공연권을 침해한 행위이다. 따라서 피고는 위 침해행위로 인하여 원고가 입은 손해를 배상할 책임이 있고, 원고는 저작권법 제125조 제2항에 따라 이 사건 음악저작권의 행사로 통상 받을 수 있는 금액 상당액인 112,158,000원 및 이에 대한 지연손해금의 지급을 손해배상으로 구한다.

3. 피고의 본안전항변에 대한 판단

가. 피고의 주장

출처: lbox.kr/case/서울중앙지방법원/2019가합548861

이 사건 음악저작물에 관한 공연권을 신탁받은 수탁자의 지위에 있음에 불과한 PRS는 그 신탁의 취지상 그 공연권 자체를 원고와 같은 다른 나라의 신탁관리단체에 다시 신탁적으로 양도할 권한이 없어 비록 원고와 PRS 사이의 상호관리계약의 내용에 공연권을 신탁할 수 있는 근거 조항이 포함되어 있다고 하더라도 이를 근거로 하여 PRS가 원고에게 공연권을 양도할 수는 없어 원고가 PRS로부터 이 사건 음악저작물의 공연권을 양수받았다고 볼 수 없다. 그렇다면 위 공연권에 대하여 관리처분권이 없어 간접적·경제적 이해관계인에 불과한 원고가 자기의 이름으로 제기한 이 사건 소는 비록 원고가 PRS로부터 소송수행권을 수여받았다고 하더라도 임의적 소송신탁에 해당하고, 이를 인정할 합리적 필요가 있다고 할 수 없어 당사자적격이 없다.

나. 판단

재산권상의 청구에 관하여는 소송물인 권리 또는 법률관계에 관하여 관리처분권을 갖는 권리주체에게 당사자적격이 있음이 원칙이다. 다만 제3자라고 하더라도 법률이 정하는 바에 따라 일정한 권리나 법률관계에 관하여 당사자적격이 부여되거나 본래의 권리주체로부터 그의 의사에 따라 소송수행권을 수여받음으로써 당사자적격이 인정되는 경우가 있으나, 이러한 임의적 소송신탁은 민사소송법 제87조가 정한 변호사대리의 원칙이나 신탁법 제7조가 정한 소송신탁의 금지를 잠탈하는 등의 탈법적 방법에 의하지 않은 것으로서 이를 인정할 합리적 필요가 있다고 인정되는 경우에 한하여 제한적으로만 허용된다(대법원 2012. 5. 10. 선고 2010다87474 판결 참조).

위 법리에 비추어 살피건대, ① 원고와 PRS는 모두 음악저작물의 저작자들로부터 저작권을 신탁받아 관리하는 단체로서 자신들이 관리하는 음악저작물의 법정 분쟁과 관련하여 자신의 이름으로 소송을 수행할 권한을 보유하고 있는 점, ② 그런데 원고와 PRS를 비롯한 ICSAC의 회원들은 자신들이 관리하는 음악저작물과 관련하여 자신들의 관리지역이 아닌 지역에서의 공연권의 원활한 행사를 위해서 지속적인 상호 협조를 할 필요가 있고, 그 협조의 일환으로 원고와 PRS는 위 인정 사실에서 본 바와 같이 상호관리계약을 체결하면서 상대방에게 공연권의 사용허락 권한을 부여하였으며, PRS는 더 나아가 원고에게 공연권 자체를 신탁하기까지 하였는데, 이러한 공연권 신탁은 자신이 관리하는 음악저작물의 효율적인 보호를 위하여 이루어졌고, 결과적으로 이 사건 음악저작자들의 법익의 보호에 기여하였다고 보일 뿐 이 사건 음악저작자들의 법익이 침해되었다고 볼 수 없어 그 신탁을 인정할 합리적 필요가 있는 점, ③ 따라서 위 신탁에 따라 원고는 PRS로부터 이 사건 음

