# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| JOE ANDREW SALAZAR, § <br> § <br> *Plaintiff*, § <br> § <br> v. § <br> § <br> AT&T MOBILITY LLC, SPRINT UNITED § <br> MANAGEMENT COMPANY, T-MOBILE § <br> USA INC, CELLCO PARTNERSHIP, INC. § <br> D/B/A VERIZON WIRELESS, INC., § <br> § <br> *Defendants*. § | CIVIL ACTION NO. 2:20-CV-00004-JRG |

# ORDER

Before the Court is Plaintiff Joe Andrew Salazar's Motion for Partial Summary Judgment That 35 U.S.C. § 287 is Not Applicable in This Case ("Salazar's Marking MSJ") filed by Plaintiff Joe Andrew Salazar ("Salazar"). (Dkt. No. 144). In Salazar's Marking MSJ, Salazar seeks summary judgment regarding the application of 35 U.S.C. § 287, commonly known as the patent marking statute. After careful consideration of the briefing (Dkt. Nos. 144, 154, 166, 174), the Court concludes that Salazar's Marking MSJ should be **GRANTED**.

## I. INTRODUCTION

Plaintiff Joe Andrew Salazar sued Defendants AT&T Mobility LLC, Sprint United Management Company, T-Mobile USA Inc., Cellco Partnership, Inc. D/B/A Verizon Wireless, Inc. (collectively, "Defendants") for infringing U.S. Patent No. 5,802,467 (the "'467 Patent") by selling certain cell phones manufactured by HTC. (Dkt. No. 1). In response, Defendants filed a Motion to Dismiss under Rule 12(b)(6) (Dkt. No. 27) but have not yet filed an answer. HTC Corp. (the manufacturer of the accused products) and HTC America, Inc. (the importer and

distributor of the accused products) (collectively, "Intervenors") have since intervened in the case. (Dkt. Nos. 67, 70). Salazar previously sued HTC Corp. in 2016, alleging infringement of the '467 Patent by the same accused products. *See Salazar v. HTC, Corp.*, 2:16-cv-01096-JRG ("*Salazar I*").

In *Salazar I*, Salazar alleged that Innovative Intelcom Industries ("I3"), a company Salazar co-founded, sold three products that embodied the inventions disclosed and claimed in the '467 Patent: the Model Hughes Remote Phone, the 650D My One Remote, and the My1Remote (collectively, "the I3 Products"). (*Salazar I*, Dkt. No. 17 at ¶ 11; Dkt. No. 44 at ¶ 13). Salazar also alleged that he marked these products with the patent number of the '467 Patent. (*Id.*). In the present action, Salazar testified that the I3 Products did not practice the asserted claims of the '467 Patent, and Salazar has not asserted that any practicing products were ever sold. (Dkt. No. 144 at 8).

Salazar moves for summary judgment that § 287 is not applicable in this case and argues that Defendants have failed to satisfy their burden under *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017) to identify specific alleged unmarked products. Defendants dispute that they had an affirmative burden under *Arctic Cat*, in view of Salazar's contentions with respect to marking in *Salazar I*. The parties also dispute whether the I3 Products practice the claims of the '467 Patent.

## II. LEGAL AUTHORITY

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of

material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

"[A]n alleged infringer who challenges the patentee's compliance with § 287 bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287." *Arctic Cat*, 876 F.3d at 1368. This is a "low bar"; the alleged infringer "need only put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent." *Id*. After the alleged infringer meets this burden, "the patentee bears the burden to prove the products identified do not practice the patented invention." *Id*. Compliance with § 287(a)'s marking requirements is a question of fact. *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010).

### III.    ANALYSIS

Salazar argues that Defendants have failed to satisfy their burden of production under *Arctic Cat* "to articulate the products they believe are marked patented articles subject to § 287." (Dkt. No. 144 at 6). Salazar asserts that Defendants' sole reference to a marking obligation during this litigation was in their initial disclosures, where they contended that "Plaintiff's claim for damages is statutorily limited by 35 U.S.C. §§ 286 and/or 287" and disclosed that individuals formerly at I3 had information relevant to "efforts (if any) to comply with Section 287.'" (Dkt. No. 144 at 4). Salazar also points out that the Intervenors never identified any alleged unmarked products—or even raised the marking issue at all—in their Complaint In Intervention (Dkt. No. 70). (*Id*. at 7 n.2).

