# Exhibit 7

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br> *Plaintiff,* <br> v. <br> HP INC., <br> *Defendant.* | Case No. 2:24-cv-00752-JRG-RSP [Lead Case] <br><br> Case No. 2:24-cv-00764-JRG [Member Case] |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br> *Plaintiff,* <br> v. <br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. <br> *Defendants.* | Case No. 2:24-cv-00746-JRG [Member Case] <br><br> Case No. 2:24-cv-00765-JRG [Member Case] |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br> *Plaintiff,* <br> v. <br> ASKEY COMPUTER CORP., ASKEY INTERNATIONAL CORP. <br> *Defendants.* | Case No. 2:24-cv-00766-JRG [Member Case] <br><br> Case No. 2:24-cv-00753-JRG-RSP [Member Case] |

**CORRECTED EXPERT REPORT OF ERIK DE LA IGLESIA
REGARDING VALIDITY**

By: */s/ Erik De La Iglesia*

Erik De La Iglesia

Executed on February 19, 2026 under penalty of perjury in: Mountain View, CA

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

# TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

    A.  Retention .....................................................................................................1

    B.  Qualifications ..............................................................................................2

    C.  Materials Considered ..................................................................................2

    D.  Legal Principles ..........................................................................................3

    E.  Claim Construction ...................................................................................11

    F.  Level of Ordinary Skill .............................................................................11

    G.  Patent Background .....................................................................................11

II.  SUMMARY OF OPINIONS .................................................................................11

    A.  The '077 Patent .........................................................................................11

    B.  The '281 Patent .........................................................................................12

    C.  The '595 Patent .........................................................................................12

    D.  The '210 Patent .........................................................................................12

    E.  The '163 and '597 Patents .........................................................................12

    F.  The '879 Patent .........................................................................................12

    G.  The '035 Patent .........................................................................................13

III.  FLAWS IN SAMSUNG'S EXPERTS' RELIANCE ON GALAXY TAB S FOR OBVIOUSNESS COMBINATIONS ....................................................................13

    A.  The Source Code for the Wi-Fi Chipset in the Galaxy Tab S Is Not Prior Art .............13

    B.  No Showing of Motivation to Combine and No Reasonable Expectation of Success In Modifying Wi-Fi Chip and Firmware in the Galaxy Tab S........................................20

IV.  REBUTTAL TO DR. BIMS'S OBVIOUSNESS OPINIONS REGARDING THE '077 PATENT ..............................................................................................................26

    A.  Overview of the '077 Patent .....................................................................27

        1.  Priority Date of the '077 Patent ....................................................27

        2.  Landscape Around the Time of the '077 Patent's Invention ..................28

    B.  Overview of the File History of the '077 Patent........................................30

    C.  Overview of the Alleged Art......................................................................31

        1.  Zhang et. al., "HE PHY Padding and Packet Extension," July 2015 ("Zhang 810") ...................................................................................31

        2.  IEEE 802.11-2012.........................................................................35

        3.  IEEE 802.11ac-2013 .....................................................................40

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

4.    U.S. Patent No. 9,001,929 ("Lee 929") ...................................................42

5.    U.S. Publication No. 2018/0102929 ("Lin 929") ...................................44

D.    No Motivation to Combine .........................................................................47

6.    No Motivation to Combine Samsung Galaxy Tab S in view of Zhang, IEEE 802.11-2012 and/or IEEE 802.11ac, Lee 929, or Lin 929 .......................................47

7.    No Motivation to Combine Zhang 810 with IEEE 802.11-2012 and/or 802.11ac, or Lee 929 ...................................................................................48

E.    Samsung Galaxy Tab S with Zhang 810, or Additionally in Combination of IEEE 802.11-2012 / IEEE 802.11ac or Lee 929 (Collectively "Tab S + Zhang Combinations") Do Not Disclose Claims 1, 3-5, 8 ......................................49

1.    Claims 1 and 8 .....................................................................................49

2.    Claim 3 .................................................................................................62

3.    Claim 4 .................................................................................................62

4.    Claim 5 .................................................................................................65

F.    Samsung Galaxy Tab S in view of Lin 929 Do Not Disclose Claims 1, 3-5, 8.............65

1.    Claims 1 and 8 .....................................................................................66

2.    Claim 3 .................................................................................................74

3.    Claim 4 .................................................................................................76

4.    Claim 5 .................................................................................................77

V.    REBUTTAL TO DR. BIMS'S OBVIOUSNESS OPINIONS REGARDING THE '281 PATENT ...................................................................................................77

A.    Overview of the '281 Patent .......................................................................78

1.    Priority Date of the '281 Patent ..........................................................78

B.    Overview of the File History of the '281 Patent.........................................79

C.    Overview of the Alleged Prior Art..............................................................80

1.    Josiam ...................................................................................................80

2.    Li ..........................................................................................................81

D.    No Showing of Motivation to Combine and Reasonable Expectation of Success .........81

E.    Samsung Galaxy Tab S in view of Josiam Does Not Disclose Claims 1-4, 6 ...............83

1.    This Combination Was Not Elected by Samsung..................................83

2.    Claim 1 .................................................................................................84

3.    Claims 2-4 and 6 ..................................................................................90

F.    Samsung Galaxy Tab S in view of Li Does Not Disclose Claims 1-4, 6 ......................90

1.    This Combination Was Not Elected by Samsung..................................90

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

2. Claim 1 ....................................................................................................90

3. Claims 2-4 and 6 ......................................................................................96

G. Bharadwaj 129 and Bharadwaj 129 in view of Chen ......................................97

VI. REBUTTAL TO DR. BIMS'S OBVIOUSNESS OPINIONS REGARDING THE '595 PATENT ....................................................................................................................98

A. Overview of the '595 Patent ............................................................................98

1. Priority Date of the '595 Patent ...............................................................99

B. Overview of the File History of the '595 Patent..............................................99

C. Overview of the Alleged Prior Art.................................................................102

1. 802.11ac ..................................................................................................102

