# Exhibit I

  

# DRAFT POLICY STATEMENT ON LICENSING NEGOTIATIONS AND REMEDIES FOR STANDARDS-ESSENTIAL PATENTS SUBJECT TO VOLUNTARY F/RAND COMMITMENTS[1]

December 6, 2021

The U.S. Patent & Trademark Office (USPTO), the National Institute of Standards and Technology (NIST), and the U.S. Department of Justice, Antitrust Division (DOJ) offer the following draft revised statement on remedies for the infringement of standards-essential patents (or SEPs) that are subject to a RAND or F/RAND licensing commitment,[2] which also provides guidance on what demonstrates good-faith negotiation in this context.

Good-faith negotiation that leads to widespread and efficient licensing between SEP holders and those who seek to implement technologies subject to F/RAND commitments helps to promote technology innovation, further consumer choice, and enable industry competitiveness. The good-faith licensing of SEPs is critical as emerging technologies and

---

[1] This draft statement has no force or effect of law. It is not intended to be, and may not be, relied upon to create any rights, substantive or procedural, or enforceable at law by any party. Nothing in this statement should be construed as mandating a particular outcome in any specific case, and nothing in this statement limits the discretion of any U.S. government agency to take any action, or not to take action, with respect to matters under its jurisdiction, including the United States Trade Representative's discretion in Presidential reviews under section 337(j) of the Tariff Act of 1930, 19 U.S.C. § 1337(j).

[2] For purposes of this statement, a patent is subject to a RAND or FRAND commitment where a patent holder has voluntarily committed to make available a license for the patent on reasonable and non-discriminatory (RAND) terms or fair, reasonable, and non-discriminatory (FRAND) terms while participating in standards-setting activities at a standards-developing organization (SDO). Often in the United States, SDO members may commit to license all of their patents that are essential to the SDO standard on RAND terms. Often in other jurisdictions, SDO members may commit to license such patents on FRAND terms. For the purposes of this statement, F/RAND refers to both types of licensing commitments. Commentators frequently use the terms interchangeably to denote the same substantive type of commitment. The specific RAND or FRAND obligations will vary by SDO.

SISVEL-SAMSUNG-0002070

standards continue to develop. Strategies by either SEP holders or implementers to gain undue leverage in licensing negotiations can cause multiple harms, including non-F/RAND patent royalties, increased costs, and delayed introduction of standardized products and services. Stakeholders with fewer resources to hire legal counsel, such as small-entity patent holders or implementers, or consumers of standardized products or services, may be particularly affected.

The USPTO is the executive-branch agency charged with examining patent and trademark applications, issuing patents and registering trademarks, and—through the Secretary of Commerce—advising the President on domestic and certain international issues of intellectual property policy.[3] NIST is the executive-branch agency charged with facilitating standards-related information sharing and cooperation among federal agencies and with coordinating federal agency participation in, and use of, private sector standards, emphasizing where possible the use of standards developed by private, consensus organizations, and—through the Secretary of Commerce—advising the President on standards policy pertaining to the nation's technological competitiveness and innovation ability.[4] The DOJ is the executive-branch agency charged with promoting and protecting competition through the enforcement of the antitrust laws for the benefit of American consumers and workers.[5]

The patent system promotes innovation and economic growth by providing incentives to inventors to apply their knowledge, take risks, and make investments in research and development. In exchange for publishing their technical advancements in patents so that others

---

[3] *See* 35 U.S.C. §§ 1, 2 (2012).

[4] *See* 15 U.S.C. § 272(b) (2012).

[5] *See* 15 U.S.C. §§ 4, 15a.

SISVEL-SAMSUNG-0002071

can build on those advancements with further innovations, inventors receive time-limited rights to exclude others from practicing their inventions. Duly issued patents provide owners and the public confidence in the patent system, and promote vigorous, dynamic competition to the benefit of consumers.

Standards, particularly voluntary consensus standards set by standards developing organizations (SDOs), play a vital role in the economy. Many SDOs develop standards using open, transparent, and consensus-based processes to address issues of interest to their stakeholders. Interoperability standards allow products designed and manufactured by many different firms, including small and medium sized entities, to function together and can fuel the creation and utilization of new and innovative technologies that benefit consumers. As interoperability standards increasingly incorporate technologies covered by intellectual property rights (IPR), their development has become more complicated.

Many SDOs adopt IPR policies that allow for patent licensing in connection with standardized technologies and encourage participation in the development process by both patent holders and implementers, with the goal of achieving the best technical solution. The disclosure and licensing requirements of IPR policies vary, but most policies have the common goals of facilitating access on F/RAND terms to the technology needed to implement a standard and helping to ensure that the rights of patent holders whose technology is used are appropriately respected. These policies may require participants to disclose in a timely manner to the SDO intellectual property that is, or may become, essential to a standard under development. Many policies ask participants to indicate whether they will agree to make available licenses to their technology on F/RAND terms if selected for inclusion. Specific terms of a F/RAND license are

SISVEL-SAMSUNG-0002072

negotiated bilaterally by the SEP holder and an implementer after a standard has been set, and in that context opportunistic behavior by both parties can occur.

