# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br> *Plaintiff,* <br> v. <br> HP INC., <br> *Defendant.* | Case No. 2:24-cv-00752-JRG-RSP [Lead Case] <br><br> Case No. 2:24-cv-00764-JRG [Member Case] <br><br> ██████████ |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br> *Plaintiff,* <br> v. <br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. <br> *Defendants.* | Case No. 2:24-cv-00746-JRG [Member Case] <br><br> Case No. 2:24-cv-00765-JRG [Member Case] |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br> *Plaintiff,* <br> v. <br> ASKEY COMPUTER CORP., ASKEY INTERNATIONAL CORP. <br> *Defendants.* | Case No. 2:24-cv-00766-JRG [Member Case] <br><br> Case No. 2:24-cv-00753-JRG-RSP [Member Case] |

**PLAINTIFF WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SUSPENSION OF RAND OBLIGATION**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION .................................................................................................. 1

II.    UNDISPUTED MATERIAL FACTS ................................................................... 2

   A.   Wilus made a binding RAND commitment to the IEEE through its accepted IEEE LOA  2

   B.   Samsung and Askey claim rights under Wilus' RAND commitment ................................. 3

   C.   There is a reciprocal duty between SEP holders and implementers to negotiate towards a RAND license in good faith without unreasonable delay ............................................................. 3

   D.   Samsung and Askey, on one hand, and Wilus, on the other, owe duties to one another pursuant to the IEEE Bylaws ................................................................................................. 4

   E.   Wilus/Sisvel and Samsung agreed and assented to undertaking good faith RAND negotiations ........................................................................................................................ 5

   F.   The IEEE Bylaws state that if a party does not fulfill its obligation to negotiate in good faith and without unreasonable delay, the parties can alternatively litigate ............................... 6

   G.   Defendants did not provide a counteroffer to Wilus's April 2022 RAND offer until almost a year after these cases were filed, and Samsung engaged in additional bad faith conduct ............................................................................................................................. 6

III.   LEGAL STANDARD ........................................................................................... 7

IV.   ARGUMENT ........................................................................................................ 8

   A.   Samsung and Askey on One Hand, and Wilus on The Other, Have A Reciprocal Duty to Engage in Good Faith Negotiations Without Unreasonable Delay ............................................ 8

      1.   The IEEE Bylaws Require a Reciprocal Duty of Good Faith ...................................... 8

      2.   Established RAND Principles Require a Reciprocal Duty of Good Faith..................... 9

   B.   The Communications Between Wilus/Sisvel and Samsung Establish an Express Commitment to Negotiate on RAND Terms............................................................................11

   C.   Samsung and/or Askey's Failure to Negotiate in Good Faith Without Unreasonable Delay Suspends Wilus' RAND Obligations ........................................................................................11

   D.   The Court Should Rule on the Legal Effect of an Implementers' Bad-Faith or Unreasonable Delay, and Confirm that Samsung or Askey Cannot, Post-Suit, Attempt to Rewind the Clock and Abrogate Any Bad Faith ................................................................... 14

V.    CONCLUSION.................................................................................................... 15

# TABLE OF AUTHORITIES

## Cases

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
  6 F.3d 1523, 28 USPQ2d 1321 (Fed. Cir. 1993) ................................................... 8

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................ 7

*Apple Inc. v. Samsung Elecs. Co.*,
  2012 WL 1672493 (N.D. Cal. May 14, 2012) ................................................ 10, 13

*Atlas Glob. Techs. LLC v. TP-Link Techs. Co., LTD.*,
  2023 WL 5284943 (E.D. Tex. July 28, 2023) ....................................................... 9

*Authentic Apparel Grp., LLC v. United* States,
  989 F.3d 1008 (Fed. Cir. 2021) ............................................................................ 9

*Aviation Contractor Employees, Inc. v. United States*,
  945 F.2d 1568 (Fed. Cir. 1991)) ........................................................................... 9

*City of Tacoma v. United States*,
  31 F.3d 1130 (Fed. Cir. 1994) .............................................................................. 9

*Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc.*,
  2014 WL 3805817 (E.D. Tex. July 23, 2014) ....................................................... 8

*D2 Excavating, Inc. v. Thompson Thrift Constr., Inc.*,
  973 F.3d 430 (5th Cir. 2020) .............................................................................. 13

*DeSantis v. Wackenhut Corp.*,
  793 S.W.2d 670 (Tex. 1990) ................................................................................. 8

*G+ Commc'ns, LLC v. Samsung electronics co Ltd., et al*,
  2024 WL 233222 (E.D Tex, Jan. 22, 2024) .................................................... 12, 13

*Haddon Hous. Assocs., Ltd. P'ship v. United States*,
  711 F.3d 1330 (Fed. Cir. 2013) .......................................................................... 14

