# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> HP INC., <br><br> Defendant. | Civil Action No. 2:24-cv-0752-JRG-RSP <br> **LEAD CASE** |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> ASKEY COMPUTER CORP. and ASKEY INTERNATIONAL CORP., <br><br> Defendants. | Case No. 2:24-cv-00753-JRG-RSP <br> **Member Case** |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., <br><br> Defendants. | Case No. 2:24-cv-00746-JRG-RSP <br> **Member Case** |

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., | )<br>)<br>) |
| Plaintiff, | ) Case No. 2:24-cv-00764-JRG-RSP<br>) **Member Case** |
| v. | ) |
| HP INC., | ) |
| Defendant. | ) |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., | )<br>) |
| Plaintiff, | ) Case No. 2:24-cv-00765-JRG-RSP<br>) **Member Case** |
| v. | ) |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | ) |
| Defendants. | ) |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., | ) |
| Plaintiff, | ) Case No. 2:24-cv-00766-JRG-RSP<br>) **Member Case** |
| v. | ) |
| ASKEY COMPUTER CORP. and ASKEY INTERNATIONAL CORP., | ) |
| Defendants. | ) |

**ASKEY DEFENDANTS' MOTION TO EXCLUDE WILUS'S EXPERT OPINIONS OF MR. STEPHEN DELL**

## **TABLE OF CONTENTS**

I.  BACKGROUND ........................................................................................................1

    A.  Wilus Withheld Its Damages Theory and All Factual Bases...................................1

    B.  Mr. Dell's Opinions Rely Extensively on a Vacated Decision and Order in *Ericsson v. D-Link* to Justify Royalty Range of $0.05 to $0.11 ................2

    C.  Mr. Dell Failed to Apportion the Value of the Seven Asserted Patents Out of Hundreds of Patents Alleged to be Essential...................................3

II. ARGUMENT ............................................................................................................4

    A.  Wilus Did Not Disclose Its *Ericsson v. D-Link* ▮▮▮▮ Preventing Askey from Taking Relevant Discovery ................................4

    B.  Mr. Dell's Opinions are Unreliable for Relying on a Vacated 2013 Decision, Ignoring Wilus's Own Contemporary Licenses, and For Failing to Apportion...............................................................................6

        1.  Mr. Dell relies on a vacated *Ericsson v. D-Link* decision with all underlying patents invalidated and with no technical or economic comparability.........................................................6

        2.  Mr. Dell fails to apportion the royalty rate to account for the unasserted patents and patent families........................................9

    C.  Mr. Dell's Impermissible Opinions Concerning Suspending FRAND Obligations..................................................................................12

III. CONCLUSION........................................................................................................12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ericsson, Inc. v. D-Link Sys., Inc.*,
  773 F.3d 1201 (Fed. Cir. 2014) ................................................................................... *passim*

*GREE, Inc. v. Supercell Oy*,
  No. 2:19-CV-70-JRG, 2020 WL 4288350 (E.D. Tex. July 27, 2020) ..................................12

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
  607 F. Supp. 3d 464 (D. Del. 2022) ........................................................................................8

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ................................................................................................................6

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012) .........................................................................................7, 8, 11

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ...........................................................................................7, 8

*Metaswitch Networks Ltd. v. Genband*
  US LLC, No. 2:14-CV-744-JRG-RSP, 2016 WL 874775 (E.D. Tex. Mar. 7, 2016) ............................................................................................................................12

*Procter & Gamble Co. v. Paragon Trade Brands, Inc.*,
  989 F. Supp. 547 (D. Del. 1997) .............................................................................................7

*Rex Med., L.P. v. Intuitive Surgical, Inc.*,
  156 F.4th 1289 (Fed. Cir. 2025) .............................................................................................9

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ...............................................................................................6

*United States v. Oti*,
  872 F.3d 678 (5th Cir. 2017) ................................................................................................12

*VirnetX, Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014) ......................................................................................6, 8, 9

**Other Authorities**

Fed. R. Civ. P. 26(e) ......................................................................................................................5

Fed. R. Civ. P. 37(b)(2)(A)(ii) .......................................................................................................4

