███████████████████████████

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.,<br><br>          Plaintiff,<br><br>v.<br><br>HP INC.<br><br>          Defendant. | Civil Case No. 2:24-cv-00752-JRG [Lead Case]<br><br>JURY TRIAL DEMANDED |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.,<br><br>          Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.<br>          Defendants. | Civil Case No. 2:24-cv-00746-JRG [Member Case]<br><br>JURY TRIAL DEMANDED |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.,<br><br>          Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.<br>          Defendants. | Civil Case No. 2:24-cv-00765-JRG [Member Case]<br><br>JURY TRIAL DEMANDED |

███████████████████████████

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br>          Plaintiff, <br><br> v. <br><br> ASKEY COMPUTER CORP., ASKEY INTERNATIONAL CORP. <br><br>          Defendants. | Civil Case No. 2:24-cv-00766-JRG [Member Case] <br><br> JURY TRIAL DEMANDED |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br>          Plaintiff, <br><br> v. <br><br> ASKEY COMPUTER CORP., ASKEY INTERNATIONAL CORP. <br><br>          Defendants. | Civil Case No. 2:24-cv-00753-JRG-RSP [Member Case] <br><br> JURY TRIAL DEMANDED |

**SAMSUNG'S MOTION FOR SUMMARY JUDGMENT
THAT THE ASSERTED CLAIMS ARE DIRECTED TO
<u>UNPATENTABLE SUBJECT MATTER UNDER 35 U.S.C. § 101, *ALICE* STEP ONE</u>**

████████████████████████████████

## TABLE OF CONTENTS

TABLE OF EXHIBITS ................................................................................................... v

TABLE OF ABBREVIATIONS ...................................................................................... v

I.   STATEMENT OF ISSUES TO BE DECIDED ..................................................... 1

II.  GOVERNING LAW ............................................................................................. 1

III. STATEMENT OF UNDISPUTED MATERIAL FACTS .................................... 2

IV.  ARGUMENT ........................................................................................................ 2

     A.   The Asserted Claims of the '077 Patent Are Directed to an
          Abstract Idea ............................................................................................... 2

          1.   Claim 1 of the '077 Patent Is Representative................................. 2

          2.   The Claims Are Directed to the Abstract Idea of Receiving
               and Decoding Data Including Determining an Amount of
               Received Data ................................................................................. 3

     B.   The Asserted Claims of the '281 and '595 Patents Are Directed to
          an Abstract Idea ........................................................................................... 4

          1.   Claim 1 of the '281 Patent and Claim 1 of the '595 Patent
               Are Representative .......................................................................... 4

          2.   The Claims Are Directed to the Abstract Idea of Identifying
               Unused Resources ........................................................................... 5

     C.   The Asserted Claims of the '210 Patent Are Directed to an
          Abstract Idea ............................................................................................... 7

          1.   Claim 1 of the '210 Patent Is Representative................................. 7

          2.   The Claims Are Directed to the Abstract Idea of Receiving
               and Decoding Data........................................................................... 8

     D.   The Asserted Claims of the '163 and '597 Patents Are Directed to
          an Abstract Idea ........................................................................................... 9

          1.   Claim 1 of the '163 Patent Is Representative................................. 9

          2.   The Claims Are Directed to the Abstract Idea of
               Disallowing Operation Based On a Group Identifier .............................. 10

i

███████████████████████

      E.     The Asserted Claims of the '035 and '879 Patents Are Directed to an Abstract Idea ................................................................................. 12

           1.     Claim 1 of the '879 Patent Is Representative ............................................ 12

           2.     The Claims Are Directed To the Abstract Idea of Sending a Message that Temporarily Changes the Recipient's Behavior ................................................................................. 13

V.     CONCLUSION ................................................................................. 14

████████████████████████

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016)................................................................4, 9

*AI Visualize, Inc. v. Nuance Commc'ns, Inc.*,
  97 F.4th 1371 (Fed. Cir. 2024) .......................................................................11

*Alice Corp. Pty. v. CLS Bank International*,
  573 U.S. 208 (2014)................................................................................ *passim*

*Beteiro, LLC v. DraftKings Inc.*,
  104 F.4th 1350 (Fed. Cir. 2024) ...........................................................10, 11, 12

