IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> HP INC. <br><br> Defendant. | Civil Case No. 2:24-cv-00752-JRG [Lead Case] <br><br> JURY TRIAL DEMANDED |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. <br> Defendants. | Civil Case No. 2:24-cv-00746-JRG [Member Case] <br><br> JURY TRIAL DEMANDED |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. <br> Defendants. | Civil Case No. 2:24-cv-00765-JRG [Member Case] <br><br> JURY TRIAL DEMANDED |

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> ASKEY COMPUTER CORP., ASKEY INTERNATIONAL CORP. <br><br> Defendants. | Civil Case No. 2:24-cv-00766-JRG [Member Case] <br><br> JURY TRIAL DEMANDED |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> ASKEY COMPUTER CORP., ASKEY INTERNATIONAL CORP. <br><br> Defendants. | Civil Case No. 2:24-cv-00753-JRG-RSP [Member Case] <br><br> JURY TRIAL DEMANDED |

**SAMSUNG'S MOTION TO EXCLUDE UNDER *DAUBERT*
AND STRIKE CERTAIN EXPERT TESTIMONY OF ERIK DE LA IGLESIA**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

TABLE OF EXHIBITS ..................................................................................................... iv

TABLE OF ABBREVIATIONS ........................................................................................ v

I.    ARGUMENT ....................................................................................................... 1

      A.    The Court Should Strike Mr. de la Iglesia's New Source Code Based
            Infringement Theories Not Disclosed in Wilus's Standards Based
            Infringement Contentions ......................................................................... 1

      B.    The Court Should Strike Mr. de la Iglesia's Opinions Regarding Prior
            Art Status of Source Code of Galaxy Tab S ............................................. 2

      C.    The Court Should Strike Mr. de la Iglesia's Opinions Regarding
            Incorporation of References Into Galaxy Tab S ....................................... 4

      D.    The Court Should Strike Mr. de la Iglesia's Opinions Regarding the
            Incremental Benefits of Wi-Fi 6 Over Wi-Fi 5 ........................................ 5

      E.    The Court Should Strike Select Opinions Regarding the '077 Patent ...... 6

            1.    The Court Should Strike Mr. de la Iglesia's New and
                  Untimely Reliance on Modulus as Satisfying the Limitations
                  of Claims 1 and 8 .......................................................................... 6

            2.    The Court Should Strike Mr. de la Iglesia's New "m" Term
                  Theory for Claims 1 and 8 ............................................................ 7

            3.    The Court Should Strike Mr. de la Iglesia's New Claim
                  Construction and Irrelevant Validity Arguments for Claims 1
                  and 8 .............................................................................................. 7

      F.    The Court Should Strike Select Opinions Regarding the '035/'879
            Patents ....................................................................................................... 8

      G.    The Cout Should Strike Select Opinions on Motivation to Combine ...... 8

      H.    The Court Should Strike Select Opinions on Inventorship .................... 10

II.   CONCLUSION .................................................................................................. 11

<span style="background:black">████████████████</span>

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015) ........................................................................................... 10

*Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC*,
825 F.3d 1373 (Fed. Cir. 2016) ........................................................................................ 4, 9

*Anascape, Ltd. v. Microsoft Corp.*,
No. 9:06-cv-0158, 2008 WL 7180756 (E.D. Tex. May 1, 2008) ......................................... 1

*Bot M8 LLC v. Sony Interactive Ent. LLC*,
66 F.4th 1380 (Fed. Cir. 2023) ............................................................................................. 9

*Celanese Int'l Corp. v. Int'l Trade Comm'n*,
111 F.4th 1338 (Fed. Cir. 2024) ........................................................................................... 3

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) .............................................................................................................. 6

*In re Epstein*,
32 F.3d 1559 (Fed. Cir. 1994) ............................................................................................... 3

*In re Gorman*,
933 F.2d 982 (Fed. Cir. 1991) ............................................................................................... 9

*J.A. LaPorte v. Norfolk Dredging Co.*,
787 F.2d 1577 (Fed. Cir. 1986) ............................................................................................. 3

*Kimberly-Clark Corp. v. Procter & Gamble Distributing Co., Inc.*,
973 F.2d 911 (Fed. Cir. 1992) ....................................................................................... 10, 11

*Lockwood v. Am. Airlines, Inc.*,
107 F.3d 1565 (Fed. Cir. 1997) ............................................................................................. 3

*Plastipak Packaging, Inc. v. Premium Waters, Inc.*,
55 F.4th 1332 (Fed. Cir. 2022) ........................................................................................... 11

*Randall Mfg. v. Rea*,
733 F.3d 1355 (Fed. Cir. 2013) ............................................................................................. 9

*Rmail Ltd. v. Amazon.com, Inc.*,
No. 2:10-CV-00258-JRG, 2019 WL 13215406 (E.D. Tex. June 21, 2019) .......................... 1

