# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC. <br><br> v. <br><br> HP INC. | Case No. 2:24-cv-00752-JRG-RSP <br> (Lead Case) <br><br> **JURY TRIAL DEMANDED** |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC. <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. | Case No. 2:24-cv-00746-JRG-RSP <br> (Member Case) |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC. <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. | Case No. 2:24-cv-00765-JRG-RSP <br> (Member Case) |

**PLAINTIFF WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON SAMSUNG'S ESTOPPEL & WAIVER DEFENSE**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. UNDISPUTED MATERIAL FACTS ............................................................................. 1

    A. The 802.11ax Standard ......................................................................................... 1

    B. The IEEE Patent Policy ........................................................................................ 2

    C. Wilus' Letter of Assurance ................................................................................... 3

    D. Samsung's Asserted Defense ................................................................................ 4

III. LEGAL STANDARD ..................................................................................................... 4

    A. Summary Judgment .............................................................................................. 4

    B. Estoppel ................................................................................................................ 4

    C. Waiver .................................................................................................................. 5

IV. ARGUMENT ................................................................................................................... 6

    A. The IEEE Policy Does Not Require Disclosure of IPR at Technical Meetings ........... 6

    B. The IEEE Policy Does Not Establish a Timing Requirement for Submission of LOAs 9

V. CONCLUSION .............................................................................................................. 10

i

# TABLE OF AUTHORITIES

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.*,
   960 F.2d 1020 (Fed. Cir. 1992) ................................................................................................ 8

*Chrimar Sys., Inc. v. Alcatel-Lucent Enter. USA Inc.*,
   No. 6:15-cv-163, 2017 U.S. Dist. LEXIS 9819, 2017 WL 345991 (Jan. 24, 2017) .................... 5

*Hynix Semiconductor Inc. v. Rambus Inc.*,
   645 F.3d 1336 (Fed. Cir. 2011) ............................................................................................. 4, 5

*Qualcomm Inc. v. Broadcom Corp.*,
   548 F.3d 1004 (Fed. Cir. 2008) ................................................................................................ 5

*Rambus Inc. v. Infineon Techs. AG*,
   318 F.3d 1081 (Fed. Cir. 2003) ................................................................................................ 5

**Statutes**

Fed. R. Civ. Pro. 56(a) ................................................................................................................... 4

## **TABLE OF EXHIBITS & NOTES**

| Ex. | Description |
|---|---|
| A | Wilus' Letter of Assurance for 802.11ax (WILUS_0030063) |
| B | 2014 IEEE Bylaws |
| C | Samsung's Letter of Assurance for 802.11ax (SAMSUNG_WILUS_00068935) |
| D | 2015 IEEE Bylaws |
| E | Excerpts of the Deposition Transcript of Jungyoung Lee dated Dec.18, 2025 |
| F | Excerpts of the Rebuttal Expert Report of Paul Nikolich dated Feb.13, 2026 |
| G | Excerpts of the Deposition Transcript of Jin Sam Kwak dated Dec.10, 2025 |
| H | Excerpts of the Deposition Transcript of Eunsung Jeon dated Dec. 19, 2025 |
| I | Excerpts of the Deposition Transcript of "Greg" Geonjung Ko dated Dec. 16, 2026 |
| J | Excerpts of Samsung's Responses to Wilus' Requests for Admission |
| K | Excerpts of the Deposition Transcript of Paul Nikolich dated Feb. 19, 2026 |

\*      Emphasis added unless otherwise noted.

\*\*     Objections are omitted from deposition transcript quotations unless otherwise noted.

\*\*\*    "UMF" refers to Undisputed Material Fact.

