# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>HP INC. | Case No. 2:24-cv-00752-JRG-RSP<br>(Lead Case) |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. | Case No. 2:24-cv-00746-JRG-RSP<br>(Member Case) |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>ASKEY COMPUTER CORP., ASKEY INTERNATIONAL CORP. | Case No. 2:24-cv-00753-JRG-RSP<br>(Member Case) |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>HP INC. | Case No. 2:24-cv-00764-JRG-RSP<br>(Member Case) |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. | Case No. 2:24-cv-00765-JRG-RSP<br>(Member Case) |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>ASKEY COMPUTER CORP., ASKEY INTERNATIONAL CORP. | Case No. 2:24-cv-00766-JRG-RSP<br>(Member Case) |

**PLAINTIFF WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.'S REPLY IN SUPPORT OF ITS MOTION FOR ENTRY OF A PERMANENT INJUNCTION (ECF NO. 228)**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................ 1

II.    ARGUMENT ....................................................................................................................... 1

      A.    Askey Cannot Rebut Wilus' Showing of Irreparable Harm.............................. 1

      B.    Askey Mischaracterizes the Parties' Negotiation History and Offers .............................. 2

      C.    The Parties' Expert Opinions on Damages Support Entry of an Injunction................... 4

      D.    Askey's Delay in Taking a License Erodes Wilus' Property Rights ................................ 5

III.    CONCLUSION .................................................................................................................. 5

## **TABLE OF AUTHORITIES**

**Cases**

*Apple Inc. v. Motorola, Inc.*,
 757 F.3d 1286 (Fed. Cir. 2014) ..................................................................................................2, 4

*Collision Comm., Inc. v. Samsung Electronics Co., Ltd.*,
 No. 2:23-cv-00587-JRG, Dkt. 386 (E.D. Tex. Feb. 27, 2026) ................................................... 4

*i4i Ltd. P'ship v. Microsoft Corp.*,
 598 F.3d 831 (Fed. Cir. 2010) ..................................................................................................... 5

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
 702 F.3d 1351 (Fed. Cir. 2012) ................................................................................................... 5

*Radian Memory Systems v. Samsung Electronics Co. Ltd.*,
 No. 2:24-cv-1073, Dkt. 52 (E.D. Tex. Jun. 24, 2025) ..........................................................4, 5

## TABLE OF EXHIBITS

| # | Description |
|---|---|
| A | Deposition of David Muus taken December 17, 2025 [Excerpted] |
| B | 2nd Side Letter to the Wi-Fi 6 Bilateral Patent License Agreement |
| C | Expert Report of Stephen E. Dell dated January 23, 2026 [Excerpted] |
| D | Rebuttal Report of Nish Mody dated February 13, 2026 [Excerpted] |

## I. INTRODUCTION

In opposing Wilus' Motion for Entry of a Permanent Injunction ("Motion"), Askey relies on mischaracterizations of the parties' negotiation history and omits key record evidence demonstrating the appropriateness of the requested relief. For the reasons explained below and in the Motion, each of the *eBay* factors weighs in favor of granting a permanent injunction.

## II. ARGUMENT

### A. Askey Cannot Rebut Wilus' Showing of Irreparable Harm

Unable to rebut the sworn statements about the irreparable harm Wilus is facing due to Askey's continued, unauthorized infringement, Askey resorts to baldly claiming that Wilus' injuries are "unsubstantiated" and "contradicted by the record[.]" ECF 278 at 6. But Wilus has explained the multiple ways it is being irreparably harmed, and Askey's refusal to license the Asserted Patents at terms many others have accepted strongly favors entry of the requested injunction. ECF 228 at 5-14.

