**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>HP INC. | Case No. 2:24-cv-00752-JRG-RSP<br>(Lead Case)<br>**JURY TRIAL DEMANDED** |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. | Case No. 2:24-cv-00746-JRG-RSP<br>(Member Case) |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. | Case No. 2:24-cv-00765-JRG-RSP<br>(Member Case) |

**WILUS'S OPPOSITION TO SAMSUNG'S MOTION FOR SUMMARY JUDGMENT
THAT THE ASSERTED CLAIMS ARE DIRECTED TO UNPATENTABLE SUBJECT
MATTER UNDER 35 U.S.C. § 101, *ALICE* STEP ONE**

**TABLE OF CONTENTS**

I.  INTRODUCTION AND STATEMENT OF ISSUES ....................................................... 1

II.  LEGAL STANDARD............................................................................................... 1

III.  THE ASSERTED CLAIMS OF THE '077 PATENT ARE ELIGIBLE........................... 2

    A.  '077 Patent ................................................................................................. 2

    B.  Claim 1 of the '077 Patent Is Not Directed to an Abstract Idea ........................... 3

    C.  Samsung's Cursory Arguments Fail ..................................................................... 4

IV.  THE ASSERTED CLAIMS OF THE '281 AND '595 PATENTS ARE ELIGIBLE.............................................................................................................. 6

    A.  '281 and '595 Patents................................................................................... 6

    B.  Claim 1 of the '281 Patent and Claim 1 of the '595 Patent Are Not Directed to an Abstract Idea ........................................................................ 7

    C.  Samsung's Cursory Arguments Fail ..................................................................... 7

V.  THE ASSERTED CLAIMS OF THE '210 PATENT ARE ELIGIBLE........................... 8

    A.  '210 Patent ................................................................................................. 8

    B.  Claim 1 of the '210 Patent Is Not Directed to an Abstract Idea ........................... 9

    C.  Samsung's Cursory Arguments Fail ................................................................... 10

VI.  THE ASSERTED CLAIMS OF THE '163 AND '597 PATENTS ARE ELIGIBLE............................................................................................................ 10

    A.  '163 and '597 Patents................................................................................. 10

    B.  Claim 1 of the '163 Patent and Claim 1 of the '597 Patent Are Not Directed to an Abstract Idea ...................................................................... 11

    C.  Samsung's Cursory Arguments Fail ................................................................... 11

VII.  THE ASSERTED CLAIMS OF THE '879 AND '035 PATENTS ARE ELIGIBLE............................................................................................................ 12

    A.  '879 and '035 Patents................................................................................. 12

    B.  Claim 1 of the '879 Patent and Claim 1 of the '035 Patent Are Not Directed to an Abstract Idea ...................................................................... 13

    C.  Samsung's Cursory Arguments Fail ................................................................... 14

VIII.  CONCLUSION...................................................................................................... 15

**TABLE OF ABBREVIATIONS AND EXHIBITS**

| Abbreviation | Term |
|---|---|
| '077 patent | U.S. Patent No. 10,313,077 (Mot. Ex. 1, Dkt. 265-1) |
| '281 Patent | U.S. Patent No. 10,687,281 (Mot. Ex. 2, Dkt. 265-2) |
| '595 patent | U.S. Patent No. 11,470,595 (Mot. Ex. 3, Dkt. 265-3) |
| '210 patent | U.S. Patent No. 11,159,210 (Mot. Ex. 4, Dkt. 265-4) |
| '163 patent | U.S. Patent No. 11,129,163 (Mot. Ex. 5, Dkt. 265-5) |
| '597 patent | U.S. Patent No. 11,700,597 (Mot. Ex. 6, Dkt. 265-6) |
| '035 patent | U.S. Patent No. 11,116,035 (Mot. Ex. 7, Dkt. 265-7) |
| '879 patent | U.S. Patent No. 11,516,879 (Mot. Ex. 8, Dkt. 265-8) |
| '281 FH | Excerpts of Prosecution History of '281 Patent, Notice of Allowance (Mot. Ex. 9, Dkt. 265-9) |
| '595 FH | Excerpts of Prosecution History of '595 Patent, Notice of Allowance (Mot. Ex. 10, Dkt. 265-10) |
| '077 FH | Excerpts of Prosecution History of '077 Patent, Notice of Allowance (Ex. A, attached hereto) |
| '210 FH | Excerpts of Prosecution History of '210 Patent, Notice of Allowance (Ex. B, attached hereto) |
| '035 FH | Excerpts of Prosecution History of '035 Patent, Amendment and Notice of Allowance (Ex. C, attached hereto) |

## I.    INTRODUCTION AND STATEMENT OF ISSUES

This Court must decide whether the asserted claims of eight patents are directed to patent-ineligible subject matter under 35 U.S.C. § 101, *Alice* Step One. The Court should resolve this issue and find all asserted claims to be patent-eligible. At Step One, Samsung strips the claims of any meaning, boiling each of the eight asserted patents to a short summary, such as "receiving and decoding data." Even a cursory review of the claim language and intrinsic evidence refutes this. For nearly every patent, Samsung omits full language of the claim from its brief. That is why Wilus provides the claim language for the independent claims challenged. Wilus urges the Court to review the claim language and find that Samsung's characterizations don't withstand scrutiny.

