**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>HP INC. | Case No. 2:24-cv-00752-JRG-RSP<br>(Lead Case)<br><br>Case No. 2:24-cv-00764-JRG-RSP<br>(Member Case) |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. | Case No. 2:24-cv-00746-JRG-RSP<br>(Member Case)<br><br>Case No. 2:24-cv-00765-JRG-RSP<br>(Member Case) |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>ASKEY COMPUTER CORP., ASKEY INTERNATIONAL CORP. | Case No. 2:24-cv-00766-JRG-RSP<br>(Member Case)<br><br>Case No. 2:24-cv-00753-JRG-RSP<br>(Member Case) |

**DECLARATION OF WOOJIN AHN IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
SAMSUNG'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE NONJOINDER
OF A JOINT INVENTOR FOR THE '035 AND '879 PATENTS**

## I.    Declaration of Woojin Ahn

I, Woojin Ahn, declare and state as follows:

## II.    Background

1.    My name is Woojin Ahn. I am over the age of eighteen and competent to testify to the matters stated herein. I have personal knowledge of the facts stated in this declaration.

2.    From approximately March 2016 through August 2019, I worked at Wilus Institute of Standards and Technology Inc. ("Wilus"). During that time, my role involved developing new Wi-Fi standard technologies and participating in standards development activities related to IEEE 802.11.

3.    As part of my work, I participated in meetings of IEEE Task Group ax ("TGax"), which was responsible for developing technology for the IEEE 802.11ax standard.

4.    I am listed as an inventor on U.S. Patent No. 11,116,035 and U.S. Patent No. 11,516,879.

## III.    Nature of the TGax Standards Process

5.    Participants in TGax represent different companies and organizations that contribute technical proposals for consideration in the standards process.

6.    In TGax, participants routinely review submissions from other companies, discuss those submissions during meetings, and provide feedback regarding technical feasibility or implementation.

7.    Participants also develop and submit their own technical proposals on behalf of their respective companies.

8.    Discussions in TGax meetings typically involve evaluating and debating different proposals and approaches for the standard.

9. In my deposition I used the term "collaboration" when referring to the TGax process. By that term, I was referring to the exchange of comments, feedback, and discussion that occurs as part of the standards process. I was not referring to jointly conceiving inventions with participants from other companies.

10. My interactions with representatives from other companies participating in IEEE Task Group ax, including Laurent Cariou of Intel, occurred at arms-length as part of the standards-development process. In that process, companies publicly present technical proposals for discussion and evaluation by the group. Participants review those proposals and may independently develop their own contributions in response. My discussions with Mr. Cariou occurred in that context.

## IV. Interaction with Laurent Cariou

11. During TGax meetings I interacted with many participants from various companies, including Laurent Cariou of Intel.

12. My limited interactions with Mr. Cariou were part of the ordinary standards discussion process in TGax.

13. In my opinion, I did not collaborate with Mr. Cariou to develop the inventions claimed in the '035 or '879 patents.

14. In my opinion, I did not jointly design or jointly conceive the technical solutions claimed in those patents with Mr. Cariou.

## V. Review of Earlier MU-EDCA Proposals

15. ███████████████████████████████████████████████████

███████████████████████████

16.

17.

18.

19.

## VI.    Development of the Wilus Contribution

20.

21.    Wilus then prepared and submitted an IEEE contribution describing that method.

22.    The Wilus Submission included technical content that was not present in the earlier submission.

23.    The purpose of the Wilus contribution was to ensure that the MU-EDCA mechanism would function correctly in circumstances where the earlier proposal did not address the issue.

## VII.    Timer Mechanism and Operational Details

24.    To my knowledge, neither Mr. Cariou nor anyone else had developed or disclosed the specific operational details for the timer that was proposed in the Wilus contribution.

25.    In particular, to my knowledge, no one had proposed the specific conditions governing when the timer would start and stop as described in the Wilus contribution.

26.

27.

## VIII.  Relationship Between Earlier Concepts and the Claimed Invention

28.    In my deposition I acknowledged that certain general concepts discussed in TGax— such as the use of two EDCA parameter sets—were part of the broader MU-EDCA discussions within the standards group.

29.    My testimony in that regard referred to the general concepts being discussed in TGax, not to the specific technical solution reflected in the inventions claimed in the '035 and '879 patents.

30.    The Wilus contribution addressed technical issues that had not been previously addressed.

31.

32.    Those solutions were not suggested or developed by Mr. Cariou.

## IX.    Independent Development

33.

34.

35.    In my opinion, my discussions with other TGax participants regarding submissions did not involve jointly development of the inventions claimed in the '035 and '879 patents.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 16, 2026 in Anyang, R

Woojin Ahn