███████████████████████████████

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> HP INC. <br><br> Defendant. | Civil Case No. 2:24-cv-00752-JRG [Lead Case] |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. <br> Defendants. | Civil Case No. 2:24-cv-00746-JRG [Member Case] |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. <br> Defendants. | Civil Case No. 2:24-cv-00765-JRG [Member Case] |

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> ASKEY COMPUTER CORP., ASKEY INTERNATIONAL CORP. <br><br> Defendants. | Civil Case No. 2:24-cv-00766-JRG [Member Case] |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> ASKEY COMPUTER CORP., ASKEY INTERNATIONAL CORP. <br><br> Defendants. | Civil Case No. 2:24-cv-00753-JRG [Member Case] |

**SAMSUNG'S MOTION FOR SANCTIONS UNDER RULE 37**

████████████████████

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... iii

TABLE OF EXHIBITS ............................................................................................................... iv

TABLE OF ABBREVIATIONS ................................................................................................... v

I.     FACTUAL BACKGROUND .............................................................................................. 2

       A.     May–June 2024: Wilus and SKT Purportedly Enter an Agreement to Assign Patents and Register an Assignment with the USPTO .................................. 2

       B.     September 2024: Wilus Files Two Lawsuits Accusing Samsung of Infringing the Asserted Patents ..................................................................................... 3

             1.     Samsung Repeatedly Sought Production of Relevant Ownership Documents ................................................................................... 4

             2.     Wilus Agreed to Produce a Witness on Ownership-Related Rule 30(b)(6) Topics Only After Samsung Filed a Motion to Compel ................................................................................................................ 7

             3.     Samsung Files Its Motion to Dismiss ............................................................. 8

             4.     The Day Before Wilus's Opposition to the Motion to Dismiss Was Due, Wilus Served the Patent Assignment Agreement ................................................................................................... 8

II.     LEGAL STANDARD ........................................................................................................ 9

III.     ARGUMENT .................................................................................................................... 10

       A.     Wilus Admitted It Violated the Court's Discovery Order ..................................... 10

       B.     Wilus's Conduct Is Not Excusable, But Sanctionable ............................................ 10

             1.     If the Patent Assignment Agreement Is Authentic, Wilus Failed to Conduct "A Reasonable Search" and Produce "All Documents" .................................................................................................... 12

             2.     If Wilus Conducted "A Reasonable Search" and Produced "All Documents," as Its CEO Testified, Is the Patent Assignment Agreement Authentic? ............................................. 12

       C.     Sanctions Are Necessary to Cure the Prejudice to Samsung and Discourage Future Discovery Misconduct .............................................................. 13

███████████████████████████████████

IV.    CONCLUSION..................................................................................................... 15

████████████████████████

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbor Global Strategies LLC v. Samsung Elecs. Co., Ltd.,*
No. 2:19-cv-333-JRG-RSP, 2021 WL 66531 (E.D. Tex. Jan. 7, 2021) ...........................................15

*CogniPower, LLC v. Samsung Elecs. Co., Ltd.,*
No. 2:23-cv-160-JRG, Dkt. No. 337 (E.D. Tex. Mar. 18, 2025) ....................................................9, 15

*Headwater Research LLC v. Samsung Elecs. Co., Ltd.,*
No. 2:22-cv-422-JRG-RSP, 2024 WL 3647624 (E.D. Tex. Aug. 2, 2024)............................. 9, 13, 15

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.,*
685 F.3d 486 (5th Cir. 2012)...........................................................................................................9

*Speedplay, Inc. v. Bebop, Inc.,*
211 F.3d 1245 (Fed. Cir. 2000).......................................................................................................12

**Statutes**

35 U.S.C. § 281 ...............................................................................................................................8

████████████████████████████████████

## TABLE OF EXHIBITS

| # | Description |
|---|---|
| 1 | Patent Assignment Agreement between SK Telecom and Wilus (May 27, 2024) (WILUS_0149628) |
| 2 | Assignment of Patents (June 20, 2024) (WILUS_0025432) |
| 3 | Email Communications February 23, 2026 – March 16, 2026 |
| 4 | Excerpts from Letter to Paladino from Phillips (February 21, 2025) |
| 5 | Excerpts from Defendants' First Set of Interrogatories to Plaintiff (Nos. 1-13) (February 21, 2025) |
| 6 | Excerpts from Plaintiff Wilus Institute of Standards and Technology Inc.'s Objections and Responses to Defendants' First Set of Common Interrogatories (No. 1-13) (March 21, 2025) |
| 7 | Excerpts from Letter to Paladino from Phillips (April 11, 2025) |
| 8 | Letter to Paladino from Phillips dated May 23, 2025 |
| 9 | Excerpts from Letter to Phillips from Paladino dated June 6, 2025 |
| 10 | Excerpts from Letter to Paladino from Phillips dated July 11, 2025 |
| 11 | Email from Phillips to Paldino, et al. dated July 15, 20025 |
| 12 | Excerpts from Plaintiff Wilus Institute of Standards and Technology Inc.'s Supplemental Objections and Responses to Defendants' First Set of Common Interrogatories (No. 1-13) (July 17, 2025) |
| 13 | Letter to Paladino from Phillips dated July 18, 2025 |
| 14 | Emails between Paladino and Phillips dated (July 18, 2025–July 25, 2025) |
| 15 | Excerpts from Samsungs' First 30(b)(6) Notice of Deposition of Wilus (August 1, 2025) |
| 16 | Excerpts from Deposition of Dr. Jim Sam Kwak (December 10, 2025) |
| 17 | Excerpts from Plaintiff Wilus Institute of Standards and Technology Inc.'s Fourth Supplemental Objections and Responses to Defendants' First Set of Common Interrogatories (No. 1-13) (December 22, 2025) |

