IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> HP INC. <br><br> Defendant. | Civil Case No. 2:24-cv-00752-JRG [Lead Case] <br><br> JURY TRIAL DEMANDED |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. <br> Defendants. | Civil Case No. 2:24-cv-00746-JRG [Member Case] <br><br> JURY TRIAL DEMANDED |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. <br> Defendants. | Civil Case No. 2:24-cv-00765-JRG [Member Case] <br><br> JURY TRIAL DEMANDED |

███████████████████████████

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br>     Plaintiff, <br><br>v. <br><br>ASKEY COMPUTER CORP., <br>ASKEY INTERNATIONAL CORP. <br><br>     Defendants. | Civil Case No. 2:24-cv-00766-JRG <br>[Member Case] <br><br>JURY TRIAL DEMANDED |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br>     Plaintiff, <br><br>v. <br><br>ASKEY COMPUTER CORP., <br>ASKEY INTERNATIONAL CORP. <br><br>     Defendants. | Civil Case No. 2:24-cv-00753-JRG-RSP <br>[Member Case] <br><br>JURY TRIAL DEMANDED |

**SAMSUNG'S RESPONSE TO WILUS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SUSPENSION OF RAND OBLIGATION (DKT. 263)**

████████████████

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

TABLE OF EXHIBITS ................................................................................................................. iv

TABLE OF ABBREVIATIONS .................................................................................................... iv

I.      RESPONSE TO WILUS'S STATEMENT OF ISSUES................................................... 1

II.     RESPONSE TO WILUS'S STATEMENT OF UNDISPUTED FACTS........................... 2

III.    ARGUMENT ................................................................................................................... 5

        A.      Wilus's Motion Improperly Seeks an Advisory Opinion ....................................... 5

        B.      Wilus's Motion Seeks to Overturn *G+ Communications* and
                *PanTech* ............................................................................................................. 7

        C.      Samsung's Alleged Conduct as a Third-Party Beneficiary Cannot
                Extinguish Wilus's Irrevocable RAND Obligation ............................................... 9

                1.      Wilus's Interpretation of the IEEE Bylaws Is Unsupported....................... 9

                2.      Samsung Is a Third-Party Beneficiary, and Cannot Breach
                        Wilus's Contract with the IEEE................................................................ 11

                3.      The Prevention Doctrine Does Not Apply ................................................ 12

        D.      The Parties' Communications Cannot Create an Enforceable
                Contract to Negotiate, and Formation of Any Such Contract Would
                Be a Factual Dispute ......................................................................................... 13

        E.      Wilus's Theories that Bad Faith Cannot Be Abrogated, and that
                Bad Faith Can Only Be Evaluated at the Time of the Complaint,
                Are Wrong ......................................................................................................... 14

IV.     CONCLUSION............................................................................................................. 15

i

████████████████████████████████████████

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014)...................................................................................................8

*Apple Inc. v. Samsung Elecs. Co.*,
No. 11–CV–01846, 2012 WL 1672493 (N.D. Cal. May 14, 2012).........................................11

*City of Tacoma, Dep't of Pub. Utilities v. United States*,
31 F.3d 1130 (Fed. Cir. 1994).................................................................................................10

*Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*,
809 F.3d 1295 (Fed. Cir. 2015)..................................................................................................6

*Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*,
576 S. W. 3d 362 (Tex. 2019)..................................................................................................13

*Delta Brands, Inc. v. Wysong & Miles Co.*,
203 F.3d 828, 1999 WL 1240802 (5th Cir. 1999) ..................................................................14

*Ericsson Inc. v. Apple Inc.*,
No. 2:21-cv-00376, Dkt. 291 (E.D. Tex. Nov. 29, 2022).......................................................15

*Force MOS Tech., Co., Ltd. v. ASUSTeK Comp., Inc.*,
No. 2:22-cv-460, Dkt. No. 315 (E.D. Tex. Dec. 1, 2024).........................................................7

*G+ Commc'ns, LLC v. Samsung Elecs. Co., Ltd.*,
No. 2:22-cv-00078, 2024 WL 233222 (E.D. Tex. Jan. 22, 2024) .............................7, 8, 11, 14

*Green Acres Baptist Church, Inc. v. Brotherhood Mut. Ins. Co.*,
No. 6:23-cv-00566, 2025 WL 1840603 (E.D. Tex. July 3, 2025).........................................12

*Haddon Housing Assoc., Ltd. P'ship v. U.S.*,
711 F.3d 1330 (Fed. Cir. 2013).........................................................................................12, 13

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
12 F.4th 476 (Fed. Cir. 2021) .................................................................................................15

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
No. 6:18-CV-00243, 2018 WL 6617795 (E.D. Tex. Dec. 17, 2018) ......................................11

*HTC Corp. v. Telefonaktiebolaget LM Ericsson*,
No. 6:18-cv-00243, 2019 WL 4734950 (E.D. Tex. May 22, 2019) .............................7, 14, 15

*John Wood Grp. USA, Inc. v. ICO, Inc.*,
   26 S. W. 3d. 12 (Tex. 2000) .......................................................................................13

*Krohn v. Spectrum Gulf Coast, LLC*,
   No. 3:18-CV-2722-S, 2019 WL 4572833 (N.D. Tex. Sept. 19, 2019) ....................................13

*Liberto v. D.F. Stauffer Biscuit Co., Inc.*,
   441 F.3d 318 (5th Cir. 2006) ......................................................................................14

*Matrix Partners VIII, LLP v. Nat. Res. Recovery, Inc.*,
   No. 1:08-cv-00547, 2009 WL 10677790 (E.D. Tex. May 22, 2009) ...........................................6

