IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> HP INC. <br><br> Defendant. | Civil Case No. 2:24-cv-00752-JRG [Lead Case] <br><br> JURY TRIAL DEMANDED |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. <br> Defendants. | Civil Case No. 2:24-cv-00746-JRG [Member Case] <br><br> JURY TRIAL DEMANDED |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. <br> Defendants. | Civil Case No. 2:24-cv-00765-JRG [Member Case] <br><br> JURY TRIAL DEMANDED |

| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., | Civil Case No. 2:24-cv-00766-JRG [Member Case] |
|---|---|
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| ASKEY COMPUTER CORP., ASKEY INTERNATIONAL CORP. | |
| Defendants. | |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., | Civil Case No. 2:24-cv-00753-JRG-RSP [Member Case] |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| ASKEY COMPUTER CORP., ASKEY INTERNATIONAL CORP. | |
| Defendants. | |

**SAMSUNG'S OPPOSITION TO PLAINTIFF WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON SAMSUNG'S ESTOPPEL & WAIVER DEFENSE (DKT. 249)**

████████████████████████

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

TABLE OF EXHIBITS ........................................................................................................... iv

TABLE OF ABBREVIATIONS ................................................................................................ v

I.     INTRODUCTION ....................................................................................................... 1

II.    RESPONSE TO WILUS'S STATEMENT OF ISSUES.................................................... 1

III.   RESPONSE TO WILUS'S STATEMENT OF UNDISPUTED
       MATERIAL FACTS ................................................................................................... 2

       A.    Response to Wilus's Statement of Undisputed Material Facts ............................. 2

             1.    The 802.11ax Standard ................................................................... 2

             2.    The IEEE Patent Policy .................................................................. 2

             3.    Wilus' Letter of Assurance ............................................................. 4

             4.    Samsung's Asserted Defense ........................................................... 4

       B.    Additional Undisputed Material Facts ........................................................ 5

             1.    IEEE-SA Standards Board Operations Manual ......................................... 5

             2.    IEEE Understanding Patent Issues During IEEE Standards
                   Development Guide ....................................................................... 5

             3.    The Asserted Patents Claim Priority to Korean Patent
                   Applications Filed Between 2015 and 2017 ............................................. 6

             4.    Asserted Patent Inventors Attended IEEE 802.11 Task
                   Group ax Meetings Between 2015 and 2017 ............................................. 7

             5.    Asserted Patent Inventors Participated in IEEE Meetings,
                   But Never Responded to the "Call For Patents," Despite
                   Believing Wilus Had Potentially Essential Patents ................................... 7

IV.    LEGAL STANDARD................................................................................................... 8

V.     ARGUMENT.............................................................................................................. 9

       A.    The IEEE Call for Patents Continually Reminds Participants of
             Their Disclosure Duty ................................................................................ 9

i

B.      The IEEE Imposes a Duty to Disclose Potentially Essential Patent Claims Through a LOA "As Soon As Reasonably Feasible"............................... 11

VI.     CONCLUSION........................................................................................................ 13

████████████████████████████

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Force MOS Tech., Co., Ltd. v. ASUSTeK Comp., Inc.*,
    No. 2:22-cv-460-JRG, Dkt. No. 315 (E.D. Tex. Dec. 1, 2024) ...................................................1

*Hynix Semiconductor Inc. v. Rambus Inc.*,
    645 F.3d 1336 (Fed. Cir. 2011).........................................................................................1, 8

*Qualcomm Inc. v. Broadcom Corp.*,
    548 F.3d 1004 (Fed. Cir. 2011).............................................................................................8

