**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> HP INC., <br><br> Defendant. | Civil Action No. 2:24-cv-0752-JRG-RSP <br> **LEAD CASE** |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> ASKEY COMPUTER CORP. and ASKEY INTERNATIONAL CORP., <br><br> Defendants. | Case No. 2:24-cv-00753-JRG-RSP <br> **Member Case** |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., <br><br> Defendants. | Case No. 2:24-cv-00746-JRG-RSP <br> **Member Case** |

████████████████████████████

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> HP INC., <br><br> Defendant. | Case No. 2:24-cv-00764-JRG-RSP <br> **Member Case** |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., <br><br> Defendants. | Case No. 2:24-cv-00765-JRG-RSP <br> **Member Case** |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> ASKEY COMPUTER CORP. and ASKEY INTERNATIONAL CORP., <br><br> Defendants. | Case No. 2:24-cv-00766-JRG-RSP <br> **Member Case** |

**ASKEY DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFF WILUS'S MOTION FOR ENTRY OF A PERMANENT INJUNCTION**

████████████████████████████████

## **TABLE OF CONTENTS**

I.   ARGUMENT ................................................................................................................1

      A.   Wilus Has Not Proved that It Has or Will Suffer Irreparable Harm, or
           That There is a Nexus to Any Askey Conduct ...........................................1

      B.   Askey is Willing to License and Has Made Multiple Offers, but Wilus
           Apparently Wants Nothing But "Supra-FRAND" Rates.......................................3

      C.   The Difference in Damages Opinions Stems from the Unreliable
           Analysis of Wilus's Expert, Not Any Difficulty in Calculating Them....................4

      D.   This Litigation is not Economically Efficient and Continues Because
           Wilus Continues to Litigate Despite Askey's Multiple and Reasonable
           Offers ....................................................................................................5

II.  CONCLUSION................................................................................................................5

████████████████████████████

The Court should deny Wilus's motion. Its reply confirms Wilus's lack of irreparable harm and that the conclusory, speculative declaration of its CEO, Dr. Kwak, is contrary to the facts and actual evidence. There are numerous shortcomings of Dr. Kwak's declaration, including his frequent parroting of attorney argument in place of actual, substantial, or concrete evidence of any harm at all. Wilus ignores those deficiencies. It only attempts to rehabilitate Dr. Kwak's testimony that Wilus has had to "divert resources" by pointing to ███████████████████████ ███████████████████████████████████████████. Wilus's inability to offer any concrete evidence proves the unreliability of Dr. Kwak's testimony.

Wilus also attempts to rewrite the negotiation history, hinting that Askey's multiple offers are not "RAND" offers, but the absence of any reasoning or analysis confirms the fallacy of its position; apparently any offer Sisvel rejected is not a RAND offer, regardless of the terms. Askey's offers consider the actual number of units sold and the actual Wilus/Sisvel rates, and largely align with Wilus's own (inflated) damages opinion. If this does not meet Wilus's "RAND" criteria, what does? Wilus's brief is silent on that. But Wilus does reveal its true desire, a "supra-FRAND" offer. Its ultimatum to Askey: pay a "supra-FRAND" rate or risk injunctive relief. Askey has not refused to deal; Wilus has, holding up negotiations with supra-FRAND demands.

Wilus has not met the *eBay* standard, especially with its failure to demonstrate irreparable harm. There is no evidence this litigation is impacting Wilus's licensing; Sisvel says its Wi-Fi 6 licensing program is "on fire." The Court should deny Wilus's motion for a permanent injunction.

## I.     ARGUMENT

### A.     Wilus Has Not Proved that It Has or Will Suffer Irreparable Harm, or That There is a Nexus to Any Askey Conduct

Wilus carries the burden to prove the existence of irreparable harm. It has failed. Wilus confirms that its attempt to satisfy its burden rests entirely on a short declaration unsupported by

1

any concrete evidence and contradicted by the record. If such a showing were sufficient, courts would find irreparable harm in every case. *See Automated Merch. Sys., Inc. v. Crane Co.*, 357 F. App'x 297, 301 (Fed. Cir. 2009). Which is why the Federal Circuit requires more.

