████████████████████████

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>HP INC. | Case No. 2:24-cv-00752-JRG-RSP<br>(Lead Case)<br>**JURY TRIAL DEMANDED** |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. | Case No. 2:24-cv-00746-JRG-RSP<br>(Member Case) |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>HP INC. | Case No. 2:24-cv-00764-JRG-RSP<br>(Member Case) |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. | Case No. 2:24-cv-00765-JRG-RSP<br>(Member Case) |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC.<br><br>v.<br><br>ASKEY COMPUTER CORP., ASKEY INTERNATIONAL CORP. | Case No. 2:24-cv-00766-JRG-RSP<br>(Member Case) |

**WILUS' OPPOSITION TO SAMSUNG'S MOTION TO DISMISS FOR LACK OF STANDING**

████████████████

## **TABLE OF CONTENTS**

I.   Introduction.................................................................................................................. 1

II.  Background .................................................................................................................. 2

III.  The Assignment Is Valid ............................................................................................ 5

    A.   U.S. Law Governs the Assignment, and Under the Governing U.S. Law, No Consideration Is Required For The Assignment to Be Effective ................................ 5

    B.   Even If Texas Law Governs, the Assignment Is Valid ................................................ 8

    C.   The Assignment Is Valid Under Korean Law, If Korean Law Applies .................... 12

IV.  Conclusion ................................................................................................................ 15

███████████

## TABLE OF AUTHORITIES

**Cases**

*1464-Eight, Ltd. v. Joppich*,
154 S.W.3d 101 (Tex. 2004) ................................................................................................. 9

*Adams v. Bank of Am.*,
No. 4:10-CV-709, 2011 WL 5080217 (E.D. Tex. Oct. 26, 2011), *aff'd,* 475 F. App'x 526 (5th Cir. 2012) ........................................................................................................................... 12

*Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
583 F.3d 832 (Fed. Cir. 2009), aff'd, 563 U.S. 776, 131 S. Ct. 2188, 180 L. Ed. 2d 1 (2011)... 5

*Brooks v. Land Drilling Co.*,
564 F. Supp. 1518 (D. Colo. 1983) ...................................................................................... 12

*Candela-Rios v. Lynch,*
No. SA-16-MC-00220-JWP, 2017 WL 11046200 (W.D. Tex. Jan. 9, 2017) ......................... 13

*DeFranceschi v. Wells Fargo Bank, N.A.*,
837 F. Supp. 2d 616 (N.D. Tex. 2011) ................................................................................. 12

*El Paso Healthcare Sys., LTD v. Molina Healthcare of New Mexico, Inc.,*
683 F. Supp. 2d 454 (W.D. Tex. 2010) ................................................................................. 12

*Kaist IP US LLC v. Samsung Elecs. Co.*,
No. 2:16-CV-01314-JRG, 2018 WL 10498168 (E.D. Tex. Sept. 6, 2018) ......................... 5, 13

*Keller v. Bass Pro Shops, Inc*.,
15 F.3d 122 (8th Cir. 1994) .................................................................................................. 7

*Memorylink Corp. v. Motorola Sols., Inc., Motorola Mobility, Inc.*,
773 F.3d 1266 (Fed. Cir. 2014) ............................................................................................ 8

*Mobile Equity Corp. v. Walmart Inc.*,
No. 221CV00126JRGRSP, 2022 WL 4112237 (E.D. Tex. Aug. 23, 2022) ........................... 8

*Molina v. CitiMortgage, Inc.*, |
No. SA-11-CV-1016-XR, 2012 WL 13028630 (W.D. Tex. Jan. 9, 2012) .............................. 12

*Nebco & Assocs. v. U. S.*,
23 Cl. Ct. 635 (Cl. Ct. 1991) ............................................................................................... 7

*Nebco & Assocs. v. United States*,
23 Cl. Ct. 635 (1991) .......................................................................................................... 10

*Procter & Gamble Co. v. Kimberly-Clark Corp.*,
684 F. Supp. 1403 (N.D. Tex. 1987) .................................................................................... 11

