# Exhibit 30

████████████████████

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> *Plaintiff,* <br><br> v. <br><br> HP INC., <br><br> *Defendants.* | Civil Action No. 2:24-cv-0752-JRG-RSP <br><br> **LEAD CASE** <br><br> **JURY DEMANDED** |

## PLAINTIFF WILUS' AMENDED INITIAL AND ADDITIONAL DISCLOSURES TO SAMSUNG

Pursuant to the agreed Docket Control Order and Federal Rule of Civil Procedure 26(a)(1), Plaintiff, Wilus Institute of Standards and Technology, Inc., ("Wilus") provides the following Amended Initial Disclosures to Defendants Samsung Electronics Co. Ltd. ("SEC"), and Samsung Electronics America, Inc. ("SEA") (collectively, "Defendants").

The following disclosures are made based on Wilus' current knowledge, information, and belief based on a reasonable and good-faith inquiry. Wilus reserves the right to supplement or amend these disclosures at any time based upon its continuing investigation and discovery.

Further, by making these disclosures, Wilus does not (1) represent that it is identifying every document, tangible thing, or witness possibly relevant to this lawsuit, (2) concede the relevance or admissibility or any of the information provided, or (3) waive its right to object to the production of any document or tangible thing disclosed herein on the bases of any privilege, the work product doctrine, relevance, undue burden, or any other valid objection, or to seek protection under a suitable protective order, agreed to by the parties or issued by the Court under Rule 26(c) of the Federal Rules of Civil Procedure, for any information to be provided in discovery in this

case. Subject to the foregoing, Wilus provides the following disclosures:

<u>**AMENDED INITIAL DISCLOSURES**</u>

**I.    CORRECT NAMES OF THE PARTIES TO THE LAWSUIT**

"Wilus Institute of Standards and Technology Inc." is the correct name of Plaintiff. On information and belief, the correct name of the Defendant is HP, Inc., Askey Computer Corp., Askey International Corp., Samsung Electronics Co. Ltd., and Samsung Electronics America, Inc.

**II.    POTENTIAL PARTIES**

Wilus is currently unaware of any additional potential parties. Wilus reserves the right to join additional parties in light of discovery.

**III.    THE LEGAL THEORIES AND, IN GENERAL, THE FACTUAL BASES OF WILUS' CLAIMS AND DEFENSES**

The legal theories and, in general, the factual bases of Wilus's claims (without marshaling all evidence that may be offered at trial), are as follows: Wilus accuses Defendants of direct infringement and induced and contributory infringement of U.S. Patent Nos. 10,313,077 ("'077 Patent"), 10,687,281 ("'281 Patent"), 11,470,595 ("'595 Patent"), 10,651,992 ("'992 Patent"), 11,159,210 ("'210 Patent"), 11,129,163 ("'163 Patent"), 11,116,035 ("'035 Patent"), 11,516,879 ("'879 Patent"), 11,700,597 ("'597 Patent"), 10,305,638 ("'638 Patent"), 10,820,233 ("'233 Patent"), 10,931,396 ("'396 Patent"), and 11,664,926 ("'926 Patent") (collectively, the "Patents-in-Suit" or "Asserted Patents"). Wilus has provided its Infringement Contentions based on the information currently available to it and incorporates those contentions here by reference. Wilus further incorporates its disclosures, discovery responses, expert reports, and briefs and supporting documents that any party serves or files in this course of action. Wilus will provide further detail concerning its legal theories and, in general, the factual bases of the disclosing party's claims after discovery has been received from Defendants and/or in connection with the appropriate expert

witness disclosures.

Based on the information known to Wilus at this time, the litigation theories and factual basis of Wilus' defenses to Samsung's counterclaims include at least the following:

### 1. Lack of Subject Matter Jurisdiction

The Court lacks subject matter jurisdiction over at least counterclaims involving foreign patents.

### 2. Failure to State a Claim

Samsung's Answer fails to state counterclaims upon which relief can be granted.

### 3. Laches, Estoppel, Waiver, and Unclean Hands

Samsung's counterclaims against Wilus are barred, in whole, or in part, by laches, estoppel, waiver, acquiescence, and/or unclean hands. Samsung has not established that the Asserted Patents are essential, or that Wilus is subject to any FRAND encumbrances on the Asserted Patents. Samsung has further failed to establish that Wilus has breached any obligation that may be imposed by any FRAND encumbrances on the Asserted Patents. Samsung also failed to establish that the IEEE requires any specific disclosure at a certain time, and Samsung's claims that Wilus breached any obligation imposed under any IEEE bylaw is inconsistent with its previous conduct in disclosing its patents to the IEEE. Samsung has also failed to show, *inter alia*, any duty, breach, unfair benefit, causation, or any requirement for its equitable defenses. Samsung themselves have engaged in the same conduct it accuses Wilus, and to the extent Wilus or a predecessor's conduct may somehow give rise to equitable relief (and it does not), Samsung has unclean hands and should be barred any remedy, recovery, or defense.

