IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> HP INC. <br><br> Defendant. | Civil Case No. 2:24-cv-00752-JRG [Lead Case] <br><br> JURY TRIAL DEMANDED |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. <br> Defendants. | Civil Case No. 2:24-cv-00746-JRG [Member Case] <br><br> JURY TRIAL DEMANDED |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. <br> Defendants. | Civil Case No. 2:24-cv-00765-JRG [Member Case] <br><br> JURY TRIAL DEMANDED |

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> ASKEY COMPUTER CORP., ASKEY INTERNATIONAL CORP. <br><br> Defendants. | Civil Case No. 2:24-cv-00766-JRG [Member Case] <br><br> JURY TRIAL DEMANDED |
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., <br><br> Plaintiff, <br><br> v. <br><br> ASKEY COMPUTER CORP., ASKEY INTERNATIONAL CORP. <br><br> Defendants. | Civil Case No. 2:24-cv-00753-JRG-RSP [Member Case] <br><br> JURY TRIAL DEMANDED |

**SAMSUNG'S SUR-REPLY TO WILUS'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE SUSPENSION OF RAND OBLIGATION (DKT. 263)**

████████████████████████

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................. ii

TABLE OF EXHIBITS ................................................................................................................... iii

TABLE OF ABBREVIATIONS ...................................................................................................... iii

I.     WILUS'S REPLY STILL SEEKS ADVISORY RULINGS ON
       HYPOTHETICAL JURY FINDINGS ................................................................................ 1

II.    WILUS'S THIRD-PARTY BENEFICIARY THEORY FAILS ....................................... 2

III.   *G+* AND *PANTECH* DO NOT SUPPORT WILUS'S POSITION ................................. 4

IV.    THE IEEE BYLAWS DO NOT SUPPORT WILUS'S POSITION .................................. 5

██████████████

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bayer Healthcare LLC v. Baxalta Inc.*,
  989 F.3d 964 (Fed. Cir. 2021)................................................................................2

*Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*,
  809 F.3d 1295 (Fed. Cir. 2015)..............................................................................2

*G+ Commc'ns, LLC v. Samsung Elecs. Co., Ltd.*,
  No. 2:22-cv-00078, 2024 WL 1604642 (E.D. Tex. Apr. 12, 2024) .........................................4

*G+ Commc'ns, LLC v. Samsung Elecs. Co., Ltd.*,
  No. 2:22-cv-00078, 2024 WL 233222 (E.D. Tex. Jan. 22, 2024) ...........................................4

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
  579 U.S. 93 (2016)................................................................................................2

*Janvey v. Alguire*,
  847 F.3d 231 (5th Cir. 2017) ...................................................................................3

*Microsoft Corp. v. Motorola, Inc.*,
  No. C10-1823JLR, Dkt. 335 (W.D. Wash. Feb. 6, 2012)..................................................3

*Pantech Corp. v. OnePlus Tech. (Shenzhen) Co., Ltd.*,
  No. 5:22-cv-00069, ECF No. 211 (E.D. Tex. Mar. 1, 2024) ......................................1, 2, 4, 5

*Rosetta Res. Operating, LP v. Martin*,
  645 S. W. 3d 212 (Tex. 2022)..................................................................................3

*Texas v. Google LLC*,
  787 F. Supp. 3d 357 (E.D. Tex. 2025).......................................................................2

*Valentine v. Whitetail Capital, LLC*,
  No. 3:23-cv-00575, 2025 WL 1083246.......................................................................5

**Statutes**

35 U.S.C. § 284................................................................................................2

███████████████████████████████████

## TABLE OF EXHIBITS

| # | Description |
|---|-------------|
| 1-16 | Exhibits to Opposition (Dkt. 337) |
| 17 | https://www.ericsson.com/en/press-releases/2022/12/ericsson-and-apple-sign-global-patent-license-agreement |

## TABLE OF ABBREVIATIONS

| Abbreviation | Description |
|--------------|-------------|
| UMF | Undisputed Material Facts |

