# Exhibit 8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| COLLISION COMMUNICATIONS, INC., | |
| *Plaintiff,* | |
| v. | Civil Action No. 2:23-cv-00587-JRG |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

## STATEMENT OF INTEREST OF
## THE UNITED STATES OF AMERICA

TODD J. TIBERI
*General Counsel*

NICHOLAS T. MATICH
*Solicitor*

AUSTIN P. MAYRON
*Acting Deputy Solicitor*

SARAH E. CRAVEN
*Associate Solicitor*

Office of the Solicitor
U.S. Patent & Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, VA 22313
Telephone: 571-272-9035

*Attorneys for the Acting Director of the*
*U.S. Patent & Trademark Office*

OMEED A. ASSEFI
*Acting Assistant Attorney General*

DINA KALLAY
*Deputy Assistant Attorney General*

DAVID B. LAWRENCE
*Policy Director*

ALICE A. WANG
*Counsel to the Assistant Attorney General*

DANIEL E. HAAR
NICKOLAI G. LEVIN
ANDREW N. DeLANEY
*Attorneys*

U.S. Department of Justice,
Antitrust Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: 914-256-0514
E-mail: andrew.delaney@usdoj.gov

*Attorneys for the United States of America*

**TABLE OF CONTENTS**

INTEREST OF THE UNITED STATES ...................................................................... 1

BACKGROUND ........................................................................................................ 3

ARGUMENT ............................................................................................................. 4

    I. Legal Background: Patent Infringement Injunction Analysis Under *eBay* ............................ 5

    II. A Non-Practicing Patentee Can Demonstrate Irreparable Harm and Inadequate Remedies at Law Under Certain Circumstances ............................................................... 7

        A. Like Other Types of Property, Patents Can Be Difficult to Value. .................................... 8

        B. The Difficulty of Calculating Damages from Patent Infringement May Support a Finding of Irreparable Harm. ........................................................... 9

    III. A Court Must Consider Other Equitable Considerations As Well ........................................ 10

CONCLUSION ......................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

Cases

*Apple Inc. v. Samsung Electronics Co.*,
809 F.3d 633 (Fed. Cir. 2015) ................................................................................... 2, 9, 10

*Apple Inc. v. Wi-LAN Inc.*,
25 F.4th 960 (Fed. Cir. 2022) ........................................................................................... 9

*Broadcom Corp. v. Qualcomm Inc.*
543 F.3d 683 (Fed. Cir. 2008) .....................................................................................10, 11

*California Inst. of Tech. v. Broadcom Ltd.*,
25 F.4th 976 (Fed. Cir. 2022) ........................................................................................... 9

*Dawson Chemical Co. v. Rohm & Haas Co.*,
448 U.S. 176 (1980)..................................................................................................... 1, 7

*Direct Biologics, L.L.C. v. McQueen*,
63 F.4th 1015 (5th Cir. 2023) ........................................................................................... 8

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*,
356 F.3d 1256 (10th Cir. 2004) ........................................................................................ 8

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
717 F.3d 1336 (Fed. Cir. 2013) ........................................................................................11

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)...............................................................................................3, 5, 6, 7, 11

*EcoFactor, Inc. v. Google LLC*,
137 F.4th 1333 (Fed. Cir. 2025) ....................................................................................... 9

*Edwards Lifesciences AG v. CoreValve, Inc.*,
699 F.3d 1305 (Fed. Cir. 2012) ........................................................................................ 1

*Eldred v. Ashcroft*,
537 U.S. 186 (2003)........................................................................................................... 1

*Fromson v. W. Litho Plate & Supply Co.*,
853 F.2d 1568 (Fed. Cir. 1988) ........................................................................................ 9

*i4i Ltd. Partnership v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010) ........................................................................................11

*In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litigation*,
  831 F. Supp. 1354 (N.D. Ill. 1993) ........................................................................... 2

*Joy Technologies, Inc. v. Flakt, Inc.*,
  6 F.3d 770 (Fed. Cir. 1993) ....................................................................................11

*Metalcraft of Mayville, Inc. v. The Toro Co.*,
  848 F.3d 1358 (Fed. Cir. 2017) ............................................................................. 10

