# Exhibit K

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| WILUS INSTITUTE OF STANDARDS AND TECHNOLOGY INC., | Case No. 2:24-cv-00746-JRG |
| *Plaintiff,* | |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC. | |
| *Defendants.* | |

**[PROPOSED] JURY INSTRUCTIONS[1]**

---

[1] Submissions which are preliminarily agreed to for purposes of this JPTO filing by both Plaintiff Wilus Institute of Standards and Technology Inc. ("Wilus") and Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. ("Samsung") are not highlighted. Submissions proposed by Wilus that are not agreed to by Samsung are bracketed and in **blue, bold font**.  Submissions proposed by Samsung that are not agreed to by Wilus are in **red, bold font**. In certain places, the parties have inserted footnotes to state their respective positions.

The parties have filed motions for summary judgment, Daubert motions, and motions in limine on many issues in this case. The outcomes of these pending motions may affect portions of these instructions and the parties' proposals. The parties reserve the right to amend these instructions and their respective proposals and objections in advance of the Court's charge conference. The parties also agree to further confer on these instructions and articulate/elaborate on their objections before trial (such as after receiving the Court's rulings and/or at the time of final election of asserted claims and invalidity defenses). Accordingly, nothing within these proposed instructions should be construed as a waiver of the parties' positions, arguments, or objections to the proposed instructions.

[**Wilus: blue**; **Samsung: red**]

## I.    INTRODUCTION

Ladies and Gentlemen of the Jury: You've now heard the evidence in this case. I will now instruct you on the law that you must apply.

Each of you will have a copy of these final jury instructions that I am about to give you orally. You will have these instructions for your review when you retire to deliberate in a few minutes. Accordingly, there is no need for you to take written notes on these final jury instructions unless you particularly want to do so.

It is your duty to follow the law as I give it to you. On the other hand, as I have said, you, the jury, are the sole judges of the facts in this case. Do not consider any statement that I have made in the course of the trial or may make in the course of these instructions as an indication that I have any opinion about the facts in this case. You are about to hear closing arguments from the attorneys for both of the parties. Statements and arguments of the attorneys are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You will take this form to the jury room, and when you have reached a unanimous agreement as to your verdict, you will have your foreperson, which you will select, fill in the blanks in that form, date it, and sign it. Answer the questions as directed in the verdict form based on the facts as you find them to be. Do not decide who you think should win and then answer the questions to reach that result. Your answers and your verdict must be unanimous.

[**Wilus: blue**; **Samsung: red**]

## II.    <u>EVIDENCE</u>

### A.    **Credibility of Witnesses and Evidence**

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all of the witnesses, regardless of who may have called them, you may consider any agreements of the parties, and you may consider all the exhibits received and admitted into evidence, regardless of who may have introduced them.

You, the jurors, are the sole judges of the credibility of all witnesses and the weight and effect of all of the evidence. In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider a witness's manner and demeanor on the witness stand, any interest they may have in the case, any prejudice or bias about the case that the witness may have. You may also consider the consistency or inconsistency of their testimony, considered in light of the circumstances, including whether the witness has been contradicted by other evidence or made statements at other times and places contrary to what he or she said on the witness stand. You may also consider whether there was evidence tending to prove that the witness testified falsely about some important fact or that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony he or she gave at trial.

You must give the testimony of each witness the amount of credibility that you think it deserves in light of the circumstances.

You must also keep in mind, ladies and gentlemen, that a simple mistake does not mean that a witness is not telling the truth. You must consider whether any misstatement was an intentional falsehood or a simple lapse in memory and what significance should be attached to that

3

[**Wilus: blue**; **Samsung: red**]

testimony.

### B.    Objections of Counsel

As I have told you previously, the attorneys in this case are advocates for their clients, which are opposing parties in this case, and the attorneys have a duty to object when they believe evidence is offered that should not be admitted under the rules of this Court. When the Court sustained an objection to a question addressed to a witness, you must disregard that question entirely, and you may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer. If the objection was overruled, then you must treat the answer to that question just as you would if the objection had not been made. Allowing testimony or other evidence to be introduced over the objection of an attorney is not an indication that the Court has any opinion as to the weight or effect of such evidence.

Now, at times during the trial it was necessary for the Court to talk with the lawyers outside of your hearing at the bench, or by calling a recess and talking to them while you were out of the courtroom. This happened because often during a trial, something comes up that does not involve the jury. You should not speculate about what was said during such discussions that took place outside of your hearing or presence.

### C.    Direct and Circumstantial Evidence

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence, such as testimony of an eyewitness. The other is indirect evidence, which is also called circumstantial evidence. Circumstantial evidence is the proof of a chain of circumstances that indicates the existence or non-existence of certain other facts. As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that you find the facts based on the evidence presented.

[**Wilus: blue**; **Samsung: red**]

### D.    Stipulated Facts

The parties have stipulated or agreed to some facts in this case. When the lawyers on both sides stipulate as to the existence of a fact, then you must, unless otherwise instructed, accept the stipulation as evidence and regard that fact as proven.

All Accused Products operate in substantially the same way for purposes of the technical operations at issue in this case.

### E.    Testimony by Deposition

Certain testimony in this case has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. Generally speaking, if a witness cannot be present to testify in person from the witness stand, the witness's testimony may be presented under oath in the form of a deposition.

Before this trial began, attorneys representing the parties in this case questioned these deposition witnesses under oath. At that time, a court reporter was present and recorded the witness's sworn testimony. Deposition testimony is entitled to the same consideration as testimony given by a witness in-person from the witness stand in open court. Accordingly, you should determine the credibility and importance of deposition testimony, to the best of your ability, just as if the witness had testified before you in open court.

### F.    Reasonable Inferences from Evidence

Now, while you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case. However, you should not base your decision on any evidence not

5

presented by the parties during this case, such as your own personal experience with any of the parties, products, or services that are at issue in the case.

### G.      Sufficiency of Testimony

Unless I instruct you otherwise, you may properly determine that the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if, after considering all of the evidence, you believe that single witness.

### H.      Expert Witnesses

When knowledge of technical or otherwise specialized subject matter may be helpful to the jury, a person who has special training or experience in that field—called an "expert witness"—is permitted to state his or her opinion on those matters. However, you are not required to accept that opinion. As with any other witness, it is solely up to you to decide whether to rely upon it or not.

### I.      Demonstratives

Certain exhibits shown to you during the trial were illustrations. We call these types of exhibits "demonstrative exhibits" or "demonstratives." Demonstrative exhibits are a party's description, illustration, or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstratives, you should rely on your recollection. Demonstrative exhibits are sometimes called "jury aides." Demonstrative exhibits themselves are not evidence, but a witness's testimony concerning a demonstrative exhibit is evidence. Demonstrative exhibits will not be available for you to view during your deliberations.

[**Wilus: blue**; **Samsung: red**]

## III.    BURDEN OF PROOF

In any legal action, facts must be proven by a required amount of evidence known as the "burden of proof." The burden of proof in this case is on the Plaintiff for some issues and on the Defendants for other issues. There are two burdens of proof that you will apply in this case: "preponderance of the evidence" and "clear and convincing evidence."

The Plaintiff in this case, Wilus Institute of Standards and Technology Inc., which has been referred to as "Wilus" or "Plaintiff," has the burden of proving patent infringement by a preponderance of the evidence. Wilus also has the burden of proving whether any infringement was willful by a preponderance of the evidence.  Further, Wilus has the burden of proving damages for any patent infringement by a preponderance of the evidence. A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

The Defendants in this case, Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc., which you have heard referred to throughout the trial as "Samsung" or "Defendants," have the burden of proving invalidity of Wilus's patent claims by clear and convincing evidence.  **[Samsung also bears the burden of showing that the Asserted Patents are ineligible for patent protection by clear and convincing evidence.]**[2,3] Clear and convincing evidence means evidence that produces in your mind an abiding conviction that the truth of the

---

[2] **Wilus**: Wilus objects to this instruction because the step 1 of the patent eligibility analysis subject to pending motion for summary judgment before the Court. Moreover, this instruction appears to cover both step 1 and step 2 of the patent eligibility analysis, which are not proper jury questions. *See* Berkheimer v. HP Inc., 881 F.3d 1360, 1366, 1368 (Fed. Cir. 2018).

[3] **Samsung:** This sentence simply sets forth Samsung's contention regarding patent ineligibility.  By the time this case reaches trial, the Court will have already determined whether or not the claims are patent eligible under *Alice* step 1, as Samsung has challenged patent eligibility at summary judgment.  *See* Dkt. No. 265 at 1 ("The asserted claims are directed to unpatentable subject matter. . . . As such, the Court should grant summary judgment that the asserted claims are directed to unpatentable abstract ideas under 35 U.S.C. § 101 and the framework set forth in Alice Corp. Pty. v. CLS Bank International, 573 U.S. 208, 216 (2014).").

[**Wilus: blue**; **Samsung: red**]

party's factual contentions is highly probable. Although proof to an absolute certainty is not required to satisfy the clear and convincing evidence standard, the clear and convincing standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard. If proof establishes in your mind an abiding conviction in the truth of the matter, then the clear and convincing evidence standard has been met.

Both Wilus and Samsung allege that the other failed to comply with what are known as RAND obligations during their negotiations. Each party must prove its claim by a preponderance of the evidence. For Samsung to succeed on its claim, Samsung must prove, by a preponderance of the evidence, that Wilus **[failed to offer a license to the patents in this lawsuit on reasonable and non-discriminatory, or "RAND," terms, or that Wilus]**[4,5] failed to negotiate toward a

---

[4] **Wilus**: The *Microsoft v. Motorola* case (that Samsung relied on in its briefing on Wilus's PMSJ re Suspension of RAND (Dkt. 263)), states that the IEEE RAND obligation is an obligation to **negotiate**, and there is no such thing as established "RAND terms" and a RAND rate can only arise as a product of good faith negotiations. *Microsoft Corp. v. Motorola, Inc.*, 864 F. Supp. 2d 1023, 1038 (W.D. Wash. 2012) ("the language of Motorola's agreements with the IEEE and the ITU envisions a negotiation between the parties towards a resulting RAND license. This give-and-take understanding of the RAND licensing process is buttressed by [] Microsoft [testimony] … Because the IEEE and the ITU agreements anticipate that the parties will negotiate towards a RAND license, it *logically does not follow that initial offers must be on RAND terms*. Here, *critical to the court is the observation that RAND terms cannot be determined until after a negotiation by the parties*... Thus, a requirement that the standard essential patent holder (here, Motorola) make unsolicited offers on RAND terms would frustrate this purpose …." (emphasis added). Samsung's proposal essentially repeats twice the RAND requirement of "good faith " RAND negotiations for only Wilus, and the law of Motorola explains that "RAND terms" the extent comprehensible, is superfluous to good faith RAND negotiations.

[5] **Samsung**: The proposed instruction is consistent with this Court's precedent providing that there is both a *procedural* part of the RAND commitment (*i.e.*, negotiating in good faith) and a *substantive* part of the RAND commitment (*i.e.*, that the terms of the license will be on reasonable and non-discriminatory terms. In *HTC v. Ericsson*, for example, the Court explained that "the parties to the ETSI IPR Policy intended the FRAND obligation to mean that a SEP-owner either (1) grant intended third-party beneficiaries' licenses on FRAND terms and conditions, or (2) negotiate in good faith towards a FRAND license." *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, No. 6:18-cv-00243, 2019 WL 4734950, at *6 (E.D. Tex. May 22, 2019). Samsung's proposed instruction is also consistent with this Court's recent decisions in *G+ Commc'ns* and *Pantech*. *G+ Commc'ns, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-cv-00078-JRG, 2024 WL 233222, at *3-7 (E.D. Tex. Jan. 22, 2024); *Pantech Corp. v. OnePlus Tech. (Shenzhen) Co., Ltd.*, No. 5:22-cv-00069, ECF No. 211 (E.D. Tex. Mar. 1, 2024). *G+ Commc'ns* addressed the procedural aspect of the RAND obligation, *i.e.*, "obligations to conduct negotiations for a FRAND-encumbered patent in good faith," while *Pantech* addressed the substantive aspect, *i.e.*, that RAND "act[s] as a cap" on rates. *G+ Commc'ns*, 2024 WL 233222, at *3; *Pantech*, No. 5:22-cv-00069, ECF No. 211 at 10; *see also G+ Commc'ns*, 2024 WL 233222, at *3 (acknowledging a patent holder's "duty to negotiate in good faith *and* its obligation to license declared patents on FRAND terms").

