# Exhibit D

██████████████

███████████████████████

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| Wilus Institute of Standards and Technology Inc., | § § § § | |
| *Plaintiff,* | § § | |
| | § | Civil Action No. 2:24-cv-00752 [Lead Case] |
| v. | § § | Civil Action No. 2:24-cv-00764 [Member Case] |
| HP Inc., | § § § | |
| *Defendant.* | § § | |
| Wilus Institute of Standards and Technology Inc., | § § § § | |
| *Plaintiff,* | § § | |
| | § | Civil Action No. 2:24-cv-00746 [Member Case] |
| v. | § § | Civil Action No. 2:24-cv-00765 [Member Case] |
| Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; | § § § | |
| *Defendants.* | § § | |

EXPERT REPORT OF STEPHEN E. DELL, CVA

RELATING TO DAMAGES

JANUARY 23, 2026

_____
STEPHEN E. DELL

## TABLE OF CONTENTS

I. NATURE OF INVOLVEMENT ...................................................................................4

II. CREDENTIALS AND COMPENSATION ....................................................................6

III. INFORMATION REVIEWED AND CONSIDERED ......................................................9

IV. SUMMARY OF OPINIONS......................................................................................9

V. BACKGROUND ...................................................................................................11

A. Patents at Issue .............................................................................................. 11

    i. '077 Patent ................................................................................................11

    ii. '281 Patent ................................................................................................12

    iii. '595 Patent ................................................................................................13

    iv. '035 Patent ................................................................................................13

    v. '879 Patent ................................................................................................14

    vi. '163 Patent ................................................................................................14

    vii. '597 Patent ................................................................................................15

    viii. '210 Patent ................................................................................................15

B. Wilus Institute of Standards and Technology ................................................. 16

C. Sisvel .............................................................................................................. 20

    i. Bilateral Patent Licensing Agreement .......................................................25

    ii. Wi-Fi 6 Patent Pool Agreement.................................................................27

D. Samsung.......................................................................................................... 29

E. Sisvel/Wilus and Samsung Negotiation History ............................................. 31

F. Standards Setting Organizations..................................................................... 40

VI. BASIS FOR OPINIONS .........................................................................................43

Royalty Structure..........................................................................................................43

Royalty Base .................................................................................................................45

Royalty Rate Analysis....................................................................................................48

    Factor 1: The royalties received by the patentee for the licensing of the patent(s) in suit, proving or tending to prove an established royalty.....................................................................................53

    Factor 2: The rates paid by the licensee for the use of other patents comparable to the patent in suit. .........59

    Factor 3: The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold. ...................81

    Factor 4: The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.........................................................................................81

Factor 5:    The commercial relationship between the licensor and the licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promotor. ...................................................................................................................................84

Factor 6:    The effect of selling the patented specialty in promoting sales of other products of the licensee; the existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales. ..................................................................85

Factor 7:    The duration of the patent and the term of the license. ...................................................85

Factor 8:    The established profitability of the product made under the patent; its commercial success; and its current popularity; and ....................................................................................................87

Factor 11:   The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use. ..................................................................................................................87

Factor 9:    The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results; and.................................................................94

Factor 10:   The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention....................94

Factor 12:   The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions. ..............114

Factor 13:   The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer. ...........................................................................114

Factor 14:   The opinion testimony of qualified experts. ...................................................................123

Factor 15:   The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee – who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention – would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license...........................................................................................................124

VII.   OTHER ISSUES .....................................................................................................140

## I.    NATURE OF INVOLVEMENT

1.      I have been retained as an expert on behalf of the Plaintiff in this matter, Wilus Institiute of Standards and Technology Inc. ("Wilus"), to calculate Wilus' reasonable royalty damages resulting from the alleged infringement by Samsung Electronics Co., Ltd ("SEC") and Samsung Electronics America, Inc. ("SEA") (collectively, "Samsung" or "Defendant") of the following United States patents (collectively referred to as "the Asserted Patents" or "Patents at Issue"):[1]

- U.S. Patent No. 10,313,077, titled "Wireless Communication Method and Wireless Communication Terminal for Coexistence with Legacy Wireless Communication Terminal", issued on June 4, 2019 ("the '077 Patent").

- U.S. Patent No. 10,687,281, titled "Wireless Communication Method and Wireless Communication Terminal, Which Use Discontinuous Channel", issued on June 16, 2020 ("the '281 Patent").

- U.S. Patent No. 11,470,595, titled "Wireless Communication Method and Wireless Communication Terminal, Which Use Discontinuous Channel", issued on October 11, 2022 ("the '595 Patent").

- U.S. Patent No. 11,116,035, titled "Wireless Communication Method Using Enhanced Distributed Channel Access, and Wireless Communication Terminal Using Same", issued September 7, 2021 ("the '035 Patent").

- U.S. Patent No. 11,516,879, titled "Wireless Communication Method Using Enhanced distributed Channel Access and Wireless Communication Terminal Using Same", issued November 9, 2022 ("the '879 Patent").