출처: lbox.kr/case/서울중앙지방법원/2019가합548861

악저작물의 공연권을 적법하게 수탁받아 대외적으로 이를 행사할 적법한 권한을 보유하게 된 점,

④ 피고는 이 사건 음악저작물의 공연권의 보유자는 PRS가 아닌 EMI로 볼 수밖에 없다는 취지의 주장을 하나 뒤에서 보는 바와 같이 EMI의 공연권의 범위는 미국과 미국령 내로 제한되고, 그 외의 지역에 대해서는 그 공연권의 효력이 미치지 아니하며, 미국과 미국령을 제외한 나머지 세계 지역에 대한 공연권은 PRS가 보유하고 있다고 보이며 위 지역에 대하여 PRS가 아닌 다른 단체가 공연권을 보유하고 있다고 볼 아무런 정황도 나타나지 아니한 점 등에 비추어 보면 PRS로부터 이 사건 음악저작물의 공연권을 신탁받은 원고는 공연권의 관리처분권 행사의 일환으로 자신의 이름으로 이 사건 음악저작물의 공연권 침해에 따른 손해배상의 소를 제기할 수 있다 할 것이고, 이러한 소송행위의 수행이 민사소송법 제87조가 정한 변호사대리의 원칙이나 신탁법 제7조가 정한 소송신탁의 금지를 잠탈하였다고 볼 수 없어 피고의 위 주장은 이유 없다.

4. 본안에 대한 판단 중 손해배상청구권의 성립 여부에 대한 판단

가. 공연권 침해에 따른 손해배상청구권의 성립

원고가 PRS로부터 이 사건 음악저작물의 공연권을 적법하게 수탁받은 공연권자임은 앞서 본 바와 같고, 피고가 이 사건 영화를 영화관에서 공개적으로 상영한 행위는 이 사건 음악저작물을 공연한 행위에 해당한다. 따라서 피고가 PRS나 원고로부터 위 공연을 허락받았다고 볼 만한 특별한 사정이 없는 한 위 공연행위는 이 사건 음악저작물에 관한 공연권을 침해한 불법행위에 해당하고, 피고는 공연권 침해로 인한 손해를 배상할 책임이 있다.

나. 피고가 이 사건 음악저작물의 공연을 허락받았는지 여부에 대한 판단

1) 피고의 주장

EMI는 PRS와 별도로 미국과 미국령은 물론 그 이외의 전 세계 지역에서 이 사건 음악저작물의 공연을 허락할 권한을 보유하고 있어 EMI와 이 사건 이용허락 약정을 체결한 이십세기폭스사는 위 약정에 따라 EMI로부터 대한민국에서의 이 사건 음악저작물의 공연을 허락받았다고 할 것이며, 이십세기폭스사의 자회사인 이십세기폭스코리아로부터 이 사건 영화를 배급받은 피고 역시 위 공연허락에 근거하여 이 사건 음악저작물을 공연할 권한이 있다(피고가 이 사건 영화 상영과 관련하여 이십세기폭스코리아에 지급한 대가에는 이 사건 음악저작물의 공연에 대한 대가까지 포함되어 있다). 따라서 이 사건 영화 상영과 관련하여 이 사건 음악저작물을 공연할 권한을 가지고 있는 피고

출처: lbox.kr/case/서울중앙지방법원/2019가합548861

는 원고에 대하여 손해배상책임을 부담하지 아니한다.

2) 판단

살피건대, 을 제4, 5호증의 각 기재에 의하면, 피고가 이십세기폭스코리아로부터 이 사건 영화를 국내 영화관에서 상영할 수 있도록 허락을 받은 사실이 인정되고 반증이 없으나 더 나아가 영화 상영과 별도로 이십세기폭스사가 EMI로부터 국내에서의 이 사건 음악저작물 공연을 허락받았다거나 피고가 위 공연을 할 적법할 권한이 있다는 것을 인정할 아무런 증거가 없고, 오히려 앞서 본 인정사실 및 이에 더하여 갑 제5, 11, 14 내지 18, 22호증의 각 기재에 변론 전체의 취지를 종합하여 인정되는 다음과 같은 사정들을 감안할 때 이십세기폭스사는 EMI로부터 이 사건 음악저작물의 국내에서의 공연을 허락받지 않았다고 판단된다.