Additionally, Salazar argues that the I3 Products are not "patented articles" within the meaning of § 287 and thus do not trigger the marking requirement. Salazar notes that the I3 Products consisted of a charging base and a separate handset, and contends that the '467 Patent

3

number was mistakenly affixed to the charging base, not the handset. According to the testimony of Salazar, Salazar's co-inventor (Luis Molero-Castro), and Salazar's expert (Dr. Oded Gottesman), none of the I3 Products included an "infra-red frequency transceiver" as required by the claims. (Dkt. No. 144 at 4–5).

Defendants respond that based on the facts disclosed in *Salazar I*, "Defendants were under no obligation to identify any I3 Products because Salazar marked the charging base of all of them with the '467 Patent." (Dkt. No. 154 at 16). Defendants point out that in *Salazar I*, Salazar asserted repeatedly that the I3 Products practiced the claims of the '467 Patent and were properly marked with the '467 Patent number. (*Salazar I*, Dkt. No. 17 at ¶ 11; Dkt. No. 44 at ¶ 13). Defendants rely on the Court's decision in *Salazar I*, holding that an alleged infringer is not required "to simply parrot back an identification of the products the patentee claims are properly marked." *Salazar v. HTC Corp.*, No. 2:16-CV-01096-JRG-RSP, 2018 WL 2041732, at *3 (E.D. Tex. May 1, 2018). Alternatively, Defendants argue that they satisfied the *Arctic Cat* burden of production with their initial disclosures where they alleged that Salazar's damages are limited by § 287. (Dkt. No. 154 at 17).

The Court is persuaded that Defendants have failed to satisfy their burden of production under *Arctic Cat*. Despite Salazar's statements to the contrary in *Salazar I*, Salazar has maintained throughout this litigation that I3 never sold products that practiced the claims of the '467 Patent, and thus never failed to mark "patented articles" under § 287. It is undisputed that the only time Defendants referenced marking during this litigation was in their initial disclosures, where they stated that "Plaintiff's claim for damages is statutorily limited by 35 U.S.C. §§ 286 and/or 287." (Dkt. No. 154 at 17; Dkt. No. 166 at 5). Likewise, Intervenors HTC Corp. and HTC America, Inc. failed to identify any alleged unmarked products—or even mention compliance with § 287—in

4

their Complaint In Intervention. (Dkt. No. 70). Therefore, neither Defendants nor Intervenors have communicated to Salazar—in a pleading, response, letter, or otherwise—an identification of the specific products which are alleged to be unmarked.

The Court's decision in *Salazar I* is distinguishable because there, Salazar had asserted that the I3 Products practiced the claims of the '467 Patent and were properly marked. Salazar has made no such assertion in this litigation. Where, as in *Salazar I*, the patentee contends that commercial products were sold that practiced the patent, and claims that those products were properly marked, the alleged infringer is not required "to simply parrot back an identification of the products the patentee claims are properly marked." *HTC Corp.*, 2018 WL 2041732, at *3. However, where, as here, an alleged infringer asserts that a marking obligation exists, but the patentee denies such an obligation, *Arctic Cat* requires the defendant to "articulate the products it believes are unmarked 'patented articles' subject to § 287." *Arctic Cat*, 876 F.3d at 1368. To hold otherwise would undermine a primary purpose of *Arctic Cat*'s burden of production—limiting the universe of products for which the patentee must establish marking compliance. *Id*. Defendants have failed to clear even the "low bar" of *Arctic Cat*'s burden of production and have failed to "put the patentee on notice that he or his authorized licensees sold specific unmarked products which the alleged infringer believes practice the patent." *Id*. Therefore, Salazar is entitled to summary judgment that § 287 is inapplicable in this case.

IV.   **CONCLUSION**

For the foregoing reasons, Salazar's Marking MSJ is hereby **GRANTED**.

**So Ordered this**
**May 25, 2021**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

5