2. Lee 664 ...................................................................................................102

3. Bharadwaj 718 ........................................................................................103

4. Li .............................................................................................................104

D. No Showing of Motivation to Combine and Reasonable Expectation of Success .......104

E. Samsung Galaxy Tab S in view of 802.11ac and in further view of Lee 664 Does Not Disclose Claims 1-5 ...........................................................................105

1. Claim 1 ...................................................................................................105

2. Claims 2-5 ..............................................................................................109

F. Samsung Galaxy Tab S in view of Bharadwaj 718 and in further view of Lee 664 Does Not Disclose Claims 1-5 ............................................................109

1. Claim 1 ...................................................................................................109

2. Claims 2-5 ..............................................................................................112

G. Samsung Galaxy Tab S in view of Li and in further view of Lee 664 Does Not Disclose Claims 1-5 ...........................................................................112

1. Claim 1 ...................................................................................................112

2. Claims 2-5 ..............................................................................................116

H. Josiam ............................................................................................................116

VII. REBUTTAL TO DR. BIMS'S OBVIOUSNESS OPINIONS REGARDING THE '210 PATENT ..................................................................................................................117

A. No Showing that P802.11ax/D0.5 is Publicly Accessible Prior Art............118

B. Samsung Galaxy Tab S in view of Verma 310 Does Not Disclose Claims 1-5 ..........121

1. No Showing of Motivation to Combine and Reasonable Expectation of Success .121

2. Verma 310 Does Not Disclose Limitation [1h]: "wherein when the number of MU-MIMO users indicates a single user, the user specific field of the HE-SIG-B includes one user field for non-MU-MIMO allocation."........................................123

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

3. Verma 310 Does Not Disclose Claim 2 ...............................................125

4. Verma 310 Does Not Disclose Claim 3 ...............................................126

5. Verma 310 Does Not Disclose Claim 4 ...............................................126

6. Verma 310 Does Not Disclose Claim 5 ...............................................127

C. Samsung Galaxy Tab S in view of Verma 310 and in further view of P802.11ax/D0.5 Does Not Disclose Claims 1-5 ...............................................127

D. Samsung Galaxy Tab S in view of Lim 066 and in further view of P802.11ax/D0.5 Does Not Disclose Claims 1-5 ...............................................128

1. No Showing of Motivation to Combine and Reasonable Expectation of Success .129

2. Lim 066 Does Not Disclose Limitation [1f]: "wherein when a SIG-B compression field of the HESIG- A indicates full bandwidth multi User-Multiple Input Multiple Output(MU-MIMO) transmission, a format of user field(s) included in a user specific field of the HESIG- B is identified based on a number of MU-MIMO users indicated by a subfield of the HE-SIG-A." ...............................................131

3. Lim 066 Does Not Disclose Limitation [1g] and [1h]: ...............................................131

4. 802.11ax D0.5 Does Not Disclose Limitation [1h]: ...............................................132

5. Neither Lim 066 nor 802.11ax D0.5 Disclose Claim 2 ...............................................132

6. Neither Lim 066 nor 802.11ax D0.5 Disclose Claim 3 ...............................................133

7. Neither Lim 066 nor 802.11ax D0.5 Disclose Claim 4 ...............................................133

8. Neither Lim 066 nor 802.11ax D0.5 Disclose Claim 5 ...............................................133

VIII. REBUTTAL TO DR. WICKER'S OBVIOUSNESS OPINIONS REGARDING THE '163 / '597 PATENTS ...............................................134

A. Overview of the '163 and '597 Patents ...............................................134

1. Priority Dates of the '163 and '597 Patents ...............................................137

B. Overview of the File History of the '163 and '597 Patents ...............................................144

C. Overview of the Alleged Art ...............................................145

1. IEEE 802.11ax – D1.0 ...............................................145

2. U.S. Publ. No. 2016/0330663 (Zhou 663) ...............................................146

3. U.S. Publ. No. 2016/0330685 (Asterjadhi 685) ...............................................148

4. U.S. Patent No. 10,321,485 (Noh 485) ...............................................149

5. U.S. Publ. No. 2017/0257817 (Itagaki 817) ...............................................150

D. No Motivation to Combine Samsung Galaxy Tab S with Zhou 663, Asterjadhi 685, or 802.11ax D1.0, or Further with Noh 485 or Itagaki 817. ...............................................151

E. Samsung Galaxy Tab S with Zhou 663, and/or Further in view of Noh 485 or Itagaki 817 Do Not Disclose Claims 1-5 of the '163 Patent and Claims 1, 2, 5, 9, 12 of the '597 Patent ...............................................152

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1. Zhou Combinations Do Not Teach Claim 1 of the '163 Patent and Claims 1 and 9 of the '597 Patent ........................................................................................................153

2. Galaxy Tab S, Zhou 663, and Noh 485 Do Not Render Claims 2-3 of the '163 Patent and Claim 2 of the '597 Patent Obvious .......................................................158

3. Galaxy Tab S, Zhou 663, and Itagaki 817 Do Not Render Claims 4-5 of the '163 Patent and Claims 5 and 12 of the '597 Patent Obvious.........................................165

F. Samsung Galaxy Tab S with Asterjadhi 685, and/or Further in view of Noh 485 or Itagaki 817 Do Not Disclose Claims 1-5 of the '163 Patent and Claims 1, 2, 5, 9, 12 of the '597 Patent .........................................................................................................168

1. Asterjadhi Combinations Do Not Teach Claim 1 of the '163 Patent and Claims 1 and 9 of the '597 Patent .........................................................................................169

2. Galaxy Tab S, Asterjadhi 685, and Noh 485 Do Not Render Claims 2-3 of the '163 Patent and Claim 2 of the '597 Patent Obvious...............................................172

3. Galaxy Tab S, Asterjadhi 685, and Itagaki 817 Do Not Render Claims 4-5 of the '163 Patent and Claims 5 and 12 of the '597 Patent Obvious ...............................173

G. Samsung Galaxy Tab S with 802.11ax D1.0, and/or Further in view of Noh 485 or Itagaki 817 Do Not Disclose Claims 1-5 of the '163 Patent and Claims 1, 2, 5, 9, 12 of the '597 Patent .........................................................................................................173

IX. REBUTTAL TO DR. WICKER'S OBVIOUSNESS OPINIONS REGARDING THE '035 PATENT AND THE '879 PATENT.......................................................................174