By contributing technologies during standards-setting activities at an SDO and voluntarily making a F/RAND licensing commitment under the SDO's policies, a patent holder indicates that it is willing to license that technology for uses implementing the standard and that it will not exercise any market power obtained through standardization.  In exchange, it gains access to a potentially large market for its SEPs through the implementation of a successful standard.  Where a potential licensee is willing to license and is able to compensate a SEP holder for past infringement and future use of SEPs subject to a voluntary F/RAND commitment, seeking injunctive relief in lieu of good-faith negotiation is inconsistent with the goals of the F/RAND commitment.  Opportunistic conduct by SEP holders to obtain, through the threat of exclusion, higher compensation for SEPs than they would have been able to negotiate prior to standardization, can deter investment in and delay introduction of standardized products, raise prices, and ultimately harm consumers and small businesses.

At the same time, when standards implementers are unwilling to accept a F/RAND license or delay licensing negotiations in bad faith, these strategies can lessen patent holders' incentives to participate in the development process or contribute technologies to standards voluntarily.  Without adequate incentives to contribute to a consensus-based process, patent holders may opt for closed, proprietary standards that do not offer the same benefits of interoperability and enhanced consumer choice.

F/RAND commitments can benefit all participants in the standards ecosystem.  These commitments provide important licensing assurances to implementers that help encourage a

SISVEL-SAMSUNG-0002073

standard's widespread adoption. Wider adoption benefits SEP holders because they may seek licenses from more implementers in a larger market. Consumers benefit as well. By promoting interoperability across a wide range of products, standardization "make[s] products less costly for firms to produce and more valuable to consumers."[6]

As a general matter, to promote efficient licensing and help reduce the costs and other burdens associated with litigation, SEP holders and potential SEP licensees should engage in good-faith negotiation to reach F/RAND license terms. The Agencies encourage parties to consider the following in pursuit of such negotiation.[7]

A SEP holder engaged in good-faith negotiation should alert a potential licensee of the specific SEPs it believes will be or that are being infringed, provide information as to how the SEPs, to the extent practicable, or a representative set of the SEPs are being infringed,[8] and make a good-faith F/RAND offer.

A potential licensee willing to take a F/RAND license and engaged in good-faith negotiation should assess the information provided and respond within a commercially reasonable amount of time in a manner that advances the negotiation or results in a license. For example, a potential licensee might respond in good faith by (1) accepting the offer; (2) making

---

[6] U.S. DEP'T OF JUSTICE & FED. TRADE COMM'N, ANTITRUST ENFORCEMENT AND INTELLECTUAL PROPERTY RIGHTS: PROMOTING INNOVATION AND COMPETITION at 33 (2007).

[7] The Agencies recognize that good-faith negotiation can be accomplished in more than one way. The examples of good-faith conduct provided are not meant to be exhaustive.

[8] Providing additional information with the licensing offer that allows a potential licensee to evaluate for each SEP whether (1) a license is needed and (2) the offer is F/RAND can facilitate the progression of negotiations and enable the timely conclusion of a F/RAND license. This may be particularly helpful to small entities that do not have the expertise or resources to fully address SEP issues and may lack access to information from which to draw assurance that proposed terms are F/RAND.

SISVEL-SAMSUNG-0002074

a good-faith F/RAND counteroffer; (3) raising specific concerns about the offer's terms, including with respect to validity and infringement of the patents; (4) proposing that contested issues be resolved by a neutral party; or (5) requesting that the SEP holder provide more specific information reasonably needed to evaluate the offer.

Similarly, a SEP holder engaged in good-faith negotiation should respond to the potential licensee within a commercially reasonable amount of time in a manner that advances the negotiation or results in a license.[9]  For example, a SEP holder might respond in good faith by (1) accepting the counteroffer; (2) addressing specific concerns about the original offer's terms and making a new good-faith F/RAND offer; (3) responding to a request for information so that the potential licensee can better assess the F/RAND offer; or (4) proposing that contested issues be resolved by a neutral party.  If licensing negotiations break down, the Agencies encourage the parties to resolve contested issues by agreeing to seek alternative dispute resolution or a judicial resolution of F/RAND-related disputes in a mutually agreeable jurisdiction.[10]  The Agencies further encourage the parties to make a good-faith attempt to reach agreement on a license or a path for resolution before unilaterally seeking a resolution in a preferred forum.