*Hanover Ins. Co. v. Kochhar*,
  2013 WL 12108597 (W.D. Tex. Sept. 27, 2013) ................................................. 12

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
  2018 WL 6617795 (E.D. Tex. Dec. 17, 2018) ..................................................... 10

*Huawei v. ZTE*,
  ECJ, WRP 2015 ¶ 65 ........................................................................................... 11

*Janvey v. Alguire*,
  847 F.3d 231 (5th Cir. 2017) .............................................................................. 14

*Microsoft Corp. v. Motorola, Inc.*,
  795 F.3d 1024 (9th Cir. 2015) ......................................................................... 8, 10

*Optis Wireless Tech., LLC v. Apple Inc.*,
  2021 WL 2349343 (E.D. Tex. Apr. 14, 2021) ..................................................... 12

*Premier Office Complex of Parma, LLC v. United States*,
    916 F.3d 1006 (Fed. Cir. 2019) ................................................................................. 9

*Sisvel v. Haier*,
    Case No. KZR 35/17 (Fed. Ct. Justice, Nov. 24, 2020) ........................................... 10

*United States v. Peck*,
    102 U.S. 64 26 L.Ed. 46 (1880) ................................................................................ 14

**Rules**

Fed. R. Civ. Pro. 56(a) ..................................................................................................... 7

**TABLE OF EXHIBITS & ABBREVIATIONS**

| Ex. | Document Description | Abbreviation |
|---|---|---|
| | Undisputed Material Facts | UMF |
| | Letter of Assurance | LOA |
| | Case Nos. 24-cv-0753; 24-cv-0766 | *Wilus v. Askey* |
| | Case Nos. 24-cv-0746; 24-cv-0765 | *Wilus v. Samsung* |
| A | 2014 IEEE Bylaws | |
| B | 2015 IEEE Bylaws | |
| C | Current IEEE Bylaws | |
| D | Wilus' Accepted Letter of Assurance, WILUS_0030063-WILUS_0030066. | |
| E | Rebuttal Expert Report of Paul Nikolich dated February 13, 2026 submitted on behalf of Wilus in *Wilus v. Samsung* | |
| F | Excerpts from the Opening Report of Gustav Brismark dated January 22, 2026 submitted on behalf of Wilus in *Wilus v. Samsung* matters | |
| G | Excerpts from the Opening Report of Gustav Briskmark dated January 22, 2026 submitted on behalf of Wilus in *Wilus v. Askey* matters | |
| H | Samsung's Accepted Letter of Assurance, Bates Nos. SAMSUNG_WILUS_00068935-SAMSUNG_WILUS_00068939 | |
| I | Published statement from USPTO, NIST, and DOJ, Bates Nos. SISVEL-SAMSUNG-0002070- SISVEL-SAMSUNG-0002080 | |
| J | Excerpts from Samsung's Responses to Wilus' Third Set of Requests for Admissions | |
| K | Excerpts from the Corrected Opening Report of Dave Djavaherian dated January 27, 2026 submitted on behalf of Samsung | |
| L | Excerpts from the Rebuttal Report of Dave Djavaherian dated February 13, 2026 submitted on behalf of Samsung | |
| M | Excerpts from the Rebuttal Report of Nisha Mody dated February 13, 2026 submitted on behalf of Askey | |
| N | April 8, 2022 Letter from Sisvel to Samsung re: License offer for WiFi 6 Patents, produced with Bates Nos. SAMSUNG_WILUS_00067566-SAMSUNG_WILUS_00067571 | |
| O | Excerpts from the Opening Report of Dr. M. Ray Perryman dated January 23, 2026 submitted on behalf of Samsung | |
| P | Translated version of letter from Samsung to SKT produced with Bates No. SAMSUNG_WILUS_00096983-SAMSUNG_WILUS_00096986 | |

| Q | Email from Sisvel to Samsung produced with Bates Nos. SAMSUNG_WILUS_00100591-SAMSUNG_WILUS_00100597 | |
| R | Wilus' Amended Initial and Additional Disclosures to Askey | |
| S | Wilus' Amended Initial and Additional Disclosures to Samsung | |
| T | IEEE Records of IEEE Standard Related-Patent Letters of Assurance for IEEE 802.11ax with Amendments | |
| U | Excerpts from the Opening Expert Report of Stephen M. Dell dated January 23, 2026 on behalf of Wilus in *Wilus v. Samsung* | |
| V | Excerpts from the Rebuttal Expert Report of Dr. Ray M. Perryman dated February 13, 2026 on behalf of Samsung | |
| W | Excerpts from the Opening Expert Report of Stephen M. Dell dated January 23, 2026 on behalf of Wilus in *Samsung v. Askey* | |
| X | Excerpts from the Rebuttal Expert Report of Gustav Brismark dated February 13, 2026 on behalf of Wilus in *Wilus v. Samsung* | |
| Y | April 8, 2022 Letter from Sisvel to Askey re: License offer for WiFi 6 Patents, produced with Bates Nos. WILUS_0030047-WILUS_0030052 | |
| Z | Email exchange between Sisvel and Samsung produced with Bates Nos. SISVEL-SAMSUNG-0001142- SISVEL-SAMSUNG-0001160. | |
| AA | *Sisvel v. Haier*, Case No. KZR 35/17 (Fed. Ct. Justice, Nov. 24, 2020) | |
| BB | PowerPoint presentation provided to Samsung from Sisvel produced with Bates Nos. SISVEL-SAMSUNG-0001817-SISVEL-SAMSUNG-0001832 | |
| CC | Excerpts from the February 26, 2026 Rough Deposition Transcript of Nisha Mody | |