Fed. R. Civ. P. 37(c)(1)..................................................................................................................4

Fed. R. Evid. 702 .................................................................................................................6, 12

Defendants Askey Computer Corp. and Askey International Corp. (collectively, "Askey") respectfully move to exclude the testimony of Mr. Stephen Dell, Plaintiff's expert concerning damages. Wilus did not disclose its intent to rely on a vacated jury verdict in the *Ericsson v. D-Link* case as a ▮▮▮▮▮▮▮ the fundamental basis underlying for Mr. Dell's opinions. Wilus's failure to disclose was unjustified and deprived Askey of any opportunity to serve discovery or obtain relevant information from Wilus and/or third parties.

In addition, Mr. Dell's reliance on the vacated jury verdict—from a 2013 litigation involving unrelated parties and unrelated patents—to establish both the starting point for his royalty rate and consist of the entirety of his apportionment effort results in an unreliable analysis, one in which Mr. Dell's royalty rate for the seven asserted patents is more than twice the published rate for a license to Wilus's entire patent portfolio. The Court must exercise its gatekeeping function to preclude improper expert testimony.

**I.      BACKGROUND**

   **A.      Wilus Withheld Its Damages Theory and All Factual Bases**

During discovery, Askey sought the complete basis for Wilus's measure and calculation of all damages. Defendants' Interrogatory No. 5 specifically requested:

> *For each of the Asserted Patents*, and the Wilus Alleged SEPs, *describe in complete detail and identify documents that support your contention as to the measure and proper calculation of any and all damages and harm claimed against Defendants* in this litigation to you, including, without limitation, an explanation of the measure and *proper calculation, if any, of a reasonable royalty*, royalty base, and your contention, if any, regarding the appropriate terms and conditions for a license to each of the Asserted Patents and/or the Wilus Alleged SEPs, including your contentions, if any, regarding the appropriate FRAND terms and conditions.

Ex. A, at 9 (emphasis added). In response, Wilus stated that it "expects a royalty rate may be determined *from licensing evidence*, including *licenses entered for the Asserted Patents* through its licensing agent, Sisvel, industry licensing, and HP's licenses." Ex. B, 30 (emphasis added).

1

Wilus indicated it "will supplement its responses hereto and accompanying evidence as discovery in this case proceeds." *Id.*, 32-33.

Mr. Dell was first retained by Wilus in late 2024 and he began drafting his expert opinion in the middle of 2025, months before the close of fact discovery. Ex. C, at 16:21-24, 115:21-25, 116:1-6. Wilus supplemented its interrogatory response one time, near the close of fact discovery, only to refer to attempts to license or otherwise monetize the asserted patents. Ex. B, at 22-25, 33. Wilus never disclosed or suggested that its expert would abandon all licensing evidence and rely instead on a vacated jury verdict from *Ericsson v. D-Link* as a ▮▮▮▮ driving his analysis *Id.* at 27-33. No party sought discovery from or related to Ericsson or D-Link.

### B. Mr. Dell's Opinions Rely Extensively on a Vacated Decision and Order in *Ericsson v. D-Link* to Justify Royalty Range of $0.05 to $0.11

In his expert report, Mr. Dell appears to give no meaningful weight to the "licensing evidence" Wilus recited in its interrogatory response and instead relied exclusively on an alleged ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Rather than use the rate apparent from dozens of licenses that include the asserted patents, Mr. Dell relies on this single district court decision as the starting point for his analysis. Ex. C, at 81:12-15. The *Ericsson* decision identified an ongoing royalty of $0.15 per unit for three patents, but the basis for that calculation was not described. Ex. D. The Court also indicated that "[t]here is no need for the Court to determine an appropriate RAND royalty for the infringed patents because the jury already determined a reasonable royalty for those same patents." *Id.*, at 42. Mr. Dell indicated he understands that $0.15 was the amount determined by the jury, but he has not considered any of the underlying facts or information for his opinions in this case. Ex. C, at 89:14-25; 91:11-92:2.