*Bilski v. Kappos*,
  561 U.S. 593 (2010)........................................................................................11

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)..........................................................................................1

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
  776 F.3d 1343 (Fed. Cir. 2014)........................................................................1

*Elec. Power Group, LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)..................................................................3, 4, 8

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
  60 F.4th 1349 (Fed. Cir. 2023) ....................................................................3, 8

*Intell. Ventures I LLC v. Symantec Corp.*,
  838 F.3d 1307 (Fed. Cir. 2016)....................................................................6, 13

*In re Killian*,
  45 F.4th 1373 (Fed. Cir. 2022) .......................................................................11

*Maxell Ltd. v. Huawei Device USA Inc.*,
  No. 5:16-CV-00178-RWS, 2018 U.S. Dist. LEXIS 235718 (E.D. Tex. Mar. 29, 2018) ........................................................................................................3

*Orange Elec. Co. Ltd. v. Autel Intelligent Tech. Corp., Ltd.*,
  2:21-CV-00240-JRG, Dkt. 148 (E.D. Tex. May 3, 2023) ......................................1

*PersonalWeb Techs. LLC v. Google LLC*,
  8 F.4th 1310 (Fed. Cir. 2021) .......................................................................14

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
  No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) ..............................1

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
  855 F.3d 1322 (Fed. Cir. 2017).................................................................................................3

*Tech. in Ariscale, LLC v. Razer USA Ltd.*,
  No. 2024-1657, 2026 WL 34497 (Fed. Cir. Jan. 6, 2026) ....................................................3, 8

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017)........................................................................................4, 5, 6, 9

**Statutes**

35 U.S.C. § 101 ................................................................................................... *passim*

████████████████████████████

## TABLE OF EXHIBITS

| # | Description |
|---|---|
| 1 | U.S. Patent 10,313,077 |
| 2 | U.S. Patent 10,687,281 |
| 3 | U.S. Patent 11,470,595 |
| 4 | U.S. Patent 11,159,210 |
| 5 | U.S. Patent 11,129,163 |
| 6 | U.S. Patent 11,700,597 |
| 7 | U.S. Patent 11,116,035 |
| 8 | U.S. Patent 11,516,879 |
| 9 | '281 patent File History, Notice of Allowance (Feb. 5, 2020) |
| 10 | '595 patent File History, Notice of Allowance (July 22, 2022) |
| 11 | de la Iglesia Rebuttal Report |
| 12 | Ahn Deposition |

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| '077 patent | U.S. Patent 10,313,077 |
| '281 patent | U.S. Patent 10,687,281 |
| '595 patent | U.S. Patent 11,470,595 |
| '210 patent | U.S. Patent 11,159,210 |
| '163 patent | U.S. Patent 11,129,163 |
| '597 patent | U.S. Patent 11,700,597 |
| '035 patent | U.S. Patent 11,116,035 |
| '879 patent | U.S. Patent 11,516,879 |

The asserted claims are directed to unpatentable subject matter.  The  claims are focused on the abstract ideas of receiving and decoding data including determining an amount of received data ('077 patent); identifying unused resources ('281 and '595 patents); receiving and decoding data ('210 patent); disallowing operation on the basis of a group identifier ('163 and '597 patents); and sending a message that temporarily changes the recipient's behavior ('035 and '879 patents). As such, the Court should grant summary judgment that the asserted claims are directed to unpatentable abstract ideas under 35 U.S.C. § 101 and the framework set forth in *Alice Corp. Pty. v. CLS Bank International*, 573 U.S. 208, 216 (2014).

## I.     STATEMENT OF ISSUES TO BE DECIDED

Whether the asserted claims of the Asserted Patents (Exs. 1-8) are directed to unpatentable abstract ideas under step one of the *Alice* framework.[1]

## II.    GOVERNING LAW

Summary judgment is warranted when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  This Court is well-versed in the *Alice* two-step analysis for § 101 and we do not repeat that here.  *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). The Court may rely on representative claims in a § 101 analysis where claims are "substantially similar and linked to the same abstract idea."  *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014); *see also Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc*., No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8-9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where

---

[1] Samsung limits the inquiry of this motion to *Alice* step one for efficiency's sake—given the Court's practice of submitting the step two inquiry to the jury.  *See e.g., Orange Elec. Co. Ltd. v. Autel Intelligent Tech. Corp., Ltd*., 2:21-CV-00240-JRG, Dkt. 148 (E.D. Tex. May 3, 2023).

the other claims were "substantially similar" and "linked to the same abstract idea").