**Statutes**

35 U.S.C. § 102 .......................................................................................................................... 3

**Other Authorities**

Fed. R. Evid. 702 ...................................................................................................................... 6

Local Rule CV-5 ...................................................................................................................... 14

Local Rule CV-5 ...................................................................................................................... 14

Local Rules CV-7 .................................................................................................................... 14

**TABLE OF EXHIBITS**

| # | Description |
| --- | --- |
| 1 | 2026-01-23 Opening Expert Report of Erik de la Iglesia (excerpts) |
| 2 | 2026-01-23 Opening Expert Report of Erik de la Iglesia, Appendix A (excerpts) |
| 3 | 2026-01-23 Opening Expert Report of Erik de la Iglesia, Appendix B (excerpts) |
| 4 | 2026-01-23 Opening Expert Report of Erik de la Iglesia, Appendix C (excerpts) |
| 5 | 2026-01-23 Opening Expert Report of Erik de la Iglesia, Appendix D[1] (excerpts) |
| 6 | 2026-01-23 Opening Expert Report of Erik de la Iglesia, Appendix E (excerpts) |
| 7 | 2026-01-23 Opening Expert Report of Erik de la Iglesia, Exhibit C |
| 8 | 2026-01-23 Opening Expert Report of Erik de la Iglesia, Exhibit E |
| 9 | 2026-02-19 Corrected Rebuttal Expert Report of Erik de la Iglesia (excerpts) |
| 10 | 2026-02-19 Corrected Rebuttal Expert Report of Erik de la Iglesia, Exhibit B |
| 11 | Complaint for Patent Infringement, Case No. 2:24-cv-00746 (excerpts) |
| 12 | Complaint for Patent Infringement, Case No. 2:24-cv-00765 (excerpts) |
| 13 | 2024-11-21 Preliminary Disclosure of Asserted Claims and Infringement Contentions for 2:24-cv-00746-JRG |
| 14 | 2024-11-21 Wilus's '077 Patent Infringement Contentions |
| 15 | 2024-11-21 Wilus's '281 Patent Infringement Contentions |
| 16 | 2024-11-21 Wilus's '595 Patent Infringement Contentions |
| 17 | 2024-11-21 Wilus's '210 Patent Infringement Contentions |
| 18 | 2024-11-21 Preliminary Disclosure of Asserted Claims and Infringement Contentions for 2:24-cv-00765-JRG |
| 19 | 2024-11-21 Wilus's '163 Patent Infringement Contentions |
| 20 | 2024-11-21 Wilus's '597 Patent Infringement Contentions |
| 21 | 2024-11-21 Wilus's '035 Patent Infringement Contentions |
| 22 | 2024-11-21 Wilus's '879 Patent Infringement Contentions |
| 23 | 2025-03-21 Wilus's Responses to Samsung's First Set of Interrogatories (excerpts) |
| 24 | 2026-01-23 Opening Expert Report of Prof. Stephen B. Wicker, Ph.D. (excerpts) |
| 25 | 2026-01-28 Opening Report of Dr. Harry Bims (Corrected) (excerpts) |
| 26 | U.S. Patent 11,516,879 (excerpts) |
| 27 | U.S. Patent 10,687,281 (excerpts) |
| 28 | U.S. Patent 10,313,077 (excerpts) |
| 29 | U.S. Patent 11,159,210 (excerpts) |
| 30 | Final Transcript of the Deposition of Eunsung Jeon on December 19, 2025 |

---

[1] Mislabeled as Appendix C in original

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| -746 | Civil Case No. 2:24-cv-00746-JRG-RSP |
| -765 | Civil Case No. 2:24-cv-00765-JRG-RSP |
| '077 patent | U.S. Patent 10,313,077 |
| '281 patent | U.S. Patent 10,687,281 |
| '595 patent | U.S. Patent 11,470,595 |
| '210 patent | U.S. Patent 11,159,210 |
| '163 patent | U.S. Patent 11,129,163 |
| '597 patent | U.S. Patent 11,700,597 |
| '035 patent | U.S. Patent 11,116,035 |
| '879 patent | U.S. Patent 11,516,879 |
| POSITA | person of ordinary skill in the art |
| SEP | standard-essential patent |

*All emphasis herein is added or altered, unless otherwise noted.

███████████████████████████████████

The Court should strike the untimely, irrelevant, and/or unreliable opinions of Wilus's technical expert, Mr. Erik de la Iglesia, as described below, from his reports, appendices, and exhibits. *See generally*, Exs. 1-10.