## I. INTRODUCTION

The Court should grant summary judgment against Samsung's estoppel/waiver defense based on an alleged failure of Wilus to disclose its patents at IEEE working group meetings. There is no genuine issue of material fact that the IEEE Patent Policy does not create a duty to (i) disclose potentially essential patent claims at working group meetings, or (ii) submit a completed Letter of Assurance ("LOA") to the IEEE within a set period of time. To the extent the Patent Policy sets any timeframe for submitting an LOA, it would be prior to the approval date of the standard (802.11ax) and there is no dispute Wilus submitted its LOA well before that date. Since Samsung relies on an alleged failure to disclose to support its defenses, it is unable to establish breach of any disclosure duty, and thus summary judgment is appropriate.

## II. UNDISPUTED MATERIAL FACTS

### A. The 802.11ax Standard

1. Wilus contends that the Asserted Patents relate to the 802.11ax standard, which is a technical standard for Wi-Fi that was promulgated by the Institute of Electrical and Electronics Engineers ("IEEE"). Case 24-cv-00765 at Dkt. 1, ¶¶ 3-5; Case 24-cv-00746 at Dkt. 1, ¶¶ 3-5; Case 24-cv-00752 at Dkt. 107 at ¶¶ 3-5; Case 24-cv-00746 at Dkt. 106 at ¶¶ 3-5.

2. Development of the 802.11ax standard began in May 2014 and lasted until the standard was formally approved by the IEEE Standards Board on February 1, 2021. Ex F at ¶ 12.

3. The group that developed 802.11ax consisted of hundreds of participants, including representatives from Wilus and Samsung. Dkt. 107 at ¶ 3; Dkt. 106 at ¶ 3; Ex. E at 28:18-30:9.

4. The participants of the 802.11ax working group met several times a year to propose, discuss, and vote on the technical solutions to be included in the draft standard. Dkt. 107 at ¶¶ 3, 119-21; Dkt. 106 at ¶¶ 3, 133-35; Ex. E at 27:14-21. Wilus submitted proposals that were evaluated

1

by the participants for inclusion in 802.11ax. Dkt. 107 at ¶¶ 119-21; Dkt. 106 at ¶¶ 133-35.

### B.  The IEEE Patent Policy

5.  The IEEE Bylaws contain the IEEE's Patent Policy, which sets forth certain obligations related to disclosure of patent claims that are potentially essential to an IEEE standard. *See* Ex. B at § 6.2, p. 16-17. Although revisions over the years, the intent of the policy has remained consistent, which is to require standards participants to disclose potentially essential patent claims and provide a licensing assurance for those claims. Ex. F at ¶ 18.

6.  The Patent Policy starts by recognizing that "IEEE standards may be drafted in terms that include the use of Essential Patent Claims." Ex. B at § 6.2, p. 16. The policy then states that "[i]f the IEEE receives notice that a [Proposed] IEEE Standard may require the use of a potential Essential Patent Claim, the IEEE shall request licensing assurance, on the IEEE Standards Board approved Letter of Assurance form, from the patent holder or patent applicant." *Id.*

7.  The Patent Policy specifies that a LOA can be either: (i) a general disclaimer that the patent owner will not enforce its Essential Patent Claims, or (ii) a statement that the patent owner agrees to grant licenses to its Essential Patent Claims on RAND terms. *See id.*

8.  As far as the timing for submission of LOAs, the Patent Policy provides that a patent holder providing an assurance "should do so as soon as reasonably feasible in the standards development process once the PAR is approved by the IEEE-SA Standards Board" and notes that a LOA "should be provided prior to the Standards Board's approval of the standard." *Id.* Nearly identical language is contained in the 2015 IEEE Bylaws. Ex. D at § 6.2, p. 16-17.

9.  Samsung's corporate representative and the signatory to their IEEE 802.11ax LOA agrees there is no timing requirement to submit an LOA and that submission of a LOA is the appropriate method for disclosing essential patents to the IEEE. Ex. E at 31:4-8, 58:3-59:3.

10. The IEEE acknowledges that copies of accepted LOAs may be provided to the working groups, but emphasizes that "[d]iscussion of essentiality, interpretation, or validity of Patent Claims is prohibited during IEEE-SA standards-development meetings[.]" Ex. B at § 6.2, p. 18. This is the Patent Policy's only reference to "standards-development meetings." *See id*.