Supporting the Motion, Wilus provided an eight-page declaration from its CEO, Dr. Sam Kwak, who also sat for a 12-hour deposition in this matter. The declaration explains the facts behind the research laboratory's business model and outlines the implications that this ongoing litigation (and particularly, Askey's failure to take a license despite acknowledging liability) is having on the company's operations. ECF 228-4; *see also* ECF 228-5. Dr. Kwak speaks directly to how Askey's unsubstantiated refusal to take a license is affecting Wilus' standardization work and licensing efforts, demonstrating that Wilus' injuries are neither "theoretical" nor "speculative[,]" as Askey contends. ECF 278 at 10.

Askey claims that Wilus' statements about having "to divert resources, including both time and money, to pursuing this litigation" are contradicted by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[1] ECF 278 at 10. Not so. First, it is undisputed that Wilus has devoted significant time to this litigation. For example, Wilus, which is a small research lab with only 20 employees, has made multiple employees available for deposition. Second, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ is not a litigator by profession; sitting for hours of deposition and enduring questions from counsel takes him away from his primary job responsibilities.

1

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

Given the evidence in the record, Askey attempts to heighten the standard for irreparable harm, asserting, for example, that Wilus "has presented no evidence suggesting that [it] is on the verge of bankruptcy[.]" ECF 278 at 13. But the law does not require that a patent owner become defunct before being entitled to an injunction, and Wilus' identified injuries are sufficient to establish irreparable harm that cannot be adequately compensated by monetary damages. *See* ECF 228 at 5-14.

B.  **Askey Mischaracterizes the Parties' Negotiation History and Offers**

Askey attempts to portray itself as a willing licensee that has extended multiple reasonable counteroffers, which Wilus and Sisvel have allegedly rejected without explanation. This portrayal is inaccurate, and the record confirms that Askey is a hold out who has no right to demand RAND license terms. The RAND obligation is not a unilateral promise but rather requires that a licensee negotiate in good faith. Askey's refusal to negotiate in good faith towards a RAND license for Wilus' patents weighs in favor of issuance of an injunction. *See Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1331-32 (Fed. Cir. 2014) ("[A]n injunction may be justified where an infringer unilaterally refuses a FRAND royalty or unreasonably delays negotiations to the same effect.").

First, Askey wrongly implies that there has been a wide and unexplained variance when it comes to the offers extended by Wilus and Sisvel. ECF 278 at 4 (stating that Wilus' December 2026 offer was "a fraction of Sisvel's inflated pre-litigation proposal"). Each of the global licensing offers—including those made before and after this litigation was initiated—have been based on Wilus and Sisvel's established per unit rates, which were recently determined by a court in another jurisdiction to be RAND-compliant. ECF 228-8 at ¶¶ 174-75. Any significant variation in the offers reflect the fact that, after years of negotiations and numerous requests, Askey finally provided a portion of its sales data, enabling Wilus to extend updated offers (applying established RAND rates) based on actual sales volumes. *See, e.g.*, ECF 278-7 at 31887, 31894 (noting that Sisvel's offer was based on sales volumes from "market data suppliers" and inviting "Askey to confirm these volumes").

2

Although Askey claims that "the record is replete with evidence that [it] is willing to license the asserted patents on FRAND terms[,]" the negotiation history demonstrates otherwise. Importantly, the following facts regarding the parties' license negotiations are undisputed:

- In 2022, Sisvel offered Askey a license at its established rates, which have been accepted by dozens of other entities and determined to be RAND-compliant.

- From 2022 through 2024, Sisvel/Wilus negotiated with Askey, including by preparing materials related to its running royalty offers, extending a lump sum offer based on estimated sales volumes from public sources, participating in conference calls with Askey representatives, and traveling to Taiwan for in-person meetings at Askey's offices. Despite these efforts, Askey *never* made a counteroffer or business proposal.

- After years of negotiating and receiving no counteroffer, Wilus filed suit in September 2024. Askey made its first counteroffer in January 2025, approximately three years after the negotiations began and three months after this litigation was initiated.

*See, e.g.*, ECF 228-4 at ¶¶ 13-14; ECF 228-8; ECF 278-7 at 31889, 31902.