Samsung's motion doesn't address *Alice* Step Two, and no purported facts to support conventionality (for any patent or any asserted claim) have even been attempted. This further undermines Samsung's arguments throughout its motion. Samsung arguments under Step One amount to making drive-by conclusory assertions that lack any application (or explanation thereof) to the claims and intrinsic evidence here. The Court should deny Samsung's motion and grant summary judgment in Wilus's favor.

## II.    LEGAL STANDARD

To determine patent-eligibility under § 101, courts conduct a two-step analysis articulated in *Alice Corp. Pty. v. CLS Bank Int'l,* 573 U.S. 208 (2014). At Step One, the "directed to" inquiry begins by asking "what the patent asserts to be the 'focus of the claimed advance over the prior art.'" *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) "In conducting this inquiry, the focus is on the claim language considered in the light of the specification." *Id.*; *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)).

The Supreme Court has cautioned against "overgeneralizing claims," explaining that "characterizing the claims at 'a high level of abstraction' that is 'untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule.'" *TecSec*, 978 F.3d at 1293. Instead, the "Step 1 analysis . . . depends on an accurate characterization of what the claims

1

require and of what the patent asserts to be the claimed advance." *Id.* at 1294. The accuracy of those characterizations is crucial to the Step 1 analysis. *Id.*

In cases involving improvements to computing technology and networks, the Federal Circuit has identified "two inquiries of significance here: [1] whether the focus of the claimed advance is on a solution to a problem specifically arising in the realm of computer networks or computers; and [2] whether the claim is properly characterized as identifying a specific improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function." *Id.* at 1293.

## III. THE ASSERTED CLAIMS OF THE '077 PATENT ARE ELIGIBLE

### A. '077 Patent

The asserted claims of the '077 patent are claims 1, 3-5, and 8. The '077 patent is entitled "Wireless communication method and wireless communication terminal for coexistence with legacy wireless communication terminal." '077 patent at (54). Claim 1 of the '077 patent recites:

| |
|---|
| [1pre]. A wireless communication terminal that communicates wirelessly, the terminal comprising:<br>[1a] a transceiver; and<br>[1b] a processor, |
| [1c] wherein the processor is configured to receive a non-legacy physical layer frame by using the transceiver, |
| [1d] obtain a legacy signaling field including information decodable by a legacy wireless communication terminal from the non-legacy physical layer frame, |
| [1e] obtain length information indicating information on a duration of the non-legacy physical layer frame, from the legacy signaling field, |
| [1f] obtain information other than information on the duration of the non-legacy physical layer frame through a remaining value obtained by dividing the length information by a data size transmittable by a symbol of a legacy physical layer frame, wherein the data size transmittable by a symbol of the legacy physical layer frame is 3 octets when a data rate of the legacy physical layer frame is 6 Mbps, and |
| [1g] determine the number of symbols of data of the non-legacy physical layer frame according to a following equation,<br><br>$$N_{\mathrm{SYM}} = \left\lfloor \left( \frac{\mathrm{L\_LENGTH} + m + 3}{3} \times 4 - T_{\mathrm{HE\_PREAMBLE}} \right) / T_{\mathrm{SYM}} \right\rfloor - b_{\mathrm{PE\_Disambiguity}}$$<br><br>where $\lfloor x \rfloor$ denotes a largest integer less than or equal to x,<br>L_LENGTH denotes the length information, |

2

> m denotes a value obtained by subtracting the remaining value from the data size transmittable by a symbol of the legacy physical layer frame,
> $b_{PE\_Disambiguity}$ denotes a value of PE Disambiguity field,
> $T_{HE\_PREAMBLE}$ denotes a duration of non-legacy preamble of the non-legacy physical layer frame,
> $T_{SYM}$ denotes a duration of a symbol of the data of the non-legacy physical layer frame,
> [1h] wherein the PE Disambiguity field is set based on the duration of a symbol of the data of the non-legacy physical layer frame and an increment of duration to set a value of the length information based on a duration of a symbol of the legacy physical layer frame.