iv

**TABLE OF ABBREVIATIONS**

| Abbreviation | Description |
|---|---|
| '077 patent | U.S. Patent No. 10,313,077 |
| '281 patent | U.S. Patent No. 10,687,281 |
| '595 patent | U.S. Patent No. 11,470,595 |
| '210 patent | U.S. Patent No. 11,159,210 |
| '163 patent | U.S. Patent No. 11,129,163 |
| '597 patent | U.S. Patent No. 11,700,597 |
| '035 patent | U.S. Patent No. 11,116,035 |
| '879 patent | U.S. Patent No. 11,516,879 |
| Asserted Patents | '077, '281, '595, '210, '163, '597, '035, and '879 patents |
| Assignment of Patents | Assignment of Patents (WILUS_0025432, Ex. 2) |
| Motion to Dismiss | Samsung's Motion to Dismiss for Lack of Statutory Standing Under 35 U.S.C. § 281 (Dkt. 220) |
| Opposition | Wilus' Opposition to Samsung's Motion to Dismiss for Lack of Standing (Dkt. 238) |
| Patent Assignment Agreement | Patent Assignment Agreement (WILUS_0149628, Ex. 1) |
| Samsung | Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. |
| Samsung Member Cases | Member Case Nos. 2:24-cv-00746-JRG and 2:24-cv-00765-JRG |
| SEP | Standard Essential Patent |
| SKT | SK Telecom Co. |
| USPTO | United States Patent and Trademark Office |
| Wilus | Wilus Institute of Standards and Technology Inc. |

\* All emphasis in this brief is added, unless otherwise indicated.

v

████████████████████████████████████████

In every patent lawsuit, the plaintiff's ownership of the asserted patents is always question number one.  Normally, ownership is clear and the issue is disposed of quickly.  But this case is different because all Asserted Patents were originally assigned to both Wilus and third-party SKT, as clearly indicated on the face of the patents.  From the beginning, Samsung sought discovery on how title allegedly vested with Wilus alone, but Wilus simply deflected Samsung's inquiries, raising more questions than answers.  Samsung pressed multiple times but was told time and again that the conveyance from SKT to Wilus consisted of the "Assignment of Patents" form filed with the PTO and that no other agreements governing the assignment could be located.  Only after Samsung moved to dismiss for lack of standing, well after the close of discovery, Wilus admitted it was violating the Court's Discovery Order all along—it simply had not produced the agreement between SKT and Wilus that defines their rights, the aptly named "Patent Assignment Agreement."  Wilus takes the strained position that its actions should be excused because it conducted "a reasonable search" during discovery and did not "withhold" the Patent Assignment Agreement despite Samsung's repeated requests.  Wilus is solely in the business of enforcing patents and its failure to produce this critical document is as curious as it is inexcusable.

Wilus knows well that documents bearing on standing are among the most important and time-sensitive documents for patentees to produce **without request**.  Dkt. 49 § 3(b).  Nevertheless, Samsung repeatedly—for months—asked Wilus to produce all documents concerning Asserted Patent ownership.  Further, when asked to confirm that the form "Assignment of Patents" filed with the USPTO was the **entire** agreement assigning the Asserted Patents to Wilus, Wilus **said yes**.  And Wilus's CEO and Rule 30(b)(6) designee on Asserted Patent ownership topics, Dr. Jin Sam Kwak, confirmed that Wilus provided "[a]ll documents" bearing on ownership.  These critical misrepresentations led Samsung to file its Motion to Dismiss for lack of standing.

Miraculously, the day before its deadline to oppose the Motion to Dismiss, Wilus located and

1

produced the Patent Assignment Agreement, which was allegedly created just **four months** before Wilus filed suit.  In its Opposition, Wilus changed its story, stating the Assignment of Patents was **not** the entire agreement assigning the Asserted Patents to Wilus, but rather the agreement "had two parts: the Patent Assignment Agreement . . . and the Assignment of Patents."  Dkt. 238 at 3.

In view of Wilus's admitted violation, its failure to adequately explain why it did not timely produce this document, and its repeated misrepresentations to Samsung, the Court should sanction Wilus.  Samsung spent substantial time and effort pursuing ownership-related discovery and preparing its defenses based on Wilus's representations.  Springing this document on Samsung after more than a year of litigation, long after discovery closed, and only in response to a direct threat to standing, is either gross negligence, a calculated decision to bar Samsung from properly probing Wilus's rights in the Asserted Patents, or, at worst, fabrication.[1]  No matter which is true, sanctions are necessary—not just to cure the prejudice to Samsung, but to remind future litigants to abide by this Court's orders.  Wilus's flagrant discovery misconduct denigrates Samsung, the judicial process, and this Court.[2]

## I.    FACTUAL BACKGROUND

### A.    May–June 2024: Wilus and SKT Purportedly Enter an Agreement to Assign Patents and Register an Assignment with the USPTO

On May 27, 2024, Wilus and SKT purportedly[3] entered the Patent Assignment Agreement (*i.e.*, the agreement not produced during discovery). Ex. 1.  Under this purported agreement:

- SKT assigned its rights in the Asserted Patents to Wilus.  *Id.* § 1.