*Microsoft Corp. v. Motorola, Inc.*,
   2012 WL 4827743 (W.D. Wash. Oct. 10, 2012) ...................................................................11, 14

*Microsoft Corp. v. Motorola, Inc.*,
   795 F.3d 1024 (9th Cir. 2015) .....................................................................................11, 12

*Microsoft Corp. v. Motorola, Inc.*,
   No. C10–1823, 854 F. Supp. 2d 993 (W.D. Wash. 2012) ............................................................15

*Optis Wireless Tech., LLC v. Apple Inc.*,
   No. 2:19-cv-00066, 2021 WL 2349343 (E.D. Tex. Apr. 14, 2021) ..............................................8

*Optis Wireless Tech., LLC v. Huawei Device USA, Inc.*,
   No. 2:17-cv-00123, 2019 WL 1244707 (E.D. Tex. Mar. 18, 2019) .............................................6

*Pantech Corp. v. OnePlus Tech. (Shenzhen) Co., Ltd.*,
   No. 5:22-cv-00069, ECF No. 211 (E.D. Tex. Mar. 1, 2024) ...................................................8, 10

*Sisvel v. Haier*,
   No. KZR 35/17 (Fed. Ct. Justice, Nov. 24, 2020) ..............................................................12

*Stephenson v. Caterpillar Inc.*,
   No. 2:16-cv-00071,2019 ..............................................................................................6

*Texas v. Google LLC*,
   787 F. Supp. 3d 357 (E.D. Tex. 2025) ..............................................................................7

*U.S. Bank. Tr. Nat'l Ass'n ex rel Tiki Series IV Trust v. Walden*,
   124 F.4th 314 (5th Cir. 2024) ......................................................................................6

iii

█████████████████████████████████████

## TABLE OF EXHIBITS

| # | Description |
|---|---|
| 1 | Opening Expert Declaration of Gustav Brismark |
| 2 | Rebuttal Expert Report of M. Ray Perryman, PhD |
| 3 | Corrected Opening Expert Report of David Djavaherian |
| 4 | Reply Expert Report of David Djavaherian |
| 5 | IEEE FAQs available at https://standards.ieee.org/wp-content/uploads/import/documents/other/patents.pdf |
| 6 | Rebuttal Expert Report of Paul Nikolich |
| 7 | Deposition Testimony of ████████, dated January 15, 2026 |
| 8 | Letter of Assurance for Essential Patent Claims, dated January 14, 2022, SAMSUNG_WILUS_00068935 |
| 9 | ████████████████████████████ SAMSUNG_WILUS_00067566 |
| 10 | Deposition Testimony of ████████ dated December 18, 2025 |
| 11 | Email chain between ████████████████ ████████ with attachment, SAMSUNG_WILUS_00101000, SAMSUNG_WILUS_00101008 |
| 12 | Certified Mail from ████████████████████ ████████████████████, SAMSUNG_WILUS_00096983 and related translation |
| 13 | Deposition Testimony of Ray Perryman, dated February 20, 2026 |
| 14 | Opening Expert Report of Stephen E. Dell, CVA |
| 15 | Deposition Testimony of Stephen Dell, dated February 28, 2026 |
| 16 | Presentation titled, ██████████████████████████, SAMSUNG_WILUS_00192638 |

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|---|---|
| -746 Case | *Wilus Institute of Standards and Technology Inc. v. Samsung Electronics Co., Ltd., et al.*, Case No. 2:24-cv-00746-JRG-RSP |
| -765 Case | *Wilus Institute of Standards and Technology Inc. v. Samsung Electronics Co., Ltd., et al.*, Case No. 2:24-cv-00765-JRG-RSP |
| SEP | Standard-Essential Patent |
| SSO | Standard-Setting Organization |
| IEEE | Institute of Electronic and Electronics Engineers |

Wilus advances scattershot arguments asking the Court to overturn settled RAND precedent and decide the legal effect of hypothetical jury findings—requests that are both unsupported and premature. Wilus first urges the Court to discard its recent decisions in *G+ Communications v. Samsung* and *PanTech v. OnePlus*, where this Court squarely held that a RAND commitment is irrevocable and continues to act as a cap on damages, even if a party's obligation to negotiate may be temporarily suspended in the face of bad faith. In its place, Wilus asks the Court to impose a new framework under which, at the first blush of bad faith, an SEP holder may revoke (not suspend) the entirety of its RAND obligation, enabling the windfall royalties that RAND was expressly designed to prevent. Wilus's fallback argument—that the parties' communications created an agreement to negotiate—fares no better. Not only is such a claim fact-bound and not amenable to summary judgment, it is decidedly unenforceable.

In both cases, Wilus seeks the Court's advice on what the law ***would be*** if the jury finds that (1) Wilus has not breached its contractual RAND obligations to the IEEE, and (2) Samsung has acted in bad faith in its negotiations with Wilus. Those predicate findings are hotly disputed issues reserved for the jury, not this Court on summary judgment. Wilus's request for advisory rulings on unresolved factual issues and legal theories foreclosed by precedent should be denied.