████████████████████████████████████

## TABLE OF EXHIBITS

| # | Description |
|---|---|
| 1 | IEEE-SA Standards Board Operations Manual, dated December 2013 |
| 2 | Excerpts of the Opening Report of David Djavaherian (Corrected), dated January 27, 2026 |
| 3 | Letter from DOJ to Dorsey & Whitney LLP, dated April 30, 2007 |
| 4 | Understanding Patent Issues During IEEE Standards Development |
| 5 | Excerpts of the IEEE July 2015 meeting minutes |
| 6 | Excerpts of the IEEE September 2015 meeting minutes |
| 7 | Excerpts of the IEEE January 2026 meeting minutes |
| 8 | Excerpts of the IEEE March 2016 meeting minutes |
| 9 | Excerpts of the IEEE May 2016 meeting minutes |
| 10 | Excerpts of the IEEE July 2016 meeting minutes |
| 11 | Excerpts of the IEEE November 2016 (Warsaw)meeting minutes |
| 12 | Excerpts of the IEEE November 2016 (San Antonio) meeting minutes |
| 13 | Excerpts of the IEEE January 2017 meeting minutes |
| 14 | Excerpts of the IEEE March 2017 meeting minutes |
| 15 | Excerpts of the IEEE May 2017 meeting minutes |
| 16 | Excerpts of the IEEE September 2017 meeting minutes |
| 17 | Excerpts from the John JuHyung Son deposition transcript taken on December 17, 2025 |
| 18 | Excerpts of the Greg Geonjung Ko deposition transcript taken on December 16, 2025 |
| 19 | Excerpts of the Jin Sam Kwak deposition transcript taken on December 16, 2025 |
| 20 | Excerpts from the Woojin Ahn deposition transcripts taken on December 10, 2025 |
| 21 | Excerpts of the IEEE-SA Patent Policy (WILUS_0051852) |
| 22 | Excerpts of the Paul Nikolich deposition transcript taken on February 19, 2026 |
| 23 | Excerpts of the Reply Expert Report of David Djavaherian, dated February 13, 2026 |
| 24 | Excerpts from the David Djvaharien deposition transcript taken on February 26, 2026 |

**TABLE OF ABBREVIATIONS**

| Abbreviation | Description |
| --- | --- |
| '077 patent | U.S. Patent No. 10,313,077 |
| '281 patent | U.S. Patent No. 10,687,281 |
| '595 patent | U.S. Patent No. 11,470,595 |
| '210 patent | U.S. Patent No. 11,159,210 |
| '163 patent | U.S. Patent No. 11,129,163 |
| '597 patent | U.S. Patent No. 11,700,597 |
| '035 patent | U.S. Patent No. 11,116,035 |
| '879 patent | U.S. Patent No. 11,516,879 |
| Asserted Patents | '077, '281, '595, '210, '163, '597, '035, and '879 patents |
| Bylaws | IEEE Standards Board Bylaws |
| DOJ | United States Department of Justice |
| Guide | IEEE Standards Association: Understanding Patent Issues During IEEE Standards Development |
| IEEE | Institute of Electrical and Electronics Engineers |
| LOA | Letter of Assurance |
| Motion | Plaintiff Wilus Institute of Standards and Technology Inc.'s Motion for Partial Summary Judgment on Samsung's Estoppel & Waiver Defense (Dkt. 249) |
| Operations Manual | IEEE-SA Standards Board Operations Manual |

## I.    INTRODUCTION

Samsung respectfully requests that the Court deny Wilus's Motion.  Only by ignoring relevant IEEE documents can Wilus misread the Bylaws to conclude that Wilus did not have an earlier duty to disclose potentially essential patent claims prior to adoption of the 802.11ax standard.  Indeed, according to Wilus, as long as an IEEE participant submits a LOA one minute before a standard is set, it has fully complied with its duty of disclosure.  This cannot be the case.

Taking into consideration the IEEE documents that Wilus ignores, such as the Operations Manual and the Guide, its argument unravels.  These critical documents clarify that there is at least a genuine dispute of material fact as to whether IEEE working group meeting participants must disclose the existence of potentially essential patent claims (1) during working group meetings in response to the "call for patents" (if they had not already otherwise disclosed such claims), or (2) in a LOA submitted "as soon as reasonably feasible" after learning of the existence of such claims. If these duties do not exist, IEEE participants may lay behind the log only to pounce at the very end of the standards development, leading to an unjust benefit.  The Motion should be denied.[1]

## II.    RESPONSE TO WILUS'S STATEMENT OF ISSUES

The Motion does not include an express "statement of the issues to be decided by the court."  CV-56(a).  Samsung states the issues as follows:

1. The IEEE-SA Standards Board Bylaws provide that a participant "in the standards development process . . . ***shall inform*** the IEEE . . . of the holder of any potential Essential Patent