Wilus does not address or dispute that (1) "the Court never presumes irreparable harm," (2) "demonstrating irreparable harm is a fact-intensive inquiry," and (3) "the requester of an injunction must show causation." *See* ECF No. 278, at 6. Nor does Wilus dispute its obligation to provide "concrete evidence" beyond "conclusory statements." *Id.*, at 9. Wilus produced no such evidence during discovery. Nor did it submit any with its motion. Wilus's alleged "eight-page declaration from its CEO" is in fact only five pages of substance and does not identify or include any concrete evidence—no costs or substantive financial or economic burden—just conclusory statements parroting attorney arguments. Wilus cannot dispute this.

Nor does Wilus dispute that litigation costs are irrelevant, but it nevertheless attempts to rehabilitate Dr. Kwak's testimony concerning "diverting resources." In doing so Wilus confirms ███████████████████████████████████████████ Wilus cited a "12-hour deposition" of Dr. Kwak to suggest an enormous burden, but failed to mention that the questioning was conducted primarily by counsel in Wilus's separate cases against Samsung. Askey spent less than two-and-a-half hours *total* questioning Dr. Kwak (through a translator). Smyth Decl., ¶ 3. Askey deposed no Wilus witness other than Dr. Kwak, who Wilus designated. *Id.*

Askey does not ask the Court to impose a higher burden on Wilus than on any other plaintiff. Wilus need not be on the verge of bankruptcy. However, that is an example of the type of evidence that a company actually suffering irreparable harm might provide. Wilus relies instead on a generic CEO declaration and no other evidence, demonstrating that Wilus cannot meet its burden to prove that it is suffering any harm at all.

**B.      Askey is Willing to License and Has Made Multiple Offers, but Wilus Apparently Wants Nothing But "Supra-FRAND" Rates**

Wilus continues to focus on pre-litigation discussions and discredits Askey's multiple offers without explaining why those offers—which use the actual numbers of units sold and Sisvel's actual licensing rates—are unacceptable to Wilus. But Wilus's actual reason for rejecting those offers is clear: in its view "Askey is a hold out who has no right to demand RAND license terms." ECF No. 306, at 2. Wilus ███████████████████████████ is not interested in resolving this case on FRAND terms. Despite stipulating that the alleged infringement is not willful (ECF No. 202), Wilus (or Sisvel) are intent on recovering "supra-FRAND" rates.

Askey's offer for judgment is just one of the offers Askey extended to Wilus. Askey offered $500,000 before receiving any of the Sisvel licenses. ECF No. 278-7 [Ex. 11], at 31891. Sisvel declined. Askey made an offer based on sales data: $400,000 for the Wilus U.S. portfolio only or $800,000 for a worldwide license.[1] *Id.*, at 31885. Sisvel declined. Wilus does not dispute that applying its published rates to the post-notice units ███████████████████████ *See* ECF No. 278, at 5. Further, Wilus granted a license ████████████████(Ex. 15 at 161:6-162:7) and applying that rate to post-notice units would result in less than ███████ If Wilus (and Sisvel) were willing to accept a license on FRAND terms, this case would be over. But Wilus wants more and should not complain of any alleged (though unsubstantiated) harm that follows from its decision.

Moreover, buried in a footnote is an important fact concerning pre-suit negotiations: the Wilus/Sisvel license agreements and their terms "could not be disclosed prior to the initiation of litigation because the agreements prohibit disclosure to third parties except pursuant to a court-

---

[1] Wilus argues that Askey "has sought a resolution that only addresses its U.S. sales of those products," but the record confirms that is untrue. ECF No. 278-7 [Ex. 11], at 31885

issued protective order." ECF No. 306, at 4, n. 4. Thus, by its own agreements, Sisvel has made it impossible to share relevant licensing terms *until litigation has been filed*. Without such licenses, Askey cannot confirm if the published rates are fair, especially because it is common practice to offer licenses below the published rates. Indeed, ███████████████████████ Thus, Wilus's criticism of Askey for not blindly accepting a $12.79 million pre-suit license offer when Sisvel contractually prohibited itself from sharing the other licenses is clearly not well founded.

Ultimately, Wilus's refusal to accept Askey's offers (or identify any shortcomings with them from a FRAND perspective) undermines the nexus that Wilus is required to show. Wilus argues that Askey's refusal to license is the cause of irreparable harm, but it is clear that Wilus's own pursuit of a "supra-FRAND" royalty is the real reason Askey is not a licensee.