*Rude v. Westcott*,
130 U.S. 152, 162–63, 9 S. Ct. 463, 32 L. Ed. 888 (1889) .................................................. 11

*Runway Expansion, Inc. v. FAA*,
355 F.3d 678 (D.C. Cir. 2004) ............................................................................................. 9

*Sierra Club v. Nat'l Marine Fisheries Serv.*,
  797 F. Supp. 3d 440 (D. Md. 2024) .............................................................................. 9

*SiRF Tech. v. Int'l Trade Comm.*,
  601 F.3d 1319 (Fed.Cir.2010) ....................................................................................... 8

*Sky Techs. LLC v. SAP AG,*
  576 F.3d 1374 (Fed. Cir. 2009) ..................................................................................... 5

**Statutes**

35 U.S.C.A. § 261 ............................................................................................................... 6

████████████████████████████████

## TABLE OF EXHIBITS

Numbered exhibits refer to the exhibits to Samsung's Motion, while lettered exhibits refer to the exhibits to this Opposition.

| # | Description |
|---|---|
| A | December 10, 2025 Dep. of Jin Sam Kwak, Ph.D., CEO of Wilus |
| B | Patent Assignment Agreement (WILUS_0149628-641) |
| C | Patent Assignment Cover Sheet and attached Assignment of Patents dated June 20, 2024 (DELL_SAMSUNG_0000006-012) |
| D | February 12, 2026 Dep. of Sung-Joon Choi, Korean Law expert for Samsung |
| 9 | Patent Sharing Agreement between SK Telecom Co. and Wilus Inc. dated October 2, 2014 (SAMSUNG_WILUS_00192647-656 (Translation of WILUS_0021821-827)) |
| 10 | Amendment to Patent Sharing Agreement between SK Telecom Co., Ltd. and Wilus Inc. dated August 31, 2020 (SAMSUNG_WILUS_00192657-662 (Translation of WILUS_0025087-090)) |
| 11 | Second Amendment to Patent Sharing Agreement between SK Telecom Co., Ltd. and Wilus Inc. dated November 1, 2022 (SAMSUNG_WILUS_00192663-669 (Translation of WILUS_0025233-237)) |
| 12 | Assignment of Patents between SK Telecom Co., Ltd. and Wilus Institute of Standards and Technology, Inc. dated May 27, 2024, signed June 20, 2024 (WILUS_0025432-436) |
| 13 | Third Amended Agreement of the Patent Sharing Agreement between SK Telecom Co., Ltd. and Wilus Inc. dated November 7, 2025 (SAMSUNG_WILUS_00193809-816 (Translation of WILUS_014796-974)) |
| 17 | Recission of Third Amended Patent Sharing Agreement and Fourth Amended Patent Sharing Agreement between SK Telecom Co. Ltd. and Wilus Inc. dated January 6, 2026 (WILUS_0149623-627) |

## I.    Introduction

Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. ("Samsung")'s Motion to Dismiss should be denied.  Samsung's motion is based entirely on the claim that the assignment of the patents in suit by SK Telecom Co., Ltd. ("SKT") to Wilus Institute of Standards and Technology Inc. ("Wilus") was invalid, either for lack of consideration under Texas law, or under Korean law as a "sham" agreement whose sole (and impermissible) purpose was to create litigation rights.  U.S. Federal Law governs assignments of U.S. patents, and does not require consideration. Moreover, if Texas law does govern, Samsung cannot overcome the legal presumptions that registered assignments are valid, that written contracts have consideration, and that statements in contracts that there is consideration are true, because consideration is clearly recited in the assignment agreements, and there was in fact substantial consideration. SKT, which was previously a co-owner of the patents-in-suit, clearly benefitted from the assignment of full ownership to Wilus. That assignment shifted the financial and time-commitment burden for managing licensing and enforcement of the assigned patents to Wilus, and the several agreements between SKT and Wilus show that such a shift was valuable consideration to the parties. Moreover, ███████████████████████████ Samsung's only evidence to the contrary is testimony from Wilus' CEO Dr. Kwak that ████████████████████ ████████████████████████, but Dr. Kwak did not testify, as he was not asked, ██████ ████████████████████████████.