### 4. Bad Faith

Wilus further asserts that Samsung's counterclaims are barred by Samsung's bad faith

3

actions during pre-suit licensing and FRAND-related negotiations. Samsung's pre-suit actions were improper, unreasonable, and inconsistent with its contractual obligations. Samsung refused to meaningfully engage in licensing discussions, failed to provide timely or complete responses to licensing proposals and otherwise declined to participate in constructive dialogue regarding the potential license of the Asserted Patents. Samsung delayed or avoided substantive discussions regarding a license and used the passage of time and procedural obstacles to unfairly and improperly gain licensing leverage and avoid licensing the Asserted Patents, while continuing to make use of the technology.

### 5. Notice, Damages, and Costs

Wilus denies that Samsung is entitled to any relief whatsoever. Samsung is not entitled to injunctive relief or any other equitable relief at least because any alleged injury to Samsung is not irreparable and because, had Samsung been injured, they would have an adequate remedy at law.

### 6. Reservation of Additional Defenses

Wilus reserves the right to assert additional defenses that may surface through discovery in this action.

## IV.    INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION

Based on the information currently available, each individual identified below is believed likely to have knowledge of relevant facts. Some of the individuals listed below may have information that consists of expert analysis or expert opinion. Identifying such persons below at this time shall not constitute a waiver of the right to call on and/or rely on such individuals as experts nor does their disclosure below constitute an agreement to commence expert discovery at this time. Wilus further reserves the right to identify or call additional or different individuals as

witnesses if, during the course of discovery and investigation relating to this case, Wilus learns that such additional or different individuals have relevant knowledge.

| Name and Contact Information | Summary of Information |
|---|---|
| Jin (Sam) Kwak* | Knowledge of Wilus, including Wilus's claims and Defendants' defenses and any counterclaims, Wilus corporate structure, operations, and past business. Ownership of the patents-in-suit. Licensing and other transactions involving the patents-in-suit. Financial information related to and marketing for any relevant products and technology. Design and development of any relevant products and technology. Co-inventor of the '077, '281, '595, '210, '992, '163, '597, '035, '879, '638, '233, '396, '926 patents. Conception, reduction to practice, design, and development of the '077, '281, '595, '210, '992, '163, '597, '035, '879, '638, '233, '396, '926 patents. |
| Ju (John) Hyung Son* | Co-inventor of the '077, '281, '595, '210, '992, '163, '597, '035, '879, '638, '233, '396, '926 patents. Conception, reduction to practice, design, and development of the '077, '281, '595, '210, '992, '163, '597, '035, '879, '638, '233, '396, '926 patents. |
| Geon (Greg) Jung Ko* | Co-inventor of the '077, '281, '595, '210, '992, '163, '597, '035, '879, '233, '396, '926 patents. Conception, reduction to practice, design, and development of the '077, '281, '595, '210, '992, '163, '597, '035, '879, '233, '396, '926 patents. |
| Woo (Aaron) Jin Ahn* | Co-inventor of the '281, '595, '210, '163, '597, '035, '879, '638, '396, '926 patents. Conception, reduction to practice, design, and development of the '281, '595, '210, '163, '597, '035, '879, '638, '396, '926 patents. |
| Yong (Ronny) Ho Kim* | Co-inventor of the '638 patent. Conception, reduction to practice, design, and development of the '638 patent. |
| Sisvel International S.A.* | Knowledgeable about the license and negotiation activities with respect to the patents-in-suit. |