Wilus's reply confirms that its motion should be denied.  It fails to refute Samsung's threshold objections, including lack of ripeness and controlling precedent.  Instead, Wilus doubles down on a theory that would radically rewrite RAND law: that an implementer's alleged past bad faith permanently extinguishes a patent holder's RAND obligations and lifts RAND as a cap on remedies. That theory is squarely foreclosed by this Court's precedent and rests on mischaracterizations of the IEEE Bylaws, *G+ Communications* and *Pantech*, and basic contract law.  There is no basis to conclude that Wilus's obligation to license on FRAND terms may be "suspended" like its duty to negotiate, much less permanently extinguished by freezing alleged implementer bad faith at the filing of a lawsuit.

## I.    WILUS'S REPLY STILL SEEKS ADVISORY RULINGS ON HYPOTHETICAL JURY FINDINGS

Wilus does not dispute that its requested relief turns entirely on hypothetical jury findings about Wilus's and Samsung's negotiation conduct—findings that have not been made and are hotly disputed.  Dkt. 370 at 1; Dkt. 337 at 2-5 (Responses to UMF Nos. 8, 10, 20, 22-23, 29, 32).  Courts are not able to provide advisory opinions, but Wilus's motion asks this Court to do exactly that by "seek[ing] a legal determination" of what the law *would be* if a jury later finds that Wilus did not breach its RAND obligations and that Samsung acted in bad faith before and/or after these cases were filed.

Wilus never pled, requested declaratory judgment, or raised in its contentions or interrogatory responses in this case, that Samsung's conduct amounted to "bad faith," that a "fail[ure] to negotiate … in good faith" would result in Wilus's RAND obligations being "suspended," or that post-suit conduct cannot "abrogate pre-suit failure[s]."  Dkt. 263 at 1.  These arguments should, therefore, be deemed waived.  Dkt. 337 at 6 n.2.  Nevertheless, nothing about Samsung's defenses requires the Court to decide these issues now, if at all.  *See* Dkt. 337 at 6-7.  As Samsung explained—and Wilus concedes— ██████████████████████████████████████████████████████████ ████████████████████████████████████████.  *See id.*  While Wilus contends that these legal issues must be resolved before trial because "Dr. Perryman's opinions … assume that the RAND obligation is not suspended," it also asserts that its patents are SEPs and "*Ericsson* explicitly holds that the adjustments to the *Georgia-Pacific* factors apply equally to RAND-encumbered patents and SEPs."

1

Dkt. 370 at 2; *Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1304 (Fed. Cir. 2015).  Thus, neither Dr. Perryman's opinions nor Mr. Dell's depend on the court deciding if Wilus's RAND obligation is "suspended."  *See* Dkt. 317 at 7-8.  Wilus also does not appear to argue that an injunction is only available if RAND is suspended.  *See* Dkt. 228 at 1-2, 12; Dkt. 306 at 2-4.  And the Court need not resolve these questions for the jury to consider Samsung's breach defenses and counterclaims, as the law surrounding those issues was already resolved by *G+* and *Pantech*.  *See* Dkt. 337 at 7-9.  Wilus's other identified issues—"willfulness, enhanced damages, and injunction"—either do not depend on RAND determinations or are issues for the Court.  Dkt. 370 at 2.[1]  Thus, Wilus fails to identify any unresolved issue for which this Court's ruling before trial is necessary to "govern jury instructions."  Dkt. 370 at 1.  Consistent with its practice, the Court can reserve ruling on these issues until after trial, if it becomes necessary at all.  *See* Dkt. 337 at 6-7; (citing *Force MOS Tech., Co., Ltd. v. ASUSTeK Comp., Inc.*, No. 2:22-cv-00460, Dkt. No. 315 at 82:17-22 (E.D. Tex. Dec. 1, 2024)).