*National Society of Professional Engineers v. United States*,
  435 U.S. 679 (1978) ................................................................................................. 2

*Nichia Corp. v. Everlight Americas, Inc.*,
  855 F.3d 1328 (Fed. Cir. 2017) .............................................................................. 7

*Oil States Energy Services, LLC v. Greene's Energy Group, LLC*,
  584 U.S. 325 (2018) ................................................................................................. 8

*Omega Patents, LLC v. CalAmp Corp.*,
  13 F.4th 1361 (Fed. Cir. 2021) ............................................................................... 9

*Presidio Components, Inc. v. American Technical Ceramics Corp.*,
  702 F.3d 1351 (Fed. Cir. 2012) ........................................................................... 6, 7

*Robert Bosch LLC v. Pylon Manufacturing Corp.*,
  659 F.3d 1142 (Fed. Cir. 2011) ........................................................................ 2, 7, 8

*RoDa Drilling Co. v. Siegal*,
  552 F.3d 1203 (10th Cir. 2009) .............................................................................. 8

*Triple-A Baseball Club Associates v. Northeastern Baseball, Inc.*,
  832 F.2d 214 (1st Cir. 1987) ............................................................................... 8, 9

Statutes

28 U.S.C. § 517 ............................................................................................................ 1

35 U.S.C. § 1 et seq. .................................................................................................... 4

35 U.S.C. §§ 101-103 .................................................................................................. 8

35 U.S.C. § 154(a)(1) ............................................................................................ 1, 4, 8

35 U.S.C. § 261 ......................................................................................................... 4, 8

35 U.S.C. § 282(a) ................................................................................................................ 4

35 U.S.C. § 283 ..............................................................................................................2, 4, 11

U.S. Const. art. I, § 8, cl. 8 .................................................................................................... 4

**INTEREST OF THE UNITED STATES**

The United States respectfully submits this statement under 28 U.S.C. § 517, which permits the Attorney General to direct any officer of the U.S. Department of Justice to attend to the interests of the United States in any case pending in a federal court. The United States, through the Department of Justice Antitrust Division and the United States Patent and Trademark Office (USPTO), has a strong interest in protecting and promoting competition in the U.S. economy, including by promoting a strong and effective patent system. The USPTO—the Executive-branch agency charged with examining patent applications, issuing patents, and advising the President on intellectual property policy through the Department of Commerce—furthers these interests by promoting the proper and consistent interpretation of the Patent Act, which protects patent rights and rewards innovation. Broadly, the United States seeks to advance consistent and correct application and enforcement of the intellectual property laws, including the Patent Act, to safeguard patents, fuel economic growth, and spur innovation to advance American freedoms. Patent rights also work with the antitrust laws to spur competition among innovators to create new and useful technologies, products, or services for consumers.

"Every patent shall contain . . . a grant to the patentee . . . of the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States." 35 U.S.C. § 154(a)(1). A patent gives the "right to exclude others from profiting by the patented invention," *Dawson Chem. Co. v. Rohm & Haas Co.*, 448 U.S. 176, 215 (1980), in order "to encourage invention," *Eldred v. Ashcroft*, 537 U.S. 186, 216 (2003); *see also Edwards Lifesciences AG v. CoreValve, Inc.*, 699 F.3d 1305, 1314 (Fed. Cir. 2012) ("The innovation incentive of the patent is grounded on the market exclusivity whereby the inventor profits from his invention.").

1

The United States has an interest in ensuring this incentive system functions effectively to encourage innovation not only from large firms, but also from small business and innovators. A robust patent system that protects the right to exclude benefits competition by encouraging a multiplicity of innovative solutions, leading to a wide range of products and services that offer different solutions to problems. *See Nat'l Soc. of Prof. Eng'rs v. United States*, 435 U.S. 679, 695 (1978) (Congress's "assumption that competition is the best method of allocating resources in a free market recognizes that all elements of a bargain . . . are favorably affected by the free opportunity to select among alternative offers.").