[**Wilus: blue**; **Samsung: red**]

RAND license in good faith. For Wilus to succeed on its claim, Wilus must prove, by a preponderance of the evidence, that Samsung failed to negotiate toward a RAND license in good faith.

Now, as I've previously told you, ladies and gentlemen, these two burdens of proof are not to be confused with the burden of proof known as "beyond a reasonable doubt," which is the burden of proof applied in a criminal case, not in a civil case such as this. You should not confuse clear and convincing evidence with beyond a reasonable doubt. Clear and convincing evidence is not as high as beyond a reasonable doubt, but it is higher than a preponderance of the evidence.

9

[**Wilus: blue**; **Samsung: red**]

## IV.    SUMMARY OF CONTENTIONS

As I did at the beginning of the case, I will give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions. As I previously told you, this is an action for patent infringement.

Wilus contends that Samsung infringes:

- Claims 1, 3, 4, 5, 8 of U.S. Patent No. 10,313,077;

- Claims 1, 2, 3, 4, 6 of U.S. Patent No. 10,687,281;

- Claims 1, 2, 3, 4, 5 of U.S. Patent No. 11,470,595; and

- Claims 1, 2, 3, 4, 5 of U.S. Patent No. 11,159,210.

You've heard those referred to as the "Asserted Claims." You've also heard the patents referred to as the "'077 patent," the "'281 patent," the "'595 patent," and the "'210 Patent," or collectively as the "Asserted Patents."

Wilus contends **[the Asserted Patents are essential to the IEEE 802.11ax standard. Wilus further contends]**[6,7] it is entitled to money damages in the form of a reasonable royalty for Samsung's infringement by making, using, importing, selling, and/or offering for sale in the United States IEEE 802.11ax or Wi-Fi 6 devices, which I will refer to and you've heard referred to as the

---

[6] **Wilus**: It is Samsung's affirmative defense that the patents are not standard essential to the IEEE 802.11ax standard. This instruction is confusing as it seems to imply that Wilus has the ultimate burden of proof when in fact it is Samsung's burden to prove its affirmative defense.

[7] **Samsung:** Throughout this entire case, Wilus has contended that the Asserted Patents are standard essential.  It has provided no reason or rationale to now remove this contention that the Asserted Patents are purportedly essential to the IEEE 802.11ax standard.

[**Wilus: blue**; **Samsung: red**]

"Accused Products." Wilus seeks damages for Samsung's infringement of the Asserted Claims. **[Wilus has the burden to prove damages by a preponderance of the evidence.][8,9]**

Samsung denies that **[the Asserted Patents are essential to the IEEE 802.11ax standard. Samsung further denies][10,11]** it infringes any of the Asserted Claims. Specifically, Samsung denies that it makes, uses, offers for sale, sells, or imports for sale in the United States any Accused Product that infringes any of the Asserted Claims. Samsung also denies that it owes Wilus any money damages.

Samsung also contends that the Asserted Claims are invalid because they are obvious in view of prior art, lack an adequate written description, and/or lack enablement. **[Samsung also contends that the Asserted Claims are invalid for being directed to patent ineligible subject matter.][12,13]** Invalidity is a defense to infringement. Wilus denies that any of the Asserted Claims is invalid.

---

[8] **Wilus**: This instruction is out of place. This section is about the contentions of the parties. The burden of proof issue is already set forth in its own separate section. Repeating it here would only add to the confusion.

[9] **Samsung**: Wilus apparently disputes that it bears the burden to prove damages by a preponderance of the evidence. It has provided no reason or rationale to remove this instruction, which is standard in contrast to the instruction below regarding Samsung's burden of showing invalidity. This is how the Court routinely frames the parties' contentions. *See e.g.*, *Collision Commc'ns, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-587-JRG, Dkt. No. 322 at 1216:19–1217:4 (E.D. Tex. Oct. 10, 2025); *Pictiva Displays Int'l Ltd. v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-495-JRG-RSP, Dkt. No. 574 at 1310:17–21 (E.D. Tex. Oct. 31, 2025)

[10] **Wilus**: The instruction here appears to be a red herring to confuse the jury. Whether the patents are standard essential or not does not help Samsung to ameliorate its infringement.

[11] **Samsung**: Samsung has consistently denied throughout this case that the Asserted Patents are standard essential. Wilus, throughout this case until now has contended that the Asserted Patents are standard essential. There is no "red herring": this is an accurate statement of the parties' contentions—unless Wilus, unbeknownst to Samsung—no longer contends that the Asserted Patents are standard essential. The jury should be reminded of Samsung's consistent position.

[12] **Wilus**: Samsung has failed to properly articulate a patent eligibility defense or show that this is an appropriate issue for jury instructions. Moreover, the threshold question of whether the claims are directed to an abstract idea is a legal question and should not be in the jury instruction.

[13] **Samsung:** This sentence sets forth Samsung's contention regarding patent ineligibility. By the time this case reaches trial, the Court will have already determined whether or not the claims are patent eligible under *Alice* step 1, as Samsung has challenged patent eligibility at summary judgment. *See* Dkt. No. 265 at 1 ("The asserted claims are directed to unpatentable subject matter. . . . As such, the Court should grant summary judgment that the asserted

[**Wilus: blue**; **Samsung: red**]

Invalidity and infringement are separate and distinct issues. Your job is to decide whether Samsung has infringed the Asserted Claims and whether those claims are invalid. If you decide that any Asserted Claim has been infringed and is not invalid, you will then need to decide the amount of money damages, if any, to be awarded to Wilus to compensate it for the infringement.

**[The parties agree that the Asserted Patents are subject to certain commitments to IEEE. Samsung alleges that Wilus breached its obligation to negotiate in good faith. Samsung also asserts that Wilus breached its obligation to offer a license to the Patents-in-Suit on reasonable and non-discriminatory terms. Samsung asserts that it is entitled to damages as a result of Wilus's breaches. Wilus denies that it breached any obligations. Additionally, Wilus contends that Samsung breached its duty to negotiate in good faith. Samsung denies that it breached any obligation to negotiate in good faith. If you find any breach by either party, any resulting damages must be proven by a preponderance of the evidence. Both parties deny that the other is entitled to any damages.][14,15]**

---

claims are directed to unpatentable abstract ideas under 35 U.S.C. § 101 and the framework set forth in *Alice Corp. Pty. v. CLS Bank International*, 573 U.S. 208, 216 (2014).").

[14] **Wilus**: This is superfluous and largely repeats the "burden of proof" language, above, which is mostly agreed. Even though that section is labeled "Burden of Proof," the Court will not read the headings and it, above, will explain the competing contentions and repeating will be unduly repetitious. Samsung's proposal is also inaccurate because Wilus is not seeking damages on its RAND arguments, but rather, its RAND arguments are part of its Third Affirmative Defense to Samsung's RAND claims and the issues are also embedded in the parties' damages arguments.

[15] **Samsung:** This section simply summarizes the Parties' competing positions on the SEP/RAND issues in this trial. Wilus does not contend that any portion of Samsung's proposed instruction is factually or legally incorrect. Moreover, this does not repeat any of the language set forth above. Instead, this sets forth the parties' contentions regarding any obligation to negotiate in good faith.

[**Wilus: blue**; **Samsung: red**]

## V.    <u>CLAIMS AND CLAIM CONSTRUCTION</u>

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case.  I'll now give you more detailed instructions about the patent laws that relate to this case.

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of the patent.

The claims are important because the words of the claims define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims themselves that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

**[You'll first need to decide what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.  The law says it's my role to define the terms of the claims, and it's your role to apply my definitions or constructions to the issues that you are asked to decide.  Accordingly, and as I've explained at the beginning of the case, I have already determined the meaning of certain language from the asserted claims. And I have provided you with these definitions or constructions in your juror notebooks, and you may refer to them throughout your deliberations. You must accept my definitions or constructions of these words from the claims as being correct. It's your job to take these definitions that the Court has supplied and apply them to the issues that you are deciding, including the issues of infringement and invalidity. You should disregard any**

13

[**Wilus: blue**; **Samsung: red**]

evidence presented during the trial that contradicts or is inconsistent with the constructions or definitions that the Court has given you.

For claim language where I did not give you a construction or definition, that is, limitations that have not been interpreted or defined by the Court, you are to use and apply the plain and ordinary meaning of that language as understood by one of ordinary skill in the art, which is to say in the field of the technology of the patent at the time of the alleged invention.

The meaning of the words of the patent claims must be the same when deciding both infringement and when deciding invalidity. As I noted, you've been provided with copies of the Asserted Patents in your juror notebooks, and you may refer to them and anything else in your notebooks throughout your deliberations.

The claims are intended to define in words the boundaries of the inventor's rights. Only the claims of the patent can be infringed. Neither the written description nor the drawings of the patent can be infringed. Each of the claims must be considered by you individually.

I will now explain how a claim defines what it covers.][16,17]

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a product satisfies each of these requirements, then it is covered by the claim. There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-

---

[16] **Wilus**: This detailed instruction is not necessary since the Court did not provide a special instruction for the terms in the Asserted Patents. Rather, the plain and ordinary meaning applies to all the asserted claims in the Asserted Patents. Moreover, this instruction overlaps with the other similar instructions already in this document.

[17] **Samsung**: Wilus objects to this instruction, but it fails to provide a reason for why it objects. The Court regularly gives this instruction. *See e.g.*, *Pictiva Displays Int'l Ltd. v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-495-JRG-RSP, Dkt. No. 574 at 1312:20–1314:25 (E.D. Tex. Oct. 31, 2025).

by-claim basis. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a product meets all of the requirements of a claim, the claim is said to "cover" that product, and that product is said to "fall within the scope of" that claim. In other words, a claim covers a product so long as each of the claim elements or limitations is present in that product. If a product is missing even one limitation or element of a claim, the product is not covered by the claim. If the product is covered by the claim, that product infringes that claim. If the product is not covered by the claim, that product does not infringe that claim.

The beginning portion, or preamble, of a claim often uses the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to." When "comprising" is used in the preamble, if you decide that an Accused Product includes all of the requirements of that claim, the claim is infringed. This is true even if the Accused Product contains additional elements.

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also contains other structures, such as leaves to expand the size of the tabletop or wheels to go on the ends of the legs.

This case involves two types of patent claims—independent claims and dependent claims. In this case, Claims 1 and 8 of the '077 Patent, Claim 1 of the '281 Patent, Claim 1 of the '595 Patent, and Claim 1 of the '210 Patent are independent claims. Claims 3, 4, 5 of the '077 Patent, Claims 2, 3, 4, 6 of the '281 Patent, Claims 2, 3, 4, 5 of the '595 Patent, and Claims 2, 3, 4, 5 of the '210 Patent are dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order for a product to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.