- U.S. Patent No. 11,129,163, titled "Wireless Communication Method and Wireless Communication Terminal in Basic Service Set Overlapping with Another Basic Service Set", issued September 21, 2021 ("the '163 Patent).

- U.S. Patent No. 11,700,597, titled "Wireless Communication Method and Wireless Communication Terminal in Basic Service Set Overlapping with Another Basic Service Set", issued July 11, 2023 ("the '597 Patent").

---

[1] Complaint for Patent Infringement, September 11, 2024; Complaint for Patent Infringement, September 20, 2024.

415.    Additionally, in negotiating within the narrowed range of reasonable royalty rate indicators above, the parties to the respective hypothetical negotiations would also recognize and account for the consideration of the ongoing and continued development and contribution of technologies that may be declared essential to the relevant Wi-Fi 6 standard. As a result, Wilus (and SKT) and Samsung would consider the broader number of patents declared to the patent stack discussed above in recognition of the continued contribution of technology to wireless standards and an increasing number of patents that may be essential to the wireless standards over time, resulting in the parties focusing their negotiation on a further narrowed royalty rate of ▮▮▮▮▮▮▮▮ per unit per patent,[602] after sharing 40% of the incremental benefit with Samsung.

416.    Within this further narrowed range, the parties would recognize the fundamental technological importance and foundational contribution of the Asserted Patents to the Wi-Fi 6 standard, as discussed in *Georgia-Pacific* Factor 9/10 above,[603] resulting in the parties further negotiating upward from the low end of the range toward the middle portion of the ▮▮▮▮▮▮▮ per unit per patent narrowed range to recognize the technological importance and benefits of the Asserted Patents contribution to the Wi-Fi 6 standard.[604]

417.    Thus, based on the economic analysis and factors discussed above, as well as the relative bargaining positions of the parties, it is my opinion the parties would ultimately negotiate and agree upon a royalty rate of ▮▮▮ **per unit per patent** that would be applied to the number of Accused Products sold by Samsung in the United States that are found to infringe the respective Asserted Patents, as shown in the figure below.[605]

---

[602] This range is informed by the middle of the range of per unit rates shown in Figure 5 above.

[603] *See also,* de la Iglesia Report, Section IV.

[604] I note that the absolute midpoint of the narrowed ▮▮▮▮▮▮▮ per unit range is ▮▮▮▮ per unit.

[605] Importantly, I understand that the offers made by Sisvel and Wilus prior to the date of this report were made based on publicly available information only, without the benefit of the specific technical benefits analysis and technical contribution analysis presented by Mr. de la Iglesia and Dr. Reed-Arthurs, as well as without the benefit or knowledge of Samsung's past licensing practices and policies due to the nature of Samsung's negotiation tactics and its unwillingness to disclose relevant sales or licensing information to Sisvel and Wilus.  Moreover, I understand from Mr. Brismark that it is his opinion that Samsung's bad faith, unreasonable delay, and hold-out has suspended Wilus' FRAND duties with regard to Samsung and the Asserted Patents, and has caused irreparable harm to Wilus, as well as to the whole ecosystem around standardization and society at large (*see* Brismark Report, Section III, and IX).  As such, I understand that the royalty rate(s) that may be negotiated may fall outside of negotiation requirements of FRAND, resulting in a higher royalty rate determination.

*Figure 6*
**Summary of Running Royalty Damages**
*June 2019 – September 2025*

| Patent | Accused Units | Royalty Rate (per unit) | Running Royalty Damages |
|---|---|---|---|
| '077 Patent | ███ | ███ | ███ |
| '281 Patent | | | |
| '595 Patent | ███ | ███ | ███ |
| '035 Patent | | | |
| '879 Patent | ███ | ███ | ███ |
| '163 Patent | | | |
| '597 Patent | ███ | ███ | ███ |
| '210 Patent | ███ | ███ | ███ |
| Total Running Royalty Damages | | | ███ |

418.    My opinion is that the resulting royalty opinion recognizes the technological contribution of the Asserted Patents to Samsung, but also gives credit to Samsung and apportioned out the value for the additional technologies, contributions, business risks, costs, features, benefits, and other factors not covered by the patents at issue that also impact the overall success of the Accused Products, as discussed above, including the apportionment of the incremental economic value and technological contribution of the Asserted Patents specifically. Though I understand from Mr. Brismark that Wilus's FRAND obligation has been suspended as to Samsung, this rate and the resultant damages would and do comply with FRAND principles because, as set forth above, they are based on incremental benefits apportioned to the patents-in-suit, take into account Samsung's business and technical contributions, consider FRAND licensing agreements and policies, and, as set forth above, employ modified treatment of *Georgia Pacific* factors as a result of the Patents-at-Issue being SEPs. I have not included any value of standardization or "hold-up" in the rates and damages, herein.

419.    As part of my determination of the applicable royalty rate for the respective Asserted Patents, I have also considered my royalty rate opinions with respect to other royalties Samsung may pay on the Accused Products. As shown on Attachment 4.6, the average selling price of the Accused Products