가) 이 사건 이용허락 약정에 따르면 이십세기폭스사가 EMI로부터 이 사건 음악저작물을 공연하거나 제3자에게 공연하게 할 수 있는 권한을 EMI로부터 부여받은 지역적 범위는 아래에서 보는 바와 같이 미국과 미국령 내로 제한될 뿐 그 외 지역은 포함되지 않는다.<각주8>

<표2>

나) 오히려 이 사건 이용허락 약정에 따르면 미국과 미국령 외의 다른 지역에서의 공연 및 해외단체 <각주9> 에 의한 승인에 대하여는 아래에서 보는 바와 같이 그 지역의 관례적 관행이나 관례적 비용의 지불에 따르도록 되어 있는바, 이는 EMI의 권한의 지역적 범위가 미국과 미국령 내에 제한됨을 전제로 하여 그 외의 다른 지역에서의 공연 등에 대해서는 이 사건 이용허락 약정이 적용되지 않는다는 것을 명시한 것으로 볼 수 있어 대한민국에서의 공연과 관련하여 EMI는 이 사건 음악저작물의 공연을 허락할 권한이 없다고 판단된다.

<표3>

다) EMI가 2021. 1. 21. 원고에게 보낸 회신(갑 제22호증)에 따르면 EMI는 미국 지역에 한하여 이 사건 영화에 삽입된 이 사건 음악저작물의 공연을 허락하였고, 미국 이외 지역에서의 공연을 허

출처: lbox.kr/case/서울중앙지방법원/2019가합548861

락하지 않는다는 의견을 표명하였다.

라) 아래에서 보는 사정에 비추어 볼 때 국내에서 상영되는 해외 영화와 관련하여 영화관 사업자들에게 그 영화 작품에 삽입된 음악의 공연이 허락되었다거나 공연 사용료를 지급하지 않아도 되는 관행이 존재한다고 볼 수 없다.

(1) 미국 외의 지역으로서 오스트레일리아, 포르투갈, 스페인, 멕시코 등 여러 나라에서 PRS가 관리하는 음악저작물이 삽입된 영화가 상영되는 경우 해당 국가의 저작권 신탁관리단체들이 공연 사용료를 별도로 징수하여 이를 PRS에 분배하고 있고, 원고가 관리하는 음악저작물이 삽입된 영화가 외국에서 상영되는 경우 해당 국가의 저작권 신탁관리단체가 공연 사용료를 징수하여 원고에게 분배하고 있으며, ASCAP와 같은 외국의 저작권 신탁관리단체들은 국내에서의 해외 영화 상영에 의한 음악저작물의 공연 사용료를 징수할 것을 원고에게 요청하고 있다.

(2) 이십세기폭스사는 대한민국을 비롯한 아시아 태평양 지역에 자신이 배급하는 영화의 상영과 관련하여 영화에 삽입된 음악저작물의 공연 허락을 승인하는 관행이나 선례가 존재하지 않고, 위 허락과 그에 따른 공연 이용료 지급은 해당 영화를 상영하는 사업자와 해당 지역의 공연권 관리단체가 협의할 문제라는 의견을 표명하였다.

(3) 피고는 수입 영화에 삽입된 음악저작물의 공연 사용료를 징수하는 절차가 국내에서 마련되어 있지 않고, 국내 영화 상영관 사업자가 영화 상영 단계에서 공연 허락을 얻는 것도 사실상 불가능한 현실 때문에 공연 사용료를 지급하지 않는 관례가 형성되었다고 주장한다. 그러나 영화에 삽입된 음악저작물의 공연 사용료 징수 근거 규정으로 이 사건 징수규정 제34조 제2항이 마련되어 있음은 앞서 본 바와 같은바, 위 규정이 국산 영화에만 적용되고, 수입 영화에는 적용되지 않는다고 볼만한 합리적 이유가 없어 위 규정에 따라 이 사건 영화의 공연 사용료 징수가 가능하다고 할 것이어서 피고의 위 주장은 받아들일 수 없다.