A. Effective Filing Date.................................................................................................174

B. "Invalidating Prior Art" ...........................................................................................176

C. Rebuttal to Motivation to Combine ..........................................................................177

D. Rebuttal to Combination of Galaxy Tab S + D1.0 Grounds.........................................179

1. "switch a parameter set, which is a set of parameters used for the channel access, from a first parameter set to a second parameter set based on whether the base wireless communication terminal triggers a multi-user uplink transmission participation of the wireless communication terminal" ('035 patent, claims 1-5; '879 patent, claims 1-5) .........................................................................................179

2. "when a MAC protocol data unit (MPDU) included in the trigger-based PPDU does not request an immediate response, set a second parameter set timer for an access category of the MPDU when the transmission of the trigger based PPDU ends" ('035 patent, claims 1-5; '879 patent, claims 1-5)........................................180

3. "when the MPDU included in the trigger-based PPDU requests an immediate response, set the second parameter set timer for the access category of the MPDU for which immediate response is received" ('035 patent, claims 1-5; '879 patent, claims 1-5). ..............................................................................................................184

4. Dependent Claims 2-5 of '035 patent; Dependent Claims 2-5 of '879 Patent .......185

E. Rebuttal to Combination of Galaxy Tab S + Cariou 261 Grounds..............................185

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1. "receive, from the base wireless communication terminal, a trigger frame using the transceiver, wherein the trigger frame triggers a orthogonal frequency division multiple access (OFDMA) uplink transmission of the wireless communication terminal" ('879 patent, claim 1-5) ......................................................................186

2. "transmit, to the base wireless communication terminal, a trigger-based physical layer protocol data unit (PPDU) in response to the trigger frame using the transceiver" ('035 patent, claims 1-5; '879 patent claims 1-5)..............................186

3. "switch a parameter set, which is a set of parameters used for the channel access, from a first parameter set to a second parameter set based on whether the base wireless communication terminal triggers a multi-user uplink transmission participation of the wireless communication terminal" ('035 patent, claims 1-5; '879 patent, claims 1-5) ........................................................................187

4. "when a MAC protocol data unit (MPDU) included in the trigger-based PPDU does not request an immediate response, set a second parameter set timer for an access category of the MPDU when the transmission of the trigger based PPDU ends" ('035 patent, claims 1-5; '879 patent, claims 1-5)........................................188

5. "when the MPDU included in the trigger-based PPDU requests an immediate response, set the second parameter set timer for the access category of the MPDU for which immediate response is received" ('035 patent, claims 1-5; '879 patent, claims 1-5). ........................................................................190

6. Dependent Claims 2-5 of '035 patent; Dependent Claims 2-5 of '879 Patent .......190

X.    SECONDARY CONSIDERATIONS SHOWING NON-OBVIOUSNESS .....................190

XI.   REBUTTAL TO OPINIONS REGARDING WRITTEN DESCRIPTION AND ENABLEMENT ........................................................................200

      A. '077 Patent ........................................................................200

         1. The "obtain/[ing] information other than information on the duration of the non-legacy physical layer frame …" in Claims 1 and 8 ................................................200

         2. The "determining …" in Claim 8........................................................................201

         3. Dependent Claims 3-5 ........................................................................202

      B. The '281 Patent ........................................................................202

      C. The '595 Patent ........................................................................206

      D. The '210 Patent ........................................................................209

      E. The '163 and '597 Patents ........................................................................211

      F. The '035 and '879 Patents ........................................................................215

XII.  REBUTTAL TO OPINIONS REGARDING PATENT ELIGIBILITY ...........................224

      A. The '077 Patent ........................................................................226

      B. The '281 and '595 Patents ........................................................................227

      C. The '210 Patent ........................................................................228

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

D. The '163 and '597 Patents ...........................................................229

E. The '035 and '879 Patents ...........................................................231

XIII. REBUTTAL TO OPINIONS REGARDING "ALTERNATIVES"................................241

A. Alleged NIAs for the '077 Patent .................................................242

B. Alleged NIAs for the '281 and '595 Patents.................................246

C. Alleged NIAs for the '210 Patent .................................................249

D. Alleged NIAs for the '163 and '597 Patents.................................251

E. Alleged NIAs for the '035 and '879 Patents.................................255

XIV. RESPONSES TO DR. BIMS' "OTHER OPINIONS REGARDING ASSERTED PATENTS AND RELEVANT TECHNOLOGY" ...........................................256

A. Responses to Dr. Bims' Opinions Regarding Samsung/Atlas Global Agreement .......256

B. Responses to Dr. Bims' Opinions on Relative Importance of Wi-Fi .........................257

XV. REBUTTAL TO OPINIONS REGARDING INVENTORSHIP .....................................260

A. The '077 Patent.............................................................................261

B. The '281 and '595 Patents ............................................................262

C. The '210 Patent.............................................................................265

D. The '163 and '597 Patents ............................................................266

E. The '879 and '035 Patents ............................................................268

XVI. REBUTTAL TO OPINIONS REGARDING ALLEGED INEQUITABLE CONDUCT..270

A. Rebuttal to Dr. Bims's Opinion Regarding "Materiality" of Zhang 810.....................270

B. Zhang 810 is Cumulative to Other References of Record ............................................275

C. Responses to Dr. Bims's Arguments that Priority Claim Applications Cover Different Inventions....................................................278

D. Responses to Dr. Bims's Arguments on "Familiarity with Prior Art" .........................278

XVII. CONCLUSION.........................................................................278

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

I, Erik de la Iglesia, provide the following expert disclosures.

## I.    INTRODUCTION

### A.    Retention

1.    I have been retained as an independent expert witness by the law firm of Russ August & Kabat on behalf of Plaintiff Wilus Institute of Standards and Technology Inc. ("Wilus" or "Plaintiff") to testify as a technical expert in this action, including concerning the validity of U.S. Patent Nos. 10, 313,077 (the "'077 patent"), 10,687,281 (the "'281 patent"), 11,470,595 (the "'595 patent"), 11,159,210 (the "'210 patent"), 11,116,035 (the "'035 Patent"), 11,516,879 (the "'879 Patent"), 11,129,163 (the "'163 Patent"), 11,700,597 (the "'597 Patent") (collectively, the "Asserted Patents").