The Agencies support the development of SDO IPR policies that promote good-faith negotiation and facilitate voluntary F/RAND licensing both domestically and abroad.  Good-

---

[9] Parties often choose to negotiate a reciprocal cross-license or a single license covering both SEPs and non-SEPs.  Where there is a F/RAND commitment, the negotiation should be free of coercion, such as requiring the licensing of non-SEPs or withholding the sale of a party's product.  Conditions on licensing may also raise antitrust concerns. *See, e.g.*, U.S. DEP'T JUSTICE & FED. TRADE COMM'N, ANTITRUST GUIDELINES FOR THE LICENSING OF INTELLECTUAL PROPERTY § 5.3 (rev'd Jan. 2017), https://www.justice.gov/atr/IPguidelines/download (discussing tying arrangements) [hereinafter Antitrust-IP Guidelines].

[10] A desire to seek a judicial determination rather than resolution through alternative dispute resolution mechanisms does not connote bad faith.  Parties may prefer to have particular issues such as validity and essentiality resolved by a court for a variety of legitimate reasons.  They also may be unable to reach consensus on arbitration parameters.

SISVEL-SAMSUNG-0002075

faith negotiation involving F/RAND commitments, supported by application of best practices, can promote licensing efficiency.  The application of best practices is consistent with the guidance of OMB Circular A-119, which states that intellectual property rights policies "should be easily accessible, set out clear rules governing the disclosure and licensing of the relevant IPR, and take into account the interests of all stakeholders, including the IPR holders and those seeking to implement the standard."[11]  Of course, individual parties may voluntarily contract for or agree to specific dispute resolution mechanisms.[12]

When good-faith negotiations fail and the parties cannot agree on alternative dispute resolution or to seek a F/RAND determination in a mutually agreeable jurisdiction, the existence of F/RAND or similar commitments and the individual circumstances of licensing negotiations between patent holders and potential licensees will affect the appropriate remedy for infringement of a valid and enforceable SEP.[13]  Relevant considerations are enumerated in *eBay Inc. v. MercExchange, L.L.C.*,[14] 35 U.S.C. §§ 283–284, or 19 U.S.C. § 1337,[15] as appropriate.[16]

---

[11] *See* Off. of Mgmt. & Budget, Circular A-119, "Federal Participation in the Development and Use of Voluntary Consensus Standards and in Conformity Assessment Activities," 81 FR 4673 (Jan. 27, 2016).

[12] *See e.g.,* WIPO ARBITRATION & MEDIATION CTR., GUIDANCE ON WIPO FRAND ALTERNATIVE DISPUTE RESOLUTION (ADR) (2021), https://www.wipo.int/export/sites/www/amc/en/docs/wipofrandadrguidance.pdf.

[13] *See e.g.,* Apple Inc. v. Motorola, Inc., 757 F.3d 1286, 1332 (Fed. Cir. 2014), overruled on other grounds by *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015) (*en banc*) (explaining the circumstances in which injunctive relief for a standards-essential patent holder may be appropriate).

[14] eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006).

[15] Although Section 1337 provides only an exclusion order as a remedy, the International Trade Commission is required to consider the effect of "exclusion upon the public health and welfare, . . . and United States consumers."  19 U.S.C. § 1337(d)(1).

[16] *See* also Georgia-Pacific Corp. v. United States Plywood Corp.*,* 318 F. Supp. 1116, 1119–20 (S.D.N.Y. 1970), *modified and aff'd*, 446 F.2d 295 (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971); Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152 (6th Cir. 1978); Halo Electronics, Inc. v. Pulse Electronics, Inc., 136 S. Ct. 1923 (2016); 35 U.S.C. §§ 283–284, and 19 U.S.C. § 1337.

SISVEL-SAMSUNG-0002076

Rather than adopting a unique set of legal rules for SEPs subject to F/RAND commitments, courts and other neutral decision makers take into account the F/RAND commitment and other relevant facts of a particular case.[17]  As a general matter, consistent with judicially articulated considerations, monetary remedies will usually be adequate to fully compensate a SEP holder for infringement.[18]

In *eBay*, the U.S. Supreme Court made clear that traditional principles of equity apply in determining whether an injunction should issue in any patent case in federal court.[19]  The U.S. Court of Appeals for the Federal Circuit has held that the availability of injunctive relief for infringement of SEPs subject to F/RAND licensing commitments should be analyzed under *eBay's* equitable framework like all other patents; however, the Federal Circuit recognized that a party's "FRAND commitments are certainly criteria relevant to its entitlement to an injunction."[20]  Notably, in applying *eBay*, the Federal Circuit has observed that "[a] patentee subject to FRAND commitments may have difficulty establishing irreparable harm" when, *inter alia*, the patent holder has agreed to widely license.[21]  In addition, monetary damages may be

---

[17] Such an approach is also consistent with how DOJ applies antitrust principles to conduct involving patents.  The Agencies apply the same analysis to conduct involving intellectual property as to conduct involving other forms of property, taking into account the specific characteristics of a particular intellectual property right.  Antitrust-IP Guidelines, *supra* note 9, § 2.1.