## I.    INTRODUCTION

Wilus moves for partial summary judgment that: (a) if Samsung or Askey failed to negotiate a RAND license to the patents-in-suit in good faith, Wilus's RAND obligation is suspended as to the Defendant, and (b) Samsung's and/or Askey's post-suit conduct cannot abrogate pre-suit failure to negotiate in good faith.

It is undisputed that negotiations between Wilus and Samsung and/or Askey for rights to the patents-in-suit, which Wilus has declared essential to 802.11ax, are subject to RAND principles as a result of Wilus' submission of an LOA to the IEEE. The IEEE Bylaws explicitly state that both the SEP holder (Wilus) and the implementer (Samsung/Askey) should engage in good faith RAND negotiations without unreasonable delay. ████████████████████████████████

████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████    ███

████████████████████████████████████████████

██████████████████████████.  ████████████████

████████████████████████████████████████████

███████████████████

What the parties do dispute is the legal consequence of an implementer's bad faith RAND negotiation conduct. The answer is a matter of law. Under settled law, a party that prevents or frustrates contractual performance cannot demand continued performance from the counterparty. This basic principle applies to F/RAND obligations. If the jury finds that Samsung or Askey acted

in bad faith or with unreasonable delay during RAND license negotiations, Wilus' RAND obligation as to that party are suspended as a matter of law. Though the evidence is overwhelming, the jury will decide whether Samsung and Askey acted in bad faith and/or with unreasonable delay, but the Court must decide the legal effect of that finding.

Absent clarification, the jury will be asked to evaluate breach while being urged, incorrectly by Samsung[1] and its experts, that Wilus' RAND obligations continue regardless of Samsung's conduct, or if Samsung decides years after malfeasance to begin acting in good faith prior bad faith is completely abrogated. That unconscionable and untenable position, which effectively excuses years of bad faith conduct after Wilus is forced to litigate, would mistake the governing law and be contrary to the IEEE Bylaws as well as core contract principles.

## II.    UNDISPUTED MATERIAL FACTS

### A.    Wilus made a binding RAND commitment to the IEEE through its accepted IEEE LOA

1.     Wilus has asserted that the Patents-in-Suit are essential to the IEEE 802.11ax Standard. *See e.g.*, Dkt. No. 1; Ex. R at 7; Ex. S at 9; Ex. M at p. 7.

2.     On January 15, 2021, Wilus submitted an LOA to the IEEE Standards Association Board Patent Committee, disclosing that it may own patent claims that are essential to the 802.11ax Standard (Ex. D) and Wilus' LOA was accepted by the IEEE on January 18, 2021 (Ex. E at ¶ 32; Ex. T).

3.     Pursuant to the LOA, Wilus committed to licensing its essential patents for "Reasonable Rates" "with reasonable terms and conditions that are demonstrably free of unfair discrimination." Ex. D at 1-2. *See also*, Ex. V at ¶ 143. This is hereinafter referred to as "RAND".

---

[1] Samsung has served rebuttal expert opinions on RAND compliance.  Askey has not and Wilus' expert opinions on Askey's RAND noncompliance are unrebutted in that case.

4.      Wilus' LOA states "the IEEE Patent Policy and the procedures used to execute that policy are documented in the IEEE-SA Standards Board Bylaws and the IEEE-SA Standards Board Operations Manual." Ex. D.

5.      Samsung and Askey are, *inter alia*, third-party beneficiaries of Wilus' RAND commitment to the IEEE. Dkt. No. 106 at ¶¶ 48, 50-51, 62, 64-65; Dkt. No. 107 at ¶¶ 17, 48, 50-51, 61, 63-64; Ex. O at ¶ 169; Ex. K at ¶ 39.

### B.      Samsung and Askey claim rights under Wilus' RAND commitment

7.      Samsung asserts counterclaims alleging Wilus breached its RAND obligations under the IEEE Patent Policy (Dkt. No. 107 at 52-55, ¶¶ 46-58; Dkt. No. 106 at 55-58, ¶¶ 46-59) and that Wilus breached its RAND commitment by negotiating in bad faith (Dkt. No. 107 at 55-58, ¶¶ 59-71; Dkt. No. 106 at 58-62, ¶¶ 60-73).