In 2014, the Federal Circuit vacated the jury award and ongoing royalty Mr. Dell relied on:

2

> [W]e find that the district court committed legal error in its jury instruction by: (1) failing to instruct the jury adequately regarding Ericsson's actual RAND commitment; (2) failing to instruct the jury that any royalty for the patented technology must be apportioned from the value of the standard as a whole; and (3) failing to instruct the jury that the RAND royalty rate must be based on the value of the invention, not any value added by the standardization of that invention— while instructing the jury to consider irrelevant *Georgia–Pacific* factors. We think that these errors collectively constitute prejudicial error.
>
> …
>
> We therefore vacate the jury's damages award and remand for further proceedings consistent with this opinion. . . . Because we vacate the jury's damages award, moreover, we also vacate the court's ongoing royalty award.

*Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1235 (Fed. Cir. 2014). The three Ericsson patents were invalidated, and the case ended without further reasonable royalty findings. *See* Exs. E, F.

### C. Mr. Dell Failed to Apportion the Value of the Seven Asserted Patents Out of Hundreds of Patents Alleged to be Essential

Relying the vacated *Ericsson v. D-Link* verdict as his alleged ▬▬▬ Mr. Dell failed to conduct any apportionment required by the Federal Circuit precedent. Wilus has 57 patent families that it alleges are essential to the Wi-Fi 6 standard. Ex. G, at 107:23-108:6. The published rate for a license to all 57 Wilus patent families is $0.15 per unit. Ex. H, ¶ 68. Wilus has only asserted 7 patents from 4 patent families in this case, and each of the four patent families includes patents that have not been asserted. Ex. C, at 66:20-69:10, 71:2-11.

Mr. Dell offers no opinions apportioning the value of the asserted patents as compared to the other patents Wilus contends are essential. Mr. Dell acknowledges that "apportionment for the value of the patented features must be accounted for in determining reasonable royalty damages" (Ex. H, ¶ 124), but opines that "the $0.05 to $0.11 per patent, per unit rates resulting from the *Ericsson v. D-Link* litigation are already apportioned." (*Id.*, ¶ 258-259). Accordingly, Mr. Dell's sole consideration for determining the incremental value of the seven patents asserted in this case, as distinguished from the universe of non-asserted, but allegedly essential patents, is a verdict that

3

the Federal Circuit vacated for failure to correctly instruct the jury on apportionment principles. The result is that Mr. Dell's allegedly apportioned $0.36 per unit rate for the seven patents-in-suit is more than twice the $0.15 published rate for a license that covers *all* 57 Wilus patent families.

## II. ARGUMENT

### A. Wilus Did Not Disclose Its *Ericsson v. D-Link* ▮▮▮ Preventing Askey from Taking Relevant Discovery

In discovery, Wilus disclosed only that damages should be determined "from licensing evidence, including licenses entered for the Asserted Patents through its licensing agent," but Mr. Dell's analysis discards the dozens of licenses that include the patents-in-suit in favor of a previously undisclosed ▮▮▮ analysis. Wilus's withholding of the ▮▮▮ analysis prevented Askey from obtaining relevant discovery from Wilus and third parties.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), *the party is not allowed to use that information* or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). In view of such failure, the Court may issue sanction, including "(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii).

Wilus did not disclose Mr. Dell's ▮▮▮ theory or the factual basis for it in discovery. Wilus's interrogatory responses indicate only that Wilus "expects a royalty rate may be determined *from licensing evidence.*" Ex. B, at 30 (emphasis added). Wilus never mentioned *Ericsson v. D-Link* (a litigation result, not licensing activity). *Id.*, at 27-33. Wilus did not reference the Ericsson patents or the D-Link products or provide any suggestion that either is relevant to this case. *Id.* Wilus did not disclose a $0.05 per unit ▮▮▮ or suggests that such amount is technically or economically comparable in any way to the hypothetical negotiation in this case. *Id.*

4

In view of the importance Mr. Dell places on the *Ericsson v. D-Link* case, Wilus's failure to disclose the ▮▮▮▮▮ theory was not substantially justified. Mr. Dell uses the *Ericsson v. D-Link* decision as the starting point for his royalty rate and as the entirety of his apportionment analysis. Ex. H, ¶¶ 525-261. Mr. Dell relies on the case to override the impact of 40 actual licenses that include the actual patent-in-suit. Moreover, Mr. Dell has been retained in this case since 2024 and began writing his report last summer, months before the close of fact discovery. Ex. C, at 16:21-24, 115:21-25, 116:1-6. Wilus had an obligation to update its discovery responses to disclose the information that Mr. Dell would rely on. Fed. R. Civ. P. 26(e).