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

The asserted claims are claims 1, 3-5, 8 of the '077 patent; claims 1-4, 6 of the '281 patent; claims 1-5 of the '595 patent; claims 1-5 of the '210 patent; claims 1-5 of the '163 patent; claims 1-2, 5, 9, 12 of the '597 patent; claims 1-5 the '035 patent; and claims 1-5 of the '879 patent.

## IV.    ARGUMENT

### A.    The Asserted Claims of the '077 Patent Are Directed to an Abstract Idea

#### 1.    Claim 1 of the '077 Patent Is Representative

Independent claim 1 of the '077 patent is directed to the abstract idea of receiving and decoding data including determining an amount of received data. The independent claim recites: 1) receive a non-legacy physical layer frame, 2) obtain length information from the frame's legacy signaling field, 3) obtain other information through a remaining value obtained by dividing the length information by three, and 4) determine the number of symbols of data of the non-legacy physical layer frame according to the following equation,

$$N_{SYM} = \left\lfloor \left( \frac{L\_LENGTH + m + 3}{3} \times 4 - T_{HE\_PREAMBLE} \right) \Big/ T_{SYM} \right\rfloor - b_{PE\_Disambiguity}$$

. Ex. 1, cl. 1. Determining an amount of received data is an abstract idea in and of itself, but is also a conventional component of decoding data.

Independent claim 8 is a method corresponding to claim 1, and is also directed to the same abstract idea. *Id*., cl. 8. Similar to the independent claim limitations, the dependent claim limitations are also linked to the same receive/decode-oriented (and thus ineligible) claim language, and thus, they do not alter the § 101 analysis. *Id*., cls. 3-5. As such, claim 1 is representative for the § 101 analysis.

████████████████████████

2.      **The Claims Are Directed to the Abstract Idea of Receiving and Decoding Data Including Determining an Amount of Received Data**

The asserted claims recite the abstract idea of receiving and decoding data including determining an amount of received data. Precedent is clear that receiving and decoding data is an abstract idea. *Tech. in Ariscale, LLC v. Razer USA Ltd.*, No. 2024-1657, 2026 WL 34497, at *1–3 (Fed. Cir. Jan. 6, 2026) (finding that a "'…method for decoding a transmission signal' that comprises steps including 'receiving,' 'deinterleaving,' 'combining,' and 'decoding' the information in the transmission signal" is an abstract idea); *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357 (Fed. Cir. 2023) ("[E]ncoding and decoding image data and ... converting formats, including when data is received from one medium and sent along through another, are by themselves abstract ideas.") (citation omitted).

Additionally, while part of decoding, the asserted claims determine an amount of received data via a formula for calculating the number of data symbols in a frame according to a straightforward mathematical relationship. This too is abstract. *See*, *e.g.*, *Elec. Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) ("[W]e have treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category."); *Maxell Ltd. v. Huawei Device USA Inc.*, No. 5:16-CV-00178-RWS, 2018 U.S. Dist. LEXIS 235718, at *27 (E.D. Tex. Mar. 29, 2018) (finding "collecting and calculating metrics associated with a group and then selecting a particular object within a specified group" an abstract idea). Even if it is considered to be separate, a combination of abstract concepts cannot become less abstract by stringing them together. *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017) ("Adding one abstract idea (math) to another abstract idea (encoding and decoding) does not render the claim non-abstract.").

Further, claim 1 is not limited to any specific wireless technology, but even assuming it is so limited, the claimed technique for receiving/decoding data including determining an amount of received data does "not change its character as information" or otherwise make it less abstract. *Elec. Power Grp.,* 830 F.3d at 1353 ("[W]e have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas."); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1259 (Fed. Cir. 2016) ("[M]erely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract.").