## I.    ARGUMENT

### A.    The Court Should Strike Mr. de la Iglesia's New Source Code Based Infringement Theories Not Disclosed in Wilus's Standards Based Infringement Contentions

Wilus's late disclosure of new source code based infringement theories in its expert's report is unjustified and prejudicial. The Court should strike these untimely theories as detailed below. *See Rmail Ltd. v. Amazon.com, Inc.*, No. 2:10-CV-00258-JRG, 2019 WL 13215406, at *2 (E.D. Tex. June 21, 2019) (striking source-code based opinions from portions of Plaintiff's expert report that were was not disclosed in accordance with the discovery order / local patent rules); *Anascape, Ltd. v. Microsoft Corp.*, No. 9:06-cv-0158, 2008 WL 7180756, at *2-4 (E.D. Tex. May 1, 2008).

Mr. de la Iglesia's infringement theories for each of the Asserted Patents ███████ ████████████████████████████████████████████████████████████████████ *See* Exs. 1-10. Yet, starting with the complaints (-746 & -765), Wilus's position has been that the Asserted Patents are SEPs and that *any* 802.11ax device infringes the Asserted Patents. Ex. 11, pp. 3 ("SEPs"), 5 ("The Accused Products are all of Samsung's Wi-Fi 6 (802.11ax) enabled devices"); Ex. 12, pp. 3, 5 (same). Throughout its infringement contentions, Wilus again refers to "Samsung's Wi-Fi 6 (802.11ax) enabled devices." *See* Exs. 13-22. Aside from a picture and general description of an accused device, Wilus's infringement contentions *relied entirely* on sections of IEEE 802.11ax. Exs. 14-17, 19-22. The contentions never mapped any claim element to implementation specific details or source code.

In responding to Defendants' Interrogatory No. 1 (seeking factual and legal basis, evidence of alleged infringement), Wilus did not identify any evidence including source code. *See* Ex. 23 (response dated March 21, 2025), 8-9. Discovery closed *nine months* later on December 22, 2025 with no supplemental responses from Wilus relating to its infringement contentions. Moreover, Wilus never made any attempt to supplement its infringement contentions. Despite having notice of the availability of Samsung's source code review computer on February 13, 2025, Wilus never sent anyone to review

code until November 2025. It was not until November 26, 2025, that Wilus first requested Samsung source code print outs, which Samsung printed and shipped on December 1, 2025. Wilus requested additional print outs on December 22, 2025, which Samsung shipped the next day. During deposition of Samsung's 30(b)(6) witness designated for source code related topics, Wilus did not even once refer to the source code. *See* Ex. 30 (132:25-134:14). Wilus also received code print-outs from ███████ ████████████████████ in December and January.

The first time that Samsung saw any source code to limitation mappings was in Mr. de la Iglesia's Opening Report. In addition to being untimely, these code citations often go beyond or otherwise do not correspond to the sections of IEEE 802.11 standards cited in Wilus's infringement contentions. In one example regarding the '077 patent, detailed more in Section I.E.1, Mr. de la Iglesia implicates modulus operation based code as satisfying a claim limitation, yet Wilus never disclosed a modulus-based theory. Accordingly, the Court should strike Mr. de la Iglesia's opinions that rely on source code, which are as follows:

- Ex. 1 (Op. Rpt.), ¶¶ 14, 15, 104, 127-143, 156-158, 223, 231
- Ex. 2 (App. A), ¶¶ 2, 12, 17-19, 22-27, 31-35, 38-42, 45-49, 58-61, 63-68, 70-72, 75-79, 82-85
- Ex. 3 (App. B), ¶¶ 4, 8, 11-17, 23-30, 38-44, 51-60, 65-73, 80-90, 97-107, 112-121, 128-138, 143-151, 154, 160-169, 176-183, 190-198, 203-212, 219-228, 237-250, 256-268, 275-286, 292-303, 309-320
- Ex. 4 (App. C), ¶¶ 2, 12, 16, 18, 20, 23-25, 28-30, 33-35, 38-40, 43-45, 49-51, 54-56, 59-61, 64-66
- Ex. 5 (App. D), ¶¶ 2, 12, 17-19, 28-35, 39-43, 48-52, 55-59, 61-65, 67-71, 80-85, 87-90, 92-94
- Ex. 6 (App. E), ¶¶ 2, 16, 28-36, 43-50, 55-58, 62-65, 74-79, 81-82, 88-91, 93-95, 102, 104-107, 109-110, 116-120, 125, 130-135, 142-147

Exhibits C and E (Ex. 7 and 8) are lists of source code including code identified in the above-identified portions of Mr. de la Iglesia's Opening Report and should be stricken in their entirety. Exhibit B of his Rebuttal Report is a revised version of Exhibit C, and it too should be stricken in its entirety.