11. Paul Nikolich, the chair of the IEEE 802 *Standards Committee*, has participated in over 4,000 standardization meetings and "cannot recall anyone ever positively responding to call for awareness of potentially essential patents" at an IEEE meeting. Ex. F at ¶ 46.

12. Several engineers who attended the 802.11ax standardization meetings similarly testified that they do not recall any participant ever disclosing potentially essential patent claims at the working group meetings. Ex. H at 98:9-25; Ex. G at 52:14-53:3; Ex. I at 69:16-22, 74:9-18.

13. Samsung representatives attended and submitted proposals at the 802.11ax working group meetings; however, none of those representatives ever responded to the "call for patents" or disclosed essential patents at the meetings. Ex. E at 24:24-25:10, 28:18-30:9; Ex. J at p. 13, 18.

C. **Wilus' Letter of Assurance**

14. On January 15, 2021, several weeks prior to the February 1, 2021 approval of 802.11ax, Wilus submitted a completed LOA to the IEEE. Dkt. 107 at ¶ 3; Dkt. 106 at ¶ 3; Ex. A.

15. On January 18, 2021, the IEEE accepted Wilus' 802.11ax LOA. Ex. F at ¶ 32.

16. On its LOA, Wilus disclosed that it may have patent claims essential to 802.11ax and provided an assurance that it would license any such claims on RAND terms. Ex. A at 1-2.

17. For its 802.11ax LOA, Wilus utilized the IEEE's June 13, 2019 custom LOA form, which includes text specifying that the form is governed by "the IEEE Patent Policy…in effect as of 14 March 2015[.]" Ex. A. The 2014 Bylaws were in effect as of March 14, 2015. Ex. F at ¶ 36.

3

18.  Numerous entities submitted 802.11ax LOAs, including Samsung who submitted its LOA on January 14, 2022, approximately one year after the standard was approved. Ex. C at 3.

### D.  Samsung's Asserted Defense

19.  In its Answer, Samsung asserts an estoppel/waiver defense, which is premised on the contention that "Wilus, including its IEEE representatives, failed to timely disclose to IEEE that Wilus was a holder of potential essential patent claims." Dkt. 107 at ¶ 131; Dkt. 106 at ¶ 133.

20.  In an effort to establish that Wilus breached a disclosure duty, Samsung points to the following two acts: (i) Wilus' representatives failed to disclose patent applications related to their technical proposals at the 802.11ax working group meetings, and (ii) Wilus submitted its LOA to the IEEE several years after it submitted proposals at the working group meetings. Dkt. 107 at ¶ 130-34; Dkt. 106 at ¶¶ 132-27.

## III.  LEGAL STANDARD

### A.  Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), a party may move for partial summary judgment on "a claim or defense[.]" Fed. R. Civ. Pro. 56(a). A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

### B.  Estoppel

"To support a finding of equitable estoppel, the accused must show that 'the patentee, through misleading conduct, led the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer.'" *Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1348 (Fed. Cir. 2011) (internal citation omitted). "'Conduct' may include specific statements, action, inaction, or silence where there was an obligation to speak." *Id.*

"The existence of a disclosure duty is a legal question with factual underpinnings." *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1012 (Fed. Cir. 2008) (citing *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1087 n.3 (Fed. Cir. 2003)). "In deciding whether a duty to disclose existed, the Court looks first to (1) whether the written policies impose disclosure obligations; and (2) if it is understood that the policies impose such obligations." *Chrimar Sys., Inc. v. Alcatel-Lucent Enter. USA Inc.*, No. 6:15-cv-163, 2017 U.S. Dist. LEXIS 9819, 2017 WL 345991, at *7 (Jan. 24, 2017)) (internal citation omitted) (finding that "[b]ecause [the patent owner] was under no affirmative duty to disclose the patents-in-suit to the IEEE, [defendant's] claim of equitable estoppel fails."). In the context of standard setting organizations ("SSO"), courts recognize that there is no estoppel if there was not a duty to disclose the patent to the SSO or if there was no breach of that duty. *See, e.g.*, *Hynix*, 645 F.3d at 1348.