In addition to mischaracterizing the parties' negotiations, Askey also misrepresents its own offers. The offer that Askey focuses on in its Opposition was not a licensing offer, but rather an offer of judgment made pursuant to Rule 68. ECF 279-1. Askey's offer of judgment includes the following language, confirming that it was not a counterproposal to any license offer extended by Wilus or Sisvel:

> Defendants Askey…hereby offer to allow entry of judgment to be entered against Defendants in the above identified actions in the amount of $440,000.00 ("the Offer") in ***full and complete satisfaction of each and every claim for relief asserted or assertable*** by ***Plaintiff Wilus…from its patent portfolio***. For the avoidance of doubt, the sum of $440,000.00 shall be the total amount to be paid by Defendants, collectively, on account of and in ***full satisfaction of any liability claimed or claimable by Plaintiff from its patent portfolio***[.]

ECF 279-1 (emphasis added). Tellingly, the one-page offer of judgment, which was withdrawn "14 days from the service date[,]" does not include any information about the royalty base, sales volumes of the undefined licensed products, or methodology used to calculate the $440,000 offer amount.[2] *Id.* Askey's positions during the negotiations also demonstrate that it is an unwilling licensee. For instance,

---

[2] Askey repeatedly and unpersuasively compares its offer of judgment with Mr. Dell's damages calculation. *E.g.*, ECF 278 at 1, 7, 10. This comparison is apples to oranges. As discussed in Section II(C), Mr. Dell offers opinions on a reasonable royalty rate for Askey's infringement of the Asserted Patents, whereas Askey's offer of judgment is far broader in scope. *See, e.g.*, Ex. Cat ¶ 19; ECF 279-1.

3

although Askey acknowledges that it has multiple product lines that it sells worldwide and that infringe Wilus' global portfolio, Askey has sought a resolution that only addresses its U.S. sales of those products. *See* ECF 278-7 at 31882, 31884-31886. The record establishes that Askey has both "refuse[d] a FRAND royalty" and "unreasonably delay[ed] negotiations[.]" *Apple*, 757 F.3d at 1331-32.

Finally, Askey incorrectly contends that the recently executed licenses covering Wilus' portfolio illustrate that Wilus has not suffered irreparable harm; in fact, the opposite is true. ECF 278 at 11-12. The nearly 40 companies that have taken a license to Wilus' portfolio, including the 14 companies that most recently became licensed, have done so on RAND terms.[3] ECF 228-4 at ¶ 12. The executed licenses therefore show that Askey has been in possession of—and refused to accept—a RAND offer. Since Askey has no defense to liability, the issue of injunctive relief is now ripe.

Askey also unconvincingly argues that Wilus' requested injunction should be denied under the unclean hands doctrine; however, the record is clear that Askey's offers have been rejected because they do not comply with RAND and thus Askey's allegations about unclean hands fail. ECF 278 at 14-15 (alleging that "Wilus and Sisvel…unreasonably refused Askey's offers to license the patents").

### C. The Parties' Expert Opinions on Damages Support Entry of an Injunction

Askey's Opposition references damages opinions offered by Wilus' expert, Mr. Stephen Dell; however, Askey once again omits key information showing that this evidence supports entry of the requested relief. As explained in Wilus' Motion, courts recognize that irreparable harm can be found when there is significant uncertainty about the calculation of damages. ECF 228 at 10-11. This critical principle, as well as the underlying case law, was recently discussed and validated in a Statement of Interest filed by the DOJ and USPTO.[4] *Collision* at 7-10 ("[I]rreparable harm…can occur because (1)

---

[3] Once litigation commenced, Wilus produced the executed license agreements. These agreements and their terms could not be disclosed prior to the initiation of litigation because the agreements prohibit disclosure to third parties except pursuant to a court-issued protective order.