The Examiner allowed the claims, stating that a search of the field of the invention fails to provide any prior art that discloses features such as [1f] & 1[g]. '077 FH. The Examiner further found that these limitations, in combination with the other limitations, "are not taught or fairly suggested by the prior art of record in any reasonable combination." *Id.*

### B.   Claim 1 of the '077 Patent Is Not Directed to an Abstract Idea

As reflected the claim language and the Examiner's reasons for allowance (both omitted from Samsung's motion), claim 1 of the '077 patent is directed to specific improvement for co-existence between Wi-Fi 6 devices and legacy devices such that the legacy wireless communication terminals do not suffer losses in the competition procedure for transmissions. '077 patent at 35:60-36:12. The '077 patent solves a problem arising from advances in computer networking technology, where the Wi-Fi 6 standard causes compatibility issues with legacy devices. '077 Patent at 35:60-36:12. As described in the specification "When changing the physical layer frame format of a wireless signal conventionally used to enhance the performance of wireless communication, coexistence with a wireless communication terminal that does not support a formatted physical layer frame is a problem." '077 patent at 11:3-7. The existing method at the time in 11ax for solving this problem causes the relevant duration calculation to be one symbol longer for the legacy devices comparing to non-legacy devices, resulting in legacy devices have to wait longer for the transmission. *Id.* 35:60-36:2. The '077 patent provides an improved technique for length calculation and the number of symbols calculation, resulting in the legacy devices and non-legacy devices having equal footings for the transmission. In particular, the '077 patent claims recites that the variable *m*, which determines the number of symbols (used to determine

3

transmissions), is calculated by subtracting the remaining data size from the data size transmittable by a symbol of the legacy physical layer frame, which yields this beneficial result.

The Federal Circuit has repeatedly found analogous claims to be non-abstract and eligible. In *Packet Intelligence LLC v. NetScout Systems, Inc.*, the Court found that the intrinsic record made clear "that the claimed invention presented a technological solution to a technological problem" and the claims were thus patent-eligible as a matter of law. This was because "the focus of the claims is a specific improvement in computer technology: a more granular, nuanced, and useful *classification of network traffic*." 965 F.3d 1299, 1309-10 (Fed. Cir. 2020). Likewise, in *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, the Court reversed a ruling that the challenged claims were abstract, holding instead that the claims "are directed to a non-abstract improvement in an existing technological process (i.e., error checking in data transmissions)" in wireless devices. 942 F.3d 1143, 1150 (Fed. Cir. 2019). And in *Core Wireless Licensing S.A.R. L. v. LG Elecs., Inc.*, the Court held patent eligible claims directed to an improved user interface on a wireless device that "enabled users to more quickly access stored data and programs in small-screen electronics" by determining, for instance, when an application was in the background. 880 F.3d 1356, 1359-63 (Fed. Cir. 2018). The intrinsic record confirms the same in this case.

### C.    Samsung's Cursory Arguments Fail

Samsung asserts that claim 1 of the '077 patent is directed to "receiving and decoding data including determining an amount of received data." Mot. at 3. This is a gross oversimplification and divorced from the claim language, Examiner's reasons for allowance, and the claimed advances as described in the specification. Claim 1 provides a specific improvement to computer technology, i.e., computer network signals at the physical layer; as the patent specification itself states, compatibility issues between the preliminary version of 802.11ax and the earlier 802.11ac standard arose due to advances in computer technology, specifically because 802.11ax enabled the coexistence of legacy and non-legacy 11ax devices. The patent states that the current technology will cause the legacy communication terminals suffer losses in the competition procedure for

4

transmission. '077 Patent at 36:3-12. And the '077 patent's claims remedy this specific technical problem arising in computer networks with a specific technical solution.

Apart from ignoring all relevant intrinsic evidence, Samsung's motion amounts to making drive-by conclusory assertions that lack any application (or explanations thereof) to the claims or intrinsic evidence here. *See* Mot. at 3-4. Tellingly, Samsung does not assert that claim 1 of the '077 patent is "analogous to" any claim the Federal Circuit has found to be ineligible. Because it is not. Samsung acknowledges that the asserted claims "determine an amount of received data via a formula for calculating the number of data symbols in a frame" but calls it "a straightforward mathematical relationship." *Id.* at 3. This fails. The claims and recited limitations are highly detailed and complex, and far more than the claim found to be eligible in *California Institute of Technology v. Broadcom Limited,* 25 F.4th 976, 988 (Fed. Cir. 2022) (*"Caltech"*).

In *Caltech*, the Federal Circuit affirmed a summary judgment that claims directed to a method of performing error correction and detection encoding with the requirement of irregular repetition were not invalid under § 101 and rejecting the argument that the claim was "ineligible because it depends on mathematical operations." *Id.* ("Claim 13 does not claim a mathematical formula as such. It claims more than a mathematical formula because it is directed to an efficient, improved method of encoding data that relies in part on irregular repetition. This alleged improvement is not patent ineligible simply because it employs a mathematical formula.").