---

[1] Samsung does not raise this possibility lightly.  However, in view of Samsung's repeated inquiries, Wilus's previous misrepresentations, and the timing of Wilus's production, Samsung needs to know the origins of this document.

[2] If the Court does not grant Samsung's co-pending Opposed Motion to Stay Pending *Inter Partes* Reviews (Dkt. 176; *see also* Dkt. 224 (notifying the Court that IPR was instituted with respect to all asserted claims)) before the April 29, 2026 pretrial conference, Samsung respectfully requests that the Court hear oral argument on this Motion during the pretrial conference.  Dkt. 230 at 2.

[3] The circumstances surrounding the production of this document call into doubt its authenticity.

███████████████████████████████

- Wilus provided as consideration a non-exclusive license, *id.* § 2, and "████████████████████

████████████████████████████████" *id.* § 4.[4]

- Wilus and SKT agreed that "[u]pon execution of this Agreement, [SKT] shall deliver to Wilus an assignment in the form of Exhibit A . . . and duly executed by [SKT], transferring all of [SKT's] right, title, and interest in and to the Acquired Rights to Wilus." *Id.* § 5.

- Wilus and SKT agreed to "record and perfect the Assignment" with the USPTO. *Id.* § 6(b).

- The parties reference other agreements between Wilus and SKT. *Id.* § 9(b).

- The agreement includes an "Exhibit A" draft assignment for recordation titled "Assignment of Patents." *Id.* at Ex. A. Notably, while Wilus claims it could not locate the Patent Assignment Agreement, it could find the executed version of "Exhibit A" produced during discovery.

Three weeks later, on June 20, 2024, Wilus recorded the Assignment of Patents with the USPTO. Ex. 2. This Assignment of Patents lacks details included in the Patent Assignment Agreement—this document was produced by Wilus but obviously portrayed a now-known incomplete picture (assuming its authenticity). *See* Ex. 3 at 18 (Wilus stating that "there are some differences" between the Patent Assignment Agreement and the Assignment of Patents). For example, the Assignment of Patents does not specify the consideration Wilus provided to SKT in exchange for the subject patents, nor does it expressly refer to any other agreements between Wilus or SKT.

**B.    September 2024: Wilus Files Two Lawsuits Accusing Samsung of Infringing the Asserted Patents**

Less than three months later, Wilus began its litigation campaign against Samsung. On September 11 and 20, 2024, Wilus filed the Samsung Member Cases, asserting the following patents:

| Case No. 2:24-cv-00746-JRG | Case No. 2:24-cv-00765-JRG |
|---|---|
| '077, '281, '595, and '210 Patents | '163, '597, '035, and '879 Patents |

---

[4] Notably, Dr. Kwak admitted that Wilus gave "no consideration" to SKT for the subject patents. *See* Dkt. 220-14 at 165:16–22; *see also id.* at 43:6–11.

3

These cases were consolidated "for all pretrial issues" with the above-captioned cases.  Dkt. 13.[5]

On December 23, 2024, the Court entered the Discovery Order.  Dkt. 49.  As is typical, the Court ordered the parties to, "[w]ithout awaiting a discovery request, . . . produce . . . all documents, electronically stored information, and tangible things in the possession, custody, or control of the party that are relevant to the pleaded claims or defenses involved in this action."  *Id.* § 3(b).

### 1.    Samsung Repeatedly Sought Production of Relevant Ownership Documents

Despite the Discovery Order's clear directive, Wilus failed to produce any ownership-related documents when discovery opened.  Samsung could see that ownership was an issue because the face of the patents showed they were originally assigned to Wilus and SKT.  Samsung therefore began a drawn-out exchange, repeatedly requesting that Wilus produce highly relevant ownership documents:

- **February 21, 2025**: Samsung served discovery requests.

   o  First, Samsung requested that Wilus produce documents related to Wilus's ownership and acquisition of the Asserted Patents, including agreements between Wilus and SKT.  Ex. 4 at 1, 2, 8.

   o  Second, all defendants served their first set of common interrogatories which requested information concerning Asserted Patent ownership.  Ex. 5 at 9, 10 (Interrogatory Nos. 4 and 7).

- **March 21, 2025**: Wilus failed to substantively respond to Interrogatory Nos. 4 and 7.  Instead, Wilus simply stated that "[i]nformation responsive to [Interrogatory No. 7] may be ascertained from documents Wilus has or will produce."  Ex. 6 at 21.

- **April 11, 2025**: Samsung notified Wilus that it's discovery efforts have been insufficient.  Ex. 7.  Relevant to this Motion, Samsung noted that Wilus had "failed to describe and/or produce the assignments of the Asserted Patents ***from [SKT] to Wilus***."  *Id.* at 2.  Samsung further stated that

---

[5] Wilus also filed a third complaint against Samsung.  *See Wilus Institute of Standards & Tech. Inc. v. Samsung Elecs. Co. Ltd.*, No. 2:25-cv-70-JRG (E.D. Tex.) (consolidated with Lead Case No. 2:25-cv-69-JRG).  The Court recently granted Samsung's motion to stay.  *Id.* Dkt. 93.