## I.    RESPONSE TO WILUS'S STATEMENT OF ISSUES

Wilus failed to include a statement of issues to be decided in its motion. *See generally* Dkt. 263 ("Mot."); CV-56(a). However, as it understands them, Samsung responds as follows: there are disputed facts (and law) as to whether (1) a party's RAND commitment—including both its obligation to negotiate in good faith and its obligation to offer reasonable and non-discriminatory licensing terms—is eliminated in response to bad faith conduct by a prospective licensee; (2) an intended third-party beneficiary of the contract between a SEP holder and the IEEE itself has a contractual obligation to negotiate in good faith; (3) communications between a SEP licensor and

1

a potential licensee create an enforceable contract to negotiate (*i.e.*, an enforceable "agreement to agree"); and (4) once a plaintiff files a complaint alleging a defendant's bad faith, the defendant cannot rectify its conduct to resume negotiations in good faith, each as urged by Wilus.

However, the pertinent issue before the Court is whether any evidence supports a finding that Wilus breached its contractual obligations to the IEEE, of which Samsung is a third-party beneficiary, by failing to offer RAND rates and negotiate in good faith with respect to the Asserted Patents. This is a classic factual dispute not amenable to summary judgment. In addition, Wilus asks the Court for advisory opinions on the legal consequences if a jury finds that (1) Wilus did not breach its obligations to the IEEE, (2) but that Samsung acted in bad faith in its negotiations with Wilus/Sisvel, and did so prior to Wilus filing the instant cases. Such opinions, based upon hypothetical findings of fact, are premature and unnecessary at this stage of the litigation.

## II.     RESPONSE TO WILUS'S STATEMENT OF UNDISPUTED FACTS

Samsung takes no position as to the statements made regarding Askey.

2. While submitted in 2021, Wilus's LOA declared its patents under the pre-2015 IEEE Bylaws[1] rather than the then-current IEEE Bylaws. Dkt. 277-4 at 3.

3. Wilus's LOA and RAND commitment are subject to the pre-2015 IEEE Bylaws. Ex. 1 at ¶ 171. Wilus's LOA obligates it to "grant a license under reasonable rates … with reasonable terms and conditions that are demonstrably free of unfair discrimination." Dkt. 277-4 at 2.

5. Samsung is a third-party beneficiary of Wilus's RAND commitment to the IEEE. *See* Ex. 2 at ¶ 169; Ex. 3 at ¶ 32.

8. Samsung disagrees with Wilus's characterizations of Samsung's positions in this case.

---

[1] References herein to the "pre-2015 IEEE Bylaws" are to the IEEE-SA Standards Board Bylaws published December 2014. Dkt. 277-1. Those are sometimes referred to as the 2007 IEEE Bylaws, as the Patent Policy of the IEEE Bylaws (Section 6) went unchanged between 2007 and 2014.

2

Wilus's effort to seek remedies beyond a reasonable and non-discriminatory royalty (including injunctive relief) is not in line with the IEEE Bylaws or industry expectations of good faith RAND negotiations. Ex. 3 at ¶ 80. Samsung's experts note that the 2015 IEEE Bylaws and subsequent versions provide for specific situations where an injunction may be sought. Ex. 4 at ¶¶ 39-42. However, as a factual matter, none of those expressly-delineated situations are implicated here.

10. The IEEE Bylaws provide an express and mandatory duty to inform the IEEE of the identity of each holder of any Essential Patent Claims of which a participant is personally aware, if the claims are owned or controlled by the participant or the entity they represent. *See* Dkt. 277-1 at 17 ("individuals participating in the standards development process: (a) ***shall inform*** (or cause the IEEE to be informed) of the holder of any potential Essential Patent Claims"); Ex. 5 at ¶¶ 20-35; *see also* Ex. 6 at ¶ 45; Ex. 3 at ¶ 43. Wilus's delegates did not inform the IEEE of Wilus's patents of which they were aware and believed recited Essential Patent Claims, despite no LOA having been submitted. Ex. 7 at 80:9-83:21; Ex. 3 at ¶ 76; Ex. 4 at ¶ 34.

12. Samsung's LOA addresses obligations to the IEEE only as to its patents that are IEEE 802.11ax SEPs. Ex. 8. Samsung's 802.11ax SEPs are not at issue in this case.

13. Samsung agrees that the revisions to Section 6 of the IEEE Bylaws over the years have clarified rather than changed the IEEE's policies with respect to patents and RAND licensing. However, the parties dispute the intent and interpretation of the IEEE Bylaws, including as to the obligations imposed by the submission of an LOA.

14. According to Wilus's expert, the 2015 IEEE Bylaws do not create any mandatory obligation on Wilus. Ex. 6 at ¶ 30; Dkt. 249 at 9. Moreover, Wilus's LOA and RAND licensing commitment are subject to the pre-2015 IEEE Bylaws. *See* Ex. 1 at ¶ 171.

17. The pre-2015 IEEE Bylaws operative for Wilus's LOA do not state that the licensee



"should engage in good faith negotiations." *See* Dkt. 277-1. The language that Wilus cites appears in the 2025 IEEE Bylaws. Dkt. 277-3 at 18. Even if they did, according to Wilus's expert, this does not create any mandatory obligation on Wilus. Ex. 6 at ¶ 30; Dkt. 259 at 9.

20. On ███████████████████████████████████ ████████████ Ex. 9. Sisvel stated that ████████████████████████ ██████████████ *Id.* at 2. Samsung disputes that the rates offered in ███████████ ████, ███████████████████████████████████ ██████, are RAND. *See* Ex. 3 at ¶ 69; Ex. 4 at ¶ 84; Ex. 10 at 174:2-25.

22. On ████████████, Sisvel responded stating they ██████████████████ ███████████████████████████ Dkt. 263-20 at -1156.

23. Sisvel and Samsung continued negotiations ███████████████████. Ex. 3 at ¶¶ 60-70. Samsung's behavior over the entire course ███████████ was consistent with good faith negotiation practice as typically understood and expected in the industry. Ex. 3 at ¶¶ 71-74.