---

[1] Estoppel and waiver are equitable defenses.  *See Hynix Semiconductor Inc. v. Rambus Inc.*, 645 F.3d 1336, 1347–49 (Fed. Cir. 2011) (discussing estoppel and waiver).  Samsung therefore requests that the Court reserve ruling on this Motion until after trial, if necessary.  *See, e.g., Force MOS Tech., Co., Ltd. v. ASUSTeK Comp., Inc.*, No. 2:22-cv-460-JRG, Dkt. No. 315 at 82:17–22 (E.D. Tex. Dec. 1, 2024) ("Inequitable conduct is clearly an equitable defense that's going to be reserved for a bench trial that will follow the jury trial, assuming based on the jury's verdict there is a need for a bench trial. [Summary judgment motions regarding inequitable conduct are] not appropriate for me to take up in pretrial at this point.").

1

Claims . . . *that are not already* the subject of an existing Letter of Assurance." Dkt. 249-3 § 6.2.

During the standards development process, IEEE working groups hold meetings during which the

working group's Chair issues the "call for patents," which "inform[s] the participants . . . that if

any individual believes that Patent Claims might be Essential Patent Claims, *that fact should be*

*made known* to the entire working group." Ex. 1 at § 6.3.2. The first issue before the Court is

whether a working group participant that is aware of potentially essential patent claims has a duty

to disclose the existence of such claims.

2.  The IEEE-SA Standards Board Bylaws provide that a patent holder or patent applicant

"should [submit a LOA] as soon as reasonably feasible in the standards development process."

Dkt. 249-3 § 6.2. The second issue before the Court is whether a years-long gap between learning

of potentially essential patent claims and disclosure through a LOA meets the IEEE's directive to

submit a LOA "as soon as reasonably feasible."

## III.    RESPONSE TO WILUS'S STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    Response to Wilus's Statement of Undisputed Material Facts[2]

#### 1.    The 802.11ax Standard

1.  Undisputed that "Wilus contends that the Asserted Patents relate to the 802.11ax standard,"

but Samsung disputes whether the Asserted Patents are standard essential.

2.– 4. Undisputed.

#### 2.    The IEEE Patent Policy

5.  Samsung agrees that the revisions to Section 6 of the IEEE Bylaws over the years have

clarified rather than changed the IEEE's policies with respect to patents and RAND licensing.

---

[2] All headings and paragraph numbers in Section III.A. correspond to those set forth in the Motion's "Undisputed Material Facts" section. Dkt. 249 at 1–4 (§ II).

However, the parties dispute the intent and interpretation of the IEEE Bylaws, including as to the obligations imposed by the submission of an LOA.

6.–7.  Undisputed.

8.  Undisputed that paragraph 8 correctly quotes Dkt. 249-5 at 16.  However, the Bylaws do not define "should" or "shall."  *See* Dkt. 249-3; Dkt. 249-5.

Additionally, this language was first added to the Bylaws in 2007.  Ex. 2 at ¶ 44 n.20.  Specifically, it was added after the DOJ's Antitrust Division sent the IEEE a letter in response to IEEE's request for "a statement of the Department's antitrust enforcement intentions with respect to a proposed patent information policy."  Ex. 3 at 1.  The revised policy was meant to create "greater clarity" in the standards setting process:

> IEEE-SA anticipates that the proposed policy changes will have positive effects.  Creating greater clarity about a patent holder's future licensing requirements may decrease the chances that litigation will delay the implementation of an IEEE standard and improve the ability of working groups to reach consensus, thus allowing standardized products to reach consumers more quickly.

*Id*. at 5.  The DOJ further explained that the LOA process was meant to allow group members to review LOAs while they considered adopting a standard:

> IEEE-SA working group members will have access to all accepted LOAs, but working group members will not discuss specific licensing terms at standards-development meetings.  Working group members, may, however, discuss the relative costs of the proposed technological alternatives, and these costs may include the relative costs of licensing the essential patent claims needed to implement the technologies under consideration.

*Id*. at 8.

9.  Disputed.  Mr. Lee did not testify that "submission of a LOA is ***the*** appropriate method for disclosing essential patents to the IEEE."  Dkt. 249 at 2.  He testified that "submission of an LOA is ***an*** appropriate means for disclosure [of] patents to the IEEE."  Dkt. 249-6 at 58:24–59:1.  Mr.