**C.     The Difference in Damages Opinions Stems from the Unreliable Analysis of Wilus's Expert, Not Any Difficulty in Calculating Them**

Wilus argues that there is "significant uncertainty about the calculation of damages," but the difference between the parties' expert calculations is the result of Mr. Dell's inflated and unreliable damages calculations for Wilus, not any legitimate uncertainty in calculating damages using a sound *Georgia-Pacific* methodology. According to Wilus, a "wide gap" in damages analyses indicates irreparable harm (ECF No. 306 at 5), but Wilus cites no legal authority for this new rule. It relies only on *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010), which concerns difficulty in estimating damages for loss of market share and customer goodwill.[2]

Here, Mr. Dell's royalty rate is based on a vacated verdict from a 2013 litigation involving unrelated parties and unrelated patents. *See* ECF No. 252. Mr. Dell ignored the 40 licenses to the

---

[2] Wilus hopes the Court will rely on Statements of Interest from other cases—none was filed here—but they do not aid Wilus's cause. For example, the Statement of Interest in *Collision*, cites Federal Circuit cases overturning damages awards based on "flawed damages models," but this merely serves to emphasize the importance of court's fulfilling their role as the gatekeeper and excluding improper expert opinions (like that offered by Mr. Dell in this case).

asserted patents and instead relied on the vacated verdict without conducting any apportionment to reach a rate that is more than double the published rate. *Id.* Askey's expert, Dr. Mody, on the other hand, calculated reasonable royalty damages using the *Georgia-Pacific* framework, based on actual licenses for the asserted patents, and apportioned the rate to reflect the number of asserted patents in this case, a fraction of the Wilus portfolio. Wilus has not raised any issue with her methodology. Because one of these methodologies is proper and the other clearly unreliable, it is unsurprising that there is a "wide gap" in the damages, but that does not prove irreparable harm.

> **D.     This Litigation is not Economically Efficient and Continues Because Wilus Continues to Litigate Despite Askey's Multiple and Reasonable Offers**

Wilus argues that Askey has admitted that this litigation is "economically efficient" and that Askey is a "calculating infringer," but its arguments are obviously incorrect. We are on the eve of trial and litigation costs have far outstripped an amount Askey should have to pay for a license given its minimal sales, which Wilus does not dispute and in fact relied on for its expert opinions. An economically efficient result would have required Wilus and Sisvel to be reasonable in their licensing request from the outset. Instead, they have unreasonably refused Askey's offers to license the patents and instead have insisted on litigating, attempting to rely on the costs of litigation (and now the threat of injunctive relief) to coerce Askey to pay "supra-FRAND" rates. As the Federal Circuit confirmed, where Askey remains willing to negotiate, its refusal to accept Wilus's unreasonable offers does not justify issuing an injunction. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1332 (Fed. Cir. 2014) (emphasis added).

## II.     CONCLUSION

Wilus has not established that injunctive relief is appropriate here. Wilus cannot establish that any of the *eBay* factors are met, and its failure to provide any evidence of irreparable harm beyond a conclusory declaration from its CEO is telling. The Court should deny Wilus's motion.

████████████████████████████████

Dated:  March 18, 2026

Respectfully submitted,


_/s/ Jeffrey D. Smyth_


Trey Yarbrough
Bar No. 2213350
**YARBROUGH WILCOX, PLLC**
100 E. Ferguson Street, Suite 1015
Tyler, TX 75702
Tel:  (903) 595-3111
Fax: (903) 595-0191
Email: trey@yw-lawfirm.com

Ming-Tao Yang (*pro hac vice*)
Jeffrey D. Smyth (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW
 GARRETT & DUNNER, LLP**
3300 Hillview Avenue, 2nd Floor
Palo Alto, CA 94304
Tel:  (650) 849-6600
Fax: (650) 849-6666
Email: ming.yang@finnegan.com
Email: jeffrey.smyth@finnegan.com

*Attorneys for Defendants Askey Computer Corp.
and Askey International Corp.*

6

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 18, 2026, a complete copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and served via email on all counsel of record.

*/s/ Jeffrey D. Smyth*
Jeffrey D. Smyth

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

The undersigned hereby certifies that the following document is authorized to be filed under seal pursuant to the Protective Order entered in this case.

*/s/ Jeffrey D. Smyth*
Jeffrey D. Smyth

7