Korean law does not govern the Assignment, but if Korean law applied and had been properly disclosed, the doctrines upon which Samsung and its expert rely are not applicable where, as here, neither SKT nor Wilus contest the express intent of the Assignment, Wilus already had rights to pursue litigation on the assigned patents, and the purpose of the Assignment to organize

1

████████████████████████████████████████

the management of the portfolio at issue is valid under Korean law.

## II.    Background

Wilus is a research and development company specializing in the development of new technologies related to wireless communications and multimedia, including Wi-Fi and other wireless protocols.  Wilus researchers are the inventors of the patents at issue in this case, and the inventions arise from those researchers doing their jobs: solving technical problems that benefit consumers in various ways.  ████████████████████████████████████, and as a result in 2014 Wilus and SKT entered into ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ Under this agreement, the patents in suit in this case were assigned to both Wilus and SKT.

Over the years, Wilus and SKT have reorganized the management of this portfolio several times, ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████ In the 2020 Amendment to the PSA (the "First Amendment"), Wilus and SKT

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ Ex. 10 Art. 3(1).  Further, the ████████████████

████████████████████████████████████████████████

████████ *Id.* Art. 3(3).  In the 2022 Amendment (2nd) to the PSA ("Second Amendment"), ████████

2

██████████████████████████████

████████████████████████████████████████

███████████████████████████████ Ex. 11, § 3(4) (emphasis added).  Wilus also

████████████████████████████████████████

████████████████████████████████████████. Ex. 11,

§§ 3(2) and 3(5); Ex. A, December 10, 2025 Dep. of Jin Sam Kwak, CEO of Wilus ("Kwak Dep.")

at 32:5-14.

On June 20, 2024, months before the filing of the instant lawsuit, SKT assigned any rights

it had in 38 U.S. patents and patent applications of the Shared Patents to Wilus, in an agreement

that had two parts: the Patent Assignment Agreement (the "PAA") and the Assignment of Patents

(the "Assignment").  Both the PAA and the Assignment state that "████████████████████

█████████████████████████████████████,"

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████. Ex. B, PAA, in recitals and

§1; Ex. 12, Assignment, in recitals.  The PAA also states that ████████████████████

████████████████████████████████████████

████████████  ████████████████████████████████

██████████████████████████" (§ 4(a)).

The Assignment was recorded publicly with the USPTO the same day the it was executed.

Ex C.  At no time since the execution of the Patent License Agreement has ████████████

████████████████████ by the Patent License Agreement.

In November 2025, 16 months after the Assignment was executed, Wilus and SKT

executed a Third Amended Agreement of the PSA (the "Third Amendment"). The Third

3

Amendment ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 13, §§ 3(3) and (4). It also includes language from the Second Amendment ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* §§ 3(1) and 3(2). The Third Amendment states ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*, § 1(2). Further, Dr. Kwak testified that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Kwak Dep. 159:16-21*;* 160:10-14: 161:2-5.

Shortly thereafter, in January 2026, Wilus and SKT signed the Recission of Third Amened Patent Sharing Agreement and Fourth Amended Patent Sharing Agreement (the "Fourth Amendment"), in which they ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Ex. 17, s. 1.1  Wilus and SKT further stated in the Fourth Amendment that they signed the Third Amendment ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (Ex. 17 in recitals), ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (*id.*).  That is, the Fourth Amendment ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The Fourth Amendment ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

4

█████████████████████████

██████████████████████████████████████████████

███████████████████████████████████." *Id.* § 3.4 and 3.5

## III.    The Assignment Is Valid

### A.    U.S. Law Governs the Assignment, and Under the Governing U.S. Law, No Consideration Is Required For The Assignment to Be Effective

Samsung's motion is based entirely on the claim that the assignment of the patent in suit was invalid, and so the Second Amendment controlled at the time these cases were filed. Samsung argues that either Texas or Korean law controls the determination of whether the assignment is effective, but takes no position on which jurisdiction's law actually applies. Samsung argues that the assignment was invalid under Texas law because it lacked consideration, and under Korean law because it was a sham transaction and was the equivalent of a litigation trust prohibited under Korean law.