| | |
|---|---|
| Defendant's employees knowledgeable about the history, design, and development of Defendant's products and the significance of the use by Defendant's products which enable the technologies of the Asserted Patents. | The history, design, and development of Defendant's products and the significance of the technologies of the Asserted Patents. |
| Defendant's employees knowledgeable about the use and value of the technologies of the Asserted Patents, and the role that they play in driving demand for Defendant's products. | The value of the technologies of the Asserted Patents and the role that they play in driving demand for Defendant's products. |
| Defendants' employees, with knowledge about the factors that affect demand for Defendants' products, such as the technologies of the Asserted Patents, and the role that those factors play in the sale and marketing of Defendants' products. | Factors that affect demand for Defendants' products and the role that those factors play in the sale and marketing of Defendants' products; the competitive market for the technologies of the Asserted Patents. |
| Defendants' employees knowledgeable about Defendants' marketing for Defendants' technologies relating to the Asserted Patents, including information on advertising strategy and expenditures, sales figures, other publicity for these products, internal market research, and the marketing, advertising, and retail channels for both Defendants' and competitors' products. | Defendants' marketing for Defendants' technologies relating to the Asserted Patent, including information on advertising strategy and expenditures, sales figures, other publicity for these products, internal market research, and the marketing, advertising, and retail channels for both Defendants' and competitors' products. |
| Defendant's employees knowledgeable about the United States manufacture and sales of Defendant's products. | The United States manufacture and sales of Defendant's products, including information about revenue and units sold. |
| Defendants' third-party supplier(s), and employees of such suppliers, including those with knowledge about the history, design, and development of Defendants' products and the significance of the technologies of the Asserted Patents in Defendants' products. | The history, design, and development of Defendants' products, including the significance of the technologies of the Asserted Patents in Defendants' products. |
| Defendants' employees knowledgeable about Defendants' pre-suit license negotiations with Sisvel for the Asserted Patents, and Defendants' employees knowledgeable about Defendants' license history, license negotiations, and patent license policies and practices. | Defendants' patent and technology license policies, practices, patent license history, prior patent license negotiations. |

6

| | |
|---|---|
| Defendants' employees who participated in the IEEE Tgax meetings, Defendants' employees knowledgeable about Samsung's participation and contribution to or at the IEEE 802.11ax working groups and IEEE Standards meetings. | Defendants' disclosure of relevant Wi-Fi 6 patents and patent applications to the IEEE, Defendants' participation and contribution to the IEEE 802.11ax Standards and participation in the working group meetings related to the Wi-Fi 6 IEEE Standards. |

Additionally, Wilus incorporates by reference all individuals who may be identified during discovery in this matter, including in Defendant's Initial Disclosures, the parties' responses to interrogatories, and documents produced by the parties and third parties.

No current Wilus employee or consultant may be contacted without the prior consent of Wilus counsel. People and entities listed above with asterisks (*) by their name may be contacted only through Wilus' counsel.

## V.     INSURANCE AGREEMENTS

Wilus is not presently aware of any indemnity and insuring agreements under which any person or entity carrying on an insurance business may be liable to satisfy part or all of a judgment entered in this action or to indemnify or reimburse for payments made to satisfy the judgment.

## VI.    SETTLEMENT AGREEMENTS

There is a settlement agreement between Wilus and HP related to this matter.

## VII.   STATEMENT OF ANY PARTY

Wilus's complaint in this matter provides statements concerning this litigation and is incorporated herein to the extent applicable. To the extent Defendants file answers, they may include statements relevant herein. Wilus is continuing its investigation and will amend these Initial Disclosures when more information is available to the extent needed.

## ADDITIONAL DISCLOSURES

## I.     PATENT RULE 3-1 AND PATENT RULE 3-3

Wilus has already complied with the disclosure obligations of P.R. 3-1 and P.R. 3-3 as to the Asserted Patents for Defendant. Wilus incorporates by reference the Preliminary Disclosure of Asserted Claims and Infringement Contentions that it served on Defendant herein.

## II.    DOCUMENTS AND THINGS

Wilus has produced or will produce documents, electronically stored information, and tangible things in its possession, custody, or control that are relevant to the pleaded claims or defenses involved in this action, except to the extent these disclosures are affected by the time limits set forth in the Patent Rules for the Eastern District of Texas.

Wilus' investigation is ongoing, and it reserves the right to identify additional documents and to object to the production of any documents described herein on any basis permitted under the Federal Rules of Civil Procedure and any other applicable law or privilege. Wilus further reserves the right to seek protection under a suitable protective order, agreed to by the parties or issued by the Court under Rule 26(c), for any information to be provided by it in discovery in this case.

## III.    STATEMENT OF THE BASIS FOR ANY DAMAGES CLAIMED

Wilus seeks damages in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, to be enhanced to the extent that Defendant's infringement is found to be willful, together with attorneys' fees, costs, and interest as fixed by the Court. Wilus intends to rely on a damages expert and will therefore provide further computation of damages in connection with appropriate expert witness disclosure.

Based on the evidence of which Wilus is currently aware, Wilus is seeking monetary damages at least in the form of a reasonable royalty. In the absence of expert opinion (which is

premature at this time), Wilus has not determined which methodology or methodologies (including the hypothetical negotiation method described in *Georgia Pacific v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), the analytic method, the income method, the market method, etc., or some combination thereof) should be used in determining a reasonable royalty in this case.