Wilus is also incorrect that its requested relief is similar to the contract interpretation under French law in *G+*.  Dkt. 370 at 1-2.  Of all the theories that Wilus presents—including based on "established RAND principles," "the communications between Wilus/Sisvel and Samsung,"[2] and the "IEEE Bylaws"—only the last is even arguably a matter of contract interpretation.  But as set forth in Section IV below, Wilus's arguments are incorrectly based on what the IEEE Bylaws *do not say*, not what they do.  *Id.* at 5.  Wilus is clear that it is not seeking contract interpretation, but instead a ruling on the "legal effect" of hypothetical jury findings.  Dkt. 263 at 2.

## II.    WILUS'S THIRD-PARTY BENEFICIARY THEORY FAILS

Wilus cites no authority holding that Samsung's conduct permits Wilus to disclaim its irrevocable RAND commitment to a standards organization.  Dkt. 370 at 2-4.  *G+* and other cases

---

[1] Willfulness requires knowledge of the patent and specific intent to infringe.  *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987 (Fed. Cir. 2021).  35 U.S.C. § 284 commits "whether enhanced damages are appropriate to the district court's discretion."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 95 (2016).  Injunctions are the "prototypical equitable remedy" to be decided by the Court.  *Texas v. Google LLC*, 787 F. Supp. 3d 357, 406 (E.D. Tex. 2025).

[2] Wilus does not address Samsung's arguments that the communications between the parties could not create an enforceable contract to negotiate in good faith.  *See* Dkt. 337 at 13-14.

2

are clear that a SEP holder has obligations both to negotiate in good faith and to grant a license on RAND terms. *See* Dkt. 337 at 11-12. That the SEP holder's obligation to negotiate may be held in abeyance until the implementer "reciproc[ates]"—a holding Samsung does not contest—does not mean there is, as a matter of contract, a "reciprocal duty of good faith imposed [on Samsung] by the RAND contract" between Wilus and the IEEE. Dkt. 370 at 2. Indeed, courts have expressly held the opposite to be true. *See Microsoft Corp. v. Motorola, Inc.*, No. C10-1823JLR, Dkt. 335, at 18 (W.D. Wash. Feb. 6, 2012).

> Likewise, a finding that negotiating in good faith is condition precedent to Motorola's RAND obligations to the implementer would run contrary to the purpose of Motorola's commitments to the IEEE and the ITU. Although Motorola correctly asserts that the IEEE and ITU Policies contemplate that RAND licenses will be negotiated between the patent holder and the implementer of the standard, it does not follow that negotiating in good faith is a condition precedent to Motorola's promise to grant licenses on RAND terms.

The same logic applies both to Wilus's claim that its obligation to offer licenses on RAND terms is "suspended," and its contention that, once suit is filed, an implementer's conduct is frozen and cannot remedy bad faith. Both of these holdings run counter to the purpose and intent of the IEEE Bylaws, which is to produce RAND licenses between SEP holders and implementers. *See Rosetta Res. Operating, LP v. Martin*, 645 S. W. 3d 212, 219 (Tex. 2022) (contract interpretation should not produce an absurd result). It is therefore not only factually inaccurate to assert that Samsung's "alleged bad faith conduct prevented Wilus from complying with its RAND commitment," given Samsung's continuous good-faith negotiations[3] and Wilus's ability to offer RAND licensing terms in any event, but also legally improper. Dkt. 370 at 3. Wilus did not create new contract obligations incumbent on Samsung by filing its LOAs with the IEEE, and neither *Janvey* nor any other case cited by Wilus suggests otherwise.[4] *Microsoft*, No. C10-1823JLR, Dkt. 335, at 17 ("it was not the intent of the contracting parties (Motorola and the IEEE/ITU) to require that implementer of a standard first apply for a license and then

---

[3] Wilus's reply suggests that Samsung argued that "negotiating in good faith is 'optional'," but Samsung does not advance that argument. Dkt. 370 at 2.

[4] *Janvey* also held that the third-party beneficiary doctrine is an "equitable doctrine[]" and so would go to the Court, not the jury. *Janvey v. Alguire*, 847 F.3d 231, 242 (5th Cir. 2017).

negotiate for a license in good faith before Motorola's RAND obligations are triggered."). Samsung cannot breach Wilus's contract, of which it is not a party to, in order to excuse Wilus's own non-performance, and Wilus provides no explanation as to why the prevention doctrine should apply to some sophisticated parties but not others. *See* Dkt. 370 at 3-4.