The incentive to innovate at the heart of the Patent Act is undermined when the availability of injunctions to block infringement is unduly limited. Congress has authorized district courts to issue injunctions "in accordance with the principles of equity to prevent the violation of any right secured by patent," 35 U.S.C. § 283, and "[i]njunctions are vital to [the patent] system" for "encouraging innovation," *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 638, 647 (Fed. Cir. 2015). The patentee's "right to exclude . . . has its roots in the Constitution" itself, and courts can take into account "the nature of patent rights," including this right to exclude, "in the appropriate equitable analysis." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011). Additionally, the prospect of an injunction blocking further infringement can "lead[] to negotiations between the parties. A private outcome of these negotiations—whether they end in a license at a particular royalty or in the exclusion of an infringer from the market—is much preferable to a judicial guesstimate about what a royalty should be." *In re Mahurkar Double Lumen Hemodialysis Catheter Pat. Litig.*, 831 F. Supp. 1354, 1397 (N.D. Ill. 1993) (Easterbrook, J., sitting by designation).

The United States submits this Statement of Interest in support of neither party to provide the views of the Antitrust Division and the USPTO on considerations relevant to assessing whether a non-practicing patentee has demonstrated irreparable harm and the inadequacy of monetary damages to compensate for the harm of continuing infringement.  The United States does not take a position on the outcome of these questions on the evidence before the Court in the instant case, or on the ultimate question of whether the Court should exercise its discretion to issue an injunction here.

**BACKGROUND**

Collision Communications, Inc. (Collision) brought a claim for patent infringement against Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (Samsung).  After a jury trial, Collision won a $445.5 million verdict against Samsung for willful infringement of claims in four of the asserted patents.  Dkt. 331 (Final Judgment).  This monetary figure represented a running royalty, *id.*, to compensate for "Samsung's past infringement," Dkt. 322 at 1245:23-1246:5.  The Court had instructed the jury: "[i]f there are additional units sold in the future, any damages for these sales will not be addressed by you, but will be addressed by the Court later."  *Id.*  Following the jury verdict, Collision moved for a permanent injunction blocking Samsung from "further infringing" on one of the infringed-upon patents.  *See* Dkt. 346 (PI Motion) 1.

In its motion, Collision argues, *inter alia*, that it satisfies the four-factor test for permanent injunctive relief that the Supreme Court laid out in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), including that it would suffer irreparable harm from continued infringement and monetary damages would not adequately compensate it.  PI Motion 14-20.  Samsung opposed the motion, arguing *inter alia*, that Collision has not suffered irreparable harm

3

because, as non-practicing entity, it expected to license its patent for a royalty and thus monetary relief would represent adequate compensation. *See* Dkt. 364 (Samsung Opp.) 10-16.

## ARGUMENT

The U.S. Constitution empowers Congress "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8. Pursuant to that power, Congress enacted the Patent Act, which makes the USPTO responsible for examining and issuing patents for any new, useful, and nonobvious invention. 35 U.S.C. § 1 et seq. Under the Patent Act, a patent has the attributes of personal property, *id.* § 261; is presumed valid, *id.* § 282(a); and grants the patentee "the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States, or importing the invention into the United States," *id.* § 154(a)(1). The Patent Act also provides remedies for patent infringement, including injunctive relief: "[T]o prevent the violation of any right secured by [a] patent," the courts "may grant injunctions in accordance with the principles of equity." *Id.* § 283.

When considering whether to grant permanent injunctive relief in response to infringement, courts must consider, among other things, whether there is irreparable harm and whether legal remedies, including monetary compensation, would provide an adequate remedy for that harm. Consistent with Supreme Court and Federal Circuit precedent, this Court should assess these questions in view of traditional equitable principles. Under those principles, an ongoing patent infringement may result in irreparable harm based on the inadequacy of a monetary remedy, which can be difficult to calculate accurately. This position treats patents in this specific context like other unique assets that are difficult to value. And it permits the same

remedy—an injunction—to prevent an ongoing violation of rights in a unique asset even where a non-practicing entity owns that asset.

## I.      Legal Background: Patent Infringement Injunction Analysis Under *eBay*

A plaintiff seeking a permanent injunction blocking infringement of a patent "must satisfy" the traditional four-factor test: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Ultimately, "the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and [] such discretion must be exercised consistent with traditional principles of equity." *Id.* at 394.