15

[**Wilus: blue**; **Samsung: red**]

In contrast, a dependent claim does not itself recite all of the requirements of the claim. Instead, a dependent claim refers back to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim from which it depends, as well as the additional requirements set forth in the dependent claim. Thus, to determine what a dependent claim covers, it is necessary to look at the requirements of both the dependent claim and any other claim or claims to which it refers. A product that meets all of the requirements of both the dependent claim and any claim to which it refers or from which it depends is covered by that dependent claim.

Because a dependent claim incorporates all of the features of the independent claim it refers to, if you find that a claim is not infringed, then the claims that depend on that claim cannot be infringed.

I will now explain to you meaning of some of the words or "terms" of the claims of the Asserted Patents. The meaning of the claims must be the same when deciding both infringement and invalidity. You must accept my definition of these terms in the claims as correct. For any terms for which I have not provided you with a definition, you are to use the plain and ordinary meaning of the terms as understood by one of ordinary skill in the art. You should not take my definition of the claims as an indication that I have a view regarding how you should decide the issues in this case, such as infringement and invalidity. These issues are yours to decide.

Accordingly, and as I explained to you at the beginning of the case, I have already determined the meaning of certain claim language, and I've provided definitions of those claim terms to you in your juror notebooks.

[**Wilus: blue**; **Samsung: red**]

VI.    **LEVEL OF ORDINARY SKILL IN THE ART**

Several times in my instructions, I have referred or will refer to a person of ordinary skill in the field of the invention, or a person of ordinary skill in the art ("POSITA"). In deciding the level of ordinary skill in the field, you should consider all of the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of persons actively working in the field of the patents-in-suit; (2) the types of problems encountered in the field; (3) previous solutions to those problems; (4) the rapidity with which innovations are made; and (5) the sophistication of the technology in the field of the patents-in-suit.

[**Wilus: A person of ordinary skill in the art for the Asserted Patents would have had (1) a bachelor's degree in electrical engineering, computer science, or a comparable field of study, and (2) at least two to three years of professional experience in mobile wireless communications, or other similarly relevant industry experience. Additional relevant industry experience may compensate for a lack of formal education or vice versa.**]

[**Samsung: A person of ordinary skill in the art for the Asserted Patents would have had (1) a bachelor's degree in electrical engineering, computer science, or a related field, and (2) at least three years of experience in in the research, design or development of wireless communication devices, systems, and/or networks, or the equivalent, as of the 2015-2017 timeframe. Increased educational experience can make up for less work experience, and vice versa.**]

17

[**Wilus: blue**; **Samsung: red**]

## VII.    <u>INFRINGEMENT</u>

I will now instruct you on how to determine whether or not Wilus has proven that Samsung has infringed any of the Asserted Claims of the Asserted Patents.

If a person or corporation makes, uses, sells, or offers to sell within the United States, or imports into the United States what is covered by a patent claim without the patent owner's permission, that person or corporation is said to infringe the patent claim. In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. To determine whether there is infringement, you must compare the Asserted Claims to the Accused Products. This is the only correct comparison.

You should not compare the Accused Products to any specific examples set out in the patent or the prior art in reaching your decision on infringement.  In deciding infringement, again, the only correct comparison is between the accused products and the elements or limitations of the Asserted Claims as the Court has construed those claims.

You must determine whether or not there is infringement separately for each Asserted Claim. However, if you find that an independent claim is not infringed, there cannot be infringement of any dependent claim that refers, either directly or indirectly, to that independent claim. On the other hand, if you find that an independent claim has been infringed, you must still separately decide whether the accused product meets the additional requirements of any claims that depend from the independent claim. That is, you must separately decide whether any dependent claims that refer to that independent claim have been infringed.

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.

18

[**Wilus: blue**; **Samsung: red**]

## A.        Direct Infringement

I will now instruct you on the specific rules you must follow to determine whether Wilus has proven that Samsung has directly infringed one or more of the Asserted Claims involved in this case.

An Asserted Claim can be directly infringed even if the alleged direct infringer did not have knowledge of the patent and without the direct infringer knowing that what it did was infringing the claim. An Asserted Claim may also be directly infringed even though the accused direct infringer believed in good faith that what it did was not infringing the patent.

You must determine, separately for each Asserted Claim, whether or not there is infringement. In order to prove direct infringement of a patent claim, Wilus must show by a preponderance of the evidence that an Accused Product includes each and every limitation of an Asserted Claim. An Accused Product infringes a claim if it is configured to satisfy each and every claim element, even though it may also be capable of non-infringing modes of operation. If a single limitation of an Asserted Claim is not met by a preponderance of the evidence by the Accused Product, then you must find no infringement.

A claim requirement is present if it exists in an Accused Product **[just]**[18, 19] as it is described in the claim language, **[either as I have explained the language to you or, if I did not explain**

---

[18] **Wilus**: Samsung's use of the word "just" is confusing and unnecessary.

[19] **Samsung**: This instruction is routinely given.  There is nothing "confusing and unnecessary" about this instruction.  *Collision Commc'ns, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-587-JRG, Dkt. No. 322 at 1225:24–1226:4 (E.D. Tex. Oct. 10, 2025) ("A claim requirement is literally present if it exists in an accused product *just* as it is described in the claim language, *either as I have explained or interpreted that language for you, or if I did not construe or explain it*, as would be understood by its plain and ordinary meaning to one of ordinary skill in the art."); *Pictiva Displays Int'l Ltd. v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-495-JRG-RSP, Dkt. No. 574 at 1320:9–14 (E.D. Tex. Oct. 31, 2025) ("A claim requirement is literally present if it exists in an accused product *just* as it is described in the claim language *either as I have explained or construed that language for you, or if I did not explain it or construe it*, as it would have been understood by its plain and ordinary meaning to one of ordinary skill in the art."); *General Access Solutions, Ltd. v. Cellco Partnership, d/b/a Verizon Wireless*, No. 2:22-CV-394-JRG, Dkt. No. 324 (E.D. Tex. Dec. 4, 2024) ("A claim requirement is met if it exists in an accused product

19

[**Wilus: blue**; **Samsung: red**]

**it,]**[20,21] as it would be understood by its plain and ordinary meaning to one of ordinary skill in the art. A single feature of an Accused Product may satisfy more than one element of a patent claim. **[A product may infringe even if the product contains additional features or elements not required by the claims.]** [22,23] However, if an Accused Product omits any element recited in a claim, then you must find that the product in question does not infringe that claim.

### B.    Indirect Infringement

In this case, Wilus has also accused Samsung of indirect infringement by actively inducing the users of the Accused Products to directly infringe Claim 8 of the '077 Patent. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

Samsung is liable for induced infringement of a claim only if Wilus proves by a preponderance of the evidence that:

1.  Acts have been carried out by users of the accused products that directly infringe that claim.

---

just as it is described in the claim language, ***either as I have construed that language for you, or if I did not***, as it would have been understood by its plain and ordinary meaning by one of ordinary skill in the art.").

[20] **Wilus**: This instruction is unnecessary and redundant. The preceding claim construction section already discussed the interpretation of the claim language.

[21] **Samsung**: See note above.

[22] **Wilus**: This instruction is not redundant, and dispels a common misconception of infringement to lay people. The "comprising" example that Samsung points to relates to claim construction, which is a separate issue. This instruction is given in *Headwater Research, LLC. v. Samsung Electronics Co., Ltd.,* et al., 2:23-cv-103-JRG, Dkt. No. 456 at 1195:15-16 (E.D. Tex. Jul. 14, 2025)

[23] **Samsung**: Samsung objects to this instruction as redundant (Section V., "When 'comprising' is used in the preamble, if you decide that an Accused Product includes all of the requirements of that claim, the claim is infringed. This is true even if the Accused Product contains additional elements."). This instruction typically is not included in the Court's instructions on direct infringement.

[**Wilus: blue**; **Samsung: red**]

2. Samsung has taken action during the time the asserted patent was in force, intending to cause the infringing act by users of the accused products; and

3. Samsung has been aware of the asserted patent and has known that the acts of users of the accused products constitute infringement of the Asserted Patents or was willfully blind to that infringement.

Willful blindness is established if Samsung believed there was a high probability that the acts, if taken, would constitute infringement of the asserted claim, but deliberately avoided confirming that belief.

To establish induced infringement, it is not sufficient that someone else directly infringes a claim. Nor is it sufficient that the company accused of inducing another's direct infringement merely had knowledge or notice of an asserted patent or had been aware of the acts by another that allegedly constitute direct infringement. The mere fact that the company accused of inducing another's direct infringement had known or should have known that there was a substantial risk that someone else's acts would infringe is not sufficient. Rather, in order to find inducement, you must find that Samsung specifically intended or was willfully blind to that infringement by the users of the accused products.

21

[**Wilus: blue**; **Samsung: red**]

C.    **Willful Infringement**

**[WILUS:**

**If you find that it is more likely than not that Samsung infringed a valid claim of Wilus's patent, then you must also determine whether or not Samsung's infringement was willful.**

**To show that Samsung's infringement was willful, Wilus must prove it is more likely than not that Samsung knew of Wilus's patent and intentionally infringed at least one Asserted Claim of an Asserted Patent. You may consider whether Samsung's behavior was deliberate or intentional. In determining whether Wilus has proven that Samsung's infringement was willful, you must consider the totality of circumstances based on the evidence presented at trial and assess Samsung's knowledge at the time the challenged conduct occurred.**

**Facts that may be considered include, but are not limited, to:**

**(1) Whether or not Samsung acted consistently with the standards of behavior for its industry;**

**(2) Whether or not Samsung intentionally copied a product of [patent holder] that is covered by the Asserted Patents;**

**(3) Whether or not Samsung reasonably believed it did not infringe or that the patent was invalid;**

**(4) Whether or not Samsung made a good-faith effort to avoid infringing the Asserted Patents, for example, whether Samsung attempted to design around the Asserted Patents; and**

**(5) Whether or not Samsung tried to cover up its infringement.**

22

[**Wilus: blue**; **Samsung: red**]

If you determine that any infringement was willful, that decision must not affect the amount of any damages award you give for infringement.  I will take willfulness into account later if you find it.][24]

[SAMSUNG:

Wilus also contends that Samsung has willfully infringed the patents-in-suit. If you decide that Samsung has infringed, then you must go on to address the additional issue of whether or not that infringement was willful. Wilus has the burden of proving willful infringement by a preponderance of the evidence. You may not determine that the infringement was willful just because Samsung knew of the asserted patents and infringed them. Willful infringement is deliberate or intentional infringement.

You may find that Samsung's actions were willful if Samsung acted in a reckless or callous disregard of, or with indifference to, the rights of Wilus. A defendant is indifferent to the rights of another when it proceeds in disregard of a high or excessive danger of infringement that is known to it or was apparent to a reasonable person in its position.

To determine whether Samsung acted willfully, consider all the facts and assess Samsung's knowledge at the time of the challenged conduct. Facts that may be considered include whether or not Samsung reasonably believed that it did not infringe or that the asserted patents were invalid. You may find that Samsung's actions were deliberate or intentional if Samsung was willfully blind to Wilus's patent rights.

Your determination of willfulness should incorporate the totality of the circumstances based on the evidence presented during this trial. Willfulness can be established by circumstantial evidence. If you decide that any infringement was willful, that

---

[24] **Wilus**: Samsung has a motion for summary judgment on willfulness, which should be denied.  Dkt. 273.

[**Wilus: blue**; **Samsung: red**]

**decision should not affect the amount of any money damages that you might award. As I've told you, the Court will take willfulness into account later, if you find it.][25]**

---

[25] **Samsung**: *See e.g.*, *Collision Communications, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-587-JRG, Dkt. No. 322 at 1229:5–1230:10 (E.D. Tex. Oct. 10, 2025); *Pictiva Displays International Ltd. v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-495-JRG-RSP, Dkt. 574 at 1324:16–1325:2 (E.D. Tex. Oct. 31, 2025).