(4) 을 제12호증의 기재에 의하면, PRS가 2016. 3. 30. 문화체육관광부에 국산 영화와 달리 수입 영화에 삽입되는 음악저작물의 공연권이 제대로 보호받지 못한다며 이에 대한 개선을 촉구하는 내용의 공문을 보냈는데, 그 공문의 내용 중에 "그러나 우리는 원고(KOMCA)가 국산 영화에 한해서만 음악 권리 처리를 승인받았고, 한국 극장에서 상영된 수입 영화의 음악 권리 처리는 아직 금지되었다는 사실을 알고 있습니다."<각주10> 라는 표현이 포함되어 있는 사실이 인정된다. 피고는 이

출처: lbox.kr/case/서울중앙지방법원/2019가합548861

를 근거로 하여 국내에서는 수입 영화의 공연 사용료 징수가 금지되어 있었고, 이러한 사정을 잘 알고 있던 PRS 역시 이 사건 소 제기 이전에 원고에게 공연 사용료의 지급을 청구하지 않았다며 해외 영화 관련 음악저작물의 공연 사용료를 지급하지 않아도 되는 관행이 국내에 존재한다고 주장한다. 살피건대, 위 공문에 '한국 극장에서 상영된 수입 영화의 음악 권리 처리는 아직 금지되었다는 사실 (....is still prohibited from licensing the use of music in foreign films when shown in Korean cinemas)'이란 표현이 포함되어 있으나 이는 국산 영화와 달리 수입 영화에 삽입된 음악저작물의 공연권이 제대로 보호받지 못하는 국내의 현실을 지적하는 과정에서 나온 표현에 불과할 뿐 이를 근거로 수입 영화의 공연 사용료 징수가 국내에서 금지되어 왔다고 볼 수는 없어 피고의 위 주장은 이유 없다.

(5) 피고는 이 사건 징수규정의 개정 과정 등을 감안할 때 국산 영화의 경우 영화제작자가 영화의 제작 단계에서 음악저작물의 복제와 공연에 대한 일괄 허락을 받는 관례가, 수입 영화의 경우 상영 단계 전에 공연을 포함한 모든 권리처리가 이루어지고 상영 단계에서는 별도의 공연 허락이 이루어지지 않는 관례가 정립되었다는 취지로 주장한다. 살피건대, 갑 제26, 27호증, 을 제6, 7, 13 내지 17, 21, 22호증의 각 기재에 의하면, ① 2011년경 당시 시행되던 이 사건 징수규정에 영화에 사용되는 음악저작물의 공연 사용료 징수 사항을 신설하려는 논의가 있었고, 그 과정에서 원고와 영화계 사이에 갈등이 발생하였던 사실, ② 위 논의를 반영하여 이 사건 징수규정이 2012. 3. 15. 개정되었는데, 개정 규정에 따르면 음악저작물의 공연 사용료는 별도의 특약이 없이 복제·배포·공연을 일괄적으로 허락할 경우에는 원고와 사용자의 협의에 따라 정하되, 공연을 별도로 허락하기로 하는 특약이 있는 경우 그 산정 기준<각주11> 을 따로 정하였는데, 위 개정 규정에 대하여 피고를 비롯한 영화계는 반발을 하면서 2012. 4.경 영화음악저작권대책위원회(이하 '영대위'라 한다)를 결성한 사실, ③ 이에 원고와 영대위는 문화체육관광부와 함께 여러 차례 협상을 거쳐 2012. 9. 4. 원고가 음악저작물의 복제·배포·공연을 일괄적으로 허락하는 경우의 사용료 산정 기준<각주12> 에 대한 합의를 도출하였고, 위 합의를 반영하여 2014. 11. 17. 이 사건 징수규정이 개정<각주13> 된 사실, ④ 한편 2014. 10.경 문화체육관광부 주도 아래 영화 상영의 거래 관계에 있어 표준계약 기준을 설정하고, 공정한 거래질서를 형성하기 위하는 목적으로 영화 상영 분야에 있어서 영화 배급자와 영화 상영자 사이의 계약을 규율하는 내용의 표준계약서가 마련되었는데 위 표준계약서에