2.    In this rebuttal expert report, I address the opinions provided in the Opening Report of Dr. Harry Bims including his Corrected Opening Report, as well as the opinions provided in the Opening Expert Report of Dr. Stephen Wicker. I provide my opinions in response to the allegations of invalidity made in these two opening reports, as well as the bases for my opinions. Unless otherwise noted, the statements made herein are based on my personal knowledge, and if called to testify, I could and would testify competently and truthfully with regard to this matter. I expect to testify at trial on these issues, as set forth in this report and in any supplemental reports or declarations that I may prepare for this litigation in the future. I also expect to testify at trial with respect to the matters addressed by any expert testifying on behalf of Samsung, if asked about these matters by the Court or by the parties' counsel. I may also testify on other matters relevant to this case set forth in other expert reports or declarations, or if asked by the Court or by the parties' counsel.

3.    To ensure that my opinions are complete and accurate, I reserve the right to supplement or amend this report if additional facts and information that affect my opinions become available. Such information may include, for example, materials produced in this proceeding, and information and documents relevant to this case that Samsung has not yet disclosed. I may also supplement or amend my report or opinions in response to additional discovery or other events,

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

### G.    The '035 Patent

44.    It is my opinion that the asserted claims of the '035 Patent are not obvious in view of the asserted art. It is also my opinion that the '035 Patent asserted claims are patent eligible and have sufficient written description and are enabled. It is also my opinion that Dr. Wicker failed to establish that the '035 Patent does not have the proper inventorship.

## III.    FLAWS IN SAMSUNG'S EXPERTS' RELIANCE ON GALAXY TAB S FOR OBVIOUSNESS COMBINATIONS

45.    I begin by noting a set of serious flaws with the obviousness combinations proposed by Dr. Bims and Dr. Wicker to invalidate the Asserted Patents.

### A.    The Source Code for the Wi-Fi Chipset in the Galaxy Tab S Is Not Prior Art

46.    To begin, each of the obviousness grounds proposed by Dr. Bims and Dr. Wicker require, as a predicate, a showing that a POSITA would have modified the source code and wi-fi chip of an actual, physical device: the Samsung Galaxy Tab S, which was released in 2014 in two screen sizes. *See, e.g.*, https://news.samsung.com/global/samsung-introduces-galaxy-tab-s-a-super-amoled-tablet (June 13, 2014) (accessed Feb. 11, 2026).[1] The Galaxy Tab S includes a wi-fi chipset from Broadcom: BCM4354. *See, e.g.*, https://www.ifixit.com/Answers/View/357876/Where+is+the+wifi+chip+on+my+Galaxy+tab+S +8.4+wifi (showing photograph identifying BCM4354KKUBG chipset for Galaxy Tab S).

47.    Dr. Bims, specifically, opines that a POSITA would need to modify the source code for the wi-fi chip of the Galaxy Tab S for each of his obviousness grounds. *See, e.g.*, Bims Rpt. ¶¶ 367 ("This update to the Galaxy Tab S would have involved simply **modifying the source code for the Wi-Fi chip** to make the minor changes needed to implement the NSYM equation")

---

[1] The Bims Report contains two other grounds for invalidity against, respectively, the '281 patent and '595 patent, which are from the same family; Dr. Bims opines that claims of the '281 patent is invalid in view of "Bharadwaj 129 alone or in combination with Chen" (Bims Rpt. ¶¶ 664-730), and that claims of the '595 patent are invalid in view of Josiam (Bims Rpt. ¶¶ 935-997). I am informed that, earlier in the case, Samsung agreed to not pursue these invalidity theories based on obviousness combinations comprising only printed publication prior art. With that in mind, I understand that the obviousness theories expressed in the Bims Report and Wicker Report are limited to those theories that involve modifying the source code of the wi-fi chip in the Galaxy Tab S.

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

(addressing '077 patent obviousness combinations), 371 (same), 540 ("This update to the Galaxy Tab S would have involved simply ***modifying the source code for the Wi-Fi chip*** to make the minor changes needed to implement receiving channel nulling (puncturing) information.") (addressing '281 patent obviousness combinations), 597 (same), 764 ("This update to the Galaxy Tab S would have involved simply ***modifying the source code for the Wi-Fi chip*** to make the minor changes needed to implement signaling center-26 tone resource unit allocation as taught by 802.11ac and by Lee 664.") (addressing '595 patent obviousness combinations), 828 (same), 879 (same), 1027 ("This update to the Galaxy Tab S would have involved simply ***modifying the source code for the Wi-Fi chip*** to make the minor changes needed to implement Verma 310's transmission and reception of a compression indicator to determine whether a common field in a subsequent signal is present or absent.") (addressing '210 patent obviousness combinations), 1031 (same), 1079 (same).

48.    Likewise, Dr. Wicker specifically opines that a POSITA would need to modify the wi-fi chip of the Galaxy Tab S for each of his obviousness grounds. *See* Wicker Rpt. ¶¶ 191 ("Galaxy Tab S was an IEEE 802.11-based device. See, e.g., PRIOR_ART_00001931. The source code is the only certain way to determine whether a particular IEEE 802.11 feature, for instance a feature of IEEE 802.11ac-2013 and 802.11-2012, is implemented in a device."), 240 ("As a result, a POSITA would have understood that Zhou 663's teachings could be easily ***integrated into the existing Galaxy Tab S networking stack***"), 242 ("The Galaxy Tab S is a commercial product, and a POSITA would have recognized that a market advantage could be achieved by ***altering the Galaxy Tab S*** to employ Zhou 663's "OBSS reuse"/spatial reuse teachings to increase the Galaxy Tab S's networking efficiency."), 243 ("A POSITA would have had a reasonable expectation of success in making this combination because Galaxy Tab S includes a configurable processor and Zhou 663's teachings ***include simple logic that could be readily implemented in software***."), 246 ("As a result, a POSITA would have understood that Noh 485's teachings could be easily integrated into the existing Galaxy Tab S networking stack alongside the teachings of Zhou 663."), 248 ("The Galaxy Tab S is a commercial product, and a POSITA would have recognized that a