[18] *See Apple,* 757 F.3d at 1332.

[19] *See eBay Inc.*, 547 U.S. at 391–93 ("According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.").

[20] *Apple,* 757 F.3d at 1331-32.

[21] *Apple,* 757 F.3d at 1332.

8

SISVEL-SAMSUNG-0002077

available to redress the infringement, which also counsels against an injunction.[22] Courts must further consider the public's interest in "encouraging participation in standard-setting organizations but also in ensuring that SEPs are not overvalued."[23]

Where a SEP holder has made a voluntary F/RAND commitment, the *eBay* factors, including the irreparable harm analysis, balance of harms, and the public interest generally militate against an injunction. Although courts will review the facts in each case independently, the Agencies observe that since *eBay*, injunctive relief for a SEP subject to a F/RAND commitment has rarely been granted.[24] An injunction may be justified where an implementer is unwilling or unable to enter into a F/RAND license.[25] For example, a potential licensee could be judged unwilling to take a license if it refuses to pay what has been determined by a court or another neutral decision maker to be a F/RAND royalty.[26] By contrast, a potential licensee should not be deemed unwilling to take a F/RAND license if it agrees to be bound by an adjudicated rate determined by a neutral decision maker; if it reserves the right to challenge the validity, enforceability, or essentiality of the standards-essential patent in the context of an arbitration or F/RAND determination; or if it reserves the right to challenge the validity or essentiality of a patent after agreeing to a license.[27]

---

[22] *Id.*

[23] *Id.*

[24] *See id.*

[25] *Id.*

[26] *See Apple,* 757 F.3d at 1332.

[27] *See* Medimmune v. Genetech, 549 U.S. 118 (2007) (holding that a licensee is not required to breach a license agreement prior to seeking declaratory judgment of invalidity).

9

SISVEL-SAMSUNG-0002078

As with equitable relief, fact finders take into account "the actual [F/RAND] commitment at issue" in awarding damages for patent infringement.[28]  A F/RAND commitment does not preclude enhanced damages for willful infringement if a potential licensee acts in bad faith.[29]

In the Agencies' view, courts and other neutral decision makers in their discretion should continue to consider all relevant facts, including the F/RAND commitment and the conduct of the parties during bilateral licensing negotiations, when making remedy determinations involving standards-essential patents.  A balanced, fact-based analysis will facilitate and help to preserve competition and incentives for innovation and continued participation in voluntary, consensus-based standards-setting activity.

Widespread and efficient licensing of SEPs subject to voluntary F/RAND commitments benefits the entire standards ecosystem.  Good-faith conduct during F/RAND negotiations helps support such licensing.  Moreover, efficient negotiation of F/RAND licenses is likely to improve standardization efforts and support competition and innovation.  In contrast, opportunistic conduct by either SEP holders or implementers makes the implementation of standards more costly and deters investment in future standards development, affecting all users and producers

---

[28] Ericsson, Inc. v. D-Link Sys., Inc., 773 F.3d 1201, 1231 (Fed. Cir. 2014).  A SEP royalty "should reflect the approximate value of that technological contribution, not the value of its widespread adoption due to standardization." *Id.* at 1233.

[29] *See Apple,* 757 F.3d at 1342 (Prost, J., concurring).  *See also* Final Judgment, Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc., No. 2:14-cv-912, ECF No. 47 (E.D. Tex. Nov. 1, 2016) (awarding enhanced damages for the willful infringement of a SEP); Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc., 2016 WL 4596118, *2-*3 (E.D. Tex. 2016) (rejecting the argument that summary judgment was appropriate because enhanced damages cannot be awarded for infringing an SEP); Optis Wireless Tech., LLC v. Huawei Device USA, Inc., 421 F. Supp. 3d 410, 412 (E.D. Tex. 2019) ("in light of the verdict of willfulness, the Court awarded enhanced the damages by 25 percent" for infringement of SEPs), vacated, No. 2:17-CV-00123-JRG, 2020 WL 5034154 (E.D. Tex. Apr. 3, 2020) (vacated by settlement).

SISVEL-SAMSUNG-0002079

of standardized inputs and products, including small and large firms, inventors, and consumers. The Agencies encourage parties engaged in SEP licensing negotiations to reach consensus on F/RAND terms or on a path to determine disputed F/RAND terms or related issues, including by seeking an alternative dispute resolution mechanism or judicial F/RAND determination in a mutually agreeable forum.

SISVEL-SAMSUNG-0002080