8.      Samsung has also alleged, through its experts, that Wilus' reasonable royalty damages sought and any request for injunction violate the IEEE Patent Policy and Wilus' RAND commitment. Ex. O at ¶¶ 79, 169; Ex. K at ¶¶ 34, 45, 75, 79-80; Ex. L at ¶¶ 38-42; Ex. U at ¶ 274; Ex. V at ¶ 141-142.

9.      Damages and injunctive relief in the Askey case also depend, at least in part, on whether the patents-in-suit are encumbered by RAND, as both side's damages experts have considered and/or assumed the patents-in-suit to be F/RAND-encumbered. Ex. W at ¶¶ 158, 172, 174-176, 178-179; Dkt. No. 228 at 1-2, 11, 13; Ex. CC at 65:4-13; Ex. Y; Ex. R.

### C.      There is a reciprocal duty between SEP holders and implementers to negotiate towards a RAND license in good faith without unreasonable delay

10.     IEEE standardization participants are required to comply with the IEEE Bylaws. Ex. E at ¶ 17; *see generally*, Ex. B-C.

11.     Wilus and Samsung participated in IEEE 802.11ax standardization activities. Ex. J

at RFA No. 27, 29; Dkt. No. 1.

12.     Samsung submitted an LOA to the IEEE for the 802.11ax Standard (Ex. H) and admitted that it owns patents essential to the IEEE 802.11ax Standard (Ex. J at RFA Nos. 25, 33).

13.     Although there have been revisions to the bylaws over the years, the intent of the bylaws has remained consistent. Ex. E at ¶ 27.

14.     The IEEE-SA Bylaws' Patent Policy, since March 15, 2015, has enacted, in pertinent part, a reciprocal duty of good faith negotiation, as well as a proscription against "unreasonable delay":

> "The Submitter and the Applicant should engage in good faith negotiations (if sought by either party) without unreasonable delay or may litigate … over patent validity, enforceability, essentiality, or infringement; Reasonable Rates or other licensing terms and conditions; compensation for unpaid past royalties or a future royalty rate…"
> Ex. B at §§ 6.2 at p. 18; Ex. C at §§ 6.2 at 18.

15.     For the purposes of this motion, Wilus is the "Submitter" and Defendants are the "Applicant." Ex. B at § 6.1; Ex. C at § 6.1 (defining that the Submitter is the licensor and the Applicant is the licensee during negotiations).

**D.     Samsung and Askey, on one hand, and Wilus, on the other, owe duties to one another pursuant to the IEEE Bylaws**

16.     Wilus is bound by its contractual commitment pursuant to its accepted LOA (Ex. D), requiring Wilus to license its 802.11ax SEPs on RAND terms pursuant to the IEEE Patent Policy. Ex. O ¶ 169; Dkt. No. 107 at ¶¶ 9, 23; Dkt. No. 106 at ¶¶ 9, 23.

17.     Samsung and Askey are required by the IEEE Patent Policy to "engage in good faith negotiations (if sought by [Wilus]) without unreasonable delay…" Ex. B at §§ 6.2 at 18; Ex. C at §§ 6.2 at 18.

18.     Samsung is also member of the IEEE. Ex. J at RFA Nos. 27, 29.

19.     Samsung also admits it is an intended third-party beneficiary of Wilus contractual

licensing commitment to the IEEE. Dkt. No. 107 at ¶ 51; Dkt. No. 106 at ¶ 51; Ex. O at ¶ 169; Ex. K at ¶ 46.

**E.    Wilus/Sisvel and Samsung agreed and assented to undertaking good faith RAND negotiations**

20.    On April 8, 2022, Sisvel approached Samsung and Askey on behalf of Wilus offering to license the Asserted Patents on RAND terms. Exs. N, Y; *see also*, Ex. F at ¶¶ 109-116; Ex. K at ¶¶ 47, 61; Ex. G at ¶¶ 107-114.

21.    ███████████████████████████████████████████

███████████████████████████████████████████

███████  Ex. Z at -1157; *see also*, Ex. F at ¶ 119; Ex. K at ¶ 61.

22.    Sisvel/Wilus responded confirming the party's commitment to continue negotiations towards a RAND license in good faith without undue delay: ███████████

███████████████████████████████████████████

███████. Ex. Z at -1156.

23.    Sisvel continued negotiations with Samsung on behalf of Wilus for over three years. Ex. F at ¶¶ 119-135, 137-142, 145-148.

24.    Both Samsung and Wilus/Sisvel recognized the duty of good faith and negotiating without undue delay underlying the RAND commitment. Ex. Z at -1157; Ex. Q; Ex. K at ¶¶ 75, 78; Ex. L at ¶ 40; Ex. O at ¶ 169.