Wilus's withholding of the factual basis for Mr. Dell's damages analysis was not harmless. Mr. Dell relies on conclusory opinions from Dr. Haas about the technical comparability of the Ericsson patents and asserted Wilus patents. Ex. H, at ¶ 246. And though not a technical expert himself, Mr. Dell relies on his own opinion that the Ericsson products are comparable to the products at issue in this case. Ex. H, ¶¶ 243-244; Ex. C, at 78:5-12. Dr. Haas did not consider the D-Link products and offered no related opinion. Ex. I. Because of Wilus's withholding of information, Askey was prevented from seeking discovery from Wilus, Ericsson, or D-Link on this topic. No discovery was taken—by either party—from Ericsson regarding the licenses in that litigation and/or any economic comparability to the circumstances in this case. No discovery was taken—by either party—from D-Link regarding the products involved in that litigation and their technical comparability to the accused Askey products. Askey was prevented from obtaining discovery from Wilus regarding its understanding of the case and/or its applicability to damages.

Because Wilus did not disclose Mr. Dell's ▮▮▮▮▮ theory in discovery, and its failure to do so was not substantially justified or harmless, the Rules dictate that the Court should bar Wilus from relying on the alleged ▮▮▮▮▮▮▮▮▮▮▮" or $0.05 royalty rate at trial.

5

### B. Mr. Dell's Opinions are Unreliable for Relying on a Vacated 2013 Decision, Ignoring Wilus's Own Contemporary Licenses, and For Failing to Apportion

In addition, Mr. Dell's opinions and undisclosed ▓▓▓▓▓ theory—from a 2013 *Ericsson v. D-Link* decision that the Federal Circuit vacated in 2014—are unreliable and fail to meet the standards for admissibility.

Federal Rule of Evidence 702 allows a jury to hear expert testimony only if its proponent can establish that the testimony is based on "sufficient facts or data," is the "product of reliable principles and methods," and if it "will help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-97 (1994). The district court's "gatekeeping obligation" applies to all types of expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Like any expert testimony, expert opinions concerning patent damages must be based on sound economic principles and reliable data. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011). The Court has an obligation to shield the jury from unreliable opinions that violate established apportionment standards. *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328-1329 (Fed. Cir. 2014).

Mr. Dell's opinions (1) rely on a litigation induced royalty in an unrelated matter that was vacated by the Federal Circuit; (2) ignore dozens of licenses involving the patents-in-suit; and (3) fail to apportion the value of the seven asserted patents out of over one hundred non-asserted U.S. patents, which Wilus also contends are essential to the same Wi-Fi 6 standard.

#### 1. Mr. Dell relies on a vacated *Ericsson v. D-Link* decision with all underlying patents invalidated and with no technical or economic comparability.

Mr. Dell relies on the vacated *Ericsson v. D-Link* decision as his sole ▓▓▓▓▓ to override over forty licenses to the patent-in-suit, presenting an unsound methodology that the Court should exclude.

6

Mr. Dell derives his $0.09 per patent family rate *solely* by adjusting the rate of $0.15 for three later-invalidated patents from a 2013 *Ericsson v. D-Link* decision. The Federal Circuit held that the rate was the product of prejudicial error (*Ericsson*, 773 F.3d at 1235), a fact Mr. Dell neither acknowledges nor addresses. A correctly apportioned royalty rate for the Ericsson patents was never determined, because all three underlying patents were invalidated. Exs. E, F. Mr. Dell did not consider any underlying facts and relied solely on the vacated decision. Ex. C, at 91:4-92:2; 92:17-94:5. Accordingly, Mr. Dell's reliance on the *Ericsson v. D-Link* rate is unreliable.