Finally, the claim language also fails to disclose "specific means or method[s]" for the recited functions and instead "merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017). Claim 1 does not describe any improvement in technology that performs this abstract idea, but merely relies on generic technologies to perform this idea. Claim 1 recites "a wireless communication terminal," whose hardware, as recited in the claim language, comprise in its entirety (1) "a transceiver" and (2) "a processor" which is configured to perform certain functions. These functions consist of receiving, obtaining, and decoding data, using existing IEEE 802.11 procedures and functionality.

Thus, claim 1 is directed to an abstract idea. For the same reasons, dependent claims 2-5 and independent claim 8 are also directed to the same abstract idea under *Alice* step one.

**B.    The Asserted Claims of the '281 and '595 Patents Are Directed to an Abstract Idea**

**1.    Claim 1 of the '281 Patent and Claim 1 of the '595 Patent Are Representative**

The asserted claims of the '281 patent (Ex. 2) and the '595 patent (Ex. 3) are directed to the same abstract idea of identifying unused resources. Independent claim 1 of the '281 patent and independent claim 1 of the '595 patent recite: (1) receive information describing a shared

4

communication resource; (2) determine, from received signaling, which portions of that resource are unused (unassigned); (3) use multiple pieces of information to identify those unused portions; (4) and use the identification of unused resources when processing a communication. Further, claim 1 of the '281 patent recites that the unused-resource information is determined through a combination of bandwidth signaling and a resource-unit allocation field that together indicate punctured (unused) portions of the bandwidth; and claim 1 of the '595 patent recites that the unused-resource identification includes explicit identification of the resource unit located in the center of the channel.

Dependent claims 2-4, 6 of the '281 patent and dependent claims 2-5 of the '595 patent are also linked to the abstract idea of identifying unused resources and include limitations that do not alter the § 101 analysis. Claim 1 of the '281 patent and claim 1 of the '595 patent are thus representative.

## 2.    The Claims Are Directed to the Abstract Idea of Identifying Unused Resources

The claims of the '281 and '595 patents are directed to the patent-ineligible abstract idea of identifying unused resources within a shared environment (a well-known concept that can be performed by humans) and applying the abstract idea to existing wireless communication.  The claims recite the abstract concept of using certain existing fields to identify unused resources.  This is a fundamental organizational activity performed by humans for centuries in contexts such as seating management, scheduling, parking allocation, and storage assignment.

The claims challenged here are analogous to a claim found to be abstract in *Two-Way Media Ltd. v. Comcast Cable Communications, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017).  There, the claim recited a "method for forwarding [] information" in a "communications network" that required "processing one or more streams of audio or visual information into one or more streams

of packets for forwarding over the communications network" and "forwarding the digital packets to the users in response to information selection signals received from the users," along with additional steps for monitoring and logging the receipt of the packets. *Id.* at 1335. The Federal Circuit agreed that the claim was directed to the abstract idea of "(1) sending information, (2) directing the sent information, (3) monitoring the receipt of the sent information, and (4) accumulating records about receipt of the sent information." *Id.* at 1337. Claims 1 of the '281 and '595 patents similarly recites (1) receive a wireless packet, (2) read the bandwidth information from the packet, (3) determine which resources are not used, and (4) decode the packet using that information.

Further, the claims are directed to an abstract idea because it merely implements a long-standing human practice—identifying unused resources—a fundamental activity that arises in everyday contexts such as allocating parking spaces, managing available seating, or scheduling unused time slots. *See Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016) (finding an email processing software program to be abstract through comparison to a "brick-and-mortar" post office). Claim 1does not recite any technological improvement; instead, it relies on generic processing to determine which resource units are unassigned, mirroring these well-known, longstanding human resource-allocation tasks. For example, just as a parking attendant checks which spots are empty before directing a driver, the claimed method identifies unused portions of a channel before processing the packet. And just as a hostess surveys which tables are unoccupied before seating guests, the claimed method determines which resource units are not in use before decoding. And just as a scheduler finds gaps in a calendar to place new appointments, the claimed method identifies unassigned resource units to interpret the incoming transmission. This logical practice of identifying unused resources is a human activity pre-dating

the patents' December 2015 asserted priority date. Humans have had to identify which of the shared resources are assigned/unassigned to a particular entity, like in the above examples. Identifying unused resources in wireless communications also predates the asserted priority date.