### B. The Court Should Strike Mr. de la Iglesia's Opinions Regarding Prior Art Status of Source Code of Galaxy Tab S

Mr. de la Iglesia argues that "the source code for the Broadcom BCM4354 wi-fi chipset firmware is not and has not been publicly accessible at any point in the past," and that "the source

code for the wi-fi chipset in the Galaxy Tab S cannot have been prior art as of any of the priority dates at issue here." Ex. 9, ¶¶ 56-58; *see also id.* at ¶¶ 46–58. However, both Dr. Bims and Dr. Wicker rely on the Galaxy Tab S device as the prior art. *See* Ex. 24, ¶ 190 (noting "Invalidating Prior Art" is "Samsung Galaxy Tab S System Art"); Ex. 25, ¶ 295 ("The Samsung Galaxy Tab S qualifies as prior art to each of the Asserted Patents because it was offered for sale and/or sold.").

Whether the source code of a system art was publicly accessible as of the priority date is legally irrelevant. "The 'on sale' category . . . has **never required that a qualifying commercial sale reveal to the public the details of the claimed invention**." *Celanese Int'l Corp. v. Int'l Trade Comm'n*, 111 F.4th 1338, 1346 (Fed. Cir. 2024)). Furthermore, "the question is not whether the sale, even a third party sale, '**discloses**' the invention at the time of the sale, but whether the sale relates to a device that **embodies** the invention." *J.A. LaPorte v. Norfolk Dredging Co.,* 787 F.2d 1577, 1583 (Fed. Cir. 1986).

The Federal Circuit has already weighed in on this issue. *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997) involved the argument that Wilus's experts make, where the record showed "**the essential algorithms of the [system prior art's] software were proprietary and confidential** and that those aspects of the system that were readily apparent to the public would not have been sufficient to enable one skilled in the art to duplicate the system." Based on this evidence, the patentee argued "that one skilled in the art would not be able to build and practice the claimed invention without access to the secret aspects of [prior art system]." *Id.* The Court rejected this argument, agreeing with the patent challenger's argument that "the public need not have access to the 'inner workings' of a device for it to be considered 'in public use' or 'used by others' within the meaning of the statute." *Id.* Instead, the Court held that "public use of the **high-level aspects of the [prior art]** system was enough to place the **claimed** features of the [asserted] patent in the public's possession." *Id.* (citing *In re Epstein*, 32 F.3d 1559, 1567–68 (Fed. Cir. 1994)).[2] Here, the commercial

---

[2] While this case was related to the "public use" bar, the case the Court relied on applied to both public use and sale bar. *See In re Epstein,* 32 F.3d at 1567-68 ("Beyond this 'in public use or on sale' finding, there is no requirement for an enablement-type inquiry."). Furthermore, the Federal Circuit "h[e]ld that the enactment of the AIA did not constitute a foundational change in the theory of the statutory on-sale bar provision, 35 U.S.C. § 102(a)(1)." *Celanese Int'l Corp.*, 111 F.4th at 1348.

sale of Galaxy Tab S put its processor and transceiver—and **all the features embodied therein including its firmware**—in the public's possession.

Accordingly, Mr. de la Iglesia's opinions that rely on the lack of public access to the source code (i.e., Ex. 9, ¶¶ 46-59, 68, 72-74, 76, 91, 119, 182, 199-200, 202-04, 246, 267-68, 270-72, 324-25, 345, 347-48, 400, 459) should be struck as they are based on the wrong legal standard and would likely mislead the jury. To hold otherwise would effectively preclude the use of any device containing proprietary chips and/or software as system prior art because, as Mr. de la Iglesia opined, "[a]s a rule, the firmware source code of commercially available microprocessor and ASIC devices is treated in the industry as highly confidential." *Id.* ¶ 54.

### C.   The Court Should Strike Mr. de la Iglesia's Opinions Regarding Incorporation of References Into Galaxy Tab S

Mr. de la Iglesia opines at length that "it is not tractable for anyone, much less a POSITA, to change how the wi-fi chip works in the Galaxy Tab S as it relates to handling PHY layer operations without making a new chip (with all of the discussed requirements) **and grafting it into the tablet**." Ex. 9, ¶ 74. Specifically, Mr. de la Iglesia argues that the secondary references cannot be implemented in the specific Wi-Fi chip (i.e., Broadcom BCM4354) that is in the Galaxy Tab S. *Id.* ¶¶ 60-64.