C.  **Waiver**

"To support a finding of implied waiver in the [SSO] context, the accused must show by clear and convincing evidence that the patentee's conduct was so inconsistent with an intent to enforce its rights as to induce a reasonable belief that such right has been relinquished." *Id.* (internal citation and quotation marks omitted). "Such conduct can be shown where (1) the patentee had a duty of disclosure to the [SSO], and (2) the patentee breached that duty." *Id.*

Importantly, the two elements of waiver must be shown to prove equitable estoppel because absent a disclosure duty, the infringer would not have a "reasonable belief" that the patent owner did not intend to enforce its rights, and absent a breach of that duty, the patent owner's nondisclosure would not be misleading. *Id.* For this reason, and because Samsung relies on the same set of allegations for both defenses, estoppel and waiver are addressed together below.

## IV.     ARGUMENT

Summary judgment is appropriate on the estoppel/waiver defense because there is no genuine issue of material fact that the Patent Policy does not create a duty to (i) disclose potentially essential patent claims at working group meetings, or (ii) submit a LOA within a set period of time that is triggered by the participant making a proposal at a working group meeting. Even if there is a timing requirement, it would be prior to the approval of the standard in question, and there is no dispute that Wilus submitted its LOA prior to that date. Since Samsung has not identified any conduct that would support finding breach of a disclosure duty, summary judgment is warranted.

### A.     The IEEE Policy Does Not Require Disclosure of IPR at Technical Meetings

For its estoppel/waiver defense, Samsung points to two types of "misleading" conduct that Wilus allegedly engaged in related to the 802.11ax standard. UMF 19-20. The first is that "Wilus' representatives failed to report its ownership of…patent priority applications" at the 802.11ax working group meetings. Dkt. 107 at ¶ 130-34; Dkt. 106 at ¶¶ 132-37; UMF 19-20. This is insufficient to support Samsung's defense because there is nothing in the IEEE Patent Policy requiring participants to disclose patent information at technical standardization meetings.

First, there is no support in the Patent Policy for finding that Wilus had a duty to disclose patents or patent applications at the 802.11ax working group meetings. As mentioned above, the only language in the Patent Policy that references technical meetings is the sentence stating that "[c]opies of an Accepted LOA may be provided to the working group, *but shall not be discussed, at any standards working group meeting*." Ex. B at § 6.2, p. 16; UMF 10. When the IEEE Bylaws were revised in 2015, this portion of the policy was revised to make clear that the IEEE strictly prohibits any and all discussion of patent rights at technical meetings:

6

> Copies of an Accepted Letter of Assurance may be provided to participants in a standards development meeting. **Discussion of essentiality, interpretation, or validity of Patent Claims is prohibited during IEEE SA standards-development meetings**[.]

Ex. D at § 6.2, p. 18. The IEEE's longstanding prohibition of discussion of essential patent claims at technical meetings continues today and reinforces that the IEEE has never required disclosure of essential patent claims at working group meetings. Ex. F at ¶¶ 50-51; UMF 10.

Since the IEEE Patent Policy does not require disclosure of patents at technical meetings, Samsung was forced to look outside the policy to find support for their argument. To try to fill the gap, Samsung turns to the "call for patents" that occurs at the start of IEEE technical meetings. *See, e.g.,* Dkt. 107 at ¶¶ 131-32; Dkt. 106 at ¶¶ 133-35; *see* UMF 20. The "call for patents" refers to when the chair of the working group stands up at the start of a meeting to remind the participants of their duty under the Patent Policy to submit an LOA. Ex. F at ¶ 44 (internal citation omitted). Critically, there is nothing in the Patent Policy, or in any other portion of the IEEE Bylaws, that obligates a standards participant to disclose essential patent claims in response to a "call for patents." *See* Ex Ex. B at § 6.2, p. 16-17. And even Samsung correctly characterizes the "call for patents" as merely a "*reminde[r]*" of the obligation set forth in the Patent Policy (e.g., to submit a completed LOA). Dkt. 107 at ¶ 131-32; Dkt. 106 at ¶ 133-35; *see* UMF 19-20.