[4] Askey attempts to discredit the *Radian* Statement of Interest by characterizing it as merely "a collection of policy arguments[.]" ECF 278 at 11-12. However, the Statements of Interest filed in *Radian* and *Collision* are well-reasoned submissions that analyze case law binding on this Court. Statement of Interest ("*Radian*"), *Radian Memory Systems v. Samsung Electronics Co. Ltd.*, No. 2:24-cv-1073, Dkt. 52 (E.D. Tex. Jun. 24, 2025); Statement of Interest ("*Collision*"), *Collision Comm., Inc. v. Samsung Electronics Co., Ltd.*, No. 2:23-cv-00587-JRG, Dkt. 386 (E.D. Tex. Feb. 27, 2026).

patents can be hard to value and (2) damages can be difficult to calculate.").

Here, it is undisputed that there is a "wide gap between [Wilus'] reasonable royalty calculation and [Askey's] reasonable royalty calculation," indicating that damages are difficult to calculate in this matter. *Radian* at 7-8. While Mr. Dell opines that a reasonable royalty for Askey's infringement of the Asserted Patents is ▅▅▅, Nisha Mody, Askey's retained expert, identifies a royalty rate that is approximately 18 times lower. Ex. C at ¶ 23; Ex. D at 3 (opining that a reasonable royalty rate would be ▅▅▅). The wide gap between the parties' damages calculations further supports finding irreparable harm and weighs in favor of issuance of a permanent injunction. *See, e.g., i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010) (analyzing the irreparable harm factor and stating that "[d]ifficulty in estimating monetary damages is evidence that remedies at law are inadequate.").

### D. Askey's Delay in Taking a License Erodes Wilus' Property Rights

Askey all but admits that it is delaying in taking a license to the Asserted Patents because doing so is economically efficient. In its Opposition, Askey states that it suggested that the parties enter into a stipulation because it "recogni[zed] that litigating every issue was likely to incur attorneys fee[s] far exceeding Askey's potential liability." ECF 278 at 8. The fact that Askey decided to stipulate to infringement and validity after weighing the costs of its attorneys' fees against its potential liability suggests that Askey is "a calculating infringer[,]" who is delaying in taking a license because doing so is "economically efficient[,]" particularly given the now reduced litigation costs as a result of the entered stipulation. *Radian* at 14 (internal citation omitted); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1362-3 (Fed. Cir. 2012) (explaining that without a right to exclude, "a calculating infringer may [ ] decide to risk a delayed payment to obtain use of valuable property without…the owner's permission"); ECF 202. This type of manipulative behavior "erodes the patent's value and the patentee's control over it[,]" and weighs strongly in favor of granting an injunction. *Radian* at 14.

## III. CONCLUSION

For the foregoing reasons and those stated in Wilus' Motion, Wilus respectfully asks this Court to permanently enjoin Askey from infringing the Asserted Patents.

Dated: March 11, 2026	Respectfully submitted,

*/s/ Reza Mirzaie*
Marc Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Dale Chang
CA State Bar No. 248657
Email: dchang@raklaw.com
Neil A. Rubin
CA State Bar No. 250761
Email: nrubin@raklaw.com
Jacob Buczko
CA State Bar No. 269408
Email: jbuczko@raklaw.com
Jonathan Ma
CA State Bar No. 312773
Email: jma@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474

Of Counsel:

Andrea L. Fair
State Bar No. 24078488
MILLER FAIR HENRY, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)
E-mail: andrea@millerfairhenry.com

**ATTORNEYS FOR PLAINTIFF,
Wilus Institute of Standards and
Technology Inc**

6

The undersigned hereby certifies that the foregoing document and attachments are authorized to be filed under seal pursuant to the Protective Order approved and entered into this case.

*/s/ Reza Mirzaie*
Reza Mirzaie

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on March 11, 2026, with a copy of this document via the Court's CM/ECF and served on all counsel of record via electronic mail.

*/s/ Reza Mirzaie*
Reza Mirzaie