Claims 2-5 and 8 of the '077 patent are directed to at least the same technical improvement as claim 1 and therefore patent-eligible for at least the same reasons. Otherwise, Samsung fails to make, much less support, any adequate contention about representativeness. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1366-70 (Fed. Cir. 2018) ("A claim is not representative simply because it is an independent claim.") (vacating summary judgment of ineligibility for dependent claims 4-7 as they contained limitations tied to the inventive concept described in the specification).

Samsung fails to mention the limitations of claim 1, much less other claims. Any mention of representativeness amounts to improper burden shifting and is particularly inappropriate given the page limits for summary judgment motions. Wilus disputes that other claims are directed to

5

"no more than" the claimed improvements of claim 1. The problem is exacerbated by Samsung's attempt to assert eligibility for eight asserted patents in one motion and should be rejected.

## IV.    THE ASSERTED CLAIMS OF THE '281 AND '595 PATENTS ARE ELIGIBLE

### A.    '281 and '595 Patents

The asserted claims of the '281 patent are claims 1-4 and 6, and the asserted claims of the '595 patent are claims 1-5. The '281 patent is entitled "Wireless communication method and wireless communication terminal, which use discontinuous channel." '281 patent at (54). Claim 1 of the '281 patent recites:

| |
|---|
| [1pre]. A wireless communication terminal, the terminal comprising: |
| [1a] a processor; and [1b] a communication unit, [1c] wherein the processor is configured to: receive a wireless packet through the communication unit, |
| [1d] obtain bandwidth information indicated via a bandwidth field of HE-SIG-A of the received packet, |
| [1e] obtain information of an unassigned resource unit via at least one of the bandwidth field of the HE-SIG-A and a subfield of HE-SIG-B of the received packet, and |
| [1f] decode the received packet based on the bandwidth information and the information of the unassigned resource unit, |
| [1g] wherein the information of the unassigned resource unit is indicated via a combination of the bandwidth field of the HE-SIG-A and a resource unit allocation field of the HE-SIG-B, and |
| [1h] wherein the bandwidth field of the HE-SIG-A indicates channel information to be punctured within the bandwidth, and the resource unit allocation field indicates additional puncturing information for the unassigned resource unit within the bandwidth. |

In allowing the claims of the '281 patent, the Examiner stated:

> "The independent claims are *directed towards resource allocation and configuration* **of HEW (High Energy Wireless LAN) systems**. The independent claims require *that information on an unassigned resource unit is conveyed in a* **particular** *fashion*: a bandwidth subfield of a HESIGA field indicates the bandwidth used, and channel information about particular channel(s) to be punctured within this bandwidth; a RU allocation subfield of a HE-SIGB field includes further information about the puncturing of the channel where the unassigned RU is; and the unassigned RU is indicated using a combination of these two subfields."

'281 FH (all emphasis in brief added unless otherwise noted). The Examiner further noted that these aspects were not found in the prior art, and despite the cited prior art being "the best available" a POSITA would not have found the claimed invention obvious. *Id.*

6

In allowing the claims of the '595 patent, the Examiner stated: "The independent claims are directed towards the idea of *obtaining information about unassigned resource units, information which indicates whether the center 2Mhz chunk (a 26 tone RU) in an 80Mhz or greater block is allocated to a user, using **a particular configuration of information in HE-SIG-A and HE-SIG-B fields of HEW communication**." '595 FH. The Examiner further noted that the independent claims "have been *specifically amended* to require that the claimed process of indication and allocation o*nly be performed on 80Mhz or greater PPDUs, and not the 20Mhz PPDU* indicated by Hedayat." *Id.* The Examiner found that a POSITA would not find it obvious to modify Hedayat to exclude performing the claimed process on 20Mhz PPDUs, **as Hedayat teaches directly away from this**, and would result in an in an inferior system." *Id.*

### B.    Claim 1 of the '281 Patent and Claim 1 of the '595 Patent Are Not Directed to an Abstract Idea

As reflected by the intrinsic evidence, the '281 and '595 patents claim techniques that help enable the use of a non-contiguous wireless channel, a feature new to Wi-Fi 6. This feature allows a device to use most of a large bandwidth channel (e.g. 80 MHz), even if a smaller portion (e.g. 20 MHz) is currently busy ('281 patent at 20:58-67) by "puncturing" the busy portion (*id* at 38:9-23). The feature also allows control over whether the bandwidth resources adjacent to a punctured portion are utilized. ('595 patent at 43:32-53). The claimed techniques use information contained in the Wi-Fi 6-specific "HE-SIG-A" and "HE-SIG-B" signaling fields to efficiently indicate what frequency resources are punctured and what are assigned. ('281 patent at 1:32-37).