████████████████████████████████████

Wilus still had not produced documents related to the ownership of the Asserted Patents. *Id.* at 4–5.

- **May 23, 2025**: Samsung followed up again concerning Wilus's continued discovery deficiencies. Ex. 8. Wilus still had not "supplemented its interrogatory responses or document production." *Id.* at 1. Samsung further "highlight[ed] certain high-priority items," including, first and foremost, Wilus's failure to provide **any** "information regarding transfers of title or other ownership rights or interest in each Asserted Patent." *Id.* Once again, Samsung emphasized that "**Wilus ha[d] not provided the assignments of the Asserted Patents from [SKT] to Wilus**." *Id.*

- **June 2, 2025**: Wilus produced certain documents related to ownership, including the Assignment of Patents, but it **did not** produce its companion, the Patent Assignment Agreement.

- **June 6, 2025**: Wilus finally responded to Samsung's repeated requests for ownership discovery, but it failed to say anything substantive. Ex. 9. Specifically, Wilus stated that it "is in the process of supplementing Common Interrogatory Nos. 4 and 7 and document production related to transfers of title and other ownership rights in each Asserted Patent." *Id.* at 3.

- **July 11, 2025**: Samsung asked Wilus to confirm that it produced "the **entirety of the agreement between SK[T] and Wilus pertaining to the title or other ownership rights or interest in each Asserted Patent**." Ex. 10 at 4. Samsung identified the Assignment of Patents and stated that "[b]ased on this document alone, we cannot ascertain this assignment was pursuant to [certain agreements between Wilus and SKT], **or some other agreement that Wilus has not yet produced**." *Id.* Samsung noted that the Assignment of Patents "refers to 'good and valuable consideration' exchanged between the parties to the agreement without specifying what, if anything, actually changed hands. To the extent this purported consideration is defined in another agreement, any such agreement is clearly relevant and must be produced." *Id.*

- **July 15, 2025**: Samsung followed up on its July 11, 2025 letter and once more stated that "Wilus's production remains deficient with respect to transfers of title and ownership of the asserted

5

patents." Ex. 11.  Samsung stated that "[t]his information must be in Wilus's possession and is foundational to establishing ownership and standing." *Id.*  Samsung requested confirmation that Wilus produced "all such agreements" or will "produce any yet to be produced agreements." *Id.*

- **July 17, 2025**: Wilus supplemented its response to Interrogatory No. 7.  Ex. 12 at 23.  This supplemental response identified, *inter alia*, the Assignment of Patents as a document relevant to ownership. *Id.* (identifying a Bates range including the Assignment of Patents (WILUS_0025432)).

- **July 18, 2025**: Upon receiving Wilus's supplemental interrogatory response, Samsung requested Wilus to do the following:

   > [P]lease confirm that the agreements cited in Wilus supplemental response to interrogatory number 7 include "all transfer of title or other ownership rights or interests in each Asserted Patent" including "consideration . . . given for each transfer" as required by the interrogatory. By way of specific example, **please confirm there are no other agreements that define the "good and valuable consideration" that was purportedly exchanged as part of the assignment from SKT to Wilus dated May 27, 2024 (WILUS_0025432).**

Ex. 13.  Wilus responded and promised an "update by the end of next week." Ex. 14 at 3.

- **July 22, 2025**: Samsung requested that Wilus confirm that it will supplement its discovery responses and production with the repeatedly requested ownership-related documents "or confirm no further agreements exit by no later than . . . (7/24)." *Id.* at 2.  Later that same day, Wilus stated the following: "I can confirm that, based on Wilus' reasonable search, **we are not withholding any additional agreements regarding 'good and valuable consideration' as described in WILUS_0025432 at this time.**" *Id.*

- **July 23, 2025**: Samsung requested confirmation

   > either that 1) all agreements regarding transfer of title or other ownership rights or interests in the asserted patents are now identified in Wilus' supplemental response to defendants' common interrogatory number 7 or that 2) Wilus will immediately supplement its response to interrogatory number 7 to identify all such agreements.

*Id.* at 1.

- **July 25, 2025**: In response, Wilus stated the following: "I can confirm that based on Wilus'

6

████████████████████████████████████

reasonable search to date, **Wilus is not withholding any agreements regarding transfer of title or ownership rights in the asserted patents**." *Id.*

Per Wilus's representations and presumable satisfaction of Wilus's discovery obligations, Samsung understood that Wilus had produced all ownership documents it possessed.

### 2. Wilus Agreed to Produce a Witness on Ownership-Related Rule 30(b)(6) Topics Only After Samsung Filed a Motion to Compel

Accepting Wilus's representation that it had produced all ownership documents, Samsung sought to determine if Wilus owned all substantial rights in the Asserted Patents (*i.e.*, if Wilus had statutory standing). On August 1, 2025, Samsung served a Rule 30(b)(6) deposition notice requesting, *inter alia*, a witness to offer testimony on ownership-related issues, including Wilus's "agreements and relationship with SKT, including any agreements concerning the Asserted Patents." Ex. 15 at 7–8.