24. The operative pre-2015 IEEE Bylaws do not state that the licensee "should engage in good faith negotiations." *Compare* Dkt. 277-1 *with* Dkt. 277-3 at 18. Wilus's LOA to the IEEE does not create a contractual obligation on Samsung, as it is not a party to the contract between Wilus and the IEEE. Samsung takes no position as to whether Wilus/Sisvel "recognized" a duty to engage in good faith negotiations without unreasonable delay under the IEEE Bylaws.

26. The 2015 and 2025 IEEE Bylaws state that the Submitter and the Applicant may "litigate … over … Reasonable Rates or other reasonable licensing terms and conditions." Dkt. 277-2 at 18; Dkt. 277-3 at 18.

27. The IEEE Bylaws specify that "choosing to litigate or arbitrate over any of the foregoing issues … does not by itself mean that a party so choosing is unwilling to negotiate in

4



good faith." Dkt. 277-3 at 18. Thus, litigation is not an "alternate path" to good faith negotiations as Wilus contends, and fact issues remain as to whether the parties were acting in good faith during the course of their negotiations both before and after Wilus brought suit against Samsung.

28. Samsung disagrees with Wilus's interpretation of the IEEE Bylaws. The Court already rejected Wilus's interpretation in its recent decision in *G+ Communications*.

29. Sisvel's ▮▮▮▮ offer was not RAND. *See* Ex. 4 at ¶ 84; Ex. 10 at 174:2-25. Samsung had and continues to have good reason to not accept Sisvel's offer, and to be skeptical of it. Ex. 3 at ¶ 75. After ▮▮▮▮▮▮▮, Sisvel and Samsung engaged in negotiations, including technical meetings and exchanging presentations and claim charts. Ex. 3 at ¶¶ 61-62. ▮▮▮▮▮▮ Wilus filed suit against Samsung, Sisvel ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮. Ex. 11. ▮▮▮▮▮▮▮▮▮▮. *Id.* at ¶ 69.

30. Wilus filed complaints for patent infringement against Samsung on September 11 and September 20, 2024. Dkt. 1 (-746 Case); Dkt. 1 (-765 Case).

31. Samsung incorporates its response to the preceding paragraph.

32. Wilus's statement is factually inaccurate. Ex. 12. ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ Ex. 12. ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮ Ex. 4 at ¶¶ 43-44. Relatedly, Samsung has filed a Motion to Dismiss for Lack of Standing based on Wilus's and SKT's ownership rights in the asserted patents. *See* Dkt. 220.

## III.    ARGUMENT

### A.    Wilus's Motion Improperly Seeks an Advisory Opinion

It is well-settled "that a court 'cannot render an advisory opinion on hypothetical or abstract

facts'." *U.S. Bank. Tr. Nat'l Ass'n ex rel Tiki Series IV Trust v. Walden*, 124 F.4th 314, 323 (5th Cir. 2024) (quoting *Hodgson v. H. Morgan Daniel Seafoods, Inc.*, 433 F.2d 918, 920 (5th Cir. 1970)). But that is precisely what Wilus's motion asks the Court to do. First, Wilus asks the Court to decide what the law ***would be*** if a jury were to find that a potential licensee "failed to negotiate a RAND license to the patents-in-suit in good faith." Mot. 1. Second, it asks the Court what the legal effect ***would be*** if a jury were to find such a licensee to have acted in bad faith prior to Wilus bringing suit against them, but to have acted in good faith after that suit was filed. *Id.* Neither of these issues is ripe for adjudication.[2] This Court has declined to rule on the effect of RAND obligations in similar situations. *Cf. Optis Wireless Tech., LLC v. Huawei Device USA, Inc.*, No. 2:17-cv-00123, 2019 WL 1244707, at *7 (E.D. Tex. Mar. 18, 2019) ("Since the Court cannot determine whether PanOptis complied with its FRAND obligations as to the U.S. SEPs in its offer to Huawei, any declaration by the Court would amount to an advisory opinion.").

Nor is it necessary for the Court to resolve these issues before trial. Both Wilus's and Samsung's experts affirmed that their opinions on reasonable royalty damages in this case do not depend on whether the asserted patents are found to be RAND-encumbered. Ex. 13 at 48:17-49:6; Ex. 14 ¶¶ 418, 426; Ex. 15 at 204:18-205:4; *see Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1304 (Fed. Cir. 2015) ("adjustments to the *Georgia-Pacific* factors apply equally to RAND-encumbered patents and SEPs"). Thus, this Court's ruling can only exist to provide guidance for factual disputes that might arise with other litigants in the future. To the extent Wilus seeks to obtain an injunction upon a finding of infringement and validity of the

---

[2] Wilus never pled or otherwise raised any of these issues. Its arguments should, therefore, be deemed waived. *See Stephenson v. Caterpillar Inc.*, No. 2:16-cv-00071, 2019 WL 498337, at *2 (E.D. Tex. Feb. 8, 2019); *Matrix Partners VIII, LLP v. Nat. Res. Recovery, Inc.*, No. 1:08-cv-00547, 2009 WL 10677790, at *2 (E.D. Tex. May 22, 2009) (denying petition for declaratory judgment as "procedurally defective" because plaintiff never pled it as an action in the complaint).