Lee also did not testify that "there is no timing requirement to submit an LOA," rather, he testified that "there are not such *established*" deadlines for submitting LOAs.  *Id*. at 31:4–8.

10. Disputed.  The IEEE Patent Policy further provides that "individuals participating in the *standards development process*: (a) *shall inform the IEEE (or cause the IEEE to be informed)* of the holder of any potential Essential Patent Claims of which they are personally aware and that are not already the subject of an existing Letter of Assurance, owned or controlled by the participant or the entity the participant is from, employed by, or otherwise represents; and (b) should inform the IEEE (or cause the IEEE to be informed) of any other holders of such potential Essential Patent Claims that are not already the subject of an existing Letter of Assurance."  Dkt. 249-3 at 17.  The Operations Manual and Guide further refer to meetings.  *See infra*, § III.B.1; *see generally* Ex. 4.

11. Undisputed that Wilus correctly quoted Dr. Paul Nikolich's report.  However, Dr. Nikolich admits participants may have responded to the "call for patents" in meetings he did not attend.  Dkt. 249-7 ¶ 46.

12.–13.  Undisputed.

### 3.    Wilus' Letter of Assurance

14. Undisputed.

15. Disputed.  Wilus's cited source fails to establish that "IEEE accepted Wilus's 802.11ax LOA" on January 18, 2021.

16.–18.  Undisputed.

### 4.    Samsung's Asserted Defense

19. Disputed.  Samsung did not plead "an estoppel/waiver defense"—rather, Samsung pled "estoppel and/or waiver."  Dkt. 106 ¶ 132; Dkt. 107 ¶ 130.

20.  Undisputed.

B.      **Additional Undisputed Material Facts**

1.      **IEEE-SA Standards Board Operations Manual**

21. The Operations Manual "supplements the provisions of the *IEEE-SA Standards Board Bylaws*, which shall be the prevailing document in the event of conflict." Ex. 1 § 1.1.

22. The Operations Manual provides details regarding the IEEE Bylaws' patent policy. *Id*. § 6.3. Specifically, the Operations Manual provides that a group Chair must have a "call for patents" during meetings and "shall be responsible for informing the participants at a meeting that if any individual believes that Patent Claims might be Essential Patent Claims, that fact should be made known to the entire working group and duly recorded in the minutes of the working group meeting." *Id*. § 6.3.2. The "call for patents" "shall occur at every standards-developing meeting once the [Project Authorization Request] is approved by the IEEE-SA Standards Board." *Id*.

2.      **IEEE Understanding Patent Issues During IEEE Standards Development Guide**

23. The Guide includes further information on the IEEE's policies relating to patents. Ex. 4 at 1. For example, the Guide provides that IEEE participants that meet certain requirements "are required to notify the IEEE of the identity of a holder of any potential Essential Patent Claims." *Id*. at 5. The Guide further states that such participants "***shall*** notify the IEEE (or cause the IEEE to be notified) of the possibility [of essential patent claims] because they are personally aware of a claim that is a *potential* Essential Patent Claim." *Id*.

24. The Guide specifically provides details on how IEEE participants can provide notice of the existence of potentially essential patents:

> An individual participant could fulfill his or her duty to the IEEE by telling the Working Group Chair that his or her employer is the holder of a potential Essential Patent Claim. Alternatively, the participant could request that his or her employer submit a Letter of Assurance or otherwise notify the IEEE that it is the holder of a potential Essential Patent Claim. In the latter case, the participant fulfills his or her duty to the IEEE only if his or her employer submits a Letter of Assurance or

5

otherwise notifies the IEEE that it is the holder of a potential Essential Patent Claim. If the employer declines to submit a Letter of Assurance or otherwise notify the IEEE, the participant will have to tell the Working Group Chair that his or her employer may be the holder of a potential Essential Patent Claim. In all cases, the duty on the participant is only to inform the IEEE of the identity of the holder of a potential Essential Patent Claim and not the patent, application, or particular claim itself. The response to the call for patents only needs to be made if the response relates to a potential Essential Patent Claim that is not already the subject of any existing Letter of Assurance or request for a Letter of Assurance.

*Id*. at 5–6.