The question of whether a patent assignment is effective, as it affects standing, is governed by U.S. federal law. *Sky Techs. LLC v. SAP AG,* 576 F.3d 1374, 1379 (Fed. Cir. 2009) ("Usually, federal law is used to determine the validity and terms of an assignment"). For example, Federal Circuit law is applied to the "question whether contractual language regarding patent assignment rights constitutes a present assignment of patent rights or a promise to assign patent rights," even if the contractual language involves foreign law or a foreign national. *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841 (Fed. Cir. 2009), *aff'd,* 563 U.S. 776, 131 S. Ct. 2188, 180 L. Ed. 2d 1 (2011) (applying Federal Circuit rather than Hong Kong law); *See also Kaist IP US LLC v. Samsung Elecs. Co.*, No. 2:16-CV-01314-JRG, 2018 WL 10498168, at *4 (E.D. Tex. Sept. 6, 2018) (finding Federal law, not state or Korean law, applies to assignment question). Further, patent ownership through assignment is governed by Federal Statute:

5

Subject to the provisions of this title, patents shall have the attributes of personal property. The Patent and Trademark Office shall maintain a register of interests in patents and applications for patents and shall record any document related thereto upon request, and may require a fee therefor. Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing..

35 U.S.C.A. § 261.

Even if one were to look to Korean law, Professor Sang Jo Jong, Professor Emeritus of Seoul National University School of Law specializing in intellectual property law, has provided the Court with analysis of the choice of law determination under Korean law, and has concluded that even if analyzed under Korean law, U.S law, not Korean law, governs the Assignment.  The Korean Act on Private International Law ("APIL") governs the choice of law here.  APIL Article 40 provides that for intellectual property, the law of the country where infringement occurred applies, and the Korean courts have held that this principle extends to questions regarding the transfer of intellectual property, as "[a]pplying a fractured legal standard—wherein Korean law might govern the assignment while U.S. law governs the infringement—would create legal uncertainty and potentially frustrate the enforcement of the very rights the Court is asked to protect."  Feb. 16, 2026 Expert Opinion of Prof. Song Jo Jong ("Jong Op.") at 3-4, 6-7; Ex. Jong 7, APIL Art. 40; Ex. Jong 8, 2007Na80093 at 1. More generally, APIL requires identifying the law of the country with the "most significant relationship" with the contract, which Dr. Jong opines is the U.S. The factors supporting this conclusion are that:

- o Situs of Registration: All patents subject to the assignment are registered with the United States Patent and Trademark Office (USPTO).
- o Contractual Purpose: The fundamental objective of the assignment contract is the licensing and enforcement of patented inventions protected under U.S. law.
- o Performance and Administration: The essential acts of performance—specifically the registration of the assignment to ensure its effect against third parties—must occur within the United States.

o Territoriality: The rights being transferred are inherently territorial, existing only by virtue of U.S. sovereign grant.

Jong Op. at 4-6; APIL Art. 46. Samsung does not dispute these facts establishing the choice of U.S law. Mot. at 8 ("The Assignment was written in English, it was recorded with the USPTO, it concerns uniquely American intellectual property rights, and those rights are being adjudicated by this Court in Texas."). Samsung's Korean law expert, Sung-Joon Choi, assumes Korean law governs, but has conducted no analysis of the question. Ex. D, February 12, 2026 Dep. of Sung-Joon Choi ("Choi Dep.") at 14:10-15:16.