While Defendants have yet to prove that Wilus' patents are essential, Wilus understands that the Asserted Patents may be essential to the IEEE 802.11ax (Wi-Fi 6) standard and therefore possibly subject to FRAND licensing obligations. Wilus further believes that its licensing agent, Sisvel's, Wi-Fi 6 Licensing Program, which includes the Asserted Patents, complies with all FRAND obligations. The terms and licensing rates for license of the Wilus Wi-Fi 6 patent portfolio, which the Asserted Patents are a part of, can be found on Sisvel's website at https://www.sisvel.com/licensing-programmes/Wi-Fi/wilus-portfolio/.

Wilus expects it will seek a separate reasonable royalty for each of the Asserted Patents in these cases. The precise theory and evidence that supports Wilus's claim for damages may differ between each patent-in-suit and for each Defendant.

For each patent-in-suit, Wilus expects to consider evidence pertaining to the fifteen *Georgia Pacific* factors. As a non-limiting example, Wilus expects to consider evidence of the benefits each patent-in-suit provides to Defendants and their end-users, including through the use of consumer surveys and other similar evidence produced in this case. Wilus and/or its experts may consider and seek to quantify the incremental benefits of each patent-in-suit in order to construct an analytical and/or cost-savings model, and/or to inform a *Georgia Pacific* hypothetical negotiation for royalties. As part of this effort, Wilus expects it may consider available potential non-infringing alternatives to the patents-in-suit as well as studies, surveys or analyses of consumer benefit and demand.

To the extent Wilus utilizes a model applying a royalty rate to a royalty base, Wilus expects to select a royalty base in accordance with the footprint of the invention in the marketplace. For example, to the extent the patents-in-suit provide benefits to Defendants via the provision and sale of wireless services to end users, Wilus expects a royalty may include or be derived from revenue and/or profits from the use of and benefit(s) from the accused instrumentalities. To the extent Defendant sells infringing products, such as handset, computer and/or tablet products, Wilus expects a royalty base may include revenue and/or units of infringing products. Wilus may identify the smallest salable patent practicing unit that infringes each patent-in-suit and this identification may be related to the royalty base. Wilus may further apportion this royalty base to account for unpatented features, such as features not related to infringing wireless networking technology. Wilus's damages contentions on these matters may be supplemented, modified, or altered upon the production of additional discovery not yet received from Defendants.

At this time, Wilus expects a royalty rate may be determined from licensing evidence, including licenses entered for the Asserted Patents through its licensing agent, Sisvel, industry licensing, and Defendants licenses, In determining such a royalty rate from a license, Wilus and/or its experts will perform a comparability analysis that would consider the technology area and benefits and importance of the Asserted Patents in comparison to the licensed patents. If a license settled litigation or dispute, Wilus and/or its experts will consider such evidence in determining a royalty rate. A royalty rate may also be determined by the incremental benefits and/or cost savings to Defendants and their customers. To the extent an asserted patent may be covered by a FRAND licensing obligation, Wilus may consider such evidence and practices as well as any applicable IEEE bylaws.

Wilus expects the date and parties to the hypothetical negotiation in this case will be

determined by the date of each Defendants' first infringement, which is the subject of discovery not yet received from Defendants. Wilus will seek damages for the full extent of the damages period, from the date of first infringement (and no later than the date of first notice of the Asserted Patents or the filing of the Complaint, whichever is earlier) through patent expiration. Defendants first began to infringe with the first manufacture, use, sale, or offering for sale of the accused products, and Defendants' infringement is ongoing. The conclusion of the damages period would be the date of the Asserted Patents' expiration. If Wilus seeks a running royalty, it will seek damages through expiration of each patent-in-suit via an ongoing royalty. This ongoing royalty may be additionally enhanced due to knowledge of infringement and changed position of the parties. The evidence, including testimony by fact and expert witnesses, will be relevant to the determination of a fair royalty structure (e.g., lump sum, running royalty, etc.) to account for royalties for the entire damages period through patent expiration.