## III.    *G+* AND *PANTECH* DO NOT SUPPORT WILUS'S POSITION

*G+* and *Pantech* do not support Wilus's contention that "RAND obligations are suspended as to a counterparty that has prevented performance through bad faith or unreasonable delay, and that post-suit conduct, alone, cannot reverse that suspension." Dkt. 370 at 4. In *G+*, the Court recognized that once the counterparty is prepared to negotiate in good faith, "the barrier to consummation of the license on FRAND terms is removed and the negotiations can and must resume (in good faith)." *G+ Commc'ns, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-cv-00078, 2024 WL 233222, at *6 (E.D. Tex. Jan. 22, 2024). Wilus attempts to draw a parallel to willfulness through its reliance on *WBIP*, but that analogy fails. Dkt. 370 at 4. Copying, once done, cannot be undone; bad-faith negotiation, by contrast, can cease at any time. Indeed, *WBIP* is contrary to *G+*'s holding that says as much.

*G+* also stands for the logical conclusion that a potential licensee's conduct does not obviate the "irrevocable" obligation to be willing to license on reasonable and non-discriminatory terms. *G+ Commc'ns, LLC*, 2024 WL 233222, at *6-7. *G+* does not support Wilus's assertion that all RAND obligations are suspended, and the Court's failure to use the phrase "procedural obligations" does not imply otherwise. Dkt. 370 at 4. Rather, the Court found that the obligation to negotiate can be temporarily suspended if faced with a counterparty acting in bad faith but did not suspend RAND obligations altogether. *G+ Commc'ns, LLC*, 2024 WL 233222, at *6-7. Moreover, *G+* does not distinguish between pre-suit and post-suit conduct with respect to curing prior bad faith. Parties have entered into licenses up to and during trial, such as in *Ericsson v. Apple*. Ex. 17.[5] Indeed, Wilus's position, *i.e.*, locking in the suspension of RAND obligations the moment a party files the complaint,

---

[5] To the extent Wilus argues that filing suit transformed the parties' "negotiat[ions]" into "settlement communications" subject to Rule 408, this Court has held otherwise. Dkt. 370 at 5; *G+ Commc'ns, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-cv-00078, 2024 WL 1604642, at *2 (E.D. Tex. Apr. 12, 2024).

4

would result in a framework that encourages gamesmanship and pushes parties to litigate prematurely.

*Pantech* involved a plaintiff who, like Wilus, argued that *G+* held that "FRAND obligations 'no longer act as a cap' while [the counterparty] was acting in bad faith." Order on Motions in Limine at 9-10, *Pantech Corp. v. OnePlus Tech. (Shenzhen) Co., Ltd.*, No. 5:22-cv-00069, ECF No. 211 (E.D. Tex. Mar. 1, 2024). This Court found that was "a stretch of the [*G+*] ruling" and clarified that "the allowed cessation in negotiations 'does not remove the burden of the FRAND obligation from the patent.'" *Id.* Although the Court required PanTech to seek permission before raising the argument at trial, that procedural ruling does not alter the Court's substantive interpretation of *G+*. *See* Dkt. 370 at 5.