In holding that these traditional equitable considerations governed, the Supreme Court made clear that wholesale categorical rules should be rejected. *Id.* at 393. It specifically rejected the Federal Circuit's "general rule," unique to patent disputes, that an injunction *will issue* upon a finding of infringement and validity. *Id.* at 393-94. It also rejected the district court's categorical rule that a patentee willing to license its patents *could not* establish irreparable harm. *Id.* In addressing patentees who license, the Court stated that "[s]uch patent holders may be able to satisfy the traditional four-factor test" and should not be "categorically den[ied] . . . the opportunity to do so," noting that "some patent holders, such as university researchers or self-

made inventors, might reasonably prefer to license their patents, rather than undertake efforts to secure the financing necessary to bring their works to market themselves." *Id.* at 393.[1]

Chief Justice Roberts joined the majority, but also penned a concurrence, emphasizing that since "at least the early 19th century, courts have granted injunctive relief upon a finding of infringement in the vast majority of patent cases." *Id*. at 395 (Roberts, C.J., concurring).  He explained that this "long tradition of equity practice is not surprising, given the difficulty of protecting a right to *exclude* through monetary remedies that allow an infringer to *use* an invention against the patentee's wishes"—a difficulty that implicates both irreparable harm and the inadequacy of monetary damages.  *Id*. (internal quotation marks omitted).  The Chief Justice emphasized that this historical practice is relevant to courts' assessment of injunctive relief today, observing that "[w]hen it comes to discerning and applying [the injunctive relief] standards, in this area as others, a page of history is worth a volume of logic."  *Id.* (internal quotation marks omitted).[2]

After *eBay*, the Federal Circuit has recognized that "[w]hile a patentee is not entitled to an injunction in every case, it does not follow that courts should entirely ignore the fundamental nature of patents as property rights granting the owner the right to exclude." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp*., 702 F.3d 1351, 1363 (Fed. Cir. 2012) (internal

---

[1] Collision argues for injunctive relief in part based on 18th-century principles of equity, asserting that under these traditional principles a finding of ongoing infringement is, as a matter of law, irreparable harm.  *See* PI Motion 9-11, 15.  Such a categorical rule is inconsistent with *eBay*, and the United States does not argue for such a standard.

[2] Justice Kennedy also concurred but provided a different perspective.  While he agreed that history may be instructive in applying the four-factor test, he wrote that courts should limit the lesson of historical practice to cases that bear substantial parallels to the types of litigation then-prevalent.  *eBay*, 547 U.S. at 395-96 (Kennedy, J., concurring).  Moreover, a patentee's use of its patents primarily for obtaining license fees, rather than for producing and selling goods, presented a consideration outside of historical practice.  *Id.*

quotation marks omitted) (favorably citing Chief Justice Roberts' *eBay* concurrence). Accordingly, the Federal Circuit has continued to recognize that the "axiomatic remedy for trespass on property rights is removal of the trespasser," sometimes citing Chief Justice Roberts's *eBay* concurrence as noting the historical equity practice of routinely granting injunctions for infringement. *Presidio*, 702 F.3d at 1362 (citing Chief Justice Roberts); *see also Nichia Corp. v. Everlight Americas, Inc.*, 855 F.3d 1328, 1341 (Fed. Cir. 2017); *Robert Bosch*, 659 F.3d at 1149. Without such a right to exclude, "a calculating infringer may [] decide to risk a delayed payment to obtain use of valuable property without prior negotiation." *Presidio*, 702 F.3d at 1362-63. Thus, "[e]ven without practicing the claimed invention, the patentee can suffer irreparable injury." *Id.* at 1363. To adopt a contrary rule—that licensing is effectively dispositive of the right to exclude infringers—would both contradict the Supreme Court in *eBay* specifically holding open the possibility that non-practicing patentees can establish grounds for an injunction, 547 U.S. at 393-94, and risk creating a compulsory licensing scheme of the sort rejected by Congress, *Dawson Chem.*, 448 U.S. at 215 & n.21 (rejecting argument that would effectively create compulsory licensing scheme).