[**Wilus: blue**; **Samsung: red**]

VIII.   <u>**INVALIDITY**</u>

I will now instruct you on the rules you must follow in deciding whether or not Samsung has proven that any Asserted Claims of the Asserted Patents are invalid.

Patent invalidity is a defense to patent infringement. To prove that any of the asserted claims are invalid, Samsung must persuade you by clear and convincing evidence, that is, you must conclude that it is highly probable that the claim is invalid.

An issued United States patent is accorded a presumption of validity based on the presumption that the United States Patent and Trademark Office, which you've heard referred to throughout this trial as the "PTO," "USPTO," or sometimes just the "Patent Office," acted correctly in issuing the patent. This presumption of validity extends to all issued United States patents. This presumption can be overcome if clear and convincing evidence is presented in Court that a claim is invalid. Like infringement, invalidity is determined on a claim-by-claim basis. You must determine separately for each Asserted Claim whether that claim is invalid. If one claim of a patent is invalid, this does not mean that any other claim is necessarily invalid. Samsung alleges that the Asserted Claims are invalid on several bases.

Claims must be interpreted the same way for determining infringement as for determining invalidity. You must apply the claim language consistently and in the same manner for issues of infringement and for issues of invalidity. In making your determination as to invalidity, you should consider each claim separately.

25

[**Wilus: blue**; **Samsung: red**]

A.    **[Patent Eligibility[26, 27]**

I will now instruct you on the rules you must follow in deciding whether or not Samsung has proven that any of the Asserted Claims of the Patents-in-Suit are ineligible for patent protection. Samsung contends that all Asserted Claims are invalid because they recite ineligible subject matter.

To succeed on its claims for patent ineligibility, Samsung must establish two things. The first is whether the claims are directed to an abstract idea. That issue is one for the Court to decide and not the jury. I have already determined that the claims are directed to an abstract idea. You, the jury, will decide the second question related to patent eligibility. Specifically, and in that regard, Samsung must show that the claims involve nothing more than the performance of activities which a person of ordinary skill in the art would have considered well-understood, routine, and conventional at the time the patent application was filed. To meet its burden on this issue, Samsung must show by clear and convincing evidence that the Asserted Claims involve only technology which a person of ordinary skill in the art would have considered to be well-understood, routine, and conventional as of the priority date. The mere fact that something was known in the art at the time does not necessarily mean that it was well-understood, routine, and conventional. Rather, the test is whether, in view of all the evidence, a person of ordinary skill in the art would have considered the claim to involve only technology that was well- understood, routine, and conventional as of its priority

---

[26] **Wilus**: This instruction is improper because there has been no findings that the claims are directed to an abstract idea. Only if the claims have been found to be directed to the abstract ideas, then the inquiry considers whether the claims are not inventive. *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014).

[27] **Samsung**: Samsung has moved for summary judgment of whether the claims are directed to an abstract idea under *Alice* step 1.  Dkt. No. 265.  If Samsung succeeds on this motion, then whether the claims satisfy *Alice* step 2 is a question for the jury to decide.  Accordingly, Samsung's proposed instruction, adapted from this Court's previous instructions on *Alice* step 2, should be given to the jury. *See G+ Communications, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-cv-78-JRG, Dkt. No. 592 at 65:24–67:17 (E.D. Tex. Feb. 2, 2024).

26

[**Wilus: blue**; **Samsung: red**]

**date. You should consider all the evidence presented during the trial, including the testimony of the witnesses as well as the exhibits introduced, including the specifications within the Patents-in-Suit. If the evidence shows by clear and convincing evidence that the elements of the Asserted Claims, when taken individually and as an ordered combination, involve only technology which a person of ordinary skill in the art would have considered well-understood, routine, and conventional, then this element of patent ineligibility has been established.]**

**[If you find that a claim is invalid as ineligible for patent protection, you must also find that all claims that depend from that claim are also invalid as ineligible for patent protection.] [28]**

### B.    Prior Art

A previous device, system, method, publication, or patent that predates the claimed invention is generally called "prior art," and may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention. To qualify as prior art, a device, system, publication, or patent must have been publicly known or used, publicly accessible, or published before the "priority date" of the Asserted Patents.

The disclosure of the claimed invention in the printed publication must be complete enough to enable one of ordinary skill in the art to use the invention without undue experimentation. In determining whether the disclosure is enabling, you should consider what would have been within

---

[28] **Wilus**: Wilus objects to this instruction as incorrect and it is not a proper jury question. Jury should not be deciding whether the claims are patent eligible as it involves a decision on the issue of Abstract Idea which is reserved for the court. Moreover, invalidity is a claim-by-claim analysis, dependent claims may include additional inventive concepts beyond those articulated in the independent claims.

27

[**Wilus: blue**; **Samsung: red**]

the knowledge of a person of ordinary skill in the art as of the priority date of the Asserted Patents, and you may consider evidence that sheds light on the knowledge such a person would have had.

A document must have been sufficiently accessible to persons of ordinary skill in order to qualify as a prior art printed publication. Similarly, a device or system may qualify as prior art for any information it discloses to persons of ordinary skill and which is publicly accessible. Information, whether found in a printed publication, device, or system, is publicly accessible if it was distributed or otherwise made available such that persons interested and ordinarily skilled in the subject matter exercising reasonable diligence could locate it.

### C.    Priority Date

**[The Plaintiff, Wilus, contends that the]** [The] priority date for the '077 Patent is no later than August 20, 2015. **[The Plaintiff, Wilus, contends that the]** [The] priority date for the '281 and the '595 Patents is no later than December 24, 2015. The priority date for the '210 Patent is no later than January 18, 2017. **[Samsung disagrees with Wilus's alleged priority dates. Samsung contends that the priority date for the '077 Patent is no earlier than August 20, 2015. Samsung contends that the priority date for the '210 Patent is no earlier than January 18, 2017.]**

**[The Defendant, Samsung contends the asserted patents are not entitled to these priority dates.**

**To determine if Samsung has met its burden to show by clear and convincing evidence that the asserted patents are not entitled to the priority dates asserted by Wilus, you will need to determine whether the patent specification of each priority patent application satisfies the written description and enablement requirements for the asserted claims.**

28

[**Wilus: blue**; **Samsung: red**]

**D.    Priority Date of Prior Art Patent Document**

**If Samsung alleges that a prior art patent or patent application publication ("U.S. patent document") is entitled to the priority date of an earlier-filed provisional application, Samsung must show, by clear and convincing evidence, both that (1) the U.S. patent document is entitled to claim a right of priority of the earlier-filed provisional application, by being filed not later than 12 months after the earlier-filed provisional application, by containing a specific reference to the earlier-filed provisional application, and by having a common inventor with the earlier-filed provisional application; and (2) the subject matter relied on in the U.S. patent document is described in the earlier-filed provisional application.]** [29,30]

**E.    Obviousness**

Samsung also contends that all Asserted Claims of the Asserted Patents are invalid as being obvious. Even though an invention may not have been identically disclosed or identically described in a single prior art reference or system before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

To establish that a claim is obvious, Samsung has the burden of establishing by clear and convincing evidence that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of the technology of the patent.

---

[29] **Wilus**: Samsung added these new instructions in the afternoon of this jointly filing, depriving Wilus the opportunity to research and propose counter instructions. Wilus reserves the right to provide further objections and propose competing instructions.
[30] **Samsung**: 35 U.S.C. § 102(d); 35 U.S.C. § 119(e).

[**Wilus: blue**; **Samsung: red**]

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field that someone would have had as of the priority date (which I explained to you earlier), the scope and content of the prior art, and any differences between the prior art and the claimed invention.

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art. The scope and content of the prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention. It also includes prior art from different fields that a person of ordinary skill in the art would have considered when trying to solve the problem that is addressed by the invention.

Further, the teachings, suggestions, and motivations may also be found within the knowledge of a person with ordinary skill in the art including inferences and creative steps, that a person of ordinary skill in the art would employ. **[A person of ordinary skill may be able to fit the teachings of multiple pieces of prior art together like pieces of a puzzle.]**[31,32] The person of ordinary skill in the art would have the capability of understanding the scientific and engineering principles applicable to the pertinent art.

Keep in mind that the existence of each and every element of the claimed invention in separate prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of elements that were already known in the prior art. Do not use hindsight; consider only what was known at the time of the invention. In other words, you should not consider

---

[31] **Wilus**: Samsung has been using hindsight and combining art even though there was no motivation to combine in its obviousness theories in this case. This instruction is prejudicial in this case because it seems to imply hindsight and combinations simply putting items together with no technical motivation to combine would be proper.

[32]**Samsung**: The Court should give this instruction, as it typically does. *Headwater Research, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-103-JRG, Dkt. No. 456 at 1202:3–5 (E.D. Tex. July 14, 2025); *Collision Communications, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-587-JRG, Dkt. No. 322 at 1233:18–20 (E.D. Tex. Oct. 10, 2025). Wilus provides no explanation for why the Court should deviate in this case rather than a general dispute with Samsung's obviousness argument.

[**Wilus: blue**; **Samsung: red**]

what a person of ordinary skill in the art would know now or what has been learned from the teaching of the Asserted Patents. **[In considering whether a claimed invention is obvious, you should consider whether, at the time of the priority date, there was a reason that would have prompted a person having ordinary skill in the field of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as:]** **[In considering whether a claimed invention is obvious, you may but are not required to find obviousness if you find that at the time of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field to combine the known elements in a way the claimed invention does, taking into account such factors as:][33,34]**

(1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s);

(2) whether the claimed invention provides an obvious solution to a known problem in the relevant field;

(3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

(4) whether the prior art teaches away from combining elements in the claimed invention;

---

[33] **Wilus**: No motivation to combine is one way to defeat an obviousness theory. *See, e.g., Nichia Corp. v. Everlight Americas, Inc.*, 855 F.3d 1328, 1337 (Fed. Cir. 2017). Samsung's position seems to imply the opposition.

[34] **Samsung**: Samsung's proposed instruction tracks instructions previously given by the Court. *See Headwater Research, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-103-JRG, Dkt. No. 456 at 1202:8–14 (E.D. Tex. July 14, 2025) ("In considering whether a claimed invention is obvious, you may, but are not required, to find obviousness, if you find by clear and convincing evidence that as of the priority date there was a reason that would have prompted a person having ordinary skill in the field to combine the known elements in a way that the claimed invention does, taking into account the following factors:"); *Pictiva Displays International Ltd. v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-495-JRG-RSP, Dkt. 574 at 1334:10–1335:19 (E.D. Tex. Oct. 31, 2025) ("In considering whether a claimed invention is obvious, you may, but are not required, to find obviousness if you find that at the time of the claimed invention, there was a reason that would have prompted a person having ordinary skill in the field to combine the known elements in a way that the claimed invention does, taking into account such factors as").

[**Wilus: blue**; **Samsung: red**]

(5) whether it would have been obvious to try the combinations of elements, such as when there is a design [**incentive**] [**need**] or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

Further, to find that a combination of prior art renders the claimed invention obvious, you must also find that a person of ordinary skill must have had a reasonable expectation of success in combining the prior art to arrive at the claimed invention. That a combination of elements was "obvious to try" is not sufficient in unpredictable technologies.