출처: lbox.kr/case/서울중앙지방법원/2019가합548861

따르면 영화에 포함되거나 사용된 음악저작물에 대해 배급자는 해당 음악저작물의 복제권과 공연권을 보유하고 있고, 상영자에게 그에 대한 이용을 허락할 수 있는 권리가 있음을 보증하며, 상영자가 이에 대한 증빙을 요청하는 경우 관련 서류를 제공하도록 되어 있었던 사실은 인정된다. 그러나 ① 이 사건 징수규정이 위와 같이 개정되어 현재까지 이르는 동안 음악저작물의 공연만을 별도로 허락하기로 하는 경우에 그 공연 사용료 산정 방법에 대한 규정은 계속해서 존재하여 왔던 점, ② 피고는 위 규정 중 2012. 3. 15. 자 개정 규정에서 공연만을 별도 허락할 경우 공연 사용료의 납부 주체가 영화 상영자가 아닌 영화 제작자로 규정되어 있다는 것을 위 관례의 근거로 들고 있는바, 위 개정 규정에 피고 주장의 내용이 포함된 사실은 인정되나 그 후 개정된 이 사건 징수규정에는 그 내용이 빠지게 된 점, ③ 원고는 위 표준계약서의 계약당사자의 지위에 있지 아니한 점 등을 감안할 때 위 인정 사실과 을 제8, 18, 19, 20, 23, 24호증의 각 기재만으로는 피고 주장의 관례가 성립되었다고 보기 어렵다.

다. EMI가 이십세기폭스사에 이 사건 영화 상영을 허락하였음이 추정되는지 여부에 대한 판단

1) 근거 규정

저작권법

제99조(저작물의 영상화)

① 저작재산권자가 저작물의 영상화를 다른 사람에게 허락한 경우에 특약이 없는 때에는 다음 각호의 권리를 포함하여 허락한 것으로 추정한다.

2. 공개상영을 목적으로 한 영상저작물을 공개상영하는 것

2) 당사자의 주장

가) 피고의 주장

(1) 이 사건 음악저작자들로부터 이 사건 음악저작물의 공연을 허락할 권리를 위임받은 EMI는 이 사건 이용허락 약정을 통해 이십세기폭스사에 이 사건 음악저작물을 이 사건 영화로 영상화하는 것을 허락하였고, 저작권법 제99조 제1항 제2호에 따라 EMI는 이 사건 음악저작물이 영상화된 이 사건 영화를 공개상영하는 권리를 포함하여 허락한 것으로 추정된다. 그렇다면 EMI의 허락에 근거하여 이 사건 영화를 상영한 피고의 행위를 공연권 침해로 볼 수 없다.

(2) 지식재산권의 보호는 그 침해지법에 의하고(국제사법 제24조), 보호의 범위와 저작권자의 권리

출처: lbox.kr/case/서울중앙지방법원/2019가합548861

를 보호하기 위하여 주어지는 구제의 방법은 오로지 보호가 주장되는 국가의 법률적 지배를 받도록
한 WIPO<각주14> 조약 제3조 및 베른 협약 제5조 제2항을 감안할 때 대한민국법인 저작권법 제
99조 제1항이 이 사건 원고 청구의 준거법으로 적용된다.

나) 원고의 주장

(1) 준거법의 적용과 관련하여 피고의 저작권 침해에 대하여는 대한민국의 법이 적용되나 이 사건
이용허락 약정에 대하여는 국제사법 제26조 제1항, 제2항 제2호에 따라 위 약정과 가장 밀접한 관
련이 있는 국가인 미국의 법이 적용되고, 저작권법 제99조 제1항은 그 적용이 없다.

(2) 가사 피고 주장과 같이 이 사건에 저작권법 제99조 제1항이 준거법으로 적용되어 EMI가 이십
세기폭스사에 이 사건 영화를 공개상영하는 것을 허락하였음이 추정된다고 하더라도 EMI와 이십
세기폭스사 사이에는 이 사건 음악저작물을 공연할 수 있는 권한의 범위를 미국과 미국령으로 제한
하는 특약이 존재하므로 국내에서의 영화 상영을 EMI가 허락하지 않았다고 보아야 한다.