14

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

market advantage could be achieved by altering the Galaxy Tab S to employ Noh 485's dual NAV teachings alongside Zhou 663's "OBSS reuse"/spatial reuse teachings to increase the Galaxy Tab S's networking efficiency."), 249 ("A POSITA would have had a reasonable expectation of success in making this combination because Galaxy Tab S includes a configurable processor and Noh 485's teachings include simple logic that could be readily implemented in software alongside the teachings of Zhou 663."), 252 ("A POSITA would have further realized that the Galaxy Tab S, Zhou 663, and Itagaki 817 are technologically complementary—***the Galaxy Tab S includes a Wi-Fi chipset and firmware and MAC and PHY layer technologies are disclosed in Zhou 663*** (i.e., spatial reuse techniques) and Itagaki 817 (i.e., BSS color collision detection).") ("As a result, a POSITA would have understood that Itagaki 817's teachings could be easily ***integrated into the existing Galaxy Tab S networking stack*** alongside the teachings of Zhou 663."), 254 ("The Galaxy Tab S is a commercial product, and a POSITA would have recognized that a market advantage could be achieved by altering the Galaxy Tab S to employ Itagaki 685's BSS color collision detection teachings alongside Zhou 663's "OBSS reuse"/spatial reuse teachings to increase the Galaxy Tab S's networking efficiency."), 258 ("A POSITA would have further realized that the Galaxy Tab S and Asterjadhi 685 are technologically complementary— the Galaxy Tab S includes a Wi-Fi chipset and firmware and Asterjadhi 685 describes MAC and PHY layer technology (i.e., power save management techniques)."), 266 ("The Galaxy Tab S is a commercial product, and a POSITA would have recognized that a market advantage could be achieved by altering the Galaxy Tab S to employ Noh 485's dual NAV teachings alongside Asterjadhi 685's power save teachings to increase the Galaxy Tab S's networking efficiency."), 267 ("A POSITA would have had a reasonable expectation of success in making this combination because Galaxy Tab S includes a configurable processor and Noh 485's teachings include simple logic that could be readily implemented in software alongside the teachings of Asterjadhi 685."), 272 ("Third, a POSITA would have been motivated by market incentives to combine Itagaki 817 with Galaxy Tab S and Asterjadhi 685. The Galaxy Tab S is a commercial product, and a POSITA would have recognized that a market advantage could be achieved by altering the Galaxy Tab S to

15

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

employ Itagaki 685's BSS color collision detection teachings alongside Asterjadhi 685's power save management teachings to increase the Galaxy Tab S's networking efficiency."), 279 ("A POSITA would therefore have had a reasonable expectation of success in using 802.11ax D1.0 to modify the Galaxy Tab S's underlying 802.11ac-based implementation, expecting only incremental changes to the MAC/PHY behavior within a well-understood standard framework."), 281 ("A POSITA would have had a reasonable expectation of success in making this combination because Galaxy Tab S includes a configurable processor and 802.11ax D1.0's teachings include simple logic that could be readily implemented in software."), 825 ("Because Cariou 261 proposes modifying only the parameter values and switching rules, and not the fundamental EDCA architecture, a POSITA would view a Galaxy Tab S-like device as an ideal implementation target. The modification requires no unconventional hardware changes and only minimal software/firmware adjustments, making the combination both straightforward and expected.").

49.     As shown above, both Dr. Bims and Dr. Wicker offer obviousness theories which require modifying the wi-fi chipset and source code of wi-fi chipset used in the Galaxy Tab S device. Dr. Bims says this expressly—he uses the phrase "***modifying the source code for the Wi-Fi chip***." Dr. Wicker does not say it so clearly, but it is clear that every one of his theories requires modifying the Galaxy Tab S's to either incorporate modifications to the PHY and MAC layer communication capabilities (which are handled through the physical design of the wi-fi chipset) or to the actual on-chip firmware of the wi-fi chip. This means that Dr. Wicker's theories, like Dr. Bims's theories, requires modifying the source code for the wi-fi chip in the device—that is, either the Hardware Description Language (HDL) code that expresses how the hardware layout must be designed, or the firmware source code, human-readable source code that is compiled into binary executable code that is loaded onto the wi-fi chipset's memory and executed using its on-board microprocessor (which are usually ARM core CPUs in modern wi-fi chipsets). This is why, for instance, Dr. Wicker repeatedly says that the "***Galaxy Tab S includes a Wi-Fi chipset and firmware[,] and MAC and PHY layer technologies are disclosed in [some prior art reference]***"— he wants to establish that the "MAC and PHY layer technologies" in prior art can be reproduced

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

in the Galaxy Tab S's "Wi-Fi chipset and firmware." In practical terms, the only way that the MAC and PHY layer handling can be changed for a given wi-fi chipset is if its source code is different— either for the on-chip binary firmware or the HDL code used to generate the hardware layout capable of achieving the functionality expressed in that HDL code. None of Dr. Wicker's arguments turn on changing anything else—like, say, the wi-fi chipset driver code that permanently exists at the application layer and is used by the operating system to control the wi-fi chipset.

50.     Thus, having established that both the Bims Report and Wicker Report contain obviousness theories which require concluding that a POSITA would modify the source code of the wi-fi chip of the Galaxy Tab S, they must show that the source code (including the HDL of the chip design and all operating and supporting software) is prior art and publicly available.

51.     I specifically note that this is ***different question*** than whether the ***Galaxy Tab S*** or its constituent ***wi-fi chipset*** is publicly accessible—which can be prior art under certain circumstances like through the "public use" of a particular invention, and such physical devices can also serve as prior art for what they specifically disclose to a POSITA. For example, a person could open up the Galaxy Tab S and look at the motherboard in 2014—and so the general design, traces, ASIC arrangement (and so on) of the motherboard could be known to POSITA. Similarly, one could desolder the wi-fi chipset from the Galaxy Tab S (or, more realistically, just purchase a unit of this commodity item from a parts supplier), and examine it—what that would tell a POSITA could also be prior art knowledge. But these possibilities are not at issue for the Bims and Wicker Reports.