25.    Askey's expert does not rebut Wilus' expert opinion that Askey acted in bad faith with unreasonable delay during negotiations with Sisvel/Wilus, nor does she dispute that the RAND obligation is presently suspended. *See generally*, Ex. M.

**F.    The IEEE Bylaws state that if a party does not fulfill its obligation to negotiate in good faith and without unreasonable delay, the parties can alternatively litigate**

26.    From 2015, onwards, the IEEE Patent Policy made clear that if an "Applicant" (e.g., Samsung and Askey) does not fulfil its obligation to negotiate in good faith without unreasonable delay, the "Submitter" (e.g., Wilus) may "litigate … over … Reasonable Rates or other reasonable licensing terms and conditions; compensation for unpaid past royalties or a future royalty rate." Ex. B at § 6.2; Ex. C at § 6.2.

27.    The IEEE Patent Policy therefore describes that a failure of Samsung and Askey to negotiate in good faith without unreasonable delay permits litigation damages as an alternate path to compensation for infringement. *See e.g.,* Ex. E at ¶ 65; Ex. F at ¶ 178; Ex. G at ¶¶ 150-151.

28.    There is no provision in the IEEE Bylaws stating that, after litigation is filed, a licensor or licensee may begin good faith negotiations to vitiate this provision. *See generally*, Exs. A-C.

**G.    ███████████████████████████████████████████████████ and Samsung engaged in additional bad faith conduct**

29.    Though not strictly necessary to decide this motion, it is notable that, after Wilus's April 2022 initial RAND offer, ███████████████████████████████████████ ████████████████████████████████ Ex. G at ¶¶ 126-127; Ex. F at ¶¶ 146, 148.

30.    These lawsuits were filed approximately 2.5 years after Wilus' initial offer to Samsung and Askey in April 2022. *See e.g.*, Exs. N, Y; Dkt. No. 1. *See also*, Ex. G at ¶¶ 126-127; Ex. F at ¶¶ 146, 148.

31.    ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

32. 

*See also*, Ex. F at ¶¶ 137-138.

## III.    LEGAL STANDARD

A party may, as here, move for partial summary judgment on "a claim or defense — or the part of each claim or defense." Fed. R. Civ. Pro. 56(a). A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. A dispute of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## IV.    ARGUMENT

### A.    Samsung and Askey on One Hand, and Wilus on The Other, Have A Reciprocal Duty to Engage in Good Faith Negotiations Without Unreasonable Delay

It is undisputed that a party's RAND commitments to a Standard Setting Organization ("SSO") are contractual. Since standards from the SSO's "often incorporate patented technology, all manufacturers who implement a standard must obtain a license to use those standard-essential patents." *Microsoft Corp. v. Motorola, Inc*., 795 F.3d 1024, 1030 (9th Cir. 2015). "Based on the bylaws of the IEEE, letters of assurance ("LOA") to the organization constitute binding contractual commitments". *Commonwealth Sci. & Indus. Rsch. Organisation v. Cisco Sys., Inc*., 2014 WL 3805817, at *3 (E.D. Tex. July 23, 2014), *vacated and remanded on other grounds*, 809 F.3d 1295 (Fed. Cir. 2015) (citations omitted). Because RAND obligations are contractual, they are enforced, and limited by, traditional doctrines of contract law, including breach, prevention, and discharge.[2] Here, the IEEE Bylaws and Samsung's conduct create a reciprocal obligation of good faith during negotiations. UMF ¶¶ 16-25.

### 1.    The IEEE Bylaws Require a Reciprocal Duty of Good Faith

It is undisputed that Wilus' submission of an LOA to the IEEE constitutes a contractual commitment to license the patents essential to the 802.11ax standard on a RAND basis. UMF ¶ 16. The analysis of the RAND commitment begins with the language of the contract itself. *Atlas*

---

[2] State law applies to breach of contract claims. *See e.g.*, *Microsoft Corp. v. Motorola, Inc*., 795 F.3d 1024, 1040 (9th Cir. 2015) (applying Washington state contract law to the breach of IEEE RAND commitment, explaining breach of contract claims are "not a patent law action" and are subject to interpretation under state contract law); *Am. Med. Sys., Inc. v. Med. Eng'g Corp*., 6 F.3d 1523, 1532, 28 USPQ2d 1321, 1327 (Fed. Cir. 1993) ("State law ... controls in matters of contract law and interpretation."). In Texas, when there is no choice of law clause, the law of the state with the most significant relation to the dispute controls. *DeSantis v. Wackenhut Corp*., 793 S.W.2d 670, 679 (Tex. 1990). Here, Samsung, Askey and Wilus are all non-U.S. entities that have each chosen this Court in Texas to decide their RAND disputes.