Moreover, Mr. Dell has not established that the *Ericsson v. D-Link* rate, which came not from a license but a vacated decision, is economically comparable to the asserted patents and Askey products. "[L]icenses relied on by the patentee in proving damages [must be] sufficiently comparable to the hypothetical license in suit." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009). Actual licenses to the patents-in-suit are highly probative to the proper amount and form of a reasonable royalty. *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012); *Procter & Gamble Co. v. Paragon Trade Brands, Inc.*, 989 F. Supp. 547, 607 (D. Del. 1997). The *Ericsson v. D-Link* case (1) did not involve the patents-in-suit, (2) did not involve the same licensor or licensee, (3) did not involve the same products, (4) did not involve the same Wi-Fi standard, (5) occurred years before the hypothetical negotiation, (6) was not a negotiated, out-of-court license agreement, and (7) was the product of litigation. Importantly, by relying on the vacated *Ericsson* rate for unrelated and invalidated patents as the sole ▓▓▓▓▓, Mr. Dell ignored over 40 non-litigation induced licenses that include the same, exact patents-in-suit and the same, exact version of the standard.

Mr. Dell also fails to account for technical comparability. "When relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies

7

or licenses does not suffice." *LaserDynamics*, 694 F.3d at 79. The patentee bears the burden of proving that the licenses at issue are sufficiently comparable. *Lucent*, 580 F.3d at 1329. "[C]ourts performing reasonable royalty calculations [must] exercise vigilance when considering past licenses to technologies *other* than the patents-in-suit," and "must account for differences in the technologies and economic circumstances of the contracting parties." *VirnetX*, 767 F.3d at 1330 (quotations omitted) (emphasis in original). Ultimately, "[t]he testimony of a damages expert in a patent suit who relies on noncomparable licenses in reaching his royalty rate should be excluded." *IOENGINE, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 501 (D. Del. 2022).

Neither Mr. Dell nor Dr. Haas meaningfully assess the comparability of the *Ericsson* patents to the patents-in-suit. Ignoring that the two patents are decades apart and relate to two distinct, years-apart Wi-Fi standards, Dr. Haas simply concluded, without explanation, that "this [Wilus] patent has comparable benefits to the Infringed Patents, because it provides similar benefits of throughput, reliability and efficiency gains to the Wi-Fi network." *See* Ex. I, ¶¶ 74-76. This does not prove comparability, especially because all three of the Ericsson patents were all deemed invalid, which Dr. Haas was not aware of until his deposition. Ex. J, at 51:13-19 ("This is the first time that I hear that any of those three patents of Erickson, that you called Erickson patents, have been invalidated. I didn't know. You just told me this for the first time I hear it."); 51:20-53:17. Further, Dr. Haas offers no opinion regarding the accused D-Link products at all and how they compare to the accused Askey products. Ex. I. And Mr. Dell is not a technical expert. Ex. C, at 25:8-19; 78:13-79:11. Because the vacated *Ericsson v. D-Link* decision is neither technically nor economically comparable to the hypothetical negotiation, Mr. Dell's analysis is unreliable.

8

### 2. Mr. Dell fails to apportion the royalty rate to account for the unasserted patents and patent families.

Damages must be assessed to reflect *only* the value of the asserted patents. Under § 284, damages awarded for patent infringement "must reflect the value attributable to the infringing features of the product, and no more." *Ericsson*, 773 F.3d at 1226. "The essential requirement" for reliability under *Daubert* 'is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.'" *Id.* Consequently, to be admissible, expert opinions must separate the value of the allegedly infringing features from the value of all other features. *VirnetX*, 767 F.3d at 1329; *see also Rex Med., L.P. v. Intuitive Surgical, Inc.*, 156 F.4th 1289, 1299-1300 (Fed. Cir. 2025).

The apportionment applies with equal force in the case of standard essential patents. As explained in *Ericsson*:

> As with all patents, the royalty rate for SEPs must be apportioned to the value of the patented invention. *Garretson*, 111 U.S. at 121, 4 S.Ct. 291; *see also Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co.*, 225 U.S. 604, 617, 32 S.Ct. 691, 56 L.Ed. 1222 (1912) ("[Plaintiff] was only entitled to recover such part of the commingled profits as was attributable to the use of its invention."). When dealing with SEPs, there are two special apportionment issues that arise. First, the ***patented feature must be apportioned from all of the unpatented features*** reflected in the standard. Second, ***the patentee's royalty must be premised on the value of the patented feature***, not any value added by the standard's adoption of the patented technology. These steps are necessary to ensure that the royalty award is based on the incremental value that the patented invention adds to the product, not any value added by the standardization of that technology.