The purported solution recited in claim 1 of the '281 patent is to simply provide some puncturing information via one signaling field (i.e., bandwidth field) and provide additional puncturing information via another signaling field (i.e., resource unit allocation field). *See* '281 patent File History, Notice of Allowance (Feb. 5, 2020) (Ex. 9) at 4 (explaining the reason for allowance was the use of the bandwidth field in combination with the resource unit allocation field to indicate the unassigned resource unit). This is merely the abstract idea of identifying unused resources (punctured channels), applied to Wi-Fi transmissions using the combination of two existing signaling fields.

Similarly, the purported solution recited in claim 1 of the '595 patent is to simply provide assignment information for the center-26 resource unit, but only for "the bandwidth field being 80 MH or more, not 20 MHz or 40 MHz." *See* '595 patent File History, Notice of Allowance (July 22, 2022) (Ex. 10) at 4 (explaining the reason for allowance was providing assignment information for the center-26 resource unit on 80MHz or greater bandwidth, and that this concept existed for lower bandwidths). This is merely the abstract idea of identifying unused resources (center-26 resource unit), applied to Wi-Fi transmissions for certain bandwidths.

Thus, the claims of the '281 and '595 patents are directed to an abstract idea under *Alice* step one.

### C. The Asserted Claims of the '210 Patent Are Directed to an Abstract Idea

#### 1. Claim 1 of the '210 Patent Is Representative

Independent claim 1 of the '210 patent is directed to the abstract idea of receiving and decoding data. Claim 1 recites generic components including 1) a communication unit; and 2) a

processor configured to process signals transmitted and received through the communication unit. Ex. 4, cl. 1. The claimed processor is configured to 1) receive data, *i.e.*, a high efficiency multi-user PHY protocol data unit (HE MU PPDU), and 2) decode data, *i.e.*, the received HE MU PPDU based on information obtained from the HE MU PPDU's preamble. *Id*. The preamble includes high efficiency signal A field (HE-SIG-A) and high efficiency signal B field (HE-SIG-B). Claim 1 contains decoding-based rules which are based on information extracted from the preamble, such as the # of users in the HE-SIG-A (e.g., if # of users is two or more, then the user specific field of the HE-SIG-B includes user fields for MU-MIMO allocation). In sum, claim 1 merely receives and decodes data based on a few rules.

Similar to the independent claim limitations, the dependent claim limitations are also linked to the same receive/decode-oriented (and thus ineligible) claim language, and thus, they do not alter the § 101 analysis. Ex. 4, cls. 2-5.

## 2. The Claims Are Directed to the Abstract Idea of Receiving and Decoding Data

The claims recite the abstract concept of receiving and decoding data. Precedent is clear that receiving and decoding data is an abstract idea. *Tech. in Ariscale, LLC v. Razer USA Ltd.*, No. 2024-1657, 2026 WL 34497, at *1–3 (Fed. Cir. Jan. 6, 2026) (finding that a "'…method for decoding a transmission signal' that comprises steps including 'receiving,' 'deinterleaving,' 'combining,' and 'decoding' the information in the transmission signal" is an abstract idea); *Hawk Tech. Sys.*, 60 F.4th at 1357 ("[E]ncoding and decoding image data and ... converting formats, including when data is received from one medium and sent along through another, are by themselves abstract ideas.") (citation omitted).

Further, the decoding rules for a HE MU PPDU in claim 1 do "not change its character as information" or otherwise make it less abstract. *Elec. Power Grp.,* 830 F.3d at 1353 ("[W]e have

8

treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas."); *see also Affinity Labs of Texas,* 838 F.3d at 1259 ("[M]erely limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract.").

Further, the claim language also fails to disclose "specific means or method[s]" for the recited functions and instead "merely invokes generic processes and machinery." *Two-Way Media Ltd.,* 874 F.3d at 1337. Claim 1 does not describe any improvement in technology that performs this abstract idea, but merely relies on generic, conventional technologies to perform this idea. Claim 1 recites "a wireless communication terminal," whose hardware, as recited in the claim language, comprise in its entirety (1) "a communication unit" and (2) "a processor" which is configured to perform certain functions. These functions consist of receiving and decoding data, using existing IEEE 802.11 procedures and functionality.