But "[t]he test for obviousness is **not whether the features of a secondary reference may be bodily incorporated into the structure of the primary reference**, but rather whether a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention." *Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC*, 825 F.3d 1373, 1381 (Fed. Cir. 2016) (internal citations and quotation marks omitted). In fact, "it is **not necessary that [the references] be physically combinable** to render obvious the patent." *Id.*

Moreover, Mr. de la Iglesia identifies purportedly "real-life challenges which any POSITA would face (and be aware of) if tasked to, essentially, transform this 802.11ac-limited device to support wireless connectivity that resembles what is required for 802.11ax." Ex. 9, ¶ 65. However, the asserted patents themselves provide none of the disclosures for addressing those challenges. Dr. Bims and Wicker provide more details on how the teachings of Galaxy Tab S and the teachings of prior art

4

references can be combined than the asserted patents provide on how the disclosed processor can be configured as claimed.[3]  *See, e.g.,* Ex. 26 (3:16-4:19; 7:21-9:63) (merely disclosing that "processor" is configured to perform an action without disclosing how a POSITA would address "real-life challenges" in doing so); Ex. 27 (3:8-5:3; 7:6-9:57) (same); Ex. 28 (3:1-4:15; 9:22-46) (same); Ex. 29 (2:59-3:4, 7:25-49) (same).   Accordingly, Mr. de la Iglesia's opinion pertaining to the bodily incorporation of the secondary references into the specific chip of Galaxy Tab S and his assertion that they are not physically combinable (i.e., Ex. 9, ¶¶ 60-74, 76, 91, 182, 199-200, 202-203, 246, 267-268, 270-272, 324-329, 345, 347-52, 400-02, 459-62) should be struck as irrelevant.  These opinions are based on the wrong legal standard and would likely mislead the jury.

### D.    The Court Should Strike Mr. de la Iglesia's Opinions Regarding the Incremental Benefits of Wi-Fi 6 Over Wi-Fi 5

Mr. de la Iglesia's opening expert report includes a section entitled "Dr. Reed-Arthurs' Survey Definition and Incremental Benefits of Wi-Fi 6."  Ex. 1, ¶¶ 168-193.  In this section, Mr. de la Iglesia cites documents and articles suggesting that Wi-Fi 6 (or 802.11ax[4]) provides improved performance over Wi-Fi 5 (or 802.11ac) with regards to speed, throughput, and latency.  *See id.*  Although Mr. de la Iglesia discusses the general benefits of Wi-Fi 6 compared to Wi-Fi 5, he makes no effort to apportion these benefits to the Asserted Patents; indeed, Mr. de la Iglesia does not mention any Asserted Patent within this section of his report.  *See id.*  Notably, his opening report includes separate, independent sections regarding the benefits provided by each of the Asserted Patents.  *See id.,* ¶¶ 194-199, 200-220 (describing benefits of each asserted patents).  *See id.,* ¶¶ 194-199, 200-203 (describing benefits of the '077 patent), 204-208 (describing benefits of the '163 and '597 patents), 209-212 (describing benefits of the '595 and '281 patents), 213-217 (describing benefits of the '035 and '879 patents), 218-220 (describing benefits of the '210 patent).  Because Mr. de la Iglesia's testimony related to the general benefits of Wi-Fi 6 over Wi-Fi 5 is untethered from the Asserted Patents, it does not "fit" the issue

---

[3] To the extent a POSITA lacks the requisite knowledge and skill to configure a processor (e.g., the processor in Galaxy Tab S) with the claimed features, the asserted patents lack enabling disclosure.

[4] Mr. de la Iglesia's report improperly references Wi-Fi and the 802.11 standards interchangeably without explaining their differences.

for which it is offered.  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993).  This testimony is likely to confuse the trier of fact as opposed to helping "understand the evidence or . . . determine a fact in issue."  Fed. R. Evid. 702(a).  Accordingly, Mr. de la Iglesia's opinions as to the general benefits of Wi-Fi 6 over Wi-Fi 5 (Ex. 1, ¶¶ 168-193) should be struck.  Wilus will not be prejudiced by the exclusion of this testimony, as the report elsewhere describes the specific benefits of the Asserted Patents.

     **E.**     **The Court Should Strike Select Opinions Regarding the '077 Patent**

         **1.**     **The Court Should Strike Mr. de la Iglesia's New and Untimely Reliance on Modulus as Satisfying the Limitations of Claims 1 and 8**

Mr. de la Iglesia contends that a modulus ("mod" or "%") operation satisfies select limitations of claims 1 and 8: limitation [1f] recites "obtain information other than information on the duration of the non-legacy physical layer frame through a remaining value obtained by dividing the length information by a data size transmittable by a symbol of a legacy physical layer frame … [i.e., dividing the length information by 3]" (*see also* claim 8, limitation [8d]). Specifically, he contends that this "other [] information" can "be obtained by a ***mod operation of the Length % 3***." Ex. 2, ¶ 44. Wilus's contention for this limitation cites IEEE 802.11ax-2021, § 27.3.11.5 and IEEE 802.11-2020, § 10.27.4. Ex. 14, 3-5, 20-30. However, these cited 802.11 sections do not disclose a modulus operation or even a divide by 3 operation. These operations are clearly not in Wilus's infringement contentions. *Id.*

Ex. 2, ¶ 48.                                                *Id.*,

¶ 47. Accordingly, the Court should strike Ex. 2, ¶¶ 44, 47, 48, which rely on this undisclosed modulus-based theory.