Sworn testimony from those who attended the 802.11ax working group meetings provides further confirmation that there was never a requirement or expectation that participants disclose patents at the working group meetings. For example, Dr. Woojin, who attended approximately 25 working group meetings for 802.11ax, testified that the chair of the meetings would recite the "call for patents" but stated that "nobody spoke or raised their hand" in response to the call. Ex. H at 98:9-25; UMF 12. Two other engineers who also attended the 802.11ax working group meetings both testified that they did not have any recollection of a participant ever disclosing potentially

7

essential patent claims in response to a "call for patents." Ex. G at 52:14-53:3; Ex. I at 69:16-22, 74:9-18; UMF 12. The chair of the IEEE 802 *Standards Committee*, who has participated in over 4,000 standardization meetings, similarly stated that he "cannot recall anyone ever positively responding to call for awareness of potentially essential patents." Ex. F at ¶ 46; UMF 11; *see also A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) ("[S]ilence alone will not create an estoppel unless there was a clear duty to speak…[.] ").

Essential patent claims were not disclosed at working group meetings because submission of a LOA is the usual and appropriate means for disclosing essential patent claims to the IEEE. Samsung's corporate representative, Mr. Jungyoung Lee, confirmed that submission of a LOA, not verbal disclosure at a working group meeting, is the appropriate method for satisfying the IEEE's requirement to disclose potentially essential patent claims. Ex. E at 58:3-59:3 (testifying that "according to the bylaws[,]" submission of an LOA is the appropriate means for disclosing patents and he is not aware of anything in the bylaws "regarding verbal disclosure" of patents at technical meetings), 52:5-10 (testifying he has never heard of the "call for patents"); *see also* Ex. K at 48:4-15 (testifying that "submitting an LOA is responsive to the call for patents."); UMF 9.

Mr. Lee's testimony is consistent with Samsung's own standardization conduct. Even though Samsung representatives attended 802.11ax working group meetings and submitted proposals at those meetings, none of the Samsung representatives ever responded to the "call for patents" or otherwise disclosed essential patent claims at the meetings. Ex. E at 24:24-25:10, 28:18-30:9; Ex. J at p. 13, 18 (admitting Samsung participated in 802.11ax standardization as early as 2017 and never identified any essential patents at those meetings); UMF 13.

The text of the Patent Policy, as well as testimony from IEEE leadership and Samsung, confirms that IEEE participants are not required to disclose potentially essential patent rights at

8

standardization meetings. UMF 9-13. In addition, Samsung has not identified any evidence that would support finding that Wilus was obligated to disclose patent rights in response to a "call for patents" and thus the alleged conduct is insufficient to support an estoppel/waiver defense.

### B. The IEEE Policy Does Not Establish a Timing Requirement for Submission of LOAs

The second conduct that Samsung points to in support of its estoppel/waiver defense relates to the timing of Wilus' 802.11ax LOA. *See* Dkt. 107 at ¶ 130-34; Dkt. 106 at ¶¶ 132-37; UMF 19-20. In its Answer, Samsung identifies the dates that Wilus submitted its technical contributions related to the Asserted Patents and then notes that "Wilus filed its first Letter of Assurance nearly five years later in January of 2021." Dkt. 107 at ¶ 131-32; Dkt. 106 at ¶¶ 133-35; UMF 20. Samsung's suggestion that Wilus engaged in misleading conduct because of the several year time span between its submission of technical proposals and its submission of a completed LOA form is insufficient to support Samsung's asserted defense.