The Examiner's reasons for allowance further make clear that the claims of the '281 and '595 patents are directed to specific computer-centric technical problems and specific technical solutions. Under the analogous cases of *Packet Intelligence*, *Koninklijke KPN*, and *Core Wireless*, claim 1 of the '281 patent and claim 1 of the '595 patent are patent-eligible as a matter of law.

### C.    Samsung's Cursory Arguments Fail

Samsung asserts that the claims of the '281 and '595 patents are directed to "identifying unused resources." Mot. at 5. Again, this is a vast oversimplification and divorced from the claim

7

language, Examiner's reasons for allowance, and the claimed advances as described in the specification. The claims require specific limitations tied to concrete WLAN technology in 802.11ax—itself a specific WLAN standard that is distinct from 802.11ac and earlier versions of the Wi-Fi standard. They recite "a bandwidth field of HE-SIG-A" as well as "additional puncturing information for [an] unassigned resource unit within the bandwidth." '281 patent, cl. 1. The '595 patent likewise requires two HE SIG fields (A and B), and an "unassigned resource unit [that] includes information of a C26 field indicating whether a user is allocated to a center 26-tone resource unit of 80 MHz upon the bandwidth related to a transmission of the received wireless packet indicated by the bandwidth field being 80 MH or more, not 20 MHz or 40 MHz."

These limitations are specific to 802.11ax—there is no such thing, for instance, as a "HE-SIG-A" or "HE-SIG-B" field in any earlier version of the Wi-Fi standard. Likewise, there is no channel "puncturing" or even a "center 26-tone resource unit" in any wireless networking standard before 802.11ax. There is no risk of preemption here. For the same reasons, Samsung's assertion that the claims of the '281 and '595 patents "are analogous to a claim found to be abstract in *Two-Way Media*" (Mot. at 5) fails. This argument doesn't withstand scrutiny. The claim in *Two-Way* was far broader and more general than the specific claims here reciting "HE-SIG-A" or "HE-SIG-B" and limited to improvement implemented by 802.11ax. These are the technical improvements the Examiner noted in its reasons for allowance and entirely absent form *Two-Way*.

The Court should find claims 2-4 and 6 of the '281 patent and claims 2-5 of the '595 patent eligible for at least the same reasons. Samsung's mention of representativeness is again insufficient and reflects improper burden-shifting. Wilus disputes that other claims are directed to "no more" than the claimed technical improvements of claim 1.

## V.     THE ASSERTED CLAIMS OF THE '210 PATENT ARE ELIGIBLE

### A.     '210 Patent

The asserted claims of the '210 patent are claims 1-5. The '210 patent is entitled "Wireless communication method and wireless communication terminal for signaling multi-user packet." '210 patent at (54). Claim 1 of the '210 patent recites:

| |
|---|
| [1pre]. A wireless communication terminal, the terminal comprising: |
| [1a]. a communication unit; and |
| [1b]. a processor configured to process signals transmitted and received through the communication unit, |
| [1c]. wherein the processor is configured to: receive, through the communication unit, a high efficiency multi-user PHY protocol data unit (HE MU PPDU), |
| [1d]. wherein a preamble of the HE MU PPDU includes high efficiency signal A field (HE-SIG-A) and high efficiency signal B field (HE-SIG-B), and |
| [1e]. decode the received HE MU PPDU based on information obtained from the preamble, |
| [1f]. wherein when a SIG-B compression field of the HE-SIG-A indicates full bandwidth multi User-Multiple Input Multiple Output (MU-MIMO) transmission, a format of user field(s) included in a user specific field of the HE-SIG-B is identified based on a number of MU-MIMO users indicated by a subfield of the HE-SIG-A, |
| [1g]. wherein when the number of MU-MIMO users indicates two or more users, the user specific field of the HE-SIG-B includes user fields for MU-MIMO allocation, and |
| [1h]. wherein when the number of MU-MIMO users indicates a single user, the user specific field of the HE-SIG-B includes one user field for non-MU-MIMO allocation. |

The Examiner recognized the novelty and non-obviousness of the claims, including limitations [1e]-[1h] called out in the reasons for allowance. '210 FH.