Wilus refused to offer a witness on these and other topics, forcing Samsung to file a motion to compel. Dkt. 160 (filed Sept. 18, 2025). As Samsung explained, "Wilus [] refuse[s] to designate a witness" for "a narrow 30(b)(6) deposition related to patent ownership, a threshold issue in this case." *Id.* at 1. Wilus filed an opposition and refused to offer a witness on the topics until **almost three months later**, at the end of fact discovery. In particular, Wilus offered its CEO, Dr. Jin Sam Kwak, on December 10, 2025, to testify on these ownership-related topics. Ex. 16 at 9:10–12, 9:22–11:9 (Dr. Kwak testifying that he is prepared to testify as to ownership-related questions).

Samsung questioned Dr. Kwak on all **produced** ownership-related agreements—including the Assignment of Patents. Dr. Kwak testified that Wilus **provided no consideration** to SKT for the assignment. *Id.* at 165:16–22; *see also id.* at 165:24–166:1, 43:6–11. Critically, Dr. Kwak confirmed that **Wilus provided "[a]ll documents" bearing on ownership.** *Id.* at 37:15–38:12.

Less than two weeks later, on the last day of fact discovery—December 22, 2025—Wilus served a supplemental interrogatory response regarding ownership, stating: "On May 27, 2024, [SKT] and Wilus executed an assignment through which [SKT] assigned any and all of its rights in one or

more of the Asserted Patents to Wilus. *See* WILUS_0025432 [the Assignment of Patents]." Ex. 17 at 27. Importantly, Wilus cited **only** the Assignment of Patents; it did not cite to, disclose, or mention any other documents in support of this contention.

### 3. Samsung Files Its Motion to Dismiss

In light of Dr. Kwak's deposition (and the other ownership-related discovery), Wilus had seriously flawed statutory standing.[6] Accordingly, on January 30, 2026, Samsung filed its Motion to Dismiss for Lack of Statutory Standing Under 35 U.S.C. § 281 because the produced documents indicated that SKT retained substantial rights in the Asserted Patents. *See* Dkt. 220 at 10–14.

After Samsung filed its Motion to Dismiss, Samsung agreed to extend Wilus's opposition deadline up to February 24, 2026. The Court granted the motion for extension. Dkt. 229.

### 4. The Day Before Wilus's Opposition to the Motion to Dismiss Was Due, Wilus Served the Patent Assignment Agreement

On February 23, 2026, the day before Wilus's opposition brief was due, Wilus contacted Samsung. Apparently, "Wilus discovered that it had not produced part of the patent assignment agreement between SKT and Wilus. More specifically, although Wilus had produced the Assignment of Patents, **it had not produced the . . . Patent Assignment Agreement**, which includes additional pages beyond the Assignment of Patents." Ex. 3 at 17. Wilus admitted that it "did not produce this document during discovery," but rather conducted a search for documents in response to Samsung's Motion to Dismiss "argument **involving SKT**," during which it happened to find the Patent Assignment Agreement that coincidentally, per Wilus, "relate[s] to Samsung's motion to dismiss and provide[s] additional reasons why it fails." *Id.* at 18.

---

[6] As set forth in Samsung's Motion to Dismiss (Dkt. 220), Dr. Kwak testified that Wilus gave no consideration in exchange for the Asserted Patents, and the Assignment of Patents failed to refer to the other relevant agreements between Wilus and SKT, raising questions about the bona fides of the assignment. This led to the conclusion that the Assignment of Patents is an invalid agreement under Texas and Korean law (whichever applies).

The next day, Wilus filed its Opposition to Samsung's Motion to Dismiss for Lack of Standing. Dkt. 238. As expected, Wilus heavily relied upon the newly discovered Patent Assignment Agreement (referred to by Wilus as the "PAA") produced the previous day. *Id.* at 3–4, 9.

Samsung requested additional information concerning the circumstances under which the Patent Assignment Agreement was allegedly discovered and produced. Ex. 3 at 5–6, 16. Wilus failed to substantively address Samsung's concerns. This Motion follows.

## II.    LEGAL STANDARD

"If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Fed. R. Civ. Pro. 37(b)(2)(A). District courts have "broad discretion under Rule 37(b) to fashion remedies suited to the misconduct." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012). This discretion is limited to a degree, usually requiring a "finding of bad faith or willful misconduct to support the severest remedies under Rule 37(b)—striking pleadings or dismissal of a case." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (quotations and alterations omitted) (quoting *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990)). However, "[l]esser sanctions do not require a finding of willfulness." *Id.* (citing *Chilcutt v. United States*, 4 F.3d 1313, 1323 n.23 (5th Cir. 1993)). Indeed, a court "may also sanction an attorney [or law firm] for negligent or reckless failure to perform his or her responsibilities as an officer of the court." *CogniPower, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-160-JRG, Dkt. No. 337 at 3 (E.D. Tex. Mar. 18, 2025) (citing *Chambers v. Nasco, Inc.*, 501 U.S. 32, 43 (1991)) (J. Folsom).[7]

---

[7] Similar sanctions are available under Rule 37(c) for failure to disclose information required by Rule 26(a) to support a party's claims. *See Headwater Research LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-cv-422-JRG-RSP, 2024 WL 3647624, at *3 n.2 (E.D. Tex. Aug. 2, 2024); *see also* CV-26(d).