6

Asserted Patents, the proper time for the Court to assess Wilus's questions are at that time, not now while the jury's findings are merely hypothetical. *See, e.g., Force MOS Tech., Co., Ltd. v. ASUSTeK Comp., Inc.*, No. 2:22-cv-460, Dkt. No. 315 at 82:17–22 (E.D. Tex. Dec. 1, 2024) ("[Summary judgment motions regarding equitable relief are] not appropriate for me to take up in pretrial at this point."); *Texas v. Google LLC*, 787 F. Supp. 3d 357, 382 (E.D. Tex. 2025).

### B.    Wilus's Motion Seeks to Overturn *G+ Communications* and *PanTech*

Wilus leans heavily on this Court's decision in *G+ Communications*, but that case is directly at odds with the relief Wilus seeks. *G+ Commc'ns, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-cv-00078, 2024 WL 233222, at \*6-7 (E.D. Tex. Jan. 22, 2024). In *G+ Communications*, the Court held that while ETSI FRAND obligations (like IEEE RAND obligations) are expressly "irrevocable," their "irrevocable nature does not mean they are static." *Id.* Thus, "[i]t is both practical and logical that … [i]f the counterparty is acting in bad faith, it is impossible for negotiations for a 'fair' and 'reasonable' and 'non-discriminatory' contract to proceed." *Id.*, at \*6. In other words, a patent owner is not obligated to keep negotiating with a proverbial "brick wall." Samsung does not contest this Court's ruling on the effect of bad faith for a party's obligation to negotiate when the counterparty has made such negotiations "impossible." *Id.*

Wilus's motion, however, seeks to flip *G+ Communications* on its head. Wilus first argues that, as a practical matter, a party's RAND obligation to **negotiate in good faith** is not suspended but **eliminated** altogether. Second, Wilus seeks to expand the scope of the (eliminated) obligation to include a party's obligation to **offer RAND licensing terms and conditions**.

In other words, there is both a **procedural** part of the RAND commitment (*i.e.*, negotiating in good faith) and a **substantive** part of the RAND commitment (*i.e.*, that the terms of the license have to be reasonable and non-discriminatory). *See HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-cv-00243, 2019 WL 4734950, at \*6 (E.D. Tex. May 22, 2019) ("the parties to

7

the ETSI IPR Policy intended the FRAND obligation to mean that a SEP-owner **either (1)** grant intended third-party beneficiaries' licenses on FRAND terms and conditions, **or (2)** negotiate in good faith towards a FRAND license" (emphasis added)).  In *G+ Communications*, this Court addressed the first prong, finding such an obligation can be temporarily suspended if faced with a counterparty acting in bad faith.  It did not, however, purport to eliminate that obligation altogether.  Rather, the Court recognized that once the counterparty is prepared to negotiate in good faith, the obligation to do so resumes.  2024 WL 233222, at *6 ("[W]hen the counterparty ceases acting in bad faith, the barrier to consummation of the license on FRAND terms is removed and the negotiations can and must resume (in good faith)."); *see* Section III.E, *infra*.

The second prong was addressed by this Court shortly after *G+ Communications*, in *PanTech v. OnePlus*.  Order on Motions in Limine at 9-10, *Pantech Corp. v. OnePlus Tech. (Shenzhen) Co., Ltd.*, No. 5:22-cv-00069, ECF No. 211 (E.D. Tex. Mar. 1, 2024).  In that decision, the Court expressly rejected the relief Wilus now seeks.  Specifically, this Court clarified that it would be "a stretch of the Court's ruling" to interpret *G+ Communications* to mean that "FRAND obligations 'no longer act as a cap' while [the counterparty] was acting in bad faith."  *Id.*  But that is exactly what Wilus tries to argue in its motion.  *G+ Communications* and *PanTech* each stand for the logical conclusion that while a potential licensee's conduct may act as a barrier to negotiations toward a license, that conduct does not obviate the irrevocable RAND obligation to be willing to license on reasonable and non-discriminatory terms.

None of the other cases Wilus cites lead to a different result, as each discusses the obligation to negotiate, as opposed to the RAND terms of a license.  *See Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-00066, 2021 WL 2349343, at *3 (E.D. Tex. Apr. 14, 2021) (discussing Optis's obligation to license the patents on FRAND terms); *Apple Inc. v. Motorola,*

8

*Inc.*, 757 F.3d 1286, 1331-32 (Fed. Cir. 2014) (affirming Motorola is not entitled to an injunction).[3]

### C. Samsung's Alleged Conduct as a Third-Party Beneficiary Cannot Extinguish Wilus's Irrevocable RAND Obligation

#### 1. Wilus's Interpretation of the IEEE Bylaws Is Unsupported

When submitting its LOA to the IEEE in 2021, Wilus elected to declare its patents under the pre-2015 IEEE Bylaws. *See* Ex. 1 at ¶ 171; Ex. 4 at ¶ 35; Dkt. 277-4 at 3. The operative pre-2015 Bylaws make no mention of "good faith negotiations," and neither suggest nor impose any express obligation as to how a beneficiary of the IEEE RAND commitment should, or should not, behave during negotiations. *Compare* Dkt. 277-1 at 15-17 *with* Dkt 277-2 at 15-19 *and* Dkt. 277-3 at 15-19; *see also* Ex. 1 at ¶ 177.