### 3. The Asserted Patents Claim Priority to Korean Patent Applications Filed Between 2015 and 2017

25. The '281 and '595 patents claim priority to Korean Patent Applications filed between December 24, 2015 and July 1, 2016.  Dkt. 1-2 at (30) (2:24-cv-00746); Dkt. 1-3 at (30) (2:24-cv-00746).  The '163 and '597 patents name Messrs. Geonjung Ko, Juhyung Son, Woojin Ahn, and Jinsam Kwak as co-inventors.  Dkt. 1-2 at (72) (2:24-cv-00746); Dkt. 1-3 at (72) (2:24-cv-00746).

26. The '077 patent claims priority to Korean Patent Applications filed between June 29, 2015 and August 20, 2015.  Dkt. 1-1 at (30) (2:24-cv-00746).  The '077 patent lists Messrs. Ko, Kwak, and Son as co-inventors.  *Id*. at (72).

27. The '163 and '597 patents claim priority to Korean Patent Applications filed between March 4, 2016 and September 7, 2016.  Dkt. 1-1 at (30) (2:24-cv-00765); Dkt. 1-2 at (30) (2:24-cv-00765).  The '163 and '597 patents list Messrs. Geonjung Ko, Juhyung Son, Woojin Ahn, and Jinsam Kwak as co-inventors.  Dkt. 1-1 at (72) (2:24-cv-00765); Dkt. 1-2 at (72) (2:24-cv-00765).

28. The '035 and '879 patents claim priority to Korean Patent Applications filed between September 7, 2016 and February 20, 2017.  Dkt. 1-3 at (30) (2:24-cv-00765); Dkt. 1-4 at (30) (2:24-cv-00765).  The '035 and '879 patents list Messrs. Ko, Son, Ahn, and Kwak as co-inventors. Dkt. 1-3 at (72) (2:24-cv-00765); Dkt. 1-4 at (72) (2:24-cv-00765).

6

29. The '210 patent claims priority to Korean Patent Applications filed in January 2017. Dkt. 1-4 at (30) (2:24-cv-00746). The '210 patent lists Messrs. Ko, Son, Ahn, and Kwak as co-inventors. *Id.* at (72).

### 4. Asserted Patent Inventors Attended IEEE 802.11 Task Group ax Meetings Between 2015 and 2017

30. Before and after Wilus filed the priority Korean Patent Applications referenced in paragraphs 25–29, Messrs. Ko, Son, and Ahn participated in numerous IEEE 802.11 Task Group ax meetings. Ex. 5 at 3 (indicating Mr. Son participated in the July 2015 meeting); Ex. 6 at 3–4 (indicating Messrs. Son and Ko participated in the September 2015 meeting); Ex. 7 at 3–4 (indicating Messrs. Son and Ko participated in the January 2016 meeting); Ex. 8 at 3 (indicating Messrs. Son and Ko participated in the March 2016 meeting); Ex. 9 at 4 (indicating Messrs. Son and Ko participated in the May 2016 meeting); Ex. 10 at 4–5 (indicating Messrs. Ahn and Ko participated in the July 2016 meeting); Ex. 11 at 3–4 (indicating Messrs. Ahn and Ko participated in the September 2016 meeting); Ex. 12 at 4–5 (indicating Messrs. Ahn and Ko participated in the November 2016 meeting); Ex. 13 at 3 (indicating Messrs. Ahn and Son participated in the January 2017 meeting); Ex. 14 at 3–4 (indicating Messrs. Ahn and Ko participated in the March 2017 meeting); Ex. 15 at 3 (indicating Mr. Ahn participated in the May 2017 meeting); Ex. 16 at 4 (indicating Mr. Ahn participated in the September 2017 meeting).

### 5. Asserted Patent Inventors Participated in IEEE Meetings, But Never Responded to the "Call For Patents," Despite Believing Wilus Had Potentially Essential Patents

31. Messrs. Son, Ko, and Kwak all testified that Wilus participants never responded to the "call for patents" at IEEE 802.11 Task Group ax meetings. Ex. 17 (Son) at 116:8–10 ("Q. Do you recall ever identifying any specific patents in response to these calls by the Chair? A. I, myself, did not."); Ex. 18 (Ko) at 74:9–18 ("I didn't think it was necessary for me to say anything."); Ex. 19

(Kwak) at 52:23–53:3 ("Q. Has Wilus ever responded to one of these calls by identifying potentially essential patents at a meeting?  A. In my recollection for the 15 years that I've been asked, not Wilus, but no other companies ever declared.").