35 Section § 161 requires only a writing to effectuate assignment, and delivery of this writing is all that is required, even in the absence of consideration. *See, e.g.*, *Keller v. Bass Pro Shops, Inc.*, 15 F.3d 122, 124-125 (8th Cir. 1994) ("[A]n effective voluntary assignment of a patent need not be supported by consideration" and is effective "once the instrument is signed and delivered"); *Nebco & Assocs. v. U. S.*, 23 Cl. Ct. 635, 645 (Cl. Ct. 1991) ("An assignment of a chose in action is valid after delivery even though made without consideration."). This is true even if the Assignment expressly states that it was granted in exchange for consideration. In *Keller,* for example, the assignment recited that it was made for "good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged." 15 F.3d at 124 n. 4. The Eight Circuit determined that the assignment was nevertheless valid even there had been no consideration because "the instrument is in writing; is signed by the assignor []; was delivered to the assignee[]; and includes a recital that clearly shows the intent to make an immediate and complete transfer of [assignor's] patent rights," with no expression of an expectation of future performance by the assignee. *Id.* at 125.

The Assignment in this case was in writing, was delivered to Wilus (as demonstrated by Wilus' signature), was immediately effective and immediately registered with the USPTO, and

7

contained no expression of an expectation future performance.  The Assignment is therefore valid under Federal law.

### B.    Even If Texas Law Governs, the Assignment Is Valid

Even if the Assignment was governed by Texas law, the Assignment is still valid, because there was clearly consideration for the Assignment.  The recording of an assignment "creates a presumption of validity as to the assignment and places the burden to rebut such a showing on one challenging the assignment." *SiRF Tech. v. Int'l Trade Comm.*, 601 F.3d 1319, 1327–28 (Fed.Cir.2010).  *See also Mobile Equity Corp. v. Walmart Inc.*, No. 221CV00126JRGRSP, 2022 WL 4112237, at *2 (E.D. Tex. Aug. 23, 2022), *report and recommendation adopted*, No. 221CV00126JRGRSP, 2022 WL 4111857 (E.D. Tex. Sept. 8, 2022) ("Because the assignment and conversion documents were recorded, 'this creates a presumption of validity as to the assignment and places the burden to rebut such a showing'" on defendant).  Further,  "[u]nder Texas law, "the existence of a written contract presumes consideration for its execution. Therefore, the party alleging lack of consideration has the burden of proof to rebut this presumption." *Id.* Moreover, "[r]eciting the phrase "for 'good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged' ... presumptively imports consideration, and the burden was on [the party challenging consideration] to prove the absence of consideration by competent summary judgment evidence." *Id.  See also  Memorylink Corp. v. Motorola Sols., Inc., Motorola Mobility, Inc.*, 773 F.3d 1266, 1271-72 (Fed. Cir. 2014) ("We agree with Motorola that there is no genuine issue of material fact that consideration existed, because the Assignment explicitly acknowledges consideration for the sale, assignment, and transfer of rights relating to the wireless video technology. ").

Samsung must therefore overcome the presumption that a registered assignment is valid,

███████████████████████████████████

and that there was consideration for its execution. Samsung cannot meet this high bar. In *1464-Eight, Ltd. v. Joppich*, 154 S.W.3d 101, 108-110 (Tex. 2004), the Texas Supreme Court adopted section 87(1)(a) of the Restatement (Second) of Contracts, under which a contract must only "recite[] a purported consideration" to be valid, even if the consideration is nominal, such as $1, and even if the consideration is not in fact paid.  Both the PAA and Assignment recite that the assignment was ████████████████████████████████ ███████ ████████████████████████████████" (Ex. B in recitals; Ex. 12 in recitals), thus meeting the requirement of the Restatement and *1464-Eight*.

Moreover, the PAA states that ██████████████████████████ ████████████████████████████████████████████ ██ ████████████████████████████████████████ ████████████████████████████ ████ Either provision is also sufficient to establish consideration. The Patent Assignment Agreement was unintentionally not produced by Wilus's counsel previously in this case. The Court should nevertheless consider taking these provisions into account, as courts can consider late produced evidence in determining standing, given the importance of achieving a correct judgment on the issue, and particularly where, as here standing is so clearly apparent. *Cmtys. Against Runway Expansion, Inc. v. FAA*, 355 F.3d 678, 685 (D.C. Cir. 2004); *Sierra Club v. Nat'l Marine Fisheries Serv.*, 797 F. Supp. 3d 440, 481 (D. Md. 2024), *amended*, No. CV DLB-20-3060, 2024 WL 6817999 (D. Md. Oct. 21, 2024).  The potential prejudice to Samsung from this late production has been mitigated by offering Samsung additional time and/or pages for its reply, or to refile its motion, to address the PAA.