Any contentions regarding a reasonable royalty at this stage of the litigation must necessarily be preliminary, both because the valuation of patent damages is an issue subject to expert analysis, and because conclusions regarding a reasonable royalty requires consideration of all, or at least a substantial portion, of the relevant evidence, and Wilus does not yet have access to all relevant evidence. The importance of expert analysis to the determination of a reasonable royalty is expressed, for example, in the fact that "[t]he opinion testimony of qualified experts" is expressly included in *Georgia Pacific* as Factor 14. 318 F. Supp. at 1120. An expert opinion on damages would be premature at this point because Defendants have to date produced very limited discovery of the evidence necessary to form such an opinion. As an example, Wilus has not yet conducted any depositions of witnesses with information relevant to the determination of damages, such as the deposition of Defendants' employees has not yet taken place. Wilus will also need to

11

depose an individual knowledgeable about any sales documents or spreadsheets Defendants produce in this case, and any future sales data that Defendants produce, in order to ascertain the completeness of the documents and ensure that Wilus understands the information contained within them. Wilus also expects discovery from nonparties, including technical discovery regarding the operation and benefits of accused functionality, may be relevant to computing damages.

At this time, it is too early to determine whether Wilus will seek damages as to convoyed or collateral sales. Wilus requires additional discovery from Defendants in order to provide a complete response as to a precise computation of damages on convoyed and collateral sales in this case. The determination of the relevance of convoyed or collateral sales will depend on evidence produced by Defendants indicating the extent of additional features and services provided to customers together with the Accused Products and Accused Functionalities. For example, evidence may show that Defendants' customers purchase add-on features and/or services that possess a functional relationship to the Accused Products' cellular functionalities. Wilus expects that the testimony of Defendants' fact or expert witnesses, and evidence relating to customer billing and purchasing activity, may establish the extent of convoyed or collateral sales, such as professional services, maintenance services, support services, monthly leasing or subscription fees, add-ons, or other forms of convoyed, derivative, or collateral sales. In general, convoyed and collateral sales may be relevant in a number of ways to a determination of a reasonable royalty, including by leading to a determination that a royalty rate needs to be higher to represent a reasonable royalty that accounts for the value of the convoyed and collateral sales, for example. Fact and expert testimony will be relevant to the weight and relevance to be accorded to each convoyed or collateral sale. Publicly available information indicates that Defendants sell and/or offer for sale

12

"related products and accessories" including both software product add-ons and hardware product add-ons; however, the extent of such products, services, and sales, as well as the timing and nature of such products, services, and sales, is incomplete without additional discovery of information in the possession of Defendants, and it remains premature to provide a complete accounting of same.

The importance of considering the relevant evidence as a whole in determining a reasonable royalty is reflected in the comprehensive nature of the *Georgia Pacific* Factors, which require a hypothetical negotiation in which the parties are privy to all relevant information extant at the time of the negotiation, and much information occurring thereafter. Moreover, the absence of evidence may be key to a damages analysis, and it is difficult to establish absence before the end of fact discovery. *See, e.g., ResQNet.com Inc. v. Lansa, Inc.*, 594 F.3d 860, 870-72 (Fed. Cir. 2010) (evaluating reasonableness of reliance on settlement agreement based on the absence of better evidence of a reasonable rate). Precise, final damages calculations will be subject to expert testimony and must await the complete disclosure and review of documents and other discovery from Defendants. Wilus further identifies the licenses for the Asserted Patents as evidence that the Asserted Patents have been licensed on FRAND basis and industry acceptance of those rates. The rates identified in the licenses produced in this case were based on the facts known to Wilus and Sisvel at the time. To the degree there is additional evidence of benefit to the Asserted Patents, a reasonable royalty may exceed those rates. Accordingly, Wilus will fully and completely disclose its sought damages in accordance with the Docket Control Order and expert discovery deadlines in this case.

Dated: November 12, 2025                          Respectfully submitted,

                                                  By: */s/ Mackenzie Paladino*

13

Reza Mirzaie (CA SBN 246953)
rmirzaie@raklaw.com
Marc A. Fenster (CA SBN 181067)
mfenster@raklaw.com
Neil A. Rubin (CA SBN 250761)
nrubin@raklaw.com
James A. Milkey (CA SBN 281283)
jmilkey@raklaw.com
Amy E. Hayden (CA SBN 287026)
ahayden@raklaw.com
Jacob Buczko (CA SBN 269408)
jbuczko@raklaw.com
James Tsuei (CA SBN 285530)
jtsuei@raklaw.com
Jonathan Ma (CA SBN 312773)
jma@raklaw.com
Mackenzie Paladino (NY SBN 6039366)
mpaladino@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Telephone: (310) 826-7474

Qi (Peter) Tong (TX SBN 24119042)
**RUSS AUGUST & KABAT**
4925 Greenville Ave., Suite 200
Dallas, TX 75206
Telephone: (310) 826-7474

*Attorneys for Plaintiff Wilus Institute of Standards and Technology Inc.*

14

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on November 12, 2025, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via electronic mail.

/s/ *Mackenzie Paladino*
Mackenzie Paladino