## IV.    THE IEEE BYLAWS DO NOT SUPPORT WILUS'S POSITION

The operative pre-2015 Bylaws make no mention of "negotiat[ing] in good faith" or "reciprocal obligations." Dkt. 370 at 5. To the extent Wilus relies on terms from the 2015 and later IEEE Bylaws to support its position, Wilus admits that the "IEEE bylaws provide that the parties **should** negotiate in good faith" (emphasis added). *Id.* The 2015 and later IEEE Bylaws do not impose any affirmative contractual duty to negotiate in good faith. That the courts "have the authority to: determine Reasonable Rates and other reasonable terms and conditions, […] award monetary damages; and resolve any defenses and counterclaims" does not mean that Wilus's RAND obligations are suspended. *Id.* The IEEE Bylaws specify that "choosing to litigate or arbitrate over any of the foregoing issues … does not by itself mean that a party so choosing is unwilling to negotiate in good faith." Dkt. 277-3 at 18. Therefore, there are disputed facts as to whether the parties were acting in good faith during the course of their negotiations and what the law would be if the jury finds that Samsung has acted in bad faith in its negotiations with Wilus. Wilus argues the IEEE Bylaws do not "provide any 'reset' mechanism" for bad faith, but the IEEE Bylaw's silence cannot not be interpreted to as an affirmative interpretation that good faith can never "erase" bad faith, particularly where the language of the contract itself provides otherwise. *See Valentine v. Whitetail Capital, LLC*, No. 3:23-cv-00575, 2025 WL 1083246, at *10 ("Courts may not and will not rewrite contracts to insert provisions that the parties could have included, but did not, and that are not essential to the construction of the contract language.") (citing *Maxey v. Maxey*, 617 S.W.3d 207, 223 (Tex. App. 2020)).

5

████████████████████████████

Dated: March 31, 2026

Respectfully submitted,

*/s/ Ralph A. Phillips*
Ruffin B. Cordell
TX Bar No. 04820550
cordell@fr.com
Michael J. McKeon
DC Bar No. 459780
mckeon@fr.com
Ralph A. Phillips
DC Bar No. 475571
rphillips@fr.com
Matthew P. Mosteller
DC Bar No. 1697343
mosteller@fr.com
Bryan J. Cannon
DC Bar No. 1723657
cannon@fr.com
Brendan F. McLaughlin
DC Bar No: 1671658
BMcLaughlin@fr.com
Payal Patel
DC Bar No. 90019320
ppatel@fr.com
Damien Thomas
DC Bar No. 90018451
dthomas@fr.com
James Young
DC Bar No. 90005769
jyoung@fr.com
FISH & RICHARDSON, P.C.
1000 Maine Ave., S.W., Ste. 1000
Washington, DC 20024
Telephone: 202-783-5070
Facsimile:  202-783-2331
Thomas H. Reger II
Texas Bar No. 24032992
reger@fr.com
Rodeen Talebi
TX Bar No. 24103958
talebi@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 78766
Telephone: 214-747-5070
Facsimile:  214-747-2091

6

Aleksandr Gelberg
CA Bar No. 279989
gelberg@fr.com
John-Paul Fryckman
CA Bar No. 317591
fryckman@fr.com
FISH & RICHARDSON, P.C.
12860 El Camino Real, Ste. 400
San Diego, CA 92130
Telephone: 858-678-5070
Facsimile:  858-678-5099

Bailey K. Benedict
TX Bar No. 24083139
benedict@fr.com
FISH & RICHARDSON, P.C.
909 Fannin Street, Ste. 2100
Houston, TX 77010
Telephone: 713-654-5300
Facsimile:  713-652-0109

Lawrence R. Jarvis
GA Bar No. 102116
jarvis@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree St. NE, Fl. 21
Atlanta, GA 30309
Telephone: 404-892-5005
Facsimile: 404-892-5002

Melissa R. Smith
Texas Bar No. 24001351
melissa@gillamsmithlaw.com
Andrew Thompson ("Tom") Gorham
Texas Bar. No. 24012715
tom@gilliamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: 903-934-8450
Facsimile:  903-934-9257

Jon B. Hyland
jhyland@hilgerslaw.com
HILGERS PLLC
7859 Walnut Hill Lane, Suite 335
Dallas, Texas 75230
Telephone: 972-645-3097

7

███████████████████████████

*Attorneys for Defendants*
*Samsung Electronics Co., Ltd., and*
*Samsung Electronics America, Inc.*

8

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on March 31, 2026.  As of this date, all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A) and by electronic mail.

*/s/ Ralph A. Phillips*
Ralph A. Phillips