## II. A Non-Practicing Patentee Can Demonstrate Irreparable Harm and Inadequate Remedies at Law Under Certain Circumstances

Non-practicing patent holders, such as Collision, can suffer irreparable harm from infringement. To the extent that a non-practicing entity chooses to license its patent in exchange for a monetary royalty, that can be relevant to considering whether the harm from infringement is irreparable, or whether it can be compensated by money damages. That choice, however, is not dispositive of the issue of irreparable harm. Likewise, the existence of a damages award is not dispositive of the existence of irreparable harm, as there can be situations in which a non-practicing patent holder could incur irreparable injury, even though it was compensated for past

7

instances of infringement. In particular, irreparable harm from infringement without adequate monetary compensation for a non-practicing patentee that licenses for a royalty can occur because (1) patents can be hard to value and (2) damages can be difficult to calculate. These considerations are discussed in more detail below in Sections A and B, respectively.

### A. Like Other Types of Property, Patents Can Be Difficult to Value

A valid patent is inherently a unique asset—each patent claims a new, useful, and nonobvious invention. 35 U.S.C. §§ 101-103. A valid patent has attributes both of personal property and of a public franchise, with exclusive rights (as well as the opportunity to seek an injunction to protect those exclusive rights) prescribed by statute. *See Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 338 (2018); 35 U.S.C. §§ 154(a)(1), 261. Precedent from property cases illustrate how irreparable harm in patent infringement cases can arise, as courts take account of "the fundamental nature of patents as property rights granting the owner the right to exclude." *Robert Bosch*, 659 F.3d at 1149. And in the property context, courts have found irreparable harm without adequate legal remedy based on, *inter alia*, the loss of control over a unique product or business opportunity. *See, e.g., Direct Biologics, L.L.C. v. McQueen*, 63 F.4th 1015, 1023 (5th Cir. 2023) ("[C]ourts have found that lost opportunity to create or gain control of a new market may result in unquantifiable losses for which there is no adequate remedy at law.") (internal quotation marks omitted); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210-11 (10th Cir. 2009) (finding irreparable harm based on "unquantifiable damages" from the loss of control over a unique property interest); *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1262-64 (10th Cir. 2004) (collecting cases); *Triple-A Baseball Club Assocs. v. Northeastern Baseball, Inc.*, 832 F.2d 214, 223-25 (1st Cir. 1987) (holding there was irreparable harm for failure to specifically perform a contract—sale of

a sports franchise—because the franchise was a unique good whose market value could not be ascertained).

## B. The Difficulty of Calculating Damages from Patent Infringement May Support a Finding of Irreparable Harm

As courts have recognized, calculating patent damages can be difficult, uncertain, and expensive. To determine a fair and reasonable royalty in the absence of an established royalty, courts consider what would have resulted from a hypothetical negotiation between a theoretical "willing" licensor and a theoretical "willing" licensee in the past, before the infringement. *See Fromson v. W. Litho Plate & Supply Co.*, 853 F.2d 1568, 1574 (Fed. Cir. 1988). Employing this methodology has been described as "a difficult judicial chore, seeming often to involve more the talents of a conjurer than those of a judge," or, more succinctly, as a "fantasy." *Id.* at 1574-75. And indeed there have been numerous Federal Circuit reversals based on flawed damages models. *See, e.g.*, *EcoFactor, Inc. v. Google LLC*, 137 F.4th 1333, 1337-38 (Fed. Cir. 2025) (en banc) (reversing the denial of a new trial after a $20 million damages award based on unreliable expert testimony on reasonable royalty amounts); *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 974 (Fed. Cir. 2022) (vacating a verdict of $85 million based on faulty expert testimony of royalty rates and remanding for a new damages trial); *California Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 992 (Fed. Cir. 2022) (vacating a verdict of $1.1 billion and remanding for a new damages trial); *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361, 1376 (Fed. Cir. 2021) (ordering new damages trial for insufficient evidence of a $5 per unit royalty).