**[Prior art is not limited to the patents and published materials, but includes the general knowledge of a person of skill in the art in the field of the invention. Also, Samsung does not need to show that one of ordinary skill would actually have combined the physical structures of the references. A person of skill in the art need only be motivated to combine the teachings.]**[35,36]

---

[35] **Wilus**: This instruction is inaccurate and incomplete and may misstate the law. For example, it is strange to refer to "prior art" as including the general knowledge of the POSITA. Samsung will be limited to asserting invalidity based on the specific prior art or combinations in its final invalidity election. Further, this instruction omits the requirement of showing motivation to combine and reasonable expectation of success, as included in the Court's standard instructions. Moreover, this instruction is not given in all cases. For example, this instruction was not given in *Pictiva Displays Int'l Ltd. v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-495-JRG-RSP, Dkt. No. 574 (E.D. Tex. Oct. 31, 2025).

[36] **Samsung**: Despite Wilus's characterization of this instruction as "strange," the Court regularly gives this instruction. *See e.g.*, *Headwater Research, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-103-JRG, Dkt. No. 456 at 1203:11–18 (E.D. Tex. July 14, 2025); *Collision Communications, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-587-JRG, Dkt. No. 322 at 1237:5–13 (E.D. Tex. Oct. 10, 2025). Wilus's criticism that "this instruction omits the requirement of showing motivation to combine and reasonable expectation of success, as included in the Court's standard instructions" is nonsensical as motivation to combine and expectation of success are addressed in these proposed instructions. Additionally, Wilus is incorrect that this instruction was not given in *Pictiva*. *See Pictiva Displays Int'l Ltd. v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-495-JRG-RSP, Dkt. No. 574 at 1333:23–1334:6 ("Also, Samsung does not need to show that one of ordinary skill would actually have combined the physical structures of two references. One need only combine the teachings. Remember, as stated earlier, the prior art is not limited to patents and published materials, but includes the general knowledge that would have been available at the time to one of ordinary skill in the field of the invention.").

32

[**Wilus: blue**; **Samsung: red**]

In making these assessments, you should take into account any objective evidence, sometimes called "secondary considerations," that may have existed at the time of the invention, and afterwards, that may shed light on the obviousness or not of the claimed invention.

Now, the following are possible secondary considerations, but it's up to you, ladies and gentlemen, to determine whether secondary considerations of non-obviousness exist at all. These are:

1. whether the invention was commercially successful as the result of the merits of the claimed inventions, rather than the result of design needs or market pressure, advertising, or similar activities;

2. whether the invention satisfied a long-felt need;

3. whether the inventor proceeded contrary to accepted wisdom in the field;

4. whether others had tried, but failed, to solve the problem solved by the claimed invention;

5. whether others invented the invention at roughly the same time;

6. whether others copied the claimed invention;

7. whether the claimed invention achieved unexpected results;

8. whether others in the field praised the claimed invention;

9. whether there were changes or related technologies or market needs contemporaneous with the invention; and

10. whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention; and

11. whether others accepted licenses under the Asserted Patents because of the merits of the claimed invention.

33

[**Wilus: blue**; **Samsung: red**]

[These factors are relevant if there is a connection or "nexus" between the factors and what differentiates the invention from the prior art.] [These factors are relevant only if there is a connection or "nexus" between the factors and what differentiates the claimed invention from the prior art.][37,38] Wilus has the burden of establishing this connection or "nexus." Moreover, even if you conclude that some of the above indicators of objective evidence have been established, those factors should be considered along with all the other evidence in the case in determining whether Samsung has proven that the invention would have been obvious.

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claims from which it depends are necessarily obvious as well.

### F.    Invalidity of Independent and Dependent Claims

[As I previously mentioned, there are two different types of claims in the patent. One type is called an "independent claim." The other is called a "dependent claim." You must evaluate the invalidity of each asserted claim separately. Even if an independent claim is invalid, this does not mean that the dependent claims that depend from it are automatically invalid. You must decide this issue of validity on a claim-by-claim basis. However, if you find that a dependent claim is invalid, then you must find that the independent claim from which it depends is also invalid.] [Samsung: If you find that an independent claim is invalid, you must separately consider whether any dependent claim or claims that depend from it are

---

[37] **Wilus**: Wilus's proposal should be adopted because Samsung's proposal is not a completely accurate statement of the law. Wilus's instruction was given in *Headwater Research, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-103-JRG, Dkt. No. 456 at 1205:7-9 (E.D. Tex. July 14, 2025).

[38] **Samsung**: The Court regularly gives Samsung's proposed instruction. *See Pictiva Displays Int'l Ltd. v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-495-JRG-RSP, Dkt. No. 574 at 1333:5–7 (E.D. Tex. Oct. 31, 2025) ("Now, these factors are relevant only if there is a connection or a nexus between the factors and what differentiates the claimed invention from the prior art.").

[**Wilus: blue**; **Samsung: red**]

also invalid. However, when considering obviousness, if you find that an independent claim is not obvious, you cannot find that its dependent claims are obvious.] [39],[40]

G.       Written Description

[WILUS:

Samsung also contends that the Asserted Claims are invalid for failure to provide an adequate written description of the full scope of the claimed invention. Samsung bears the burden of establishing by clear and convincing evidence that the specification fails to satisfy the written description requirement.

A patent must also contain a written description of the product or method claimed in the patent. The written description requirement helps ensure that the patent applicant actually invented the claimed subject matter. To satisfy the written description requirement, the patent specification must describe each and every limitation of a patent claim with clear, concise, and exact terms.

When determining whether the specification discloses the invention, the claim must be viewed as a whole. The written description requirement is satisfied if persons of ordinary skill in the field of the invention would recognize from reading the patent specification that the inventor possessed the subject matter finally claimed in the patent. It is not sufficient that the specification discloses only enough to make the claimed invention obvious to the person having ordinary skill.

---

[39] **Wilus**: Wilus's instructions should be adopted as it provides more context for the jury.

[40] **Samsung**: *Pictiva Displays Int'l Ltd. v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-495-JRG-RSP, Dkt. No. 574 at 1328:13–18 (E.D. Tex. Oct. 31, 2025).

[**Wilus: blue**; **Samsung: red**]

The written description requirement is satisfied if the specification shows that the inventor possessed his or her invention as of the effective filing date of the claimed invention, even though the claims may have changed or new claims have been added since that time.

The exact words found in the claim need not be used in the specification. It's unnecessary to spell out every detail of the invention in the specification, and specific examples are not required. Enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention.

The written description requirement may be satisfied by a combination of words, structures, figures, diagrams, formulas, et cetera, contained in the patent application. In evaluating whether the specification has provided an adequate written description, you may consider such factors as:

1. The nature and scope of the patent claims;

2. The complexity, predictability, and maturity of the technology at issue;

3. The existing knowledge in the relevant field; and

4. The scope and content of the prior art.

The issue of written description is decided on a claim-by-claim basis, not as to the entire patent or group of claims.] [41]

[SAMSUNG:

Samsung also contends that the Asserted Claims are invalid for failure to satisfy the written description requirement.  As I previously explained, to obtain a patent, one must first file an application with the United States Patent and Trademark Office, or the PTO. The process of obtaining a patent is called "patent prosecution." The application

---

[41] **Wilus:** Wilus's proposed instructions were previously given by the Court in *General Access Solutions, Ltd. v. Cello Partnership, d/b/a Verizon Wireless, et al.*, 2:22-cv-394-JRG, Dkt. No. 324 (E.D. Tex., Dec. 4, 2024).

[**Wilus: blue**; **Samsung: red**]

submitted to the PTO includes within it what is called a "specification." The specification is required to contain a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. The written description requirement is designed to ensure that the inventor was in possession of the full scope of the claimed invention as of the patent's priority date.

To succeed on its claim of lack of adequate written description, Samsung must show by clear and convincing evidence that a person having ordinary skill in the field reading the patent specification as of the priority date of the patent would not have understood that the specification describes the full scope of the invention as it is claimed. If a patent claim lacks adequate written description, it is invalid.

In deciding whether the Asserted Claims satisfy the written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the Asserted Patents as of their priority dates. The specification must describe the full scope of the claimed invention, including each element thereof, either expressly or inherently. A claimed element is disclosed inherently if a person having ordinary skill in the field as of the priority date would have understood that the element is necessarily present in what the specification discloses. The written description does not have to be in the exact words of the claim. The requirement may be satisfied by a combination of words, structures, figures, diagrams, formulas, et cetera, contained in the patent specification. However, a mere wish or plan for obtaining the claimed invention is not adequate written description.  Rather, the level of disclosure required depends on a variety of factors, such as:

1. The nature and scope of the patent claims;

2. The complexity, predictability, and maturity of the technology at issue;

37

[**Wilus: blue**; **Samsung: red**]

**3. The existing knowledge in the relevant field; and**

**4. The scope and content of the prior art.**

**The issue of written description is decided on a claim-by-claim basis, not as to the entire patent or group of claims.  However, if you find that a claim is invalid for lack of written description, you must also find that all claims that depend from that claim are also invalid for lack of written description.][42]**

---

[42] **Samsung**: Samsung's proposed instruction was recently given by the Court.  *See Collision Commc'ns, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-587-JRG, Dkt. No. 322 at 1237:14–1239:16 (E.D. Tex. Oct. 10, 2025)

[**Wilus: blue**; **Samsung: red**]

H.      **[Enablement[43, 44]**

**Another way a patent claim can be invalid is if the specification of the patent fails to disclose sufficient information to enable or teach persons of ordinary skill in the field of the invention at the time the patent application was filed to make and use the full scope of the claimed invention without undue experimentation. This is known as the enablement requirement.**

**Samsung contends that the Asserted Claims of the '077 and '210 Patents are invalid for lack of enablement. [Samsung bears the burden of establishing by clear and convincing evidence that the specification fails to satisfy the enablement requirement.] If a patent claim is not enabled, it is invalid. In considering whether a patent complies with the enablement requirement, you must keep in mind that patents are often written for persons of ordinary skill in the field of the invention. Thus, a patent need not state information that persons of ordinary skill would likely know or could obtain without undue experimentation.**

**[The fact that some experimentation may be required for a person of ordinary skill in the field of the invention to practice the claimed invention does not mean that a patent does not meet the enablement requirement.] Factors you may consider in determining**

---

[43] **Wilus**: This section should not be part of the jury instruction. Samsung has not established a legitimate enablement defense. Moreover, enablement is a question of law for the Court based on the underlying facts. *In reVaeck,* 947 F.2d 488, 495 (Fed. Cir. 1991). Samsung has not identified any specific factual issues pertaining to enablement that the jury needs to decide. By providing the edits to this section, Wilus does not conceded that the enablement instruction should be given.

[44] **Samsung:** Wilus is incorrect.  As Samsung set forth earlier in this case, there are factual questions for the jury and enablement is still a live issue for the jury.  If Samsung had not established "a legitimate enablement defense," Wilus could have moved for summary judgement, but it did not.  The Court has recently given this instruction for enablement.  *See General Access Solutions, Ltd. v. Cellco Partnership, d/b/a Verizon Wireless*, No. 2:22-cv-394-JRG, Dkt. 324 at 1264:13–1266:11 (E.D. Tex. Dec. 4, 2024).

Moreover, Samsung rejects Wilus's attempt to edit Samsung's proposed instruction.  Wilus has declined to try to reach common ground on an instruction or even set forth a competing proposed instruction.

[**Wilus: blue**; **Samsung: red**]

whether persons of ordinary skill in the field of the invention would require undue experimentation to make and use the full scope of the claimed invention include the following:

1.  The quantity of experimentation necessary and whether that experimentation involves only known or commonly used techniques. The question of undue experimentation is a matter of degree. Even extensive experimentation does not necessarily make the experiments unduly intensive where the experiments are routine, such as repetition of known or commonly known techniques, but permissible experimentation is not without bounds;

2.  The amount of direction or guidance disclosed in the patent;

3.  The presence or absence of working examples in the patent;

4.  The nature of the invention;

5.  The state of the prior art;

6.  The relative skill of those in the art;

7.  The predictability of the art; and

8.  The breadth of the claims.

No one or more of these factors is alone dispositive. Rather, you must make your decision about whether or not the degree of experimentation required is undue based upon all the evidence presented to you. You should weigh these factors and determine whether or not in the context of the invention and the state of the art at the time of the patent's effective filing date a person having ordinary skill would need to experiment unduly to make and use the full scope of the claimed invention.