3) 판단

살피건대, 가사 피고 주장과 같이 이 사건에 저작권법 제99조 제1항이 준거법으로 적용되어 EMI
가 이십세기폭스사에 이 사건 영화를 공개상영하는 것을 허락하였음이 추정된다고 하더라도 앞서
본 바와 같이 이 사건 이용허락 약정에서 이십세기폭스사가 이 사건 음악저작물을 공연할 권리와 제
3자에게 공연을 허락할 수 있는 권리의 지역적 범위를 미국 및 미국령 내로 분명하게 한정하고 있
고, 미국 이외의 지역에서의 공연은 그들의 관례적 관행과 관례적 비용의 지불에 따르도록 되어 있
어 대한민국과 같은 미국 외의 지역에서는 위와 같은 허락이 미치지 않음을 명백하게 하고 있는 점
을 감안할 때 이 사건 이용허락 약정에는 대한민국과 같이 미국 및 미국령이 아닌 지역에서의 영화
상영은 허락의 범위에서 제외한다는 내용의 특약이 존재한다고 판단되고, 결과적으로 위 추정이 복
멸되었다고 할 것이어서 원고의 위 주장은 이유 있고, 결과적으로 피고의 위 주장은 이유 없다.

라. 공연 사용료 징수의 근거 규정 결여로 인하여 공연 사용료 지급 의무가 발생하지 않는다는 주장
에 대한 판단

1) 피고의 주장

이 사건 징수규정 제34조는 국산 영화만을 대상으로 할 뿐 이 사건 영화와 같은 수입 영화를 대상으
로 하지 아니하여 수입 영화에 대한 사용료 징수규정은 존재하지 않는다. 이와 같이 사용료 징수규

출처: lbox.kr/case/서울중앙지방법원/2019가합548861

정이 존재하지 않는 상황에서 피고의 공연 사용료의 구체적인 납부 의무도 발생하지 아니한다.

2) 판단

저작권법 제105조 제9항 전문은 저작권위탁관리업자의 사용료 징수를 통제하기 위하여 '저작권위탁관리업자가 이용자로부터 받는 사용료의 요율 또는 금액은 저작권위탁관리업자가 문화체육관광부장관의 승인을 얻어 이를 정한다.'고 규정하고 있다. 위 규정의 입법 취지와 문언 내용에 비추어 보면, 위 규정은 저작권위탁관리업자가 저작물 이용자들과 이용계약을 체결하고 그 계약에 따라 사용료를 지급받는 경우에 적용되는 규정일 뿐, 저작권위탁관리업자가 법원에 저작권 침해를 원인으로 민사소송을 제기하여 그 손해배상을 청구하는 행위를 제한하는 규정이라고 해석되지 않으므로, 설령 위 규정에 따라 승인받은 사용료의 요율 또는 금액이 없다고 하더라도 저작권 침해를 원인으로 한 손해배상청구권을 행사하는 데 아무런 장애가 되지 않는다(대법원 2016. 8. 24. 선고 2016다204653 판결 참조). 이 사건 징수규정 제34조가 국산 영화는 물론 해외에서 수입 영화도 그 규율 대상으로 하고 있다는 점은 앞서 본 바와 같고, 가사 피고 주장과 같이 위 규정이 수입 영화를 그 규율 대상으로 하지 않는다고 하더라도 위 법리를 감안할 때 이 사건과 같이 원고가 저작권 침해를 원인으로 한 민사소송을 제기하여 그 손해배상을 청구하는 사안에서 구체적인 징수규정이 마련되어 있지 않다는 이유로 손해배상청구를 할 수 없다고 볼 수도 없어 피고의 위 주장은 이유 없다.

마. 소결

그렇다면 피고는 원고로부터 공연 허락을 받지 아니한 채 영화상영관에서 이 사건 영화를 상영하는 방법으로 이 사건 영화에 삽입된 이 사건 음악저작물을 공연하였는바, 피고의 이러한 공연행위는 원고가 보유한 이 사건 음악저작물의 공연권을 침해하는 행위이고, 원고로부터 위 행위가 원고의 공연권을 침해하고 있으니 사용료를 지급해 달라는 이 사건 통지를 받고도 사용료 지급을 위한 별다른 노력을 하지 아니한 점에 비추어 볼 때 그 침해행위에 대한 과실도 인정된다고 판단된다.

5. 본안에 대한 판단 중 손해액 산정 부분에 대한 판단

가. 원고의 주장

피고가 이 사건 영화를 상영하는 방법으로 이 사건 음악저작물을 공연한 경우에 있어 이 사건 징수규정에 따라 산정한 공연 사용료는 112,158,000원 상당이므로 원고는 손해배상으로 위 금원 및 이에 대한 지연손해금의 지급을 구한다.