52.     In contrast, the obviousness opinions of Dr. Bims and Dr. Wicker require answering a ***different*** question: whether the ***source code*** for the wi-fi chipset of the Galaxy Tab S was publicly accessible. Unlike the Galaxy Tab S or its wi-fi chip (which is a Broadcom BCM4354 ASIC)[2], the

---

[2]                                              *See,*                                              *e.g.,* https://www.ifixit.com/Answers/View/357876/Where+is+the+wifi+chip+on+my+Galaxy+tab+S +8.4+wifi (showing photograph identifying BCM4354KKUBG chipset for Galaxy Tab S),

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

source code for the wi-fi chip is not something can be obtained by a person simply holding, looking at, or disassembling a Galaxy Tab S device.

53.    I know this to be the case from years in the industry and from personal experience designing microprocessors and ASICs for use in computing devices. When I was a design engineer for Intel, I worked on processors and chipsets including the Mobile Pentium 2 and 3 and the Itanium 3, all full custom chips with custom (Intel-written) firmware and Intel-designed layouts. While at Webstacks, I worked on some of the largest FPGA designs deployed in commercial products at the time. And, while at Extreme Networks, I worked on network products including FPGA, ASIC (sea of gates) and Third-Party (Broadcom and Marvell) silicon. I am familiar with the full stack of design techniques and tools used in chip design from HDL source code, synthesized netlists, layout, place and route, power and clocking as well as platform design and techniques including firmware design, coding and security and software driver, OS support and application coding.

54.    As a rule, the firmware source code of commercially-available microprocessor and ASIC devices is treated in the industry as highly confidential. Likewise, the specific HDL source code written to define the physical layout of the IC is also highly confidential. Such source code is never freely distributed, made "open-source," or even shared with anyone outside of the business that develops and maintains that code, at least not without confidentiality requirements like an NDA or other protection. I am aware of no evidence suggesting the source code for the Broadcom BCM4354 chipset has been treated any differently. A search on Google and Github for firmware or HDL source code of the Broadcom BCM4354 chipset likewise yields no results indicating that the source code is anything other than confidential and unavailable to anyone other than someone given specific permission by Broadcom to have it.

55.    Thus it is inconceivable to conclude that a POSITA, with no special access provided

---

https://www.walmart.com/ip/Replacement-WiFi-Bluetooth-IC-Chip-Compatible-For-Samsung-Tab-S-10-5-T805C-BCM4354KKUBG/2045317312 (selling "Replacement WiFi Bluetooth IC Chip Compatible For Samsung Tab S 10.5" (T805C) (BCM4354KKUBG)").

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

by Broadcom, would have had access to the firmware and HDL source code for the Broadcom BCM4354 in the Galaxy Tab S, at any point in time relevant here. This is important because if the firmware or HDL source code of the Broadcom BCM4354 was not accessible to a POSITA (using reasonable diligence to look for it) at the relevant time periods, ***then the source code relied upon by both Dr. Bims and Dr. Wicker is not prior art***. If this is the case, then none of the obviousness combinations proposed by Dr. Bims and Dr. Wicker based on the modification of that source code can actually establish the invalidity of the Asserted Patents.

56.    My understanding is fully consistent with the opinions of Dr. Todor Cooklev, who is submitting an expert report on this issue on behalf of Wilus. I have both discussed these issues with Dr. Cooklev and reviewed a final version of his report. As Dr. Cooklev provides, the source code for the Broadcom BCM4354 wi-fi chipset firmware is not and has not been publicly accessible at any point in the past. Put another way, a POSITA in late 2016 or early 2017 could have had a Galaxy Tab S device on hand (like Dr. Bims and Dr. Wicker say), but they would not have access to the wi-fi chipset firmware source code. What that POSITA might have access to, at most, is the object code binaries formed through the compilation of the source code, which cannot be simply decompiled into the source code. Object code is neither human readable nor readily de-compiled into its original source code—this is because object code is the result of transforming human-readable source code into "machine" code, that is, code that intelligible only to a computer processor and which consists of 0s and 1s.

57.    Moreover, much of the functionality that Dr. Bims and Dr. Wicker say could be modified in the wi-fi chipset in the Galaxy Tab S is a function of the physical layout design of the ASIC: that is, it cannot be changed by a POSITA. Even if a POSITA hired a specialist to desolder the BCM4354 from the motherboard of the Galaxy Tab S, and then, using a hand-held rotary tool wrapped with very fine grit sand paper, slowly and methodically delidded the BCM4354 (i.e., grind away microns-thick top layer of the chipset to expose the top-most level of the IC package, the physical layout of the chip still cannot be changed. The gates, registers, and transistors of the chipset are designed using code written in HDL—that is, Hardware Design Language—which

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

ordinarily is then loaded into industry-standard EDA (electronic design automation) tools provided by companies like Cadence and Synopsys to produce an IC layout that can be further tweaked, finalized, and taped-out to a foundry or fab. And, in any event, the physical layout of the chipset cannot be reverse engineered into its HDL code by a POSITA with 3 years of work experience and a B.S. in computer science or electrical engineering. I note that my explanation is fully consistent with the opinions of Dr. Cooklev—who has experience making wi-fi chipsets like the one in question here.

58.     Thus, as a result, the source code for the wi-fi chipset in the Galaxy Tab S cannot have been prior art as of any of the priority dates at issue here.

**B.     No Showing of Motivation to Combine and No Reasonable Expectation of Success In Modifying Wi-Fi Chip and Firmware in the Galaxy Tab S**

59.     As I explained above, the source code for the wi-fi chip in the Galaxy Tab S, the Broadcom BCM4354, is not publicly accessible today and was not publicly accessible by a POSITA at any time relevant in this case. Putting that aside, however, it is also the case that a POSITA, with 2-3 years of work experience, would have had a reasonable expectation of success in performing the modifications suggested by Dr. Bims and Dr. Wicker to arrive at the claims of the Asserted Patents.