*Glob. Techs. LLC v. TP-Link Techs. Co., LTD*., 2023 WL 5284943, at *3 (E.D. Tex. July 28, 2023), *report and rec. adopted*, 2023 WL 5279456 (E.D. Tex. Aug. 16, 2023). Contract interpretation is a question of law generally amenable to summary judgment. *Authentic Apparel Grp., LLC v. United* States, 989 F.3d 1008, 1014 (Fed. Cir. 2021) (citing *Premier Office Complex of Parma, LLC v. United States*, 916 F.3d 1006, 1011 (Fed. Cir. 2019)).

The IEEE Patent Policy and RAND framework make clear that RAND negotiations require a reciprocal duty of the SEP holder and licensee to engage in good faith negotiations without unreasonable delay, or alternatively, litigate. Section 6.2 of the current IEEE bylaws states:

> The Submitter and the Applicant should engage in good faith negotiations (if sought by either party) without unreasonable delay or may litigate … over patent validity, enforceability, essentiality, or infringement; Reasonable Rates or other licensing terms and conditions; compensation for unpaid past royalties or a future royalty rate…
> Ex. B at §§ 6.2 at p. 18; Ex. C at §§ 6.2 at 18.

This provision has remained the same since 2015 (UMF ¶¶ 13-14) and unmistakably sets forth a reciprocal obligation of good faith without unreasonable delay. UMF ¶ 27. While the pre-2015 IEEE Bylaws do not expressly reference a duty of good faith, such duty is implied by the RAND commitment, which anticipates the patent holder and implementer to engage in future negotiations. *See e.g., City of Tacoma v. United States*, 31 F.3d 1130, 1132 (Fed. Cir. 1994) ("This court has recognized that a contract term which allows for future negotiation 'impliedly places an obligation on the parties to negotiate in good faith.'" (citing *Aviation Contractor Employees, Inc. v. United States*, 945 F.2d 1568, 1572 (Fed. Cir. 1991)). As opined by Mr. Nikolich, the intent of the bylaws has remained consistent despite the slight modifications over the years. UMF ¶ 13. Defendants' experts do not dispute this opinion. *See generally*, Exs. L-M, O, V.

### 2. Established RAND Principles Require a Reciprocal Duty of Good Faith

Rulings from this country and around the world confirm the principle that ***bilateral*** good

faith negotiations are essential to RAND. The obligation "to grant irrevocable licenses on fair, reasonable, and non-discriminatory terms and conditions" "at the very least create[s] a duty to negotiate in good faith." *Apple Inc. v. Samsung Elecs. Co*., 2012 WL 1672493, at *12 (N.D. Cal. May 14, 2012); *Microsoft Corp. v. Motorola, Inc*., 2012 WL 4827743, at *6 (W.D. Wash. Oct. 10, 2012) ("Motorola's commitments to the IEEE and ITU require that it negotiate in good faith towards RAND terms."). In the 3GPP FRAND context, this Court has ruled that this duty is reciprocal: "Samsung's proposal is one-sided as it does not consider the possibility of bad faith of a standard-implementer. As discussed [ ], the duty of good faith is reciprocal." *Id.* at *2. *See also*, *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 2018 WL 6617795, at *6 (E.D. Tex. Dec. 17, 2018) ("the FRAND commitment requires that good faith negotiations be conducted bilaterally"). The IEEE Bylaws explicitly set forth a reciprocal good faith negotiation construct, so this Court's rulings in *G+* and *HTC* are even more strongly supported here.

Courts outside the United States have similarly held that RAND requires a reciprocal duty of good faith without unreasonable delay between an SEP holder and an implementer. The Court of Justice of the European Union has also emphasized RAND's "mutual obligation to engage in constructive exchanges aimed at achieving a fair balance of the interests involved." *Sisvel v. Haier*, Case No. KZR 35/17 at 9, ¶ 65 (Fed. Ct. Justice, Nov. 24, 2020)  (Ex. AA). The court in *Sisvel v. Haier* further emphasized that "accepted business practices and […] in good faith," prohibit "pursuing delaying tactics in response" to RAND negotiations. *Id*. at 9, ¶ 64. These requirements are also in line with Union Law, as outlined in *Huawei v. ZTE*, which held that "it is incumbent on the infringer to respond to the patent proprietor's offer with diligence, in accordance with accepted commercial practices in the field and in good faith, which must be determined on the basis of objective factors and implies, *inter alia*, that delaying tactics are not being pursued." *Id*. at 16,

10

¶ 77, citing *Huawei v. ZTE*, ECJ, WRP 2015, at 1080, ¶ 65.

**B.    The Communications Between Wilus/Sisvel and Samsung Establish an Express Commitment to Negotiate on RAND Terms**

In addition to the IEEE Patent Policy and established RAND principles, ███████ ████████████████████████████████████████████████████████████████

established a reciprocal obligation of good faith.