*Ericsson*, 773 F.3d at 1232 (emphasis added). "Just as we apportion damages for a patent that covers a small part of a device, we must also apportion damages for SEPs that cover only a small part of a standard." *Id.*, at 1232-33.

Wilus maintains that it holds fifty-seven patent families that are *all* essential to the Wi-Fi 6 standard. Ex. G, at 107:13-108:14. Wilus has not identified any patent as having more value than any other. *Id.*, *see also* Ex. K, at 141:21-24, 145:7-23; 123:4-16. Wilus's technical expert, Dr.

9

Haas, similarly testified that he "does not know how you would put value on a patent." Ex. J, at 18:25-20:19. He did not consider Wilus's other patents. Ex. J, at 17:20-18:24. Wilus has only asserted patents from 4 out of its 57 allegedly essential patent families. Thus, 53 unasserted Wilus patent families and over 100 unasserted U.S. patents are not part of Wilus's damages claims. Ignoring the unasserted patents, Mr. Dell suggests the asserted patents are value drivers without analyzing any technical or economical contribution of the asserted patents as compared to the fifty-three patent families Wilus did not assert (which are alleged essential).

Rather than rely on the 40+ licenses that included the patents-in-suit and attempt to determine what portion of the published rates are attributable to the seven asserted patents, Mr. Dell asserts that no apportionment is necessary. Citing no facts or reasoning from the vacated *Ericsson v. D-Link* verdict, he alleges those rates "are already apportioned to account for the fact that the comparable router products at issue in that matter included *features, functionalities, technologies, and other factors* unrelated to the Ericsson Patents that *contributed the success* of those products." Ex. H, ¶ 258 (emphasis added). He simply concluded that his opined rates "inherently apportioned." *Id.*, ¶ 259. He thus impermissibly abandons *any* apportionment for the asserted patents to account for other patents essential to the standard.

Mr. Dell's methodology fails to meet the *Daubert* requirements for reliability. First, Mr. Dell cannot just assume the rate applied by the jury in *Ericsson* was correctly apportioned. He has no factual basis to do so. Indeed, the Federal Circuit vacated the very jury verdict in 2014. *Ericsson*, 773 F.3d at 1232 (vacating the reasonable royalty finding because the jury was not correctly instructed on apportionment principles), yet Mr. Dell still blindly relied on the verdict now in 2026. Further, Mr. Dell did not consider any of the underlying facts in *Ericsson*, and

Wilus's failure to disclose Mr. Dell's ■■■■ theory prevented Askey from obtaining discovery regarding Ericsson's licenses or any apportionment.

Second, even if the *Ericsson* jury had been correctly instructed on apportionment (it was not), Mr. Dell cannot reasonably assume that the same apportionment would apply here, in a case involving different patents, different products, different parties, and a different Wi-Fi standard. In view of all of the differences, and the fact that these cases are more than two decades apart, Dr. Haas's conclusory opinion that Wilus's asserted patents are somehow technically "comparable" to the Ericsson patents that expired long ago carries no weight. *See LaserDynamics*, 694 F.3d at 79-80. Importantly, Dr. Haas did not (and could not) opine on the incremental value of the Ericsson patents or relative contribution of those patents to the earlier standard, or the extent to which the relative contribution of those patents is the same as the contribution of the seven patents asserted here (where there are thousands of patents allegedly essential to the standard).