Thus, claim 1 is directed to an abstract idea. For the same reasons, dependent claims 2-5 are also directed to the same abstract idea under *Alice* step one.

### D.    The Asserted Claims of the '163 and '597 Patents Are Directed to an Abstract Idea

#### 1.    Claim 1 of the '163 Patent Is Representative

Claim 1 of the '163 patent is representative of claims 2-5 of the '163 patent and claims 1, 2, 5, 9, and 12 of the '597 patent.  Claim 1 of the '163 patent recites:

> A wireless communication terminal communicating wirelessly, the wireless communication terminal comprising:
>
> a transceiver; and
>
> a processor,
>
> wherein the processor is configured to receive a physical layer convergence procedure (PLCP) Processing Data Unit (PPDU) by using the transceiver,

9

████████████████████████████████

> and not to use a Basic Service Set (BSS) color when signaling information indicates that an operation based on the BSS color is not allowed,
>
> wherein the BSS color is an identifier of a BSS,
>
> wherein the signaling information is transmitted from a base wireless communication terminal to which the wireless communication terminal is associated.

Ex. 5 ('163 patent), cl. 1.

Claim 1 of the '597 patent is nearly identical to claim 1 of the '163 patent, except that it requires (1) receiving a "physical layer convergence procedure (PLCP) **Protocol** Data Unit (PPDU)" and (2) the processor to be configured "not to use a Basic Service Set (BSS) color **indicated by the PPDU** when signaling information indicates that an operation based on the BSS color is not allowed." Ex. 6 ('597 patent), cl. 1. Claim 9 of the '597 patent is a method claim with the same limitations as claim 1 of the '597 patent. *See id*., cl. 9. Dependent claims 2-5 of the '163 patent and claims 2, 5, and 12 of the '597 patent are also linked to the abstract idea of disallowing operation based on a group identifier. Ex. 5 ('163 patent), cls. 2-5; Ex. 6 ('597 patent), cls. 2, 5, 12. Thus, for the Section 101 analysis, claim 1 of the '163 patent is representative of claims 1-5 of the '163 patent and claims 1, 2, 5, 9, and 12 of the '597 patent.

### 2.    The Claims Are Directed to the Abstract Idea of Disallowing Operation Based On a Group Identifier

The asserted claim of the '163 and '597 patents are directed to the abstract idea of disallowing operation based on a group identifier. *See Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1355-57 (Fed. Cir. 2024) (concluding challenged claims were directed to abstract idea of "exchanging information concerning a bet and allowing or disallowing the bet based on where the user is located."). The claims recite that BSS color is an identifier of a Basic Service Set ("BSS"), which is a group of wireless devices in communication with one another. *See* Ex. 5 ('163 patent), cl. 1 (reciting "wherein the BSS color is an identifier of a BSS"); *see also id*. at 7:13-15 ("[T]he

BSS represents a set of apparatuses which are successfully synchronized with each other to communicate with each other"). The claims essentially recite performing the following steps using a standard transceiver and processor: (1) receiving information indicating that an operation based on BSS color is not allowed, (2) receiving a PPDU, and (3) not using the BSS color of said PPDU. *See id.*, cl. 1. Generic data processing steps of this sort are routinely found to be abstract at *Alice* step one. *See, e.g.*, *AI Visualize, Inc. v. Nuance Commc'ns, Inc.*, 97 F.4th 1371, 1379 (Fed. Cir. 2024) ("We have explained that the steps of obtaining, manipulating, and displaying data, particularly when claimed at a high level of generality, are abstract concepts." (citing *Elec. Power Grp., LLC v. Alstrom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2024) (collecting cases))).

Moreover, disallowing operation based on a group identifier is a fundamental human practice, which is a hallmark of abstractness. *See, e.g.*, *In re Killian*, 45 F.4th 1373, 1382 (Fed. Cir. 2022) (stating that "mental processes, even if performed in a computer rather than in the human mind," are abstract ideas (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) (internal quotation marks omitted))). As one example of this abstract idea in everyday life, consider laws that prohibit discrimination based on protected classes such as race or gender. Such laws disallow operations (*e.g.*, hiring, firing, etc.) based on a group identifier (*e.g.*, race, gender, etc.). The '163 and '597 patents' claims implement the same abstract idea, and the claims remain abstract even though they are limited to the field of wireless communications. *See, e.g.*, *Bilski v. Kappos*, 561 U.S. 593, 612 (2010) ("[L]imiting an abstract idea to one field of use or adding token postsolution components did not make the concept patentable.")