### 2.    The Court Should Strike Mr. de la Iglesia's New "m" Term Theory for Claims 1 and 8

Mr. de la Iglesia provides a new infringement theory relating to the "m" term of the equation in claims 1 and 8, which requires that "m denotes a value obtained by subtracting the remaining value from the data size transmittable by a symbol of the legacy physical layer frame [i.e., subtract the remaining value from 3]." Mr. de la Iglesia's opinion for the "m denotes …" part states that "[t]he m can be obtained through the following m = 3 – (3 – m)" and that "the (3 – m) is the remaining value" while citing to IEEE 802.11ax-2021, § 27.3.11.5. Ex. 2, ¶ 53. Yet, Wilus's contention for this limitation ([1g], [8e]) cites a ***different section*** of IEEE 802.11ax-2021, 27.3.13. Ex. 14, 5-7, 30-33.  Moreover, Wilus's contention never identified "m = 3 – (3 – m)" or that "the (3 – m) is the remaining value." Accordingly, the Court should strike Ex. 2, ¶ 53, which relies on this new theory for the "m" term requirement.

### 3.    The Court Should Strike Mr. de la Iglesia's New Claim Construction and Irrelevant Validity Arguments for Claims 1 and 8

In his Rebuttal, Mr. de la Iglesia provides opinion regarding the Zhang 810 and Lin 929 prior art references based on a belated claim construction argument, or in the alternative, irrelevant analysis for the "obtain[/ing] length information indicating information on a duration of the non-legacy physical layer frame [after a legacy signaling field], from the legacy signaling field" limitation ([1e]/[8c]) of claims 1 and 8. After asserting that Dr. Bims "failed to show that the L_LENGTH formula in Zhang 810 meets this element," he states that these claims "require[] the L_LENGTH to [be] the following (i.e. it needs to be "-3-m") at the end. [image of equation omitted]" and declares that "Zhang 810 would not be compatible." Ex. 9, ¶¶ 134-135; *see also* ¶¶ 158-159 (similar opinions regarding Lin 929). Yet, there is no L_LENGTH equation anywhere in claims 1 or 8. This limitation of claims 1 and 8 simply obtain length information from a received frame. No fancy equation required. At best, Mr. de la Iglesia appears to be reading in a limitation from the specification. This is inappropriate as a matter of black letter law. Moreover, claim construction closed months ago with both parties agreeing that this limitation of claims 1 and 8 will have its plain and ordinary meaning. Accordingly, the Court

should strike Ex. 9, ¶¶ 134-135, 158-159, which is based on this belated claim construction and/or
unreliable analysis.

**F.    The Court Should Strike Select Opinions Regarding the '035/'879 Patents**

In rendering an opinion regarding an alleged non-infringing alternative for the '035 and '879
patents, Mr. de la Iglesia engages in a belated claim construction that is inconsistent with the plain and
ordinary meaning that Wilus has articulated and Samsung agreed to.  More specifically, Mr. de la Iglesia
opines that certain "alleged NIAs do not involve any noninfringement," reasoning that "both the '035
and '879 patents require terminating the application of a second parameter set 'when the second
parameter set time expires'—*meaning*, said required termination ***occurs after the expiration of the
timer***." *Id.* Thus, he construes the term "when" to mean "after."  This is plainly inconsistent with the
plain meaning of the term, which the parties agreed to during claim construction. *See* ECF No. 179
(Wilus's CC Op. Br.) at 27 (proposing P&O construction for "when"; explaining fourth instance of
"when" is used in "temporal sense," rather than a "condition"); ECF No. 188 (Samsung's CC Resp.
Br.) at 3 n.1 ( "Samsung agrees with Wilus that . . . [fourth] 'when' [is used] in a temporal sense"). As
such, Mr. de la Iglesia engages in a belated claim construction and fails to apply the plain and ordinary
meaning that the parties agreed to.  Accordingly, Ex. 1, ¶ 254 and Ex. 9, ¶ 636, which include this
belated claim construction and opinions regarding an alleged NIA based on this construction, should
be struck.

**G.    The Cout Should Strike Select Opinions on Motivation to Combine**

Mr. de la Iglesia's rebuttal report (Ex. 9) regarding the motivation to combine prior art
references improperly rely on as "evidence of non-obviousness" the following factors: (1) the number
of references in Samsung's combinations and (2) that the references were ***in fact*** not combined, and
(3) that the references themselves do not expressly disclose certain claimed elements.  See Ex. 9, ¶¶
123 (in his '077 motivation to combine opinions: "Even if Zhang 810's formula is used, it still does
not reach the desirable formula taught in '077 patent"), 405("If the alleged combination truly provides
the market advantage as Dr. Wicker proposes, Galaxy Tab S would already incorporate the
combinations."), 460 ("Overall, Dr. Wicker's reliance on three or four different references to assert

obviousness … is evidence of non-obviousness."), 461 ("If the combinations were easily combined and obvious, then the companies/entities working in the field, such as Samsung, Huawei, and 801.11 would have already made the combination.."); 462 ("That such a combination did not occur indicates that the combination is not feasible, possible, difficult to achieve, or would result in unexpected results.").