The text of the IEEE's Patent Policy establishes that there is no rigid timing requirement for submitting completed LOAs to the IEEE. *See* Ex. B at § 6.2; UMF 8. Rather, the Patent Policy merely encourages the early disclosure of essential patent claims by stating the following:

> If the patent holder or patent applicant provides an LOA, it should do so as soon as reasonably feasible in the standards development process once the PAR is approved by the IEEE-SA Standards Board. **This LOA should be provided prior to the Standards Board's approval of the standard.**

Ex. D at § 6.2, p. 16-17; Ex. B at § 6.2, p. 16 (nearly identical language); UMF 8. Within the IEEE, it is well understood that the word "should" has a permissive meaning and that "shall" indicates that something is mandatory. Ex. F at ¶ 30. Even setting aside whether the language in the policy is permissive or mandatory, Wilus was fully compliant with this language in the policy since it submitted its completed LOA on January 15, 2021, several weeks "prior to the Standards Board's approval of [802.11ax.]" Ex. D at § 6.2, p. 16-17; Ex. B at § 6.2, p. 16; UMF 2, 8, 14.

9

Recognizing that the Patent Policy does not contain any timing requirements, Samsung is again forced to look outside the policy to try and support its estoppel/waiver defense. Samsung's suggestion that the Asserted Patents should be declared unenforceable due to the length of time that lapsed between submission of Wilus' technical proposals and submission of its LOA must be rejected as there is no support for this concocted theory anywhere in the Bylaws. In fact, the Patent Policy does not contain any reference to or discussion of technical proposal submissions. *See* Ex. D at § 6.2, p. 16-17. Tellingly, Samsung's corporate representative, who is the signatory on Samsung's 802.11ax LOA, confirmed under oath that it is his understanding that the IEEE Patent Policy does not include a timing requirement when it comes to the submission of LOAs:

> Q. Are you aware of any IEEE requirement that establishes a deadline for submitting LOAs?
>
> A. To my understanding, **there are not such established deadlines.**

Ex. E at 31:4-8; *see also id.* at 46:22-47:8 (testifying that he believes that Samsung's 802.11ax LOA, which was submitted one year after approval of the standard, complies with the IEEE Bylaws); *id.* at 51:24-52:3 (testifying that he is not aware of any repercussions for a participant not submitting a LOA until after a standard is approved); UMF 9.

There is nothing in the policy that obligates a participant to submit a LOA by a certain date or close in time to when a technical proposal is submitted to a working group. UMF 8-9. Samsung's reliance on the timing of Wilus' January 2021 LOA is insufficient to give rise to a breach of a duty that would support its estoppel/waiver defense and thus summary judgment is appropriate.

## V.  CONCLUSION

For the foregoing reasons, Wilus respectfully requests that the Court grant this Motion and enter summary judgment in Wilus' favor on Samsung's estoppel and/or waiver defense.

10

Dated:  March 2, 2026

Respectfully submitted,

*/s/ Marc A. Fenster*

Marc A. Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Dale Chang
CA State Bar No. 248657
Email: dchang@raklaw.com
Neil A. Rubin
CA State Bar No. 250761
Email: nrubin@raklaw.com
Jacob Buczko
CA State Bar No. 269408
Email: jbuczko@raklaw.com
Jonathan Ma
CA State Bar No. 312773
Email: jma@raklaw.com
Mackenzie Paladino
NY State Bar No. 6039366
Email:  mpaladino@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474


Of Counsel:
Andrea L. Fair
State Bar No. 24078488
MILLER FAIR HENRY, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)
E-mail: andrea@millerfairhenry.com

**ATTORNEYS FOR PLAINTIFF, Wilus Institute of Standards and Technology Inc.**

11

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and served via email on all counsel of record on this 2nd day of March 2026.

/s/ Neil A. Rubin

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the following document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

/s/ Neil A. Rubin