## B.    Claim 1 of the '210 Patent Is Not Directed to an Abstract Idea

As reflected in the intrinsic evidence, claim 1 of the '210 patent is directed to a specific configuration of two packet signaling fields used in 802.11ax wireless communications standard: HE SIG A and HE SIG B (shorthand for High Efficiency Signal A and B). Both fields were incorporated into the draft (working) versions of the technical standards document, which eventually became 802.11ax. The HE SIG fields within a data packet in 802.11ax are interpreted by a receiving device to indicate how the information in the packet should be decoded and what the decoded information means. The inventors recognized certain inefficiencies in how HE SIG A and HE SIG B fields were described could lead to failures when full bandwidth Multi User-Multiple Input Multiple Output" (MI-MIMO) transmissions, were broadcast by an access point to a single device. The inventors proposed to the IEEE specific technique of interpreting HE SIG A and HE SIG B fields to allow access points to reliably send a MU-MIMO packet to a single user device and for that user device to reliably decode the packet without error.

9

For similar reasons as the '281 and '595 patents, and under the analogous cases of *Packet Intelligence*, *Koninklijke* and *Core Wireless*, '210 claim 1 is eligible as a matter of law.

### C.    Samsung's Cursory Arguments Fail

Samsung asserts that claim 1 of the '210 patent is directed to "receiving and decoding data." Mot. at 8. The commits the same errors addressed for other patents and likewise fails. Tellingly, Samsung does not assert that the claim is "analogous to" any claim the Federal Circuit has found to be ineligible. Because it is not. The claim recites and requires limitations like "HE MU PPDU," "HE-SIG-A" and "HE-SIG-B," "SIG B compression field", which are unique to not only wireless networking communications but also to *a specific wireless WLAN standard*, 802.11ax. Claim 1 requires "MU-MIMO"—a technological concept that is neither required nor suggested by WLAN standards earlier than 802.11ax. No risk of preemption exists.

The Court should find claims 2-5 of the '210 patent eligible for at least the same reasons. Samsung's mention of representativeness is again insufficient and improper. Wilus disputes that claims 2-5 are directed to "no more" than the claimed technical improvements of claim 1.

## VI.    THE ASSERTED CLAIMS OF THE '163 AND '597 PATENTS ARE ELIGIBLE

### A.    '163 and '597 Patents

The asserted claims of the '163 patent are claims 1-5, and the asserted claims of the '597 patent are claims 1-2, 4-5, 9, and 12. The '163 patent is entitled "Wireless communication method and wireless communication terminal in basic service set overlapping with another basic service set." '163 patent at (54). Claim 1 of the '163 patent recites:

| |
|---|
| [1pre]. A wireless communication terminal communicating wirelessly, the wireless communication terminal comprising: <br> [1a]. a transceiver; and <br> [1b]. a processor, |
| [1c]. wherein the processor is configured to receive a physical layer convergence procedure (PLCP) Processing Data Unit (PPDU) by using the transceiver, and not to use a Basic Service Set (BSS) color when signaling information indicates that an operation based on the BSS color is not allowed, |
| [1d]. wherein the BSS color is an identifier of a BSS, |
| [1e]. wherein the signaling information is transmitted from a base wireless communication terminal to which the wireless communication terminal is associated. |

10

**B.    Claim 1 of the '163 Patent and Claim 1 of the '597 Patent Are Not Directed to an Abstract Idea**

The '163 and '597 patents address problems arising from BSS color signaling introduced in the new Wi-Fi 6 generation. As a result of the BSS coloring mechanisms in Wi-Fi 6, color collisions (i.e., the same BSS color is used by more than one basic service set) can occur, leading to inefficiencies or delays in transmissions. '163 Patent at 10:41:50. Claim 1 is directed to the technical problem of BSS color collision in Wi-Fi 6, including to how to address Wi-Fi 6 operations that typically rely on BSS colors when such collisions occur. Claim 1 teaches that when the signaling information indicates that operations based on a BSS color are not allowed (e.g., in the situation of a color collision), the system does not use the BSS color. Claims 2 and 3 provide more specific ways to continue to use an operation (setting NAV) that would normally use BSS color, even when the use of BSS color for that operation is not allowed—such as by using TXOP Duration field or a signaling field of the MAC frame instead of BSS color.

For similar reasons as the other patents directed to improvements in Wi-Fi 6 technology, and the analogous cases of *Packet Intelligence*, *Koninklijke KPN*, and *Core Wireless*, claim 1 of the '163 patent and claim 1 of the '596 patent are patent-eligible as a matter of law.

**C.    Samsung's Cursory Arguments Fail**

Samsung asserts that the claims are directed to "disallowing operation based on a group identifier." Mot. at 10. The commits the same errors addressed for other patents and likewise fails. Samsung's formulation ignores that the '163 and '596 patents all limitations that make clear the claims address an issue rooted in computer network technology, specifically arising from BSS color signaling in Wi-Fi 6. The problem of BSS color collision is in the claims and discussed in the specification as the technical problem the patents address. *See* '163 patent at 2:46-59, 10:41-62; '597 Patent at 2:49-67, 10:53-11:7. Notably, the patents describe how to handle color-based operations that should be performed in the event of color collisions, and more specific ways of continuing use BSS color operations are recited in claims 2 and 3 (e.g., setting NAV, and using TXOP Duration field or a signaling field of the MAC frame instead of BSS color.).