## III.    ARGUMENT

There is no question that Wilus violated the Discovery Order by failing to produce a critical ownership document, despite Samsung's repeated requests.  There is no question that Wilus provided material misrepresentations about the existence and substance of the agreements underpinning standing in this case.  Wilus has admitted as much.  This failure caused Samsung to spend substantial time and resources pursuing a defense that may be drastically altered by the Patent Assignment Agreement (assuming its authenticity and that it is considered by the Court), and blatantly disregarded this Court's discovery process.  All that remains for the Court is to determine (1) the scope of additional discovery into the Patent Assignment Agreement, and (2) the proper sanctions.

### A.    Wilus Admitted It Violated the Court's Discovery Order

Per the Court's Discovery Order, Wilus was required to produce all agreements relating to ownership, but, assuming the Patent Assignment Agreement is authentic, it failed to do so—as it readily admits.  Ex. 3 at 17 (Wilus admitting on February 23, 2026 that it "discovered that it had not produced part of the patent assignment agreement between SKT and Wilus.").  Wilus does not dispute the relevance of the Patent Assignment Agreement to standing and ownership—and its alleged criticality to Wilus's surviving the Motion to Dismiss.

### B.    Wilus's Conduct Is Not Excusable, But Sanctionable

Wilus now claims that it did not produce the Patent Assignment Agreement during discovery because it "believed [the Patent Assignment Agreement] to be duplicative of the 5-page [Assignment of Patents] that was clearly produced."  Ex. 3 at 8.  Accepting this representation as true, this falls far short of the standard of practice in this Court.  How could this document, which is half of "an agreement that had two parts" (Dkt. 238 at 3), have been overlooked?  How could the Patent Assignment Agreement be "duplicative" when it has a different title, has substantially different provisions, and is nearly three times longer than the Assignment of Patents?  *Compare* Ex. 1 *with* Ex.

2.  Why did "the Wilus legal team perform[] another round of targeted additional review involving agreements with SKT" **only** in response to Samsung's Motion to Dismiss?  Why was it not performed:

- Before filing the first case on September 11, 2024 to ensure that Wilus has standing?

- Following the entry of the Court's Discovery Order on December 23, 2024?

- At the opening of fact discovery on December 30, 2024?

- After receiving Samsung's discovery requests on February 21, 2025?  Or in response to the numerous follow-ups regarding ownership related documents and contentions (*supra* § I.B.1.), including express requests for all ownership documents related to the Assignment of Patents?

- In response to the Rule 30(b)(6) notice with ownership-related topics, on which the parties even engaged in motion practice (*supra* § I.B.2.)?[8]

- In preparing Dr. Kwak to testify on ownership-related topics (*supra* § I.B.2.)?

- At the close of fact discovery, when Wilus served a supplemental interrogatory response stating that "Wilus executed an assignment through which [SKT] assigned any and all of its rights in one or more of the Asserted Patents to Wilus" (*supra* § I.B.2.)?

There are three possible answers.  First, there is Wilus's explanation that its counsel had at some point collected the document from Wilus and decided that it did not have to produce the Patent Assignment Agreement because it incorrectly believed it to be duplicative of the Assignment of Patents.  Second, Wilus intentionally withheld the Patent Assignment Agreement during discovery.  Or third, worse yet, even if unlikely, Wilus generated the Patent Assignment Agreement in response to Samsung's Motion to Dismiss.  Any one of these options is sanctionable under Rule 37.

---

[8] If Wilus had offered Dr. Kwak for deposition early in the case as Samsung requested, some of the prejudice here could have been avoided.  Dr. Kwak would have been deposed earlier, which would have allowed Samsung to file a motion to dismiss during discovery.  While Samsung still would have been prejudiced, Wilus's refusal to offer a witness early in the case compounded the prejudice to Samsung.

### 1.    If the Patent Assignment Agreement Is Authentic, Wilus Failed to Conduct "A Reasonable Search" and Produce "All Documents"

Assuming that the Patent Assignment Agreement is authentic, it is implausible that Wilus conducted "a reasonable search"—either in collecting documents, or in its counsel reviewing collected documents after receiving Samsung's repeated requests. Wilus likely began preparing its litigation campaign against Samsung at least as of May 2024, when it purportedly agreed to the Patent Assignment Agreement. Wilus presumably collected documents it would need to produce in anticipation of litigation—including purported Asserted Patent ownership documents. *See, e.g.*, *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000) (holding that a patentee "**must** produce a written instrument documenting the transfer of proprietary rights in the patents"). Without such documents, Wilus surely knew that it would have standing issues.

If the Patent Assignment Agreement is authentic, the most reasonable conclusion to draw is that Wilus was not candid about it either (1) conducting "a reasonable search," or (2) not withholding the Patent Assignment Agreement. If it conducted a reasonable search, it would have found the Patent Assignment Agreement. And if it had found the Patent Assignment Agreement and did not produce it during discovery, it withheld the Patent Assignment Agreement. Either is sanctionable.