Thus, Wilus relies on terms from the 2015 and later IEEE Bylaws in an attempt to import a contractual "reciprocal duty" to engage in good faith negotiations to the pre-2015 Bylaws. *See* Mot. § IV(A). But as a matter of contract, even the 2015 and later IEEE Bylaws do not impose any contractual "duty … to engage in good faith negotiations without unreasonable delay." Mot. 9. The 2015 IEEE Bylaws provide that a prospective licensee "***should*** engage in good faith negotiations ***(if sought by either party)*** without unreasonable delay." Dkt. 277-2 at 17-18. According to Wilus's own expert, the IEEE Bylaws distinguish between mandatory requirements under the contract between a SEP holder and the IEEE—which are prescribed using "***shall***"—from those that are merely suggested—which are prescribed using "***should***." Ex. 6 at ¶ 30. Wilus argues for that same "permissive meaning" of "should" in its parallel motion for summary judgment relating to its disclosure obligations to the IEEE. Dkt. 249 at 9. Yet when it comes to

---

[3] Courts and agencies in other jurisdictions have come to the same conclusion. *See, e.g.,* European Commission, Antitrust Procedure, Case AT-39985-Motorola-Enforcement of GPRS Standard Essential Patents, April 29, 2014, par. 441 (finding that a prospective licensee's "alleged unwillingness" during pre-and some post-litigation periods "is irrelevant … as this cannot justify" pursuit of non-RAND relief after the alleged unwillingness ends).

Samsung's obligations as a third-party beneficiary to the same contract, it seeks to interpret "should" to mean "shall." *Id.* While Samsung supports the notion that business negotiations should (and for Samsung, do) proceed in good faith, the recommendations and intent of the IEEE Bylaws is different from the affirmative contractual obligation that Wilus seeks to read into the "language of the contract itself." Mot. 8-9; *City of Tacoma, Dep't of Pub. Utilities v. United States*, 31 F.3d 1130, 1132 (Fed. Cir. 1994) (discussing the implied obligation to negotiate in good faith).

Further, the IEEE Bylaws, including the applicable pre-2015 Bylaws and later versions, confirm that the obligation to license on RAND terms and conditions is not suspended by a counterparty's bad faith, and instead provide for other remedies. *See* Dkt 277-2; Dkt 277-3. The pre-2015 IEEE Bylaws applicable to Wilus's LOA makes no mention of injunctions or other non-RAND remedies. Dkt. 263, Ex. A. And even the 2025 IEEE Bylaws permit a party to pursue an injunction or other Prohibitive Order only for so long as the counterparty is not negotiating, litigating, or otherwise pursuing a RAND license. Dkt. 277-3 at 18 (providing, in the *present tense*, that a SEP holder "shall neither seek nor seek to enforce a Prohibitive Order … against an implementer who is willing to negotiate in good faith," and explaining that "choosing to litigate … does not by itself mean that a party so choosing is unwilling to negotiate in good faith"); Ex. 4 at ¶ 41. Thus, the intent of the IEEE policy is to make injunctions available in the limited circumstances where they are needed to enforce a prospective licensee's payment on RAND terms—not to punish past behavior by removing RAND "as a cap" on damages. *PanTech*, No. 5:22-cv-00069, ECF No. 211 at 10. To hold otherwise would be contrary to public policy and the intent of the IEEE Bylaws. Ex. 4 at ¶¶ 39-42. Even the December 2021 USPTO, NIST, and DOJ "Draft Policy Statement" guidance Wilus cites does not support finding that its RAND obligation can be eliminated. Mot. 13. The guidance states only that the *existence of F/RAND will affect the*

10

*appropriate remedy*—that is, that the remedy must be consistent with RAND, not that RAND is eliminated.  *Id.*; Dkt. 277-6 at 7-8.[4]  Any disagreement as to the intent of the contract between Wilus and the IEEE is a factual issue that precludes summary judgment.[5]

### 2.    Samsung Is a Third-Party Beneficiary, and Cannot Breach Wilus's Contract with the IEEE

The parties agree that the contract arising from Wilus's LOAs is between Wilus and IEEE, and that Samsung is not a party to that contract.  *See* Mot. § II(D).  Rather, Samsung is an intended third-party beneficiary.  *See Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1033 (9th Cir. 2015) (discussing implementer as a third-party beneficiary of RAND licensing commitment).  None of the cases Wilus cites stand for the proposition that Samsung as a third-party can breach Wilus's contract with the IEEE and thereby excuse Wilus's own obligation to offer RAND licensing terms. At best, those cases reflect the settled principle that a patent owner's obligation to ***negotiate*** may be suspended for lack of reciprocal good faith engagement by an implementer but resumes once good faith engagement returns.  Mot. 9-10; *Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 1672493, at *12 (N.D. Cal. May 14, 2012) (FRAND declarations to ETSI created a contractual "duty to negotiate FRAND terms in good faith"); *Microsoft Corp. v. Motorola, Inc.*, 2012 WL 4827743, at *6 (W.D. Wash. Oct. 10, 2012) ("Certainly, Motorola's commitments to the IEEE and ITU require that it negotiate in good faith towards RAND terms, but those commitments go one step further and require Motorola to eventually grant a license on RAND terms."); *G+ Commc'ns*, 2024 WL 233222, at *6 (a party's bad faith "does not remove the burden of the FRAND obligation from the patent"); *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-cv-00243, 2018 WL 6617795,

---

[4] Samsung has seen no evidence that the USPTO, NIST, and DOJ ever formally issued this "Draft" guidance.  *See* Dkt. 277-6.

[5] Historically, RAND (and FRAND) were developed and intended to eliminate the possibility of "windfall" royalties after a standard has been released into the market.  *See* Ex. 3 at ¶ 39.