32. Dr. Ahn participated in IEEE 802.11 Task Group ax meetings between July 2014 and late 2018. Ex. 20 at 80:9–13.  He testified that he never identified any specific patents in response to the working group Chair's "call for patents." *Id*. at 81:24–82:5 ("Q. Do you recall ever stating that you had potentially essential patents?  . . . A. I have not directly mentioned our -- there were no instances that I directly mentioned that.").  Dr. Ahn did not identify any patents during these meetings despite believing that Wilus had potentially essential patents.  *Id*. at 82:13–17 ("Q. Did you believe that you had any, potentially, essential patents? . . . There was a time that I thought I had possibility.").  Dr. Ahn testified that he did not disclose the existence of potentially essential patents during the meetings he attended because "[t]here are many method[s] of making a disclosure for such patent[s]." *Id*. at 82:19–83:8.  Dr. Ahn further testified that Wilus had a policy of disclosing its potentially essential patent claims only "before the standard is published." *Id*. at 83:10–21.

## IV.    LEGAL STANDARD

The Federal Circuit has held that, in the standard setting organization context, waiver may be shown "where (1) the patentee had a duty of disclosure to the standard setting organization, and (2) the patentee breached that duty." *Hynix Semiconductor*, 645 F.3d at 1348 (citing *Qualcomm Inc. v. Broadcom Corp.*, 548 F.3d 1004, 1011–12 (Fed. Cir. 2011)).  Similarly, these "two elements of implied waiver must also be shown to prove equitable estoppel." *Id*.  Therefore, a duty to disclose must exist under both waiver and estoppel.

## V.    ARGUMENT

Wilus's arguments that Samsung cannot show the existence of a "duty" hinge on a narrow record—specifically, Wilus relies purely upon the IEEE Bylaws and ignores the Operations Manual, the Guide, and their broader context.  These sources provide the full picture of the duties held by IEEE participants: they (1) "**_are required_** to notify the IEEE of the identity of a holder of any potential Essential Patent Claim," and (2) there is at least a genuine dispute of material fact regarding when a duty arises with respect to submitting a LOA "**_as soon as reasonably feasible_** in the standards development process."  Both the "call for patents" and submission of a LOA "as soon as reasonably feasible" provide duties of disclosure and independently require denial of the Motion.

### A.    The IEEE Call for Patents Continually Reminds Participants of Their Disclosure Duty

Like many standards-making bodies, the IEEE has developed its own procedures for ensuring adequate disclosure of potentially essential patents to standards it develops.  The Operations Manual instructs participants to notify the IEEE if their employer may hold any patents or patent applications that are or may be essential to the standard.  Ex. 1 § 6.3; Ex. 2 ¶ 43.  Regular and ongoing reminders of this obligation are built into the IEEE standards development processes, as the working group Chair is required to make a "call for patents" during technical meetings.  Ex. 1 § 6.3.2; Ex. 2 ¶ 44.  Indeed, the "call for patents" is not optional and "**_shall_** occur at **_every_** standards-developing meeting."  Ex. 21 at 7; Ex. 1 § 6.3.2.  This requires that the Chair "inform[] the participants at a meeting that if any individual believes that Patent Claims might be Essential Patent Claims, that fact should be made known to the entire working group and duly recorded in the minutes of the working group meeting."  _Id_.

9

Wilus is incorrect that the IEEE does not require the disclosure of potentially essential patents at technical meetings, because this is addressed in the IEEE Bylaws and Guide. First, the Bylaws require that a participant "**shall inform** the IEEE of the holder of any potential Essential Patent Claims . . . **that are not already** the subject of an existing Letter of Assurance." Dkt. 249-3 § 6.2. The Guide similarly states that participants are "**required** to notify the IEEE of the identity of a holder of any potential Essential Patent Claims . . . where . . . the potential Essential Patent Claim **is not already** the subject of any existing" LOA. Ex. 4 at 5. The Guide also provides that if a participant does not answer the "call for patents," "the participant **fulfills his or her duty** to the IEEE **only if** his or her employer submits a Letter of Assurance or otherwise notifies the IEEE that it is the holder of a potential Essential Patent Claim." *Id*. at 5–6. In other words, if a company has not already submitted a LOA, the company's participants have a duty to disclose potentially essential patents during the working group meetings—as Dr. Nikolich was forced to concede. Ex. 22 at 110:13–17 ("Q. In other words, if someone has not submitted a Letter of Assurance and owns essential patent claims that they're aware of, they shall inform the IEEE, right? A. That's what it says."); *see also id*. at 109:3–110:12.