However, even if the Court disregards the PAA entirely, the timely-produced (and publically recorded) Assignment was, beyond its clear recitation of consideration, in fact

███████████████████████

accompanied by "good and valuable" consideration besides that recited by the Patent Assignment

Agreement. Consideration is sufficient if there is any benefit to the promisor or any detriment to

the promisee." *Nebco & Assocs. v. United States*, 23 Cl. Ct. 635, 645 (1991).  The effect of the

Assignment was ████████████████████████████████

████████████████████████████████████████.  The

evidence is clear that the parties considered ███████████████████ ████

████████████████████████████ The First Amendment ████

████████████████████████████████████████

████████████████████ ██. ████████ The Second Amendment

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████ While the Third Amendment was rescinded, it is relevant that it ████████

████████████████████████████████████████

████████ Ex. 13, § 3(4).  The Fourth Amendment ████████████████

████████████████████████████ Ex. 17, § 3.4 and 3.5.

Thus, Wilus and SKT clearly regard managing monetization of patents to be a burden,[1] and

taking on more of that burden to be worth ████████████████████████

████████ The Assignment ████████████████████████

████████████████████████ This is ████████████████

---

[1] For example, Wilus personnel have been deposed for at least 24 hours of on-the-record time in this litigation alone, as well as devoting time to mediations and actions in the USPTO.

█████████████████████████████████████████████████████████████

████████████████████████████████████████ .

The evidence that Samsung says shows there was no consideration in fact shows no such thing. Dr. Kwak, who is not a lawyer and did not draft the Assignment, made clear that he did not know what "consideration" as it was used in the Assignment means (Ex. A, 42:13-24), at which point Samsung's counsel referred to " ████████████████████████████████████ (42:25-43:1), and ██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Later in the deposition, Samsung counsel again asked ████████████████████████████████████

██████████████████ " and Dr. Kwak, relying on the definition he had been provided █

████████████████████████████████████████ 165:5-165:22. Dr. Kwak was not ever asked if SKT benefited from the Assignment, and if so how. His very presence at the 10 hour deposition from which this testimony was extracted is evidence of the consideration Wilus provided to SKT.

Samsung also claims that the fact that Wilus ██████████████████████████

██████████████████████████████████ (Mot. at 8), but "[c]ourts have repeatedly held that an assignor's reservation of certain financial interests or other rights did not make the assignment incomplete or ineffective." *Procter & Gamble Co. v. Kimberly-Clark Corp.*, 684 F. Supp. 1403, 1405 (N.D. Tex. 1987), citing, *inter alia, Rude v. Westcott*, 130 U.S. 152, 162–63, 9 S. Ct. 463, 467, 32 L. Ed. 888 (1889) ("that the net profits arising from sales royalties, or settlements, or other source, are to be divided between the parties to the assignment … does not, in any respect, modify or limit the absolute transfer of title. It is a provision by which the consideration for the transfer is to be paid to the grantor out of the net profits made."). This is true even where the revenues to the assignor are the same under a prior agreement as under the

11

assignment.  *Procter & Gamble,* 684 F. Supp. 1405.  ("The identity of this monetary consideration does not, however, make [the assignor's] assignment incomplete or ineffective.").