Consistent with these issues, the Federal Circuit has identified situations where the loss of the right to exclude in a competitive market can lead to irreparable harm due to the difficulty in calculating monetary damages. *See, e.g., Apple*, 809 F.3d at 644-45 (finding an inadequate remedy at law when the loss of even a single sale was difficult to calculate given downstream

9

and network effects); *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1368 (Fed. Cir. 2017) (finding a likelihood of irreparable harm due to the loss of a life-long customer, which may have far-reaching, long-term impact on future revenue, and sales losses were difficult to quantify due to ecosystem effects).  This applies to non-practicing entities as well.  In *Broadcom v. Qualcomm*, the Federal Circuit held that the plaintiff "provided evidence of irreparable harm, despite the fact that it does not currently practice the claimed inventions" and had licensed the patents to another entity.  543 F.3d 683, 703 (Fed. Cir. 2008).  The court found irreparable injury and lack of an adequate legal remedy based on the difficulty of calculating monetary damages in a competitive "design win" market.  *Id*.

Here, the jury verdict awarded Collision damages in the form of a running royalty for Samsung's past infringement of four patents.  *See* Final Judgment.  This can be relevant to determining whether damages for further infringement would be difficult to calculate, but it is not dispositive of the question.  As one consideration, for instance, the continuing infringement seeks injunctive relief on only one of the four patents at issue in the verdict.  PI Motion 1. Furthermore, any going-forward royalty for continuing infringement of that one patent would cover a different period (the future) than was covered by the damages provided in the verdict (the past).  And the future may have different, uncertain factors (e.g., different competitors, applications, economic conditions) that would make it difficult to calculate the appropriate ongoing royalty amount for any future infringement.

### III.    A Court Must Consider Other Equitable Considerations As Well

The considerations discussed above primarily go to the first two *eBay* factors.  Even if the evidence favors a patentee on these questions, in order to receive injunctive relief, it also must

satisfy a court that "the balance of hardships" favor that equitable remedy[3] and that such relief is not contrary to the public interest.  *eBay*, 547 U.S. at 391.

Furthermore, traditional equitable practice and *eBay* require courts to tailor injunctive relief to the equities of the case, including the scope and timing of a potential injunction.  For example, a court might find it appropriate to delay the effective date of an injunction to allow the defendant the opportunity to negotiate a license or remove infringing components or features from future products.  *See Broadcom*, 543 F.3d at 704-05 (upholding a sunset provision in an injunction to allow for the development of non-infringing substitutes).

At bottom, an injunction should not be punitive and is not designed to give a patent owner undue leverage.  Rather, an injunction serves "to prevent the violation of any right secured by patent." *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 772 (Fed. Cir. 1993) (quoting 35 U.S.C. § 283).  The leverage that it provides depends on the value of the patent: If there are equally good non-infringing alternatives to the patented technology, then an appropriately scoped injunction will provide very little leverage.  But if the invention is essential to the value of the product, the injunction will provide greater leverage in license negotiations.  An appropriately scoped injunction leaves it to the parties, rather than courts, to determine the value of the technology.

---

[3] When evaluating the balance of hardships in a patent case, courts have considered factors such as whether the infringing party has a non-infringing alternative it could bring to market, *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013), and the parties' respective "sizes, products, and revenue sources," *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 862 (Fed. Cir. 2010).  By contrast, courts generally disregard the infringer's "commercial success" or "sunk development costs."  *Id.*  The United States takes no position on the relevance or impact of such considerations on the facts before the Court.

11

## CONCLUSION

As part of evaluating whether injunctive relief is appropriate, this Court should consider evidence of irreparable harm and whether legal remedies would provide adequate compensation in light of the considerations described above.