40

[**Wilus: blue**; **Samsung: red**]

The question of enablement does not turn on whether the accused product is enabled or whether a commercially viable product has been developed.

If you find that a claim is invalid for lack of enablement, you must also find that all claims that depend from that claim are also invalid for lack of enablement.]

[**Wilus: blue**; **Samsung: red**]

**I.        [Improper Inventorship[45, 46]**

**Samsung also contends that the Asserted Patents are invalid because of improper inventorship.  A patent is invalid if it fails to meet the requirements that all of the actual inventors and only the actual inventors be named as inventors in the patent.  This is known as the inventorship requirement.**

**Defendants must prove that a patent incorrectly lists its inventors by clear and convincing evidence.**

**To be an inventor, a person must make a significant contribution to the conception of at least one or more of the specific claims of the patent. Whether the contribution is significant is measured against the scope of the full invention. The person must also do more than merely explain to the real inventors well-known concepts and/or the current state of the art.**

**Persons may be inventors even if they do not make the same type or amount of contribution, and even if they do not contribute to the subject matter of each claim of the patent.**

**Persons may be joint or co-inventors even though they do not physically work together, but they must have some open line of communication during or at approximately**

---

[45] **Wilus**: Samsung has failed to properly articulate an improper inventorship defense or show that this is an appropriate issue for jury instructions. Accordingly, Wilus doesn't agree to the inclusion and objects. Wilus further objections to this instruction as inaccurate and misstating the law on alleged "improper inventorship." Wilus reserves the right to propose an alternative instruction should the Court decides this is an appropriate issue for jury.

[46] **Samsung**: Improper inventorship is a live issue in this case, and Wilus never moved for summary judgment against Samsung's inventorship defense.  And as this Court has recognized, invalidity for improper inventorship is an issue for the jury.  *See Pictiva Displays International Ltd. v. Samsung Elecs. Co., Ltd.*, No. 2:23-cv-495-JRG-RSP, Dkt. 574 at 1334:10–1335:19 (E.D. Tex. Oct. 31, 2025); *see also In re Ethicon, Inc.*, 64 F.3d 671 (Fed. Cir. 1995) ("The parties do not dispute that Ethicon would be entitled to a jury trial on the inventorship issue if USSC had asserted an affirmative defense of invalidity based thereon.");  *St. Jude Med., Inc. v. Access Closure, Inc.,* No. 08-CV-4101, 2010 WL 4880806, at *1-2 (W.D. Ark. Nov. 23, 2010) ("ACI asserted a merits defense of invalidity for failing to name Gruentzig as an inventor . . . . [G]iven the co-pendency of the invalidity defense, a jury should determine the facts regarding inventorship.").
.

[**Wilus: blue**; **Samsung: red**]

**the same time as their inventive effort.  The joint inventors must collaborate or work in a common direction, which may include one inventor seeing a report by another inventor and building upon it or one inventor hearing suggestions of another inventor at a meeting.**

**In determining whether the asserted patents are invalid for lack of proper inventorship, you must consider the patent in its entirety and any related evidence or testimony.**

**The patentee may be able to avoid invalidity due to improper inventorship by correcting the inventorship.]**

If you find that Samsung has infringed any valid claim, you must then consider what amount of damages, if any, to award to Wilus.

[**Wilus: blue**; **Samsung: red**]

## IX.    RAND CLAIMS

You have heard that Wilus made a commitment to the IEEE to "grant a license" to the Asserted Patents on "RAND" terms and conditions. RAND stands for reasonable and non-discriminatory. **[Samsung: In other words, Wilus made a commitment to offer a license to the Asserted Patents on terms that are reasonable and non-discriminatory.][47, 48]** In a negotiation for a RAND license, both parties to the negotiation must negotiate in good faith towards reasonable and non-discriminatory terms and conditions.

Wilus and Samsung both allege that the other has failed to comply with RAND obligations during their negotiations. For Samsung to succeed on its claim, Samsung must prove, by a preponderance of the evidence, either that Wilus failed to offer a license to Samsung on reasonable and non-discriminatory terms, which you've heard referred to as "RAND" terms, or that Wilus failed to negotiate toward a RAND license in good faith. For Wilus to succeed on its claim, Wilus must prove, by a preponderance of the evidence, that Samsung has failed to negotiate toward a RAND license in good faith.

---

[47] **Wilus**: Samsung's proposal is unduly repetitive and confusing, it also, as explained above, is contrary to law. Wilus's RAND commitment is to engage in good faith negotiations to arrive at RAND rates through negotiation, not specifically to offer rates that are deemed "RAND". *Microsoft Corp. v. Motorola, Inc.*, 864 F. Supp. 2d 1023, 1038 (W.D. Wash. 2012) ("the language of Motorola's agreements with the IEEE and the ITU envisions a negotiation between the parties towards a resulting RAND license. This give-and-take understanding of the RAND licensing process is buttressed by [] Microsoft [testimony] … Because the IEEE and the ITU agreements anticipate that the parties will negotiate towards a RAND license, it *logically does not follow that initial offers must be on RAND terms*. Here, *critical to the court is the observation that RAND terms cannot be determined until after a negotiation by the parties*... Thus, a requirement that the standard essential patent holder (here, Motorola) make unsolicited offers on RAND terms would frustrate this purpose ….") (emphasis added).

[48] **Samsung**: Wilus is incorrect that RAND does not require a patent holder to license on reasonable and non-discriminatory terms. *See* § III n.4 (explaining Samsung's position on RAND obligations). Indeed, the applicable IEEE Bylaws expressly require patent holders to offer licenses "to an unrestricted number of applicants on a worldwide basis without compensation or *under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination*." December 2014 IEEE Bylaws, § 6.2 (emphasis added). Samsung's position is consistent with this Court's precedent finding that F/RAND obligations include an "obligation to license declared patents *on FRAND terms*." *G+ Commc'ns*, 2024 WL 233222, at *3 (emphasis added).

[**Wilus: blue**; **Samsung: red**]

[**Wilus: You may consider various types of evidence to determine whether or not a party acted in good faith during negotiations. For example, unreasonably delaying negotiations, voluntarily maintaining the other party in prolonged uncertainty, continuing to negotiate when the party has no intention of voluntarily entering into a contract, and making affirmative misrepresentations during the negotiations are examples of the actions that support a filing that a party failed to negotiate in good faith. ]**[49] [**Samsung: Now, you may consider various types of evidence to determine whether or not a party acted in good faith during negotiations. For example, unreasonably delaying negotiations, voluntarily maintaining the other party in prolonged uncertainty, continuing to negotiate when the party has no intention of voluntarily entering into a contract, and making affirmative misrepresentations during the negotiations are examples of the actions that support a filing that a party failed to negotiate in good faith. Additionally, you may consider that a party filed one or more lawsuits, even if the lawsuits were allowed to be filed, when you assess the totality of the circumstances to determine whether each party acted in good faith. On the other hand, evidence of good faith may include whether a party consistently engaged in negotiation discussions. Raising reasonable concerns with the patents to be licensed, the proposed licensing terms or conditions, or other reasonable commercial concerns can be evidence of good faith even where it prolongs the negotiations between the parties.]**[50]

[**Wilus: If, in negotiating for a license to a patent with a RAND obligation, either Wilus or Samsung fails to act in good faith and thereby prevents a RAND license from being**

---

[49] **Wilus**: *G+ Communications, LLC v. Samsung Elect. Co., Ltd.,* Case No. 2:22-CV-078-JRG, Dkt. 592 at 89-90 (E.D. Tex, Feb. 2, 2024).

[50] **Samsung**: *G+ Communications, LLC v. Samsung Elect. Co., Ltd.,* Case No. 2:22-CV-078-JRG, Dkt. 592 at 89-90 (E.D. Tex, Feb. 2, 2024). Samsung maintains that the jury may be aided by examples of good faith conduct, in addition to examples of bad faith conduct.

[**Wilus: blue**; **Samsung: red**]

**granted, the other party's RAND obligations to that party are suspended. This does not remove the overall RAND commitment any party made to the IEEE, but avoids obligating the party acting in good faith to continue RAND negotiations when the other party fails to do so. ]**[51] **[Samsung: If in negotiating for a RAND license one party fails to act in good faith and thereby prevents a license from being granted, the other party's obligation to continue negotiations is suspended. This does not remove the burden of the RAND obligation from the patent, but avoids obligating a party acting in good faith to continue negotiating when a party fails to do so. If the bad faith actor ceases its bad faith and begins acting in good faith, the good faith negotiations must also resume.]**[52]

---

[51] **Wilus**: *See* Wilus PMSJ re: Suspension of RAND (Dkt. 263); *G+ Commc'ns, LLC v. Samsung*, 2024 WL 233222, at *6 (E.D Tex, Jan. 22, 2024)("It is both practical and logical that the obligations of a party acting in good faith be suspended when a counterparty to a negotiation for a FRAND license is acting in bad faith…To hold otherwise would strain logic and reason."); *HTC Corp. v. Ericsson*, 2018 WL 6617795, at *6 (E.D. Tex. Dec. 17, 2018) ("The FRAND commitment requires that good faith negotiations be conducted bilaterally."); *Microsoft Corp. v. Motorola, Inc.*, 864 F. Supp. 2d 1023, 1038 (W.D. Wash. 2012) ("the language of Motorola's agreements with the IEEE and the ITU envisions a negotiation between the parties towards a resulting RAND license. This give-and-take understanding of the RAND licensing process is buttressed by [] Microsoft [testimony] … Here, critical to the court is the observation that RAND terms cannot be determined until after a negotiation by the parties..."; Restatement 2d of Contracts § 309 ("[a] beneficiary's right against the promisor is subject to any claim or defense arising from his own conduct or agreement."); *Janvey v. Alguire*, 847 F.3d 231, 243 (5th Cir. 2017) ("[T]he third-party beneficiary doctrine prevents the intended beneficiary of a contract from avoiding the terms of the contract."); *Excavating, Inc. v. Thompson Thrift Constr., Inc.*, 973 F.3d 430, 437 (5th Cir. 2020) ("[T]he conduct of one party to a contract which prevents the other from performing his party is an excuse for non-performance") Samsung's assertion that, after a party acts in bad faith for multiple years, harming the other, it can simply unilaterally declare it's ready for good faith negotiations and vitiate past transgressions is contrary to American law (*G+* was French law), public policy, common sense, and is an unconscionable portrayal of the RAND commitment to IEEE.