- 1 3 -

출처: lbox.kr/case/서울중앙지방법원/2019가합548861

나. 판단

1) 저작재산권자 등이 고의 또는 과실로 그 권리를 침해한 자에게 그 침해행위로 자기가 받은 손해의 배상을 청구하는 경우에 그 권리의 행사로 통상 받을 수 있는 금액에 상당하는 액을 저작재산권자 등이 받은 손해의 액으로 하여 손해배상을 청구할 수 있고[구 저작권법(2021. 5. 18. 법률 제18162호로 개정되기 전의 것, 이하 '구 저작권법'이라고만 한다) 제125조 제2항], 여기서 권리의 행사로 통상 받을 수 있는 금액에 상당하는 액이라 함은 침해자가 저작물의 사용허락을 받았더라면 사용대가로서 지급하였을 객관적으로 상당한 금액을 말한다고 보아야 할 것이며, 저작물은 작품성과 대중 인기도에 차이가 있어 저작권자로서는 저작물을 사용하고자 하는 자와 사이에 저작물사용계약을 체결하면서 나름대로의 사용료를 정할 수 있는 것이므로, 저작권자가 당해 저작물에 관하여 사용계약을 체결하거나 사용료를 받은 적이 전혀 없는 경우라면 일응 그 업계에서 일반화되어 있는 사용료를 저작권 침해로 인한 손해액 산정에 있어서 기준으로 삼을 수 있겠지만, 저작권자가 침해행위와 유사한 형태의 저작물 사용과 관련하여 저작물사용계약을 맺고 사용료를 받은 사례가 있는 경우라면, 그 사용료가 특별히 예외적인 사정이 있어 이례적으로 높게 책정된 것이라거나 저작권 침해로 인한 손해배상청구 소송에 영향을 미치기 위하여 상대방과 통모하여 비정상적으로 고액으로 정한 것이라는 등의 특별한 사정이 없는 한, 그 사용계약에서 정해진 사용료를 저작권자가 그 권리의 행사로 통상 얻을 수 있는 금액으로 보아 이를 기준으로 손해액을 산정함이 상당하다(대법원 2001. 11. 30. 선고 99다69631 판결, 대법원 2013. 6. 27. 선고 2012다104137 판결 참조).

2) 위 법리 및 이에 더하여 위 인정 사실 및 앞서 채용한 증거들에 변론 전체의 취지를 종합하여 인정되는 다음과 같은 사정들을 감안할 때 원고가 피고에게 이 사건 영화를 상영하는 방법으로 이 사건 음악저작물을 공연하는 것을 허락하였을 경우 피고로부터 통상 받을 수 있었던 액수가 112,158,000원 상당임이 인정되고, 원고는 구 저작권법 제125조 제2항에 따라 위 금원 상당액을 손해배상으로 구할 수 있다 할 것이다.

가) 이 사건 징수규정 제34조 제2항은 영화에 음악저작물을 이용하는 경우 중 복제·배포·공연 등을 일괄적으로 허용하는 경우가 아니라 공연 등을 별도로 허락하기로 하는 특약이 있는 경우를 규율하는 조항으로 국내에서 제작된 국산 영화뿐만 아니라 수입 영화도 그 규율 대상에 포함된다고 판단된다.

- 1 4 -

출처: lbox.kr/case/서울중앙지방법원/2019가합548861

나) 그런데 이 사건 이용허락 약정 당시 미국 및 미국령이 아닌 지역에서는 이십세기폭스사가 이 사건 음악저작물을 공연하거나 제3자에게 공연을 할 권리를 부여하는 권리를 배제하는 내용의 특약이 존재하였음은 앞서 본 바와 같다. 따라서 이 사건 음악저작물의 공연에 있어 위 제34조 제2항이 적용되어 이 사건 음악저작물의 공연 사용료를 같은 항에 따라 산정할 수 있는데,<각주15> 같은 항의 비고1)에 따른 공연 사용료 산정식은 13,500원<각주16> × 개봉 첫날 스크린 수 × 지분율이 되고, 위 산정식에 이 사건 영화의 개봉 첫날 스크린 수 268과 지분율 1<각주17> 을 대입하면 이 사건 음악저작물 1곡당 3,618,000원이 되며, 이 사건 음악저작물은 모두 31곡이므로 이 사건 음악저작물 전체의 사용료는 112,158,000원(= 3,618,000원 × 31)이 된다.