60.     I understand that to establish invalidity of a patent claim through a obviousness involving a combination or modification of prior art, the proponent must show that POSITA would have had a motivation to combine the disparate teachings to do so. I understand that whether a POSITA has a motivation to combine is a legal issue determined by weighing the evidence in view of various factors—which I list in the section earlier in my Report reciting the Legal Principles relevant here. I understand that there are two parts to the motivation to combine "test": that there be a (1) well-articulated rationale for the combination recognizable by one with ordinary skill; and (2) a reasonable expectation by the POSITA that they could perform the potential combination or modification and arrive at the challenged patent claim.

61.     At most, Dr. Bims and Dr. Wicker provide superficial opinions that a POSITA

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

would have had a reasonable expectation of success in modifying the wi-fi chipset of the Galaxy Tab S as they propose for their obviousness theories. *See, e.g.*:

> 833. … Given that the Galaxy Tab S-Bharadwaj 718 combination already implemented key wireless technology, a POSITA would have started with existing wireless implementations such as the Galaxy Tab S to implement new, incremental functionality rather than start from scratch. Modifying Galaxy Tab S to perform Lee 664's signaling techniques would have been well within the skill of a POSITA because the Galaxy Tab S implements its wireless connectivity with a configurable processor which allows for future system enhancements. As such, a POSITA would have had a reasonable expectation of success in making the combination. Given this, one of ordinary skill would have been driven to make the combination of Galaxy Tab S, Bharadwaj 718, and Lee 664. (Bims Rpt. ¶ 833)

> 906. A POSITA would have had a reasonable expectation of success in making this change to the implementation of D1.0 in Galaxy Tab S because the updating HEMUEDCATimer[AC] itself is already specified by D1.0. The only change is when to update it. Moving the updating HEMUEDCATimer[AC] to the end of TB PPDU transmission is straightforward because implementation timing hooks (e.g., TXOP end) are already available in 802.11 MAC/PHY stacks. No new protocol element or PHY capability is required (Wicker Rpt. ¶ 906)

62.     The above excerpts are representative of the character and detail in the opinions offered by Dr. Bims and Dr. Wicker regarding the "reasonable expectation of success" requirement that they must satisfy in order to demonstrate obviousness of any particular claim of the Asserted Patents.

63.     Where Dr. Bims opines on "reasonable expectation of success," his opinion follows this logic: (1) the Galaxy Tab S has "wireless connectivity," and these other publications teach things about "wireless connectivity"; (2) the Galaxy Tab S has a "configurable processor" that "allows for future system enhancements"; and (3) changing the Galaxy Tab S to do the things that are discussed in the publications is within the skill of the POSITA.

64.     Similarly, where Dr. Wicker opines on "reasonable expectation of success," his opinions are more verbose but follows a similar logic flow: (1) the Galaxy Tab S is a device with wireless connectivity complying with 802.11ac; (2) there is this publication related to 802.11ax, (such as the draft 802.11ax D1.0), which is about wireless connectivity; and (3) you can just change

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

the Galaxy Tab S to do what it teaches in that publication related to 802.11ax.

65.    The logic used and analysis provided by Dr. Bims and Dr. Wicker fails to address the real-life challenges which any POSITA would face (and be aware of) if tasked to, essentially, transform this 802.11ac-limited device to support wireless connectivity that resembles what is required for 802.11ax.  At no point in do Dr. Bims or Dr. Wicker, in their respective reports, delve deeper into the specifics of what a POSITA would understand would be needed to perform the actual changes the Galaxy Tab S's WLAN functionality as they say could be done.

66.    Further complicating this issue, Dr. Bims and Dr. Wicker fail to provide sufficient specificity about ***how*** the Galaxy Tab S would be changed under their theories. For example, Dr. Bims opines that the "source code" of the wi-fi chip can be changed, but then ignores the critical question of how it can be changed. One of Dr. Bims's theories is that the "Samsung Galaxy Tab S" can be changed to "take advantage of the benefits that Lee 664's techniques provide such as signaling center-26 tone resource unit allocation for only for [sic] 80MHz and 160MHz bandwidths." Bims Rpt. ¶ 830. Many simple and crucial questions follow:

- How can this assertion be reconciled with the fact that  the BCM4354 wi-fi chip in the Galaxy Tab S, designed to be 802.11ac compliant, uses OFDM (in which a 20/40/80MHz channel is allocated to a single user) and is physically incapable of communicating using OFDMA (where channel allocation can be split between different users)?

- How can the Galaxy Tab S be changed to do something "only for ... 160MHz bandwidths" where the Broadcom BCM4354 doesn't even have a radio capable of TX/RX at 160 Mhz?[1]

- What "source code" in the Samsung Galaxy Tab S would need to be changed so that it can "take advantage" of "signaling center-26 tone resource unit allocation" aside from a wholesale redesign of the wi-fi chip layout, wi-fi chip firmware, and application layer drivers? How can such changes, including

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

adding hardware capabilities to an existing silicon product, be described as simple source code changes?

67.    Dr. Bims makes no attempt to answer these basic questions for any of his proposed obviousness combinations based on modifying the Galaxy Tab S. In my opinion, it is plain that this entire group of obviousness theories in the Bims Report is motivated by improper hindsight, which is reflected most plainly in its total failure to resolve the many logical and factual contradictions on which those theories rest.

68.    Similarly, Dr. Wicker opines that a POSITA would have had "a reasonable expectation of success in combining Galaxy Tab S's processor and Itagaki's BSS color collision functionality because said functionality comprises nothing more than simple computer processing steps (e.g., comparing two data fields). Thus, Itagaki 817 discloses a processor (i.e., Galaxy Tab S's configurable processor) configured to determine that BSS color collision (i.e., 'overlapping BSS COLOR') has occurred based on address fields of a medium access control (MAC) frame (i.e., 'BSSID')." Wicker Rpt. ¶ 506. Okay—then, what source code or aspect of the Galaxy Tab S would be changed to do these "simple computer processing steps"? Surely Dr. Wicker is aware that the Galaxy Tab S, with its 802.11ac WLAN capability, is incapable of recognizing and organizing WLAN packets by BSS color—after all, BSS Color is a technique introduced in 802.11ax. Dr. Wicker seems to acknowledge that packet organization by BSS Color is done at the PHY layer where functionality is provided through the hardware design itself generated by HDL source code--exactly as in the Accused Products with Broadcom chips, no less, whose PHY functionality is embodied within the chip design with Verilog or VHDL source code files. In the event Dr. Wicker believes that the PHY layer of the BCM4354 chipset can be changed to organize packets by BSS color and detect BSS color collisions to meet the Asserted Claims, he has ignored the question of how a POSITA (with 3 years of experience) would reasonably expect to succeed in arriving at the Wilus Asserted Claims through writing that new HDL code, writing the corresponding firmware and application layer drivers, taping-out the new IC design, receiving a new chip packages from TSMC or other foundry, desoldering the BCM4354, and soldering in the