Wilus, through its licensing manager Sisvel, presented Samsung with its initial offer to that a license to its Wi-Fi 6 portfolio, which includes the patents-in-suit, on April 8, 2022. UMF ¶ 20. On April 27, 2022, Samsung wrote Sisvel/Wilus in response "███████████████████ ████████████████████████████████████████ *Id.* at ¶ 21. The following day, Sisvel/Wilus confirmed the party's commitment to continue negotiations towards a RAND license in good faith without delay: ███████████████████████████████████████████ ████████████████████████████████████". UMF ¶ 22. Over the years that followed, the parties reconfirmed multiple times the bilateral RAND and good faith commitment. *See e.g.*, Ex. BB at -1831 ██████████████████████████████████████████████ ████████████████████████████████████████████████") (emphasis in original); Ex. Q ████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████

Samsung thus, through words and its initial conduct, assented to negotiate in good faith with Wilus/Sisvel.

**C.    Samsung and/or Askey's Failure to Negotiate in Good Faith Without Unreasonable Delay Suspends Wilus' RAND Obligations**

The failure to negotiate a RAND license in good faith without undue delay suspends the RAND obligations of the counterparty. This Court has previously ruled:

It is both practical and logical that the obligations of a party acting in good faith be suspended when a counterparty to a negotiation for a FRAND license is acting in bad faith. If the counter party is acting in bad faith, it is impossible for negotiations for a "fair" and "reasonable" and "non-discriminatory" contract to proceed. To hold otherwise would strain logic and reason.

*G+ Commc'ns, LLC v. Samsung electronics co Ltd., et al*, 2024 WL 233222, at *6 (E.D Tex, Jan. 22, 2024) .

If Samsung or Askey are found to have negotiated in bad faith[3] or engaged in unreasonable delay during negotiations, there is no way for Wilus to comply with its contractual RAND commitment. As the Court ruled previously, "suspension of the duty to negotiate in good faith is tantamount to suspension of any duty to negotiate altogether. The Court is not aware of any authority [ ] requiring a party to continue to negotiate with a counterparty who has descended into bad faith in the negotiation process." *Id.* at *6, fn 6. "Such a suspension can counter the effects of holding up and holding out." *Id*. at *6.

This Court's ruling in *G+* is confirmed by the plain language of the IEEE Patent Policy, which directs the SEP holder and potential licensee negotiate in good faith without unreasonable delay or litigate. UMF ¶ 14. The alternate litigation path shows that the refusal of either party to engage in good faith negotiations without unreasonable delay suspends RAND negotiations and allows them to go to court and apply, for example, U.S. patent damages law, to decide "Reasonable Rates or other licensing terms and conditions; compensation for unpaid past royalties or a future royalty rate.". *Id*. It is nonsensical that an implementer would be able to benefit from a SEP holder's RAND commitment, while preventing the SEP holder's ability to comply with such commitment.

---

[3] A lack of good faith is synonymous with bad faith. *See, e.g., Optis Wireless Tech., LLC v. Apple Inc.*, 2021 WL 2349343, at *3 & n.1 (E.D. Tex. Apr. 14, 2021) (discussing the ETSI RAND obligation in terms of bad faith); *Hanover Ins. Co. v. Kochhar*, 2013 WL 12108597, at *2 (W.D. Tex. Sept. 27, 2013) (equating "Bad faith, or the lack of good faith").

The USPTO, NIST, and DOJ also issued a guidance consistent with this understanding:

> When good faith negotiations fail and the parties cannot agree on alternative dispute
> resolution or to seek a F/RAND determination in a mutually agreeable jurisdiction,
> the existence of F/RAND or similar commitments and the individual circumstances
> of licensing negotiations between patent holders and potential licensees **will affect
> the appropriate remedy for infringement of a valid and enforceable SEP**.

Ex. I at –2076 (emphasis added).

The failure to engage in good faith RAND negotiations can result in a suspension of the
RAND commitment, *e.g.,* acting in bad faith "will affect the appropriate remedy for infringement".
The USPTO, NIST, and DOJ further stated that "[a] F/RAND commitment does **not** preclude
enhanced damages for willful infringement if a potential licensee acts in bad faith." *Id*. at -2079
(emphasis added). This confirms that any remedies or damages cap RAND principles may place
are lifted if an implementer negotiates in bad faith.