As a separate failure to apportion, Mr. Dell applies royalties by "patent family" incorrectly captures patents that have not been asserted by Wilus. Each of the asserted patents is part of a larger patent family having unasserted patents. Mr. Dell ignores the unasserted patents, makes no adjustment, and includes those unasserted patents in his purported damages. Ex. C, at 62:14-24 ("Q. In that case, you didn't consider the incremental value of the asserted patents versus the nonasserted patents in the same families, right? A. I didn't compare it relative to those patents, but I looked at comparable rates. . . ."). In Mr. Dell's analysis, if the patent family has one asserted patent, and three unasserted patents, the rate is $0.09 regardless. Ex. C, at 10:13-11:24. If a family has three asserted patents and two unasserted patents, the rate is $0.09 regardless. *Id.* If an asserted patent were removed from the case or invalidated, the rate for the remaining patents would still be

11

$0.09 regardless. *Id.* Mr. Dell's failure to distinguish the patents-in-suit on an individual basis is yet another way his analysis fails to apportion damages to reflect the patents actually asserted.

Failing to apportion as the law requires, Mr. Dell applies a $0.36 per unit royalty for just 4 patent families (out of 57 Wilus patent families), despite Wilus's own published rate for licensing all 57 patent families is $0.15 per unit.

### C. Mr. Dell's Impermissible Opinions Concerning Suspending FRAND Obligations

Mr. Dell alleged bad faith on Askey's part (Ex. C, at 107:6-108:13) to suspend Wilus's FRAND obligation (Ex. H, at ¶¶ 141, 148, 172, 178, 274, 284, 285), but neither opinion is appropriate expert testimony. Experts are not permitted to provide legal conclusions. *United States v. Oti*, 872 F.3d 678, 691 (5th Cir. 2017) ("An expert witness is not permitted to offer conclusions of law" and cannot "tell the jury what result to reach."). An expert witness may not offer legal conclusions such as whether parties are bound by a FRAND obligation. *See Metaswitch Networks Ltd. v. Genband* US LLC, No. 2:14-CV-744-JRG-RSP, 2016 WL 874775, at *2 (E.D. Tex. Mar. 7, 2016). And an expert witness may not testify regarding subjective intent. *See GREE, Inc. v. Supercell Oy*, No. 2:19-CV-70-JRG, 2020 WL 4288350, at *2 (E.D. Tex. July 27, 2020) ("[I]t is improper for an expert to opine as to the subjective belief or intent of a corporate entity."). Thus, the Court should exclude Mr. Dell's opinions concerning conclusions of law or Askey's intent.

### III. CONCLUSION

Because Mr. Stephen Dell's expert opinions contain theories and facts that Wilus withheld from discovery, relied on a vacated verdict from *Ericsson v. D-Link* as his purported ▮▮▮ and failed to apportion based on the seven asserted patents, the Court should exclude Mr. Dell's opinions. His opinions are unreliable and fail to meet the requirements of Rule 702 of Federal Rules of Evidence and this Court's precedent for qualified expert testimony.

| | |
|---|---|
| Dated: March 2, 2026 | Respectfully submitted, |

/s/ Jeffrey D. Smyth

Trey Yarbrough
Bar No. 2213350
**YARBROUGH WILCOX, PLLC**
100 E. Ferguson Street, Suite 1015
Tyler, TX 75702
Tel: (903) 595-3111
Fax: (903) 595-0191
Email: trey@yw-lawfirm.com

Ming-Tao Yang (*pro hac vice*)
Jeffrey D. Smyth (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW
 GARRETT & DUNNER, LLP**
3300 Hillview Avenue, 2nd Floor
Palo Alto, CA 94304
Tel: (650) 849-6600
Fax: (650) 849-6666
Email: ming.yang@finnegan.com
Email: jeffrey.smyth@finnegan.com

*Attorneys for Defendants Askey Computer Corp.
and Askey International Corp.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 2, 2026, a complete copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and served via email on all counsel of record.

                                         */s/ Jeffrey D. Smyth*
                                         Jeffrey D. Smyth

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that pursuant to Local Rule CV-7(h) counsel for Askey has conferred with counsel for Plaintiff and the relief requested in this motion is opposed.

                                         */s/ Jeffrey D. Smyth*
                                         Jeffrey D. Smyth

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned hereby certifies that the following document is authorized to be filed under seal pursuant to the Protective Order entered in this case

                                         */s/ Jeffrey D. Smyth*
                                         Jeffrey D. Smyth