*Beteiro v. DraftKings* is instructive. 104 F.4th at 1355-57. There, the Court reviewed and affirmed a district court's finding that several patents were ineligible under Section 101. *See id.* The representative claim at issue included the following limitation:

determining, with or using the computer, whether the bet is allowed or disallowed using the information regarding the position or location of the first communication device or the second communication device and, if the bet is allowed, processing information for placing the bet for or on behalf of the individual, or, if the bet is disallowed, processing information for disallowing the bet.

*Id*. at 1354 (quoting U.S. Patent No. 10,255,755). In finding the claims abstract at *Alice* step one, the Court concluded "the claims broadly recite generic steps of a kind we have frequently held are abstract: . . . determining (whether the bet is allowed based on location data), and processing information (allowing or disallowing the bet)." *Id*. at 1355. Here, the claims require receiving "signaling information indicating that an operation based on the BSS color is not allowed," and, in response to the signaling information, not using BSS color. *See* Ex. 5 ('163 patent), cl. 1. The Court's reasoning in *Beteiro* applies in similar fashion to the '163 and '597 patents' claims—the claims recite generic data processing steps to implement the abstract idea of disallowing operation based on a group identifier. Thus, the claims of the '163 and '597 patents are directed to an abstract idea at *Alice* step one.

### E. The Asserted Claims of the '035 and '879 Patents Are Directed to an Abstract Idea

#### 1. Claim 1 of the '879 Patent Is Representative

Claim 1 of the '879 patent is representative of claims 2-5 of the '879 patent and claims 1-5 of the '035 patent. Claim 1 of the '035 patent only recites a subset of the claim elements recited by claim 1 of the '879 patent, *compare* Ex. 7 ('035 Patent) (39:30-59), *with* Ex. 8 ('879 Patent) (39:30-64), and Wilus **agrees** that "claim 1 of the '879 patent is representative of claim 1 of the '035 patent for purposes of eligibility," Ex. 11 (de la Iglesia Rebuttal Rpt.) at ¶ 587. The dependent claims 2-5 of the '879 patent are identical to dependent claims 2-5 of the '035 patent, and those dependent claims merely recite additional limitations that are well known. *See, e.g.,* Ex. 11 (de la Iglesia Rebuttal Rpt.) at ¶ 499 (unrebutted prior art invalidity arguments for features of

12

claims 2-5).  Further, dependent claims 2-5 of the '879 patent and dependent claims 2-5 of the '035 patent are also linked to the abstract idea of sending a message that temporarily changes the recipient's behavior.   Accordingly,  for  the  § 101  analysis,  claim 1  of  the  '879  patent  is representative of claims 1-5 of the '879 patent and claims 1-5 of the '035 patent.

> ### 2.    The Claims Are Directed To the Abstract Idea of Sending a Message that Temporarily Changes the Recipient's Behavior

Claim 1 of the '879 patent is directed to (1) receiving a particular message (named "trigger frame"), (2) sending a responsive message (named "trigger-based PPDU"), and (3) temporarily changing behavior (lowering a device's communications priority by changing parameters used for channel access). This is nothing but the abstract idea of ***sending a message that temporarily changes the recipient's behavior***—a method of organizing human activity, in particular, managing personal behavior or relationships or interactions between people, (including social activities, teaching, and following rules or instructions).  *See Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016) (finding an email processing software program to be abstract through comparison to a "brick-and-mortar" post office). For example, a parent would tell (or otherwise send a non-verbal message such as a stern look) a child that is dominating a conversation to talk less and let his brother talk for a few minutes ("hey, can you let your brother talk for a bit?").  Such a message would cause the child to change his behavior, at least initially.  The child may even acknowledge the mother's message (e.g., "OK").  Of course, the child will revert to his old behavior after a while.  In another example, a person may send an online shop a request to send its promotional materials less frequently for a month (akin to receiving a trigger frame), and the online company may send a response (akin to sending trigger-based PPDU) as well as note the person's preference (akin to changing the parameter sets).  The online company may revert to the

13

███████████████████████████████

person's older preference after the month passes (akin to terminating the application of second parameter sets), resuming its spamming practice.