These factors are legally irrelevant to the obviousness inquiry. **First**, "[t]he large number of . . . references does not negate the obviousness of the combination." *In re Gorman,* 933 F.2d 982, 987 (Fed. Cir. 1991). **Second,** whether the references were **in fact** combined is not probative of non-obviousness because "[t]he test for obviousness is **not** whether the features of a secondary reference may be bodily incorporated into the structure of the primary reference, but rather whether a skilled artisan **would have been motivated** to combine **the teachings** of the prior art references to achieve the claimed invention," *Allied Erecting & Dismantling Co.*, 825 F.3d at 1381 (internal quotation marks and citations omitted). In fact, "it is **not necessary** that [references] be physically combinable to render obvious the [patents]." *Id.* **Finally**, the lack of express disclosure of the claimed elements in the prior art references is legally irrelevant, given that the proposed combinations do not rely on the references' express disclosure for such elements. *See Randall Mfg. v. Rea*, 733 F.3d 1355, 1362 (Fed. Cir. 2013) ("By narrowly focusing on the four prior-art references and ignoring the additional record evidence . . . to demonstrate the knowledge and perspective of one of ordinary skill in the art, the Board failed to account for critical background information that could easily explain why an ordinarily skilled artisan would have been motivated to combine or modify the cited references to arrive at the claimed inventions."); *see also Bot M8 LLC v. Sony Interactive Ent. LLC*, 66 F.4th 1380, 1386 (Fed. Cir. 2023) (rejecting argument that "no reference of record[] shows using two different CPUs for two separate authentication processes" because given "expert's explanation and the references themselves, it nonetheless would have been obvious to a person of ordinary skill in the art to combine the references to yield the claimed invention").

Accordingly, in rendering his opinions regarding the lack of motivation to combine references, Mr. de la Iglesia relied on legally irrelevant factors. Further, the reliance on these irrelevant factors

suggests Mr. de la Iglesia's opinions as to the lack of motivation to combine are unreliable.  Thus, Ex. 9 at ¶¶ 123, 405, 460–62 should be struck.

### H.    The Court Should Strike Select Opinions on Inventorship

Mr. de la Iglesia's opinions regarding nonjoinder of inventors in his rebuttal report (Ex. 9) are legally irrelevant.  *First*, Mr. de la Iglesia argues there is no non-joinder of inventors because there is "no[] evidence that the participants were engaged in some *joint enterprise* to obtain patents on which they would be coinventors with their colleagues in the Task Group."  Ex. 9, ¶ 647; *see also id.* at ¶ 657 (opining that Dr. Bim's opinion is "unsupported by *any evidence of the joint enterprise* required to predicate joint inventorship status"), ¶ 664 (opining "there is no evidence at all of *joint enterprise*"), ¶ 667 (noting "no evidence I'm aware of, and Dr. Wicker has provided none, that those people ever expect to be listed as coinventors on the patents of other companies who meaningfully improve upon that their earlier work").  However, inventorship requires "joint *behavior*," not "joint *enterprise*." *Kimberly-Clark Corp. v. Procter & Gamble Distributing Co., Inc.*, 973 F.2d 911, 917 (Fed. Cir. 1992) ("For persons to be joint inventors . . . , there *must be some element of joint behavior*."). "A *joint enterprise* requires proof of four elements: (1) an *agreement*, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of *pecuniary interest* in that purpose, among the members; and (4) an *equal right* to a voice in the direction of the enterprise, which gives an equal right of control." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015).  In contrast, "joint behavior" is a different concept that includes "collaboration or working under common direction, one inventor seeing a relevant report and building upon it or hearing another's suggestion at a meeting." *Kimberly-Clark,* 973 F.2d at 917.

Mr. de la Iglesia's reliance on "joint *enterprise*" is not merely an instance of using the wrong word—his opinion analyzed the elements of a joint enterprise.  *See, e.g.,* Ex. 9, ¶ 667 ("Two people, who are otherwise *not professionally affiliated (such as through working at the same company*, working at *companies engaged in a joint technology development*, and so forth) . . . is not a "joint *enterprise*.");

██████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████ At the same time, Mr. de la Iglesia discounted evidence of joint behavior. *Compare Kimberly-Clark,* 973 F.2d at 917 (explaining "joint behavior" includes "collaboration or working under common direction, one inventor ***seeing a relevant report and building upon it or hearing another's suggestion at a meeting***"), *with* Ex. 9, ¶ 667 ("Two people . . . who ***express their opinions to one another about one another's earlier and openly-published work***, is not a 'joint enterprise.'") *and*, Ex. 9, ¶ 647 (arguing an IEEE 802.11ax submission "***is an invitation to others to comment on and improve upon the ideas in those submissions, not evidence that the participants were engaged in some joint enterprise*** to obtain patents on which they would be coinventors with their colleagues in the Task Group.").