11

Samsung's cited cases (Mot. at 10-12) are inapposite. None involved claims and patents that purported to improvements computer functionality—much less the improvements to computer network technology, Wi-Fi 6, and BSS color collisions for the '163 and '597 patents. For example, Samsung relies on *Beteiro v. DraftKings* as its best case and even asserts the case is "instructive." Mot. at 11. But in sharp contrast to the'163 and '596 patents concern *betting*—a concept not rooted in computer technology or improvements thereof. Unlike Wi-Fi 6 communications or BSS color collisions or operations, betting is a long-standing human practice and conceivably be performed mentally. No such analog can be made for the '163 and '597 patent claims.

The Court should find claims 2-5 of the '163 patent and claims 2, 4-5, 9, and 12 of the '597 eligible for at least the same reasons. Samsung's mention of representativeness is again insufficient and improper. Wilus disputes that other claims are directed to "no more" than the claimed technical improvements of claim 1. Other claims provide more specific ways to use a BSS color operation (setting NAV), such as by using TXOP Duration field instead of BSS color.

## VII.  THE ASSERTED CLAIMS OF THE '879 AND '035 PATENTS ARE ELIGIBLE

### A.    '879 and '035 Patents

The asserted claims of the '879 patent are claims 1-5 and the asserted claims of the '035 patent are claims 1-5. The '879 patent is entitled "Wireless communication method using enhanced distributed channel access, and wireless communication terminal using same." '879 patent at (54). Claim 1 of the '879 patent recites:

| |
|---|
| [1pre] A wireless communication terminal that wirelessly communicates with a base wireless communication terminal, the wireless communication terminal comprising: |
| [1a] a transceiver; and [1b] a processor, [1c] wherein the processor is configured to: |
| [1d] receive, from the base wireless communication terminal, a trigger frame using the transceiver, wherein the trigger frame triggers a orthogonal frequency division multiple access (OFDMA) uplink transmission of the wireless communication terminal, |
| [1e] transmit, to the base wireless communication terminal, a trigger-based physical layer protocol data unit (PPDU) in response to the trigger frame using the transceiver, |
| [1f] switch a parameter set, which is a set of parameters used for the channel access, from a first parameter set to a second parameter set based on whether the base wireless communication terminal triggers a multi-user uplink transmission participation of the wireless communication terminal, |

12

| [1g] when a MAC protocol data unit (MPDU) included in the trigger-based PPDU does not request an immediate response, set a second parameter set timer for an access category of the MPDU when the transmission of the trigger-based PPDU ends, |
| --- |
| [1h] when the MPDU included in the trigger-based PPDU requests an immediate response, set the second parameter set timer for the access category of the MPDU for which immediate response is received, |
| [1i] when the second parameter set timer expires, terminate an application of the second parameter set, and |
| [1j] access a channel according to a priority of data to be transmitted to the base communication terminal by the wireless communication terminal and the parameter set. |

During prosecution of the parent application that issued as the '035 patent, the inventors amended the claims to add the "when" limitations in [1g] and [1h]. '035 FH. These limitations, alone and in the ordered combination, reflect one of the points of novelty of the claims. The Examiner recognized the novelty and non-obviousness of the claims by noting that the notice of allowance was responsive to the Applicant's claim amendment. *Id.*

**B.    Claim 1 of the '879 Patent and Claim 1 of the '035 Patent Are Not Directed to an Abstract Idea**

Claim 1 of the '879 patent and claim 1 of the '035 patent are directed to improvements in wireless communication devices using enhanced distributed channel access, that improves upon existing IEEE 802.11ac and 802.11ad wireless standards to provide high-efficiency and high-performance wireless communication technology in high-density environments. Specifically, claim 1 is directed to the ordered combination of elements above that allows such improvements to be achieved and was adopted in next-generation IEEE 802.11ax standard for higher performance and efficiency. Like the other asserted patents, the '879 and '035 patents are rooted in computer technology, in view of their specifications and the claimed inventions. For example, the background of the '879 patent, like the other patents is instructive. *See* '879 patent at 1:37-2:67.