### 2.    If Wilus Conducted "A Reasonable Search" and Produced "All Documents," as Its CEO Testified, Is the Patent Assignment Agreement Authentic?

Wilus repeatedly represented that it conducted "a reasonable search" for ownership documents and that it was not "withholding any agreements regarding transfer of title or ownership rights in the asserted patents." Ex. 14 at 1. Wilus has since admitted to making "an unintentional error . . . and a regrettable one," but it apparently maintains that it conducted a reasonable search and did not "intend[] to withhold the [Patent Assignment Agreement] during discovery." Ex. 3 at 8.

Assuming Wilus conducted "a reasonable search" in response to Samsung expressly identifying the Assignment of Patents underlying the Patent Assignment Agreement, how could Wilus

12

have overlooked this key document?  If Wilus produced "[a]ll documents," how could it have missed the Patent Assignment Agreement?  For months, Samsung requested Wilus to produce agreements related to the Assignment of Patents.  Wilus repeatedly told Samsung there is nothing else.  But then, one day before its opposition brief is due, Wilus produces the Patent Assignment Agreement—which, according to Wilus's own brief, is one part of "an agreement **that had two parts**" concerning the ownership of the Asserted Patents.  Dkt. 238 at 3.  How could this document possibly have been overlooked?  How was it separated from its other "part[]"?  The Patent Assignment Agreement is not an ancient agreement entered into by individuals that had left Wilus years ago—the Patent Assignment Agreement was purportedly agreed upon **less than four months before Wilus filed suit**.  Moreover, the Patent Assignment Agreement was purportedly signed by Wilus's current CEO.  Ex. 1 at -633. Assuming Wilus had truly conducted "a reasonable search" and produced "[a]ll documents," this should have been one of the first ownership-related documents it found and produced.

While Wilus has made representations that the Patent Assignment Agreement is authentic, if so, Wilus has previously misled Samsung with its representations concerning patent ownership documents.  The only appropriate way to confirm the authenticity of the Patent Assignment Agreement is further discovery, as outlined below.

### C.    Sanctions Are Necessary to Cure the Prejudice to Samsung and Discourage Future Discovery Misconduct

The Court should address Wilus's flagrant discovery misconduct to (1) cure the prejudice to Samsung, (2) allow Samsung to fully investigate the origins of the Patent Assignment Agreement, and (3) warn future litigants that such repeated behavior will not be tolerated by this Court.  *See, e.g., Headwater*, 2024 WL 3647624, at *3 (granting sanctions for violation of Discovery Order).

Wilus offered two things when it met and conferred with Samsung regarding this Motion: "(1) supplement rog responses on ownership within seven days and (2) make Dr. Kwak available for another [one hour] deposition limited to [the Patent Assignment Agreement] within ten days."  Ex. 3

at 4.[9]  Wilus further offered to "consider" providing "non-privileged discovery from RAK" and "a portion of Samsung's fees/costs in connection with the motion to dismiss."[10]  *Id.*

Wilus's offer is insufficient and fails to address the gravity of its misconduct.  Samsung spent months pursuing ownership-related documents—documents that, assuming they existed at the time, should have been produced "without request."  Dkt. 49 § 3(b).  Wilus resisted an early deposition of ownership-related issues, forcing Samsung to file a motion to compel.  When Wilus finally offered Dr. Kwak for a deposition, we now know that Samsung did not have all ownership-related documents.  We further know that Samsung lacked all ownership-related documents when it filed the Motion to Dismiss.  Wilus's repeated failures and unwarranted resistance to basic patent ownership discovery cannot be cured by a very limited amount of discovery and a "portion" of the significant costs and fees Samsung incurred in pursuing a defense based upon incomplete information.

Accordingly, Samsung first requests that the Court stay further proceedings so that Samsung may investigate the origins of the Patent Assignment Agreement, including compelling Wilus to produce to Samsung (1) all non-privileged communications between it and SKT regarding the Asserted Patents, (2) all ESI related to the Patent Assignment Agreement, and (3) all of Wilus's counsel's communications concerning the Patent Assignment Agreement.  Samsung further requests three additional hours to depose Dr. Kwak regarding Asserted Patent ownership.

After such discovery confirms why Wilus failed to produce the Patent Assignment Agreement, the Court should enter additional sanctions it deems necessary, which may include the following:

- Instruct the jury regarding Wilus's failure to abide by the Court's Discovery Order, specifically: "The Court issued an order governing the production of information relevant to this case.  Wilus

---

[9] Dr. Kwak's deposition would need to be translated, thereby effectively giving Samsung, at most, 40 minutes on the record.

[10] Wilus claims that Samsung "declined our proposal of fee-shifting to obviate further motion practice."  Ex. 3 at 4.  This is incorrect: Samsung never declined a fee-shifting proposal.

14

failed to follow the Court's order and failed to produce highly relevant information to Samsung in this case.  You may consider this failure to produce information during deliberations."  *See* FED. R. CIV. PRO. 37(c)(1)(B).  The jury should know of Wilus's conduct in evaluating the evidence.