11

at *6 (E.D. Tex. Dec. 17, 2018) ("the FRAND commitment requires that good faith negotiations be conducted bilaterally"). Again, Samsung agrees that "accepted business practices" counsel parties to negotiate in good faith, but that is demonstrably different from a contractual obligation imposed on a third-party beneficiary of a contract between a SEP holder and the IEEE. Mot. 10-11; *Sisvel v. Haier*, No. KZR 35/17 at 9, ¶ 64 (Fed. Ct. Justice, Nov. 24, 2020) (noting "accepted business practices" in responding to offers); *Huawei v. ZTE*, ECJ, WRP 2015, at 1080, ¶ 65 (same).

### 3.    The Prevention Doctrine Does Not Apply

The Court should also reject Wilus's attempt to extend the prevention doctrine to cover third-party beneficiaries like Samsung. Mot. 13-14. There is no dispute that Wilus's "RAND commitments create enforceable contracts between [it] and the respective SSO," and that Samsung "as a standard user[,] can enforce these contracts as a third-party beneficiary." *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1033 (Fed. Cir. 215); Mot. UMF 16, 19. But Wilus fails to cite any precedent holding that Samsung's conduct as a third party can excuse Wilus's "non-performance" of its RAND obligation. Mot. 13-14 (citing *D2 Excavating, Inc. v. Thompson Thrift Constr., Inc.*, 973 F.3d 430, 437 (5th Cir. 2020) (only the "conduct of ***one party to a contract*** which prevents the other from performance his party is an excuse for non-performance" (emphasis added)); *Haddon Housing Assoc., Ltd. P'ship v. U.S.*, 711 F.3d 1330, 1338 (Fed. Cir. 2013)).

Indeed, other courts have held the "prevention doctrine" inapplicable to situations like the one presented here. In *Arrow Child & Family Ministries v. Rite of Passage, Inc.*, a Western District of Texas court held that "the Prevention Doctrine does not apply to commercial disputes involving sophisticated parties" like Wilus and Samsung. No. 2:23-cv-00017, 2024 WL 3174375, at *1 (W.D. Tex. June 25, 2024); *Cf Green Acres Baptist Church, Inc. v. Brotherhood Mut. Ins. Co.*, No. 6:23-cv-00566, 2025 WL 1840603, at *7 n.4 (E.D. Tex. July 3, 2025) (declining to extend the "prevention doctrine"). And in *Haddon*, a case cited by Plaintiff, the Federal Circuit explained

12

that "where a party to a contract is the cause of the failure of the performance of the obligation due him or her, that party cannot in any way take advantage of that failure." *Haddon*, 711 F.3d at 1338 (citing *Williston on Contracts*, § 39.4).  Samsung would claim no "advantage" by Wilus's unilateral declaration that it longer must offer a license to the Asserted Patents on RAND terms. Indeed, "[w]hen the party asserting the [prevention doctrine] defense prevented or hindered fulfillment of the condition precedent," as Wilus did through its own bad faith, "it cannot rely on that failure to avoid its own obligation to perform under the contract." *Id*.

Even if the Court were to extend the "prevention doctrine" to apply to third-party beneficiaries of SSO contracts, this issue would be unsuitable for summary judgment because "(potentially) wrongful conduct by [the] Defendant has yet to be fully adjudicated" and is an issue this Court should leave "for trial." *Arrow*, 2024 WL 3174375, at *7.

### D. The Parties' Communications Cannot Create an Enforceable Contract to Negotiate, and Formation of Any Such Contract Would Be a Factual Dispute

As an alternative to its theory that Samsung had obligations to Wilus under the IEEE Bylaws, Wilus asserts that the parties had an "explicit agreement to conduct expedient good faith negotiations on a RAND basis [that] established a reciprocal obligation of good faith."  Mot. 11; Mot. UMF 20-25.  As an initial matter, Texas law[6] does not enforce agreements to negotiate, even if the agreement calls for good faith.  *See Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S. W. 3d 362, 371 (Tex. 2019) (citing *Fisher v. CTMI, L.L.C.*, 479 S. W. 3d 231, 242 (Tex. 2016)); *John Wood Grp. USA, Inc. v. ICO, Inc.*, 26 S. W. 3d. 12, 21 (Tex. 2000).  Even if the parties' correspondence could give rise to an enforceable agreement to negotiate in good faith

---

[6] Texas uses the "most significant relationship test" for choice of law. *Krohn v. Spectrum Gulf Coast, LLC*, No. 3:18-CV-2722-S, 2019 WL 4572833, at *2 (N.D. Tex. Sept. 19, 2019).  Wilus asserts that Texas law applies to its claims in this case.  Mot. 8 n.2.  Thus, for purposes of this analysis, Samsung refers to Texas law, but the analysis is the same under New York law where the IEEE and Defendant Samsung Electronics America, Inc. are organized.

(which it cannot), whether such a contract was formed by the parties' email correspondence is a matter of fact for the jury. *Delta Brands, Inc. v. Wysong & Miles Co.*, 203 F.3d 828, 1999 WL 1240802, at *1 (5th Cir. 1999) ("[C]ontract formation is a question of fact under Texas law."). Summary judgment is appropriate only when "no issues of material fact exist," which is not the case here. *Id.*; *see* Mot. 11; Mot. UMF 20-23. To the contrary, the parties' correspondence demonstrates substantial disagreement even as to the conduct of the negotiations. *Liberto v. D.F. Stauffer Biscuit Co., Inc.*, 441 F.3d 318, 323 (5th Cir. 2006) ("An agreement to make a contract at a future time is enforceable if it is specific to all essential terms."); Mot. UMF 20-23; Section II *supra*; Ex. 16 at -45. Thus, the parties never contracted to negotiate—and indeed would have not expected to where it is well-established that such contracts are not enforceable.