Here, it is undisputed that Wilus's IEEE participants did not respond to a "call for patents," despite Dr. Ahn's belief that Wilus had potentially essential patent claims. Ex. 20 at 82:13–17. Wilus's participants in the IEEE meetings (1) had a duty to disclose potentially essential patent claims, and (2) failed to fulfill that duty.

Wilus's arguments that it did not have a duty to disclose in response to the "call for patents" should be rejected. **First**, Wilus attempts to argue that the "call for patents" is illusory because the Bylaws prohibit "[d]iscussion of **essentiality, interpretation, or validity of Patent Claims** . . . during IEEE SA standards-development meetings." Dkt. 249 at 6–7 (quoting Dkt. 249-5 § 6.2).

10

This prohibition on discussing the *merits* of specific patent claims does not conflict with the Operations Manual's required disclosure of the mere *existence* of potentially essential patent claims in response to the "call for patents." Ex. 1 § 6.3.2. *Second*, Wilus incorrectly argues that because other participants may not have disclosed their patents during meetings, that means Wilus was under no obligation to do so. Dkt. 249 at 7–8. However, Wilus fails to address whether other participants submitted a LOA (or otherwise notified the IEEE) concerning potentially standard essential patents *before* a meeting, which would have already fulfilled the participant's duty to respond to the "call for patents."

Wilus's arguments based upon an incomplete picture of the IEEE's requirements and expectations should be rejected.

### B.    The IEEE Imposes a Duty to Disclose Potentially Essential Patent Claims Through a LOA "As Soon As Reasonably Feasible"

If the Court finds that Wilus had a duty to disclose in response to the "call for patents," the Motion can be denied on that basis alone. However, even if the Court finds that no duty existed in response to the "call for patents," the Court should still deny the Motion because Wilus failed to disclose its potentially essential patents "*as soon as reasonably feasible* in the standards development process once the [Project Authorization Request] is approved by the IEEE-SA Standards Board." Dkt. 249-3 § 6.2.

If a participant does not answer the "call for patents," his or her employer is required to notify the IEEE of its potentially standard essential patents another way. As explained above, *supra* § V.A., the Guide provides that if a participant does not respond to the "call for patents," the participant's employer may "submit[] a Letter of Assurance or otherwise notif[y] the IEEE that it is the holder of a potential Essential Patent Claim." Ex. 4 at 5. The Bylaws provide that the employer "should do so *as soon as reasonably feasible in the standards development process*

11

once the [Project Authorization Request] is approved by the IEEE-SA Standards Board." Dkt. 249-3 § 6.2. While "as soon as reasonably feasible" is not a set period of time, it requires a potentially essential patent claim holder to not delay in submitting a LOA. *See* Ex. 23 at ¶¶ 33–34. The DOJ Letter explains that early disclosure of potentially essential patent claims allows working group participants to achieve "greater clarity" during the standards setting process and evaluate "the relative costs of the proposed technological alternatives." Ex. 3 at 5, 8. If the only deadline for submission is before the Standards Board approves the standard, this defeats the purpose of the LOA process and renders the provision that the employer "should [submit a LOA] as soon as reasonably feasible in the standards development process" superfluous. That cannot be correct—there is a genuine dispute of material fact regarding whether a LOA must be submitted earlier.