Moreover, even if the Court determines that Samsung has met its high burden to prove there was no consideration for the Assignment, Samsung's argument fails for two additional reasons.  First, Texas also follows the rule that assignments do not require consideration.  *El Paso Healthcare Sys., LTD v. Molina Healthcare of New Mexico, Inc.,* 683 F. Supp. 2d 454, 459–60 (W.D. Tex. 2010) ("contractual rights may be assigned gratuitously—such an assignment is not void for lack of consideration, and the assignee has standing to sue to enforce or protect those gratuitously obtained rights.").  The Assignment here was an assignment of, among other things, SKT's contractual rights as to the assigned patents under the PSA and First and Second Amendments. Second, Samsung is a stranger to that contract and has no standing to assert a lack of consideration.  *Molina v. CitiMortgage, Inc.*, No. SA-11-CV-1016-XR, 2012 WL 13028630, at *2 (W.D. Tex. Jan. 9, 2012) ("Plaintiffs lack standing to challenge the assignment because they are not parties to or beneficiaries of those assignments."); *Adams v. Bank of Am.*, No. 4:10-CV-709, 2011 WL 5080217, at *4 (E.D. Tex. Oct. 26, 2011), *aff'd,* 475 F. App'x 526 (5th Cir. 2012) ("Plaintiff has no standing to contest the various assignments as she was not a party to the assignments."); *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F. Supp. 2d 616, 623 (N.D. Tex. 2011) ("Plaintiffs do not have standing to challenge the assignments because they were not a party to those assignments.").  *See also  Brooks v. Land Drilling Co.*, 564 F. Supp. 1518, 1521 (D. Colo. 1983) ("Not being a party to the contract, plaintiffs have no standing to contest the adequacy of consideration.").

### C.    The Assignment Is Valid Under Korean Law, If Korean Law Applies

As discussed above in Section III.A., the Assignment is not governed by Korean law. But

even if Korean law did apply, the Court should give little if any weight to declaration of Mr. Choi, Samsung's Korean law expert, and the "excerpts" of the cases on which he relies. Mr. Choi's declaration and the excerpts were written in Korean and then translated by a lawyer in his office who, while admitted to the bar in America, has no special training or certification in translation. Choi Dep. at 9:11-11:23. While the rules of evidence do not apply to foreign law materials, the requirement under the Federal Rules of Evidence for some form of certification of competency and accuracy in translations indicate that the absence of such certification renders the document at issue unreliable. *Candela-Rios v. Lynch,* No. SA-16-MC-00220-JWP, 2017 WL 11046200, at *5-6 (W.D. Tex. Jan. 9, 2017). Moreover, because Samsung has provided translations of only snippets of the cases on which Mr. Choi relies, and Mr. Choi provides details of the facts of only two of those cases, the Court has no means of determining whether the snippets provided are the complete statement of the relevant law or how that law was applied to the facts of the cases. Moreover, Mr. Choi improperly goes beyond merely explaining Korean law and provides legal conclusions. *Kaist IP US LLC v. Samsung Elec. Co., Ltd.,* No. 2:16-CV-01314-JRG, Dkt. 349 at *2-3 (E.D. Tex., April 16, 2018).

Even if Samsung and Mr. Choi's arguments are considered, the first doctrine on which they rely, "false expression by intent of collusion," requires proving by clear and convincing evidence that "the parties never intended for the legal effects of the transaction to vest." Jong Op. at 7; January 30, 2026 Declaration of Sung-Joon Choi ("Choi Decl."), Exhibit B at 4, excerpt of 2004Da60065 (the court must "accept the existence and content of the declaration of intention as reflected in the language set forth in that document, absent clear and convincing evidence to the contrary."); Choi Dep. at 18:2-23 (clear and convincing standard applies even where dispute between the parties). Moreover, even if the parties to the contract have some other economic end-

13

goal than that expressed in the assignment, if their intent is to transfer the rights, the contract is not "false." Jong Op. at 7-8. Here, the parties' clear intent to assign the patents is expressly stated in the Assignment. Ex. 12 in recitals; Choi Dep. at 31:12-17. And that intent is never controverted by the parties. This distinguishes this case from all the false expression cases on which Mr. Choi relies, each of which involved a *party* to the agreement at issue claiming that the contract falsely expressed the parties' intention. Choi Dep. at 17:14-18, 20:6-21:1. *See also* Choi. Decl. Exhibit B at 3, excerpt of *Kim,* (Korean law looks to other evidence of the parties intent than that stated in the agreement "**particularly where *both* parties deny the legal effects of the expressed declaration**." (emphasis added)).