Dated: February 27, 2026                    Respectfully submitted,

                           /s/ *Andrew N. DeLaney*

| | |
|---|---|
| TODD J. TIBERI | OMEED A. ASSEFI |
| *General Counsel* | *Acting Assistant Attorney General* |
| NICHOLAS T. MATICH | DINA KALLAY |
| *Solicitor* | *Deputy Assistant Attorney General* |
| AUSTIN P. MAYRON | DAVID B. LAWRENCE |
| *Acting Deputy Solicitor* | *Policy Director* |
| SARAH E. CRAVEN | ALICE A. WANG |
| *Associate Solicitor* | *Counsel to the Assistant Attorney General* |
| Office of the Solicitor | DANIEL E. HAAR |
| U.S. Patent & Trademark Office | NICKOLAI G. LEVIN |
| Mail Stop 8, P.O. Box 1450 | ANDREW N. DeLANEY |
| Alexandria, VA 22313 | *Attorneys* |
| Telephone: 571-272-9035 | |
| | U.S. Department of Justice, |
| *Attorneys for the Acting Director of the* | Antitrust Division |
| *U.S. Patent & Trademark Office* | 950 Pennsylvania Avenue, NW |
| | Washington, DC 20530 |
| | Telephone: 914-256-0514 |
| | E-mail: andrew.delaney@usdoj.gov |
| | *Attorneys for the United States of America* |

12

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2026, I caused the foregoing to be filed through this Court's CM/ECF filer system, which will serve a notice of electronic filing on all registered users, including counsel for all parties.

/s/ Andew N. DeLaney
Andrew N. DeLaney

13

**APPROVED**
*By BelindaSaenz at 4:42 pm, Feb 23, 2026*

EDTX PHVAPP (04-2024)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

APPLICATION TO APPEAR PRO HAC VICE

1. This application is being made for the following: Case # No. 2:23-cv-00587-JRG

   Style/Parties: Collision Communications, Inc. v. Samsung Electronics Co., Ltd Et Al

2. Applicant is representing the following party(ies): United States of America

3. Applicant was admitted to practice in New York (state) on 04/20/2009 (date).

4. Applicant is in good standing and is otherwise eligible to practice law before this court.

5. Applicant is not currently suspended or disbarred in any court.

6. Applicant ○has ⦿has not (choose one) had an application for admission to practice before another court denied. If so, give complete information on a separate page.

7. Applicant ○has ⦿has not (choose one) ever had the privilege to practice before another court suspended. If so, give complete information on a separate page.

8. Applicant ○has ⦿has not (choose one) been disciplined by a court or Bar Association or committee thereof that would reflect unfavorably upon applicant's conduct, competency, or fitness as a member of the Bar. If so, give complete information on a separate page.

9. Describe in detail on a separate page any charges, arrests, or convictions for criminal offense(s) filed against you. Omit minor traffic offenses and misdemeanor offenses committed prior to age 18. (See Page 3)

10. Applicant has no pending grievances or criminal charges.

11. Applicant has been admitted to practice in the following courts:

    USCA 1; USCA 2; USCA 9; USCA 11; USCA DC; SDNY; EDNY

12. Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AT-3, the "Standards of Practice to be Observed by Attorneys."

13. Applicant understands that, if approved, the admission is limited to appearing in the case specified above only.

**Application Oath:**

    I, Andrew DeLaney do solemnly swear (or affirm) that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under the law and the highest ethics of our profession; and that I will support and defend the Constitution of the United States.

Date: 02/23/2026      Signature: *Andrew DeLaney*

Application Continued on Page 2

EDTX PHVAPP (04-2024)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

APPLICATION TO APPEAR PRO HAC VICE

Full Name: Andrew Norton DeLaney
State Bar No.: 4713947
Address: ATR Division; 26 Federal Plaza; Suite 3402
New York, NY 10278
Phone: (914) 256-0514
Fax:
Email: andrew.delaney@usdoj.gov

This application has been approved for the court on: _____ **2/23/2026** _____

David A. O'Toole, Clerk
U.S. District Court, Eastern District of Texas

By _____
Deputy Clerk

## Application Instructions

1. You must obtain approval of your application before you docket it to the case. To request review, email the completed application to **phv@txed.uscourts.gov**.
2. Once approved, docket the version that bears the deputy clerk's approval stamp using the *Notice of Attorney Appearance – Pro Hac Vice* event (the docket event will collect the $100 fee). **NOTE:** If you do not already have e-filing privileges in this district, after you obtain approval of your pro hac vice application as required in Step 1 above, go to Pacer.gov, log into **Manage My Account** and select the **Maintenance** tab. Then choose **Attorney Admissions/E-File Registration**, select our court, and apply/register for **Pro Hac Vice**. E-filing requests received prior to approval of the pro hac vice application form will be rejected.

Email Application