[52] **Samsung**: *G+ Communications, LLC v. Samsung Elect. Co., Ltd.,* Case No. 2:22-CV-078-JRG, Dkt. 592 at 90 (E.D. Tex, Feb. 2, 2024); *see also G+ Commc'ns v. Samsung Elecs. Co., Ltd.* No. 2:22-cv-00078-JRG, 2024 WL 233222, at *5-6 (E.D Tex, Jan. 22, 2024)  Wilus's proposed instruction is both unnecessary and inconsistent with the law.  Wilus's position simply repeats its position from its Motion for Partial Summary Judgment on the Suspension of RAND Obligation.  Dkt. 263.  However, as Samsung explained in its opposition to Wilus's Motion (Dkt. 337; Dkt. 452), that position is both inconsistent with the law and raises issues not present in this case.  Indeed, both parties' experts opine that their respective damages in this case *do not depend on whether RAND applies*.  *See* Dkt. 317 at 6-8; Dkt. 421 at 4.  Moreover, this Court has already resolved the effect of one party's bad faith both on the requirement to negotiate and to offer licenses on reasonable and non-discriminatory terms.  *G+ Commc'ns, LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-cv-00078-JRG, 2024 WL 233222, at *3-7 (E.D. Tex. Jan. 22, 2024); *Pantech Corp. v. OnePlus Tech. (Shenzhen) Co., Ltd.*, No. 5:22-cv-00069, ECF No. 211 (E.D. Tex. Mar. 1, 2024).  Wilus's attempt to distinguish those prior cases based on "American law" and its "portrayal of the RAND commitment to IEEE" fall flat.  Indeed, the applicable IEEE Bylaws themselves are clear that its RAND obligation requires patent owners to license "to an unrestricted number of applicants on a worldwide basis without compensation or *under reasonable rates, with reasonable terms and conditions that are demonstrably free of any unfair discrimination*."  December 2014 IEEE Bylaws, § 6.2 (emphasis added).

46

[**Wilus: blue**; **Samsung: red**]

Now, whether or not a license offer is RAND will depend on the totality of the particular facts and circumstances. There is no fixed or required methodology for setting or calculating the terms of a RAND license, other than when all aspects have been considered, and it is reasonable and non-discriminatory.  Similarly, there is no fixed or required methodology for determining if a party acted in good faith.

[53][**Samsung: Now, in negotiating for a license to a patent where the patent has been contributed to an adapted standard, which patent is known as a standard-essential patent, either negotiating party, either being the patent holder or the implementer of the adopted standard, may fail to negotiate in good faith and thereby prevent a license from being granted on reasonable, and non-discriminatory terms.  If Wilus is found have failed to act in good faith then it is liable to Samsung for any reasonable damages which arise from such breach, including but not limited to attorney's fees and the cost of litigation.] [Now, in negotiating for a license to a patent where the patent has been contributed to an adapted standard, which patent is known as a standard essential patent, either negotiating party, either being the patent holder or the implementer of the adopted standard, if either of them fails to negotiate in good faith and thereby prevents a license from being granted on fair, reasonable, and non-discriminatory terms, then the party who fails in good faith suspends RAND obligations to the other and is liable to the other party for any reasonable damages which arise from such breach, including but not limited to attorney's fees and the cost of litigation.][54]**

---

[53] **Wilus**: Samsung modified significantly the instructions in this paragraph in the afternoon of the joint filing, depriving Wilus the time to consider this proposal. Wilus reserves the right to provide updated objections and update its counter-instructions.

[54] **Samsung**: *G+ Communications, LLC v. Samsung Elect. Co., Ltd.,* Case No. 2:22-CV-078-JRG, Dkt. 592 at 91 (E.D. Tex, Feb. 2, 2024).  Samsung's proposed instruction modifies slightly the instruction provided in the *G+ Commc'ns* case on the basis that "Wilus is not seeking damages on its RAND arguments, but rather, its RAND arguments are part of its Third Affirmative Defense to Samsung's RAND claims." *See* § IV.

**Wilus**: Wilus's proposal encapsulates the RAND suspension described elsewhere in the instructions and subject to Wilus's PMSJ re Suspension of RAND (Dkt. 263).

[**Wilus: blue**; **Samsung: red**]

[**Wilus: blue**; **Samsung: red**]

X.    **DAMAGES**

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Samsung has infringed any valid claim of the Asserted Patents, you must then consider what amount of damages to award to Wilus. Damages are evaluated on a patent-by-patent basis.  If you do not find that Samsung infringes any valid claims of a particular patent, Wilus is not entitled to damages for that patent.

Wilus has the burden of establishing the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Wilus establishes that it more likely than not suffered as a result of Samsung's infringement. While Wilus is not required to prove the amount of its damages with mathematical precision, it must prove them with reasonable certainty. Wilus is not entitled to damages that are remote or that are only speculative.

The damages award that you might make must be adequate to compensate Wilus for any infringement that you may find, but in no event an amount less than a reasonable royalty for the use made of the invention by Samsung. You must not award Wilus more damages than are adequate to compensate it for any infringement.  And you should also not include any additional amount for the purposes of punishing Samsung or for setting an example.  The purpose of a damages award is to put the Plaintiff in the same position that it would have been in if the Defendant would have taken a license at the time of first alleged infringement.

A.    **Reasonable Royalty**

I will now instruct you on how to calculate reasonable royalty damages, if you find damages are appropriate to award in this case.

49

[**Wilus: blue**; **Samsung: red**]

Wilus seeks damages in the form of a reasonable royalty. A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of money that [**Wilus**] [**a patent holder**] and [**Samsung**] [55] [**the alleged infringer**][56] would have agreed to in a hypothetical negotiation taking place at a time just prior to when the infringement first began.

Wilus contends that the date of the hypothetical negotiation would take place on several different dates:

- For the '077 Patent, Wilus contends the hypothetical negotiation takes place in June 2019;

- For the '281 and '595 patents, Wilus contends the hypothetical negotiation took place in June 2020;

- For the '210 Patent, Wilus contends the hypothetical negotiation took place in October 2021;

Samsung contends that the date of the hypothetical negotiation for all Asserted Patents would be June 2019.

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the Asserted Patents were valid and infringed and that both parties were

---

[55] **Wilus:** *Headwater Research, LLC. v. Samsung Electronics Co., Ltd.,* et al., 2:23-cv-103-JRG, Dkt. No. 456 at 1209:3-5 (E.D. Tex. Jul. 14, 2025).

[56] **Samsung**: *Collision Commc'ns, Inc. v. Samsung Elecs. Co., Ltd.*, No. 2:23-CV-587-JRG, Dkt. No. 322 at 1243:23–1244:3 (E.D. Tex. Oct. 10, 2025) ("A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that the patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when infringement first began.").

[**Wilus: blue**; **Samsung: red**]

willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation and not simply a royalty either party would have preferred.

Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

**[Wilus: One thing you must consider is whether the parties to the hypothetical negotiation would be negotiating a RAND license that complies with obligations for reasonable and non-discriminatory terms. This obligation only applies if the patent in suit is "essential" to the WiFi 6 standard, meaning that the WiFi 6 standard cannot be practiced without using the invention claimed in the Patents-in-Suit. It is Samsung's burden to prove that each Patent-in-Suit is essential to the Wi-Fi 6 standard in order for RAND restrictions to apply in this case.**

**In addition, Wilus contends that RAND does not apply to damages in this case, because, Wilus alleges, Samsung did not negotiate in good faith in the actual negotiations for rights to the Asserted Patents. If you determine that a patent in suit is essential to the WiFi 6 Standard, and that Samsung negotiated in good faith, you should assume that the parties the hypothetical negotiation would be negotiating a RAND license, and a reasonable royalty in this case must be consistent with RAND terms.[57] ]**

---

[57] **Wilus**: Wilus's proposal is consistent with the instructions given in *G+ Communications, LLC v. Samsung Elect. Co., Ltd.,* Case No. 2:22-CV-078-JRG, Dkt. 592 at 48, 82-83, 89-90. It also specifies that it is Samsung's burden to

[**Wilus: blue**; **Samsung: red**]

[**Samsung: Now, earlier you heard that Wilus made a commitment to license the Asserted Patents on reasonable and non-discriminatory terms and conditions. The commitment to license on RAND terms is irrevocable, and so the parties to the hypothetical negotiation would have negotiated a license to the Asserted Patents on RAND terms.]**[58]

The law also requires that any amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused products

---

prove essentiality of the Asserted Patents for RAND to apply. *Wireless All., LLC v. AT&T Mobility LLC*, No. 2:23-CV-00095-RWS-RSP, 2024 WL 4999567, at *1 (E.D. Tex. Oct. 21, 2024), ("The burden remains on Defendants to prove essentiality in order to argue that the patents are FRAND encumbered"). Here, Wilus's infringement case does not rest on proof of essentiality under IEEE bylaws, so it will not be an established issue prior to damages. Indeed, Samsung and/or its experts have admitted all the Asserted Patents are not essential, even if infringed. Samsung's proposal is contrary to (a) its position that the Asserted Patents are not SEPs, (b) American contract law that holds a duty to an intended third party beneficiary can be frustrated by that beneficiary's bad faith, and (c) the law of *G+*, *HTC*, and other cases that hold good faith negotiations are bilateral and can be suspended by bad faith. Samsung's proposal which asserts that "the parties to the hypothetical negotiation would have negotiated a license to the Asserted Patents on RAND terms" effectively seeks summary judgment on a fact-laden issue. Wilus and its expert contend the RAND obligation is or can be suspended by Samsung's bad faith, in which case RAND does not apply. IN addition, Samsung contends and has admitted the Asserted Patents are not essential, removing any conceivable RAND obligation, and Samsung's experts have even argued that *if infringed*, the Asserted Patents are not essential.

[58] **Samsung**: *See Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1304 (Fed. Cir. 2015) ("the adjustments to the Georgia-Pacific factors apply equally to RAND-encumbered patents and SEPs"); *G+ Commc'ns v. Samsung Elecs. Co. Ltd.*, No. 2:22-cv-00078-JRG, 2024 WL 233222, at *7 (E.D. Tex. Jan. 22, 2024) ("Where a patent is contributed to an adopted standard established by a standard setting organization, such contribution contractually burdens the patent to thereafter be licensed on fa, reasonable, and non-discriminatory terms. This is known as the FRAND obligation. This obligation is irrevocable, and thereafter runs with the patent."); *Pantech Corp. v. OnePlus Tech. (Shenzhen) Co., Ltd.*, No. 5:22-cv-00069, ECF No. 211, at 10 (E.D. Tex. Mar. 1, 2024) ("[a] cessation in negotiations 'does not remove the burden of the FRAND obligation from the patent'"). Wilus fails to cite any support for its proposed new instruction, including in cases involving F/RAND issues in this Court. Wilus's citation to *Wireless Alliance* is inapposite. *Wireless Alliance, LLC v. AT&T Mobility LLC*, No. 2:23-cv-00095-RWS-RSP, 2024 WL 4999567 (E.D. Tex. Oct. 21, 2024). *Wireless Alliance* involved patents that were neither shown to be essential nor declared to a standards body. *Id.* at *2. Here, Wilus has consistently held out its patents as being standard-essential and subject to RAND, bases its damages in this case on third-party evaluators' determinations that the Asserted Patents are essential to the 802.11ax standards, has declared its patents essential to the IEEE for the 802.11ax standard, has asserted that its licensing offers have been RAND, and its technical expert, Mr. de la Iglesia, opines that the patents are essential to the 802.11ax standard. To the extent that Samsung is found to infringe any Asserted Patent based on its use of the 802.11ax standard, that patent would be essential to the 802.11ax standard. Thus, Wilus's proposed instruction is confusing and unnecessary, in addition to being legally incorrect. Both parties' experts in this case opine, consistent with controlling law and 35 U.S.C. § 284, that any damages in this case would be a reasonable royalty and do not depend on whether the asserted patents are RAND-encumbered, rendering Wilus's proposed instruction superfluous and confusing. In addition, for the reasons explained in Samsung's opposition to Wilus's Motion for Partial Summary Judgment on the Suspension of RAND Obligation (Dkt. 337; Dkt. 452), Wilus's position that Wilus's irrevocable RAND declaration can, in fact, be revoked in view of bad faith, including as to the obligation to offer licenses on reasonable and non-discriminatory terms, is incorrect as a matter of law and inconsistent at least with this Court's decisions in *G+ Commc'ns* and *Pantech*.