6. 결론

그렇다면 피고는 원고에게 손해배상금으로 112,158,000원 및 이에 대하여 권리 침해일 이후로서 원고가 구하는 바에 따라 이 사건 소장 부본 송달 다음 날인 2019. 7. 31.부터 다 갚는 날까지 소송촉진 등에 관한 특례법이 정한 연 12%의 비율로 계산한 지연손해금을 지급할 의무가 있으므로, 이 사건 청구는 이유 있어 이를 인용하기로 하여 주문과 같이 판결한다.

[별 지] 표: 생략


판사 이민수(재판장) 이태웅 박찬석

---

각주1: 원고의 관리지역은 대한민국이고, PRS의 관리지역은 영국 등을 비롯한 52개 지역이다.

각주2: Film Synchronization Rights, 영화의 영상 중 한 부분에 특정 음악을 배경음악으로 삽입하여 사용하는 권리

각주3: 한편 이 사건 음악저작자들 중 Frederick Mercury는 1991년경 사망하였고, 그의 유언집행자들이 신탁업무를 처리하였다.

각주4: 음원의 저작권자를 대행하여 영화에 삽입되는 음악저작물의 공연이나 싱크로나이제이션 업무를 수행하는 자를 의미한다. 미국에서는 ASCAP(미국작사자작곡자출판자협회), BMI(미국방송음악가협회) 등과 같은 저작권 신탁관리단체가 아니라 퍼블리셔가 위 업무를 대행한다.

각주5: Twentieth Century Fox Film Corporation

출처: lbox.kr/case/서울중앙지방법원/2019가합548861

각주6: 본래는 문화공보부였는데 문화부와 공보처로 분리된 뒤 다시 체육청소년부를 합쳐 문화체육부가 되었다가 문화관광부를 거쳐 현재의 문화체육관광부가 되었다.

각주7: 원고와 같은 저작권신탁관리업자는 저작물의 이용자로부터 받는 사용료의 요율 또는 금액을 문화체육관광부장관의 승인을 받아 정할 수 있다(저작권법 제105조 제9항 전문).

각주8: 피고는 이 사건 이용허락 약정에 따른 지역적 범위가 미국과 미국령을 넘어 전 세계 지역에 이른다고 주장하나 이를 인정할 합리적 근거를 제시하지 못하고 있다.

각주9: foreign societies, 해당 국가의 저작권 신탁관리단체를 의미하는 것으로 보인다.

각주10: However, we understand that KOMCA has been granted the right to license only domestic films and is still prohibited from licensing the use of music in foreign films when shown in Korean cinemas.

각주11: 해당 영화 관람객 수 × 평균관람료 × 0.97(영화상영관 입장권 부가금 공제) × 음악사용료율

각주12: 복제 사용료를 300만 원으로, 공연 사용료를 (스크린당 곡단가 × 개봉 첫날 스크린 수)로 각 정한 후, 복제·배포·공연 등을 일괄적으로 허락하는 경우에는 위 두 금액을 합친 [300만 원 + (스크린당 곡단가 × 개봉 첫날 스크린 수)]의 산식으로 산정하도록 되어 있다.

각주13: 공연을 별도로 허락하기로 하는 특약이 있는 경우의 공연 사용료는 (스크린당 곡단가 × 개봉 첫날 스크린 수) × 지분율로 산정하도록 되어 있다.

각주14: World Intellectual Property Organization, 세계지적재산권기구

각주15: 같은 항은 복제 사용료와 공연 사용료에 대하여 규정하고 있는데, 복제 사용료는 영화제 출품 작품과 관련하여 표로 규정하고 있고, 공연 사용료는 비고1)에서 규정하고 있다. 피고는 비고1)이 영화제 출품 영화에 한정하여 적용된다고 주장하나 이 사건 징수규정의 문언 해석상 피고의 주장은 받아들이기 어렵다.

각주16: 스크린당 곡단가

각주17: 원고는 이 사건 음악저작물과 관련하여 개별 음악저작물마다 PRS로부터 전체 지분을 신탁받았다.