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

new wi-fi chipset onto the motherboard of the Galaxy Tab S while maintaining the same pinout, power and clocking footprint and operational interface. In my opinion, this does not constitute clear and convincing evidence, especially whereas Dr. Wicker never even explains specifically what source code or other aspect of the Galaxy Tab S can be changed to have these new BSS Color-related features.

69.      Dr. Wicker makes no attempt to answer these basic questions for any of his other proposed combinations based on modifying the Galaxy Tab S. In my opinion, it is plain that this entire group of obviousness theories in the Wicker Report is motivated by improper hindsight, which is reflected most plainly in its total failure to resolve the many logical and factual contradictions on which those theories rest.

70.      Even if Dr. Bims and Dr. Wicker had tried to account for the many factual and logical problems inherent in their arguments, the POSITA would next be faced with undue experimentation and extraordinary technical challenges in performing the proposed (but inadequately described) modifications to the Samsung Galaxy Tab S.

71.



72.      To successfully achieve PHY layer functionality changes to the Galaxy Tab S to resemble the functionality that Dr. Bims and Dr. Wicker opine are taught in the publication prior art, the POSITA needs to (literally) manufacture a new wi-fi chip that can be swapped into the Galaxy Tab S. The existing Broadcom BCM4354 chipset in the Galaxy Tab S is a physical IC package created using semiconductor devices and routing layers, all of which are etched or

**HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY**

deposited onto a substrate using highly advanced and expensive lithography and chemical vapor deposition chambers. It is the physical design of this hardware which must change (in fact, be engineered as a new chip from scratch) before the device has the functionalities that Dr. Bims and Dr. Wicker endeavor to add. Once a new chip is design and manufactured, it then must be swapped into the Galaxy Tab S—this means that the existing wi-fi chip must be desoldered, and the new chip soldered on; new firmware and operating system drivers would need to be written to account for the new chipset functionality, and the firmware must be flashed onto the new chipset, and the new drivers installed on the device. All of these steps must be performed before changes suggested by Dr. Bims and Dr. Wicker have the expected effect. A POSITA, with 2-3 years of work experience, would have no expectation they could achieve this outcome. The POSITA is not a multinational corporation with access to foundries and large hardware and software design teams.

73.    Next, even assuming that Dr. Bims and Dr. Wicker believe that their changes can be achieved by simply modifying the firmware on the Broadcom BCM4354 (though their opinions never go so far as to say one way or another), a POSITA could not reasonably expect to flash that firmware onto the BCM4354 and install new drivers without the correct (confidential and trade secret) Broadcom cryptographic certificates, keys, or other ordinary security measure. A POSITA would have no expectation they could do any of this.

74.    In summary, it is not tractable for anyone, much less a POSITA, to change how the wi-fi chip works in the Galaxy Tab S as it relates to handling PHY layer operations without making a new chip (with all of the discussed requirements) and grafting it into the tablet. It is inconceivable that a POSITA would have a reasonable expectation of success in making such changes, and it is likewise the case that the POSITA would have no reasonable expectation of success in actually loading that modified firmware onto the Broadcom BCM4354, given that it would be possible only if they had access to Broadcom's trade secret information. Further, the POSITA would need to develop an entire new expertise in writing operating system-side drivers— a subject matter separate from chip and chip firmware design. No single POSITA would be motivated to do so, much less have an expectation that they could do so with a few years of work

HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY

experience.

## IV.     REBUTTAL TO DR. BIMS'S OBVIOUSNESS OPINIONS REGARDING THE '077 PATENT

75.     Dr. Bims argued that the claims of the '077 Patent are allegedly invalid in view of the following asserted prior art.

12.     The table below provides a summary of prior art invalidity grounds for the '077 patent:

|  | Claim 1 | Claim 3 | Claim 4 | Claim 5 | Claim 8 |
|---|---|---|---|---|---|
| Samsung Galaxy Tab S in view of Zhang 810 | X | X | X | X | X |
| Samsung Galaxy Tab S in view of Zhang 810 and in further view of IEEE 802.11-2012 and/or IEEE 802.11ac | X | X | X | X | X |
| Samsung Galaxy Tab S in view of Zhang 810 and Lee 929 | X | X | X | X | X |
| Samsung Galaxy Tab S in view of Lin 929 | X | X | X | X | X |

Bims Report at ¶ 12. But none of the asserted combinations discloses the '077 Patent, such as the NSYM equation,

$$N_{\text{SYM}} = \left\lfloor \left( \frac{\text{L\_LENGTH} + m + 3}{3} \times 4 - T_{\text{HE\_PREAMBLE}} \right) / T_{\text{SYM}} \right\rfloor - b_{\text{PE\_Disambiguity}}$$

where "m denotes a value obtained by subtracting the remaining value from the data size transmittable by a symbol of the legacy physical layer frame." Notably, the asserted references fail to disclose a different equation of NSYM (such as Zhang 810) that uses "-m" rather than the claimed "+m", discuss earlier generations of WiFi technologies that do not have the concept of "m," (such as IEEE 802.11-2012, 802.11ac, and Lee 929), or do not disclose the NSYM equation at all (such as Lin 929).

76.     Moreover, as I discussed in Section III, there is no motivation to combine Samsung Galaxy Tabs S with any of the asserted references because Dr. Bims failed to show that a POSITA would have had a reasonable expectation of success in modifying the Tab's firmware, and/or that Galaxy Tab S can be easily adapted with 802.11ax functions.