The logical and legal conclusion is that if either party breaches the RAND commitment, it
can no longer benefit from the counterparty's RAND commitment. The Federal Circuit has
confirmed that RAND caps on remedies, including injunction, can be lifted if there is unreasonable
delay on the part of an implementer. *Apple Inc. v. Motorola, Inc*., 757 F.3d 1286, 1331-32 (Fed.
Cir. 2014) ("[A]n injunction may be justified where an infringer unilaterally refuses a FRAND
royalty or unreasonably delays negotiations to the same effect."). This Court has ruled that if "hold-
out" (i.e., unreasonable delay) occurs, the SEP holder is free to pursue lawful remedies. *G+
Commc'ns, LLC*, 2024 WL 233222, at *6. This Court reasoned, if demands are made in bad faith,
the SEP owner is not obligated to remain at the negotiating table and may avoid extortion." *Id*.

Further, it is a bedrock principle of contract law that "the conduct of one party to a contract
which prevents the other from performing his party is an excuse for non-performance". *D2
Excavating, Inc. v. Thompson Thrift Constr., Inc*., 973 F.3d 430, 437 (5th Cir. 2020), quoting *United*

13

*States v. Peck*, 102 U.S. 64, 65, 26 L.Ed. 46 (1880); *see also, Haddon Hous. Assocs., Ltd. P'ship v. United States*, 711 F.3d 1330, 1338 (Fed. Cir. 2013). "If a contract ceases to be binding in whole or in part because of impracticality, public policy, nonoccurrence of a condition, or present or prospective failure of performance, the right of any beneficiary is to that extent discharged or modified." Restatement 2d of Contracts § 309. Further, "[a] beneficiary's right against the promisor is subject to any claim or defense arising from his own conduct or agreement." *Id*. Defendants' failures to negotiate in good faith without unreasonable delay necessarily prevented Wilus' from entering a RAND license pursuant to its agreement with the IEEE. Defendants cannot now attempt to benefit from Wilus' RAND commitment when it prevented Wilus' ability to perform. Nor can they avoid the duty of good faith required by the terms of the contract. *Janvey v. Alguire*, 847 F.3d 231, 243 (5th Cir. 2017) ("the third-party beneficiary doctrine prevents the intended beneficiary of a contract from avoiding the terms of the contract.").

Neither RAND, IEEE IPR Policy, nor general principles of contract law require a SEP holder to continue attempting RAND license terms where an implementer is engaging in bad faith or undue delay during RAND negotiations. To hold otherwise would eliminate consequences for bad faith, incentivize strategic delay, incentivize efficient infringement, contradict contract law, and undermine the purpose of RAND.

**D.**    **The Court Should Rule on the Legal Effect of an Implementers' Bad-Faith or Unreasonable Delay, and Confirm that Samsung or Askey Cannot, Post-Suit, Attempt to Rewind the Clock and Abrogate Any Bad Faith**

The Court should also rule that, after this litigation is filed, Samsung or Askey cannot belatedly attempt to rewind the clock and abrogate their bad faith simply by attempting to restart negotiations in good faith. Samsung appears to be arguing that, regardless of whatever bad faith and or delay may have occurred in the past, if Samsung decides at any point in time to reinstate

14

good faith negotiations, that erases the past. This is an unconscionable reading of the contractual obligations and promotes efficient infringement.

Bad faith and unreasonable delay on the part of the implementer have lasting consequences, and as a matter of contract law, the legal effects of such conduct should not be vitiated by a belated re-starting of good faith. Textually, the IEEE Bylaws recognizes this by offering branching paths 1) good faith expedient negotiations; or 2) litigate. Samsung and Askey's bad faith and unreasonable delay have forced Wilus down the latter path. There is no provision in the IEEE Bylaws allowing for resumption of good faith negotiations after repudiation. Therefore, the Court should additionally order that Samsung or Askey's post-suit conduct cannot abrogate its pre-suit bad faith and/or unreasonable delay.

## V.    CONCLUSION

Plaintiff respectfully requests an order holding that: (a) if Samsung or Askey failed to negotiate a RAND license to the patents-in-suit in good faith, Wilus's RAND obligation is suspended as to the Defendant acting in bad faith, and (b) Samsung's and/or Askey's post-suit conduct cannot abrogate pre-suit failures to negotiate in good faith.

Dated: March 2, 2026                    Respectfully submitted,

*/s/ Reza Mirzaie*
Marc Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Dale Chang
CA State Bar No. 248657
Email: dchang@raklaw.com
Neil A. Rubin

CA State Bar No. 250761
Email: nrubin@raklaw.com
Jacob Buczko
CA State Bar No. 269408
Email: jbuczko@raklaw.com
Jonathan Ma
CA State Bar No. 312773
Email: jma@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474


Of Counsel:

Andrea L. Fair
State Bar No. 24078488
MILLER FAIR HENRY, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)
E-mail: andrea@millerfairhenry.com

**ATTORNEYS FOR PLAINTIFF,
Wilus Institute of Standards and
Technology Inc.**

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the following document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Reza Mirzaie* _____

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on March 2, 2026, with a copy of this document via electronic mail.

*/s/ Reza Mirzaie*
Reza Mirzaie

1