The '035 and '879 patents apply this abstract idea to the wireless-communications context without providing any improvement to the underlying technology, such as the method of sending messages (e.g., trigger frame, TB-PPDU, OFDMA transmissions, multi-user uplink communications technique) or the method of adjusting one's communications priority using parameter sets (e.g., EDCA contention process). Instead, the patents simply rely on generic, well-known components (e.g., processor, transceiver) or known techniques (e.g., using channel access parameter sets which dates back to 2007) to carry out the abstract process.

To the extent Wilus argues that the claim element "when the MPDU included in the trigger-based PPDU requests an immediate response, set the second parameter set timer for the access category of the MPDU for which immediate response is received" ███████████████████████

███████████████████████████████ *see* Ex. 12 (Ahn Dep. Tr.) at 170:2-15; Ex. 11 (de la Iglesia Rebuttal Rpt.) at ¶ 670), this limitation does not change the abstractness of the claim. Not waiting for a response when one is not requested is nothing more than an abstract idea. And adding this abstract idea to the abstract idea of sending a message to a recipient to change the recipient's behavior temporarily still results in an abstract idea. *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1317 (Fed. Cir. 2021) (holding adding one abstract idea to another amounts merely to the abstract idea). Thus, the claims of the '879 and '035 patents are directed to an abstract idea at *Alice* step one.

## V.   CONCLUSION

For the reasons presented above, Samsung respectfully requests that the Court find the asserted claims of the Asserted Patents are directed to unpatentable abstract ideas under step one of the *Alice* framework.

Dated: March 2, 2026

Respectfully submitted,

*/s/ Rodeen Talebi*

Melissa R. Smith (State Bar No. 24001351)
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257
Email: melissa@gillamsmithlaw.com

Andrew Thompson ("Tom") Gorham
State Bar No. 24012715
GILLAM & SMITH, L.L.P.
102 N. College, Suite 800
Tyler, Texas 75702
Telephone:  (903) 934-8450
Facsimile: (903) 934-9257
Email: tom@gillamsmithlaw.com

Jon B. Hyland
jhyland@hilgerslaw.com
HILGERS PLLC
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: 972-645-3097

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
DC Bar No. 459780
mckeon@fr.com
Ralph A. Phillips
DC Bar No. 475571
rphillips@fr.com
Matthew P. Mosteller
DC Bar No. 1697343
mosteller@fr.com
Bryan J. Cannon
DC Bar No. 1723657
cannon@fr.com
Brendan F. McLaughlin
DC Bar No: 1671658
BMcLaughlin@fr.com
Payal Patel
DC Bar No. 90019320
ppatel@fr.com
Damien Thomas
DC Bar No. 90018451
dthomas@fr.com
James Young
DC Bar No. 90005769
jyoung@fr.com
FISH & RICHARDSON, P.C.
1000 Maine Ave., S.W., Ste. 1000
Washington, DC 20024
Telephone: 202-783-5070
Facsimile:  202-783-2331

Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
Rodeen Talebi
TX Bar No. 24103958

████████████████████████████

talebi@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 78766
Telephone: 214-747-5070
Facsimile: 214-747-2091

Aleksandr Gelberg
CA Bar No. 279989
gelberg@fr.com
John-Paul Fryckman
CA Bar No. 317591
fryckman@fr.com
FISH & RICHARDSON, P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: 858-678-5070
Facsimile: 858-678-5099

Bailey K. Benedict
TX Bar No. 24083139
benedict@fr.com
FISH & RICHARDSON, P.C.
909 Fannin Street, Ste. 2100
Houston, TX 77010
Telephone: 713-654-5300
Facsimile: 713-652-0109

Lawrence R. Jarvis
GA Bar No. 102116
jarvis@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: 404-892-5005
Facsimile: 404-892-5002

*Attorneys for Defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on March 2, 2026.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document via electronic mail.

        */s/ Rodeen Talebi*              

17