*Second*, Mr. de la Iglesia opines that there is no improper inventorship because "no one else came up with" the "heart of the invention." Ex. 9, ¶ 670. But joint inventorship does not require contribution to the "heart" of the invention. The relevant questions are whether an inventor "contribute[d] in some significant manner to the conception or reduction to practice of the invention" and "ma[d]e a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention." *Plastipak Packaging, Inc. v. Premium Waters, Inc.*, 55 F.4th 1332, 1340 (Fed. Cir. 2022). Thus, even without contributing to the claim elements that are considered "heart" of the invention, the person can nevertheless be a joint inventor if he or she contributed to the conception of claim elements that are "not insignificant in quality, when that contribution is measured against the dimension of the full invention," which is what Samsung is asserting as to the unnamed joint inventors. Accordingly, Mr. de la Iglesia renders irrelevant opinions and applied the wrong legal standard regarding the non-joinder of inventors. Thus, Ex. 9 at ¶¶ 647-48, 657, 664, 667, 670 should be struck.

## II.    CONCLUSION

The Court should exclude Mr. de la Iglesia's above-noted opinions as untimely, irrelevant, unreliable, misleading, and/or lacking probative value sufficient to overcome their prejudicial effect.

11

Dated: March 2, 2026

Respectfully submitted,

*/s/ Michael J. McKeon*

Melissa R. Smith (State Bar No. 24001351)
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257
Email: melissa@gillamsmithlaw.com

Andrew Thompson ("Tom") Gorham
State Bar No. 24012715
GILLAM & SMITH, L.L.P.
102 N. College, Suite 800
Tyler, Texas 75702
Telephone:  (903) 934-8450
Facsimile: (903) 934-9257
Email: tom@gillamsmithlaw.com

Jon B. Hyland
jhyland@hilgerslaw.com
HILGERS PLLC
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: 972-645-3097

Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
DC Bar No. 459780
mckeon@fr.com
Ralph A. Phillips
DC Bar No. 475571
rphillips@fr.com
Matthew P. Mosteller
DC Bar No. 1697343
mosteller@fr.com
Bryan J. Cannon
DC Bar No. 1723657
cannon@fr.com
Brendan F. McLaughlin
DC Bar No: 1671658
BMcLaughlin@fr.com
Payal Patel
DC Bar No. 90019320
ppatel@fr.com
Damien Thomas
DC Bar No. 90018451
dthomas@fr.com
James Young
DC Bar No. 90005769
jyoung@fr.com
FISH & RICHARDSON, P.C.
1000 Maine Ave., S.W., Ste. 1000
Washington, DC 20024
Telephone: 202-783-5070
Facsimile:  202-783-2331

Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
Rodeen Talebi
TX Bar No. 24103958
talebi@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 78766

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Telephone: 214-747-5070
Facsimile:  214-747-2091

Aleksandr Gelberg
CA Bar No. 279989
gelberg@fr.com
John-Paul Fryckman
CA Bar No. 317591
fryckman@fr.com
FISH & RICHARDSON, P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: 858-678-5070
Facsimile:  858-678-5099

Bailey K. Benedict
TX Bar No. 24083139
benedict@fr.com
FISH & RICHARDSON, P.C.
909 Fannin Street, Ste. 2100
Houston, TX 77010
Telephone: 713-654-5300
Facsimile:  713-652-0109

Lawrence R. Jarvis
GA Bar No. 102116
jarvis@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: 404-892-5005
Facsimile: 404-892-5002

*Attorneys for Defendants Samsung Electronics Co., Ltd., and*
*Samsung Electronics America, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on March 2, 2026. As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and via electronic mail.

*/s/ Michael J. McKeon*

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rules CV-7(h) and (i), counsel for the parties met and conferred telephonically on February 27, 2026. Neil Rubin, Philip Wang, James Tsuei, Reza Mirzaie, Jacob Buczko, and Andrea Fair attended for Plaintiff. Ralph Phillips, Matthew Mosteller, Brendan McLaughlin, Payal Patel, Damien Thomas, and Melissa Smith attended for Defendants. The parties discussed their positions on this motion. The discussions conclusively ended in an impasse, leaving an open issue for the court to resolve. Counsel for Plaintiff indicated that they oppose this motion.

*/s/ Michael J. McKeon*

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I certify that the following document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Michael J. McKeon*