. This background and specification make clear the '879 patent is directed to improvements in then-existing wireless communication standards and thus is a technical problem and was adopted in the next-gen 802.11ax standard and provide a technical solution. For example, the patent discusses then-existing standards of 802.11 ac & ad and note that "since it is difficult for the 60 GHz frequency band to pass through an obstacle, it is disadvantageous in that the 60 GHz

13

frequency band can be used only among devices in a short-distance space." *Id.* The inventors note that "providing a high-efficiency and high-performance wireless communication technology in a high-density environment" was a problem and focus in the art. *Id.* "That is, in a next-generation wireless communication technology environment, communication having high frequency efficiency needs to be provided indoors/outdoors under the presence of high-density terminals and base terminals and various technologies for implementing the communication are required." Further: "[e]specially, as the number of devices using a wireless communication technology increases, it is necessary to efficiently use a predetermined channel. Therefore, required is a technology capable of efficiently using bandwidths by simultaneously transmitting data between a plurality of terminals and base terminals." *Id.*

The inventors provided a solution of a wireless communication using enhanced distributed channel access, as recited in claim 1 of the '879 and described in the specification. *See* '879 patent at columns 3-4 (entitled "Technical Solution"). The specific solution includes the "when" limitations added during prosecution to overcome the prior art and which the Examiner agreed rendered the claims novel and non-obvious over the prior art. As the other patens, which likewise address technical improvements to then-existing standards of 802.11 ac & ad standards, and under *Packet Intelligence*, *Koninklijke KPN*, and *Core Wireless*, claim 1 of the '879 patent and claim 1 of the '035 patent is patent-eligible as a matter of law.

### C.    Samsung's Cursory Arguments Fail

Samsung asserts that the claims are directed to "sending a message that temporarily changes the recipient's behavior." Mot. at 13. And it rests on implausible analogies relating to parenting that bear no resemblance to either the claim language or specifications. Samsung's approach repeats the same errors for other patents and likewise fails.

Samsung's argument requires ignoring nearly all limitations of the 247 words of claim 1 of the '879 patent, including requirements of using multiple EDCA parameters, "the trigger frame triggers a orthogonal frequency division multiple access (OFDMA) uplink transmission," "a trigger-based physical layer protocol data unit (PPDU) in response," and specific timers for an

access category and per access category "when a MAC protocol data unit (MPDU) included in the trigger-based PPDU does not request an immediate response." These requirements are firmly rooted in computer technology, and the specific 802.11ax improvements that the patents assert as the focus of their claimed advances.

Tellingly, Samsung does not assert that the claim is "analogous to" any claim the Federal Circuit has found to be ineligible. Because it is not. This undermines any purported analogy to verbal / sound communications between a mother and a child. Such an analogy for isolated limitations could be attempted of nearly every computer patent, but this approach finds no support in Federal Circuit law, particularly for patents rooted in wireless communication standards.

Recognizing that its argument requires stripping out all limitations, Samsung asserts without support that "the patents simply rely on generic, well-known computers . . . or known techniques." Mot. at 14. But for this motion, Samsung has *abandoned* any argument that any asserted claim is conventional or non-inventive. This motion doesn't address *Alice* Step Two at all, and no purported facts to support conventionality have been even attempted. Thus, for purposes of this motion, and under well-established standards for summary judgment, the Court should presume that the asserted claims are inventive and *not* conventional or generic. This applies to all patents and asserted claims and is fatal to Samsung's motion for all claims.

The Court should find claims 2-5 of the '879 patent and claims 2-5 of the '035 patent eligible for at least the same reasons. Although Wilus agrees that claim 1 of the '035 and '879 patents are representative for purposes of eligibility, no such agreement for other claims have been made. The same applies for all other patents and asserted claims, highlighting that Samsung's mention of representativeness is insufficient. Wilus disputes that the other claims of the '879 and '035 patents are directed to "no more" than the claimed technical improvements of claim 1.

## VIII.  CONCLUSION

For the foregoing reasons, Samsung's motion for summary judgment should be denied and the Court should find that all asserted claims of the '077, '281, '595, '210, '163, '597, '035, and '879 patents are directed to patent-eligible subject matter under *Alice* Step One.

15

Dated: March 16, 2026,

Respectfully submitted,

*/s/ Philip X. Wang*
Marc Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Dale Chang
CA State Bar No. 248657
Email: dchang@raklaw.com
Neil A. Rubin
CA State Bar No. 250761
Email: nrubin@raklaw.com
Philip X. Wang
CA State Bar No. 262239
Email: pwang@raklaw.com
Jacob Buczko
CA State Bar No. 269408
Email: jbuczko@raklaw.com
Jonathan Ma
CA State Bar No. 312773
Email: jma@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474


Of Counsel:

Andrea L. Fair
State Bar No. 24078488
MILLER FAIR HENRY, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)
E-mail: andrea@millerfairhenry.com

**ATTORNEYS FOR PLAINTIFF,
Wilus Institute of Standards and
Technology Inc**

16

## CERTIFICATE OF SERVICE

I hereby certify that as of the time and date of filing, March 17, 2026), all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF System per Local Rule CV-5(a)(3).

/s/ Philip X. Wang
Philip X. Wang