- Wilus shall reimburse Samsung for all fees and costs incurred in connection with Samsung's Motion to Dismiss (Dkt. 220), including Samsung's fees and costs associated with (a) repeatedly requesting Wilus to produce all ownership-related documents, (b) deposing Dr. Kwak, (c) all briefing of Samsung's Motion to Dismiss (Dkt. 220), (d) Samsung's engagement of its Korean legal expert, the Honorable Sung-Joon Choi, (e) any further discovery ordered by the Court, and (f) briefing this Motion.  *See Headwater*, 2024 WL 3647624, at *3 (ordering costs and fees); *CogniPower*, Dkt. No. 345 at 3–4 (ordering similar sanctions for discovery violation).

- Deduct from Wilus one hour of trial time: 10 minutes of Wilis's Opening Statement, 10 minutes of its Closing Argument, and 40 minutes from its presentation of evidence.  *See id.*

- Prohibit Wilus from relying upon or using the Patent Assignment Agreement, depending on the facts as they emerge in discovery.

- Stay this case by granting Samsung's Opposed Motion to Stay Pending *Inter Partes* Reviews (Dkt. 176, the "Motion to Stay")).  As Samsung previously notified the Court, the PTAB instituted IPR of all asserted claims in this case and therefore a stay of this entire case is appropriate.  Dkt. 224; *see also Arbor Global Strategies LLC v. Samsung Elecs. Co., Ltd.*, No. 2:19-cv-333-JRG-RSP, 2021 WL 66531 (E.D. Tex. Jan. 7, 2021) (granting motion to stay where institution granted as to all asserted claims).  If the Court grants the Motion to Stay, this issue may be temporarily set aside and considered again, if and when, any valid Asserted Patent emerges from the USPTO proceedings.

## IV.    CONCLUSION

For the reasons provided above, Samsung requests that the Court finds that Wilus violated Rule 37 and orders the sanctions requested above.

Dated: March 16, 2026

Respectfully submitted,

*/s/ Ruffin B. Cordell*
Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
DC Bar No. 459780
mckeon@fr.com
Ralph A. Phillips
DC Bar No. 475571
rphillips@fr.com
Matthew P. Mosteller
DC Bar No. 1697343
mosteller@fr.com
Bryan J. Cannon
DC Bar No. 1723657
cannon@fr.com
Brendan F. McLaughlin
DC Bar No: 1671658
BMcLaughlin@fr.com
Payal Patel
DC Bar No. 90019320
ppatel@fr.com
Damien Thomas
DC Bar No. 90018451
dthomas@fr.com
James Young
DC Bar No. 90005769
jyoung@fr.com
FISH & RICHARDSON, P.C.
1000 Maine Ave., S.W., Ste. 1000
Washington, DC 20024
Telephone: 202-783-5070
Facsimile:  202-783-2331

Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
Rodeen Talebi
TX Bar No. 24103958
talebi@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 78766
Telephone: 214-747-5070
Facsimile:  214-747-2091

16

████████████████████████████████████████

Aleksandr Gelberg
CA Bar No. 279989
gelberg@fr.com
John-Paul Fryckman
CA Bar No. 317591
fryckman@fr.com
FISH & RICHARDSON, P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: 858-678-5070
Facsimile:  858-678-5099

Bailey K. Benedict
TX Bar No. 24083139
benedict@fr.com
FISH & RICHARDSON, P.C.
909 Fannin Street, Ste. 2100
Houston, TX 77010
Telephone: 713-654-5300
Facsimile:  713-652-0109

Lawrence R. Jarvis
GA Bar No. 102116
jarvis@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: 404-892-5005
Facsimile: 404-892-5002

Melissa R. Smith
Texas Bar No. 24001351
melissa@gillamsmithlaw.com
Andrew Thompson ("Tom") Gorham
Texas Bar. No. 24012715
tom@gilliamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903-934-8450
Facsimile:  903-934-9257

Jon B. Hyland
jhyland@hilgerslaw.com
HILGERS PLLC
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: 972-645-3097

17

████████████████████████

*Attorneys for Defendants*
*Samsung Electronics Co., Ltd., and*
*Samsung Electronics America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on March 16, 2026.  As of this date, all counsel of record have been served with a copy of this by electronic mail.

/s/ *Ruffin B. Cordell*

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rules CV-7(h) and (i), counsel for the parties met and conferred via email on March 9, 2026, March 10, 2026, and March 11, 2026.  The parties further met and conferred via videoconference on March 11, 2026.  Reza Mirzaie, Andrea Fair, Philip Wang, and Mackenzie Paladino attended for Wilus.   Ruffin B. Cordell, Andrew Thompson ("Tom") Gorham, Ralph Philips, Aleksandr Gelberg, Brendan F. McLaughlin, James Young, and Payal Patel attended for Samsung. The parties discussed their positions on this motion, and counsel for Wilus stated they would (1) confer with their client regarding this motion, and (2) provide answers to certain questions raised by counsel for Samsung by March 12, 2026.  Counsel for Wilus provided responses to those questions on March 12, 2026.  Samsung considered Wilus's responses but informed Wilus on March 16, 2026 that the responses are insufficient and fail to address Samsung's concerns.  Therefore, the parties could not reach an agreement.  The discussions conclusively ended in an impasse, leaving an open issue for the court to resolve.  Counsel for Wilus indicated that they oppose this motion.

/s/ *Ruffin B. Cordell*

/s/ *Andrew Thompson ("Tom") Gorham*

18

19