###### E. Wilus's Theories that Bad Faith Cannot Be Abrogated, and that Bad Faith Can Only Be Evaluated at the Time of the Complaint, Are Wrong

In *G+ Communications*, this Court expressly held that once a party abrogates "bad faith, the barrier to consummation of the license on FRAND terms is removed and the negotiations can and must resume." *G+ Commn's*, 2024 WL 233222, at * 6. Wilus now asks the Court to unwind its prior ruling and reach the opposite conclusion. Wilus wraps its argument in the term "suspend," but what Wilus really means is "eliminate." For the reasons set forth in Sections III.B and III.C, Defendants find no basis for holding that a party can revoke its obligation to offer reasonable and non-discriminatory terms for its declared SEPs. *See HTC Corp.*, 2019 WL 4734950, at *6; *see also Microsoft*, 2012 WL 4827743, at *6. To upend this Court's ruling in *G+ Communications* and find instead that Wilus may declare its RAND obligation null and void, even where a jury finds that a licensee has corrected course to act in good faith after litigation is initiated, lacks merit.

Wilus's proposal also flies in the face of this Court's precedent, which makes clear that RAND conduct must be assessed under the "totality of the circumstances." *G+ Comm'ns*, 2024

WL 233222, at \*2.  In *Ericsson v. Apple*, "[t]he Court noted that non-SEPs … are part of the ***totality of Ericsson's conduct*** in negotiation for SEP licenses under FRAND terms."  *Ericsson Inc. v. Apple Inc.*, No. 2:21-cv-00376, Dkt. 291 at 2-3 (E.D. Tex. Nov. 29, 2022) (emphasis added).  And in *HTC v. Ericsson*, the Federal Circuit held that "[w]hether or not a license is FRAND will depend upon the ***totality of the particular facts and circumstances*** existing during the negotiations and leading up to the license."  *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 483 (Fed. Cir. 2021) (emphasis added).  Thus, not only does controlling law contemplate a party correcting its bad faith, it requires the jury to evaluate whether a party is or has been acting in good faith as a whole—including both before and after litigation is instituted.

Wilus's request also leads an illogical and impractical result.  The IEEE Bylaws exist to encourage RAND negotiations and licensing.  Ex. 3 at ¶¶ 28-30.  It is therefore untrue that the IEEE Bylaws contemplate only two divergent paths between "good faith expedient negotiations" and "litigat[ion]."  Mot. 15; *see Microsoft Corp. v. Motorola, Inc.*, 854 F. Supp. 2d 993, 1002 (W.D. Wash. 2012) (in the IEEE context, "reasonable parties may disagree as to the terms and conditions of a RAND license, leaving the courthouse as the only viable arena").  Indeed, the operative pre-2015 IEEE Bylaws say nothing of this, and the 2025 IEEE Bylaws that Wilus relies on acknowledge that the two are not mutually exclusive—that "choosing to litigate … does not by itself mean that a party so choosing is unwilling to negotiate in good faith."  Dkt. 263, Ex. C at 18.  Indeed, were it true that litigation is an "alternate path" to good faith negotiations, Wilus's decision to bring suit against Samsung would be a manifest act of bad faith.  *See* Mot. UMF 27, 30.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Wilus's motion for summary judgment.

Dated: March 16, 2026

Respectfully submitted,

*/s/ Matthew P. Mosteller*
Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
DC Bar No. 459780
mckeon@fr.com
Ralph A. Phillips
DC Bar No. 475571
rphillips@fr.com
Matthew P. Mosteller
DC Bar No. 1697343
mosteller@fr.com
Bryan J. Cannon
DC Bar No. 1723657
cannon@fr.com
Brendan F. McLaughlin
DC Bar No: 1671658
BMcLaughlin@fr.com
Payal Patel
DC Bar No. 90019320
ppatel@fr.com
Damien Thomas
DC Bar No. 90018451
dthomas@fr.com
James Young
DC Bar No. 90005769
jyoung@fr.com
FISH & RICHARDSON, P.C.
1000 Maine Ave., S.W., Ste. 1000
Washington, DC 20024
Telephone: 202-783-5070
Facsimile:  202-783-2331

Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
Rodeen Talebi
TX Bar No. 24103958
talebi@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 78766
Telephone: 214-747-5070

16

███████████████████████████████████

Facsimile:  214-747-2091

Aleksandr Gelberg
CA Bar No. 279989
gelberg@fr.com
John-Paul Fryckman
CA Bar No. 317591
fryckman@fr.com
FISH & RICHARDSON, P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: 858-678-5070
Facsimile:  858-678-5099

Bailey K. Benedict
TX Bar No. 24083139
benedict@fr.com
FISH & RICHARDSON, P.C.
909 Fannin Street, Ste. 2100
Houston, TX 77010
Telephone: 713-654-5300
Facsimile:  713-652-0109

Lawrence R. Jarvis
GA Bar No. 102116
jarvis@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: 404-892-5005
Facsimile: 404-892-5002

Melissa R. Smith
Texas Bar No. 24001351
melissa@gillamsmithlaw.com
Andrew Thompson ("Tom") Gorham
Texas Bar. No. 24012715
tom@gilliamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903-934-8450
Facsimile:  903-934-9257

17

███████████████████████████████████

Jon B. Hyland
jhyland@hilgerslaw.com
HILGERS PLLC
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: 972-645-3097

*Attorneys for Defendants*
*Samsung Electronics Co., Ltd., and*
*Samsung Electronics America, Inc.*

18

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on March 17, 2026.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and by electronic mail.

/s/ Matthew P. Mosteller
Matthew P. Mosteller

19