Here, Messrs. Ko, Son, and Ahn participated in IEEE 802.11 Task Group ax meetings between 2015 and 2017. *Supra* § III.B.4. They never responded to the "call for patents," despite Dr. Ahn's belief that Wilus had potentially essential patent claims. Ex. 20 at 82:13–17. While Wilus had a duty to disclose its potentially essential patent claims, it instead had a policy of only doing so "before the standard is published." *Id*. at 83:10–21. In fact, Wilus waited approximately five years after it began filing the Korean Patent Applications to submit its LOA. Because "[t]imely disclosure of intellectual property is important to preserve the integrity of the standardization process" (Ex. 2 at ¶¶ 40, 76), there is a genuine dispute of material fact that Wilus's years-long delay breached its duty to the IEEE. *See also* Ex. 24 at 62:2–63:2 (testifying that Wilus's delay in disclosing potentially essential patent claims "would raise questions about compliance with [IEEE's disclosure] obligation in the patent policy"); *id*. at 63:24–65:2; Ex. 23 at ¶¶ 33–34.

12

Wilus's arguments to the contrary should be rejected. *First*, Wilus argues that "'should' has a permissive meaning and that 'shall' indicates that something is mandatory." Dkt. 249 at 9 (citing Dkt. 249-6 ¶ 30). Notably, Wilus does not cite the Bylaws for this definition, but rather relies upon Dr. Nikolich—who admitted that he imported the definition from a technical standard. *See* Ex. 22 at 35:2–10 (testifying that the definition of "should" is "not . . . in the bylaws, no. It's in the standard."); *see also id*. at 33:22–35:1. *Second*, Wilus incorrectly argues that there is no submission deadline for LOAs, and it relies upon testimony from one of Samsung's witnesses. Dkt. 249 at 10. But the witness's testimony is consistent: there is no set deadline to submit LOAs— instead, the duty to disclose is triggered by a participant's *knowledge* of potentially essential patents. Once a participant knows of a potentially essential patent, he or she has a duty to disclose "as soon as reasonably feasible."

Therefore, Wilus had a duty to disclose once it knew of potentially essential patent claims, and it breached that duty by waiting years to submit its LOA, mere weeks before standard adoption.

## VI.    CONCLUSION

For the foregoing reasons, Samsung respectfully requests that the Court deny the Motion.

████████████████████████████████

Dated: March 16, 2026

Respectfully submitted,

*/s/ Ralph A. Phillips*
Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
DC Bar No. 459780
mckeon@fr.com
Ralph A. Phillips
DC Bar No. 475571
rphillips@fr.com
Matthew P. Mosteller
DC Bar No. 1697343
mosteller@fr.com
Bryan J. Cannon
DC Bar No. 1723657
cannon@fr.com
Brendan F. McLaughlin
DC Bar No: 1671658
BMcLaughlin@fr.com
Payal Patel
DC Bar No. 90019320
ppatel@fr.com
Damien Thomas
DC Bar No. 90018451
dthomas@fr.com
James Young
DC Bar No. 90005769
jyoung@fr.com
FISH & RICHARDSON, P.C.
1000 Maine Ave., S.W., Ste. 1000
Washington, DC 20024
Telephone: 202-783-5070
Facsimile:  202-783-2331

Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
Rodeen Talebi
TX Bar No. 24103958
talebi@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 78766
Telephone: 214-747-5070

14

████████████████████████████████████

Facsimile:  214-747-2091

Aleksandr Gelberg
CA Bar No. 279989
gelberg@fr.com
John-Paul Fryckman
CA Bar No. 317591
fryckman@fr.com
FISH & RICHARDSON, P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: 858-678-5070
Facsimile:  858-678-5099

Bailey K. Benedict
TX Bar No. 24083139
benedict@fr.com
FISH & RICHARDSON, P.C.
909 Fannin Street, Ste. 2100
Houston, TX 77010
Telephone: 713-654-5300
Facsimile:  713-652-0109

Lawrence R. Jarvis
GA Bar No. 102116
jarvis@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: 404-892-5005
Facsimile: 404-892-5002

Melissa R. Smith
Texas Bar No. 24001351
melissa@gillamsmithlaw.com
Andrew Thompson ("Tom") Gorham
Texas Bar. No. 24012715
tom@gilliamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903-934-8450
Facsimile:  903-934-9257

Jon B. Hyland

15

jhyland@hilgerslaw.com
HILGERS PLLC
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: 972-645-3097

*Attorneys for Defendants*
*Samsung Electronics Co., Ltd., and*
*Samsung Electronics America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on March 16, 2026.  As of this date, all counsel of record are being served with a copy of this document by electronic mail.

*/s/ Ralph A. Phillips*