The present case is also distinguishable from the only false expression case Mr. Choi relies on in detail, 2024Na20743, as in that case not only was a party to the assignment claiming it was a sham, correspondence from the "negotiation" of the contract showed it was created with fraudulent intent, and most importantly the patent rights were not immediately delivered upon execution, but rather the assignee did not even demand performance of the transfer until a year later. Choi Decl. Exhibit B at 5-8; Choi Dep. at 21:5-20. The Assignment in this case was delivered and registered with the USPTO the day it was signed, and there is no correspondence from the time of its execution expressing a fraudulent intent. At most there is possibly contradictory language in the Third Amendment from 14 months later, and that contradiction was quickly recognized, explained and remedied by the Fourth Amendment. Samsung calls the Third Amendment evidence of the "course of conduct" of the parties to the Assignment, but in fact subsequent to the Assignment, SKT has never tried to exercise the rights it assigned to Wilus. Choi. Dep. at 33:3-34:19. Instead, SKT signed the Fourth Amendment, expressly confirming that its intent in the Assignment was to assign the patents.

14

Mr. Choi also points to Dr. Kwak's alleged admission that there was no consideration as evidence that the Assignment was a sham. As explained above, this is a misreading of Dr. Kwak's testimony.   But in any case, consideration is not required for contracts or assignments under Korean law. Jong Op. at 10.   Therefore, if the Assignment is governed by Korean law, an alleged lack of consideration is no evidence of the parties' intent one way or another.

As for Samsung and Mr. Choi's second argument, that the Assignment was analogous to an impermissible litigation trust, an assignment is an invalid litigation trust only where it is created to create litigation rights where none existed before. Jong Op. at 8-9.   Thus, all of the cases on which Mr. Choi relies involve the transfer of a property to an assignee who had *no* prior rights in that property, let alone the right to pursue legal action. Choi Dep. at 22:16-26:1, 27:15-21. Wilus, however, had the exclusive rights to enforce the Wilus Exclusive Patents prior to the Assignment, and other rights to assert the SKT Exclusive Patents against certain companies. Moreover, "trusts are valid if they are 'reasonably necessary' and do not contravene policy goal of the Trust Act and the Civil Procedure," for example for the purpose of managing intellectual property rights.   Jong Op. at 9.   Thus, as Prof. Jong states:

> The trajectory of the relationship between the parties—evolving from co-ownership in 2014 to exclusive licensing in 2020, and finally to full assignment in 2024—demonstrates a consistent, decade-long pursuit of licensing efficiency and profit maximization. This evolution represents just one of standard commercial strategies for the management of intellectual property portfolios. The assignment is a legitimate exercise of contractual freedom intended to facilitate management, not to circumvent procedural rules or secure "unfair profits" through litigation.

Jong Op. at 10.

## IV.    Conclusion

For the foregoing reasons, Samsung's motion should be denied.

Dated: February 24, 2026

Respectfully submitted,

*/s/ Marc A. Fenster*
Marc Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Dale Chang
CA State Bar No. 248657
Email: dchang@raklaw.com
Neil A. Rubin
CA State Bar No. 250761
Email: nrubin@raklaw.com
Jacob Buczko
CA State Bar No. 269408
Email: jbuczko@raklaw.com
Jonathan Ma
CA State Bar No. 312773
Email: jma@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474

Of Counsel:
Andrea L. Fair
State Bar No. 24078488
MILLER FAIR HENRY, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)
E-mail: andrea@millerfairhenry.com

**ATTORNEYS FOR PLAINTIFF,
Wilus Institute of Standards and
Technology Inc.**

16



## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2026, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Texas using the ECF System, and served defendants with a copy via electronic mail.

*/s/ Neil A. Rubin*