52

[**Wilus: blue**; **Samsung: red**]

or other factors such as marketing or advertising or size or market position.  In other words, a royalty compensating Wilus for damages must reflect the value attributable to the infringing features of the accused products and nothing more.  This is particularly true where the Accused Products have multiple features and multiple components not covered by the patent or where the Accused Products work in conjunction with other non-patented items.  The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment. When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features.  You may not award damages based on Samsung's revenue from products that you do not find have infringed.  Wilus's evidence must be reliable and tangible; it can't be speculative.

**[Wilus: If you determine that a patent in suit is essential to the WiFi 6 standard, you must also consider that when dealing with standard essential patents, there are two special apportionment issues that arise. First, the patented features must be apportioned from all of the unpatented features reflected in the standard. Second, the patentee's royalty must be premised on the value of the patented features, not any added value by the standard's technology.]** [59]

**[Samsung: Because Wilus claims that the Asserted Patents are essential to the standard for Wi-Fi 6, there are two additional, special apportionment issues that arise.  First,**

---

[59] **Wilus**: Based on instructions from *Atlas Global Tech.  v. T-Link Tech. Co., Ltd.*, Case No. 2:21-CV-00430-JRG-RSP, at 1014, Dkt. 322 (E.D. Tex. September 18, 2023); *G+ Communications, LLC v. Samsung Elect. Co., Ltd.*, Case No. 2:22-CV-078-JRG, Dkt. 592 (E.D. Tex. Jan. 6, 2024) at 83-84. Samsung's instruction is an incorrect statement of fact and law. Wilus's infringement case does not rest on essentiality.  While Wilus has, in the past, referred to the Asserted Patents as essential, Samsung and/or its experts admit and argue in this case that the Asserted Patents are not essential, even if infringed. It is Samsung's burden to prove essentiality for FRAND to attach, even if Wilus has in the past stated a belief that the patents are or may be "essential." *Wireless All., LLC v. AT&T Mobility LLC*, No. 2:23-CV-00095-RWS-RSP, 2024 WL 4999567, at *1 (E.D. Tex. Oct. 21, 2024), ("The burden remains on Defendants to prove essentiality in order to argue that the patents are FRAND encumbered").

[**Wilus: blue**; **Samsung: red**]

**the Wi-Fi 6 features covered by the Asserted Patents must be apportioned from all of the other features in Wi-Fi 6 that are not covered by the Asserted Patents. Second, the royalty for the Asserted Patents must be premised on the value of the patented features, not any added value by the standard's adoption of the patented technology.]**[60]

### B.    Form of Royalty

In this case, you have heard about two different types of reasonable royalty damages that Wilus may be entitled to recover if you find Wilus is entitled to damages: a running royalty or a lump sum.

At the time of the hypothetical negotiation, the parties could have agreed to a running royalty or a fully paid-up lump-sum royalty. Either form is designed to compensate the patent holder based on the infringer's use of the patented technology.

Wilus contends that the parties would have agreed to a running royalty. A running royalty is a royalty where the infringer makes ongoing payments tied to the infringer's sales, for example, a fixed amount per unit sold or a percent of revenue. Running royalty damages are calculated through trial. If you find a running royalty is the appropriate form, the Court will take up the issue of an ongoing royalty after trial.

Samsung contends that the parties would have agreed to a fully paid-up lump sum royalty at the time of the hypothetical negotiation. A lump sum royalty is when the infringer pays a single price for a license to use a patent throughout the life of the patent. As such, a lump sum royalty

---

[60] **Samsung**: *See G+ Commc'ns, LLC v. Samsung Elect. Co., Ltd.,* Case No. 2:22-CV-078-JRG, Dkt. 592, at 83-84 (E.D. Tex. Jan. 6, 2024); *Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1304-1305 (Fed. Cir. 2015). Wilus has consistently held out its patents as being standard-essential and subject to RAND, bases its damages in this case on third-party evaluators' determinations that the Asserted Patents are essential to the 802.11ax standards, has declared its patents essential to the IEEE for the 802.11ax standard, has asserted that its licensing offers have been RAND, and its technical expert, Mr. de la Iglesia, opines that the patents are essential to the 802.11ax standard. To the extent that Samsung is found to infringe any Asserted Patent based on its use of the 802.11ax standard, that patent would be essential to the 802.11ax standard and thus the additional considerations for standard-essential patents would be necessary instructions for the jury.

[**Wilus: blue**; **Samsung: red**]

compensates the patent holder for damages for both past infringement and for future infringement throughout the life of the patent. **[Wilus: In this case, the last of the Asserted Patents will expire on January 9, 2038.]**

## C.   Relevant Factors

In determining a reasonable royalty, you should consider all facts known and available to the parties at the time of the hypothetical negotiation.  Some of the kinds of factors that you may consider in determining the reasonable royalty are:

1.  The royalties received by the patentee for the licensing of the patents-in-suit, proving or tending to prove an established royalty;

2.  The rates paid by the licensee for the use of other patents comparable to the patents-in-suit**;**

3.  The nature and scope of the license, with respect to whom the manufactured product may be sold;

4.  **[Samsung: The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales;**

5.  **[Samsung: The duration of the Asserted Patents and the term of the license;]**[61, 62]

6.  The established profitability of the product made under the patents, its commercial success, and its current popularity;

7.  The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

---

[61] **Wilus**: *Ericsson, Inc., v. D-Link Systems, Inc.*, 773 F.3d 1201, 1230-31 (Fed. Cir. 2014) (factors 4 and 5 not relevant to FRAND cases, Court must account for FRAND in instructing on 8, 9 and 10).

[62] **Samsung**: In *Ericsson v. D-Link*, "factor 4" was "[t]he licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly" and "factor 5" was "[t]he commercial relationship between the parties." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1230-1231 (Fed. Cir. 2014).  Those are different than the factors enumerated as (4) and (5) here.  Wilus fails to cite any authority to support its contention that effects on promotion and sales (factor 4) and length of a license (factor 5) are irrelevant for alleged standard-essential patents like those asserted in this case.

55

[**Wilus: blue**; **Samsung: red**]

8. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

9. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

10. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions;

11. The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

12. The opinion and testimony of qualified experts; and

13. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been trying reasonably and voluntarily to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable to a prudent patentee who was willing to grant a license.

You may have heard these factors referred to as the "*Georgia-Pacific* factors." No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which, in your mind, would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

In determining what amount is a RAND royalty, you may consider any evidence of patent holdout. Patent holdout refers to an unwilling licensee of standard essential patents, seeking to avoid taking a license while practicing the standard and enjoying the benefit of the SEP holder's technology.

[**Wilus: blue**; **Samsung: red**]

You may also consider any evidence of patent holdup. Patent holdup exists when the SEP holder demands excessive or unjustified royalty, which is, considering the totality of the circumstances, not fair, reasonable, or non-discriminatory.

### D.     Comparable Agreements

As I explained with respect to the *Georgia-Pacific* factors, when determining a reasonable royalty, comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood.

Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, comparable scope, and whether the license agreement was on RAND terms. If there are differences between a license agreement and the hypothetical license between Wilus and Samsung, you must take those into account when you make your reasonable royalty determination.

### E.     Non-Infringing Alternatives

In determining a reasonable royalty, you may consider evidence concerning the availability of acceptable, non-infringing alternatives to the patented invention.  A non-infringing alternative is a way of providing the same or comparable functionality or achieving the same result that does not require using the patent. An available non-infringing alternative or substitute need not have been actually used to be relevant to the hypothetical negotiation.  To be an acceptable noninfringing alternative or substitute, a product must have the advantages of the patented invention that were important to people who purchased an alleged infringer's product. You may compare the patented technology to non-infringing alternatives or substitutes to determine the value of the patented

[**Wilus: blue**; **Samsung: red**]

invention, including the utility and advantages of the patent over the old modes or devices, if any, that could have been used to achieve similar results.

The party asserting that there is a non-infringing alternative has the burden to show by a preponderance of the evidence that a proposed non-infringing alternative was **[Wilus: acceptable and]** available at the time of the hypothetical negotiation and during the damages period. You should not consider for damages purposes any alternatives that have not been shown to be available at the time of the hypothetical negotiation.

[**Wilus: blue**; **Samsung: red**]

## XI.    DAMAGES PERIOD

### A.    Marking

[**Samsung: In calculating damages, you may only award damages to Wilus for infringement that occurred after the damages period begins. The damages period for issues related to infringement of the '077, '281, '595, and '210 Patents is September 11, 2024.**][63]

[**Wilus: In determining the amount of damages, you must determine when the damages began. The parties do not agree on that date, and it is up to you to determine what that date is. If you find that any entity that has a license to the Asserted Patents sold a licensed patented article that includes the claimed invention in the United States, you must determine whether that product was "marked" with the patent number. "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the products that include the patented invention. The marking requirement may also be satisfied by including with the product an internet address to a web page that associates the patented articles with the number of the applicable patents. The marking requirement only applies to licensed products that practice the asserted patent.**

---

[63] **Samsung**: As Samsung explains in its Motion for Summary Judgment of No Pre-Suit Damages, Wilus cannot recover for pre-suit damages.  Dkt. No. 266.  If the Court denies this motion, Samsung requests that the Court give the following instruction:

> In calculating damages, you must consider whether or not Wilus or its licensees marked the products that practice the Asserted Patents by placing on or within those patents the word 'patent' or Pat. and the asserted patent numbers. If you find Wilus or its licensees failed to properly mark their respective products, then you may only award damages to Wilus for infringement that occurred after the date that Wilus gave actually notice to Samsung that Wilus believed Samsung was infringing the asserted patents. It will be up to you to decide when such notice occurred.

*See United States Automobile Assoc.*, No. 2:20-cv-319, Dkt. No. 721 at 1220:5–14 (E.D. Tex. May 16, 2022).

[**Wilus: blue**; **Samsung: red**]

**Samsung contends that the Acer Aspire Go 15 Laptop was a licensed patented article that includes the claimed invention and was sold in the United States. Wilus has the burden to prove by the preponderance of evidence that either it undertook reasonable efforts to have the Acer Aspire Go 15 Laptop marked with the Asserted Patents or that the Acer Aspire Go 15 Laptop does not practice the Asserted Patents. If you find that the Acer Aspire Go 15 Laptop was not required to be marked, the damages period for each asserted patent begins when that patent first issued. Those dates are:**

**'077 patent: June 4, 2019;**

**'281 patent: June 16, 2020;**

**'595 Patent: October 11, 2022;**

**'210 Patent: October 26, 2021.**

**If you find that the Acer Aspire Go 15 Laptop practiced the Asserted Patents, then damages begin when Wilus gave Samsung actual notice of their infringement, or when the patent was issued, whichever is later. Actual notice of infringement occurred when Wilus informed Samsung of the identity of the Asserted Patents and the activity Wilus believed was infringing. As long as the communication provided sufficient specificity of Wilus' belief that Samsung may be an infringer, the actual notice requirement is met. Wilus contends it provided actual notice on April 8, 2022. Samsung contends that actual notice is the date the complaint was filed, which is September 11, 2024.]**[64]

---

[64] **Wilus**: On actual notice, *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997); *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1346 (Fed. Cir. 2001). "Actual Notice," requires a communication "sufficiently specific to support an objective understanding that the recipient may be an infringer.") *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1373 (Fed. Cir. 2010). The Federal Circuit has articulated "as long as the communication from the patentee provides sufficient specificity regarding its belief that the recipient may be an infringer, the statutory requirement of actual notice is met." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1346 (Fed. Cir. 2001)

[**Wilus: blue**; **Samsung: red**]

## XII.   <u>CLOSING ARGUMENTS</u>

\* \* \*

Now, with those instructions, we're ready to hear closing arguments from the attorneys.